UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

FLOYD, *et al* ,

                                        Plaintiffs,

          -against-                                    **08 CV 1034 (SAS)**

THE CITY OF NEW YORK, *et al.*,

                                        Defendants.

-------------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF UF-250 DATA AND INFORMATION
SUBJECT TO THE PROTECTIVE ORDER IN DANIELS & IN SUPPORT OF
DEFENDANTS' APPLICATION FOR A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

<u>**Page**</u>

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 2

FACTUAL BACKGROUND ...................................................................................... 2

       A.    Daniels v. City of New York .............................................................. 3

            1.  All UF-250 Data Produced Was Produced Under a Protective Order. ................................................................................. 3

            2.  Data Redacted from the UF-250 Database Produced in Daniels: ..................... 3

            3.  Other Data Produced in Daniels Subject to Protective Order ............................ 3

       B.    The Rand Corporation:  2006 Data Only ............................................. 4

       C.    The National Archives For Criminal Justice Data/University Of Michigan ("Na"); 2006 Data Only ......................................................... 5

       D.    City Council ..................................................................................... 7

       E.    FOIL Request & Ordered Redactions ................................................ 7

ARGUMENT .............................................................................................................. 8

**Page**

POINT I

      DEFENDANTS SHOULD NOT BE REQUIRED TO PRODUCE CERTAIN FIELDS IN THE UF-250 DATABASE AT ALL AND SHOULD ONLY BE REQUIRED TO PRODUCE CERTAIN OTHER FIELDS UNDER AN APPROPRIATE PROTECTIVE ORDER ......................................................................................... 9

      A. Fields That Identify The Officers Should Not Be Produced, Including Names And Tax Identification Numbers ............................ 9

      B. Data That Identifies The Individuals Stopped ................................. 10

      C. Data About The Exact Location Of A Stop ...................................... 12

      D. Data Identifying Radio Run/Sprint Numbers ................................. 14

      E. Data Identifying Additional Reports, Including Arrest, Summons, Complaint and Juvenile Reports Numbers .................... 14

      F. Sides 1 and 2 Photo Of Completed Form .......................................... 15

      G. Indicator Of First Matching Case As Primary & Sequential Count Of Matching Cases ................................................................. 15

      H. Narrative Fields ................................................................................. 16

POINT II

      THE DATA SUBJECT TO THE PROTECTIVE ORDER IN DANIELS SHOULD ONLY BE REQUIRED TO BE PRODUCED UNDER THE SAME TERMS AS THE DANIELS PROTECTIVE ORDER AND ONLY FOR THE TIME PERIOD SUBSEQUENT TO THE DANIELS STIPULATION OF SETTLEMENT ........................................................................................ 16

      A. The Uf-250 Database & Attorney Work Product and Attorney Client Privileged Derivative Materials ........................................... 17

      B. Documents Relating to Training and Policies Concerning Stops and Frisks, Including Those Relating to the SCU Deployment Tactics and Methods, Operations, Training, Goals, Policies and Arrests, and Depositions of NYPD Supervisors With Key Roles In Stop and Frisk Policy and Training ..................................... 19

CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

Blair v. City of New York,
    08 CV 4303 (SAS) .................................................................................................11

Martindell v. International Telephone and Telegraph Corporation,
    594 F.2d 291 (2nd Cir. 1979)......................................................................8, 17

Seattle Times Company v. Rhinehart,
    467 U.S. 20, 104 S. Ct. 2199 (1984) ...............................................................8

Securities and Exchange Commission v. The Street.com,
    273 F.3d 222 (2nd Cir. 2001)......................................................................8, 17

**Statutes**

Fed. R. Civ. P. 1 .............................................................................................8

Fed.R.Civ.P. 12(b)(6) and 11 ...........................................................................12

Fed.R.Civ.P. 23(b)(2)..................................................................................10, 11

Fed.R.Civ.P. 26(b) and 26(c) ............................................................................8

NYCPL §160.50 ...........................................................................................15

## PRELIMINARY STATEMENT

Defendants respectfully submit this memorandum of law in opposition to plaintiffs' motion to compel production of UF-250 database and information subject to the protective order in *Daniels*. As set forth below, out of the 207 fields in the UF-250 database, there are a small number in dispute, which categorically involve identifying information about the people, officers and specific locations of the stops. Defendants seek to produce many of these fields under an appropriate protective order. Thus, to streamline the motion practice and expedite production, defendants respectfully request that the Court consider their request for a protective order in conjunction with plaintiffs' motion to compel.

