UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FLOYD, *et al.*,                                  :

              Plaintiffs,            :

          -against-                    :            08 Civ. 1034 (SAS)

                        :

THE CITY OF NEW YORK, *et al.*,                    :

              Defendants.        :

                        :

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF UF-250 DATA AND THE PRODUCTION OF CERTAIN INFORMATION SUBJECT TO THE PROTECTIVE ORDER IN *DANIELS V. THE CITY OF NEW YORK* AND IN OPPOSITION TO DEFENDANTS' APPLICATION FOR A PROTECTIVE ORDER**

---

Dated: July 8, 2008

Andrea Costello (AC-6197)
Darius Charney (DC-1619)
Kamau Karl Franklin (KF-6837)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
T (212) 614-6439; F (212) 614-6499

Jonathan C. Moore (JM-6902)
BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, 16th Floor
New York, New York 10016
T (212) 490-0900; F. (212) 490-0400

Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii-iii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................ 2

    I.    Defendants Have Not Met Their Burden of Proving a Protective Order
        Should Issue to Redact Certain Fields in the UF-250 Data ........................... 2

        A.  Defendants Have Not and Cannot Assert a Privilege to Preclude
            ████████████████████████████████████████████. 3

        B.  Defendants Have Failed to Prove That a Protective Order Should
            ████████████████████████████████████████████... 10

    II.   Plaintiffs Have Established the Relevance of the UF-250 Data Fields
        ████████████████████████████████████....................... 11

    III.  UF-250 Data Fields That Defendants Will Only Produce Under a
        Protective Order ........................................................................... 12

    IV.  The Expired Protective Order in *Daniels* Does Not Affect the Disclosure
        of Relevant Information in This Case .......................................................... 12

CONCLUSION ........................................................................................ 14

CERTIFICATE OF SERVICE .................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

<u>**Federal Cases**</u>

*Babbitt v. Alberton's, Inc.*,
    1992 U.S. Dist. LEXIS 19091 (N.D. Cal. Dec. 1, 1992) ........................................................... 10

*Calbrese v. CSC Holdings, Inc.*,
    2007 U.S. Dist. LEXIS (E.D.N.Y. March 7, 2007) ................................................................... 10

*Doe v. Village of Mamaroneck*,
    462 F.Supp.2d 520 (S.D.N.Y. 2006) ......................................................................................... 6

*Haus v. City of New York*,
    2004 U.S. Dist. LEXIS 26074 (S.D.N.Y. Dec. 29, 2004) ................................................. 6, 9-10

*In re Dep't of Investigation of the City of New York*,
    856 F.2d 481 (2d Cir. 1988) ...................................................................................................... 4

*King v. Conde*,
    121 F.R.D. 180 (E.D.N.Y. 1988) .............................................................................................. 5

*Kitevski v. City of New York*,
    2006 WL 680527 (S.D.N.Y. March 2006) ................................................................................ 5

*Kunstler v. City of New York*,
    439 F.Supp.2d 327 (S.D.N.Y. 2006) ......................................................................................... 5

*MacNamara v. City of New York*,
    2008 U.S. Dist. LEXIS 25982 (S.D.N.Y. Apr. 1, 2008) .................................................. 3, 5, 7

*MacWade v. Kelly*,
    230 F.R.D. 379 (S.D.N.Y. 2005) .............................................................................................. 4

*Malsh v. New York City Police Dep't*,
    1995 WL 217507 (S.D.N.Y. Apr. 11, 1995) ............................................................................ 4

*Martindell v. Int'l Telephone and Telephone Corp.*,
    594 F.2d 291 (2d Cir. 1979) ............................................................................................... 13, 14

*Morrissey v. City of New York*,
    171 F.R.D. 85 (S.D.N.Y. 1997) ......................................................................................... 3, 13

*Santiago v. Miles*,
    774 F.Supp. 775 (W.D.N.Y. 1991) ........................................................................................... 6

*Securities and Exchange Commission v. TheStreet.com,*
   273 F.2d 222 (2d Cir. 2001)..................................................................................... 13, 14

*Schiller v. City of New York,,*
   2007 U.S. Dist. LEXIS 4285 (S.D.N.Y. Jan. 19, 2007)................................. 3, 4, 8, 14

*Skibo v. City of New York,*
   109 F.R.D. 58 (E.D.N.Y. 1985) ...................................................................................... 7, 8

