USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/10/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
DAVID FLOYD, *et al.*,                       :
                                             :
              Plaintiffs,    :
                                             :
      - against -                          :    **OPINION AND ORDER**
                                             :
THE CITY OF NEW YORK, *et al.*,              :    08 Civ. 1034 (SAS)
                                             :
              Defendants.    :
------------------------------------------------------- X
**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

        Plaintiffs David Floyd and Lalit Clarkson bring this putative class action against the City of New York, Police Commissioner Raymond Kelly, and unnamed New York City Police Officers ("defendants"), alleging that the defendants sanction a policy and practice of stop and frisks by the New York Police Department ("NYPD") on the basis of race and ethnicity. Information about each stop and frisk made by a NYPD officer is recorded in a UF-250 form, and data from the UF-250 forms is compiled and stored in a database maintained by the NYPD. Plaintiffs have moved under Rule 37 of the Federal Rules of Civil Procedure to compel production of all data in the UF-250 database regarding stop and frisks from 1998 to the present, as well as certain documents related to police

1

training. Defendants have agreed to produce much of the data, but are withholding certain information that they claim is either not relevant to plaintiffs' claims, is protected under the law enforcement privilege, or would reveal the identities of individuals who were stopped by the police.

All information in the database is relevant to plaintiffs' claims, and defendants have not shown that the law enforcement privilege protects any of the UF-250 data. The only question is whether some of the information is confidential and should be produced pursuant to the terms of a protective order. Therefore plaintiffs' motion is granted as to all UF-250 data, with the exception of the names of suspects and police officers, subject in part to a protective order that will either be negotiated by the parties or imposed by the Court.

## II. BACKGROUND

### A. The UF-250 Data at Issue

Defendants argue that the following categories of information in the UF-250 database are either not relevant to the action or are protected by the law enforcement privilege, and object to their production under any circumstance:

- Sprint number[1] (Field 46)

---

[1] The number used by the NYPD to identify the report of radio transmissions pertinent to the stop.

2

- Information about the location of stop (Fields 181-190, 192-193)
- Identifying information of person stopped (Fields 13, 164-67, 179, 194-205)
- Information about arrest/charges (arrest number, summons number, complaint number, juvenile report detail and number, aided report and other report detail) (Fields 17, 20, 24, 30, 136, 139)
- Reporting and reviewing officers' names (Fields 83, 87)
- Slides of UF-250 written form (fields 126, 127 (2004 data only))

If the Court orders production of the above categories of information, defendants request entry of a protective order preventing public disclosure of the information. Defendants also ask that a protective order apply to the following categories of information:

- Suspect's other features (tattoo, scars) (Field 178)
- "Narrative" data fields:
  - Frisk basis detail (field 130)
  - Physical force detail (field 130)
  - Bulge object description (fields 106, 109)
  - Demeanor of person stopped (field 121)
  - Other additional circumstances (fields 75, 124, 127, 151, 154)

- Remarks made by person stopped (field 145)
- Weapons description detail (fields 100, 103, 163)
- Description of other weapon (field 96 (2004 only))
- Contraband description (fields 115, 98 (2004 only))
- Other reason for stop/search (fields 148, 157, 160)

**B. Prior Rulings**

At a pre-motion conference on May 19, 2008, I made several rulings with respect to the production of UF-250 data. *First*, I ruled that data produced during the litigation of and the stipulation of settlement in *Daniels v. City of New York* are relevant to the instant case, to measure whether stop and frisk practices have improved since the stipulation of settlement in 2004.[2] I also ruled that the terms of the protective order under which the information was produced in *Daniels* do not necessarily apply in this action.[3]

*Second*, I ruled that defendants must produce to plaintiffs all categories of information that defendants have disclosed to other entities.[4] Much of the data from the UF-250 database from the year 2006 has been disclosed to the

---

[2] *See* Transcript of 5/19/2008 Court Conference ("Tr.") at 22:9-15.

[3] *See id.* at 38:22-24.

[4] *See id.* at 14:14-17.

4

New York City Council, the RAND Corporation, and the National Archive of Criminal Justice Data ("National Archive"). I specifically stated that the ruling applied to all years of data – in other words, although defendants only produced information from 2006 to RAND and other entities, they must now produce to plaintiffs the same categories of information for all years during which the data was collected, 1998 to 2004.[5]

Therefore there are only a few categories of UF-250 data that I have not already ordered to be produced. The categories of data not produced to RAND, the National Archive, or the City Council are:

- Sprint number
- Reporting and reviewing officers' names (officers' tax ID numbers were provided to RAND under a confidentiality agreement)
- Identifying information of individuals stopped
- Arrest, summons and complaint number

---

[5] *See id.* at 31:4-8. In addition, the New York Supreme Court ruled on May 29, 2008 that all data from the year 2006 forward, as well as from any calendar year prior to 2006 for which the data exists in electronic form, with the exception of personal identifying information of the officers and the individuals stopped, must be produced pursuant to a FOIL request by the New York Civil Liberties Union ("NYCLU"). The City has filed an appeal of the decision and the order to produce the data is stayed pending appeal.

