UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                         :
DAVID FLOYD, *et al.*,                                   :
                                                         :
                                  Plaintiffs,            :    08 Civ. 01034 (SAS)
                                                         :
                -against-                                :    ECF CASE
                                                         :
THE CITY OF NEW YORK, *et al.*,                          :    **MOTION FOR CLASS**
                                                         :    **CERTIFICATION**
                                  Defendants.            :
                                                         :
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**



                        CENTER FOR CONSTITUTIONAL RIGHTS
                        666 Broadway, 7th Floor
                        New York, New York 10012
                        (212) 614-6439

                        BELDOCK LEVINE & HOFFMAN, LLP
                        99 Park Avenue, Suite 1600
                        New York, New York 10016
                        (212) 490-0900

                        COVINGTON & BURLING LLP
                        The New York Times Building
                        620 Eighth Avenue
                        New York, New York 10018-1405
                        (212) 841-1000

                        *Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. iii

I.   INTRODUCTION ....................................................................................................1

II.  STATEMENT OF FACTS ........................................................................................2

     A.   Centralized, Citywide Policies and/or Widespread Customs or Practices
          Challenged by Plaintiffs.................................................................................2

          1.   Policy and/or Practice of Suspicionless Stops and Frisks............................2

          2.   Policy and/or Practice of Imposing Productivity Standards
               and/or Quotas ...........................................................................................3

          3.   Policy and/or Practice of Targeting Blacks and Latinos.............................4

          4.   Inadequate System/Procedures for Monitoring Officer Stop-
               and-Frisk Activity .....................................................................................4

     B.   The Court's Ruling on Defendants' Summary Judgment Motion .........................5

     C.   Named Plaintiffs ...........................................................................................5

     D.   The Putative Class Member Declarants ..............................................................6

     E.   Plaintiffs' Attempts to Reach a *Galvan* Stipulation with Defendants ....................6

III. CLASS CERTIFICATION SHOULD BE GRANTED BECAUSE THE PROPOSED
     CLASS SATISFIES THE REQUIREMENTS OF RULE 23.............................................7

     A.   Legal Standard ...............................................................................................7

     B.   The Proposed Class Satisfies the Requirements of Rule 23(a)................................8

          1.   Plaintiffs Meet the Implied Requirement of Ascertainability......................8

          2.   The Class is so Numerous that Joinder of All Members is Impracticable...9

          3.   The Proposed Class Satisfies the Commonality Requirement..................10

               a.   Plaintiffs Satisfy the Commonality Standard.................................11

               b.   The Wal-Mart "Significant Proof" Requirement Does
                    Not Apply to this Case.................................................................15

            c.     If Wal-Mart's Significant Proof Requirement Applies, the Proposed Class Meets It ................................................................17

      4.     The Claims of Named Plaintiffs are Typical of the Class .........................20

      5.     Named Plaintiffs and Proposed Class Counsel Will Fairly and Adequately Protect the Interests of the Class ..............................................21

  C.     The Proposed Class Satisfies the Requirements of Rule 23(b)(2)........................23

IV.     THE *GALVAN* DOCTRINE IS INAPPLICABLE .........................................................23

V.      CONCLUSION........................................................................................................................26

APPENDIX           .............................................................................................................27

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ......................................................................................23

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) .............................................................................23

*Biediger v. Quinipiac Univ.,*
    No. 3:09cv621 (SRU), 2010 WL 2017773 (D. Conn. May 20, 2010) .....................9

*Blecher v. Dep't of Housing Preserv. & Dev.,*
    No. 92 Civ. 8760 (CSH), 1994 WL 144376 (S.D.N.Y. Apr. 19, 1994) .................24

*Boyd v. Interstate Brands Corp.,*
    256 F.R.D. 340 (E.D.N.Y. 2009) .................................................................15

*Brown v. City of Barre,*
    No. 5:10-cv-81, 2010 WL 514783 (D.Vt. Dec. 13, 2010) ................................23

*Brown v. Kelly,*
    244 F.R.D. 222 (S.D.N.Y. 2007) *rev'd in part on other grounds*, 609 F.3d 467 (2d
    Cir. 2009) ................................................................................... passim

*Brown v Kelly,*
    609 F.3d 467 ...............................................................................12, 20

*Bumgarner v. NCDOC,*
    No. 5:10-CT-3166-BO, 2011 WL 4381753 (E.D.N.C. Sept. 20, 2011) ................16

*Casale v. Kelly,*
    257 F.R.D. 396 (S.D.N.Y. 2009) ..................................................... passim

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) ............................................................................9

*Cortigano v. Oceanview Manor Home for Adults,*
    227 F.R.D. 194 (E.D.N.Y. 2005) .................................................................21

*D.S. v. N.Y.C.Dep't of Educ.,*
    255 F.R.D. 59 (E.D.N.Y. 2008) ..................................................................12

*Damassia v. Duane Reade, Inc.,*
    250 F.R.D. 152 156 (S.D.N.Y. 2008) ...........................................................12

*Daniels v. City of New York*,
  198 F.R.D. 409 (S.D.N.Y. 2001) ................................................................. passim

*Davis v. Smith*,
  607 F.2d 535 (2d Cir. 1978) ................................................................................ 24

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ................................................................................ 22

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ........................................................................... 8, 17

*Fair Housing of the Dakotas v. Goldmark Prop. Mgmt., Inc.*,
  2011 WL 4381912 (D.N.D. Sept. 20, 2011) ......................................................... 16

*Finch v. N.Y.S. Office of Children and Family Servs.*,
  252 F.R.D. 192 (S.D.N.Y. 2008) ................................................................. passim

*Floyd v. City of New York*,
  No. 08 Civ. 1034 (SAS), 2011 WL 3856515 (S.D.N.Y. August 31, 2011) ............................. 1

*Galvan v. Levine*,
  490 F.2d 1255 (2d Cir. 1973) ................................................................... 6, 23, 24, 25

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ..................................................................................... passim

*Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*,
  201 F.R.D. 326 (S.D.N.Y. 2001) ......................................................................... 21

*Han v. Sterling Nat'l. Mortg. Co., Inc.*,
  No. 09–CV–5589 (JFB)(AKT), 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011) ..................... 16

*Harris v. Initial Securities Inc.*,
  No. 05 Civ. 3873 (GBD), 2007 WL 703868 (S.D.N.Y. Mar. 7, 2007) ................................. 16

*Haus v. City of New York*,
  03-cv-04915-RWS-MHD, Dkt # 180 (S.D.N.Y. filed Aug. 31, 2011) ............................ 13, 20

*Haynes v. Planet Automall, Inc.*,
  No. 09-CV-3880, 2011 WL 3555613 (E.D.N.Y. Aug. 12, 2011) ...................................... 18

*Hnot v. Willis Grp. Holdings Ltd.*,
  241 F.R.D. 204 (S.D.N.Y. 2007) ......................................................................... 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ................................................................................ 22

*In re Initial Pub. Offerings Secs. Litig.*
 471 F.3d 24 (2d Cir. 2006)..................................................................................7, 8, 17

*In re Nassau Cnty. Strip Search Cases,*
 461 F.3d 219 (2d Cir. 2006)..........................................................................................12

*Jermyn v. Best Buy, L.P.,*
 No. 08 Civ. 214(CM), 2011 WL 4336664 (S.D.N.Y. Sept. 15, 2011) ...............................12, 20

*Johnson v. Brennan,*
 No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ...................................8

