# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID FLOYD, *et al.*,

        **Plaintiffs,**

-against-

THE CITY OF NEW YORK, *et al.*,

        **Defendants.**

_____/

08 Civ. 01034 (SAS)

**DECLARATION OF LALIT CLARKSON**

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF NEW YORK  )

    I, LALIT CLARKSON, declare as follows pursuant to 28 U.S.C. section 1746:

    1.    I am a named plaintiff in the above-captioned case. I submit this affidavit in support of Plaintiffs' motion for class certification.

    2.    I am a 30-year-old African-American man who was raised in New York, New York. My mother is Indian and my father is of African descent. While I have occasionally been told that I appear Latino, I identify as African-American and appear to be an African-American man.

    3.    In the fall of 1999, I left New York City to attend college. I returned to New York City in December 2001. With the exception of April 2008 until January 2009 (when I was sent to Boston, Massachusetts for my job), I have lived in New York City full-time since then. I have no intention to move out of New York City.

4. I am a member of the Malcolm X Grass Roots Movement, which helps educate individuals on their rights during interactions with police officers. I participated in "Know Your Rights" training, and through the organization I help individuals file complaints with the New York City Civilian Complaint Review Board if they feel their rights have been violated.

5. I decided to become a named plaintiff in this lawsuit after having been stopped and detained by New York City Police Department (NYPD) officers despite the absence of any reason to believe that I had committed, was committing, or was about to commit a crime.

6. I was stopped by NYPD officers on a weekday in January 2006 at approximately 1:00 in the afternoon. At that time, I was on my lunch break from my job as a teaching assistant at Grand Concourse Academy Charter School in the Bronx. I left the school and walked to a Subway sandwich shop on 167th Street and Walton Avenue, which is roughly two blocks from the school. I was wearing my usual work attire: a dress shirt, tie, and dress pants.

7. At the Subway sandwich shop, I bought a sandwich, which I then carried out of the shop with me in a clear plastic bag with the Subway logo on it. I did not carry anything else in my hands.

8. I then walked back toward the school and stopped at a bodega across the street from the school, on the corner of 169th Street and Walton Avenue. I did not stop at any point between the Subway sandwich shop and the bodega.

9. When I entered the bodega I saw two officers dressed in plainclothes standing inside. I purchased a bag of chips and exited the bodega.

10. The officers followed me outside and called out to me.

11. As I turned around, the officers flashed their badges, identified themselves as "NYPD," and told me, with words and gestures, to come over to them.

12. I walked over to the officers. The officers subsequently moved so that I was positioned with my back to the window of the bodega. The officers were standing between me and the street, and stood less than two feet away from me. I felt like I was not free to go.

13. The officers asked where I was going. I pointed to the school across the street and told them that I worked there. I explained to the officers that I was getting a sandwich because I was on my lunch break. The officers said that they saw me coming down from 168th Street and that there is a known drug building on that block. The officers did not provide any other details about the building. I did not know what building they were referring to, nor did I know of any buildings known for drug activity on the street.

14. One of the officers asked if I had any contraband on me. I responded that I did not have any contraband, and told the officers that I did not consent to a search. The officer asked me again if I had anything on me. Again, I responded no and that I did not consent to a search. Next, the officers moved closer to me. The same officer raised his voice and asked a third time, "so if I go into your pockets, you're telling me you don't have anything?" By this time, people from a nearby restaurant had come outside. After I answered a third time that I did not have anything on me and did not consent to a search, the officers walked away. I did not see either officer fill out any paperwork.

15. I strongly believe that the NYPD officers stopped and detained me without any basis for believing that I had committed, was committing, or was about to commit a crime, and that I was stopped because of my race. I was not doing anything suspicious surrounding the time of the stop. I was on my lunch break, carrying a sandwich in a clear plastic Subway sandwich bag and wearing a dress shirt and tie. Furthermore, the officers neither provided any details about the drug building they mentioned, nor asked me any questions about the building.

16. This incident was a very upsetting and humiliating experience for me.

17. Through my volunteer work with the Malcolm X Grass Roots Movement I have heard many stories similar to my own. In addition, many of my African-American and Latino friends who live in New York City have shared with me one or more similar encounters which they have had with NYPD officers. Because of these experiences and my knowledge of the NYPD's stop-and-frisk statistics and by reading stories in the local media, I strongly believe that the NYPD has a department-wide policy and practice of illegal and racially-discriminatory stops and frisks. For this reason, I constantly fear being harassed and having my constitutional rights violated by NYPD officers whenever I walk the streets of New York City.

18. My goal in joining this lawsuit, much more than any monetary damages for myself, is to change the NYPD's stop-and-frisk practices to stop the NYPD from ever stopping-and-frisking me, my friends, or other New Yorkers without reasonable suspicion or based on their race.

19. I have actively participated in this lawsuit since I became a plaintiff, including sitting for two all-day depositions and responding to two separate sets of document requests and interrogatories from the Defendants.

20. I understand that if I am certified as a class representative, it will only be for purposes of injunctive and declaratory relief. As I described above, I share a common interest with all victims of the NYPD's unconstitutional and racially-discriminatory stop-and-frisk policies and practices: to put an end to such policies and practices. Therefore, I do not have any claims for injunctive and declaratory relief that are unique to me, and there is no reason why I would not be able to adequately protect the interests of absent class members with respect to injunctive relief.

21. I understand that, if I am certified as a class representative, I may be called upon to formulate settlement offers and evaluate offers from the City of New York that have to do with reforming the NYPD's policies and practices related to stop-and-frisk. I understand that a settlement would involve some degree of compromise. I am prepared to discuss the options with my attorneys and represent the interests of the class to the best of my ability.

22. I am represented in this litigation by attorneys from the Center for Constitutional Rights, Beldock, Levine, and Hoffman LLP, and Covington & Burling LLP. I am in regular contact with my attorneys and I have been very satisfied with their legal representation. I am confident that if appointed as class counsel, they will vigorously and competently represent the interests of the class members.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury this 4th day of November, 2011, that the foregoing is true and correct.

LALIT CLARKSON