# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID FLOYD, *et al.*,

             **Plaintiffs,**

  **-against-**

THE CITY OF NEW YORK, *et al.*,

             **Defendants.**

---

08 Civ. 01034 (SAS)

**DECLARATION OF DEON DENNIS**

---

STATE OF SOUTH CAROLINA    )
                            ) ss.:
COUNTY OF SUMTER          )

I, DEON DENNIS, declare as follows pursuant to 28 U.S.C. section 1746:

1.     I am a named plaintiff in the above-captioned case. I submit this affidavit in support of Plaintiffs' motion for class certification.

2.     I am a 41-year-old African-American man who was born and raised in New York, New York. Except for approximately six years I spent working in South Carolina in the 1990s, I lived in New York as a full-time resident until I moved to Sumter, South Carolina, in October 2008.

3.     While I currently live in South Carolina, my parents, brother, and many other family members and friends still live in New York City. I travel to New York regularly to visit them whenever I have time off from work. I intend to move back to New York City in the future.

4.     I decided to become a named plaintiff in this lawsuit after having been stopped, frisked, arrested, and imprisoned by New York City Police Department (NYPD) officers despite

the absence of any reason to believe that I had committed, was committing, or was about to commit a crime.

5. On the night of Saturday, January 12, 2008, I was at my then-girlfriend Kendra Edward's apartment for her birthday party. Her apartment was located at 2034 7th Avenue, between 122nd and 121st Streets. I was also living at the apartment at the time.

6. At approximately 11:00 p.m., Kendra and I went outside. Kendra went to the store, and I stood on the sidewalk in front of the apartment building waiting for her and smoking a cigarette. I was not holding anything except the cigarette in my hands or drinking anything while I was waiting for Kendra.

7. Two NYPD officers, driving a blue and white NYPD van, pulled up next to me. They got out of the van, and approached me. One of the officers was female and the other was male. I now know that the female officer was Officer Salmeron and the male officer was Officer Pichardo. The officers stood on either side of me, and I felt like I was not free to leave.

8. Officer Salmeron asked me if I had been drinking. She also asked me if a white styrofoam cup that was on the ground five feet to my right belonged to me. I told her that it wasn't my cup.

9. The officers did not touch the cup or examine it in any way.

10. The officers asked for my identification and I handed Officer Salmeron my New York driver's license.

11. At that point, Kendra returned from the store and asked me what had happened. She was upset that I had been detained, and asked the officers why they were doing this to me. The officers did not respond.

2

12.     Officer Salmeron took my license and went back inside the van and Officer Pichardo searched my jacket and pants pockets. He did not find anything in my pockets other than my wallet.

13.     After about five or ten minutes, Officer Salmeron came back to the sidewalk where Officer Pichardo and I were still standing. She told me that there was a bench warrant for me and that they were going to have to take me in. I asked what the warrant was for and she said that it was a warrant from last year (2007) for hopping the train, which is taking the subway without paying for it. I explained to her that I do not ride the subway and that I drive for a living. I said that the warrant could not be for me.

14.     The officers handcuffed me and took me to the 28th Precinct. During the ride in the van, I told the officers it was a mistake. Officer Salmeron said if it was a mistake they would let me go.

15.     When I arrived at the precinct the officers took me to the desk sergeant. Officer Pichardo told me he was going to find Officer Hayes to see if there was actually a warrant for me. Approximately five minutes later, Officer Pichardo returned and told me that he did not think there was a warrant for me.

16.     Officer Pichardo left again and returned a few minutes later with Officer Hayes. Officer Hayes said that I had a warrant for disorderly conduct from 1994.

17.     I told him that I was not even living in New York City in 1994. In 1994, I was living in South Carolina, so I knew that there could not have been a warrant. I was then taken to a holding cell by Officer Hayes.

18.     At some point, Kendra arrived at the precinct. While I was in the cell I could hear Kendra asking Officer Hayes if she could get my wallet. Officer Hayes told her no.

3

19. I was held at the precinct for approximately seven hours and then was taken to Central Booking.

20. At Central Booking I was searched and taken to another cell where I was held for approximately four more hours.

21. Finally, an officer told me that I was free to go. I asked him if I had to see the judge, and he said, "No, you never had a warrant, I don't know why they arrested you."

