# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID FLOYD, *et al.*,

          **Plaintiffs,**

  -against-

THE CITY OF NEW YORK, *et al.*,

          **Defendants.**

---

08 Civ. 01034 (SAS)


**AFFIDAVIT OF DAVID
OURLICHT**

STATE OF NEW YORK    )
                 ) ss.:
COUNTY OF NEW YORK  )

      DAVID OURLICHT, having been duly sworn, deposes and says:

      1.      I am a named plaintiff in the above-captioned case. I submit this affidavit in support of Plaintiffs' motion for class certification.

      2.      I am a 23 year-old bi-racial (half African-American, half Italian-American) man who was raised in New York, New York. Until August of 2009, I was a full-time resident of New York City.

      3.      Since August of 2009, I have been enrolled as an undergraduate student at the State University of New York (SUNY) at Albany. While I have been living primarily in Albany since August 2009, I still spend several weekends each semester and all of my school breaks at my parent's residence in New York City, which I still consider to be my permanent home. I am very close with my parents and my younger sister, and thus I very much enjoy and look forward to returning to my parents' home during my breaks from school to spend time with my family.

4.     I am scheduled to graduate from SUNY Albany in May 2012, at which time I intend to move back to New York City to live full-time.

5.     I have never been convicted of any crimes.

6.     I decided to become a named plaintiff in this lawsuit after having been illegally stopped-and-frisked by New York City Police Department (NYPD) officers on three separate occasions between January and June 2008.
I also strongly believe that each of these incidents was part of a larger department-wide policy and practice on the part of the NYPD to conduct suspicionless and racially discriminatory stops-and-frisks.

7.     The first incident occurred on a weekday afternoon in January 30, 2008, at around 2pm in Jamaica, Queens, New York, near St. John's University, where I was a student at the time.

8.     The NYPD officer who stopped me, Defendant Christopher Moran, falsely claimed that he thought that I had a gun inside of my clothes even though nothing that I had in the pockets of my clothes at the time resembled the shape of a gun.

9.     In addition, even after frisking me and finding nothing that felt like a gun, Officer Moran still proceeded to illegally search through and remove all of the items from my clothing pockets after I had asked him why he had stopped me and had written down his name and badge number in the spiral notebook that I had with me.  During the search of my clothing, Officer Moran did not find any weapons or contraband.

10.    Finally, Officer Moran issued me a summons for disorderly conduct even though I had complied with all of his requests during the stop and did not in any way resist his attempts to frisk and search me. The disorderly conduct charge against me was ultimately dismissed by

the Queens County Criminal Court.

11.     The second incident occurred on a weekday evening in February 2008, at around

6:00pm, in the same vicinity as the first incident, while I was walking with a white friend of

mine on the sidewalk from the house I was then living in to the F Train subway station.  During

this incident, four plainclothes NYPD officers drove up next to my friend and me in an

unmarked car, exited the car, and then three of them surrounded me, told me they were looking

for guns, and frisked me, while my white friend stood fifteen feet away next to the fourth officer,

who did not frisk my friend.  Again, nothing that I had in the pockets of the clothes that I was

wearing at the time resembled a gun.

12.     After the three officers finished frisking me, the fourth officer told my white

friend that he smelled like marijuana, searched the inside of my friend's clothing, pulled out a

bag of marijuana from one of my friend's pockets, and then returned the bag of marijuana to my

friend.

13.     At this point, the three officers who had surrounded me began to search the inside

of all of my clothing pockets, and one of them told me that if they found any drugs on me, they

would arrest me.  The officers did not find any drugs, weapons, or other contraband on me, and

got back in their unmarked car and left without apologizing to me or my friend.

14.     The third incident occurred on a weekday morning in early June 2008, at

approximately 10:00am, in one of the courtyards of the Johnson public housing complex, which

encompasses three city blocks (from East 112th to East 115th Streets between Lexington and Park

Avenues) in Harlem.  Almost all of the residents of the Johnson housing whom I've seen and/or

spoken to when I have visited there are African-American.

15.     I was at the Johnson housing complex that morning helping an African-American friend of mine move furniture out of his grandmother's apartment. At the time of the stop-and-frisk incident, I was sitting with my friend and three other African-American males on a bench in the courtyard of the complex. Neither my friend nor I had any weapons or contraband on us, and none of other three men appeared to have anything resembling a weapon on them either.

