UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID FLOYD, *et al.*,

Plaintiffs,

-against-

THE CITY OF NEW YORK, *et al.*,

Defendants.

08 Civ. 01034 (SAS)

ECF CASE

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
(212) 614-6439

BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0900

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiffs Have Satisfied the Commonality Requirement ..... 1

A. Commonality is satisfied despite individualized circumstances because the class challenges a unitary course of conduct by a single system ..... 1

B. Wal-Mart is inapposite and, regardless, Plaintiffs offer "significant proof" ..... 3

II. Plaintiffs Have Satisfied the Typicality Requirement ..... 5

III. Plaintiffs Have Satisfied the Ascertainability and Numerosity Requirements ..... 6

IV. Plaintiffs Have Satisfied the Adequacy Requirement ..... 7

A. Named Plaintiffs have standing to pursue injunctive relief ..... 7

B. John Doe defendants do not render Named Plaintiffs inadequate ..... 9

V. Plaintiffs Have Established the Propriety of Certification Under Rule 23(b)(2) ..... 10

VI. Plaintiffs Have Demonstrated that the *Galvan* Doctrine Does Not Apply in this Case ..... 10

CONCLUSION ..... 11

# TABLE OF AUTHORITES


**CASES** **Page(s)**

*Alvarez v. City of Chicago*,
649 F. Supp. 43 (N.D. Ill. 1986) ....................8

*Bishop v. N.Y.C. Dep't of Hous. Pres. and Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ....................10

*Calabrese v. CSC Holdings, Inc.*,
No. 02–CV–5171 (DLI)(JO), 2009 WL 425879 (E.D.N.Y. Feb. 19, 2009)....................9

*Casale v. Kelly*,
257 F.R.D. 396 (S.D.N.Y. 2009) ....................2, 6

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................8

*City of New York v. Patrolmen's Benevolent Ass'n*,
4OCB2d 67 (BCB 2011)....................4

*Daniels v. City of New York*,
198 F.R.D. 409 (S.D.N.Y. 2001) ....................3, 5, 6, 9

*Daniels v. City of New York*,
199 F.R.D. 513 (S.D.N.Y. 2001) ....................10

*Duling v. Gristede's Operating Corp.*,
267 F.R.D. 86 (S.D.N.Y. 2010) ....................9

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ....................4, 5

*Espinoza v. 953 Assocs. LLC*,
No. 10 Civ. 5517 (SAS), 2011 WL 5574895 (S.D.N.Y. Nov. 11, 2011) ....................1

*Gaines v. Bos. Herald, Inc.*,
998 F. Supp. 91 (D. Mass. 1998)....................9

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982)....................3, 4

*Hakkila v. Consol. Edison Co. of N.Y., Inc.*,
745 F. Supp. 988 (S.D.N.Y. 1990) ....................8

*Harty v. Simon Prop. Grp., L.P.*,
428 F. App'x 69 (2d Cir. 2011) ....................................................................................8

*Hnot v. Willis Grp. Holdings Ltd.*,
241 F.R.D. 204 (S.D.N.Y. 2007) ..................................................................................5

*Hodgers-Durgin v. De La Vina*,
199 F.3d 1037 (9th Cir. 1999) ......................................................................................8

*In re Cincinnati Policing*,
209 F.R.D. 395 (S.D. Ohio 2002)..................................................................................10

*Jones v. Ford Motor Credit Co.*,
No. 00 Civ. 8330RJHKNF, 2005 WL 743213 (S.D.N.Y. Mar. 31, 2005) ..............................6

*Leonard v. Southtec, LLC*,
No. 3:04-0072, 2005 WL 2177013 (M.D. Tenn. Sept. 8, 2005) ..........................................9

*MacNamara v. City of New York*,
275 F.R.D. 125 (S.D.N.Y. 2011) ....................................................................................8

*Mental Disability Law Clinic v. Hogan*,
No. CV-06-6320(CPS)(JO), 2008 WL 4104460 (E.D.N.Y. Aug. 26, 2008)...........................7

*Morrow v. Washington*,
277 F.R.D. 172 (E.D. Tex. 2011)....................................................................................2

*Nat'l Cong. for Puerto Rican Rights v. City of N.Y.*,
75 F. Supp.2d 154 (S.D.N.Y. 1999)..................................................................................8

