08 CV 1034 (SAS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID FLOYD, *et al.*,

                                 Plaintiffs,

-against-

THE CITY OF NEW YORK, *et al.*,

                                 Defendants.

**SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND IN OPPOSITION TO THE BLAC'S *AMICUS CURIAE* MEMORANDUM OF LAW**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Linda Donahue*
*Tel: (212) 788-0892*
*Fax: (212) 788-9776*
*ldonahue@law.nyc.gov*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

ARGUMENT

    POINT I

        THE ISSUES RAISED IN PLAINTIFFS' REPLY DO NOT SUPPORT CLASS CERTIFICATION ................................................... 1

    POINT II

        THE BLAC'S ARGUMENTS DO NOT SUPPORT CLASS CERTIFICATION ................................................................................. 4

CONCLUSION ......................................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Batista v. Rodriguez*,
   702 F.2d 393 (2d Cir. 1983) .................................................................................. 2

*Bishop v. N.Y.C. Dep't of Housing, Preservation & Development*,
   141 F.R.D. 229, 241 (S.D.N.Y. 1992) .................................................................. 6

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986) .............................................................................................. 2

*Daniels v. City of New York*,
   199 F.R.D. 513 (S.D.N.Y. 2001) .......................................................................... 6

*Floyd v. City of New York*,
   2011 U.S. Dist. LEXIS 99129 (S.D.N.Y. Aug. 31, 2011) .................................... 4

*Galvan v. Levine*,
   490 F.2d 1255 (2d Cir. 1973), *cert. denied*, 417 U.S. 936 (1974) ....................... 6

*Green v. City of New York*,
   465 F.3d 65 (2d Cir. 2006) .................................................................................... 2

*Los Angeles County, California v. Humphries*,
   131 S. Ct. 447 (2010) ............................................................................................ 2

*Monell v. Dep't of Social Services*,
   436 U.S. 658 (1978) ...................................................................................... 2, 3, 5

*National Congress for Puerto Rican Rights by Perez v. City of New York*,
   75 F. Supp. 2d 154 (S.D.N.Y. 1999) .................................................................... 6

*Ortega-Melendres v. Arpaio*,
   2011 U.S. Dist. LEXIS 148223, 2011 WL 6740711 (D. Ariz. Dec. 23, 2011) ......... 1, 2, 3

*Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*,
   2000 U.S. Dist. LEXIS 15179 (S.D.N.Y. Oct. 13, 2000) ..................................... 5

*Rahman v. Chertoff*,
   530 F.3d 622 (7th Cir. 2008) ................................................................................ 6

*Reynolds v. Giuliani*,
   506 F.3d 183 (2d Cir. 2007) .................................................................................. 2

*Ricciuti v. N.Y.C. Transit Authority*,
   941 F.2d 119 (2d Cir. 1991) .................................................................................. 2

*Terry v. Ohio*,
   392 U.S. 1 (1968) ............................................................................................................. 5

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................................. 2, 4

### Statutes and Rules

Fed.R.Civ.P. 23(a) ............................................................................................... 1, 4, 5, 6

Fed.R.Civ.P. 23(b)(2) .................................................................................................. 5, 6

POINT I.   THE ISSUES RAISED IN PLAINTIFFS' REPLY DO NOT SUPPORT CLASS CERTIFICATION.[1]

Plaintiffs rely on *Ortega-Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2011 U.S. Dist. LEXIS 148223 (D. Ariz. Dec. 23, 2011), to support that Fed.R.Civ.P. 23(a) commonality/typicality requirements are met where a class alleges racial profiling and police stops without reasonable suspicion. Other than the general nature of the claims, however, *Ortega* is fundamentally different from the proposed class in *Floyd*. *Ortega* involved a Rule 23(b)(2) class of Latinos who alleged that, under the guise of enforcing immigration law, Arizona county sheriff officers had an actual policy of racially profiling Latinos who are driving or sitting in vehicles and are stopping them without reasonable suspicion. While defendants argued that they did not make stops based on race alone, they conceded that they made stops to investigate possible criminal violations based only on a reasonable suspicion that the person stopped was in the U.S. without authorization. *Id.* at *33-34, *66. The Court held that reasonable suspicion, even knowledge, that a person was not authorized to be in the country, by itself, does not authorize a stop and enjoined such behavior. *Id.* at *33-34, *77-78.

In contrast, here, commonality/typicality are not satisfied by a concession of any kind that defendants make stops on insufficient reasonable suspicion. Nor are the proposed class members commonly defined as simply as being Latino and being stopped while in a vehicle. Instead, here, the proposed class membership requires an assessment of the facts, circumstances, and defenses surrounding each individual stop, which defeats commonality/typicality.

