UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
DAVID FLOYD, et al., :
:
                Plaintiffs, : 08 Civ. 01034 (SAS)
:
    -against- : ECF CASE
:
THE CITY OF NEW YORK, et al., :
:
                Defendants. :
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS
OF DEFENDANTS' PROPOSED EXPERT, DENNIS SMITH**

                    CENTER FOR CONSTITUTIONAL RIGHTS
                    666 Broadway, 7th Floor
                    New York, New York 10012
                    (212) 614-6439

                    BELDOCK LEVINE & HOFFMAN LLP
                    99 Park Avenue, Suite 1600
                    New York, New York 10016
                    (212) 490-0400

                    COVINGTON & BURLING LLP
                    The New York Times Building
                    620 Eighth Avenue
                    New York, New York 10018-1405
                    (212) 841-1000

                    *Attorneys for Plaintiffs*

## TABLE OF CONTENTS

          **Page**

INTRODUCTION ..........................................................................................................1

ARGUMENT................................................................................................................1

    I.     SMITH IS NOT QUALIFIED TO OPINE ON THE STATISTICAL METHODS AT ISSUE IN THIS CASE ...........................................................1

    II.    SMITH SHOULD BE PRECLUDED FROM TESTIFYING ABOUT OPINIONS THAT ARE NOT HIS OWN ..........................................................4

    III.   SMITH'S "ALTERNATIVE" REGRESSION AND "CORRELATION COEFFICIENTS" ANALYSES ARE EXTREMELY UNTIMELY ...................6

    IV.   SMITH'S OPINION ABOUT THE MEANING OF LOW HIT-RATES IS WHOLLY SPECULATIVE AND CONJECTURAL..........................................7

    V.    SMITH'S CRIME REDUCTION STUDIES AND OPINIONS WILL NOT ASSIST THE TRIER OF FACT TO RESOLVE THE QUESTION OF WHETHER NYPD OFFICERS MAKE STOPS ON THE BASIS OF RACE AND ANY SUPPOSED PROBATIVE VALUE OF SUCH OPINIONS IS GREATLY OUTWEIGHED BY THEIR PREJUDICE .............7

    VI.   SMITH'S OPINION THAT NYPD STOPS ARE NOT RACIALLY MOTIVATED IS NOT BASED ON STATISTICAL ANALYSIS AND IMPROPERLY STATES AN ULTIMATE LEGAL CONCLUSION ................9

CONCLUSION..........................................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                                                                   **Page(s)**

*Arista Records, LLC v. Lime Grp. LLC,*
   No. 06 CV 5936, 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ................................................. 4

*Berry v. City of Detroit,*
   25 F.3d 1342 (6th Cir. 1994) ................................................................................................. 2

*Jarvis v. Ford Motor Co.,*
   283 F.3d 33 (2d Cir. 2002) .................................................................................................... 3

*Diaz v. Johnson Matthey, Inc.,*
   893 F. Supp. 358 (D.N.J. 1995) ............................................................................................ 4

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,*
   285 F.3d 609 (7th Cir. 2009) ................................................................................................. 5

*Floyd v. City of New York,*
   No. 08 Civ. 1034(SAS), 2012 U.S. Dist. LEXIS 53249 (S.D.N.Y. Apr. 16, 2012) .............. 10

*IMPACT v. Firestone,*
   893 F.3d 1189 (11th Cir. 1990) ............................................................................................ 3

*Malletier v. Dooney & Bourke, Inc.,*
   525 F. Supp. 2d 558 (S.D.N.Y. 2007) ............................................................................ 2, 3, 5

*Mancuso v. Consol. Edison Co. of NY, Inc.,*
   967 F. Supp. 2d 1437 (S.D.N.Y. 1997) ............................................................................. 2, 4

*Nimeley v. City of New York,*
   414 F.3d 381 (2d Cir. 2005) .................................................................................................. 5

*Point Prods. A.G. v. Sony Music Entm't, Inc.,*
   No. 93 Civ. 4001(NRB), 2004 WL 34555 (S.D.N.Y. Feb. 23, 2004) ................................ 6, 7

*Pyke v. Cuomo,*
   567 F.3d 74 (2d Cir. 2009) .................................................................................................... 8

*R.F.M.A.S. v. So,*
   748 F. Supp. 2d 244 (S.D.N.Y. 2010) .................................................................................. 5

*United States v. Paul,*
   175 F.3d 906 (11th Cir. 1999) .............................................................................................. 4

