```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   DAVID FLOYD, et al.,

 4                  Plaintiffs,

 5            v.                        08 Civ. 1034 (SAS)

 6   CITY OF NEW YORK,
                                        Conference
 7               Defendant.

 8   ------------------------------x
                                        New York, N.Y.
 9                                      August 27, 2012
                                        12:00 p.m.
10   Before:

11          HON. SHIRA A. SCHEINDLIN,

12                                      District Judge

13          APPEARANCES

14
     LANSNER & KUBITSCHEK
15        Attorneys for Plaintiffs
     BY:  DARIUS CHARNEY
16

17   COVINGTON & BURLING
          Attorneys for Plaintiffs
18   BY:  ERIC HELLERMAN
          KASEY L. MARTINI
19

20   NEW YORK CITY LAW DEPARTMENT
     OFFICE OF THE CORPORATION COUNSEL
21        Attorneys for Defendant
     BY:  HEIDI GROSSMAN
22        SUSANNA PUBLICKER
          BRENDA COOKE
23

24

25
```

```
 1                (Case called)

 2                THE COURT:  Good afternoon.  Are you Mr. Hellerman?

 3                MR. HELLERMAN:  Yes.  Eric Hellerman from Covington &

 4      Burling, for the plaintiffs.

 5                MS. MARTINI:  Kasey Martini from Covington & Burling.

 6                THE COURT:  Have you two been here before on this

 7      case?

 8                MR. HELLERMAN:  I was several years ago.  It's good to

 9      be back.

10                THE COURT:  You, Ms. Martini?

11                MS. MARTINI:  I have not.

12                THE COURT:  Welcome.  Ms. Grossman, good afternoon.

13                MS. GROSSMAN:  Good afternoon, your Honor.

14                THE COURT:  Ms. Cooke, good afternoon.

15                MS. COOKE:  Good afternoon.

16                THE COURT:  Ms. Publicker, have you been here before

17      on this one?

18                MS. PUBLICKER:  Not on this one, your Honor.

19                THE COURT:  Good afternoon.

20                I think I scheduled this conference after issuing the

21      recent Daubert opinion on the city's expert.  This may have

22      been the last of the immediate pretrial motions.  Is that

23      right?  We have had our summary judgment, we have had our

24      Daubert.  We should be at the stage of thinking about a trial.

25      If we are going to be scheduling trial submissions or motions
```

1    in limine, it's time to do that.  Does anybody disagree with

2    that?

3              Plaintiff doesn't disagree, so I guess it's your turn,

4    Ms. Grossman.

5              MS. GROSSMAN:  Your Honor, it depends on the timing.

6    We have still a lot of work that we expect to happen in the

7    next few months along with the plaintiffs' mailings that are

8    going to be sent out as a result of receiving the names of the

9    individuals on the database.  The plaintiffs have indicated

10   that as a result of those mailings they expect to make 26(a)

11   disclosures, and that could spawn additional potential

12   discovery if the plaintiffs are expecting to update their 26(a)

13   disclosures.

14             We are going to plan the deposition of Professor

15   Patel, and that should be able to be accomplished in the next

16   month or so.

17             THE COURT:  That's not a problem, right.

18             MS. GROSSMAN:  That's not an issue.  Also, in terms of

19   when to schedule motions in limine, it's a little tricky.  If

20   the plaintiffs are going to offer additional evidence that

21   discovery in the next few months will reveal, it's very hard to

22   plan for how this trial is going to look.

23             I also have concerns about what the trial will look

24   like because the class certification decision could inform what

25   it is that we try.  And you have indicated perhaps we can try

1    just the Monell case.  Then the question becomes if the class

2    certification affects the scope of any remedial relief, should

3    that be the case, there likely would be duplicative evidence.

4          What happened in 2009 and whatever evidence is

5    occurring in 2009, if that's the basis for any liability, if we

6    were then to have some sort of remedial phase of the case, what

7    happened in 2009 is not necessarily what's happening in 2012.

8    So there could potentially be a need for further evidence to be

9    submitted.

10         But this is all speculative because it is hard to know

11   what the case is going to look like given that we don't have

12   any indication what is happening with the circuit on the class

13   certification issue.

14         THE COURT:  I have expressed the view before that

15   whether it is a class or not a class at most would affect the

16   scope of relief.  It wouldn't affect whether there's been

17   constitutional violations such as those alleged by the named

18   plaintiffs.  The named plaintiffs can proceed whether or not

19   there is a class case.  The Monell claim can proceed whether or

20   not there is a class.  And it doesn't seem to me that the case

21   should be delayed for the length of time it would take,

22   assuming that an appeal is taken, to brief and decide the

23   appeal, which could be two years.

24         This is an 08 case and a fairly early 08 case.  1034

25   tells me it was probably January or February, which means it

 1    will be five years this January or February.  I think it is

 2    really time to bring the case to some level of resolution in

 3    the trial court.  And I don't see what it matters whether that

 4    class proceeds or is decertified from the perspective of the

 5    liability phase.

 6            MS. GROSSMAN:  All I'm saying is say we try the Monell

 7    issue.

 8            THE COURT:  Let's say.

 9            MS. GROSSMAN:  And we have witnesses that will be

10    presented and offered on the part of the city to talk about

11    what the policies are.  Suppose the class certification

12    decision doesn't come down for another year.

13            THE COURT:  Yes.  That would be early.  But go ahead.

14            MS. GROSSMAN:  Maybe two years.

15            THE COURT:  Yes, maybe.

16            MS. GROSSMAN:  The state of affairs from the time that

17    there is a trial to the time that the class certification is

18    decided and you are clear to have any kind of remedial --

19            THE COURT:  I agree with that.  We could not get

20    potentially to the relief stage, but we would know whether

21    there is a liability verdict:  Did the city act in an

22    unconstitutional manner in 2009 when it stopped and frisked

23    certain plaintiffs.  That's all we would know.  We wouldn't be

24    able to say at that point what the remedy should be, but we

25    would know there might be damages for the past violation.

1    Although it is not a damages case, it's an injunction case,

2    isn't it?

3            MR. CHARNEY:  It is for the class claims.  There are a

4    few named plaintiffs that have individual damage claims.

5            THE COURT:  You theoretically could complete the

6    damage phase for the individual plaintiffs.  You might not be

7    able to decide the injunctive phase in terms of remedy until

8    you know whether it's an ongoing violation.

9            MS. GROSSMAN:  I'm obviously not being clear.  I'm

10   just saying there is going to be duplication.  You may think

11   that if you get to the remedial phase, many different witnesses

12   would have to be presented at that phase.  If that is something

13   that in terms of duplication of efforts you think serves

14   judicial economy, that may very well be where you think we

15   should go.

16           I'm just raising with you the potential issue that

17   when you try a case in year one on liability and then you want

18   to consider remediation a year later, where the city may be

19   between year one and year two may be completely different and

20   evidence may need to be presented at that time.  That may be

21   something that you are comfortable with, but I just wanted to

22   raise that as a potential issue in terms of economy and

23   efficiency.

