1   cbgofloc                    Conference

2   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
3   ------------------------------x

4   FLOYD, et al,

5               Plaintiff,

6          v.                              08 CV 01034

7   CITY OF NEW YORK, et al,

8               Defendant.

9   ------------------------------x
                                      New York, N.Y.
10                                    November 16, 2012
                                      5:00 p.m.
11
    Before:
12
                    HON. SHIRA A. SCHEINDLIN,
13
                                      District Judge
14
                           APPEARANCES
15
    CENTER FOR CONSTITUTIONAL RIGHTS
16       Attorneys for Plaintiff
    BY:  DARIUS CHARNEY
17

18

19  NEW YORK CITY LAW DEPARTMENT
         Attorneys for Defendant
20  BY:  HIEDI GROSSMAN

21

22

23

24

25

1    (In open court)

2             THE COURT:  I can see that I have no idea why we are

3    having the conference today, so can somebody remind me.

4             MR. CHARNEY:  So we were last here in August, your

5    Honor, and you --

6             THE COURT:  Funny, it seems like yesterday.

7             MR. CHARNEY:  Time flies.

8             THE COURT:  Yeah.

9             MR. CHARNEY:  You set a trial date of March 18.

10            THE COURT:  That, I know.

11            MR. CHARNEY:  And you also set some deadlines for some

12   pretrial submissions in January.  And you set this conference

13   to see where we were, ostensibly, because in the intervening

14   three months, we have engaged in more outreach to class

15   members, which we then had to disclose the names of potential

16   witnesses to potential additional trial witnesses to the

17   defendants, which we actually did yesterday.

18            And I think one of the reasons we're here today is to

19   get an update on that, and to also talk about the issue of the

20   trial in terms of whether it would be a bench or jury trial,

21   because we did raise with you in August --

22            THE COURT:  I think your choice, not mine, or is there

23   a legal issue?

24            MR. CHARNEY:  Well --

25            THE COURT:  Are you seeking equitable relief, such

1   that you are saying it should only be a bench trial, or are you

2   also seeking relief that one side or the other is entitled to a

3   jury, if they want it.

4          MR. CHARNEY:  So do you want me to address that right

5   now?

6          THE COURT:  Sure.

7          MR. CHARNEY:  Okay.  So when we were here in front of

8   you in August, we said at that point that three of the four

9   named plaintiffs were willing to withdraw their damage claims

10  and only proceed on the equitable claim, if they could have a

11  bench trial, which we thought would be more expeditious, and

12  injunctive relief has always been, for all of them and for the

13  class, has been the priority.

14         Since that point, the fourth plaintiff has also

15  decided that he would be willing to withdraw his damage claims,

16  if we could proceed with a bench trial.

17         THE COURT:  So is anybody entitled to a jury under

18  those circumstances?

19         MR. CHARNEY:  We believe, no.  We think the case law

20  is very clear in this Circuit.  Their only equitable claims --

21  I can cite to you the case, it is Design Strategy Inc. versus

22  Davis, it's a Second Circuit case from 2006.  I think makes

23  very clear that there is no federal jury trial right, if we

24  only have equitable claims.

25         So we believe that if, in fact, the plaintiffs were

1    willing to withdraw their damage claims, that we would be

2    entitled to a bench trial, that there would be no jury trial

3    for either party.

4            So that's one issue.

5            The other issue, I guess, is in terms of the

6    scheduling of all of this stuff if, in fact, we were going to

7    proceed with the bench trial.  Because we have studied, very

8    closely, your pretrial rules and your JPTO requirements, and

9    other requirements.  And we notice there are numerous

10   submissions that we would have to submit if this were a bench

11   trial.  So we're a little concerned, given the January 11

12   deadline for the JPTO, which we would also have to file motions

13   in limine, we would also have to file proposed findings of fact

14   and conclusions of law, that that is a lot of stuff to try to

15   get done by January 11.  And we believe that even if we

16   adjourned that deadline, it would not impact the March 18 trial

17   deadline, which we're fully prepared to receive with and have

18   no desire to delay.

19           THE COURT:  Ms. Gross, what's your position on the

20   jury trial issue.

21           MS. GROSS:  We just learned yesterday of plaintiff's

22   position.  We need to confer with our client.

23           One of the concerns that I have, is if the Court were

24   to order us to go forward with a bench trial, one of my

25   concerns is that if the outcome is such that there is res

1    judicata or collateral estoppel effect, for any futures damages

2    claims, I'm concerned about the seventh amendment right that we

3    would have had to a jury trial.

4           So I have not had a chance to look into that, but

5    those were some of the issues that I have some concerns about.