## FACTUAL BACKGROUND

Defendants respectfully refer the Court to the transcripts of the court conferences of February 6, 2008 and May 19, 2008 for an accurate account of the Court's previously stated views on the issues discussed herein. *See* Costello Dec. Exhs. 1 & 4, respectively. [1]

For ease of reference, defendants have submitted a chart of the UF-250 database fields in dispute, which is attached as Exhibit A to the Declaration of Jennifer Rossan, dated June 25, 2008, submitted in support of Defendants' Opposition to the Motion to Compel ("Rossan Dec."). [2]

Among the factors that the Court found relevant to plaintiffs' request for production of the UF-250 database was whether and under what circumstances it had been disclosed to others. Contrary to plaintiffs' facile conclusions to the effect that past disclosure of any data in any way

---

[1] "Costello Dec." refers to the Declaration of Andrea Costello in Support of Plaintiffs' Motion to Compel, dated June 2, 2008. To avoid duplicate submissions, defendants will rely on plaintiffs' exhibits where appropriate.
[2] Defendants' reliance on Rossan Dec. Exh. A is not intended as an admission of the accuracy of Costello Dec. Exh. 8, and defendants reserve their right to dispute the accuracy of the representations of Exh. 8 should an issue arise. However, defendants have submitted Exh. A to streamline the motion as the only issues pertinent to this motion to compel are the database fields listed in Exhibit A and the documents discussed in Point II – these represent the universe that defendants are not willing to produce either at all or without an appropriate protective order. No other issues or items are material as they will be produced to plaintiffs upon resolution of the outstanding disputed items.

translates into unredacted public disclosure now, regardless of the conditions under which the data was disclosed, the conditions governing the disclosures must be taken into account. The Court did not order broader disclosure than defendants had made in the past. For ease of reference, defendants summarize these past disclosures below:

A.    Daniels v. City of New York

1.    All UF-250 Data Produced Was Produced Under a Protective Order.

As the Court is aware, the UF-250 database was created during the litigation of *Daniels v. City of New York*, as a means of producing data reflected on the UF-250 forms. *See* Rossan Dec. ¶ 2. During the lawsuit and the period covered by the *Daniels* Stipulation of Settlement, defendants produced the database for the years 1998 through and including the first two quarters 2007. *See* Rossan Dec. ¶ 3. *All of the UF-250 data in Daniels was produced pursuant to a protective order.* *See* Rossan Dec. ¶ 4; Costello Dec., Exh. 13 at Exh. C (protective order in place during the litigation); Costello Dec., Exh. 13 at ¶ H (protective order in place during the Stipulation of Settlement). The protective order effectively limited disclosure to class counsel and those working under counsel's supervision. *See* Rossan Dec. ¶ 4.

2.    Data Redacted from the UF-250 Database Produced in *Daniels*:



- ▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*See* Rossan Dec. ¶ 5.

3.    Other Data Produced in *Daniels* Subject to Protective Order

During the litigation, documents that were confidential and produced under the protective order included, in addition to the UF-250 data, weekly tactical deployment plans for the Street

---

[1] This years' worth of data was produced only after class certification and under court supervision to enable class counsel to contact putative class members in writing to notify them of the class action and to request their permission to be contacted otherwise.

Crime Unit and other documents ordered or agreed upon by the parties as confidential. *See* Rossan Dec. ¶ 6; Costello Dec. Exh. 13 at Exh. C.

During the period applicable to the Stipulation of Settlement, Class Counsel agreed to "preserve the confidentiality of all documents and information in any form provided to him or her by the Municipal Defendants unless and until the Municipal Defendants expressly authorize the disclosure of each specific document or piece of information." *See* Costello Dec., Exh. 13 at ¶H.1.

Plaintiffs do not allege that NYPD disclosed the aforementioned data to any third parties.

B.    The Rand Corporation: 2006 Data Only

    1.    Defendants Provided Portions of the UF-250 Database for 2006 Under a Confidentiality Agreement and Subject to Federal Laws and Regulations Prohibiting Disclosure of Identifying Information.