*U.S. v. Nixon,*
   418 U.S. 683 (1974)............................................................................................................. 13

*Unger v. Cohen,*
   125 F.R.D. 67 (S.D.N.Y. 1989) ..................................................................................... 5

## Federal Rules

Fed. R. Civ. P. 26(b)(2)(B) ................................................................................. 13, 14

Fed. R. Civ. P. 26(c) ....................................................................................... 1, 3, 7

# INTRODUCTION

Plaintiffs submit this reply memorandum in support of their Motion to Compel the Production of the UF-250 Data and Related Information requested in Plaintiffs' First Request for the Production of Documents ("Pls.' Motion to Compel"). In their opposition memorandum, Defendants request that the Court consider their request for a protective order in connection with Plaintiffs' Motion to Compel. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Production of the UF-250 Data and Information Subject to the Protective Order in *Daniels* at 2 ("Defs.' Memo"). Plaintiffs have incorporated their opposition to Defendants' application for a protective order in this memorandum.[1]

Plaintiffs have clearly established the relevance of the UF-250 data and other information at issue. Defendants, however, have failed to meet their burden to prove why a protective order should issue to prevent disclosure of certain fields in the UF-250 data, or to limit the disclosure of certain other data fields. Defendants' unsupported and conclusory claims about possible harms that may, or may not, result from disclosure of the UF-250 data, do not meet the standards under Rule 26(c) or the requirements of any applicable privileges.

As explained herein and in the memorandum in support of the Motion to Compel, Plaintiffs have agreed that ███████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

have failed to show why any other limits on disclosure of the UF-250 data are warranted. Other

---

[1] Since this memorandum includes Plaintiffs' reply in support of their Motion to Compel and Plaintiffs' opposition to Defendants' application for a protective order, Plaintiffs have exceeded the number of pages permitted for a reply, but are well below the page limit for an opposition memorandum.

than this confidentiality designation, Defendants' motion for a protective order in all other respects should be denied.[2]

## ARGUMENT

**I.    Defendants Have Not Met Their Burden of Proving a Protective Order Should Issue to Redact Certain Fields in the UF-250 Data**

At the pre-motion conference on May 19, 2008, the Court ruled that if any information in the UF-250 database was provided to another entity, it must be produced to Plaintiffs, even if the parties dispute whether a limit should apply as to the terms of that disclosure. *See* Declaration of Andrea Costello ("Costello Decl.") at Ex. 4, p. 14, lines 14-19.[3] Defendants have ignored the Court's prior rulings and continue to refuse to produce the UF-250 data fields which include ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ the RAND Corporation – this information must be produced to Plaintiffs.[4] The Court has also previously ruled that the locations of the stops must be provided. *Id.* at Ex. 4, p. 31, lines 5-8;11-12. Defendants are required to produce this information on this basis alone. Instead, they continue to argue why these fields should not be subject to discovery.

Lacking any legal citations or declarations from qualified law enforcement personnel in support of their position, Defendants make vague and unsupported assertions that certain fields

---

[2] Based upon statements made by Defendants, if any UF-250 data fields are not specifically discussed in their opposition and application for a protective order, they have agreed to produce those fields, but take the position that if any of those fields c████████████████████████████████ should be returned. Def.'s Memo at 9. Plaintiffs have submitted a revised chart herewith explaining Defendants' position on each of the data fields and whether the information was produced to another entity. *See* Reply Declaration of Darius Charney at Ex. 1.

[3] The Declaration of Andrea Costello referenced herein was submitted with Plaintiffs' Motion to Compel. (Doc. #25.)

[4] Since Plaintiffs agree that this information should be treated as confidential, the only issue left for the Court to decide, if the parties cannot do so, is the terms of a confidentiality agreement concerning this information.

in the UF-250 data should not be disclosed to Plaintiffs, under any circumstances, based on

speculative harms that may, or may not, result from disclosure of the data. Defs.' Memo at 9, 13.

13. Fatal to Defendants' position is a lack of any properly asserted or proven privileges in their

opposition memorandum/application for a protective order.