5

## III. PRODUCTION OF RELEVANT INFORMATION

All information in the UF-250 database is discoverable under the broad standard of Rule 26(b) of the Federal Rules of Civil Procedure, which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[6] Defendants have not shown that any data fall under the law enforcement privilege, which is designed to prevent "disclosure of law enforcement techniques . . . to protect the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."[7] However, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, good cause exists to issue a protective order preventing plaintiffs from publicly disclosing information in the database that identifies suspects, police officers, or witnesses.

### A. Sprint Number

Defendants object to producing the sprint number associated with those stops that were made pursuant to a radio run, when a suspect is described

---

[6] Fed. R. Civ. P. 26(b)(1).

[7] *In re Dep't of Investigation of the City of New York*, 856 F.2d 481, 484 (2d Cir. 1988).

6

over the radio. Plaintiffs argue that the sprint number is relevant because it identifies the sprint report, which may contain a suspect description, allowing assessment of whether unlawful criteria were used as the basis for the stop.

Defendants' concern is that the sprint report may contain the telephone number and identity of the 911 caller. The actual sprint report, however, is not part of the UF-250 database. It is unclear from the parties' submissions whether a sprint report is publicly available once the sprint number is known, or whether plaintiffs must request the report from defendants. Either way, however, measures exist to prevent disclosure of the identity of 911 callers. Identifying information can be redacted from the sprint reports once they are requested, or if that is not possible, it can be covered by the protective order and remain confidential. Therefore defendants must produce the sprint number.

**B.      Stop Location**

Because the NYPD routinely justifies stops by noting that the suspect is in a high-crime area, the exact location of the stop is relevant. Defendants argue that they need not reveal the exact location because they will produce the precinct number of each stop. However, the precinct is a relatively large area and more specific information is needed to determine whether, as plaintiffs claim, "high crime area" is used as a proxy for the race and ethnicity of the area's residents.

Defendants also argue that stop locations are protected from disclosure by the law enforcement privilege. This argument is totally without merit. Stop and frisks routinely occur in public. The individuals stopped and observers in the area already know the location of many of these stops. Revealing stop locations would not disclose secret law enforcement techniques or interfere with a particular investigation.[8] Therefore defendants must produce the stop locations.

### C. Officers' Names and Tax ID Numbers

The names and identification numbers of the reporting and reviewing police officers are relevant to prove a pattern of unconstitutional stops and frisks across the entire NYPD, and to confirm or rebut defendants' contention that only certain officers (the "bad apples") stop individuals on the basis of race. Plaintiffs also must be able to identify the officers they wish to depose. To do this, however, plaintiffs only need a single means of identifying officers. The last four digits of each officer's tax ID number are sufficient to analyze the data and to identify individuals for deposition.

---

[8] *See Malsh v. New York City Police Dep't*, No. 92 Civ. 2973, 1995 WL 217507, at *3 (S.D.N.Y. Apr. 11, 1995) (to assert law enforcement privilege defendants must show that "specific harms" will result from disclosure of information).

A protective order preventing plaintiffs from disclosing the tax ID numbers of these officers will protect the officers from any possible danger and prevent disclosure of the identity of undercover officers. Therefore defendants must produce the last four digits of officers' tax ID numbers from the UF-250 database under a protective order.

### D. Identifying Information of Individuals Stopped

Plaintiffs argue that they need the name, address and phone number of each individual stopped in order to contact possible plaintiffs/class members. However, as defendants point out, no class has yet been certified. In the *Daniels* action, identifying information of individuals stopped was not produced until *after* a class was certified. A detailed protocol was negotiated to govern the production of names and contact information: only names from a single year of stops were produced, and plaintiffs agreed to only contact the individuals in writing.

The individuals stopped are not yet parties to this litigation, and their privacy interests must be respected. Plaintiffs have not demonstrated an immediate need for the identities of the individuals who were stopped. Therefore, this information need not be produced at this juncture. In the event a class is certified, the parties should attempt to negotiate a protocol regarding the identification of individuals who were stopped. If they fail to agree, I will refer

9

the issue to the Magistrate Judge to consider and recommend a proposed order.

E.      **Arrest Number, Summons Number, and Complaint Number**

If a stop and frisk results in an arrest, summons, or criminal charge, the arrest number, summons number, and other information about the criminal case is included in the database. This information is relevant to plaintiffs' claims, because whether the individual stopped was arrested and/or prosecuted, and the disposition of any criminal case, bears on whether the stop and frisks were conducted in a targeted manner.