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.,*
 654 F.3d 242 (2d Cir. 2011)..........................................................................................22

*MacNamara v. City of New York,*
 275 F.R.D. 125 (S.D.N.Y. 2011) ...........................................................................12, 20, 22

*Marisol A. v. Guiliani,*
 126 F.3d 372 (2d Cir. 1997)................................................................................8, 12, 20, 21

*McBean v. City of New York,*
 228 F.R.D. 487 (S.D.N.Y. 2009) .................................................................................12

*Mental Disability Law Clinic v. Hogan,*
 No. CV-06-6320 (CPS)(JO), 2008 WL 4104460 (E.D.N.Y. Aug. 26, 2008)...........................9

*Morrow v. City of Tenaha,*
 No. 2-08-cv-288-TJW, 2011 WL 3847985 (E.D. Tex. Aug. 29, 2011) ...........................19, 20

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,*
 08 Civ. 5653 (PAC), 2011 WL 3874821 (S.D.N.Y. Aug. 16, 2011)......................................10

*Nat'l Law Center on Homelessness & Poverty v. New York,*
 224 F.R.D. 314 (E.D.N.Y. 2004) .................................................................................22

*Nicholson v. Williams,*
 205 F.R.D. 92 (E.D.N.Y. 2001) .................................................................................10, 21

*People United for Children, Inc. v. City of New York,*
 214 F.R.D. 252 (S.D.N.Y. 2003) .................................................................................9

*Robidoux v. Celani.*
 987 F.2d 931 (2d Cir. 1993)..........................................................................................9, 20

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
 No. 10-1884-CV, 2011 WL 4436284 (2d Cir. Sept. 26, 2011) ...........................................8, 16

v

*Shakhnes v. Eggleston*,
   740 F. Supp. 2d 602 (S.D.N.Y. 2010)............................................................20

*Taylor v. Housing Auth. of New Haven*,
   257 F.R.D. 23 (D. Conn. 2009)....................................................................9

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier Inc.*,
   546 F.3d 196 (2d Cir. 2008).......................................................................7

*Van Orden v. Meyers*,
   No. 4:09CV00971 AGF, 2011 WL 4600688 (E.D. Mo. Sept. 30, 2011) ...............17

*Velez v. Novartis Pharm. Corp.*,
   244 F.R.D. 243 (S.D.N.Y. 2007) .................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ...................................................................... passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................... passim

U.S. Const. amend IV ...........................................................................1, 3

U.S. Const. amend. XIV ....................................................................... passim

## I.  INTRODUCTION

As this Court has previously observed, "[t]his case presents an issue of great public concern." *Floyd v. City of New York*, No. 08 Civ. 1034 (SAS), 2011 WL 3856515, *1 (S.D.N.Y. August 31, 2011). Policing policies that the City of New York has implemented over the past decade have led to a dramatic increase in the number of pedestrian stops, now on pace to exceed 720,000 per year. These trends have arisen in the "larger context of the historically racialized nature of criminal justice in this country," and in New York City. *Id.* at *1. There is a disturbingly large racial disparity in who is victimized by these practices. While the City claims this simply reflects good policing, in fact, Black and Latino men have been the targets and borne the brunt of these policies, as hundreds of thousands of law-abiding citizens have been stopped, questioned, and frisked based, in large part, on their race.

Against this backdrop, Named Plaintiffs David Floyd, Lalit Clarkson, Deon Dennis, and David Ourlicht submit this memorandum of law in support of their motion to certify the following class for declaratory and injunctive relief under Fed. R. Civ. P. 23(a) and (b)(2):

> All persons who since January 31, 2005 have been, or in the future will be, subjected, to New York Police Department ("NYPD")'s policies and/or widespread customs or practices of stopping, or stopping and frisking, persons in the absence of a reasonable, articulable suspicion that criminal activity has taken, is taking, or is about to take place in violation of the Fourth Amendment, including persons stopped or stopped and frisked on the basis of being Black or Latino in violation of the Equal Protection Clause of the Fourteenth Amendment.

Named Plaintiffs, collectively having been illegally stopped-and-frisked seven times since January 2005, bring this action on behalf of themselves and hundreds of thousands of other New Yorkers, most Black and Latino, who, like them, have been and/or are at risk of being stopped and frisked without reasonable suspicion and/or on the basis of their race.

The NYPD's stop-and-frisk policies and/or widespread customs or practices are nothing like the decentralized system of subjective decisionmaking at issue in *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S.Ct. 2541 (2011), but instead comprise the kind of unitary course of conduct by a single governmental system that courts in this Circuit have consistently found to warrant class action treatment both before and since *Wal-Mart*. Moreover, Plaintiffs have alleged and presented extensive evidence showing that the widespread pattern of unconstitutional stops is the direct result of NYPD policies, customs, and /or practices that are centralized and dictated from the top and implemented citywide. Further, Named Plaintiffs seek to certify the class under Rule 23(b)(2) to obtain broad affirmative class-wide injunctive relief—significant changes to NYPD stop-and-frisk policies and practices—that would benefit all class members.

As shown below, Plaintiffs satisfy, by the requisite standard of proof, each of the elements of Rule 23(a)—numerosity, commonality, typicality and adequacy—and show that class-wide treatment is appropriate under Rule 23(b)(2). Accordingly, the proposed class should be certified.

## II.    STATEMENT OF FACTS[1]

### A.    Centralized, Citywide Policies and/or Widespread Customs or Practices Challenged by Plaintiffs

Plaintiffs allege and challenge the constitutionality of several NYPD stop-and-frisk policies and/or widespread customs or practices that are centralized and/or implemented citywide ("Policies and/or Practices").

#### 1.    Policy and/or Practice of Suspicionless Stops and Frisks

---

[1]    Unless otherwise specified, all facts recited herein are set forth in the accompanying Declaration of Darius Charney dated November 7, 2011 ("Charney Decl.") and the exhibits thereto, and Declaration of Jeffrey Fagan dated November 7, 2011 ("Fagan Decl."); or in the record before the Court on Defendants' motion for summary judgment (Dkt # 134) and Plaintiffs' opposition thereto (filed under seal as Dkt # 132), including Plaintiffs' Response to Defendants' 56.1 Statement ("Pl. 56.1"); Plaintiffs' Additional Facts ("PAF"); the Affidavit of Jeffrey Fagan sworn to February 9, 2011 and the exhibits thereto, including the Fagan Expert Report ("Fagan Rpt.") and Fagan Supplemental Expert Report ("Fagan Supp. Rpt."); the Declaration of Darius Charney, dated February 16, 2011 and exhibits thereto; and the Declaration of Taylor Hoffman dated February 16, 2011, and exhibits thereto.

Plaintiffs allege that the NYPD engages in a policy and/or widespread custom or practice of suspicionless stops and frisks. *See* 2nd Am. Compl. ("SAC") (Dkt # 50) ¶¶ 99, 131. Plaintiffs have submitted a comprehensive statistical analysis by Jeffrey Fagan, Professor at Columbia University, of the NYPD's own stop-and-frisk data from 2004 through 2009, which shows that at least 6.41% (about 180,000) of all stops and frisks recorded during that period were unconstitutional because the stopping officers did not articulate a basis for reasonable suspicion required by the Fourth Amendment, while almost 700,000 additional stops, or 24.8%, were of questionable constitutionality for lack of sufficient documentation on which to determination whether there was requisite reasonable suspicion.[2] *See* Fagan Decl. ¶¶ 4-7; Expert Report of Jeffrey Fagan dated October 15, 2010 ("Fagan Rpt.") (Dkt # 132) at 55. Professor Fagan also found that more than 60,000 stops were based solely on furtive movements, which as a matter of law cannot constitute reasonable suspicion. Fagan Decl. ¶ 9. Professor Fagan also determined unconstitutional stops and stops of questionable constitutionality occurred in every single NYPD precinct. *See id.* ¶¶ 5-7, 9, Tables 1 and 2, Figure 1.