22. I was then taken to the warrant division. The officer in the warrant division ran the warrant again and told me that I did not have any warrants and that I was free to go. The officer at the warrant division also said that the police officers had messed up and that he didn't know why they brought me to Central Booking. He said that if the officers were unsure about a warrant, the warrant division is open twenty-four hours and they could have checked.

23. I was detained for a total of approximately twelve to thirteen hours. When I finally returned home, the cup outside the apartment that the officers had asked me about was still in the same place.

24. I strongly believe that the NYPD stopped, searched, arrested, and imprisoned me without any reason to believe that I had committed, was committing, or was about to commit a crime, and that I was stopped because I am black. I was not doing anything wrong while I was standing outside of the apartment building, and there was no reason for the police to stop me. Other than a cigarette, I had nothing in my hands. I was not drinking anything, I was not inebriated or acting inebriated, and the cup that the officers asked about was five feet away from me.

25. My experience that night is typical of what I have often seen in the neighborhood -- black people are stopped by the police, but white people are not.

26.     In addition to the stop in January 2008, I have also been stopped twice by the NYPD while walking down the street in Harlem, once in 1986 and once in 1987. During the first incident, the officers pulled up next to me in an NYPD police car, asked me to come over to the car, pointed a gun at me, and asked where I was going. I told them I was going home, showed them my high school ID and they let me go. The second stop occurred while I was walking on the sidewalk with three of my friends. Three officers stopped and searched us without ever saying anything more to us than, "don't move." After they did not find anything on me or my friends, we were free to go. I believe that both times, the officers stopped me because I was black.

27.     Although the other stops occurred some time ago, those encounters, in addition to the incident in January 2008 and what I have observed, have made me no longer feel comfortable standing on a New York City street. I do not trust the NYPD not to stop me without reasonable suspicion or arrest me without probable cause. The incident in January 2008 was so upsetting and frustrating to me that I missed two days of work and spent many sleepless nights.

28.     Many of my African-American friends who live in New York City have shared with me similar encounters they have had with NYPD officers. Because of those stories coupled with my own experiences, I strongly believe that the NYPD has a department-wide policy and practice of illegal and racially-discriminatory stops and frisks. I constantly fear being harassed and having my constitutional rights violated by NYPD officers whenever I walk the streets of New York City.

29.     By becoming a plaintiff in this lawsuit, I hope to change the NYPD's policy, practice, and/or custom of stopping and frisking people without reasonable suspicion, or because of their race. More than monetary damages, I want to stop the NYPD from ever harassing me or

others just because of our race. I understand that, if I am certified as a class representative, it will only be for purposes of injunctive and declaratory relief. As I described above, I share a common interest with all victims of the NYPD's unconstitutional and racially-discriminatory stop-and-frisk policies and practices: to put an end to such policies and practices. Therefore, I do not have any claims for injunctive and declaratory relief that are different from the claims of the other class members, and there is no reason why I would not be able to adequately protect the interests of absent class members with respect to injunctive relief.

30.     Since joining this lawsuit as a plaintiff, I have participated in extensive discovery. I was deposed for one full day and responded to two separate set of document requests and interrogatories from the Defendants.

31.     I understand that, if I am certified as a class representative, I may be called upon to formulate settlement offers and evaluate offers from the City of New York that have to do with reforming the NYPD's policies and practices related to stop-and-frisk. I understand that a settlement would involve some degree of compromise. I am prepared to discuss the options with my attorneys and represent the interests of the class to the best of my ability.

32.     I am represented in this litigation by attorneys from the Center for Constitutional Rights, Beldock, Levine, and Hoffman LLP, and Covington & Burling LLP. I am in regular contact with my attorneys and I have been very satisfied with their legal representation. I am confident that if appointed as class counsel, that they will vigorously and competently represent the interests of the class members.

6

I declare under penalty of perjury this _4_ day of November, 2011, that the

foregoing is true and correct.

_Deon Dennis_

DEON DENNIS

7