16.     While the five of us were sitting on the bench, two uniformed NYPD officers ran towards us with guns drawn, shouted that they had received a report of someone in the complex with a gun and ordered us to get face down on the ground, which all five of us immediately did.

17.     Neither prior to nor following this incident did I hear gun shots, see anyone in the Johnson housing complex carrying a gun, nor hear my friend or anyone else in the complex say anything about somebody in the complex having a gun.

18.     After the five of us got face down on the ground, the two officers who had shouted at us and three additional officers who had just arrived in an NYPD van frisked all five of us, and despite the fact that I had nothing in any of my pockets which resembled the shape of a weapon, searched the inside of my pockets as well. They did not find any weapons or contraband on any of the five of us, and they let all five of us go.

19.     In addition to the three incidents described above, I was stopped and frisked again following my filing this lawsuit, in January 2010, while I was on break from SUNY Albany and staying with my parents in Manhattan. This stop took place on a Saturday night around 9:00pm, right after two of my friends, one who is White and one who is Hispanic, and I had gotten into my car which was parked around the corner from my parents' apartment. My parents' apartment is located two blocks from Union Square in a predominately white neighborhood.

4

20.     As soon as we had gotten into my car and closed the doors, four uniformed NYPD officers approached the car and ordered all of us to get out. We all got out immediately, at which point the officers began to frisk each of us. They did not find any weapons or contraband.

21.     I then asked one of the officers why they were frisking us, and he told me that they were searching for drugs. Then the officers searched the interior of my car, but they did not find any drugs, weapons, or any other contraband.

22.     I strongly believe that during each of these four incidents, NYPD officers stopped, frisked, and searched me without any basis to believe I had committed, was committing, or was about to commit a crime or that I was armed or dangerous. I was not doing anything suspicious or carrying anything that resembled a weapon at the time of any of these incidents. I also strongly believe that the officers stopped and frisked me on each time because of my race, specifically because I am part African-American.

23.     Each of the stop-and-frisk incidents described above has been a very humiliating and frightening experience for me. I am now constantly afraid of being stop, searched, harassed, and having my constitutional rights violated by NYPD officers every time I walk the streets of New York City.

24.     In addition, almost every one of my black and Hispanic friends who live in New York City has shared with me one or more similar stop-and-frisk encounters which they have had with NYPD officers, which have also made them very afraid and distrustful of the NYPD. My friends' stories, along with my knowledge of the NYPD's stop-and-frisk statistics which I learned about through stories I've seen and hear in the local New York City media, I strongly believe that the NYPD has a department-wide policy and practice of illegal and racially-discriminatory stops and frisks.

5

25.     Thus, much more than any monetary damages, what I most want to achieve through this lawsuit is real and lasting changes to the NYPD's stop-and-frisk policies and practices so that neither I, my friends, nor any other New Yorkers of color are ever again stopped and frisked without reasonable suspicion or because of our race.

26.     Since joining this lawsuit as a plaintiff, I have participated in extensive discovery, including sitting for two depositions and responding to document requests and interrogatories from the Defendants

27.     I understand that, if I am certified as a Plaintiff class representative, it will only be for purposes of injunctive and declaratory relief.  As described in the preceding paragraph, I share a common interest with all victims of the NYPD's unconstitutional and racially-discriminatory stop-and-frisk policies and practices to put an end such policies and practices. Therefore, I do not have any claims for injunctive and declaratory relief that are unique to me, and there is no reason why I would not be able to adequately protect the interests of absent class members with respect to injunctive relief.

28.     I understand that, if I am certified as a class representative, I may be called upon to formulate settlement offers and evaluate offers from the City of New York that have to do with reforming the New York Police Department's stop-and-frisk practice through injunctive relief. I understand that a settlement would involve some degree of compromise.  I am prepared to discuss the options with my attorneys and represent the interest of the class, especially to maximize the injunctive relief that is obtained for the class to the fullest extent reasonable under the circumstances.

29.     I am represented in this case by attorneys from the Center for Constitutional Rights, Beldock, Levine and Hoffman, and Covington & Burling, LLC. I am in regular contact

6

with my attorneys, and I have been very happy with the representation they have provided to me thus far in this case. I am satisfied that if appointed as class counsel, they will vigorously and competently represent the interests of the plaintiff class.

DAVID OURLICHT

Sworn to before me this
1st day of November, 2011

NOTARY PUBLIC

**DARIUS CHARNEY**
Notary Public, State of New York
No. 02CH6186665
Qualified in Kings County
Commission Expires Nov. 14, 2014

7