*Ortega-Melendres v. Arpaio*,
No. CV-07-2513-PHX-GMS, 2011 WL 6740711 (D. Ariz. Dec. 23, 2011).................. passim

*Rahman v. Chertoff*,
530 F.3d 622 (7th Cir. 2008) ..........................................................................................7

*Roe v. City of New York*,
151 F. Supp.2d 495 (S.D.N.Y. 2001)................................................................................8

*Sirota v. Solitron Devices, Inc.*,
673 F.2d 566 (2d Cir. 1982)............................................................................................9

*Taylor v. White*,
132 F.R.D. 636 (E.D. Pa. 1990)......................................................................................9

*Velez v. Novartis Pharms. Corp.*,
244 F.R.D. 243 (S.D.N.Y. 2007) ....................................................................................5

*Wal-Mart, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) ........ passim

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ........ 6

*Wilson v. Tinicum Twp.*,
No. CIV. A. 92-6617, 1993 WL 280205 (E.D. Pa. 1993) ........ 10

**STATUTES**

Fed. R. Civ. P. 23(b)(2) ........ 10

Fed. R. Civ. P. 23(c)(1)(C) ........ 7

**OTHER AUTHORITIES**

http://www.maricopa.gov/bos/size.aspx. ........ 2

## INTRODUCTION

In their opposition to Plaintiffs' motion for class certification, Defendants mischaracterize case law, facts, and several of Plaintiffs' claims; repeatedly invite an improper merits inquiry; impermissibly conflate commonality with ascertainability; and raise meritless arguments in an attempt to prevent certification of this class. None of Defendants' arguments refute the fact that Plaintiffs are challenging a unitary course of conduct that is worlds away from the decentralized, discretionary practices at issue in *Wal-Mart, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). Nor do Defendants articulate a persuasive reason why certification should be denied on any other ground. For the reasons set forth below and in Plaintiffs' opening brief, the Court should certify the proposed class.

## ARGUMENT

### I. Plaintiffs Have Satisfied the Commonality Requirement.

#### A. Commonality is satisfied despite individualized circumstances because the class challenges a unitary course of conduct by a single system.

Plaintiffs have satisfied the commonality requirement by establishing that this is a unitary course of conduct case presenting common questions which compel classwide resolution of their claims. Defendants agree that commonality depends on the existence of common questions that are capable of generating classwide answers "'apt to drive resolution of the litigation.'" *See* Mem. of Law in Supp. of Pls.' Mot. for Class Cert. at 10-11, Dkt. # 166 ("Pl. Mem.") (quoting *Wal-Mart*, 131 S.Ct. at 2551); Mem. of Law in Opp'n to Pls.' Mot. for Class Cert. at 4, Dkt. # 176 ("Def. Mem.") (same). They do not and cannot contest that this standard is satisfied when, despite differing circumstances in individual incidents, class members' injuries derive from a single system's unconstitutional policy or practice. *See* Pl. Mem. at 11-15 (citing cases); *see also* *Espinoza v. 953 Assocs. LLC*, No. 10Civ.5517 (SAS), 2011 WL 5574895, at *6 (S.D.N.Y. Nov.

11, 2011). Defendants concede that the New York Police Department's ("NYPD") stop-and-frisk policy derives from a single system: the "NYPD's department-wide policies generate from a centralized source" and the "NYPD employs a hierarchical supervisory structure to effect and reinforce its department-wide policies." Def. Mem. at 8. Because Plaintiffs' injuries derive from the same unconstitutional NYPD policy and/or practice, commonality is established. Pl. Mem. at 13-14. Defendants' argument that commonality never exists in the absence of a "singular program," or a "trigger-like involvement in a system," Def. Mem. at 12-13, is unsupported, meritless, and conflates commonality with ascertainability. *See Casale v. Kelly*, 257 F.R.D. 396, 413 (S.D.N.Y. 2009);[1] *see also infra* at 3. Defendants would require that each individualized issue be common to the class—a requirement unsupported by and contrary to precedent. *See e.g.*, *Wal-Mart*, 131 S.Ct. at 2556 ("a single common question will do") (internal citation and quotation marks omitted)). The District of Arizona recently certified a class alleging and challenging a Maricopa County Sheriff's Office "policy or practice of racial profiling, and a policy of stopping persons without reasonable suspicion[.]"[2] *Ortega-Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2011 WL 6740711, at *1 (D. Ariz. Dec. 23, 2011). The court rejected the argument that differences between stops defeated a finding of commonality: "commonality in cases alleging racial profiling is satisfied when 'the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional practice or policy that allegedly