---

[1] Per the Court's leave, defendants respectfully submit this memorandum of law as a sur-reply in further support of defendants' opposition to class certification ("Class Cert. Opp.") and in response to plaintiffs' reply, ("Pl. Reply"), and in opposition to the *amicus curiae* brief of the Black, Latino and Asian Caucus of the New York City Council ("BLAC") and the Declaration of Council Member Robert Jackson ("Jackson Decl.") submitted in support of class certification.

Plaintiffs' suggestion that the unconstitutional policy in *Ortega* supporting commonality is akin to their allegation of a unitary course of conduct here also fails. *See* Pl. Reply at 2-3. Perhaps in an effort to escape the vulnerability of their expert and statistical evidence under *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), plaintiffs claim that defendants have a unitary course of conduct -- a policy/practice of widespread suspicionless stops[2]-- that is shown *not* by their expert's statistical evidence,[3] but is shown instead, *e.g.*, by alleged enforcement of activity

---

[2] To recover against a municipality under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), plaintiffs must first prove an underlying constitutional violation; in the absence of a constitutional violation, plaintiff may not recover against a municipality on any theory. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447 (2010) (*Monell* requirements apply to suits for injunctive relief). Further, plaintiffs' theory, if based on failure to train or supervise or based on an alleged pattern or practice of constitutional violations, requires proof of the municipal policymakers' awareness of unconstitutional conduct by their subordinates, coupled with their inaction or tacit ratification of that conduct, or their "deliberate indifference" to such conduct. Additionally, plaintiffs must prove a "pattern" of conduct, *see Reynolds v. Guiliani*, 586 F.3d 183, 192 (2d. Cir. 2007), that violates the civil rights of citizens "repeatedly," *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d, 119, 123 (2d Cir. 1991), "persistent[ly]," *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d. Cir. 1983), and on a "widespread" basis. *Green v. City of N.Y.*, 465 F.3d 65, 80 (2d Cir. 2006). It is now unclear whether plaintiffs are pursuing a policy/practice *Monell* claim, despite NYPD's undisputed training on reasonable suspicion and express policy against racial profiling, or a pattern and practice *Monell* claim based on alleged failures to supervise, train, or otherwise monitor officers. While plaintiffs refer to proof of "deliberately ineffective audits, training and supervision," using terminology typical of a pattern and practice deliberate indifference inquiry, they purport that they will not offer it to prove deliberate indifference but to prove "a policy and/or practice of suspicionless and race-based stops." Pl. Reply at 3. This statement is all the more inconsistent when juxtaposed to the pleadings, which repeatedly allege deliberate indifference. *E.g.*, Docket #50, ¶¶ 107-126, 132-133, 137-138, 166. To the extent that plaintiffs allege a deliberate indifference *Monell* claim, their reliance on "deliberately ineffective" systems to show the existence of a policy/practice in the absence of notice of a widespread pattern of suspicionless stops is tantamount to requiring a municipality to establish systems to detect every or any conceivable practice of constitutional violations without proof that the practice exists. This is not the law.

[3] *See* Plaintiffs' Opposition to Defendants' Motion to Exclude Plaintiffs' Proposed Expert Reports, Opinions and Testimony of Jeffrey Fagan ("*Daubert* Opp."), at 1 (Fagan's reasonable articulable suspicion analysis is being used to "demonstrate that Defendants' regime for regulating the constitutionality of … stops is ineffective and insensitive to the actual conduct of stops"; 3-4 ("The ultimate issue is whether Defendants have a policy and/or practice of conducting suspicionless stops. Fagan's testimony will be far removed from that question.").

quotas and deliberately ineffective audits, training, and supervision. *See* Pl. Reply at 3, 4. Plaintiffs' attempt to establish commonality on the threshold question of the existence of a constitutional violation (or on any other question for that matter) based on alleged quotas or alleged deficient systems – none of which are inherently unconstitutional -- is nothing like *Ortega's* finding of commonality based on a conceded practice/policy of conducting stops on a legally insufficient basis.