*Valentin v. City of New York,*
   No. 94 CV 3911(CLP), 1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997) .............................. 5

**STATUTES**

Fed. R. Civ. P. 26(a)(2)(B) ..................................................................................................6

Fed. R. Civ. P. 37(c)(1) .......................................................................................................6

Fed. R. Evid. 702 .......................................................................................................5, 6, 7

**OTHER AUTHORITIES**

Petra E. Todd, *Testing for Racial Bias in Law Enforcement*, University of Pennsylvania
    (2006) ............................................................................................................................7

## INTRODUCTION

Defendants' opposition is notable mainly for what it does *not* say: namely, that Smith has training or experience in the specific statistical methods at issue in this case. Defendants also do not offer a legitimate reason for their extreme delay in disclosing Smith's newly proffered regression analyses; do not explain how Smith's studies and opinions about the supposed crime deterrent effects of the NYPD's stop-and-frisk practices would rebut Plaintiffs' expert's statistical evidence concerning the racial disparities in those practices—or why the supposed probative value of these opinions is not far outweighed by their prejudice; and do not refute Plaintiffs' showing that Smith's opinion that NYPD officers do not make stops on the basis of race is anything but an impermissible conclusion as to the ultimate legal and factual issues underlying Plaintiffs' Equal Protection claims. Instead, Defendants merely repeat their earlier attacks on Plaintiffs' expert, who this Court has already ruled is permitted to testify at trial. Defendants have therefore failed to meet their burden to establish the admissibility of their expert's testimony, and Plaintiffs' motion should be granted in its entirety.

## ARGUMENT

### I. SMITH IS NOT QUALIFIED TO OPINE ON THE STATISTICAL METHODS AT ISSUE IN THIS CASE

Defendants' general arguments concerning Smith's experience with "statistical analyses" and "studying and quantifying the effects of various policing strategies, tools and practices[,]" *see* Def. MOL (Dkt # 218) at 5, do not establish that he is qualified to opine on the specific statistical methods at issue in this case. Smith admits that: (i) he is a political scientist, not a statistician; (ii) he has never conducted a statistical analysis of racial disparities in policing or any other context; (iii) he has no formal training or education in many of the statistical methods employed by Professor Fagan; (iv) he has never conducted a study using

any of the three multiple regression models used by Fagan; and (v) he does not even know what one of those three models is. *See* Pl. MOL (Dkt # 216) at 8-9; Smith Dep. (Dkt # 217-4) at 129:5-10. Only four of the prior studies that Smith misleadingly portrays as specialized experience involved multiple regression analyses.[1] Moreover, Smith's statement that all the regression models used in these studies "were developed primarily by [him], and Purtell's statement that "Smith leads the model development process," Declaration of Robert Purtell, dated 7/24/2012 (Dkt # 221) ("Purtell Decl.") ¶ 3, are contradicted by Smith's deposition testimony that Purtell, not he, "was the statistician on" their studies who "took the lead" on deciding which regression models to use. Smith Dep. at 35:12-37:3, 40:4-12.

Smith's training and experience in statistics is not specialized enough to permit him to testify about supposed flaws in Fagan's multiple regression analyses or about his "alternative" regression analysis, *see* Declaration of Dennis Smith In Support of Defendant's *Daubert* Motion, dated 12/19/2011 (Dkt # 181) ("Smith 12/19/2011 Decl."). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994); *see Mancuso v. Consol. Edison Co. of NY, Inc.*, 967 F. Supp. 2d 1437, 1442-45 (S.D.N.Y. 1997) (internist with no specialized training not qualified to testify about exposure to PCBs). Accordingly, this Court has precluded experts with only limited and generalized training and experience in statistics as unqualified to testify about specific statistical methodologies. *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp.

---

[1] None of the other studies that Smith mentions (*see* Declaration of Dennis Smith, dated 7/24/2012 (Dkt # 220) (hereinafter "Smith Decl.") ¶¶ 4-5) involved multiple regression analyses. The studies he conducted with Elinor Ostrom all involved review of police officer and civilian survey data. *See* Smith Dep. at 113:11-114:16, 116:7-117:6; 122:6-124:22; Smith Rept., App. A; at 4-5; Smith Decl. ¶¶ 4-6.

2

2d 558, 642 (S.D.N.Y. 2007) (Scheindlin, J.) (non-statistician expert not qualified to testify about statistical probability theory); *see also IMPACT v. Firestone*, 893 F.3d 1189 (11th Cir. 1990) (affirming exclusion of political scientist's expert testimony about statistical analysis of racial disparities).