24           Also important, we don't know to what extent a

25   decision on the class certification issue will have on

1    evidentiary rulings in this case.  For example, the commonality

2    issue.  If causation, which is a very big concern of ours, is

3    an issue in class certification, and when you consider Walmart

4    and the issue of commonality, if the circuit comes down with a

5    ruling on a particular issue -- I'm sorry.  Did you want to

6    interrupt?

7              THE COURT:  No.  Go ahead.

8              MS. GROSSMAN:  If the circuit comes down and makes

9    rulings that inform the Monell trial, the issues are

10   overlapping.  The issues on Monell in terms of causation and

11   whether pattern and practice is the approximate cause of an

12   underlying constitutional violation, not knowing what the

13   Second Circuit might decide on that particular issue, may

14   inform certain evidentiary rulings.

15             I guess my concern that I just want to raise with the

16   Court is that we don't want to have a trial and then the

17   circuit comes down with a decision that having to do it over

18   again, we might have different rulings, and there may be some

19   impact that a ruling from the circuit would have on the Monell

20   trial.

21             THE COURT:  I'm a little mystified.  We have Monell

22   claims all the time that require pattern and practice proof and

23   they are not class actions, but you still need to prove a

24   pattern and a practice, which means multiple events.  Even in a

25   single-plaintiff case, that plaintiff might have to show that

```
 1    the police department has done this a hundred times to prove a
 2    pattern and practice, and it is not a class case.  It is an
 3    unusual requirement, the pattern and practice requirement, but
 4    it is unrelated to class.  I'm saying you still have to prove
 5    multiple events if you're going to show pattern.
 6             MS. GROSSMAN:  I know.  But I think this issue is so
 7    much more difficult than just the very simple is there a
 8    pattern and practice/is there not.  When you break down the
 9    jury instructions, when you look at a verdict sheet, and you
10    ask what is the causation --
11             THE COURT:  Would you explain to me what you mean by
12    causation.
13             MS. GROSSMAN:  If the plaintiffs are claiming, for
14    example, that the quota evidence is the pattern and practice,
15    the policy --
16             THE COURT:  The policy?
17             MS. GROSSMAN:  The policy and practice.
18             THE COURT:  Right.
19             MS. GROSSMAN:  And that is the proximate cause of the
20    underlying constitutional violations, that would be evidence
21    that they plan on presenting at a Monell trial.  If the circuit
22    looks at the evidence that was presented in support of
23    certifying a class for purposes of commonality, that's evidence
24    they relied on.  In terms of unitary course of action, the
25    circuit may look at that evidence and there may be rulings that
```

1   are relevant to that particular issue.

2           THE COURT:  I don't think so.  They are either going

3   to say there is not sufficient commonality to warrant class

4   treatment or there is.  But it wouldn't affect, to me, the way

5   you would try a pattern and practice case.

6           Do you want to weigh in on this Mr. Charney, so I'm

7   not having a debate without plaintiffs' counsel?

8           MR. CHARNEY:  Not other than to say I agree with your

9   Honor.  As you know, in the rules for class certification there

10  is some overlap between merits and the 23(a) requirements.  But

11  I think in this case the circuit court is not going to need to

12  get to the issue of causation to decide common questions of law

13  or fact.  That really is a pure merits issue that I think, as

14  your Honor put it, could be resolved on a trial of an

15  individual plaintiff for Monell liability regardless of the

16  class.

17          THE COURT:  Or to the extent the circuit reaches the

18  issue at all, it's in the context of whether the case is

19  amenable to class certification or the class treatment.  It

20  still doesn't mean to me that it would affect the trial of a

21  pattern and practice case.  That's my point.

22          Procedure is a tricky thing.  Either the case

23  satisfies all the Rule 23 prerequisites for class treatment or

24  it doesn't, but that doesn't mean the circuit is going to be

25  ruling in limine, so to speak, as to how to try pattern and

C8x1fcoc

1    practice case brought by the main plaintiffs.

2              The bottom line is, and I have given this thought,

3    because we discussed it already at an earlier conference, I

4    don't think we need to wait the circuit's decision, at least to

5    have a liability trial.

6              What was your view on remedial relief, Mr. Charney?

7    Does Ms. Grossman have a better point there, that it would be

8    hard to fashion the remedial phase of any case until we know

9    whether it affects an entire class, which would have a longer

10   time frame?  I've forgotten.  Do we have a class definition

11   that has dates?

12             MR. CHARNEY:  Yes.

13             THE COURT:  What are the dates of the class?

14             MR. CHARNEY:  I think it is anyone who has been

15   illegally stopped, paraphrasing here, from January 2005 to the

16   present.

17             THE COURT:  To the present?

18             MR. CHARNEY:  Yes.

19             THE COURT:  OK.  But the named plaintiffs don't cover

20   that long a time span, right?

21             MR. CHARNEY:  No.  I think their most recent stops

22   were maybe 2010 or 2011, so somewhat recently but obviously not

23   this year.

24             THE COURT:  Not 2012.

25             MR. CHARNEY:  No.

C8craf1oc

1          THE COURT:  If there have been policy changes, and I

2     know there were some in '11, I guess Ms. Grossman's point is if

3     there are no class allegations, you have a more limited time

4     period, and you look to that time period and the practices

5     during that time period and you worry about what their remedial

6     relief should be.  But it's not the same as the class, which is

7     a longer time period.  That is one risk of not knowing whether

8     the circuit agrees that this could be given class treatment.

9     How would you deal with that?

10         MR. CHARNEY:  My response to that would be even if,

11    let's say, we only had the named plaintiffs, we feel they have

12    standing to seek injunctive relief prospectively because all of

13    them are at risk of being illegally stopped in New York City

14    tomorrow or in the future.  I don't think we agree that you

15    couldn't necessarily fashion a remedy absent a decision on

16    whether or not there was a class.

17         THE COURT:  That's a legal point that might need to be

18    briefed, whether they have standing to talk about the

19    prospective injury of being stopped again.  That can be a

20    motion in limine that should be made and scheduled.  I know we

21    have already been down this road, and I even suggested that you

22    look at your calendars for January, I think I said that.  Is

23    that the month I said?

24         MS. GROSSMAN:  You said January-February.  You put

25    those dates out.  Your Honor, the amount of continued work that

C8x4f4pc

 1    the plaintiffs are seeking between now and December, I don't

 2    know how that is feasible in light of all that would have to be

 3    accomplished.  Obviously, your Honor, we are putting our

 4    objections on the record.  If you are now moving forward and

 5    trying to consider dates, I'm hoping that we can come up with a

 6    realistic date that will allow the parties to do what needs to

 7    be done to finish up --

 8         THE COURT:  Mr. Charney, I think what Ms. Grossman is

 9    saying is you're making your own bed on this.  The more new

10    information you want to bring into this through these letters

11    that you are going to write, the names disclosed in the

12    database, you're going to be bringing a lot more information

13    in, and the city has the right to investigate that information.

14         Only you know how much delay your efforts are causing.

15    They may be a good effort, but on the back end they are causing

16    delay.  How long do you predict this process will take?