6    And we need an opportunity to look into that.

7           And then as to the plaintiffs, as to where to proceed

8    from now, if we do have a bench trial, I just need an

9    opportunity to look at your Honor's rules, and see where that

10   fits into our schedule, and you know how to make a proposal.  I

11   have not had a chance to look into that.  Because we were

12   proceeding as though we're having a jury trial.

13          THE COURT:  Sure.  Sure, as was I.  And I thought

14   there was some benefits to having a jury trial, too --

15          MS. GROSS:  Yes.

16          THE COURT:  -- for that matter, because it sort of

17   would be important to hear from the community, so to speak.

18   That's what jurors are, they are members of community.  And

19   it's really important, in my opinion.

20          But, the law is the law.  If it's solely equitable,

21   there is no right to a jury trial.  I won't obviously duck my

22   responsibilities.  So, we'll see.  But I thought there was some

23   benefits to a jury trial.

24          Be that as it may, it sounds like after you've waited

25   an hour and a half to see me, maybe we ought to adjourn this

1    one, so that you can consider your position, confer with your

2    adversary, see if you can agree on certain dates for certain

3    submissions.  Or agree on the whole issue of jury versus bench.

4    It doesn't sound like we're really ready today, because in your

5    remarks, Ms. Gross, you twice asked for time to look into two

6    issues, one to develop your final position on jury versus

7    nonjury, but then, secondly, to develop a position on

8    scheduling of the pretrial matters, maybe together with Mr.

9    Charney.

10          Let me just say that I'm probably amenable, in view of

11   the disruption that the hurricane caused both sides here, for

12   the need for some adjournment, limited.  But the Court doesn't

13   want to be the one squeezed down, you know, 10 motions in one

14   weekend.  That's not going to do, that's not going to do.  I

15   have to have enough time to thoughtfully decide all of the

16   pretrial matters, so we have an effective and efficient trial,

17   whether it is bench or a jury.

18          And I know, I do better when I have time to think

19   through the issues.  And people raise motions in the middle of

20   a trial and expect a immediate answer, they get an answer, but

21   it has to be a very thoughtful one.  So you get more thoughtful

22   answers if I can do it pretrial.

23          So when you do sit down to negotiate, hopefully, a

24   schedule, remember that if you present something that leaves me

25   48 hours to decide, forget it, I'm not going to approve it.  We

1   have to think through that the Court needs time.

2            I also should tell you that I have been very careful

3   on motions in limine in big cases to not let parties inundate

4   the Court with endless motions in limine.  We have another

5   complex case I have going to trial this June.  I had letters

6   exchanged about the potential motions in limine, we discussed

7   them.  Some, I was able to knock out right at the conference.

8   The ones I thought should be briefed, we talked about one brief

9   and the page limits for those briefs, and the schedule for

10  those briefs.  But, you know, you may have ideas on motions in

11  limine, but you need to exchange letters.  And we need to have

12  a motion in limine conference, because I am not going to be in

13  a day with twenty different motions, that's out too.  No way,

14  bench or jury, I'm not going to have endless motions, each one

15  being 60 pages, that's not gonna happen.  So I can end up with

16  600 pages and that's not going to happen.

17           So when, can you come back on one of the three days

18  next week?  I was thinking Wednesday afternoon.  I know it's

19  not a popular afternoon, Thanksgiving is the next day, but you

20  may have developed your position on jury versus nonjury.  And

21  you may even have had time to talk to each other about

22  scheduling.  I don't want to let it slip very long.  And I'm

23  not in town the following Monday and Tuesday, I'm in

24  Connecticut.  So I wouldn't be able to do that.

25           So if we don't do it next Monday, Tuesday or

1    Wednesday, we are really in a difficult shape.  So my

2    preference would be Wednesday afternoon.

3             MS. GROSS:  Wouldn't be at four, if we have it, right,

4    because somebody else grabbed the 4:00.  But it could be 3:30,

5    with some luck.

6             MR. CHARNEY:  We could do Wednesday afternoon.

7             THE COURT:  All right.  Why don't I set it down for

8    3:30 in the hope that the case on trial will be done by then.

9             MS. GROSS:  Give me one moment?

10            THE COURT:  Certainly.

11            MS. GROSS:  Your Honor, my concern about next

12   Wednesday is this issue, the issue that I'm concerned about, I

13   have to have the time to do the research.

14            THE COURT:  Yes.

15            MS. GROSS:  And --

16            THE COURT:  Today is only Friday.

17            MS. GROSS:  It is only Friday.  But we also have

18   papers due in Lagan on Tuesday.  We have class certification

19   papers.  So I'm not saying that we won't put our effort and

20   best efforts to get this issue resolved, but I'm thinking if we

21   can just do it after the week of -- the week after

22   Thanksgiving.

23            THE COURT:  I said I'm out of town.  I'm trying a case

24   in another district.