On behalf of the NYPD, the New York City Police Foundation, Inc. (the "Foundation") engaged the Rand Corporation, a Non-Profit Research Organization, to analyze the UF-250 database for 2006 for evidence of racially biased policing. *See* Rossan Dec. ¶ 7. Defendants produced to plaintiffs a copy of the Agreement between the Foundation and the Rand Corporation. *See* Rossan Dec. ¶ 8; Costello Dec. Exh. 6.[4]  Specifically, the Agreement acknowledges that the data provided by NYPD is confidential and obligates Rand Corporation to maintain the confidentiality of any unpublished data:

    8.    CONFIDENTIAL INFORMATION



---

[4] Defendants redacted portions of the agreement that were not relevant to the UF-250 database analysis project. The Agreement governing the UF-250 database analysis was a modification to an earlier agreement between the parties for a wholly-unrelated project which provided the framework for the new project. The confidentiality promises in the agreement applied to both projects, and defendants have produced the pertinent sections.



Costello Dec. Exh. 6 at NYC 2.

Thus, only the data that RAND published in its final report has been publicly disclosed. *See* Rossan Dec. ¶ 9. The final report can be found at www.rand.org. *See also* Costello Dec. Exhs. 10 A and B. The final report did not disclose the raw data in the UF-250 database; instead, it drew conclusions based on statistical evaluations of that data. *See* Rossan Dec. ¶ 9. Further, the final report indicated specifically that RAND could not reveal conclusions about specific individuals under certain federal statutes, even to NYPD. *See* Costello Exh. 10 B at 26, n.1.[5]

2.   <u>Data that NYPD Did Not Provide to Rand Corporation Included the Following:</u>

- ■ ██████████████████████
- ■ ██████████████████████
- ■ ██████████████████████
- ■ ██████████████████████

*See* Rossan Dec. ¶ 10.

C.   <u>The National Archives for Criminal Justice Data/University of Michigan ("NA");  2006 Data Only</u>

1.   NYPD Provided UF-250 Database for 2006 Pursuant to the Federal Statutes and <u>Regulations that Prohibit Disclosure of Personal Identifying Information</u>

---

[5] The note reads:

All RAND studies go before an institutional review board that reviews research involving human subjects, as required by federal regulations. . . . These federal regulations prevent RAND research from singling out specific individuals whom its research could adversely affect. The analysis in this section offers an estimate of the number of the NYPD's patrol officers of concern, but RAND cannot identify individual officers. For the Cincinnati Police Department, RAND has transferred the analytical capabilities to the department's analysts so that they can properly review their officers. A similar arrangement may be possible with NYPD.

NYPD provided portions of the UF-250 database for 2006 to the NA for its collection. [6] *See* Rossan Dec. ¶ 11. Since plaintiffs made their motion, NA has made data available to the public on its website, http://www.icpsr.umich.edu/NACJD/, subject to certain restrictions, including prohibiting the use of the data to identify any people within the database. The NA website includes two specific restrictions on the use of the data:

- On the information page for the database, the following is noted:

  > This data collection may not be used for any purpose other than statistical reporting and analysis. Use of these data to learn the identity of any person or establishment is prohibited.

- On the page that a user must agree to before downloading the data, the following is made clear:

  > In addition, the National Archive of Criminal Justice Data stipulates the following conditions: Federal law and regulations require that research data collected by the U.S. Department of Justice or by its grantees and contractors may only be used for statistical and research analysis. The applicable law and regulations may be found in the United States Code, 42 USC Section 3789g(a), and the Code of Federal Regulations, 28 CFR 22. Accordingly, any intentional identification or disclosure of a person or establishment may violate Federal law as well as the assurances of confidentiality given to the providers of the information. Therefore, users of data collected by or with the support from the U.S. Department of Justice and distributed by NACJD or other ICPSR archives must agree to abide by these regulations and understand that ICPSR may report any potential violation to the U.S. Department of Justice.

2.   <u>Data that NYPD Did Not Provide to NA for the website included the following:</u>



---

[6] The mission of the National Archives for Criminal Justice Data, per its website, is: "to facilitate research in criminal justice and criminology, through the preservation, enhancement, and sharing of computerized data resources; through the production of original research based on archived data; and through specialized training workshops in quantitative analysis of crime and justice data." *See* www.icpsr.umich.edu/NACJD/mission.html.