   In light of the broad nature of discovery, Defendants have the burden to satisfy the

standards required for a protective order to prevent the disclosure of information or limit the

terms of any disclosures. *See* Fed. R. Civ. P. 26(c); *see also Morrissey v. City of New York*, 171

F.R.D. 85, 88 (S.D.N.Y. 1997). No such showing has been made here. Broad allegations of

harm which lack substantiating specific examples of clearly defined, serious injury, do not

amount to "good cause" under Rule 26(c). *Schiller v. City of New York*, 2007 U.S. Dist. LEXIS

4285, *7 (S.D.N.Y. Jan. 19, 2007); *MacNamara v. City of New York*, 2008 U.S. Dist. LEXIS

25982, *16-17 (S.D.N.Y. Apr. 1, 2008). Defendants have presented unsupported speculative and

conclusory allegations that fail to meet the test. Accordingly, the Court should order production

of the UF-250 data and other discovery at issue.

  A. **Defendants Have Not and Cannot Assert a Privilege to Preclude Disclosure**
    █████████████████████████████████████████

   Defendants refuse to produce ███████████████████████████

based upon general and unsupported objections that disclosure of this information *may*

jeopardize officers' safety, impinge on their privacy interests and compromise law enforcement

techniques that depend on the anonymity of plainclothes officers to infiltrate criminal activity.

Defs.' Memo at 10. Similarly, Defendants argue that disclosure of the ████████████

could also "reveal law enforcement techniques which can jeopardize defendants' ability to fight

crime and endanger the officers." Defs.' Memo at 13.

Defendants' memorandum lacks any articulated specific privilege to support their position. They even concede that their law enforcement technique and safety concerns may not rise to the level of being protected by the law enforcement privilege. *Id.* at 13. Notably absent is even one supporting declaration from a qualified law enforcement official which meets the requirements for proving a law enforcement privilege – the only privilege which Plaintiffs are forced to guess could apply here. The failure to properly allege and prove the law enforcement privilege is sufficient grounds for this Court to order disclosure of the information. Assuming *arguendo* that Defendants have asserted the privilege, they have failed to satisfy the requirements to invoke or satisfy the standards for a protective order to issue.

The law enforcement privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of the City of New York*, 856 F.2d 481, 484 (2d Cir. 1988). However, not all law enforcement related activities are protected by privilege. To prevent disclosure of the information sought, Defendants bear "the burden . . . to make a 'substantial threshold showing' that specific harms are likely to result from disclosure of the materials in question." *Malsh v. New York City Police Dep't*, 92 Civ. 2973, 1995 WL 217507, *3 (S.D.N.Y. Apr. 11, 1995). To sustain the privilege, the party invoking it must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they cannot rely simply on general reiterations of the policies underlying the privilege. *See Schiller v. The City of New York*, 2007 U.S. Dist. LEXIS 4285, *18; *MacWade v. Kelly*, 230 F.R.D. 379, 381 (S.D.N.Y. 2005). Defendants must "do more than alert the court to the [privilege] or the generalized

4

policies which support it." *King v. Conde*, 121 F.R.D. 180,189 (E.D.N.Y. 1988). Instead, they

must demonstrate, through competent declarations: (i) what specific interests would be harmed,

(ii) how disclosure under a protective order would cause the harm, and (iii) how much harm

would be caused by each such disclosure.[5]  *Id.*  If defendants fail to make such a showing on any

of the three points, the court has no choice but to order disclosure. *Id.*; *See also Unger v. Cohen*,

125 F.R.D. 67, 70 (S.D.N.Y. 1989).

Even when applicable, the law enforcement privilege is not absolute. *MacNamara*, 2008

U.S. Dist. LEXIS 25982, *18.  Courts addressing whether the law enforcement shall apply

balance the public interest in nondisclosure against the need of the particular litigant for access to

the privileged information, keeping in mind that the burden of persuasion rests on the party

seeking to prevent disclosure. *See Kunstler v. City of New York*, 439 F.Supp.2d 327, 328

(S.D.N.Y. 2006); *MacNamara*, 2008 U.S. Dist. LEXIS 25982, *19.   In the context of a civil

action, "no showing of need beyond relevance is necessary." *Kitevski v. City of New York*, 2006

WL 680527, at *3 (S.D.N.Y. March 2006) (citations omitted).  This balancing test is only

applicable after the moving party proves that the information at issue falls within the privilege.