However, arrest numbers will lead to discovery of criminal records, thereby disclosing the identity of the individuals stopped. Certain of these criminal records may be sealed. Despite the privacy concerns, this information is relevant and the identities of individuals arrested and charged can remain confidential under a protective order. Further, the number of names disclosed will be far fewer than the total number of individuals stopped. The RAND Corporation reports that in 2006 only ten percent of all stops resulted in an arrest or a summons.[9] Sealed criminal records will remain sealed, as plaintiffs will not be

---

[9]     *See* Greg Ridgeway, Analysis of Racial Disparities in the New York Police Department's Stop, Question, and Frisk Practices (2007) (RAND Corporation Report), Ex. 10 to Declaration of Andrea Costello in Support of Plaintiffs' Motion to Compel, at xv; 16-17.

10

able to obtain them simply because they have an arrest number or summons/complaint number. Therefore, defendants must produce arrest, summons and complaint numbers from the UF-250 database, but the numbers – and the criminal records that plaintiffs discover by using those numbers – shall remain confidential under a protective order.

### F. Photo Images of UF-250 Forms

Also included in the database are images of the actual UF-250 forms completed by the officers. The images are relevant to plaintiffs' allegations that officers often fail to actually fill out the forms. However, the forms contain the identifying information of individuals stopped, which defendants are not required to produce at this time. Defendants must produce the forms, but may redact the identifying information of individuals who were stopped and the names of the reporting and reviewing officers.

### G. Information About NYPD Training Programs

Plaintiffs also seek documents relating to NYPD training practices, including training of the Street Crimes Unit ("SCU"), which was disbanded several years ago. Documents relating to NYPD training programs are relevant to plaintiffs' pattern and practice claims. Defendants argue that SCU training documents are not relevant because the unit no longer exists. Plaintiffs respond

11

that although the SCU was disbanded, the NYPD has not improved its training in the way it agreed to do under the *Daniels* settlement, and that tactics and training programs similar to those used for the SCU are currently used by other units making street stops. The SCU training documents are therefore relevant to compare training and tactics prior to the *Daniels* settlement with current training and tactics.

Defendants also argue that the terms of the protective order in *Daniels* still apply to these documents and that therefore they should remain confidential in this litigation. The protective order in *Daniels*, however, applied only to that litigation. Defendants, who have made no substantive arguments to support their contention that documents related to SCU training programs should be confidential, have failed to meet their burden of proving that a protective order is needed for these documents.

## IV. SCOPE OF THE PROTECTIVE ORDER

Plaintiffs agree that the tax ID numbers of the reporting and reviewing officers should remain confidential. In addition, the confidentiality of the arrest number, summons number and complaint number, as well as any criminal records discovered using that information, should be safeguarded under a protective order. Any other UF-250 data that contains identifying information,

such as tattoos with full names or statements in the "narrative" fields listed above, should also be subject to the protection of a confidentiality order.

These confidentiality terms apply to both the post-*Daniels* data and the data previously produced to plaintiffs in the *Daniels* case. Although the parties agreed to keep all information produced during that prior litigation confidential, the confidentiality agreement in that case does not automatically apply to this action simply because it is a related matter. Further, since the time of the *Daniels* litigation UF-250 data from other years has been disclosed to the public. Therefore with respect to the UF-250 data produced in *Daniels,* the same terms apply as to all other years of UF-250 data: the protective order should cover only the names and tax ID numbers of police officers, arrest, summons, and complaint numbers, and other information in narrative fields that could identify the individual stopped.

## V. CONCLUSION

For the reasons described above, plaintiffs' motion is granted as to all data except the names and contact information of individuals who were stopped by the police and the names of the reporting and reviewing officers. Other personal identifying information in the database, or information that could lead to the disclosure of an individual's identity, must be produced but shall remain

13

confidential under a protective order. The Clerk of the Court is directed to close this motion (docket #23). A conference is scheduled for September 25 at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
September 9, 2008

## Appearances

**Counsel for Plaintiffs:**

Andrea Costello
Darius Charney
Kamau Franklin
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Tel: (212)-614-6439
Fax: (212)-614-6499

Jonathan C. Moore
Beldock, Levine & Hoffman

99 Park Avenue
Suite 1600
New York, NY 10016
Tel: (212) 490-0900
Fax: (212) 557-0565

**Counsel for Defendants:**

Heidi Grossman
Linda Donahue
Jennifer Rossan
David Hazan
New York City Law Department, Office of the Corporation Counsel
100 Church Street
New York, NY 10007
Tel: (212) 788-8084
Fax: (212) 788-9776