### 2. Policy and/or Practice of Imposing Productivity Standards and/or Quotas

Plaintiffs allege that one driving force behind suspicionless stops and frisks is the City's policy and/or widespread custom or practice of imposing productivity standards and/or quotas on officer enforcement activity. *See* SAC ¶¶ 114, 125. Plaintiffs have submitted extensive documentary, audio, and testimonial evidence that these quotas are used in several precincts and

---

[2]     Plaintiffs do not concede that the remaining 69% of stops were constitutional based on the information contained in the corresponding UF250 forms or otherwise.  To the contrary, while review and analysis of the UF-250s is strong evidence of the minimum extent to which the NYPD's policies and/or widespread custom or practice results in massive violations of Fourth and Fourteenth Amendment rights, it also demonstrates that Defendants are not "regulating the constitutional sufficiency of the huge volume of stops" conducted by the NYPD. *See* Fagan Rpt. (Dkt # 132) at 55; 8/31/2011 Op. & Ord. (Dkt #153) at 64; Pl. 56.1 (Dkt # 132) ¶ 11.

3

boroughs and that members of the NYPD's central administration, including the Chiefs of Department, Patrol, and Transportation, have been directly involved in imposing or encouraging them. *See* PAF (Dkt # 132) ¶¶ 55-100. Moreover, an October 17, 2011 Operations Order issued by NYPD Commissioner Raymond Kelly states that department managers "can and must set performance goals," for daily officer activity, including "conducting stops;" directs supervisors to review daily activity levels when evaluating officers' performance; and states that officers could receive negative evaluations and other adverse employment action when their activity levels are found to be too low. *See* Charney Decl., Ex. 12 ¶¶ 3, 9, 13-15.

### 3. Policy and/or Practice of Targeting Blacks and Latinos

Plaintiffs also allege and challenge the City's policy and/or widespread custom or practice of targeting Black and Latinos in NYPD stop-and-frisk activity based on race rather than reasonable suspicion. *See* SAC ¶¶ 107-113, 137,139. Plaintiffs have submitted extensive statistical evidence showing that this policy and/or widespread custom or practice applies all across the City. Blacks and Latinos are significantly more likely to be stopped and frisked than Whites anywhere in the City, regardless of a precinct's crime rates or racial composition. *See* Fagan Decl. ¶¶ 10-16, Table 3; Fagan Rpt. (Dkt #132) at 4, 41-47. In addition, NYPD Commissioner Kelly himself, who "has the last word" on the NYPD's stop-and-frisk and anti-racial profiling policies, *see* Charney Decl., Ex. 11 (Esposito 11/23/09 Tr.) at 364:10-365:6, said that the NYPD intentionally targets young Black and Latino men for stops without reasonable suspicion. *See* Charney Decl., Ex. 10 (Affidavit of Eric Adams) ¶¶ 4-5.

### 4. Inadequate System/Procedures for Monitoring Officer Stop-and-Frisk Activity

Plaintiffs allege that the City's failure to adequately monitor officer stop-and-frisk activity to ensure stops are based on reasonable suspicion and comply with the NYPD's anti-

4

racial profiling policy causes widespread suspicionless and/or race-based stops. *See* SAC ¶ 122. Specifically, Plaintiffs challenge the NYPD's stop-and-frisk audits, which include the Citywide Stop, Question, and Frisk Audit and the Worksheet 802 and 802-A command self-inspections. *See* Def. 56.1 (Dkt # 136) ¶¶ 25, 30, 35, 37; Pl. 56.1 (Dkt # 132) ¶¶ 25, 30, 35, 37; PAF (Dkt # 132) ¶¶ 1, 2, 32. The NYPD's Quality Assurance Division (QAD) developed all of these audit procedures, which are conducted uniformly in all NYPD divisions. *See* Def. 56.1 (Dkt # 136) ¶¶ 25-26, 28, 30-33, 35-37, 44-45, 55-56; Pl. 56.1 (Dkt # 132) ¶¶ 25-26, 28, 30-33, 35-37, 44-45, 55-56; PAF (Dkt # 132) ¶¶ 1-6, 13-14.

### B.   The Court's Ruling on Defendants' Summary Judgment Motion

In its August 31, 2011 Opinion and Order (Dkt # 153), this Court denied Defendants' motion for summary judgment, holding that Plaintiffs had established triable issues of fact as to whether: (i) the NYPD engages in a widespread practice of suspicionless stops and frisks (*id.* at 61-66); (ii) NYPD supervisors have a widespread custom or practice of imposing quotas on officer enforcement activity and such quotas are the "moving force" behind the widespread suspicionless stops (*id.* at 68-69); (iii) the NYPD has intentionally engaged in a widespread pattern and practice of race-based stops targeted primarily at Black and Latino pedestrians (*id.* at 70-76); and (iv) the NYPD's internal stop-and-frisk audits are so inadequate as to demonstrate a deliberate indifference to the need to monitor officers adequately to prevent a widespread pattern of suspicionless stops. (*Id.* at 83-84).

### C.   Named Plaintiffs

The four Named Plaintiffs are Black men who allege, and attest by declaration on this motion, that they were stopped or stopped and frisked without reasonable suspicion and/or on the basis of their race one or more times since 2006 in the Bronx, Harlem, and Queens. The facts surrounding their individual stops are set forth in their declarations. All live in New York City,

or recently did so, frequently visit relatives and friends and intend to return as full-time residents. Charney Decl., Ex. 2 ¶¶ 2-3, Ex. 3 ¶¶ 2-3, Ex. 4 ¶¶ 2-3, Ex. 5 ¶¶ 2-4. Their experiences and knowledge of the effect of NYPD's stop-and-frisk practices on people they know and on people of color throughout New York City cause them to fear they will be illegally stopped and frisked again in the future. *See id.*, Ex. 2 ¶ 17; Ex 3. ¶¶ 25, 27-28; Ex. 4 ¶ 19; Ex. 5 ¶¶ 6, 22-24.

While Named Plaintiffs individually request damages, their primary goal is to obtain declaratory and injunctive relief on behalf of themselves and the putative class. *See id.*, Ex. 2 ¶ 18, Ex. 3 ¶ 29, Ex. 4 ¶ 20, Ex. 5 ¶ 25. Each understands and is willing to fulfill his responsibilities and duties as class representative, and have participated in and cooperated with extensive discovery. *Id.*, Ex. 2 ¶ 19, Ex. 3 ¶ 30, Ex. 4 ¶ 21, Ex. 5 ¶ 26. They have been satisfied with the representation provided by lawyers seeking to be appointed class counsel. *Id.*, Ex. 2 ¶ 22, Ex. 3 ¶ 32, Ex. 4 ¶ 24, Ex. 5 ¶ 29.