---

[1] Defendants mischaracterize *Morrow*, *see* Def. Mem. at 11-12, where the court certified a class despite the fact that the officers who conducted the stops allegedly had legitimate reasons to do so. *Morrow v. Washington*, 277 F.R.D. 172, 187-88 (E.D. Tex. 2011). Here, as in *Morrow*, Plaintiffs challenge Defendants' operation of suspicionless stops and frisks and its targeting of racial minorities. The *Morrow* court excluded Fourth Amendment claims from the class definition only because the class representatives did not *present* those claims. *See id.* at 187-89.

[2] Maricopa County is the fourth most populous county in the U.S., with a population of over 3 million people, and spans an area of 9,226 square miles. *See* http://www.maricopa.gov/bos/size.aspx.

injured or will injure the proposed class members.'" *Id.* at *19 (quoting *Daniels v. City of New York*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001)). That is the case here.

Defendants cannot defeat class certification by arguing that Plaintiffs have not proven that the challenged policy exists. Pl. Mem. at 17. The fact-finder may conclude, *classwide*, that the City's actions and failures (*e.g.*, *inter alia*, Kelly's statements that the NYPD targets Blacks and Latinos; enforcement of activity quotas; deliberately ineffective audits, training, and supervision) comprise a policy and/or practice of suspicionless and race-based stops.

**B. *Wal-Mart* is inapposite and, regardless, Plaintiffs offer "significant proof."**

Defendants ignore significant factual distinctions between *Wal-Mart* and this case. Def. Mem. at 6-11. Wal-Mart's store supervisors exercised "largely subjective" discretion "with only limited corporate oversight." *Wal-Mart*, 131 S.Ct. at 2547, 2554. In contrast, Defendants concede that the "NYPD's department-wide policies generate from a centralized source" and are implemented by officers through "a hierarchical supervisory structure[,]" and that NYPD officers are constitutionally mandated to conduct stops and frisks based on objective criteria. Def. Mem. at 8. Additionally, while the NYPD has a written policy against racial profiling, there is substantial evidence that senior NYPD officials have failed to implement it. *See* Pls.' Am. Resp. to Defs.' Local Civ. Rule 56.1 Statement of Undisputed Facts at ¶¶ 47-54, 175-76, 215, Dkt. # 132 ("PAF"); Op. and Order at 78-80, Dkt. # 153 ("8/31/11 Op.").

Plaintiffs submit that the *Wal-Mart* significant proof standard is inapplicable in unitary course of conduct cases because there is no concern as to whether the challenged policy and/or practice uniformly affects the class. Pl. Mem. at 15-17.[3] Nevertheless, even if the Court applies

[3] Contrary to Defendants' assertion, Def. Mem. at 7, Plaintiffs do not argue that significant proof is only required in Title VII pattern-and-practice cases. Plaintiffs instead submit that the significant proof requirement applies in cases challenging decentralized, subjective decision-(continued…)

the significant proof standard, Plaintiffs have satisfied it with substantial evidence of uniform, centralized, and citywide policies and/or practices involving quotas/productivity standards, inadequate stop-and-frisk auditing procedures, and the targeting of Blacks and Latinos.[4]

Moreover, even under *Wal-Mart*, a single common question is sufficient, 121 S.Ct. at 2556, and Plaintiffs' evidence of quotas/productivity standards and inadequate auditing alone presents at least one question. Because audits are performed uniformly throughout the NYPD, Pl. Mem. at 5, the fact-finder may conclude, classwide, that the City's inadequate monitoring system is part of a policy and/or practice of suspicionless and race-based stops.[5] Because the evidence shows that members of the NYPD's central administration have ordered or encouraged the use of activity quotas/productivity standards in precincts throughout the City, *see* Pl. Mem. at 3-4,[6] the fact-finder may conclude, classwide, that these quotas/standards are part of a policy and/or practice of suspicionless and race-based stops, *see id.* at 19.[7]

---

making systems resulting in discrimination, as established in *Wal-Mart*, the Supreme Court's *Falcon* decision, and several pre- and post-*Wal-Mart* decisions by Second Circuit district courts. *See* Pl. Mem. at 15-16 (citing cases).