Plaintiffs argue commonality/typicality on the theory that alleged quotas and ineffective systems cause a widespread practice of suspicionless stops before plaintiffs show, as they must, that there is a common issue of a widespread policy/practice of actual suspicionless stops. This is the threshold constitutional violation essential to their *Monell* claim.[4] While plaintiffs argue that the fact-finder may conclude that the alleged quotas and ineffective systems are part of a policy/practice, (*e.g.* Pl. Reply at 4), such a conclusion would not show that suspicionless stops actually take place and any inference to that effect would be unreasonable.[5] Essentially,

---

At the same time, however, plaintiffs state that "he will opine as to his analysis of the 2.8 million UF250s, which the fact-finder will be asked to consider along with other evidence including, inter alia, the acts and omissions of NYPD personnel charged with ensuring that its officers comply with the law, in determining the ultimate issue." *Id.* at 4; *cf.*, Pl. Reply at 3 (not including Fagan's analysis in what the fact-finder may rely on to conclude a policy/practice of suspicionless and race-based stops). Notably, in the *Daubert* Opp., Fagan changed his opinion and now claims, *inter alia*, that nearly 80% -- instead of 69% -- of the stops *are* justified; this significant increase in justified stops and concomitant nearly 40% decrease in indeterminate or unjustified stops diminishes any commonality/typicality and decreases the proposed class size. (Table 1 annexed to Fagan's 11/6/11 Declaration in Support of Class Certification is not based on his new numbers and should be disregarded.)

[4] Plaintiffs have not shown that alleged quotas or alleged deficient systems are issues common to all class members because, *e.g.*, four out of the seven putative class representatives' alleged stops involve no identified NYPD officer and thus there is no NYPD documentation that these stops even occurred, let alone proof that such stops were made to satisfy a quota.

[5] Despite plaintiffs' tacit insistence that they show commonality based on a policy/practice of suspicionless and race-based stops without relying on Fagan's analysis, they contrarily state, "Here, Plaintiffs' statistical evidence reveals racial disparities in stop rates and suspicionless

plaintiffs are making an untenable demand to systemically change alleged systems that may be theoretically capable of causing constitutional violations without a showing that any such violations have occurred on a widespread basis.[6] Plaintiffs cannot satisfy Rule 23(a) by alleging common issues that do not inform the central liability question about which they have no proof.

**POINT II.   THE BLAC'S ARGUMENTS DO NOT SUPPORT CLASS CERTIFICATION**

Under the required vigorous analysis, the BLAC's arguments do not support that plaintiffs have shown by a preponderance of the evidence that the Fed.R.Civ.P. 23(a) requirements have been met. The BLAC's arguments focus on the alleged citywide incidence of suspicionless stops. To do so factually,[7] the BLAC relies on statements made at two City Council hearings, which contain hearsay allegations of suspicionless stops, and not to proof that such stops were actually made without reasonable suspicion.[8] The BLAC also relies on a Council Member, who declares that (1) he and his staff receive "hundreds of informal complaints

---

stops in every precinct." Pl. Reply at 5. Even if plaintiffs are relying on Fagan's UF250 analysis as a basis to ask the jury to infer the existence of a policy/pattern (*see* n.3, *supra*), his analysis does not go beyond reviewing and grouping of boxes checked on the UF250s. Lack of reasonable suspicion cannot be determined solely on the face of UF250s. *See Floyd v. City of N.Y.*, 08 Civ. 1034 (SAS), 2011 U.S. Dist. LEXIS 99129 *7 (S.D.N.Y. Aug. 31, 2011). Thus, it would be improper to permit a jury to infer a policy/pattern based on all or part of the 20% of the UF250s that Fagan did not label as justified. Reliance on Fagan further fails to establish commonality under *Wal-Mart* (*see* Class Cert. Opp.), and his analyses are fatally unreliable and should be precluded for all the reasons set forth in Defendants' pending *Daubert* motion.

[6] The meager anecdotal evidence of the putative class representatives' seven stops and the general statements of the *amici* about stop complaints are insufficient to show a common issue of an existing widespread policy/practice of suspicionless stops.

[7] Defendants have not had the opportunity to conduct discovery on facts alleged by the BLAC.

[8] The BLAC relies upon a statement at a 2008 hearing, a year in which stops exceeded 530,000, that 2,400 CCRB stop related complaints were made; this number represents a miniscule percentage of total stops. Similarly, the noted statement that nearly one-third of stop related CCRB complaints from patrolled housing encounters were substantiated represents an even smaller percentage of total stops. This data does not support that a widespread policy/practice of suspicionless stops exists.

from the public" about being stopped without reasonable suspicion; and that (2) "Each of the BLAC's 27 members reports receiving, on average, two or three complaints every month about the NYPD's stop and frisk policies and practices." Jackson Decl. ¶¶ 3, 4. Mr. Jackson does not provide any details about the substance or timing of these complaints or any proof to support that any stops were actually conducted without reasonable suspicion. Such general statements devoid of factual detail cannot pass or even inform the vigorous analysis of Rule 23(a) elements in the context of the *Monell* liability issues presented by the case.