Defendants attempt to bypass Smith's lack of training and experience with Fagan's multiple regression models by arguing that his critiques of these models do not require expertise in Fagan's particular types of regression models. *See* Def. MOL at 6-7; Smith Decl. ¶¶ 10-11, 14-16. However, this argument is a smokescreen: Smith *does* criticize the way Fagan ran his multilevel logistic regression model, *see* Smith Rep. at 60, despite Smith's admission that he has no experience running such models, Smith Dep. at 127:3-8. Moreover, in order for Smith to testify about the "alternative" regression analysis that he and Purtell conducted, he would have to establish both the methodological reliability of his choice of variables and that the regression model itself (which is a derivative of one used by Fagan that Smith has never used[2]) was run in a reliable manner. Smith is clearly not qualified to do the latter.

In addition, Smith's critique that Fagan should have used the crime suspect race benchmark is not even based on Smith's knowledge and study of the NYPD's shift to a proactive policing model. *See id.* at 276:4-11, 286:11-287:6. The benchmarking question is unique to statistical analyses of racial disparities in police enforcement activities (*e.g.*, arrests, traffic or pedestrian stops), *see* Fagan Rep. at 15-18; Reply Declaration of Dennis Smith, dated

---

[2] Smith has not even made clear which of the two multiple regression models used by Fagan in his Fourteenth Amendment analysis, negative binomial or multilevel poisson, *see* Fagan Rep. at 30-47, was the basis for Smith's "alternative regression." *See* Smith 12/19/11 Decl. ¶¶ 30-31; Smith 7/24/12 Decl. ¶¶ 17-24. Thus Smith's "alternative" regression analysis cannot be replicated by Plaintiffs, which severely undermines its reliability under *Daubert*. *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 48 n.8 (2d Cir. 2002) ("[A] trial court's decision whether to admit into evidence a proffered expert theory should" consider "whether it can be (and has been) tested[.]") (internal quotation marks and citation omitted).

2/16/2012 (Dkt # 193) ¶ 20 ("Smith 2/16/2012 Reply Decl."), with which Smith admittedly has no training or experience, *see* Smith Dep. at 113:6-125:11, 132:12-134:5. Smith himself acknowledges that his benchmarking critique came from his reading of a handful of studies on racial disparities in police practices, including some by Fagan, *see* Smith 2/16/11 Reply Decl. ¶ 20 n. 28-29; Smith Dep. at 13:23-21:2, 28:5-31:7. Courts consistently reject attempts to establish expertise based solely on a selective review of the literature on the subject matter of the expert's testimony, *see, e.g., United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999); *Mancuso*, 967 F. Supp. at 1442-45; *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 372–73 (D.N.J. 1995), and this Court should do the same here.[3]

## II. SMITH SHOULD BE PRECLUDED FROM TESTIFYING ABOUT OPINIONS THAT ARE NOT HIS OWN

Defendants' claim that Smith's opinions are his own and that he simply "consulted experts from other disciplines in order to confirm, test, and provide further support for his opinions," Def. MOL 8-9, is contradicted by his testimony in this case. Smith testified that at least four of his critiques of Fagan's multiple regression analysis were originally communicated to him by others. *See* Smith Dep. at 60:7-19, 61:17-63:4, 65:12-67:10, 216:9-219:22. Smith makes much of how "collaboration" with others is "standard practice in his field," Smith Decl. ¶¶ 4, 10, but the Federal Rules of Evidence preclude testimony that simply "summariz[es] what other experts have said, without application of [one's] own expertise." *Arista Records, LLC v. Lime Grp. LLC*, No. 06 CV 5936(KMW), 2011 WL 1674796, *10 (S.D.N.Y. May 2, 2011). Yet that is exactly what Smith seeks to do. Smith has no experience

---

[3] Likewise, Smith's critique of Fagan's omission of the unemployment variable is not based on his knowledge of the NYPD's policing model, but on the opinion of an epidemiologist with no training or experience in policing or criminology. *See* Smith Dep. at 60:7-19, 62:17-63:12; 276:4-11, 286:11-287:6. Smith is not a criminologist; while he has studied police responses to crime, he has not studied the factors that predict behavior that is likely to bring a civilian in contact with law enforcement. *See* Smith Decl.; Smith Rep., App. A.