17         MR. CHARNEY:  We understand that, your Honor.  You are

18    absolutely right.  We envision hopefully being able to send

19    these letters out within the next week or two.

20         THE COURT:  How many are you sending?

21         MR. CHARNEY:  That's a very good question.  We had

22    identified potentially up to 21,000.  It's at our own expense,

23    so we have to assess whether or not we can even afford to send

24    out that many.  Maybe less.

25         THE COURT:  It's not only an expense in money.  It's

C8cxfloc

1     going to be --

2                MR. CHARNEY:  Time.

3                THE COURT:  Exactly.

4                MR. CHARNEY:  It may well be a smaller number than

5     that.

6                THE COURT:  Why doesn't your statistical expert

7     suggest a sampling number that is credible?

8                MR. CHARNEY:  We could look into that.  We had already

9     narrowed it down from 500-some thousand to 21,000, so we have

10    done a significantly smaller number.  We just picked a single

11    year.  But that is something we will take very serious

12    consideration of.

13               If the letters can go out in the next week or two, we

14    should be getting responses.  We set 30 days to be the maximum

15    amount of time.  So we would get them by the end of September,

16    hopefully beginning of October.

17               THE COURT:  Then what happens?  When you get the

18    responses, what do you do with the information?

19               MR. CHARNEY:  We have to notify the defendants in a

20    timely fashion of, among that group of people, the ones who we

21    would put forward as potential trial witnesses.  They would

22    have the opportunity to depose those individuals.  Keeping in

23    mind the fact that it's a lot of work and whatever trial

24    deadline your Honor sets, we would I think make sure that we

25    only disclose a reasonable, feasible number of people.

C8xxfdoc

```
 1              THE COURT:  What is a reasonable, feasible number, Mr.
 2   Charney?  Are we going to have a hundred people who were
 3   stopped or 50 or 200?  What is reasonable, feasible?  You're
 4   talking about a jury trial, aren't you?
 5              MR. CHARNEY:  That's another issue I wanted to bring
 6   up to your Honor.
 7              THE COURT:  Who requested a jury?
 8              MR. CHARNEY:  We did, but that was, as you know, four
 9   years ago.  Some of our named plaintiffs have reconsidered,
10   shall we say, whether or not they even would seek damages.
11   They testified to and have said in declarations their main
12   concern here is the injunctive relief.  That's what they have
13   made the focus of their interest here and that's what they are
14   most interested in seeking.
15              THE COURT:  Did the city request a jury in its answer?
16              MS. GROSSMAN:  We usually do.  We probably did.
17              THE COURT:  Do you want one?
18              MS. GROSSMAN:  Your Honor, this is the first I'm
19   hearing about this.
20              THE COURT:  There may be just injunctive relief,
21   right.
22              MS. GROSSMAN:  This is very new and it is something
23   that we would have to give serious thought to.  I know Mr.
24   Charney did mention this just an hour ago to me, and I asked
25   questions.  I think if that is even a consideration, we need
```

1      the speak a little bit more.

2              MR. CHARNEY:  Yes.

3              MS. GROSSMAN:  I don't know how to picture this.

4              THE COURT:  How to picture whether it's a jury or

5      nonjury?

6              MS. GROSSMAN:  What are we trying?  I understand there

7      are some damages claims.

8              THE COURT:  They may be waived.

9              MS. GROSSMAN:  He did not say all of them would be

10     waived.

11             THE COURT:  They may be waived.

12             MR. CHARNEY:  Yes.

13             MS. GROSSMAN:  If he is saying something different

14     now, that's fine.

15             THE COURT:  I think so.  I think he doesn't have the

16     consents yet, but there may be no damages, right?

17             MS. GROSSMAN:  Of all plaintiffs?

18             MR. CHARNEY:  There are four main plaintiffs in the

19     case.  It is my understanding from speaking to my clients that

20     three of the four are considering waiving all of their damage

21     claims.

22             THE COURT:  And it is possible the fourth would, too?

23             MR. CHARNEY:  I have not spoken with him, so I can't

24     represent either way.

25             THE COURT:  Therefore, it's possible.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              MR. CHARNEY:  Yes.

 2              THE COURT:  Because anything's possible.

 3              MR. CHARNEY:  Yes, it is.

 4              Going back to your original question, which I guess

 5   was how many is a reasonable number, which I think is a very

 6   good question, I think whatever deadline your Honor sets and

 7   whatever length of trial your Honor is willing to put up with

 8   would inform the number of witnesses we would seek to call at

 9   trial.

10              Our interest here is establishing that there is a

11   citywide policy or practice.  We have four named plaintiffs.

12   We believe that the diversity and geography and circumstances

13   of those stops is pretty compelling evidence of a pattern and

14   practice.  But, as I think I mentioned at the last conference,

15   there are many other individuals who since the class

16   certification have contacted plaintiffs' counsel expressing an

17   interest in testifying in this case.  We have to go through the

18   time and effort to sit down and meet with these folks.

19              THE WITNESS:  Mr. Charney, I may have lost

20   concentration for a minute.  Did you tell me what you thought

21   was a reasonable number?

22              MR. CHARNEY:  My short answer is I'm not quite sure.

23   I think it will be informed by the length of the trial and also

24   the deadlines we are given.