25            MS. GROSS:  Very good, okay.

1            THE COURT:  That's my point.  We'll lose most of the

2       week.

3            MS. GROSS:  But what about this.  What if we -- the

4       parties confer that we take the time that we need to do to

5       research this issue, but in the interim we'll do the best we

6       can do to resolve that, but also confer that if the Court is

7       going to be inclined to order a bench trial, and we don't have

8       a right to that, we can still at least confer about alternative

9       dates.

10           THE COURT:  I have to warn you that if you don't agree

11      and there is a dispute, I'll probably require briefs, it's an

12      important issue.

13           MS. GROSS:  I understand.

14           THE COURT:  So if you come to the same conclusion as

15      Mr. Charney, and you agree under the law that it has to be

16      bench, if it's only equitable relief, although I understand

17      your concerns about the res judicata effect, if you happen to

18      agree, that's easy.

19           MS. GROSS:  Right.

20           THE COURT:  If you don't agree, I'm not going to

21      decide it on two letters and some argument.  I think you are

22      entitled to full briefing, because it's a very important

23      question, whether it is jury or not jury.  So, yes, you want to

24      do research and develop the position, but not to finalize --

25           MS. GROSS:  Okay.

```
 1              THE COURT:  -- the briefing, so to speak.

 2              MS. GROSS:  So we would have an opportunity if --

 3              THE COURT:  Oh, yeah.

 4              MS. GROSS:  -- at the beginning of our research we

 5     determine that we would oppose, we would have an opportunity to

 6     fully brief it.

 7              THE COURT:  I think it should be fully briefed.  I

 8     think it's an important question.

 9              MS. GROSS:  Okay.  Wednesday, 3:30, should be fine.

10              THE COURT:  Okay.  And if I had known this would be

11     this short, I would have taken you first, since you were --

12              MS. GROSS:  I do want to raise another issue.

13              First of all, in terms of what you mentioned in terms

14     of working around the dates, we're operating under the

15     assumption that the March trial date doesn't change at all.

16              THE COURT:  Correct.

17              MS. GROSS:  Very good.  I wanted to make sure.

18              THE COURT:  I was also told it was lengthy trial, it

19     was predicted to be four to six weeks, so I scheduled this

20     other monster to follow.

21              MS. GROSS:  Okay.

22              THE COURT:  So, you know, it would be very disruptive

23     not to go.

24              MS. GROSS:  I was just making sure, okay.

25              THE COURT:  Got you.
```

1          MS. GROSS:  One issue that I'm very concerned about is

2     that provided their Rule 26A disclosures.  And if you remember,

3     your Honor, back in late August, you conferenced, you discussed

4     the plaintiff's looking at the UF 250 data base, doing a search

5     and sending out mailings to individuals from the UF 250 data

6     base from 2009.

7          Plaintiffs sent those mailings out.  And it was

8     contemplated that the plaintiffs would meet with individuals to

9     express an interest in being a trial witness, and then they

10    would identify those witnesses in Rule 26A, so that we would

11    then have an opportunity, the defendant would have an

12    opportunity to conduct appropriate discovery.

13         So we received some names yesterday.  The scope of

14    discovery was, in my understanding, limited to that aspect of

15    the case.  Because the discovery has been closed for years.

16         (Continued on next page)

17

18         THE COURT:  You mean the scope of any further

19    discovery?

20         MS. GROSSMAN:  Yes.

21         THE COURT:  Go ahead.

22         MS. GROSSMAN:  Plaintiffs for the first time have

23    identified a new witness who is tantamount to a new expert.

24    His name is Eli Silverman.  We think that at this late date

25    plaintiffs' attempt to identify new experts is just too late

cbgnflo2

1    and inappropriate and should not be allowed.

2              Mr. Silverman is a professor of policing, police

3    ethics, police training programs at John Jay, and the

4    plaintiffs have identified him as a witness for purposes of

5    information regarding two surveys of recently retired New York

6    City personnel which he conducted in 2010 and 2012 concerning

7    pressure on NYPD officers to conduct stop and frisks, issue

8    summonses, and make arrests between 2002 and 2012.

9              This is not a new theory that the plaintiffs have been

10   advancing.  They have been advancing a quota theory for years.

11   For them to come down to use this as an opportunity to now

12   identify a new expert witness puts us in a position where we

13   have to contemplate do we need another expert at this late date

14   is I just think inappropriate right now.

15             Plaintiffs have had many indulgences of the Court with

16   Professor Fagan by providing up updated and supplemental

17   reports time and time again.