- ████████████████████████████

*See* Rossan Dec. ¶ 13.

D.    City Council

NYPD is required by law to provide summary UF-250 data to the New York City Council. *See* Rossan Dec. ¶ 14. The data provided is not the electronic UF-250 database. *Id.* Rather, it contains summary information derived from the database. *Id.* Defendants will produce the data provided to the City Council for 2006 in the same form as it was provided to the City Council.

E.    FOIL Request & Ordered Redactions

The New York Civil Liberties Union brought an Article 78 proceeding in state court, seeking the UF-250 database for 2006, the first two quarters of 2007 and any other years for which an electronic database was maintained under the Freedom of Information Law ("FOIL"). *See* Rossan Dec. ¶ 15. By order dated May 7, 2008 (filed on May 29, 2008), Justice Diamond ordered that the data be produced but with the following redactions:

- the identifying data of the persons stopped
- the identifying data of the officers, including the officers' tax identification numbers.

*See* Rossan Dec. ¶ 16; Costello Dec. Exh. 9.

Justice Diamond reasoned that the officers' identifying information should be redacted to protect against any safety concerns that would arise from the disclosure of the specific locations of the stops. The City is considering whether or not it will appeal. *See* Rossan Dec. ¶ 17. No production has taken place to date. *Id.*

**ARGUMENT**

Federal Rule of Civil Procedure 26(b) allows for discovery of relevant information "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." "[P]rotective orders issued under Rule 26(c) serve 'the vital function . . . of securing the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant." *Securities and Exchange Commission v. The Street.com,* 273 F.3d 222, 229 (2nd Cir. 2001); *Martindell v. International Telephone and Telegraph Corporation,* 594 F.2d 291, 295 (2nd Cir. 1979) (*quoting* Fed. R. Civ. P. 1) (affirming protective order). "This objective represents the cornerstone of our administration of civil justice." *SEC,* 273 F.3d at 229; *Martindell,* 594 F.2d at 295. "Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless 'annoyance, embarrassment, oppression, or undue burden or expense.'" *SEC,* 273 F.3d at 229; *see also Seattle Times Company v. Rhinehart,* 467 U.S. 20, 35, 104 S. Ct. 2199, 2209 n. 21 (1984) (affirming protective order).

Plaintiffs' complaint alleges a statistical pattern and practice of stop, question and frisk activity undertaken without reasonable suspicion in violation of the Fourth Amendment and based on race in violation of the Fourteenth Amendment. The data relevant to this analysis does not include the identities of the people stopped or the officers involved in the stops. Nor does it require analysis of the exact locations of the stops. Defendants will provide ████████

████████████████████████████████████████████████████

As discussed below, there is no relevance or need for certain data that plaintiffs seek, and other data should be protected as confidential and sensitive because it is integral to the administration of law enforcement and the safety of the officers. To protect this latter category of data,

- 8 -

defendants seek an appropriate protective order with terms similar to the terms of the *Daniels* protective order. *See* Costello Exh.13 at Exh. C. Regarding fields of data not in dispute, that is, all other fields which are not specifically discussed herein and will be produced by defendants, defendants condition production on the understanding that plaintiffs will return any data produced that contains identifying information.

## POINT I

## DEFENDANTS SHOULD NOT BE REQUIRED TO PRODUCE CERTAIN FIELDS IN THE UF-250 DATABASE AT ALL AND SHOULD ONLY BE REQUIRED TO PRODUCE CERTAIN OTHER FIELDS UNDER AN APPROPRIATE PROTECTIVE ORDER

### A.     FIELDS THAT IDENTIFY THE OFFICERS SHOULD NOT BE PRODUCED, INCLUDING NAMES AND TAX IDENTIFICATION NUMBERS

The names of the officers have never been disclosed before, and the tax identification numbers were only disclosed to RAND under the applicable restrictions – they were never published. *See* n.5, *supra*. Revealing the identity of the officers, including the plainclothes officers who conduct stops, may jeopardize their safety and impinge upon their privacy interests. Disclosure is unwarranted.