In refusing to produce the ████████████████████████████████

the stops or frisks, Defendants argue that disclosing the identity of any plainclothes officers that

conduct stops may jeopardize their safety, impinge on their privacy and compromise law

enforcement techniques that depend on the anonymity of these officers to infiltrate criminal

activity. Defs.' Memo at 9-10.  Defendants' articulation of, at best, speculative concerns, is not

---

[5]  The related "official information privilege" is a doctrine that can also limit disclosure of information involving law enforcement procedures, but requires a "substantial threshold showing" that specific harms will result. *King v. Conde*, 121 F.R.D. 180, 194 (E.D.N.Y. 1988).  Defendants have not specifically referred to this privilege, but the requisite showing has not been met for the same reasons explained herein concerning the law enforcement privilege.

sufficient to invoke or prove the law enforcement privilege for additional reasons beyond just the fundamental lack of any evidentiary factual support. Defendants have failed to make the showing required to assert the law enforcement privilege. Their conclusory incantations of possible harms are not persuasive and are certainly not sufficient authority for this Court to issue a protective order. *See Haus v. City of New York*, 2004 U.S. Dist. LEXIS 26074, *13 (S.D.N.Y. Dec. 29, 2004) (defendants' assertion of law enforcement privilege without specific identification of harm is "at best, threadbare, if not frivolous"). Their motion should be denied.

Plaintiffs have established the relevance of ▮▮▮▮▮▮▮▮▮▮▮ on the UF-250 forms that are entered into the database. *See* Plaintiffs' Memorandum in Support of Motion for a Protective Order ("Pls.' Memo") at 19-20. Moreover, the use of undercover officers is alleged to be one of the methods utilized by the NYPD to conduct unlawful stops and frisks that lack reasonable articulated suspicion and which use race and/or national origin as a factor. *See* (Unredacted) Amended Complaint at ¶ 74. Plaintiffs have a compelling need for the information regarding ▮▮▮▮▮▮▮▮▮▮ that have conducted stops, as relevant to, *inter alia*, establishing and proving a pattern of unconstitutional stops or frisks, obtaining additional evidence of intentional discrimination and identifying certain officers who would be deposed as part of the proof required for Plaintiffs' case.[6]

Defendants' objections are simply not justified. The fact that the NYPD uses undercover officers to conduct these stops does not, in itself, provide sufficient support to prevent disclosure

---

[6] While, as Defendants suggest, the identities of the officers will not assist Plaintiffs in conducting a statistical analysis of the stops and frisks, this information is relevant to proof of intent to discriminate on the basis of race and/or national origin. *See e.g., Santiago v. Miles*, 774 F.Supp. 775 (W.D.N.Y. 1991); *Doe v. Village of Mamaroneck*, 462 F.Supp.2d 520, 545-55 ( S.D.N.Y. 2006).

of relevant information since it is publicly known[7].  *See* Defs.' Memo at 9-10.  Moreover, the

████████████████████████████  in the UF-250 database is information that

Plaintiffs have already agreed to treat as confidential.  A confidentiality agreement is sufficient

to address any privacy concerns raised by Defendants, as well as any possible, but unproven,

safety issues related to any such officers.[8]  *See MacNamara*, 2008 U.S. Dist. LEXIS 25982, *75-

76 (holding law enforcement privilege does not prevent disclosure of undercover officers'

identities because of relevance to plaintiffs' claims).

      Plaintiffs' allegations of a widespread policy, practice or custom of NYPD officers

conducting illegal stops, frisks and engaging in racial profiling supports the disclosure of all of

the information in the UF-250 database.  Where, as here, Plaintiffs have alleged that Defendants

have acted as a result of an unconstitutional policy or custom, proof of an official policy through

the acts and omissions of NYPD officers who conducted unlawful stops and frisks, their

supervisors who reviewed the UF-250 forms and their subordinates' actions and the

authorization, approval or encouragement of such a policy is generally an issue of fact, not law.

*See Skibo v. City of New York*, 109 F.R.D. 58, 62 (E.D.N.Y. 1985).  The information sought is

relevant to Plaintiffs' allegations that NYPD officers engaged in unlawful stops and frisks and

that the City and supervising officers knew of these violations and not only tolerated, but

encouraged and ratified, the unlawful conduct. (Unredacted) Amended Complaint ¶¶ 4, 100-104

Plaintiffs' ability to identify officers and supervisors whose acts and omissions violated the

_____

[7] Plaintiffs note that the ECF publicly filed version of their memorandum included the
explanation about the NYPD's use of undercover officers to conduct stops and frisks.