### D.     The Putative Class Member Declarants

Several putative class members also submit declarations in support of this motion. Each attests that he is a Black New York City resident who was stopped one or more times without reasonable suspicion and on the basis of his race in different areas of Brooklyn, Harlem, and Manhattan, and that he fears being illegally stopped and frisked in the future. *See* Charney Decl., Exs. 6-9.

### E.     Plaintiffs' Attempts to Reach a *Galvan* Stipulation with Defendants

Plaintiffs wrote to Defendants on October 11, 2011, asking whether, in the absence of a certified class, Defendants would agree to: (i) implement any injunctive relief awarded by the Court citywide; (ii) disclose to Plaintiffs the personal identifying information of individuals whose stops and frisks were recorded in the NYPD UF250 database; and (iii) treat all communications between putative class members and Plaintiffs' counsel as privileged. *See*

Charney Decl, Ex. 1. To date, Defendants have refused to agree to any of these terms. Charney *Decl.* ¶ 15.

### III.   CLASS CERTIFICATION SHOULD BE GRANTED BECAUSE THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23

####    A.    Legal Standard

Class certification is appropriate where the proposed class meets, by a preponderance of the evidence following a court's "rigorous analysis," the requirements of Rule 23(a) and the proposed class constitutes one of the types of classes enumerated in Rule 23(b). *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011) (hereinafter "*Wal-Mart*"); *In re Initial Pub. Offerings Secs. Litig.* (hereinafter "*IPO*"), 471 F.3d 24, 29 (2d Cir. 2006); *Teamsters Local 445 Freight Div. Pension Fund v. Bombadier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).[3] Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Plaintiffs must also show the class definition is ascertainable. *IPO*, 471 F.3d at 44-45. Plaintiffs seek to certify a class under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule[.]" *Wal-Mart*, 131 S.Ct. at 2551-52 (2011).

---

[3] The Supreme Court's holding in *Wal-Mart* that a "rigorous analysis" of Rule 23(a)'s requirements "will entail some overlap with the merits of the plaintiff's underlying claim" comports with antecedent Second Circuit precedent. *Compare Wal-Mart*, 121 S.Ct. at 2551-52; *with IPO*, 472 F.3d at 40. Likewise, the Second Circuit previously determined "some proof" was an insufficient standard for meeting Rule 23's requirements. *Compare Wal-Mart*, 121 S.Ct. at 2551-2552; *with IPO*, 472 F.3d at 40.

"Rule 23 is given liberal rather than a restrictive construction, and courts are to adopt a standard of flexibility." *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, *4 (S.D.N.Y. Sept. 16, 2011) (quoting *Marisol A. v. Guiliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal quotations and citation omitted)); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (*"Costco"*) (Rule 23(a) requirements are "construed permissively[.]"). Although the Rule 23 inquiry "will entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart*, 121 S.Ct. at 2551-52 & n.6; *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 159 n.15 (1982), "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, No. 10-1884-CV, 2011 WL 4436284, *13 (2d Cir. Sept. 26, 2011) (quoting *IPO*, 471 F.3d at 41).

As shown below, the proposed class satisfies the requirements of Rule 23(a) and 23(b)(2) by a preponderance of the evidence.

## B.    The Proposed Class Satisfies the Requirements of Rule 23(a)

### 1.    Plaintiffs Meet the Implied Requirement of Ascertainability

In addition to Rule 23(a)'s enumerated requirements, courts have implied a requirement that class members be sufficiently ascertainable, meaning "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009) (Scheindlin, J.) (citing *7A F.P.P.C. §1760*). In cases seeking damages, this requirement protects all parties by objectively defining who is entitled to relief. *See Finch v. N.Y.S. Office of Children and Family Servs.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008). Where, however, a class challenges a policy and/or widespread custom or practice and seeks only injunctive or declaratory relief that will benefit all class members equally, this rationale for the implied ascertainability requirement is not present. *See Daniels v. City of New York*, 198 F.R.D. 409, 415 (S.D.N.Y. 2001) ("[G]eneral class

descriptions based on the harm allegedly suffered by plaintiffs [are] acceptable in class actions seeking only declaratory and injunctive relief under Rule 23(b)(2) . . . .") (internal quotations and citation omitted).

In *Daniels*, this Court certified an almost identical class, *see* 198 F.R.D. at 414-16, holding that "[t]he absence of a claim for money damages eliminates the need for individualized assessments of liability and harm." *Id.* at 415. A consensus has since emerged in this Circuit that Rule 23(b)(2) challenges to unlawful policies or practices where no classwide damages are sought need not individually identify class members because there is no opt-out provision, no need to define who is entitled to damages, and no need to determine how to apportion funds. *See e.g., Biediger v. Quinipiac Univ.*, No. 3:09cv621 (SRU), 2010 WL 2017773, *7 (D. Conn. May 20, 2010); *Casale*, 257 F.R.D. at 413; *Taylor v. Housing Auth. of New Haven*, 257 F.R.D. 23, 32 (D. Conn. 2009); *Finch*, 252 F.R.D. at 198; *Mental Disability Law Clinic v. Hogan*, No. CV-06-6320 (CPS)(JO), 2008 WL 4104460, *17 (E.D.N.Y. Aug. 26, 2008) (citing *Daniels*, 198 F.R.D. at 415 and collecting cases); *Brown v. Kelly*, 244 F.R.D. 222, 234-235 (S.D.N.Y. 2007) (Scheindlin, J.), *rev'd in part on other grounds*, 609 F.3d 467 (2d Cir. 2009); *People United for Children, Inc. v. City of New York*, 214 F.R.D. 252, 256 (S.D.N.Y. 2003).

Accordingly, Plaintiffs meet the implied requirement of ascertainability.

### 2. The Class is so Numerous that Joinder of All Members is Impracticable

To establish numerosity, a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A proposed class of forty or more presumptively establishes numerosity. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). However, "evidence of exact class size or identity of class members" is unnecessary, *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and "plaintiffs may rely on

reasonable inferences drawn from the available facts in order to estimate the size of the class."
*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 08 Civ. 5653 (PAC), 2011 WL
3874821, *1 (S.D.N.Y. Aug. 16, 2011) (internal quotations and citation omitted). Moreover,
courts have "relaxed the numerosity requirement where the putative class seeks injunctive and
declaratory relief pursuant to Rule 23(b)(2)," *Nicholson v. Williams*, 205 F.R.D. 92, 98
(E.D.N.Y. 2001) (citation omitted); *see also Casale*, 257 F.R.D. at 405, because the members of
such a class are usually "incapable of specific enumeration," Fed. R. Civ. P. 23(b)(2) Advisory
Committee Notes.

The proposed class indisputably exceeds forty members. According to its own data, the
NYPD conducted over 2.8 million stops on the streets of New York in the years 2004-2009, and
81.5% of those stopped were Black or Latino. Fagan Rpt. (Dkt # 132) at 18, 20, 22. Professor
Fagan's statistical analyses of the City's own data reveal that at least 6.4 % of the 2.8 million
stops recorded by NYPD officers between 2004 and 2009 (almost 180,000 stops) lacked
reasonable suspicion, including about 60,000 stops based solely on furtive movements. *See*
Fagan Decl. ¶¶ 5, 10-16. In light of Defendants' rigid adherence to the policing model that
resulted in at least 150,000 unconstitutional stops in 2004-2009, it is at very least reasonable to
find—indeed, it is unreasonable *not* to find—that at least a substantial portion, far exceeding
forty, of the more than 600,000 stops in 2010 and the more than 360,000 in the first half of 2011
similarly lacked legally sufficient bases. Fagan Decl. ¶ 17. Finally, the class seeks prospective
injunctive relief and includes as yet unidentifiable pedestrians at risk of being illegally stopped
and frisked in the future. *See* Part II.C *supra*. Accordingly, the proposed class satisfies the
numerosity requirement.