[4] Focusing on audits and quotas in their opening papers does not abandon Plaintiffs' classwide claims on other issues, such as the NYPD's inadequate training, supervision, and discipline. Plaintiffs have submitted extensive evidence of the centralized and citywide nature of these policies and/or practices such that all of these claims present common questions capable of generating classwide answers. *See, e.g.*, PAF ¶¶ 175, 185, 215, 218-19; 8/31/11 Op. at 80-81.

[5] Defendants' argument that audit passage rates "belie[ ]" commonality, Def. Mem. at 15, is a non-sequitur. Because Plaintiffs claim the audits themselves do not accurately assess whether stops are based on reasonable suspicion, command rates prove nothing. Further, commonality is satisfied here because the same audit procedure, regardless of its adequacy, is used throughout the entire NYPD. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

[6] Indeed, additional evidence of UF-250 quotas sanctioned by the NYPD command structure in yet another NYPD precinct has recently surfaced. *See City of New York v. Patrolmen's Benevolent Ass'n*, 4OCB2d 67 (BCB 2011) (Hoff Varner Decl., Ex 1 at 3).

[7] Playing loosely with facts, Defendants state no Named Plaintiffs have "shown" that a quota caused his stop. Def. Mem. at 15. Officer Pichardo admitted that supervisors on the tour during which he stopped Deon Dennis instructed him to comply with quotas. PAF ¶ 58.

The statistical and anecdotal evidence in *Wal-Mart* and this case are not equivalent. In *Wal-Mart*, the plaintiffs' statistics did not establish the existence of gender disparities at individual stores. 131 S.Ct. at 2555. Here, Plaintiffs' statistical evidence reveals racial disparities in stop rates and suspicionless stops in every precinct. Pl. Mem. at 18; 8/31/11 Op. at 65-66. In *Wal-Mart*, because the Supreme Court rejected plaintiffs' statistical and other evidence, the anecdotal evidence had to be extensive to satisfy the significant proof requirement, but was not. 131 S.Ct. at 2556. Here, Plaintiffs' anecdotal evidence, when viewed with the full record, demonstrates the pervasive citywide nature of the challenged NYPD policy and/or practice. In *Wal-Mart*, the court found the statistical and anecdotal evidence insufficient mainly because it could not be tied to a specific company-wide policy. 131 S.Ct. at 2555-56. Here, Plaintiffs have identified several such policies. *See* Pl. Mem. at 2-5.

Finally, Professor Fagan's statistical analyses are reliable and admissible, and Defendants' critiques merely invite a premature battle of the experts. *See Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 259 (S.D.N.Y. 2007). "Significant proof" turns on whether the challenged policies, whether or not discriminatory, apply across the board. *See Costco*, 657 F.3d at 983; *Hnot v. Willis Grp. Holdings Ltd.*, 241 F.R.D. 204, 211 (S.D.N.Y. 2007). Defendants never dispute that the statistical patterns Fagan identified exist citywide.

## II. Plaintiffs Have Satisfied the Typicality Requirement.

Defendants erroneously argue that individual circumstances preclude a finding of typicality. Def. Mem. at 12. "In assessing typicality, the court considers the nature of the claim or defense of the class representative, and not . . . the specific facts from which it arose or the relief sought." *Ortega-Melendres*, 2011 WL 6740711, at *19 (internal citations and quotation marks omitted) (alterations in original); *see also Daniels*, 198 F.R.D. at 418; *Finch*, 252 F.R.D. at 201 (holding typicality easily satisfied where "core of [the] action arises from the same course

of conduct by a single system, despite any circumstances that might vary among class members"). "Differences in the subjective motivations between . . . officers conducting stops does not defeat typicality of claims alleging a departmental policy of violating constitutional rights, whether under the Fourth or Fourteenth Amendments." *Ortega-Melendres*, 2011 WL 6740711, at *19; *see also Daniels*, 198 F.R.D. at 418; *Finch*, 252 F.R.D. at 201-02. Named Plaintiffs and the class challenge the same citywide stop and frisk policy and/or practice that violates their constitutional rights. Typicality is satisfied.[8]