Like plaintiffs, the BLAC also fails to address the substance of defendants' argument that, under Fed.R.Civ.P. 23(b)(2), it would be inappropriate for the judiciary to grant the multi-faceted, broad-sweeping injunction that the class seeks against NYPD and the City. *See* Docket #50. Instead, the BLAC and Mr. Jackson put forth a defensive argument explaining what steps they have taken to address their concerns about stop, question and frisk and invite the federal judiciary to "exercise its full authority to fashion appropriate and permanent relief."[9] While their position may speak to their constituents, it does not speak to defendants' argument or further the analysis under Fed.R.Civ.P. 23(b)(2). The BLAC's position begs the question of what is the scope of the "full authority," if any, of the federal judiciary to fashion the breath of relief sought by the class against a state executive entity.[10] Injunctive relief where an effort is made "to take

---

[9]Like plaintiffs, the BLAC shares the misconception that stop and frisk is an *unabated "practice"* employed by the NYPD, as if it is akin to a program that can be scrapped and replaced. In fact, stop and frisk is the manifestation of the exercise of police power based on reasonable suspicion that is sanctioned by the Fourth Amendment, *see Terry v. Ohio*, 392 U.S. 1 (1968), just as arrests are the manifestation of police power based on probable cause under the Fourth Amendment. Provided stop and frisk activity meets the reasonable suspicion requirement, its frequency is of no moment.

[10] This Court itself has recognized that the judiciary is not well-suited to inject itself into the internal operations of NYPD. *See PBA of N.Y. v. City of N.Y.*, 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2000 U.S. Dist. LEXIS 15179, *10-11 (S.D.N.Y. Oct. 13, 2000) (denying injunction where race-based transfers of NYPD officers alleged in violation of Title VII because it

control of how police investigate crime and make arrests" is not appropriate,[11] and this is essentially what the proposed class seeks.

Finally, like plaintiffs, the BLAC misconstrues *Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973) by arguing that defendants lack a showing of commitment to change. In *Daniels v. City of New York*, 199 F.R.D. 513 (S.D.N.Y. 2001), this Court made clear that propriety of a *Galvan* stipulation was not diminished by a defendants' challenge to the existence of commonality and typicality. *Id.* at 514 (citing *Bishop v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 241 (S.D.N.Y. 1992), as holding to the contrary). To instill doubt that defendants will not apply properly tailored injunctive relief to all similarly situated persons, the BLAC relies on baseless accusations that NYPD has "not shown a willingness or commitment to voluntarily improve its stop and frisk practices." For example, the BLAC does not make clear:

- That defendants voluntarily settled *Daniels* in a stipulation effective through December 2007 that required defendants for the most part *to continue* efforts already undertaken unilaterally by NYPD;
- That since *Daniels* sunset defendants have not dismantled any of the efforts that defendants agreed to continue to make during the *Daniels* settlement; or
- That defendants have undertaken further efforts beyond the *Daniels* Stipulation (*e.g.,* commissioning the Rand Study and implementing Rand recommendations; revising the UF-250 form to include the reason for any force used in a stop).

The BLAC's arguments fail to undermine the applicability of *Galvan* in lieu of class certification.

---

"represents an undue intrusion into a matter of state sovereignty, namely, the internal operation of . . . NYPD") (citing cases). In fact, although this Court did not dismiss the complaint in the related *Daniels* class action, it did express concerns about the propriety of the injunctive relief sought. *See Nat'l Cong. for Puerto Rican Rights v. City of N.Y.*, 75 F. Supp. 2d 154, 162-164 (S.D.N.Y. 1999) (citing cases). As *Floyd* is nearing trial, this issue is ripe for consideration.

[11] *Rahman v. Chertoff*, 530 F.3d 622, 626-27 (7th Cir. 2008) (commenting on the nature of the relief sought rather than the open-ended nature of the class).

- 7 -

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification should be denied.

Dated:   New York, New York
         February 16, 2012

> Respectfully submitted,
>
> MICHAEL A. CARDOZO
> Corporation Counsel of the City of New York
> *Attorney for Defendants*
> 100 Church Street
> New York, New York 10007
> (212) 788-0892
>
> By: _____
> Linda Donahue
> Assistant Corporation Counsel

*Of Counsel:*
Heidi Grossman, Esq.