4

conducting statistical studies of racial disparities in police stop patterns using the crime suspect benchmark, but instead bases *his* opinion about its supposed superiority on the opinions of a handful of others.[4] Defendants are free to use these studies to cross-examine Fagan on his choice of benchmarks, but allowing Smith to testify to the benchmark critique, thereby giving such critique the imprimatur of "expert" approval, will result in the jury giving that critique undue weight—a result district courts must take special care to prevent when it comes to expert opinion evidence. *See Nimeley v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citations omitted).

Additionally, despite Smith's claims that Purtell and his team implemented the "alternative" regression analysis "at [Smith's] direction," Smith Decl. ¶ 18, Smith's complete lack of training and experience in conducting that kind of multiple regression model means either that such work was being directed by one who is unqualified to do so, or that Purtell, in running the regression model, "exercise[d] professional judgment that is beyond [Smith's] ken" and therefore that Smith cannot opine on whether the regression model was run in a methodologically reliable manner. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613-14 (7th Cir. 2009) (expert could testify on topic within his "domain of expertise," but not that of another expert with whom he worked), *cited in Malletier*, 525 F. Supp.2d at 665. Because Smith cannot testify about the results of his "alternative" regression analysis unless he

---

[4] A jury would not need Smith's assistance to digest these opinions, which is another reason why his benchmarking opinion is not a proper subject of expert testimony under Rule 702. *See Valentin v. City of New York*, No. 94 CV 3911(CLP), 1997 WL 33323099, *27 (E.D.N.Y. Sept. 9, 1997) (expert testimony based on third party statements fully comprehensible to lay people inadmissible under FRE 702); *see also R.F.M.A.S. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) (expert testimony inadmissible where "[a]ny juror could have employed common sense to perform the same analysis").

can establish that both the choice of variables *and* the actual running of the model were methodologically sound, he must be precluded from testifying about it under FRE 702.[5]

### III. SMITH'S "ALTERNATIVE" REGRESSION AND "CORRELATION COEFFICIENTS" ANALYSES ARE EXTREMELY UNTIMELY

Defendants did not disclose Smith's "coefficient calculations" and "alternative" regression analysis until December 2011—thirteen months after Defendants' deadline to submit expert reports and more than nine months after Smith's deposition. Neither was mentioned or even hinted at in Smith's report, and if he held these views at the time of his March 2011 deposition, he failed to disclose them in response to questions that he could not have answered truthfully without disclosing them. *See* Hoff Varner Reply Decl., Ex. 1 (Additional Smith Deposition Excerpts) at 228:16-21; 305:11-317:12. Defendants claim that Smith made these calculations and conducted this analysis in response to "new analyses" contained in Fagan's November 6, 2011 Class Certification Declaration, Def. MOL at 13,16. This is belied by Smith's December 19, 2011 declaration in which the correlation coefficients and alternative regression analysis first appear: in the portion responding to Fagan's class certification declaration, he makes no mention of these two new analyses, *see* Smith 12/19/11 Decl. ¶¶ 27-29, nor does Smith mention Fagan's class certification declaration when discussing his own two new analyses, *see id.* ¶¶ 15, 30-31. Allowing Smith to testify about these belatedly disclosed opinions would greatly prejudice Plaintiffs because the time for expert discovery has long since passed. Under such circumstances, Fed. R. Civ. P. 37(c)(1) warrants exclusion of these opinions. *See Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001(NRB),

---

[5] Additionally, as set forth in Plaintiffs' opening memorandum of law, *see* Pl. MOL at 2 n.1, Purtell is precluded from testifying because he never submitted an expert report and his two declarations do not meet the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B) as they do not set forth any opinions that he would offer at trial, much less the facts and data considered in forming such opinions. *See* Decl. of Robert Purtell, dated 2/16/2012 (Dkt # 194) ("Purtell 2/16/2012 Decl."); Purtell Decl.

2004 WL 345551, *9-13 (S.D.N.Y. Feb. 23, 2004) (precluding analysis in untimely supplemental expert affidavits because allowing them "would eviscerate the purpose of the expert disclosure rules.").[6]

## IV. SMITH'S OPINION ABOUT THE MEANING OF LOW HIT-RATES IS WHOLLY SPECULATIVE AND CONJECTURAL

Defendants characterize Smith's opinion that low hit-rates are evidence of NYPD stop-and-frisks' deterrent effect on weapons possession as simply "an alternative explanation for the same empirical observations reported by Fagan." Def. MOL at 17-18. However, unlike Fagan's conclusion that the low hit-rates suggest a lack of reasonable articulable suspicion that stopped individuals are carrying weapons, Smith guesses at the reason *why* so few stopped individuals are carrying weapons, a conclusion for which there is no empirical data.[7] Without such data, Smith's opinion is purely speculative and therefore inadmissible under Fed. R. Evid. 702.