25              THE COURT:  Each us is waiting for information from
```

1    the other.  I can't tell you the date of the trial or the

2    length of it until you tell me what you are thinking of in

3    terms of the number of witnesses or the length that you think

4    this trial would take and how long it will take to be ready for

5    this trial.  I had hoped for January or February.

6           Let's take the later of the two.  It's February.  That

7    would give you five months to prepare for that trial.  That

8    sounds reasonable.

9           MR. CHARNEY:  It does, your Honor.

10          THE COURT:  Today, as we sit here in August, it sounds

11   reasonable.  But it depends what you are thinking of.

12          MR. CHARNEY:  Part of the issue is we are not sure how

13   quickly the city can get us the data.

14          THE COURT:  Can get you what data?

15          MR. CHARNEY:  The names and addresses of the

16   individuals.

17          THE COURT:  I thought you said you were ready to mail

18   at the end of August.

19          MR. CHARNEY:  No.  I'm saying hopefully, if everything

20   goes well.  In other words, we finalize the stipulation, which

21   we are very close on.  I don't know how long it will take the

22   city, technologically speaking, to look at the data and spit

23   out the names.

24          THE COURT:  Do you know the answer to that, Ms.

25   Grossman?

          1              MS. GROSSMAN:  Your Honor, we expect within the next

          2     couple of weeks from that point.  We have to get the disk from

          3     the safe.  We have to get that, transfer it to someone to do

          4     their magic.  I'm hoping a few weeks.  We are going to be

          5     expeditious about this, to generate spreadsheets so the

          6     plaintiffs know who they can send mailings to.

          7              Then there is a mechanism in place to give it to the

          8     magistrate judge, because there are sealed records that we have

          9     to identify.  That takes time to identify and cull out.  We are

         10     doing our best.  We will endeavor to do this within the next

         11     few weeks from when we get the disk.

         12              THE COURT:  My experience is there is nothing like a

         13     deadline.  You must do it by September 14th.  That's enough.

         14     Let's say you have it no later than September 14th.  You're

         15     ready to mail immediately?

         16              MR. CHARNEY:  Yes.  We can mail them within a matter

         17     of days once we get the names.

         18              THE COURT:  Let's say you get responses mid October.

         19     Then what?

         20              MR. CHARNEY:  Then we would go through the process of

         21     screening those and taking out the ones that clearly we don't

         22     think belong in this case.  Then, with the rest of them, we

         23     would contact them if they have expressed an interest in being

         24     contacted and speak with them and try to narrow down a list of

         25     individuals that we would want.

C8xafdoc

 1          THE COURT:  How many, Mr. Charney?

 2          MR. CHARNEY:  Can we say no more than at this point

 3     50?

 4          THE COURT:  That seems right, no more than 50.

 5          MS. GROSSMAN:  Your Honor, 50 people to depose?  All

 6     the time it took for us to do discovery in this case, we have

 7     50 people as well.

 8          THE COURT:  I'm sorry.  Say that again.  Tell me who

 9     the other 50 are.  I didn't follow what you said.

10          MS. GROSSMAN:  I'm sorry.  Let me take a step back.

11     My apologies.  I just don't understand how we can accomplish 50

12     depositions from mid October to January and in the midst of

13     that prepare a pretrial order, motions in limine, and be ready

14     for a trial like this.

15          This is not the way this case should be tried, where

16     we are doing discovery two months before trial.  It's just not

17     right.  It's prejudicial to the city.  It's putting us in a

18     position where we can't defend the case in the best way that we

19     should be able to on an important issue.

20          THE COURT:  I think everybody agrees it's an important

21     issue.  Mr. Charney, she really is arguing you can't have it

22     both ways.  If you want to get to trial in early 2013, how can

23     you add 50 witnesses, all of which the city argues must be

24     deposed?  It doesn't want any of them on the stand without

25     having a chance to question them in advance.  It's 12 weeks.

 1   It's 4 a week.

 2            MR. CHARNEY:  Your Honor, I don't want to rehash old

 3   arguments in this case, but I first need to point out in

 4   response to your question, we didn't create this situation.  We

 5   asked for this exact information and wanted to make these

 6   mailings four years ago.  The city objected and said that's

 7   completely inappropriate unless and until a class is certified.

 8            THE COURT:  A class was certified months ago.

 9            MR. CHARNEY:  It was certified in May.

10            THE COURT:  May.  This is late August.

11            MR. CHARNEY:  Your Honor, we raised this issue with

12   you at the end of May.  A month later we served our request on

13   the city, and we have been negotiating with them for the past

14   few weeks on the terms of it.  So we have moved forward with

15   the discovery that we seek.

16            THE COURT:  Maybe you don't need 50 of these people.

17   Maybe 25 is plenty.  Then it is not four a week, it's two a

18   week, and that's doable in 12 weeks even with the other work.

19   This is a big team that the city has put on this case.  Two a

20   week is not so bad if you stop with 25.  I don't know after a

21   while what one adds to the other to the other.  You have an

22   expert testifying with respect to thousands.  How many UF250s,

23   the expert review?

24            MR. CHARNEY:  2.8 million.

25            THE COURT:  He drew certain conclusions from those

1    2.8 million, right?

2           MR. CHARNEY:  Yes.

3           THE COURT:  To put on live people over and over again

4    just may not be necessary.  You're really weighing the benefit

5    of that versus the delay that it's going to cause, and the city

6    correctly says you can't expect us to go to trial without

7    deposing live witnesses.

8           MR. CHARNEY:  That's true, your Honor.  I guess we

9    would suggest that while 50 is an ambitious number, given that

10   this is one of the largest law offices in the city, if not the

11   country, it can be done.

12          THE COURT:  Of course it can be done.  The issue is

13   whether it can be done in 12 weeks.

14          MR. CHARNEY:  That's true.  But given that these are

15   not named plaintiffs, they are not going to be testifying about

16   policies and practices of the city.

17          THE COURT:  But it is going to go on forever.  They

18   are going to want the sealed records on each one.  They are

19   going to want to identify the officers on each stop.  You are

20   having 50 minitrials.  That's what it is.  If you have 25

21   minitrials, that is better for trial time and better for

22   depositions than 50 of them unless they are making different

23   points.  The repetition is unnecessary anyway.

24          You have an expert who is looking at the 2.8 million.

25   What are you going to extrapolate from 25?  I understand you

1    want some live people to make an impression either on the

2    jurors or the trier of fact, the Court.  But how many?

3          MR. CHARNEY:  I hear what you are saying, your Honor.

4    Our concern is that we are able to establish this is a citywide

5    practice.

6          THE COURT:  I understand.

7          MR. CHARNEY:  That it happens everywhere, not just in

8    Harlem or the Bronx.

9          THE COURT:  For sure.  But that is what the UF250s

10   tell you.

11         MR. CHARNEY:  Absolutely.  Of course, the defendants

12   will argue vociferously that you can't tell from a UF250 if a

13   stop was illegal or not.  We want to be able to show that it's

14   consistent that if the stop appears to be illegal on the form,

15   the details that come out through testimony corroborate that.

16   That is another reason.

17         THE COURT:  One wonders why you need to send out

18   21,000 letters if people have been contacting you.  You have

19   had people come forward and say, I'd like to be a witness at

20   this trial, I'd like to be a plaintiff at this trial.  Some of

21   the letters have been sent to the Court and I have sent them

22   on.

23         MR. CHARNEY:  That is absolutely right, your Honor.

24   But we don't know if the individuals who contacted us were in

25   fact stopped and frisked.

C8x1fd06c