18             I think there comes a time when this just has to stop.

19   Just wanted to express that concern that defendants have.

20             MR. CHARNEY:  May I respond?

21             First of all, it is our position, and I think it is

22   very clear, that we are not putting forth Professor Silverman

23   as an expert.  He is not going to express any opinions.

24             THE COURT:  What is he?

25             MR. CHARNEY:  He is going to simply report on the

cbgnflo2

 1    results of his surveys about what retired officers who he

 2    surveyed said about whether or not they felt pressured from

 3    superiors around this issue of quotas.

 4              THE COURT:  Why so late, though?

 5              Ms. Grossman says, correctly, that the notion of

 6    coercion or pressure, quotas has been in the case for years.

 7    If you wanted to have this guy interview retired officers, you

 8    could have asked him to do that two years ago, had the survey

 9    done a year ago, named him a witness half a year ago, and had

10    him deposed within the discovery deadline.

11              Why now.

12              MR. CHARNEY:  A couple of things.  The first survey,

13    which was done in 2010, we actually did disclose to the

14    defendant in our summary judgment opposition over a year and a

15    half ago as Exhibit 39 of our payments.

16              THE COURT:  Done by this guy?

17              MR. CHARNEY:  Yes.

18              THE COURT:  By Silverman?

19              MR. CHARNEY:  Yes, the first survey, the one in 2010.

20    It is inaccurate for Ms. Grossman to say for the first time we

21    are disclosing it now.

22              THE COURT:  Hold on.  You saw a Silverman survey of

23    2010 information in the summary judgment motion, Ms. Grossman?

24              MR. CHARNEY:  It was 39.

25              MS. GROSSMAN:  There was a report that a, a public

cbgnflo2

1    report --

2              THE COURT:  He said it was an exhibit in the summary

3    judgment motion.

4              MS. GROSSMAN:  I don't know that that is admissible.

5              THE COURT:  That is not my point.

6              MR. CHARNEY:  That is a separate.

7              THE COURT:  You had it and new about it.  You had this

8    report of this fellow.

9              MS. GROSSMAN:  If it was in the summary judgment, I

10   accept the plaintiff's representation that it was in the

11   summary judgment, as are many reports that are not now leading

12   to witnesses giving testimony.

13             MR. CHARNEY:  Along the same lines, the New York City

14   Police Department has several times since 2010 spoken publicly

15   and offered critiques of the survey publicly.  It is in the

16   public record.

17             So, again, the suggestion that this is some 11th hour

18   surprise survey is just inaccurate.  The 2012 survey which

19   Professor Silverman did -- make no mistake.  He is not somebody

20   that we went out and hired to do so a survey.  He's conducted

21   all of his research independently.

22             THE COURT:  Who was he doing the survey for?

23             MR. CHARNEY:  He is doing it for himself and his

24   colleague Professor Turnow.  They are completely independent of

25   us.  We didn't hire them.  They are not our expert witnesses.

cbgnflo2

```
 1    He did a second survey which was published only in June 2012.

 2    It is not something that we were aware of until recently.

 3              THE COURT:  I see.

 4              MR. CHARNEY:  We did not have any contact with him

 5    until about two months ago, I guess in September.  So this is

 6    not somebody we have been holding in our back pocket to wait

 7    until discovery is over to then surprise the defendants with.

 8              Again, it is our position that his testimony is simply

 9    reporting the results of a survey.  Whether or not survey

10    evidence is admissible is obviously an evidentiary issue --

11              THE COURT:  Right.

12              MR. CHARNEY:  -- which we are fully prepared to brief,

13    and I would assume that would be a motion in limine about

14    whether this is admissible evidence.

15              THE COURT:  It is obviously based on hearsay.

16              MR. CHARNEY:  Yes.

17              THE COURT:  The interviews are all hearsay.

18              MR. CHARNEY:  Right.  We do think there are two

19    hearsay exceptions that this falls under, but we are not going

20    decide that today.

21              THE COURT:  Right.

22              MR. CHARNEY:  He is not an expert.

23              THE COURT:  I've got it now.

24              MR. CHARNEY:  It's not something that we did not

25    disclose or waited to disclose or could have disclosed earlier,
```

cbgnflo2

1    and it is not something we have been hiding.

2              THE COURT:  To the extent you did disclose the 2010

3    survey much earlier on the summary judgment motion, I

4    understand that.

5              MR. CHARNEY:  These surveys have been in the public

6    record for years.  This is not new surprise evidence.

7              THE COURT:  I got it.  These are a professor writing

8    in his field for his own reasons for his own academic research.