Plaintiffs argue that they need the identities of the officers to determine which, if any, officers engage in alleged unconstitutional stop activity. However, that level of specificity is not germaine to the statistical case that plaintiffs will have to prove. Plaintiffs argue that they need the identities of the officers involved in the stops and of their supervisors "to take depositions of individuals who generate large amounts of suspect stops," to refute assertions in the RAND report that racial disparities relate only to particular officers in certain boroughs, and to identify supervisors who allegedly had knowledge of constitutional violations and took no corrective

action. Pltf. Mem. in Supp. at 19-20.[8]  Notably, that this data was not produced in *Daniels* did not affect the resolution of that case; plaintiffs offer no reason to conclude that the effect would be otherwise in this similar putative Fed.R.Civ.P. 23(b)(2) class action.

In light of the interests in maintaining the privacy of the officer's identities and the heavily restricted disclosure of this data in the past, plaintiffs' purported need for the data does not justify production.  Moreover, so compelling was the potential danger involved should the officer names and tax numbers be disclosed, that Justice Diamond ordered their redaction in the FOIL request.[9]  Additionally, disclosure of tax numbers could lead to the identification of plainclothes officers who engage in stop activity.  Such revelation would endanger the safety of these officers, as well as compromise law enforcement techniques that depend on the anonymity of plainclothes officers to infiltrate criminal activity – an argument not before Justice Diamond when she considered, and rejected, protection of law enforcement techniques as a basis for denying disclosure.

## B.    DATA THAT IDENTIFIES THE INDIVIDUALS STOPPED

Defendants will produce without restriction the following data regarding the identity of the person stopped:   sex, race, age, height, weight, hair and eye colors, and build.  Defendants will produce the date of birth of the person stopped under an appropriate protective order.

The names and addresses of the individuals stopped, which plaintiffs seek, have never been disclosed, with a singular and unique exception in *Daniels*. *After* the *Daniels* class was

---

[8] "Pltf. Mem. in Supp." refers to Plaintiffs' Memorandum of Law in Support of motion to Compel The Production of UF-250 Data and Information Subject to the Protective Order in *Daniels*, dated June 2, 2008.
[9] While plaintiffs are correct that defendants originally offered to produce the tax identification numbers under a protective order, plaintiffs never agreed to this proposal, and in fact did not negotiate at all during the parties' meet and confer.  Instead, defendants informed plaintiffs in good faith of their specific positions, and plaintiffs offered nothing in return by way of compromise or negotiation.  In light of Justice Diamond's ruling, which was made after defendants initial proposal, and in the absence of agreement between the parties, defendants' position is that the officer tax numbers should not be produced.  However, should the Court order their production, nonetheless, defendants request that they be produced pursuant to a protective order to protect the privacy, safety and law enforcement interests discussed herein.

- 10 -

certified under Fed.R.Civ.P. 23(b)(2), the Court ordered production of one year's worth of names of the individuals stopped. This data was produced to enable class counsel to contact putative class members in writing to notify them of the class action and to request their permission to be contacted. The privacy concerns of these individuals was of paramount importance. As a Rule 23(b)(2) class action, formal class notice was not required, just as it will not be required should this putative (b)(2) class be certified.

Here, pre-class certification, plaintiffs claim they need the identifying information of the individuals stopped or else they will "be unable to contact and interview individuals to add additional Plaintiffs and allegations regarding" stop practices in time to meet the September 15, 2008 deadline for amending pleadings and adding parties. Pltf. Mem. in Supp. at 17. Plaintiffs cannot force the compromise of the privacy interests of the hundreds of thousands of individuals stopped simply to supplement their pleadings. The Federal Rules of Civil Procedure require that a plaintiff have a good faith basis to bring a claim before discovery tools are employed. If plaintiffs question the strength of their pleadings, they are free to engage in appropriate methods to identify willing litigants to add; however, neither the discovery tools nor the private information of those stopped can be used to build plaintiffs' pleadings.

Moreover, as this Court and plaintiffs' counsel are aware, an action was brought entitled *Blair v. City of New York*, 08 CV 4303 (SAS), which alleges that the vast majority of the identities of the persons stopped must be sealed pursuant to New York Criminal Procedure Law §160.50. Plaintiffs' desire for this information to advance the strategic position of the putative class action ignores these concerns.