[8] Although Defendants claim that their argument concerning law enforcement techniques was not
before the court in the state Freedom of Information Law ("FOIL") case involving the UF-250 data for
2006, Judge Diamond rejected similar arguments concerning the alleged danger to the safety of any
officers conducting stops.  *See* Costello Decl. at Ex. 9, p. 2.  The state court ordered the database to be
turned over with the officers' names redacted based on applicable state law governing FOIL requests that
contain confidential and non-confidential material – none of which are applicable here.  *Id.*

Fourth and Fourteenth Amendments, to depose those individuals and to identify the link between

the unconstitutional policy and these violations is dependent upon Plaintiffs' counsel knowing

the identities of such officers. In a federal civil rights action, a claim that the evidence is

privileged "must be so meritorious as to overcome the fundamental importance of a law meant to

insure each citizen from unconstitutional state action []." *Skibo*, 109 F.R.D. at 61.

　　　With regard to Defendants' objections to producing ██████████████ of a stop or frisk,

no harm can flow from the disclosure of information that is already widely known. *See e.g.,*

*Schiller*, 2007 U.S. Dist. LEXIS 4285, at *23-24 (S.D.N.Y. Jan. 19, 2007) (rejecting City's

assertion that videotapes of arrests during the Republican National Convention demonstrations

should remain confidential because they "contain information that many of the individuals

depicted . . . would regard as highly personal and private in nature" and dissemination of the

tapes would reveal the NYPD's crowd control tactics). The NYPD's use of the stop and frisk is

publicly touted as an "essential" law enforcement technique. *See* "Police Data Shows Increase in

Street Stops," *New York Times*, May 6, 2008. The heart of Plaintiffs' claims concern the

NYPD's stop and frisk policies and practices. As Plaintiffs previously noted for the Court,

anyone standing on a public street can observe the location of a stop or frisk. Defendants

somehow think the day to day happenings on public sidewalks and streets go unnoticed by City

residents and passersby. This reasoning defies basic common sense.

　　　Perhaps Defendants' most far-fetched argument is that disclosure of ████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

activity." Defs.'Memo at 13. Defendants essentially are saying that those persons who want to

8

engage in criminal activity will: (1) obtain the complete UF-250 database; (2) engage in a highly complex analysis of the data, ███████████████████████████████ ███████████████████████████ over the last nine years; and (3) manage to effectively use this information to tailor their criminal activities accordingly.

Almost identical arguments have been rejected in relation to the NYPD's law enforcement techniques concerning large-scale events. For example, in *Haus v. City of New York*, the City asserted a law enforcement privilege to prevent the disclosure of the NYPD's "planning" documents which contained "specifics of police deployment, including numbers of officers and exact locations of deployments" related to policing an anti-war demonstration in 2003. 2004 U.S. Dist. LEXIS 26074, *12-13. The NYPD, through a Declaration provided by the then Commanding Officer of the Patrol Borough of Manhattan South, asserted a law enforcement privilege for these documents claiming that, "The ability of the Police Department to meet potential disorder and unlawful conduct at large scale public events" would be "seriously compromised" by disclosure of the information at issue. *Id.* The NYPD claimed that the documents described law enforcement strategies to prevent and/or meet the threat of violence at large-scale public events and contained details about the expected deployment of resources, officer reporting times and patterns for various locations and the breakdown of command sections. *Id.* Defendants alleged that disclosure of these techniques would render them ineffective and would result in dissemination of this information, thereby allowing individuals to alter their conduct to avoid police interaction. *Id.* However, the Court found that this collection of generalizations by an NYPD commanding officer failed to justify the invocation of the law enforcement privilege. *Id.* "[T]he number of police at specific locations [i]s an observable fact." *Id.* The Court was mystified by defendants' argument as to how revealing this information

9

would be useful to people "supposedly bent on mayhem in future demonstrations." *Id.* Here, the same reasoning applies. Like future demonstrations, stops and frisks will occur at hundreds of thousands of different locations through the City, will involve different individuals and "will pose different potential threats of law-breaking and will thus pose different contexts for the police to invest manpower in specific locations." *Id.*

**B.     Defendants Have Failed to Prove That a Protective Order Should Issue to Prevent Disclosure of the Identities and Personal Identifying Information of Individuals Stopped or Frisked**

In addition to those reasons stated in Plaintiffs' memorandum in support of the Motion to Compel, Plaintiffs are entitled to discovery of the names and personal identifying information for putative class members because this information is relevant to class certification issues. *See e.g., Calbrese v. CSC Holdings, Inc.*, 2007 U.S. Dist. LEXIS 16059, *19-20 (E.D.N.Y. March 7, 2007); *Babbitt v. Alberton's Inc.*, 1992 U.S. Distr. LEXIS 19091, *16-17 (N.D. Cal. Dec. 1, 1992) (permitting discovery of putative class members' names, addresses, telephone numbers and social security numbers in employment discrimination action). If Defendants are willing to concede that they do not intend to challenge any of the Rule 23 requirements for a class to be certified, Plaintiffs are willing to delay their request for class members' identifying information until after certification.