### 3. The Proposed Class Satisfies the Commonality Requirement

Commonality is established where "there are questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2). The Supreme Court's decision in *Wal-Mart*, 131 S.Ct. 2541, clarified this requirement in two respects. First, it held that plaintiffs seeking class certification must demonstrate the existence of common questions that generate classwide answers "apt to drive the resolution of the litigation." *Id*. at 2551. Second, applying a rule it originally articulated in *General Telephone Company of Southwest v. Falcon,* 457 U.S. 147, 157 (1982), the Court held that plaintiffs challenging a decentralized and subjective decision-making policy or practice that disparately impacts a specific group provide "significant proof" of a "general policy of discrimination" in order to meet this standard. *Wal-Mart*, 131 S.Ct. at 2253 (internal quotations and citation omitted).

As set forth below, Plaintiffs meet the *Wal-Mart* commonality standard because they challenge a unitary course of conduct by the City that uniformly affects all class members, and the common liability questions at issue will generate answers applicable across the class. Where plaintiffs, as here, challenge a centralized policy or a unitary course of conduct, the *Falcon/Wal-Mart* "significant proof" standard has never been applicable. Even if the significant proof standard applies in this context, however, Plaintiffs submit ample evidence to demonstrate a generalized policy and/or practice of unconstitutional stops and frisks.

### a. Plaintiffs Satisfy the Commonality Standard

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 121 S.Ct. at 2551 (citation omitted). This requires a "common contention . . . capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 2545. "Even a single common question will do." *Id*. at 2556 (internal quotations and citation omitted).

11

This has long been the Second Circuit standard. *See Brown v Kelly*, 609 F.3d 467, 468 and 484 (2d Cir. 2010) (finding commonality where common questions of law and fact "are likely to be central to all of the plaintiffs' cases"; where "plaintiffs were allegedly aggrieved by a single policy of the defendants and there is strong commonality of the violation and the harm"); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof.") (citation omitted). Pursuant to this standard, the Second Circuit has found commonality where class members' "injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377); *see also Brown* 609 F.3d at 484; *Jermyn v. Best Buy, L.P.,* No. 08 Civ. 214(CM), 2011 WL 4336664, *6 (S.D.N.Y. Sept. 15, 2011) (internal quotations and citation omitted); *Casale*, 257 F.R.D. at 411; *McBean v. City of New York*, 228 F.R.D. 487,493 (S.D.N.Y. 2009); *Finch,* 252 F.R.D. at 194. In such cases, as in *Wal-Mart*, courts examine whether the common questions of law or fact are "at the core of the cause of action," *MacNamara v. City of New York*, 275 F.R.D. 125(S.D.N.Y. 2011) (internal quotations and citation omitted), or create a "unifying thread" for all claims, *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 156 (S.D.N.Y. 2008). A unitary course of conduct exists, despite individualized circumstances, where "the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional [or illegal] practice or policy." *D.S. v. N.Y.C.Dep't of Educ.*, 255 F.R.D. 59, 71 (E.D.N.Y. 2008) (quoting *Daniels*, 198 F.R.D. at 417-18).

Plaintiffs are subject to violations of their Fourth and Fourteenth Amendment rights because of the City's Policies and/or Practices of directing, encouraging, or failing to prevent suspicionless or race-based stops, raising central and core questions of fact and law that, when answered, will resolve all class members' *Monell* claims against the City:

(1)   Whether New York City has a Policy and/or Practice of conducting stops and frisks without reasonable suspicion?

(2)   Whether the City has a Policy and/or Practice of stopping and frisking Black and Latino persons on the basis of race rather than reasonable suspicion?

(3)   Whether the NYPD's department-wide auditing and command self-inspection protocols and procedures demonstrate a deliberate indifference to the need to monitor officers adequately to prevent a widespread pattern of suspicionless and race-based stops?

(4)   Whether the NYPD's Policy and/or Practice of imposing productivity standards and/or quotas on the stop-and-frisk, summons, and other enforcement activity of officers is a moving force behind widespread suspicionless stops by NYPD officers?

In *Casale*, 257 F.R.D. at 411, the plaintiffs challenged the City's policy and practice of violating plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights through enforcement of unconstitutional loitering laws. This Court held the plaintiffs established commonality because central liability-related questions could be resolved on a classwide basis: the causal link between the policy or practice and the harm and a statute of limitations defense would be resolved classwide; and none of the claims required analysis of the circumstances of each challenged arrest. *Id.* Similarly, in *Brown*, 244 F.R.D. at 230, this Court rejected the City's argument that individual arrest circumstances precluded class certification because the common "core" questions of law and fact were "central" to all class members' claims, even though some officers may have had probable cause. *Id.* at 231. Despite individualized claims or defenses, commonality is satisfied where common questions drive classwide answers. *See id.* at 238; *see also* Appendix A (*Haus v. City of New York*, 03-cv-04915-RWS-MHD, Dkt # 180 (S.D.N.Y. filed Aug. 31, 2011)) at 287 ("[a]lthough the question of whether any individual plaintiff's interrogation was justified would necessarily be individualized, this does not preclude certification"); *Finch* 252 F.R.D. at 194 (in case challenging unconstitutional delays to

administrative hearings, case by case defense for delay did not defeat commonality). *See also Daniels*, 198 F.R.D. at 418 ("[B]ecause the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional practice or policy that allegedly injured or will injure the proposed class members—namely suspicionless stops—the commonality requirement is satisfied.").

Thus, individual circumstances of each stop-and-frisk incident do not defeat commonality here. Like the probable cause defense in *Brown*, the answers to the common questions of whether the City has a Policy and/or Practice of stopping and frisking pedestrians without reasonable suspicion or stopping and frisking Black and Latino persons on the basis of race will resolve the central merits issues for all persons allegedly subject to such Policy and/or Practice despite location (precinct or neighborhood) or the justification provided for a stop. *See* Part II.A.3. *supra*, (pointing to evidence that every precinct, regardless of racial composition or crime rate, has similar rates of racial disparity in stop rates); Fagan Decl. ¶¶ 5-16, Tables 1-3 (showing that race-based and otherwise suspicionless stops occur in every area of the City).

The NYPD's reliance on mid-level supervisors to carry out its Policies and/or Practices, *see* Def. 56.1 (Dkt # 136) ¶¶ 133, 247-51, does not preclude common resolution of the class claims. Determining whether the NYPD's department-wide auditing and command self-inspection protocols and procedures demonstrate a deliberate indifference to the need to monitor officers adequately to prevent a widespread pattern of suspicionless and/or race-based stops and whether the NYPD's policy and/or widespread custom or practice of imposing productivity standards and/or quotas on the stops and frisks, summons, and other enforcement activity of officers is a moving force behind widespread suspicionless stops by NYPD officers will resolve claims classwide. Any allegedly individualized or precinct-specific defenses based on the "chain

of command" structure are thus irrelevant. Plaintiffs' evidence, on summary judgment and this motion, establish that the City's stop-and-frisk Policies and/or Practices have been developed and implemented by the NYPD's central administration. *See* Parts II.A.2-4 *supra*. Because common issues are at the root of all class members' claims, the Court need not engage in "mini-trials."