## III. Plaintiffs Have Satisfied the Ascertainability and Numerosity Requirements.

Defendants do not refute that there are enough class members, and their arguments regarding the implied ascertainability requirement are without merit. As in *Daniels*, *see* Def. Mem. at 16-17, they ignore the distinct ascertainability standard applied in a 23(b)(2) cases where "absence of a claim for money damages eliminates the need for individualized assessments of liability and harm." *Daniels*, 198 F.R.D. at 415; *see also* Pl. Mem. at 9.[9]

Defendants try to distinguish this proposed class from the one certified in *Daniels* by characterizing the *Daniels* class as "narrower in scope" because it challenged the practices of the NYPD's Street Crimes Unit ("SCU") rather than the entire NYPD. Def. Mem. at 17. Yet, the SCU made tens of thousands of stops citywide each year and the *Daniels* Stipulation of

[8] Defendants argue that Named Plaintiffs' claims are not typical of the class claims because "no injunction could guarantee" an end to suspicionless stops. Def. Mem. at 24; *see also id.* at 14, n.16. Even if the NYPD will not or cannot comply with an injunction issued by this Court, that is irrelevant to typicality. Nor does the fact that an injunction might apply to people who have not been injured, preclude a finding, or refute Plaintiffs' showing, of typicality. *See Jones v. Ford Motor Credit Co.*, No. 00Civ.8330RJHKNF, 2005 WL 743213, at *11 (S.D.N.Y. Mar. 31, 2005) ("It is well established . . . that not all class members have to be aggrieved by a defendants' allegedly harmful conduct if a challenged policy is generally applicable to the class as a whole." (citing *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998))).

[9] Defendants fail to acknowledge that plaintiffs in *Casale* sought both a (b)(3) and a (b)(2) class.

Settlement required changes to department-wide policies and practices, a tacit admission that SCU conduct mirrored department-wide conduct. *See* Charney Decl. at Ex. 1, Ex. 86 at 8, Ex. 117 at vii, 59-61, 107-109, Dkt. # 132 ("2/16/11 Charney Decl."). Moreover, courts routinely certify injunctive class actions implicating citywide (or statewide) class membership.[10] Defendants' citation to *Rahman v. Chertoff*, 530 F.3d 622, 626 (7th Cir. 2008), is also plainly inapposite.[11]

Finally, Defendants make a circular and wholly unsupported argument that without commonality there can be no ascertainability based on *Wal-Mart*, while conceding that *Wal-Mart* never addressed ascertainability. Def. Mem. at 17 n.18. Still, Plaintiffs satisfy commonality. *See* Part I, *supra.*[12] The putative (b)(2) class is ascertainable and should be certified.[13]

## IV. Plaintiffs Have Satisfied the Adequacy Requirement.

### A. Named Plaintiffs have standing to pursue injunctive relief.

Defendants' challenge to the standing of two Named Plaintiffs is a red herring because (1) Plaintiffs only need one class representative, and (2) the two challenged Named Plaintiffs have standing. Floyd is outside of New York only temporarily, attending medical school. He considers New York home, intends to spend his 2012 summer break in New York, and plans to

[10] *See e.g.*, *Finch*, 252 F.R.D. at 202-203; *Mental Disability Law Clinic v. Hogan*, No. CV-06-6320(CPS)(JO), 2008 WL 4104460, at *20 (E.D.N.Y. Aug. 26, 2008); *Ortega-Melendres*, 2011 WL 6740711 at *1.

[11] In *Rahman*—an out-of-circuit decision about border security—plaintiffs failed to clearly define the challenged policy or practice. 530 F.3d at 626. *Rahman*'s discussion of "across the board classes" refers to cases where the *named plaintiffs* had not been injured by the challenged practice. *Id.* Neither are concerns here.

[12] Similarly, there is no support for Defendants' argument that injunctive relief depends on identifying each class member. Def. Mem. at 18. Plaintiffs can establish that a citywide unconstitutional stop-and-frisk policy and/or practice exists without determining precisely which persons suffered unconstitutional stops. *See, e.g.*, 8/31/11 Op. at 62-69.