## V. SMITH'S CRIME REDUCTION STUDIES AND OPINIONS WILL NOT ASSIST THE TRIER OF FACT TO RESOLVE THE QUESTION OF WHETHER NYPD OFFICERS MAKE STOPS ON THE BASIS OF RACE AND

---

[6] Defendants' attempts to equate the untimeliness of their disclosures with Professor Fagan's post-discovery declarations, *see* Declaration of Heidi Grossman, dated 7/24/2012 (Dkt # 219) ¶ 7, should be rejected. First, Fagan's November 6, 2011 class certification declaration did not contain a new regression analysis but, rather, the same multilevel poisson regression analysis described in his original expert report applied to subsets, rather than the entirety, of the NYPD crime complaint and UF250 data. *See* Decl. of Jeffrey Fagan, dated 11/6/2011 (Dkt # 168) ¶ 12) Fagan's September 28, 2011 declaration described his examination of the NYPD's crime data to determine how many burglaries had been reported in the vicinity of Plaintiff David Floyd's home in January and February 2008. *See* Decl. of Jeffrey Fagan, dated 9/28/2011 (Dkt # 156). The results of this examination will not form the basis of any of opinion Fagan will express at trial concerning racial disparities and lack of reasonable suspicion in NYPD stop patterns, but will instead be used by Plaintiffs to establish one of the facts surrounding Floyd's February 2008 stop incident. Finally, the corrections of the inadvertent computer errors in Fagan's February 2, 2012 declaration were made in response to critiques that Defendants did not raise until December 19, 2011, and, in any event, worked in Defendants' favor. *See* Decl. of Jeffrey Fagan, dated 2/2/2012 (Dkt # 189) ¶¶ 14, 17 ("Fagan 2/2/12 Decl.").

[7] *See* Petra E. Todd, *Testing for Racial Bias in Law Enforcement*, Univ. of Penn. (2006), available at http://athena.sas.upenn.edu/~petra/papers/profiling.pdf, at 11 ("[T]here is currently no empirically implementable test for racial bias in [] a [crime minimization] model.").

7

## ANY SUPPOSED PROBATIVE VALUE OF SUCH OPINIONS IS GREATLY OUTWEIGHED BY THEIR PREJUDICE

Defendants fail to explain how Smith's findings in his Operation Impact and Stop-and-Frisk studies will assist the trier of fact in resolving the question of whether NYPD officers make stops on the basis of race. Defendants argue that Smith's Operation Impact findings offer "an alternative explanation" for the greater numbers of stops in minority neighborhoods and thus "helps explain the higher number of stops of minorities relative to non-minorities in the City." Def. MOL at 18-19. This argument ignores the fact that Fagan controlled for deployment of NYPD officers by including the Patrol Strength variable, *see* Fagan Rep. at 9-10, 31. Moreover, Plaintiffs are not challenging or disputing the deployment of more officers to such neighborhoods; Plaintiffs challenge the officers' conduct once deployed. Similarly, Defendants' argument that Smith's deterrence opinion "provides further evidence" that stops are driven by where the crime occurs rather than racial discrimination, Def. MOL at 19, ignores the fact that Fagan also controlled for increased stops in neighborhoods with higher crime rates, *see* Fagan Rep. at 9, 30-31, and does not provide an answer to Fagan's finding that the racial composition of a neighborhood is a significant predictor of stop patterns *even after controlling for local crime conditions, id.* at 39; Fagan Supp. Rep. at 15-16, 20. In short, Smith's "deterrence" argument, purportedly to be offered in rebuttal, is a non sequitur.

Defendants' reliance on *Pyke v. Cuomo*, 567 F.3d 74 (2d Cir. 2009), to support their relevance contention, Def. MOL at 23, is also misplaced. *Pyke* merely held that the challenged governmental classification was based on geography rather than race. 567 F.3d at 77-78. It did not base its finding in any way on evidence that the geographic classification had in fact *achieved* a legitimate law enforcement purpose. *Id.* Indeed, as shown in Plaintiffs' opening brief, *see* Pl. MOL at 19-20, 23-24, a police department can have a legitimate law enforcement

8

goal and still violate the Equal Protection clause when it uses race-conscious means to achieve that goal.