```
1              THE COURT:  I understand.  But they are there to be
2      interviewed.
3              MR. CHARNEY:  Absolutely.  We will interview them and
4      have actually had contact with some of them.
5              THE COURT:  This is worrisome.  You make it sound like
6      the fifth week of the case instead of the fifth year.  But I
7      understand you asked for this long ago and the city wouldn't do
8      it until the class certification decision, he says.
9              MR. CHARNEY:  It's in the court record, your Honor.
10     It's in several motions that were filed in May of 2008.  You
11     don't have to take my word for it.
12             MS. GROSSMAN:  Your Honor, I just want to note that we
13     were here right after Memorial Day and the plaintiffs mentioned
14     these 100 witnesses that supposedly came forward, and all
15     summer has gone, and by last week they hadn't contacted these
16     people yet.
17             THE COURT:  You mean people have contacted them?
18             MS. GROSSMAN:  Yes.  By Rule 26 I made a demand for
19     discovery of these individuals so we could move forward and we
20     could be prepared.
21             THE COURT:  Why does he have to tell you of people who
22     have contacted him if he's not planning to use them as
23     witnesses?
24             MS. GROSSMAN:  Your Honor, how much time do the
25     plaintiffs need to notify?  Usually in a discovery --
```

C8xafdoc

1              THE COURT:  Wait.  We are talking past each other now.

2              MS. GROSSMAN:  I know.

3              THE COURT:  If people contact a lawyer, Mr. Charney is

4    not required to call you and say, I just got a call from a

5    potential client.

6              MS. GROSSMAN:  Oh, no.

7              THE COURT:  If he intends to use somebody as a

8    witness, that is a different issue.  That is a 26 disclosure.

9              MS. GROSSMAN:  But when you have 100 names for a few

10   months, do you sit on those names and not speak to them so --

11             THE COURT:  That is different.  Wait.  You don't know.

12   This is work product.  I don't know which of these hundred he's

13   talked to.

14             MS. GROSSMAN:  I do.

15             MR. CHARNEY:  That is not true, your Honor.

16             MS. GROSSMAN:  The plaintiffs told us.  When I made a

17   demand for their Rule 26(a) disclosures, I asked if you have

18   any Rule 26(a), and they indicated to us that they were

19   understaffed and were unable to reach out to everyone or speak

20   to people to ascertain whether they should be a Rule 26(a)

21   witness.  I appreciate that concern, but that does not mean

22   that when we make a demand, we should suffer and not be able to

23   do the discovery we need to do to prepare for this case.

24             If this is any indication of what will happen when the

25   mailings go out, this seems like a lot of work for something

C8xxfdoe6

1    that is not yielding much.  Then we are taken away from

2    preparing for this case and we are forced to proceed on various

3    tracks when we should be able to fully prepare for the

4    testimony in this case, for in limine motions to, make our best

5    presentation of the case, not to be in the middle of discovery

6    when we should be preparing now for trial.

7            I wanted to put that out there.  It could be that a

8    January-February date is more ambitious than perhaps pushing it

9    a few more months so that we can all in an orderly fashion do

10   what needs to be done.

11           THE COURT:  I don't disagree with you, but I think it

12   depends on how many more people he is putting forward.  It is

13   one thing if he is putting forward 50; it's another thing if it

14   is 25; it's another thing if it's 12.  You can't set the month

15   of the trial until you understand the size of the problem.

16           MS. GROSSMAN:  We have asked the plaintiffs, can you

17   give us, we were negotiating, can you please tell us how many

18   witnesses you're thinking about so we can plan.  Are you

19   thinking 10?  Are you thinking 15?  Plaintiffs didn't know.

20   Today is the first time I'm hearing what it is that they are

21   contemplating, which is 50, and your Honor is suggesting it

22   should be reduced.  But whatever the number is, we the city

23   have to have the time to do our investigation and do the

24   depositions.

25           THE COURT:  The plaintiff is in charge, so to speak,

C8xaf1be.c

1    of their own case.  If they want to delay this another year, I

2    suppose they will say a hundred.  If they want to get this

3    thing to trial, they will say a number that can be accomplished

4    in three months even with all the other work.

5            When do you want to try this case, Mr. Charney?  That

6    will just put a limit on this number.

7            MR. CHARNEY:  I understand, your Honor.  I think late

8    January-early February is reasonable to us.

9            THE COURT:  For a trial?

10           MR. CHARNEY:  Recognizing that the number cannot be

11   titanic.

12           THE COURT:  It can't be.

13           MR. CHARNEY:  Unless your Honor wishes me to respond

14   to some of Ms. Grossman's comments, I'll just leave them where

15   they are.  I will say that we disagree with the veracity of

16   what she said about how we have responded or not responded to

17   their inquiries.

18           THE COURT:  She is saying specifically with respect to

19   the hundred people, if that's what it is, who have contacted

20   you that you were hoping to interview to see if any of them

21   would become witnesses, she has heard nothing since.  Surely

22   you have begun the process.  Maybe you need to make disclosure

23   on a rolling basis.  You don't have to wait until you interview

24   all hundred, but you should make some disclosure at the

25   earliest possible time.  From what I understand, there is no

1   disclosure yet.

2          MR. CHARNEY:  No, and it is because since we are going

3   to have to limit the number, we need to make choices.

4          THE COURT:  Of course.  You want to pick your best 25

5   or 15.

6          MR. CHARNEY:  Exactly.  We don't know who that is yet,

7   because we haven't even sent out the letter.  To say here is 15

8   or 20 when we can't compare them to the people who we are going

9   to get post cards back from I don't think is an efficient way

10  to do that.  I also don't think we are required to do that, to

11  make decisions about trial strategy at this point.

12         THE COURT:  I don't think you are, either, but it

13  affects your trial date.  If you want a February trial date,

14  which is five months away, rounding off, say today is the

15  equivalent of September 1st, you're talking five months from

16  now, and there is that amount of work.  There is the

17  depositions of whatever people you do name, there is a pretrial

18  order, there are motions in limine.  There are things to do.

19  It will be a busy five months.

20         MS. GROSSMAN:  Your Honor, Mr. Charney mentioned to me

21  a little bit before the conference that if your Honor was going

22  to discuss trial logistics, they would be inclined to do

23  something about submitting extra reports from Professor Fagan.

24  I don't know if the plaintiff is planning on doing that or not,

25  but I would absolutely object to that if that is what is being

C8x1fdoc

1    contemplated.

2            THE COURT:  Are you considering more submissions from

3    Mr. Fagan?

4            MR. CHARNEY:  Here is the issue, your Honor.  When

5    Professor Fagan submitted his report in the fall of 2010, at

6    that point in time he only had data through 2009.

7            THE COURT:  I see.  He wants to update the data?

8            MR. CHARNEY:  All he would be doing would be applying

9    the same methods that have already been subject to the Daubert

10   motion and full evidentiary hearing to the 2010, '11, and first

11   half of 2012 data.  There would be not be a new analysis.

12           THE COURT:  I understand.

13           MR. CHARNEY:  Nor new methods.

14           THE COURT:  Ms. Grossman, this wouldn't be the first

15   case where an expert had to update his data from information

16   that brings his data up to date, so to speak.  There is nothing

17   wrong with supplementing one's report to add the currently

18   obtained data.  Obviously, he didn't have '11 and '12 when he

19   did this in the fall of 2010.  I'm looking at February 19th.

20           MS. GROSSMAN:  But, your Honor --

21           THE COURT:  How long do you think I should block off,

22   Mr. Charney?  Are we talking a month or six weeks or two weeks?

23           MS. GROSSMAN:  Your Honor --

24           THE COURT:  You're the circus master at the trial.

25   The plaintiff puts on the plaintiff's case.  What are you

C8x1fdoc

 1   thinking?  Are you thinking six weeks, four weeks, eight weeks?

 2           MR. CHARNEY:  In our case we were thinking four weeks.

 3   However, if in fact this was not tried to a jury, we think it

 4   might be a little shorter, just because you don't have to worry

 5   about jury instructions, you don't have to worry about jury

 6   selection.

 7           THE COURT:  Nice of you to save me work.  In any

 8   event, February 19th.

 9           MS. GROSSMAN:  Your Honor, what happens then with our

10   expert?  We should be able to put in our rebuttal report.  Your

11   Honor, it is just so prejudicial for us to be in a position

12   where in the middle of preparing for trial the plaintiffs are

13   going to give us an expert report.

14           THE COURT:  I don't understand the phrase "so

15   prejudicial."  How is he to bring the data current?  Are you

16   really saying all data stops in 2009 because it makes more work

17   for us?  That can't be right, either.

18           MS. GROSSMAN:  No.  But the time to amount a defense

19   and to prepare for it prejudices us if we don't have sufficient

20   time.

21           MR. CHARNEY:  Your Honor, can I respond?

22           MS. GROSSMAN:  The plaintiffs, if they want to update

23   the data, have had the data for the past six -- they have had

24   the data.

25           THE COURT:  I assume he's working on it already.