9              The 2010 was an exhibit in the summary judgment

10   motion.  He's chosen to update his own survey in 2012.  That

11   just came out.  You want to call him as a witness but he is not

12   retained by you.

13             You can subpoena him.  So could the other side if they

14   would like what they found in the survey.  It is just another

15   fact witness so to speak.  But you can see there could be an

16   attack on the admissibility of this survey evidence, and you

17   are prepared to brief that issue.

18             MR. CHARNEY:  Yes.

19             THE COURT:  So I think it is fair from listening to

20   this discussion, Ms. Grossman, to say they are not adding an

21   expert outside the period of expert disclosure.  It's an

22   academic who has written in the field.

23             They have his survey, and you knew about it.  When I

24   say you knew about it, you can't remember every exhibit in

25   summary judgment, but you say if he said so, you don't doubt

cbgnflo2

1    his word.

2           It was an exhibit in the summary judgment motion a

3    long time ago.  So they want to call him as a witness at some

4    point.  This is the period for naming witnesses.

5           MS. GROSSMAN:  No, your Honor.  The period to name

6    witnesses was years ago.

7           THE COURT:  No, that is not true.  We do a joint

8    pretrial order and we list the witnesses for trial.  Really

9    that is when sort of the rubber hits the road.  If you look at

10   the pilot project, if there is a witness named in the joint

11   pretrial order that wasn't previously deposed, under our pilot

12   project the parties are asked to agree to depose that person.

13   Read it.

14          I told you before this case is a complex case, and I

15   am applying the pilot project rules retroactively to this case.

16   I am sure I have told you that before.

17          So take a look at that.  So this is the time for

18   people to present the joint pretrial order and name their

19   witnesses.  So it is wrong to say years ago.

20          In fact you asked recently, in the last couple of

21   months, to please tell us who the witnesses are, please tell us

22   which plaintiffs you are going to call, please tell us what

23   other facts that you know.

24          In other words, there comes a time to name witnesses.

25   By the way, it's in Rule 26 also.  You don't have to list your

cbgnflo2

1    trial witnesses until you do the pretrial order.

2              So it's wrong to say they had to do it year ago.  If

3    you are thinking about initial disclosures that is true, and

4    they have to be updated.  But under Rule 26 with the

5    preparation of pretrial order you name your trial witnesses.

6              Then under the pilot project, anybody who is named who

7    has not been deposed they can be deposed.  So I don't really

8    see the issue other than the admissibility itself.  That will

9    be a hotly contested issue should this survey evidence come in

10   at all.  But they are not hiring an expert untimely.

11             MS. GROSSMAN:  So then that leaves the door open for

12   every article that cited and now we start putting in those

13   witness.  Your Honor, I just think there is a bit of reason

14   that you have to exercise here because --

15             THE COURT:  I have been doing that for the last 19

16   years.

17             MS. GROSSMAN:  I know but I think in this particular

18   situation -- I appreciate that and you have, your Honor -- I am

19   asking you to give real thought to this because the

20   plaintiffs --

21             THE COURT:  I have given real thought to this.  This

22   was an exhibit in the summary judgment motion.  You have known

23   about this survey for a long time.

24             In addition, Mr. Charney says the survey has been all

25   over the public record.  It's been in the record, then it's

cbgnflo2

1   been attacked.

2           Mr. Charney, who has attacked the survey?

3           MR. CHARNEY:  I mean --

4           THE COURT:  The city?  The mayor?  Who has gone around
5   attacking it?

6           MR. CHARNEY:  NYPD's public spokespersons have
7   commented on it.

8           THE COURT:  So everybody knows about this survey
9   except me.  Apparently, it is in the paper, it's been attacked.
10  It is not a surprise.  It wasn't prepared for litigation.  It
11  is not coming out of the blue.

12          This is the time for the preparation of the joint
13  pretrial order.  Read about the pilot project, which says this
14  fellow can be deposed.  But there may be a strong argument that
15  it can't come in.  That I can't even begin to opine about
16  tonight.

17          MS. GROSSMAN:  Right.  To that end, what this is
18  causing, this late disclosure, because it is a late disclosure
19  in terms of a witness.

20          THE COURT:  Why do you say that?  This is the time for
21  liting the witnesses.

22          MS. GROSSMAN:  No.

23          THE COURT:  They are doing it now.  You are preparing.

24          MS. GROSSMAN:  Rule 12 --

25          THE COURT:  Excuse me.  We are preparing the joint

cbgnflo2

1    pretrial order under Rule 26.  I think Rule 26 talks about 90

2    days or 30 days.  It is all in the rule.