To the extent that plaintiffs purport to need the identifying information to refute the alleged articulated reasonable suspicion for a particular person, this justification does not warrant

- 11 -

pre-certification discovery of hundreds of thousands of names. Plaintiffs have named three plaintiffs and putative class representatives in its First Amended Complaint, and presumably determined in good faith that the experiences of these individuals were sufficient to state their claims under Fed.R.Civ.P. 12(b)(6) and 11. Should a justifiable need for names arise when and if a class is certified, as was done in *Daniels*, disclosure of a small subset of names with restrictions on the method of attorneys' communications with these individuals may be warranted, at most. The need for hundreds of thousands of names would defeat the efficiency goals and representative nature of class action. Plaintiffs' request, even if a protective order were in place, is not justifiable and would be grossly overbroad at any juncture in this litigation.

As for other identifying data which plaintiffs seek, physical features such as scars and tattoos, this data could potentially lead to the identification of a specific individual. Defendants will produce these fields under an appropriate protective order.

**C.    Data About the Exact Location of a Stop**[10]







---

[11] Defendants note that this argument was not raised before Justice Diamond when she considered the FOIL request and rejected the law enforcement justifications for not producing the data.



**H.**     **Narrative Fields**

There are several fields in the database that correspond to blanks on the UF-250 forms which call for narratives to be written in by the officers or leave space for writing. Analysis has shown that officers often write identifying information in these fields, sometimes even if it is not necessarily responsive to the item for which the space corresponds. There simply is not much room on the form. To protect this data, defendants seek to produce it pursuant to an appropriate protective order.

One field in which identifying data often appears is the 

**POINT II**

**THE DATA SUBJECT TO THE PROTECTIVE ORDER IN *DANIELS*
SHOULD ONLY BE REQUIRED TO BE PRODUCED UNDER THE SAME TERMS AS
THE *DANIELS* PROTECTIVE ORDER AND ONLY FOR THE TIME PERIOD
SUBSEQUENT TO THE DANIELS STIPULATION OF SETTLEMENT**

Defendants produced these documents in *Daniels* in reasonable reliance on the terms of the protective order and the spirit of that order, and its fairly bargained for contractual obligations should not be undermined simply because plaintiffs have brought a new lawsuit regarding current stop, question and frisk activity. Moreover, just because defendants produced these documents in *Daniels* does not mean that they are relevant to this lawsuit; to the extent that the document predate the January 2004 so ordered *Daniels* Stipulation of Settlement, they are irrelevant, with the exception of the UF-250 database, which the Court already ruled upon.

According to the Second Circuit, there is "a general and strong presumption against access to documents sealed under protective order when there was reasonable reliance

- 16 -

upon such an order." *Securities and Exchange Commission v. TheStreet com*, 273 F.3d 222, 231 (2nd Cir. 2001). In that case, the NYSE had designated deposition testimony as confidential pursuant to a stipulated protective order substantially identical to the one at issue in these cases. As in these cases, a media intervenor sought modification of that protective order to permit public dissemination. The Second Circuit held that "a district court should not modify a protective order . . . 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." *SEC*, 273 F.3d at 229; *see also Martindell v. International Telephone and Telegraph Corporation*, 594 F.2d 291, 296-97 (2nd Cir. 1979) (holding that "a witness should be entitled to rely upon the enforceability of a protective order against any third parties" and recognizing "the overriding policy in favor of enforcing the civil protective order").

A.    **The UF-250 Database & Attorney Work Product and Attorney Client Privileged Derivative Materials**

The Court ordered that at this time the UF-250 data at issue during the *Daniels* litigation was relevant for discovery purposes inasmuch as it might provide a basis for statistical comparisons that might support plaintiffs' present claims.

Defendants seek to produce that data as it was produced in *Daniels* – that is, pursuant to the protective orders in place during *Daniels*, in the same form as it was produced in *Daniels* and with the same redactions. Defendants can achieve this simply by producing to plaintiffs the UF-250 data that plaintiffs returned to defendants earlier this year, with the understanding that the protective orders still apply. Defendants would then produce the UF-250 database for periods subsequent to the second quarter of 2007 -- post-*Daniels* -- in accordance with the Court's rulings in Point I of this opposition.