Plaintiffs have the utmost respect for the privacy interests of the class members in this case. Plaintiffs' counsel has advised Defendants, and this Court, that an appropriate confidentiality agreement should be put in place to safeguard the personal information of putative class members.[9]

---

[9] Defendants' argument that the relevance and need for this information demonstrated by Plaintiffs "ignores concerns" raised in the related case of *Blair v. The City of New York.* is inaccurate. Plaintiffs' counsel represents a putative class, which includes Mr. Blair, and agree that there should be protections in place to safeguard the identities of the hundreds of thousands of individuals who have been

II.    **Plaintiffs Have Established the Relevance of the UF-250 Data Fields Relating to** ███████████████████████████████████████████

Defendants attempt to support their position that the UF-250 data fields concerning ████████████████████████████████████████████████████████████████ should not be produced based upon a mischaracterization of the relevance articulated by Plaintiffs concerning this information. Defs.' Memo at 14-15. Plaintiffs did not assert that the only way for a stop or frisk to be an effective police tactic is that it must result in an arrest leading to a conviction. The so-called "stop to arrest ratio," as recognized even by the RAND Corporation report, is a statistical methodology utilized to analyze this type of data. *See* Costello Decl. at Ex. 10, p. 16-19. Whether or not Defendants agree with that methodology is not an appropriate objection to production of the information needed for Plaintiffs to perform such an analysis. As Plaintiffs' counsel stated at the pre-motion conference on these issues, a confidentiality agreement is appropriate for safeguarding the privacy rights of individuals that may have had ████████████████████ as a result of a stop or frisk.

With regard to the UF-250 data field which indicates ████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████, Plaintiffs have no need for this information.[10]

_____

unlawfully stopped. It is improper to deny Plaintiffs discovery of relevant information concerning the putative class based on a claim made in a related case that may never be fully litigated or may change over the course of the litigation as part of a settlement or other resolution. Moreover, Plaintiffs are not asking that the personal identifying information of the putative class members be made publicly available.

[10] Plaintiffs note that during the extensive discussions and negotiations between the parties about these discovery disputes, Defendants initially objected to providing this information without even knowing what it was.

III.     **UF-250 Data Fields That Defendants Will Only Produce Under a Protective Order**

Defendants' position is that the following data fields will only be produced under a

protective order: ███████████████████████████████████████████

████████████████████ (3) narrative fields which correspond to blanks on the UF-250 form.

Plaintiffs agree that ███████████████████ should be subject to a

confidentiality agreement. Plaintiffs also agree that if there is any personal identifying

information contained in a narrative field or a field █████████████████████, that

information would be subject to a confidentiality agreement. As explained in Point I, however,

Plaintiffs do not agree with Defendants' position that if information in either of these fields

contain a ██████████(other than those such as race, age, height, etc. which Defendants

have agreed to disclose), the information must be returned and should have not been produced in

the first instance.

IV.     **The Expired Protective Order in *Daniels* Does Not Affect the Disclosure of Relevant Information in This Case**

Defendants have objected to production of the UF-250 data based on the "unnecessary

burden" of producing the UF-250 database in any format other than previously produced as part

of the discovery production and implementation of the Stipulation of Settlement in *Daniels*.

Defs.' Memo at 17-18. Their argument is confusing because although they raise this issue by

way of example of re-producing the data for the second quarter of 2007, their objections to

production of any of the data which was produced in *Daniels* was subject to the *Daniels* expired

protective order and would not be in the same format as the production in this case if the Court

grants all, or part, of Plaintiffs' motion to compel. So, regardless of which quarter of data is at

issue, all of the data would need to be produced in accordance with the Court's rulings and based

12

on what Defendants have agreed to disclose, which includes data that they may not have

previously agreed to disclose in *Daniels*.[11] Their argument makes no sense because, at a

minimum, Defendants will have to re-produce all of the databases for 1998 to the present in

different formats than previously turned over to Plaintiffs as part of the *Daniels* case. Moreover,

"burden" is not a sufficient basis to refuse to produce relevant evidence where, as here, Plaintiffs

have shown good cause for its production. *See* Fed. R. Civ. 26(b)(2)(B).