The "determination of" the "truth or falsity" of the common questions here will resolve issues central to Plaintiffs' claims "in one stroke." *Wal-Mart,* 131 S.Ct. at 2551. Accordingly, Plaintiffs have established commonality.

### b. The *Wal-Mart* "Significant Proof" Requirement Does Not Apply to this Case

The Supreme Court's *Wal-Mart* decision and earlier precedent reveal that the "significant proof of a general policy of discrimination" requirement is inapplicable here. The plaintiffs in *Wal-Mart* alleged that hundreds of geographically dispersed supervisors exercised broad subjective discretion in thousands of pay and promotion decisions in a way that disparately impacted women in violation of Title VII. 131 S.Ct. at 2547. The managers' varying standards for pay and promotion were not logically common to the class. *See id.* at 2553. Importing language from *Falcon* (another Title VII disparate impact case challenging a decentralized, subjective decision-making scheme), the Court held that to "bridge the conceptual gap" between the claims of the named plaintiffs and the class there must be "significant proof that Wal-Mart operated under a general policy of discrimination." *See id.* at 2554 (quoting *Falcon,* 457 U.S. at 159 n.15). Prior to *Wal-Mart,* courts in the Second Circuit similarly required significant evidence of a classswide policy or effect where putative classes challenged a decentralized, subjective decision-making system that resulted in a discriminatory impact. *See Boyd v. Interstate Brands Corp.,* 256 F.R.D. 340, 360 (E.D.N.Y. 2009) (explaining that where class "complain[s] of an

15

overly subjective" policy causing discriminatory impact, plaintiffs must show "significant statistical proof that the alleged discrimination has had an effect on the class as a whole") (citing *Falcon*, 457 U.S. at 159 and collecting Second Circuit cases); *Harris v. Initial Securities Inc.*, No. 05 Civ. 3873 (GBD), 2007 WL 703868, *4 (S.D.N.Y. Mar. 7, 2007) ("where it is difficult to review the decision-making process because it involves subjective assessments by the [managers, then] 'significant statistical disparities are relevant to determining whether the challenged employment practice has a class-wide impact'") (citing, among others, *Falcon*, 457 U.S. at 157)). This requirement never altered the commonality inquiry undertaken in unitary course of conduct cases. *See* Part III.B.3.a. *supra*. Because Plaintiffs' claims here are based on centralized citywide Policies and/or Practices and not on a discretionary, subjective decision-making scheme, the Supreme Court's concerns about "bridg[ing] the conceptual gap" are not present. *Wal-Mart*'s significant proof requirement thus has no bearing on whether certification is appropriate in a case such as this, challenging "unitary course of conduct" by a "single system."

District courts have distinguished *Wal-Mart* from challenges to policies or practices that derive from a unitary course of conduct or single system. *See Fair Housing of the Dakotas v. Goldmark Prop. Mgmt., Inc.*, 2011 WL 4381912, *4 (D.N.D. Sept. 20, 2011) (determining *Wal-Mart*'s concern that plaintiffs failed to identify "common mode of discretionary decision making" in company irrelevant where plaintiffs allege unlawful policy); *Ramos*, 2011 U.S. Dist. Lexis 65593, at *16-17 (holding *Wal-Mart* was factually distinct and not applicable; plaintiffs met commonality requirement because challenged policy derived from unitary course of conduct).[4]

---

[4] Indeed, the *Wal-Mart* decision itself is not even cited by many courts in post-*Wal-Mart* policy and practice cases. *See, e.g., Shahriar* 2011 WL 4436284 ; *Han v. Sterling Nat'l. Mortg. Co., Inc.*, No. 09–CV–5589 (JFB)(AKT), 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011); *Bumgarner*

In sum, *Wal-Mart* did not alter the Second Circuit's approach to analyzing commonality in a case like this one. As set forth above, Plaintiffs' challenge derives from a "unitary course of conduct by a single system," where common issues override individual ones, and not the decentralized subjective decision-making regime at issue in cases like *Falcon* and *Wal-Mart*.

### c. If *Wal-Mart*'s Significant Proof Requirement Applies, the Proposed Class Meets It

Even if, *arguendo*, the Supreme Court intended to require significant proof of a general policy of discrimination in all putative class actions, Plaintiffs satisfy this requirement.

Preliminarily, while *Wal-Mart* requires significant proof of a general policy or practice that uniformly affects all class members, it does *not* require proof that such policy or practice is in fact unconstitutional or discriminatory. To hold otherwise would contradict decades of Rule 23 precedent–including *Wal-Mart* itself–that precluded consideration of the merits unless necessary to establish the requirements of the rule. *See Wal-Mart*, 131 S.Ct. at 2552 n.6 (overlapping merits inquiry is appropriate to the extent necessary to resolve whether the requirements of Rule 23(a) have been met) (citing *Falcon*, 457 U.S. at 160-61); *In re IPO*, 471 F.3d at 41("[A] district judge should not assess any aspect of the merits unrelated to a *Rule 23* requirement."). Thus, in a recent post-*Wal-Mart* decision in an almost-identical Title VII gender discrimination case, the Ninth Circuit explained that while the significant proof standard required plaintiffs to provide "evidence that the entire class was subject to the same allegedly discriminatory practice," the trial court "was not required to resolve factual disputes regarding [] whether women were in fact discriminated against." *Costco*, 657 F.3d at 983. *See also Hnot v. Willis Grp. Holdings Ltd.*, 241 F.R.D. 204, 211 (S.D.N.Y. 2007) ("[A] line may be drawn, even

---

*v. NCDOC*, No. 5:10-CT-3166-BO, 2011 WL 4381753 (E.D.N.C. Sept. 20, 2011); *Van Orden v. Meyers*, No. 4:09CV00971 AGF, 2011 WL 4600688 (E.D. Mo. Sept. 30, 2011).

in a case such as this in which the merits and the Rule 23(a) commonality determination significantly overlap. Commonality requires that plaintiffs present common *questions* of fact or law; plaintiffs' ultimate success at trial on the merits requires an *answer* to that question, specifically that defendants actually did discriminate against plaintiffs.").

Plaintiffs here have provided the very evidence of a "general policy" that the Supreme Court found lacking in *Wal-Mart*. First, in contrast to the statistics relied upon by the *Wal-Mart* plaintiffs, which were not disaggregated into small enough geographic areas to determine if the complained-of gender disparities existed nationwide or only in a small number of stores, *see Wal-Mart*, 131 S.Ct at 2555, the stop-and-frisk statistics presented by Professor Fagan are disaggregated by individual NYPD precincts and show that large numbers of suspicionless stops are conducted, and exceptionally high Black-White and Hispanic-White stop rate disparities which could not have occurred by chance exist, in every or almost every single precinct, regardless of its demographics or crime rates. *See* Fagan Decl. ¶¶ 5-16, Tables 1-3; Fagan Rpt. (Dkt # 132) at 4, 41-47. Such "overwhelmingly convincing" statistical evidence can in turn be proof of a "systematic policy." *Haynes v. Planet Automall, Inc.*, No. 09-CV-3880, 2011 WL 3555613, *9-10 (E.D.N.Y. Aug. 12, 2011) (citations omitted); *see also Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 263 (S.D.N.Y. 2007) (plaintiffs' evidence of statistically significant company-wide gender disparities was "adequate to establish that whether or not [defendant]'s promotion and compensation policies subject class members to discrimination is an issue common to all class members") (citation omitted). Second, while the *Wal-Mart* plaintiffs tried to certify a nationwide class using anecdotal evidence from female employees in only six states, *see* 131 S.Ct. at 2556, Plaintiffs' anecdotal evidence, including declarations, deposition testimony, and documents, describes illegal stops and frisks that have occurred all over the City. *See*