[13] In any event, this Court may also amend the class definition. Fed. R. Civ. P. 23(c)(1)(C).

move back to the City when finished with medical school. *See* Charney Decl. at Ex. 4 ¶ 3, Dkt. # 167 ("11/7/11 Charney Decl."); *Hakkila v. Consol. Edison Co. of N.Y., Inc.*, 745 F. Supp. 988, 990 (S.D.N.Y. 1990). Dennis spends all of his vacation time in New York visiting friends and family, has concrete plans to return to New York in March 2012 for a family event, and intends to move back to New York City. *See* 11/7/11 Charney Decl. at Ex. 3 ¶ 3; Dennis Reply Decl. at ¶¶ 3-4; *see also Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 72 (2d Cir. 2011).

Defendants' reliance on *MacNamara v. City of New York*, 275 F.R.D. 125 (S.D.N.Y. 2011), is misplaced. The *MacNamara* plaintiffs, who challenged police practices at the 2004 Republican National Convention, stated that they "may" return to New York for similar protests, making standing dependent on speculation. *Id.* at 141. Here, Named Plaintiffs *will* return to New York, and challenge a routine and pervasive daily NYPD practice. *See Nat'l Cong. for Puerto Rican Rights v. City of N.Y.*, 75 F.Supp.2d 154, 161 (S.D.N.Y. 1999) (finding "realistic risk of future harm" where plaintiffs were stopped "while engaging in everyday tasks").

Defendants' assertion that one stop is not enough is another red herring.[14] "[T]here is no per se rule requiring more than one past act, or any prior act, for that matter, as a basis for finding a likelihood of future injury." *Roe v. City of New York*, 151 F.Supp.2d 495, 503 (S.D.N.Y. 2001); *see Nat'l Cong.*, 75 F. Supp.2d at 161 (rejecting same argument); *see also Ortega-Melendres*, 2011 WL 6740711, at *15 (similar).

[14] Defendants cite two out-of-circuit and otherwise distinguishable cases. Def. Mem. at 20. This Court has distinguished *Lyons* on multiple grounds, *see Nat'l Cong.*, 75 F. Supp.2d at 161-62, all of which are equally applicable here. *See Alvarez v. City of Chicago*, 649 F. Supp. 43, 45-46 (N.D. Ill. 1986) (holding *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) was controlling because the facts were "substantially similar"). In *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999), plaintiffs lacked standing "not because they had only been stopped once in ten years, but more precisely because a single stop provided no evidence that INS had a policy of racial profiling." *Ortega-Melendres*, 2011 WL 6740711, at *17.

### B. John Doe defendants do not render Named Plaintiffs inadequate.

First, three out of the four Named Plaintiffs—Floyd, Dennis, and Ourlicht—allege stops involving identified NYPD officers.[15] *See* 11/7/11 Charney Decl. at Ex. 3 ¶ 7; *id.* Ex. 4 ¶ 4; *id.* Ex. 5 ¶ 8; *see also Calabrese v. CSC Holdings, Inc.*, No. 02–CV–5171 (DLI)(JO), 2009 WL 425879, at *20-21 (E.D.N.Y. Feb. 19, 2009) (finding proposed class satisfied typicality and adequacy of requirements where several plaintiffs had unique defenses and two did not). This forecloses the matter. Second, the unique defense rule is "intended to protect [the] plaintiff class—not to shield defendants from a potentially meritorious suit[,]" *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y. 2010) (citation and quotation marks omitted)), and is an obstacle to certification only where the unique defenses "overshadow the primary claims" or "cause prejudice to the other class members," *Daniels*, 198 F.R.D. at 419. In the context of Plaintiffs' allegations and evidence of "an ongoing pattern that includes, but is not limited to, the specifically alleged incidents," 8/31/11 Op. at 68, the John Doe issue is a minor factual question to be left to the fact-finder and should not shield defendants from this suit.[16]

---

[15] The possibility that Clarkson's claims may ultimately be dismissed on the John Doe issue does not render him inadequate, any more than the possibility that the individual claims of the other Named Plaintiffs may ultimately be dismissed. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) ("If the [] defendants were arguing that a district court must determine whether the named plaintiffs have a meritorious claim before they can be certified as class representatives, they would plainly be wrong.").