Finally, Defendants respond to Plaintiffs' showing that any conceivable relevance of Smith's deterrence opinion would be far outweighed by its prejudice by emptily suggesting a limiting instruction. Def. MOL at 20. But Defendants offer no such instruction—nor could they. The only instruction that could potentially limit the prejudice would be one instructing the jury to disregard Smith's opinion entirely, and even that would not remove the prejudicial taint. The need for such an instruction compels the conclusion that the opinion is not only prejudicial but completely irrelevant.

## VI. SMITH'S OPINION THAT NYPD STOPS ARE NOT RACIALLY MOTIVATED IS NOT BASED ON STATISTICAL ANALYSIS AND IMPROPERLY STATES AN ULTIMATE LEGAL CONCLUSION

Defendants seek to admit Smith's opinion that the NYPD's stops and frisks are motivated by crime deterrence and not race. But Smith did not conduct a study through which he determined that crime deterrence, rather than race, was a statistically significant and robust predictor of stops and frisks, nor did he conduct a statistical analysis that identified crime deterrence as the motivating factor in NYPD stops and frisks. Tellingly, in arguing that Smith is simply "offering a plausible alternative explanation for the empirical phenomenon described by Fagan," Defendants cite to Smith's critique of Fagan's regression analyses benchmarks, *id.*, not to any study that suggests the NYPD is motivated by crime deterrence. His opinion is thus nothing more than speculation. Further, in response to Plaintiffs' showing that Smith failed to account for the possibility that NYPD officers are stopping people on the basis of race to deter crime, Defendants offer nothing more than a gratuitous, untimely, and factually incorrect attack of Fagan's methodology. *See id.* at 22. Indeed, Defendants ignore the fact that Fagan controlled

9

for focused officer deployment and stop-and-frisk activity in higher crime areas of the City. Fagan Rep. at 9-10, 30-31.

Defendants argue that Smith's opinion that NYPD officers are motivated by crime control and not race does not impermissibly opine on the ultimate legal issue because the Court has "defined the 'ultimate [legal] issue'" as "'whether defendants have a policy and/or practice of conducting suspicionless stops.'" Def. MOL at 21 (quoting *Floyd v. City of New York*, No. 08 Civ. 1034(SAS), 2012 U.S. Dist. LEXIS 53249, *46 (S.D.N.Y. Apr. 16, 2012)). Although they correctly identify the ultimate legal issue of Plaintiffs' Fourth Amendment claim, their response wholly ignores the ultimate legal issue of the *Fourteenth* Amendment claim: whether NYPD officers are stopping individuals on the basis of race—the precise question Smith's opinion impermissibly answers.

Finally, Defendants' argument that Smith's opinion is no more of a legal conclusion than Fagan's opinions, Def. MOL at 21-22, is based on a mischaracterization of Fagan's opinions. Fagan did not opine that "the racial patterns in NYPD SQFs suggest that SQFs are motivated by racial discrimination[.]" *Id.* at 22. Fagan merely reported the results of his multiple regression analyses and explained what the results of his methodologically sound analyses show. *See* Fagan 2/2/12 Decl. ¶ 4(a)-(c). Thus, Defendants' claim that Smith's opinion "that there is no compelling evidence that NYPD officers are making stops based on race" is simply "an alternative explanation" of the statistical evidence compiled by Fagan, Def. MOL at 21, is disingenuous.

Accordingly, Smith should be precluded from offering his opinion that there is no compelling evidence NYPD officers make stops on the basis of race.

10

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening brief, this Court should grant Plaintiffs' Motion to Exclude Certain Opinions of Defendants' Proposed Expert, Dennis Smith.

Dated: New York, New York
August 7, 2012

By: */s/ Gretchen Hoff Varner*
GRETCHEN HOFF VARNER

Darius Charney
Sunita Patel
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
(212) 614-6439
dcharney@ccrjustice.org
spatel@ccrjustice.org

Jonathan Moore
Jenn Rolnick Borchetta
BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400
jmoore@BLHNY.com
jborchetta@BLHNY.com

Philip A. Irwin
Eric Hellerman
Gretchen Hoff Varner
Kasey Martini
COVINGTON & BURLING LLP
The New York Time Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
pirwin@cov.com
ehellerman@cov.com
ghoffvarner@cov.com
kmartini@cov.com

11

Daniel A. George
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000
dgeorge@cov.com

*Attorneys for Plaintiffs*

12