```
 1              MS. GROSSMAN:  Your Honor, that's not --

 2              THE COURT:  That's not what?

 3              MS. GROSSMAN:  He's working on other cases.

 4              THE COURT:  I assumed he was working on this data to

 5    update it.  Is he or isn't he, Mr. Charney?

 6              MR. CHARNEY:  He has started to look at it.  As your

 7    Honor is aware, he is serving as a testifying expert in two

 8    other cases before your Honor, and they are both in the middle

 9    of expert discovery.

10              THE COURT:  He is going to testify at the preliminary

11    injunction hearing in the Ligon case.

12              MR. CHARNEY:  And the Davis case, and he has to

13    prepare rebuttal reports.  And he has a full-time day job

14    teaching courses at Columbia.  So he has started to look at it,

15    but he has not delved into it in detail.

16              THE COURT:  So we will go to March 18th.  We just lost

17    another month.  We have to pin it down at some point and mean

18    it.  March 18th is as good as February.  With all this

19    additional work now, we are going to have two updated expert

20    reports as well as the 15 or 20 or whatever citizens.

21              I've got to get a date.  I've got to pin it down.  It

22    wasn't just how effective her argument was.  It was a two-week

23    patent trial that I found on March 4th.  It wasn't that you

24    were just so effective, Ms. Grossman.  I said I have a two-week

25    patent trial in the middle.
```

C8rxfdoc

1          MS. GROSSMAN:  Thank you, your Honor.  That's good to

2     know.

3          THE COURT:  That was March 4.  Let's say March 18th.

4     But then it is not aspirational.  It is fixed, it will not

5     move.  If you are not ready, you will go without that evidence.

6     That's the end of it.  I have to have a date that doesn't move.

7     It's very important in a big case to say that's the date.

8          MR. CHARNEY:  I completely agree with your Honor.

9          MS. GROSSMAN:  Your Honor, my apologies, but I have a

10    personal on the week of March 25th.  If you reschedule this for

11    March 18th, that conflicts with my personal calendar.  I'm just

12    wondering if it's at all possible to do it the week of April

13    8th.

14         THE COURT:  No, I can't.  We can go back to February

15    12th or you can be absent those two days.  How long during that

16    week were you planning to be out?

17         MS. GROSSMAN:  We all have families.

18         THE COURT:  I wasn't going to ask you what you were

19    doing.  How many days were you planning to be out that week?

20         MS. GROSSMAN:  That whole week.  A lot of people are

21    not in the city during that week.

22         THE COURT:  We could take that week off.  What did I

23    say the date would be?  March 18th.  We'll have a one-week

24    break and keep going.  Is that holidays that week?

25         MS. GROSSMAN:  Yes, it's holidays.

1           THE COURT:  We can start March 18th, take a week off,

2   and keep going.  That's not a problem.

3           MS. GROSSMAN:  If we are going to do that, is it

4   possible to consider jury selection perhaps the week before?

5           THE COURT:  Yes, ma'am, that's a very good idea.

6   Anything that makes it earlier I like.

7           MS. GROSSMAN:  We can at least get the dates so we can

8   deal with the schedules if it's a one-month or five-week trial.

9           THE COURT:  Correct.  You're now saying jury selection

10  March 11th or 10th, whatever the Monday is.  March 11th.

11  That's even better.  Jury selection March 11th.

12          MS. GROSSMAN:  Working within your parameters, is it

13  possible for plaintiffs' counsel and defense counsel to talk a

14  little further about jury selection and those kinds of details?

15          THE COURT:  There may not even be a jury.  If there

16  is, we should do jury selection the week of March 11th and we

17  should start the evidence March 18th.  We can take off the

18  holiday week because the jurors will have the same conflicts

19  you do, Ms. Grossman.

20          MS. GROSSMAN:  I'm sorry?

21          THE COURT:  We can take off the holiday week because

22  the jurors will have the same problems you do and I do.  Many

23  of us will have the same problems the same week.  As long as we

24  start.  If we start, we finish.

25          MR. CHARNEY:  Your Honor, I don't want to keep us any

C8xxfdcc

1    longer than we have to.  Quickly on the issue of the supposed

2    prejudice of Professor Fagan's new analysis.

3              THE COURT:  I don't know why you're speaking.  I was

4    taught when I won the point, there is nothing more to say.  He

5    is going to be permitted to supplement.  The city's expert will

6    be permitted to rebut whatever supplementation he comes up

7    with, and each can be deposed for a limited number of hours on

8    the supplemental report.  That's it.

9              MR. CHARNEY:  That works for us.

10             The last thing I will say on the expert issue is with

11   respect to Professor Smith, who is the city's expert, if you

12   recall, we had a conference over the phone with you on August

13   9th and plaintiffs raised the issue of deposing him on the

14   narrow issue of the new regression analysis he had conducted

15   and disclosed in December, nine months after his deposition,

16   and you had said you were amenable to that.

17             THE COURT:  Right.

18             MR. CHARNEY:  I wanted to confirm we could also depose

19   him on that narrow issue.

20             THE COURT:  You are deposing him on that narrow issue.

21             MR. CHARNEY:  I thought you were talking about he is

22   going to do a supplemental report.

23             THE COURT:  He is.  If you want to question him on

24   that after you get the supplemental report, you can do that,

25   too, just like they can do with Fagan, solely with respect to

 1    the supplemental report.

 2            MR. CHARNEY:  Also, with this supplemental declaration

 3    that he has already done, can we depose him on that as well?

 4            THE COURT:  Yes.  But this is all unrelated to what

 5    the new data is going to show.  When your expert looks at '11

 6    and '12, or '10, '11, and '12, the city can depose him.  Then

 7    the city's expert can look at the same data for '10, '11, and

 8    '12, write his rebuttal report, and he can be deposed.

 9            The real question is, how many of these citizens are

10    you going to be deposing?  That's the amount of depositions

11    that has to be taken in these months, plus a pretrial order,

12    plus motions in limine.  And they have to be decided.

13    Remember, you can't submit the motion in limine March 8th.

14    That doesn't work.  The Court has to decide them.

15            MS. GROSSMAN:  Your Honor, we would like to have

16    Fagan's supplemental report within the next 30 days.

17            THE COURT:  Why shouldn't that be done?

18            MR. CHARNEY:  Because, your Honor, he is doing two

19    other expert discovery projects that are going through October

20    15th, and they are in large cases, as your Honor is quite

21    aware.

22            THE COURT:  Are they not based on the same database of

23    UF250s?

24            MR. CHARNEY:  They are, your Honor, but the analyses

25    in those two cases are slightly different, from my

C8c4floc

1   understanding, from what he is doing in our case.  He is in the

2   middle of doing expert discovery in those two cases.  It is

3   just not possible, your Honor.  To ask an expert to do three