3               MS. GROSSMAN:  That is for experts.

4               THE COURT:  No, no.  Trial.

5               Do you want me to read to you?  I will read it to you.

6               MS. GROSSMAN:  Your Honor, if I may.

7               THE COURT:  Do you want to hear the rule or not?

8               MS. GROSSMAN:  I know the rule.

9               THE COURT:  What do you know?  If you know it, what

10   number of days is it?  30, 60, or 90?

11              MS. GROSSMAN:  I thought that it was 90 days and 30

12   days for experts.

13              THE COURT:  No.  You have go the wrong part of the

14   rule.  I'm telling you it's not for experts.

15              MS. GROSSMAN:  All I am saying --

16              THE COURT:  Since you don't know it and I don't know

17   it by heart, we will look it up.

18              Yes, that is what I thought.

19              "In addition to the disclosures required by Rule

20   26(a)(1) and (2), a party must provide to the other party and

21   promptly file the following information about the evidence that

22   it may present at trial other than solely for impeachment:

23              (1) The name and the address and telephone number of

24   each witness;

25              (2) The designation of those witnesses whose testimony

cbgnflo2

1   the party expects to present by deposition.

2            (3) An identification of each document or exhibit.

3            (b) Time for Pretrial Disclosures.  Unless the court

4   orders otherwise these disclosures must be made at least 30

5   days before trial.

6            MS. GROSSMAN:  Right.  I understand that.

7            THE COURT:  All right.  So that is all witnesses.

8            MS. GROSSMAN:  I know, but the notice of the witnesses

9   you intend to call, which is the initial disclosures which you

10  mentioned --

11           THE COURT:  Yes.

12           MS. GROSSMAN:  -- Rule 26 requires the plaintiff to

13  supplement timely.

14           THE COURT:  True.

15           MS. GROSSMAN:  Timely.

16           THE COURT:  True.

17           MS. GROSSMAN:  If they have had notice since the

18  summary judgment motion that they were going to call this

19  person as a witness, and they have not done that --

20           THE COURT:  I haven't ordered a witness list, and

21  according to the federal rules unless I order otherwise it is

22  due 30 days before trial.  I don't want it to be February 18,

23  and if I haven't set a date, it's the date that I said the

24  plaintiff should prepare their pretrial order.

25           Did I say what date you are to submit your version?

cbgnflo2

```
 1              MR. CHARNEY:  Yes.

 2              THE COURT:  What date is that?

 3              MR. CHARNEY:  January 11.

 4              THE COURT:  January 11 is when they have to come up

 5   with the witness list.  Luckily, they are telling you about

 6   this in November, not January, so you're getting two extra

 7   months.

 8              So this person is not barred as untimely.  That

 9   doesn't mean there isn't a good argument for excluding the

10   survey, but it is not untimely.  The witness list is due

11   January 7 according to the federal rules.  I am saying unless I

12   order otherwise it's only 30 days, which would be February 18.

13              MS. GROSSMAN:  I think this is discovery by ambush.

14              THE COURT:  OK.

15              MS. GROSSMAN:  We have not had an opportunity to do

16   discovery, and to now put us in a position to have to brief

17   this issue on the admissibility of it when it could very well

18   be hearsay --

19              THE COURT:  Yes, I understand that.  We take survey

20   evidence all the time in infringement cases; copyright,

21   trademark, infringement.  It's a daily event in this

22   courthouse.  All those surveys are based on interviews, they

23   call them shopping mall intercept surveys.  They are all

24   hearsay.  But then the survey pulls it together, and we take it

25   in every trademark infringement case.
```

cbgnflo2

1              MS. GROSSMAN:  Are those usually through experts?

2              THE COURT:  They are usually through experts.

3              MS. GROSSMAN:  Not sort a random person?

4              THE COURT:  But that doesn't make the point.  The

5    point is this survey has been done for a long time.  You have

6    known about it.  It was in the summary judgment motion.

7              It is nice that you have preserved your objection for

8    the record, but I just quoted the federal rules.  So I don't

9    have the time for this problem.

10             Luckily, as I said you have two extra months, because

11   he wasn't required to tell you his witnesses until January 11

12   when you prepare the pretrial order.  By November 11 you know

13   all about.

14             So let's move expeditiously through this.  Please

15   study the pilot project, too, which says any witness named

16   after discovery has closed and this applies to either side,

17   will be deposed.  If the city were to name witness,

18   Mr. Charney, that you haven't deposed, you have the right to

19   depose that witness.

20             We have a date to see you Wednesday at 3:30.

21             MS. GROSSMAN:  Your Honor.

22             THE COURT:  Yes.

23             MS. GROSSMAN:  I have something.  I have some other

24   issues.

25             THE COURT:  I am going to have to stop in eight

cbgnflo2

1   minutes at the most because I have got to get through a charge

2   conference and leave at 6:00.