The Court has already determined that the *Daniels*' protective order does not govern here

and that the information which was temporarily returned in sealed boxes pending the resolution

of this motion should be produced as part of discovery in this case if Plaintiffs can demonstrate

its relevance. *See* Costello Decl. at Ex. 4, p. 38, lines 22-24. Plaintiffs only need show that this

information is relevant and appears reasonably calculated to lead to the discovery of admissible

evidence. *U.S. v. Nixon*, 418 U.S. 683, 709 (1974). Plaintiffs have met this requirement.

Defendants incorrectly urge the Court to use the standard for modification of protective

orders to evaluate whether the information at issue should be disclosed. Defs.' Memo at 16-17.

The standard set forth in *Martindell v. Int'l Telephone and Telephone Corp.*, 594 F.2d 291 (2d

Cir. 1979) and *Securities and Exchange Commission v. TheStreet.com*, 273 F.2d 222, 231 (2d

Cir. 2001), are not applicable here because Plaintiffs are not seeking modification of a protective

order. It is only where a party is seeking to modify an existing protective order that there needs

to be a showing of "improvidence in the grant of [the] order or some extraordinary or compelling

need" where there has been reasonable reliance on the order." *Martindell*, 594 F.2d at 296;

---

[11] Defendants argument concerning whether all of the UF-250 data will be admissible at trial is a "red herring." Defs.' Memo at 18. According to Defendants, if the Court orders production of the UF-250 data without restriction or without a protective order, if the data prior to the *Daniels* Stipulation of Settlement (the "pre-2004 data") is determined to be inadmissible at trial, this would compromise confidentiality. Discovery motion practice is intended to resolve any disputes as to relevance, confidentiality or privilege. Whether or not the information is ultimately admissible at trial is not the standard to be relied upon in resolving this dispute. *See Morrissey*, 171 F.R.D. 88.

*TheStreet.com*, 273 F.2d at 229.  That the City may have relied on the protective order in

*Daniels* in the production of the documents in that prior litigation is not relevant to the Court's

determination of the discoverability of these documents in this case.  It is well-established that

"protective orders that are on their face temporary or limited may not justify reliance by the

parties." *Schiller*, 2007 U.S. Dist. LEXIS 4285, at *15 (rejecting City's argument that once a

protective order is signed by a court, withdrawal of confidentiality designations should be subject

to *Martindell* heightened standard because City reasonably relied on the protective order when it

produced the materials at issue).  If Defendants object to the production of relevant information,

they must affirmatively move for a protective order and make an individualized showing as to

each document and category of information. *Id.* at *7.  Defendants cannot rely on an expired

protective order to do so.

## CONCLUSION

Based on the foregoing reasons, Plaintiffs' Motion to Compel the Production of the UF-

250 Data and Information  requested in their First Request for the Production of Documents

should be granted and Defendants' application for a protective order concerning this information

should be denied with the exception of certain information that Plaintiffs have agreed should be

designated as confidential.


Dated:  July 8, 2008

By: _Andrea Costello_____
    Andrea Costello (AC-6197)
    Darius Charney (DC-1619)
    Kamau Franklin (KF-6837)
    Center for Constitutional Rights
    666 Broadway, 7th Floor
    New York, NY 10012
    T (212) 614-6439; F (212) 614-6499
    acostello@ccrjustice.org
    dcharney@ccrjustice.org
    kfranklin@ccrjustice.org

Jonathan Moore (JM-6902)
Beldock, Levine & Hoffman, LLP
99 Park Avenue, 16th Floor
New York, NY 10016
T (212) 490-0400; F (212) 557-0565
jmoore@BLHNY.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July 2008, that a true and correct copy of the

unredacted and redacted versions of the foregoing document was furnished via U.S. First Class

Mail upon the following:

> Linda Donahue
> David Hazan
> Jennifer Rossan
> Assistant Corporation Counsel
> Corporation Counsel of the City of New York
> 100 Church Street, Room 3-158
> New York, NY 10007

*andrea costello*
_____
Andrea Costello