Charney Decl., Exs. 2-9; PAF (Dkt # 132) ¶¶ 73-78. Most importantly, Plaintiffs have identified and provided evidence of specific, centralized NYPD Policies and/or Practices that tie this statistical and anecdotal evidence together, including the use of quotas and productivity standards for officer enforcement activity, an inadequate stop-and-frisk monitoring system, and an explicit decision to target stop-and-frisk activity to Blacks and Latinos. *See* Part II.A. *supra.*

The evidence Plaintiffs present is very similar to that relied upon by the plaintiffs in obtaining class certification in *Morrow v. City of Tenaha*, No. 2-08-cv-288-TJW, 2011 WL 3847985 (E.D. Tex. Aug. 29, 2011). There, the plaintiffs challenged a municipal police department's drug interdiction program under which officers allegedly targeted racial and ethnic minorities for vehicle stops, detentions, searches, arrests, and seizures of personal property without legal justification in violation of the Fourth and Fourteenth Amendments. *Id.* at *1. While decisions about when to search or arrest individual motorists and what property to seize were made by individual officers, *id.* at *2, the court nevertheless found that the plaintiffs had provided "significant proof of a general policy" by proffering: (1) statistical evidence of a drastic increase in the stops of minority motorists after commencement of the interdiction program which could not have occurred by chance; (2) anecdotal evidence regarding two individual traffic stops of the named plaintiffs; (3) deposition testimony from police department personnel about the involvement of high-level officials in developing and implementing the program; and (4) evidence that police and city officials had failed to collect and report racial profiling data on vehicle stops as required by Texas law. *Id.* at * 2-3, 18-20.[5] The *Morrow* court certified the class under Rule 23(b)(2), and this Court should do the same here.

---

[5] Despite applying the significant proof standard, the court in *Morrow* distinguished the discretionary policy challenged in *Wal-Mart* from the "specific, city-wide policy" at issue, *see* 2011 WL 3847985, at *18, and ultimately held that commonality was present where the common

Finally, and significantly, this Court held that Plaintiffs established triable issues of fact regarding several of the very policies and practices which they are challenging on a classwide basis. *See* Dkt # 153, at 66, 68-69, 73, 76, 83-84. Two District Courts in the Second Circuit have held, after *Wal-Mart*, that commonality was established where there were triable issues of fact as to the existence of the policy that the putative class challenged. *See Jermyn*, 2011 WL 4336664 at *6 (holding plaintiffs had presented "significant (indeed ample) proof" of the existence of illegal policy where such evidence had been sufficient to overcome defendants' prior summary judgment motion); Appendix A (*Haus v. City of New York*) at 285-86 (where issues of material fact precluded summary judgment against plaintiff arrestee sub-class on claim of NYPD policy of political interrogation, same issues of material fact present common questions of law or fact to satisfy commonality).

Accordingly, even under the *Wal-Mart* significant proof requirement, Plaintiffs have established commonality.

### 4. The Claims of Named Plaintiffs are Typical of the Class

Typicality is established "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown*, 609 F.3d at 475 (quoting *Marisol A.*, 126 F.3d at 376); *see also MacNamara*, 275 F.R.D. at 138; *Daniels*, 198 F.R.D. at 418. Where, as here, the same unlawful conduct affected Named Plaintiffs and the class members, it is not necessary that "the factual predicate of each claim be identical to that of all class members." *Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 625 (S.D.N.Y. 2010) (citations omitted); *see also Robidoux*, 987 F.2d at 936-37 (absence of

---

question of whether the municipality targeted minorities in its stop and seize program would "'generate common answers apt to drive the resolution of the litigation' *because* the answer to this question will conclusively establish whether [the city's] interdiction program is ~~discriminatory and, thus, whether an injunction putting an end to [the city's] program is~~ warranted." *Id.* at *20 (emphasis added) (quoting *Wal-Mart*).

"minor variations in the fact patterns underlying individual claims" not required under Rule 23(a)(3)). Rather, the "crux" of the typicality inquiry "is to ensure that maintenance of a class action is economical and [that] the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.*, 126 F.3d at 376 (quoting *Falcon*, 457 U.S. at 157). Thus, "named plaintiffs satisfy the typicality requirement when all members of the class would benefit from the named plaintiffs' action." *Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 201 F.R.D. 326, 332 (S.D.N.Y. 2001); *Cortigano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 206 (E.D.N.Y. 2005) (same). Where plaintiffs seek classwide injunctive and declaratory relief, there "is ample basis for finding that the claims of the named plaintiffs are typical of those of the proposed class." *Nicholson*, 205 F.R.D. at 100.

Here, Named Plaintiffs, like the members of the proposed class, assert Fourth and Fourteenth Amendment claims arising out of the NYPD's unitary, citywide Policies and/or Practices of stopping and frisking pedestrians without reasonable suspicion and/or based on race, and seek classwide injunctive and declaratory relief including, changes to the NYPD's stop-and-frisk practices, that will benefit all class members. *See* SAC ¶¶ 131-144 & Wherefore Clause ¶ d; Charney Decl., Ex. 2 ¶ 18; Ex. 3 ¶ 29; Ex.4 ¶ 20; Ex. 5 ¶ 25. Typicality is therefore satisfied.

### 5.   Named Plaintiffs and Proposed Class Counsel Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) mandates that the interests of the named plaintiffs coincide with the interests of the class. In addition, Rule 23(g)(1) requires that class counsel is sufficiently qualified and experienced to conduct the litigation. Fed. R. Civ. P. 23(g)(1). Here, both requirements are met.

To satisfy the initial element, "the proposed class representative must have an interest in

21

vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Only conflicts that are "fundamental" will preclude class certification. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Named Plaintiffs have vigorously pursued the class claims: each has been deposed, some twice; each has participated in discovery, including document discovery and photo arrays; each is in regular contact with counsel; and each has a demonstrated understanding of this action. *See* Charney Decl., Ex. 2 ¶¶ 17, 19-22; Ex. 3 ¶¶ 28, 30-32; Ex. 4 ¶¶ 19, 21-24; Ex. 5 ¶¶ 24, 26-29. Their interests are consistent with the interests of the class: all were subjected to the same injury (*i.e.*, suspicionless and race-based stops in violation of the Fourth and Fourteenth Amendments) and will derive the same benefit from the injunctive and declaratory relief sought. Under these circumstances, courts have consistently found the adequacy requirement satisfied. *See MacNamara,* 275 F.R.D. at 144 ("[I]f the named Plaintiffs prevail, the putative class members will also benefit, since all were subject to the same allegedly unconstitutional course of conduct."); *Nat'l Law Center on Homelessness & Poverty v. New York*, 224 F.R.D. 314, 325 (E.D.N.Y. 2004) (same).