[16] Defendants' contention that Named Plaintiffs cannot adequately represent Latino class members is meritless. *See* Def. Mem. at 19 n.21. As Defendants' cited cases show, the law requires only that Named Plaintiffs are members of the class they represent, and do not have interests antagonistic to the other class members. It is undisputed that Named Plaintiffs are members of the proposed class here. Defendants do not—nor could they—argue that the interests of Named Plaintiffs are antagonistic with the interests of the Latino class members because the NYPD policy and/or practice at issue makes no distinction between Blacks and Latinos. *See* Fagan Rpt. 40-47; *cf. Leonard v. Southtec, LLC*, No. 3:04-0072, 2005 WL 2177013, at *8-10 (M.D. Tenn. Sept. 8, 2005) (certifying Black class representatives to represent class of Black and Hispanics challenging racial discriminatory policies); *Taylor v. White*, 132 F.R.D. 636, 648 (E.D. Pa. 1990) (same); *Gaines v. Bos. Herald, Inc.*, 998 F. Supp. 91, 112 (D. Mass. 1998) (same).

## V. Plaintiffs Have Established the Propriety of Certification Under Rule 23(b)(2).

Defendants oppose certification under Rule 23(b)(2) arguing that injunctive relief is inappropriate because Plaintiffs have not shown a unitary course of conduct. Def. Mem. at 23-25. Defendants suggest, alarmingly, that no injunctive relief could effectively compel the NYPD to comply with the Constitution. Def. Mem. at 24-25. Both arguments are meritless and the latter is troubling, illustrating the need for class certification here.[17] The City's policy and/or practice of illegal stops and frisks deprives all class members of constitutional rights and is remediable through an injunction, making certification under 23(b)(2) appropriate. Pl. Mem. at 23.

## VI. Plaintiffs Have Demonstrated that the *Galvan* Doctrine Does Not Apply in this Case.

Where, as here, plaintiffs seek broad, affirmative policy/practice changes that defendants have long refused to make, the *Galvan* doctrine is inapplicable. This Court so held in *Daniels v. City of New York*, 199 F.R.D. 513, 515 (S.D.N.Y. 2001). Defendants' offer to apply any injunctive relief to "persons similarly-situated to the named plaintiffs" is meaningless because Defendants assert that *no* persons are similarly situated to Named Plaintiffs. *See* Def. Mem. at 4-16, 23, 25. "It is plainly inconsistent for Defendants to argue that any relief granted in connection with this action will be applied to benefit every member of the class, while at the same time they contest the existence of commonality and typicality." *Bishop v. N.Y.C. Dep't of Hous. Pres. and Dev.*, 141 F.R.D. 229, 241 (S.D.N.Y. 1992).

---

[17] Rule 23(b)(2) class actions were designed to remedy and have long been used to remedy similar police practices. *See, e.g.*, *In re Cincinnati Policing*, 209 F.R.D. 395, 404 (S.D. Ohio 2002) (certifying class of persons subjected to police department force and Blacks stopped, detained, or arrested); *Wilson v. Tinicum Twp.*, No. CIV. A. 92-6617, 1993 WL 280205, at *7 (E.D. Pa. 1993) (certifying (b)(2) class of motorists stopped without reasonable suspicion or probable cause).

## CONCLUSION

For the reasons stated above and in Plaintiffs' Motion for Class Certification, this Court should certify the class.

Dated: New York, New York
February 2, 2012

By: /s/ Gretchen Hoff Varner
GRETCHEN HOFF VARNER

Philip A. Irwin
Eric Hellerman
Gretchen Hoff Varner
COVINGTON & BURLING LLP
The New York Time Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
pirwin@cov.com
ehellerman@cov.com
ghoffvarner@cov.com

Darius Charney
Sunita Patel
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
(212) 614-6439
dcharney@ccrjustice.org
spatel@ccrjustice.org

Jonathan Moore
Jennifer Borchetta
BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0900
jmoore@BLHNY.com
jborchetta@BLHNY.com

*Attorneys for Plaintiffs*