4   separate expert reports at the same time in three separate

5   cases --

6           THE COURT:  I understand.  But if we have a six-month

7   gap between today and the trial, if you leave all the work to

8   the last two months, it was worthless to have the six months.

9           MR. CHARNEY:  I understand, your Honor.

10          THE COURT:  You need time to come up with the

11  citizens, the 50, 25, or 15, whatever that number is.  That's

12  not going to be in till November either.  If Fagan's report

13  isn't in until November, then nothing is happening in September

14  and October, so the six months aren't being used.

15          MR. CHARNEY:  I would disagree.  Between September and

16  November the analysis is being done by Professor Fagan and the

17  letters are being sent out and coming back.

18          THE COURT:  All true, but it doesn't help the city to

19  take the discovery pretrial that it wants of the experts you

20  pick and the supplemental report.  I'm just saying you can't

21  backload it in the last two months, because then we didn't

22  effectively get six months.

23          MR. CHARNEY:  I understand.  But there is a difference

24  between 30 days from now and February.  We are not saying we

25  need until February.

C8x4f5b6

1           THE COURT:  Of course not.

2           MR. CHARNEY:  I'm simply saying that 30 days is just

3   not possible.

4           THE COURT:  November 15th is.

5           MR. CHARNEY:  We can try our best, your Honor.

6           THE COURT:  For the Fagan report.

7           MR. CHARNEY:  I understand.  But your Honor --

8           THE COURT:  I'm looking at Ms. Grossman.

9           MS. GROSSMAN:  If they need three months.

10          THE COURT:  That is four months before trial.

11          MS. GROSSMAN:  But they have four months to work on

12  the report.

13          THE COURT:  I'm sorry, that's what it is.  November

14  15th.  That is when Fagan's supplemental report is due, period,

15  end of discussion.  That is four months prior to our March 18th

16  trial date, that's it.

17          MS. GROSSMAN:  Then we get four months to respond.

18          THE COURT:  No, you don't.

19          MR. CHARNEY:  If Professor Fagan has the time.

20          THE COURT:  You don't.

21          MS. GROSSMAN:  Why would plaintiffs get all this time

22  but we don't?

23          THE COURT:  Because I've ruled.  I can't think of a

24  better answer.  The data is the data.  Your person can look at

25  it starting now, for all I care.

1          MS. GROSSMAN:  Our expert has the same problem

2   Professor Fagan has.

3          THE COURT:  Do you have the same expert working in

4   every case also, Ligon and Davis?

5          MS. GROSSMAN:  Yes.

6          THE COURT:  Yes?

7          MS. GROSSMAN:  We are having the same problem that

8   Professor Fagan is having.  Why are we being shortchanged?

9          THE COURT:  Because he is not going to turn to it

10  until October 15th.  Essentially he is getting 30 days.  He is

11  tied up with Davis and Ligon until October 15th.  Then he will

12  take 30 days to write this report, and then your guy gets 30

13  days to write the supplemental report.  That's the reality.

14  It's not like he's taking four months.  If he was taking four

15  months, I would make a much earlier date.

16         The argument being offered, and you have already

17  supported it by saying your expert is in the same position, is

18  they are all too busy with Ligon and Davis to work on Floyd.  I

19  am accepting that from both experts.  So essentially from

20  Ligon, being mid October -- we have a date, we have a hearing

21  date October 9th maybe or 15th, either the 9th or the 15th; we

22  moved it to the 15th, Ligon is the 15th -- he's only getting 30

23  clear days after that to prepare this report.

24         Mr. Smith apparently is busy, too, on the same two

25  cases, so he gets 30 days.  It's not four months for one side

C8cxfdoc

 1    and 30 days for the other, it's 30 days for each.  That's the

 2    ruling.  November 15th, December 15th.  That takes care of the

 3    supplemental expert reports.

 4         The real issue is the citizens, the number you're

 5    going to come up with, when you're going to disclose them, so

 6    they can start their depositions at whatever it's going to be.

 7         MS. GROSSMAN:  Your Honor, I have to take exception.

 8         THE COURT:  You said the word "exception."  You've got

 9    it.  I've said what I said.  30 days each.  He's not going to

10    turn to this until October 15th.  End of discussion.

11         MS. GROSSMAN:  Maybe Ligon isn't necessary to go

12    forward then.

13         THE COURT:  I've ruled on that, Ms. Grossman.  If

14    you're moving for reconsideration, reconsideration is denied.

15    Anything else for today?  As far as the privilege issue, one of

16    the things we came here to talk about, did I ask for in camera

17    submission?  I thought I did.

18         MS. GROSSMAN:  Yes.

19         THE COURT:  There is my in camera submission.  I am

20    not prepared to rule until I have reviewed the in camera

21    material.  Can you describe what you are handing up, just so

22    the plaintiffs know?

23         MS. PUBLICKER:  Yes, and I have a cover letter that I

24    can provide Mr. Charney.  In here are the documents and the

25    representative privilege log in addition to the final versions

1    of the drafts that are in the representative privilege log and

2    the chart you asked for describing possible authors that we are

3    aware of now and the NYPD divisions they come from.

4            THE COURT:  Good.  That sounds like what I asked for.

5    Thank you.  Anything else?

6            MR. CHARNEY:  I think that's it.  The only other

7    thing --

8            THE COURT:  We should set the dates for submission of

9    the pretrial order and the motions in limine.

10           MR. CHARNEY:  Yes.  Just one other matter.  You would

11   be surprised to know, I'm half joking, that the defendants and

12   the plaintiffs I think are going to reach agreement on the

13   terms of the disclosure of these names and addresses of

14   individuals.

15           There is one area, not even an area, one small point

16   of dispute about the terms of the disclosure, and that is

17   whether or not once people come forward and contact plaintiffs

18   and plaintiffs then supply the list of potential witnesses,

19   whether it's 25 or whatever the number we are restricted to, at

20   that point defendants would obviously have the opportunity to

21   conduct discovery.  We don't suggest otherwise.

22           But we don't believe they should be able to contact

23   these individuals directly.  We feel they should have to go

24   through us as plaintiffs' counsel, as these folks' ostensible

25   attorneys.  If they want to depose them, they would give us a

C8xxfdoc

```
 1    deposition notice.  If they have document requests, they would

 2    serve the document requests.  We don't believe they should be

 3    allowed to contact these individuals directly.

 4            That was I think really the only point of dispute on

 5    the terms of the production of this information, the process of

 6    the mailings.  I think we need your Honor to resolve that

 7    issue.

 8            MS. GROSSMAN:  The issue from the city's perspective

 9    is that once the plaintiffs make Rule 26(a)(1)(A) disclosures,

10    the plaintiffs want to prohibit the defendants from making

11    direct contact with those individuals.