3        MS. GROSSMAN:  OK.  I could preview it and then we

4   could address it further on Wednesday.

5        But one of my concerns is that the plaintiffs have

6   identified additional witnesses who complained about stops that

7   arose out of NYCHA, which is related to the Davis case.  So for

8   us to be put into the position of having to do additional

9   discovery at this late date when that in our view --

10        THE COURT:  Why do we need those NYCHA stop people

11   here?

12        I am talking to Mr. Charney.  Are they stopped in the

13   NYCHA building, around the NYCHA building?  Where are they

14   stopped?

15        This is the street stop case, and that's the NYCHA

16   case.

17        MR. CHARNEY:  Yes.  They were stopped.  It is the

18   NYCHA case.  But our class includes anybody who has been

19   illegally stopped and frisked in the city of New York by the

20   NYPD.  Some of the people have been stopped in NYCHA some

21   haven't.  I guess I don't really understand what the city's

22   concern is.

23        THE COURT:  The thought is that you -- I am not

24   meaning you -- but three separate lawsuits have been filed.

25        MR. CHARNEY:  Yes.

cbgnflo2

1          THE COURT:  Yet you want to sort of merge them all

2     back together.  That is really unfair.  We have three separate

3     tracks of discovery, three separate tracks of motion practice,

4     three separate class certification motions.  Why do we need the

5     NYCHA plaintiffs here?  You have enough people who have been

6     stopped on the streets of the City of New York.

7          MR. CHARNEY:  They have, your Honor.

8          THE COURT:  I thought the number was -- actually I

9     thought you mentioned millions at one point.

10         MR. CHARNEY:  Yes.  We think it's several million if

11    you go back ten years.

12         THE COURT:  Yes.

13         MR. CHARNEY:  We believe that they were illegally

14    stopped without reasonable suspicion on the basis of their

15    race.

16         THE COURT:  I know that.

17         MR. CHARNEY:  NYCHA is not a defendant in this case.

18    We are not suggesting there was any misconduct on the part of

19    the housing authority.  We are saying that the New York Police

20    Department violated these individuals' constitutional rights.

21         We don't think the testimony is in any way redundant

22    of other plaintiffs, because they were stopped in different

23    parts of the city, different boroughs.

24         THE COURT:  Maybe that's whole point.  How many

25    individual stories do I need to listen to anyway, whether it's

cbgnflo2

1    me or the jury.  I could have a hundred, I could have fifty --

2              MR. CHARNEY:  Yes.

3              THE COURT:  -- I could have thirty, I could have ten.

4              MR. CHARNEY:  Your Honor --

5              THE COURT:  How many different scenarios were you

6    planning on?

7              MR. CHARNEY:  Just so you know and Ms. Grossman

8    neglected to tell you we only identified four additional class

9    member witnesses, so we are not talking --

10             THE COURT:  Additional to what?  What is the other

11   number?

12             MR. CHARNEY:  Our named plaintiffs and the four class

13   declarants.  We have now a total universe of 12 people who

14   would be testifying.  I don't think that is an unreasonable

15   number.

16             They now have to depose four more individuals.  So the

17   burden on them is minimal considering that the depositions they

18   have already done of the other declarants each took about three

19   hours.  They could do two in a day.  If they had two lawyers

20   they could do all four in one day.

21             So the burden argument is exactly --

22             THE COURT:  They have seven.  They have seven here

23   today.

24             MR. CHARNEY:  I don't think the burden argument flies

25   here.  We are talking about four more witnesses that they would

cbgnflo2

1    have to depose.

2              MS. GROSSMAN:  Your Honor, that equals, they have

3    subpoenaed 16 additional officers for us to now identify and

4    produce for deposition between now and January 11 before we put

5    together our joint retrial order in addition to the four

6    plaintiffs who have to be deposed.

7              THE COURT:  In other words, these are the officers

8    involved in these four stops?

9              MR. CHARNEY:  Yes.

10             MS. GROSSMAN:  There are 20 total depositions that

11   have to take place between now and January, December 31 or

12   January 5.

13             THE COURT:  Let me ask this question:  Why do they

14   have to be completed by December 31?

15             MS. GROSSMAN:  Well, if we have to do a joint pretrial

16   order by January 11.

17             THE COURT:  So what?  Why do the depositions have to

18   be completed by then?  How does it affect the joint retrial

19   order?

20             MS. GROSSMAN:  Right.

21             THE COURT:  He lists the four people, you list the 16

22   officers.  Who cares if depositions are completed and squeezed

23   in between now and December 31.  Why can't they be completed by

24   February 15 or something?

25             MS. GROSSMAN:  We have motions in limine.  I don't

cbgnflo2

1    know if that would affect -- clearly, you can appreciated, it

2    is not the ideal way to litigate a case.  The federal rules are

3    there for a reason, to have an orderly, professional discovery.