Class counsel will represent the class fairly and adequately. CCR, a non-profit civil rights organization, has represented plaintiffs in civil rights litigation, including several large federal class actions, since 1966. BLH has extensive experience litigating class action civil rights lawsuits. Covington is a leading global law firm whose lawyers have handled numerous class actions, including cases alleging violations of Fourth and Fourteenth Amendment rights. CCR and BLH served as counsel for the plaintiff class in *Daniels*. Together, class counsel have the

experience (including twelve years of litigation over the City's stop-and-frisk policy), knowledge of applicable law, and resources required to represent the class. *See* Charney Decl. ¶¶ 3-12.

### C.    The Proposed Class Satisfies the Requirements of Rule 23(b)(2)

Certification under Rule 23(b)(2) is appropriate where defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23 (b)(2). Certification is proper under 23(b)(2) where the class seeks "an indivisible injunction benefitting all its members at once." *Wal-Mart*, 131 S.Ct. at 2558. In class actions seeking only injunctive relief, a (b)(2) class "is almost automatically satisfied," *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994), because "[p]redominance and superiority are self-evident." *Wal-Mart*, 131 S.Ct. at 2558. Rule 23(b)(2) was designed as a vehicle for challenging and curbing discrimination and fostering institutional reform by facilitating challenges to widespread rights violations, *see* Fed. R. Civ. P. 23 Advisory Committee's Notes, *reprinted in* 39 F.R.D. 69, 102 (1966). Thus, "civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture." *Wal-Mart*, 131 S.Ct. at 2557 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Putative classes alleging discrimination and other unconstitutional actions by governmental agencies and seeking injunctive and declaratory relief are routinely certified under Rule 23(b)(2). *See, e.g., Finch*, 252 F.R.D. at 198; *Brown*, 244 F.R.D. at 234; *Brown v. City of Barre*, No. 5:10-cv-81, 2010 WL 514783 (D.Vt. Dec. 13, 2010).

Plaintiffs seek to certify the class to end Defendants' unconstitutional Policies and/or Practices of suspicionless and race-based stops and frisks. The challenged Policies and/or Practices affect the class as a whole and the relief sought will benefit all class members. Plaintiffs' proposed class thus meets the Rule 23(b)(2) requirements.

### IV.    THE *GALVAN* DOCTRINE IS INAPPLICABLE

Under the *Galvan* doctrine, established by the Second Circuit in *Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973), courts may decline to certify a Rule 23(b)(2) class where "the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment." *Davis v. Smith*, 607 F.2d 535, 540 (2d Cir. 1978). The *Galvan* court itself explained that an action seeking declaratory and prohibitory injunctive relief against state officials for an unconstitutional statute or policy, "is the archetype of one where class action designation is largely a formality," particularly where the defendant agrees that a judgment binds it as to all claimants and agrees to withdraw the challenged policy or statute before judgment is entered. *Galvan*, 490 F.2d at 1261. In determining the applicability of *Galvan*, courts consider, *inter alia*, whether a defendant affirmatively stated that any relief will be applied across the board to all similarly situated persons; whether the challenged policy or statute is voluntarily withdrawn or not enforced; and whether the relief sought is merely declaratory, and not complex and affirmative. *Blecher v. Dep't of Housing Preserv. & Dev.*, No. 92 Civ. 8760, 1994 Wl 144376, *6 (S.D.N.Y. Apr. 19, 1994); *Daniels*, 198 F.R.D. at 421 (quoting *Blecher*); *Casale*, 257 F.R.D. at 406-07 (same). These factors weigh heavily against applying *Galvan* here.

First, the City not only refuses to end its unconstitutional stop-and-frisk Policies and/or Practices; it has denied for more than a decade that they are even unlawful. The City aggressively defended against the *Daniels* litigation for four years and, after finally agreeing to settle in 2003, failed to implement several provisions designed to prevent unconstitutional stops and frisks, including those related to stop-and-frisk audits and compliance with the NYPD's anti-racial profiling policy. *See* Def. 56.1 (Dkt # 136) ¶¶ 16, 23, Grossman Decl (Dkt # 137), Ex. B; Pl. 56.1 (Dkt # 132) ¶¶ 16, 23, 25-26, 29; PAF (Dkt # 132) ¶¶ 47-54; 8/31/2011 Op. & Ord. (Dkt

# 153) at 78-81. When previously faced with this sort of "past resistance to redressing constitutional wrongs," including a record of "patterned unwillingness to voluntarily modify internal procedures in order to ensure compliance with court orders," this Court held that certification was necessary. *See Brown*, 244 F.R.D. at 236. Additionally, Defendants have refused to state affirmatively that they will implement any injunctive relief ordered by the Court citywide in the absence of a certified class. *See* Charney Decl., ¶ 15, Ex. 1.[6] This is especially problematic, given the complex and affirmative injunctive remedies Plaintiffs seek, *see* SAC. Wherefore Clause ¶ d, which must be implemented citywide to benefit all class members.

Further, in *Daniels*, this Court found two additional factors that weighed in favor of class certification, both of which are present here. Specifically, the Court ruled in *Daniels* that class certification was not a formality where, in the absence of a certified class, defendants objected to producing personal identifying information of stopped-and-frisked individuals contained in the UF250 database and where plaintiffs' counsel would otherwise not be able to conduct privileged communications with alleged non-named plaintiff victims of unlawful stops and frisks. 199 F.R.D. 513, 514-15 (S.D.N.Y. 2001); 2001 WL 22809 (S.D.N.Y. Mar. 8, 2001). In this case the Court has already held that Plaintiffs are entitled to such identifying information "in the event a class is certified." *See* Opinion and Order, dated September 9, 2008 (Dkt # 45), at 9. Defendants have thus far refused to agree to disclose that information to Plaintiffs or to treat as privileged Plaintiffs' counsel's communications with non-named plaintiff stop-and-frisk victims in the absence of a certified plaintiff class. *See* Charney Decl. ¶ 15, Ex. 1.

---

[6] In response to Plaintiffs' October 11, 2011 letter, Defendants have merely offered to stipulate that they "will apply the Court's declaratory and injunctive rulings in [this case] to all persons similarly situated to the named plaintiffs", *see* Charney Decl. ¶ 15, which was precisely the language contained in Defendants' proposed *Galvan* stipulation in *Daniels* which this Court found insufficient to eliminate the need for class certification. 199 F.R.D. at 515.

## V.     CONCLUSION

For the reasons set forth above, and in the interest of justice, Plaintiffs respectfully

request that the Court grant the instant motion for class certification.

Dated: New York, New York
        November 7, 2011

By: _____
    DARIUS CHARNEY

        Darius Charney
        Sunita Patel
        CENTER FOR CONSTITUTIONAL RIGHTS
        666 Broadway, 7th Floor
        New York, New York 10012
        (212) 614-6439
        dcharney@ccrjustice.org
        spatel@ccrjustice.org

        Jonathan Moore
        Jennifer Borchetta
        BELDOCK LEVINE & HOFFMAN, LLP
        99 Park Avenue, Suite 1600
        New York, New York 10016
        (212) 490-0900
        jmoore@BLHNY.com
        jborchetta@BLHNY.com

        Philip A. Irwin
        Eric Hellerman
        Gretchen Hoff Varner
        COVINGTON & BURLING LLP
        The New York Time Building
        620 Eighth Avenue
        New York, New York 10018-1405
        (212) 841-1000
        pirwin@cov.com
        ehellerman@cov.com
        ghoffvarner@cov.com

        *Attorneys for Plaintiffs*

26

**<u>APPENDIX</u>**