12            THE COURT:  They are all putative class members,

13    right?

14            MR. CHARNEY:  Yes.

15            MS. GROSSMAN:  Right now all I'm suggesting is that we

16    should be free, if there are witnesses in the case, to serve

17    subpoenas.

18            THE COURT:  Serve them on Mr. Charney.  He is class

19    counsel.

20            MS. GROSSMAN:  At this point with the appeal it

21    doesn't matter.

22            THE COURT:  The class is certified until it is

23    decertified.  Nothing has happened on appeal.  Nothing happens

24    until it happens.  If they accept the appeal, we wait two years

25    until we get their decision.  It is a certified class for the
```

```
 1    whole time until the day somebody says it's decertified.

 2    That's that.

 3              MS. GROSSMAN:  We just want to be assured that if the

 4    plaintiffs or individuals don't show up for deposition, then

 5    they are precluded.

 6              THE COURT:  If they are not deposed, they can't

 7    testify.

 8              MS. GROSSMAN:  OK.  As long as it is clear.

 9              THE COURT:  It's clear.

10              MS. GROSSMAN:  We will supply a subpoena or notice of

11    deposition to the plaintiffs.  If they fail --

12              THE COURT:  Plaintiffs' counsel.

13              MS. GROSSMAN:  Plaintiffs' counsel.  If the witness

14    fails to appear for the deposition --

15              THE COURT:  Not necessarily on the date you pick.

16    They do have to contact the person.  The person has a family,

17    isn't that what you said?  They could be on vacation, they

18    could be out of town.  Just because they failed to appear on

19    the date you select wouldn't preclude them.  Counsel will

20    contact them, arrange a mutually convenient date with you, and

21    they will get deposed.  But if they don't get deposed, they are

22    precluded.

23              MS. GROSSMAN:  If they don't appear on the day that we

24    agree on, after that they are precluded.  We just want to be

25    assured of that.
```

```
 1              THE COURT:  Sounds right.

 2              MR. CHARNEY:  Your Honor, hopefully we can then submit

 3    the stipulation to you tomorrow to so-order this?

 4              THE COURT:  That would be fine.

 5              MR. CHARNEY:  Then get ball rolling.

 6              THE COURT:  With our March 11th jury selection date, I

 7    need to set a date for the joint pretrial order and the motions

 8    in limine.  It seems to me that they should come in no later

 9    than January 11 because that's when the motion will be made on

10    the motion in limine.  Then there will have to be a response

11    date and a reply date, and I want time to decide them.

12              The joint pretrial and the moving papers are January

13    11th, response papers January 22nd, and reply papers January

14    29th.  That gives me time to decide them, issue decisions.  You

15    will know where you are up to for trying the case.

16              When do you think I might know whether this is a jury

17    or nonjury trial?

18              MR. CHARNEY:  Your Honor, we want to make this issue

19    in terms of discussion with the defendants a priority over the

20    next couple of weeks.  A lot of my colleagues who will weigh in

21    on this are out of town this week.  Hopefully, starting next

22    week we can really have serious discussions about this and

23    discuss it with the city.

24              I apologize to Ms. Grossman for kind of bringing this

25    up today.  I think there has been a lot of going on in the last
```

C8x4fdoe

 1   couple of weeks with the discovery issues.  It's something that

 2   we want to give a lot of thought to in terms of efficiency,

 3   getting these issues resolved as quickly as possible.  That's

 4   why I think it is something that is definitely worth exploring.

 5   We will try to do that with defense over the coming weeks.

 6          THE COURT:  Obviously, it would have to be joint.  I

 7   don't think it is your sole decision, Mr. Charney.  Because the

 8   city has requested a jury, I think both sides would have to

 9   agree.  Or you're saying if it's only injunctive relief?

10          MR. CHARNEY:  If it is only injunctive relief, I don't

11   believe there is a Seventh Amendment right to a jury for the

12   defendants.

13          MS. GROSSMAN:  Your Honor, may I request a brief

14   adjustment to the response time?

15          THE COURT:  It will make it later?

16          MS. GROSSMAN:  I'm asking for instead of the 22nd, the

17   24th.

18          THE COURT:  With the reply papers the 31st?

19          MS. GROSSMAN:  Yes, if that's OK, your Honor.

20          THE COURT:  Sure.  Why shouldn't I have less time to

21   do the work.  No adjournments.  Those are the dates.  We are

22   going to issue an order with these dates.

23          Mr. Charney, we need to set an outside date for

24   disclosing these citizen witnesses.  I've set a date for the

25   expert reports of November 15th and December 15th.  Now I need

1    a date by which you make these disclosures.

2         MR. CHARNEY:  I guess it is really going to be

3    dependent on when we get the names so that we can send out the

4    letters.

5         THE COURT:  She said the next two to three weeks.

6         MR. CHARNEY:  If we get them by September 14th, can we

7    have until November 30th?

8         THE COURT:  I was going to say November 9th.

9         MR. CHARNEY:  The issue, your Honor, is if we don't

10   get responses back until mid October, then we have to interview

11   and speak to these people.

12        THE COURT:  You don't need to give them 30 days.  They

13   are not litigants in a lawsuit governed by the rules.  Tell

14   them they have two weeks, they have 14 days to respond to you.

15   Nobody needs 30 days.  They'll only lose it somewhere in the

16   house.  Put a return postcard in an envelope and say we must

17   hear from you in the next two weeks.  If people don't do it

18   right away, they are not going to do it.  November 9th, that's

19   it.

20        Is there anything further?  We have a motion date,

21   pretrial order date, expert dates, citizen disclosure dates.  I

22   think we need another status conference to see how the trial is

23   shaping up.  Do you think November is the correct date?  After

24   this November 9th disclosure, we will have much more of an idea

25   of the number of these people you are talking about.

 1                 MR. CHARNEY:  I think that's a good idea.

 2                 THE COURT:  All right.  November 15th, is that a good

 3     day?

 4                 MS. GROSSMAN:  Yes, your Honor.

 5                 THE COURT:  I'm not entirely sure what time to set.

 6     I'll just say 4 o'clock.

 7                 MR. CHARNEY:  Your Honor, can it possibly be the day

 8     after that?  That is the day that Professor Fagan's report is

 9     due.

10                 THE COURT:  All right.  It doesn't matter to me.

11     That's a Friday now, November 16th, at 4 o'clock.

12                 MS. GROSSMAN:  That works for us.  We are putting

13     aside five weeks, your Honor?  We are putting aside five to six

14     weeks?

15                 THE COURT:  I wrote down on my calendar four to six.

16     It's early to know.  We will have discussion of that on

17     November 15th.  That's the point.  We will use that to see

18     where we are on things.

19                 MS. GROSSMAN:  Yes, your Honor.

20                 THE COURT:  After reviewing the in camera materials, I

21     hope to get back to you shortly.

22                 MR. CHARNEY:  Thank you, your Honor.

23                 MS. GROSSMAN:  Thank you, your Honor.

24                 (Adjourned)

25