4              THE COURT:  I agree with that, but, as I said before,

5    the federal rules talk about naming trial witnesses 30 days

6    before trial.

7              MS. GROSSMAN:  But not doing discovery --

8              THE COURT:  I understand that.  But this is a class

9    action.  They get to select the people they want to call.  It

10   sounded reasonable when there were four.  Then you point out

11   there's 16 officers involved and four stops.  If you want to

12   depose all those officers, then they have to defend all those

13   depositions.  You are going to have to schedule 20 depositions

14   between Thanksgiving and New Year's?  I don't think so.

15             MS. GROSSMAN:  My point, your Honor, is we don't --

16   the plaintiff mentioned burden, that there is no burden.  That

17   is disingenuous to say there is no burden on us.

18             THE COURT:  They didn't say no -- they said it wasn't

19   a great burden to do four people.  I didn't realize four was

20   20.

21             MS. GROSSMAN:  Right.  So that wasn't the full story.

22             THE COURT:  Right.

23             MS. GROSSMAN:  What I can say is that if there are

24   NYCHA-related stops that is part of another class action from

25   purported or putative class actions --

cbgnflo2

1          THE COURT:  They are overlapping classes.

2          MS. GROSSMAN:  Right.  Why bother with the time.  We

3     have a lot to do.

4          THE COURT:  Because I guess he thinks 12 is a better

5     number than eight.  It is not a huge number for a class this

6     size.

7          MR. CHARNEY:  No.

8          THE COURT:  And for the number of stops involved in

9     this case, to have 12 stories when there's 2.8 million stops or

10    something is not a large number.

11         Is it what's bothering you that it is NYCHA or is it

12    bothering you that it is four?

13         MS. GROSSMAN:  No.  It is a bothering me -- well,

14    first of all, it's overlapping with other issues.

15         THE COURT:  I understand.  But if was four non-NYCHA,

16    you would be just as distressed with the thought of 20

17    deposition.

18         MS. GROSSMAN:  I am, but I could understand.  We were

19    ready to forward with some of them, and we are not opposing

20    that.  We have to.  That's what we contemplated.

21         I am just submitting and suggesting, I am advocating

22    that a NYCHA-related stop is not relevant to --

23         THE COURT:  But it is relevant.  The problem is it's

24    relevant.  They are all part of the large class in Floyd.  They

25    are not non-class members because they are NYCHA residents.

cbgnflo2

1            MS. GROSSMAN:  What are they going to be class members

2     for?  Are they going to be class members in the case or class

3     members in Ligon --

4            THE COURT:  No, not Ligon because they live in the

5     housing authority building.  They don't live in a Clean Halls

6     building.

7            MS. GROSSMAN:  My point is there are three different

8     cases.

9            THE COURT:  I am perfectly aware of that,

10    Ms. Grossman.  What I am trying do say is that Floyd overlaps

11    both Ligon and Davis.  But that doesn't mean that those two

12    overlap each other, because the private buildings and the NYCHA

13    buildings are different.

14           So Ligon and Davis don't overlap, but Floyd is the

15    umbrella.  Anybody improperly stopped in the basis of race is

16    in the Floyd case.

17           MS. GROSSMAN:  I think there are unique issues in the

18    NYCHA case that you have seen through some of our briefing.

19           THE COURT:  Yes.  That's why I asked you where these

20    stomachs were.  Were they in the building?

21           MS. GROSSMAN:  Yes.

22

23           THE COURT:  If they are in the building, this doesn't

24    make sense.

25           MR. CHARNEY:  Your Honor --

cbgnflo2

1          THE COURT:  Mr. Charney, I have to stop now because it
2     is 5:30.  I have to do the charge conference.
3          MR. CHARNEY:  Can we pick up on Wednesday?
4          THE COURT:  But let me tell you my preliminary
5     thoughts.  If it's in the building, don't go there.  I am not
6     going to do it.  That really treads on the issues Davis.
7          If it is on the street or in the vicinity or even in
8     the -- who knows what -- the parking lot.  But if it is in the
9     building, there are different issues involved in the NYCHA
10    case.
11         With that guidance, Mr. Charney, I am not opposed to
12    12.  I am willing to extend the discovery period.  I don't
13    think it affects the pretrial order.
14         I will get through everything, but if it is inside the
15    building, that really crosses the line in my opinion today.
16         See you Wednesday.
17         (Adjourned)
18
19
20
21
22
23
24
25