CCJMFLOC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   DAVID FLOYD, et al.,

4               Plaintiffs,

5          v.                          08 Civ. 1034 (SAS)

6   THE CITY OF NEW YORK, et al.,

7               Defendants.

8   ------------------------------x
                                      New York, N.Y.
9                                     December 19, 2012
                                      4:05 p.m.
10
    Before:
11
                       HON. SHIRA A. SCHEINDLIN,
12
                                      District Judge
13
                       APPEARANCES (by telephone)
14
    JONATHAN C. MOORE
15  DARIUS CHARNEY
    JENNIFER R. BORCHETTA
16  KASEY L. MARTINI
    CHAUNIQUA YOUNG
17       Attorneys for Plaintiffs

18  MICHAEL A. CARDOZO, Corporation Counsel
    for the City of New York
19       Attorney for Defendants
    BY:  HEIDI GROSSMAN
20       BRENDA COOKE
         JOSEPH MARUTOLLO
21       MORGAN KUNZ
         SUZANNA PUBLICKER
22

23

24

25

CCJMFLOC

1          (In chambers)

2          THE COURT:  I do have a reporter and there is

3  obviously a lot of people on this call.  If you speak, I would

4  ask that you remember to state your name each time.  I may know

5  the voice, but he doesn't.

6          I have two letters in front of me today.  One is dated

7  December 17 from the city.  I was just pausing for a minute to

8  review the last paragraph again.

9          Anyway, this is a letter from the city dated December

10  17, 2012, objecting to the plaintiffs' now having served

11  subpoenas on three nonparty police officers who were allegedly

12  witnesses to a stop of a citizen witness, a Mr. Leroy Downs,

13  who I suppose is a class member.  And the reason for the

14  objection is the very late notice -- I'm summarizing the

15  defendant's letter -- the very late notice, the defendants say

16  that all newly-identified citizen witnesses were supposed to be

17  identified by November 16.

18          And 35 days after that deadline, namely, December 14,

19  they, that is, the plaintiffs, for the first time identified

20  Mr. Leroy Downs and added him to the five witnesses that they

21  did identify November 15.  And because they want this plaintiff

22  to testify, they then served the subpoenas on the nonparty

23  police officers who were the witnesses to that stop.  So the

24  city says it's simply too late and they cite orders and

25  conferences and whatnot in support.

CCJMFLOC

```
 1              Then there is a response from the plaintiffs, dated
 2     December 18, from Ms. Borchetta, another three-page,
 3     single-spaced letter.  Both of these letters are long.  And the
 4     gist of the plaintiffs' letter is that they are really not
 5     late.  They only learned about this fellow recently when
 6     another counsel brought it to their attention -- not a counsel
 7     on this case, but a counsel they know, a former attorney.
 8     Mr. Downs' former attorney in the civil suit.  That attorney
 9     brought it to the attention of the plaintiffs' counsel here
10     only on December 3.  And as soon as he was brought to the
11     attention of the plaintiffs' counsel here, they must have
12     reviewed his information and decided that he would be a good
13     plaintiff.
14              The plaintiffs also write that this disclosure is
15     occurring two months before the February 19, 2013 deadline for
16     witness identification; of course, only a week after it became
17     known to them.  They then go on and cite my scheduling of the
18     pretrial order and they cite the pilot project and they cite,
19     this is not very burdensome.  Then they point out that the city
20     has staffed the case heavily.  They have eight attorneys
21     working on it and they surely can handle this.
22              And then they, of course, just say that this fellow
23     has a lot to offer because he is the only plaintiff from Staten
24     Island and plaintiffs do have the burden of proving a citywide
25     practice, and they have heard the defendants argue on other
```

CCJMFLOC

occasions that citywide means all five boroughs.  This is the
only fellow they have from Staten Island.

So that's the summary of the two letters.

Now, let me say that I have actually sympathy on this
one for both sides.  I understand that the plaintiffs only
recently came across this fellow.  He did not respond to some
letter or notice, so he is not part of any other group, as the
city implied.  There was a mailing and there was a deadline and
all that.  But he is not part of that.  They just learned about
him.

On the other hand, the city correctly says this has to
end some day.  This case is an '08 case.  This is going to be
2013 soon.  It's getting to be a five-year-old case.  It's
scheduled for trial.  Everybody has got an awful lot of work to
do to get ready for the trial.  Is it March 11, is that the
trial date?

MR. MOORE:  That was jury selection.

THE COURT:  You are right.  But I think I kept it on
the calendar and I was going to talk about that.  I hope we
start then because I have another big trial almost directly
after yours and there is some holidays in there.  I would like
to start on the 11th, but we will talk about that.

There is a lot of work to get ready.  I absolutely
appreciate the city's point that this has to end.  And if
plaintiffs' argument is correct, that they can do this any time

CCJMFLOC

up to February 19 or something, that's not going to work out.
So while it's true that that's the date for the final witness
list, I guess I looked at that, as happens in many cases,
that's the time when you make final decisions as to what
witnesses will be at trial.

In other words, you've deposed 30, let's say, and now
you are going to pick the 15 who are really going to testify.
That's the point.  You cut back a list at that point, but you
don't say, well, I had until then to name a whole new witness
and start deposing them.  That's not really right.  So both
sides have an argument here.

Again, as I say, I'm sympathetic to the plaintiffs
just having learned of this guy and that he is from Staten
Island, but it has to end.  So I think the Solomonic decision
is to let the whole Downs situation go forward but to say
that's it.  If you learn about a great plaintiff tomorrow, it's
too late.  It's too late.  It has to end.  Discovery can't be
permanent.  Surprises can't happen in the next two months.  You
are supposed to be at a post summary judgment getting ready for
trial stage, so it has to end.

So with a firm cutoff, I would allow the Downs
scenario primarily because it's Staten Island and, therefore,
not cumulative and it rounds out the five boroughs.  And I
think everybody can live with the depositions, even though I
understand the burden argument.  It's a lot to do.  It burdens

CCJMFLOC

1   both sides, I understand that.  But this case is well staffed

2   on both sides.  I'm inclined to allow it with a firm cutoff.

3         Let me turn for a minute to the plaintiffs first.

4   I'll just say Mr. Moore, for the heck of it.  I know he is not

5   the lead on the Downs issue.  As a pretty senior attorney, this

6   is not directed at your age, Mr. Moore, but at your experience,

7   if I said, look, I'll do this, but today is the cutoff day, I

8   am not going to give you three more days.  Today is the cutoff.

9   No matter who you find, it's over.  Can you live with that as

10  part of the ruling that would allow the Downs case to be part

11  of this?

12        MR. MOORE:  Judge, I'll tell you quite candidly, and

13  this is John Moore speaking, that there were discussions with a

14  couple of police officers who I believe have not been

15  previously identified who are apparently willing to come

16  forward and provide information with respect to the existence

17  of quotas on issues very clear and germane.

18        THE COURT:  True.  Mr. Moore, let me interrupt.

19  That's interesting and you may not have been prepared to

20  disclose it, but that really wasn't what I was referring to.

21  No more plaintiffs, no more as of today.  That would be fine.

22        MR. MOORE:  Fine, Judge.

23        THE COURT:  That's the first part of this ruling.  On

24  the record there will be no --

25        MR. MOORE:  I don't want to speak for other

CCJMFLOC

 1 plaintiffs' counsel.

 2          THE COURT:  I have got to have a cutoff.  I can't call

 3 on every one of six people.

 4          Mr. Charney, can you live with that, for no more

 5 plaintiffs?

 6          MR. CHARNEY:  Yes, your Honor.

 7          THE COURT:  As of today, December 19, no further

 8 plaintiff witnesses can be identified.  I will allow Downs in,

 9 primarily on the argument of Staten Island, but even though

10 it's two months before the pretrial order and close to three

11 months before trial, no more plaintiff witnesses.

12          MR. MOORE:  When you say plaintiff witnesses, are you

13 saying plaintiffs or class members?

14          THE COURT:  Same.  In other words, no new stop

15 stories.  Here is my tale.  I was stopped.  There was no basis

16 to stop me.  No more of that.

17          MR. MOORE:  That's what I thought, Judge.  I wanted to

18 clarify.

19          THE COURT:  Since you did disclose in answer to my

20 question this possibility of a couple more police witnesses,

21 I'm sure the city won't be happy to hear that either.

22          When, in your view, is an absolute cutoff on witnesses

23 who have never been previously identified and will clearly need

24 to be deposed?  If it's not December 19, because you are

25 talking to a couple of police officers and that is important

CCJMFLOC

1  testimony and it is new and it's not cumulative, is it December

2  31?  It has to come to an end.

3            MR. CHARNEY:  I was going to say December 31.

4            THE COURT:  We can't really hear you.  I think you'd

5  have to shout.

6            MR. CHARNEY:  If December 31 is what you had ordered,

7  then we will go along with that.

8            THE COURT:  I have not even heard from the city yet.

9  If I do, that at least gives us all comfort that nothing more

10  can happen and it gives you a chance to finalize these two

11  police witnesses or anybody else who you're scurrying to find

12  at the last minute.  But at least it gives finality.

13            Then, on January 7, when you get a new idea, this

14  transcript controls.  This is it.

15            I'm sure the city is not happy.  Who wants to speak

16  first.

17            MS. GROSSMAN:  Your Honor, Heidi Grossman.

18            THE COURT:  Yes, Ms. Grossman.

19            MS. GROSSMAN:  You are absolutely right, we are not

20  happy about this, because there are court orders from way back

21  in May through the summer, through everywhere contemplated this

22  discovery and we complained then, we objected then, and your

23  ruling seemed to be of no weight to the plaintiff.  They just

24  continued to do things on their own without getting any

25  permission from the Court, without being up front.

CCJMFLOC

1          And to now find out that the plaintiffs have

2     additional witnesses when they were supposed to notify us on

3     November 9, we generously gave them an extra week, given

4     Hurricane Sandy, this is the quintessential example of

5     discovery by ambush.  And I know you don't like when I say

6     that, but the pilot project complex litigation plan did not

7     contemplate that adding burdens were going to be put on the

8     parties and that new discovery in excess of 28 witnesses are

9     going to take place years after the close of discovery, years

10    after motion practice, Daubert motions, summary judgment.

11         I mean, the plaintiff has been given every bit of

12    latitude from your Honor.  You've been very generous to both

13    parties in trying to let us accomplish what we need to

14    accomplish, but it gets a point where your rulings need to be

15    relied on by the defendant.  And you did say November 9.

16         And to the extent that the plaintiffs said that this

17    pilot project allows them to do this, that could be further

18    from the truth.  The spirit of all your rulings were very clear

19    and the plaintiffs didn't even -- of the five witnesses that

20    they did identify, only one is someone who was notified, was

21    derived from the mass mailing.

22         THE COURT:  That's the point.

23         MS. GROSSMAN:  The whole purpose of this plan, the

24    complex litigation plan, is to streamline the cases, makes

25    things more efficient, less costly, less burden, avoid

CCJMFLOC

1    surprise, be efficient.

2         The plaintiff made their choices of who their class

3    representatives were.  That's the purpose of a class action.

4    And you certified a class.  And now my question is, why isn't

5    that their class representatives are adequate to represent the

6    interests of the class?  Your Honor certified a class.  So this

7    idea of now let's go to Staten Island and it's another stop,

8    the plaintiff made their choices years ago.

9         THE COURT:  Wait, Ms. Grossman.  Now I'm really

10   compelled to interrupt.

11        I don't think you are being fair in describing what a

12   class representative is.  A class representative is not a

13   limitation on the trial of a class action.  It's the people

14   that are put forward to show that there is an adequate class

15   representative for certification purposes and it's important to

16   make those choices at that stage because some cases actually

17   don't get certified because the person put forward to be

18   representative has unique defenses, you know that one from

19   class litigation, or is in some other way inadequate.  Other

20   than unique defenses, maybe they don't understand the case or

21   haven't participated with the lawyers or whatever it is.

22        I've done so many class actions over the years, but I

23   have never heard the argument that when it comes to trying the

24   case, and I know there is a very small percentage of class

25   actions that are ever tried, but I think you could research

CCJMFLOC

```
1    this for years and you won't find a case that says the trial

2    witnesses on the plaintiffs' side are limited to the designated

3    representatives.  I don't think such a case exists.  You're

4    welcome to try to find it.  I could be educated, but I have

5    done a lot of class work over the years.  I don't think it

6    controls the trial witnesses.  That isn't the best argument.

7         The other arguments you make obviously are more

8    compelling.  Discovery does have to come to an end.  And the

9    question is, this post November 16 identification, is it fair

10   or unfair to allow post November 16 people to become trial

11   witnesses?

12        And the problem with that is, yes, in some ways and no

13   in others.  Sure, you are right, discovery has to end.  But

14   occasionally somebody turns up in a case who is really

15   important to one side or the other, should be a witness.  And

16   what the pilot project says is that both sides agree to depose

17   any such witness.  If this were to be on the other foot, if the

18   city were to say, we understand it's late, but we have just

19   learned of so and so who is a critical witness for us, as long

20   as that person was deposed, I would allow it.  And I have

21   allowed it in many cases over the years.

22        But that's why I said this can't go on.  It can't go

23   on in this case, which is a big case, a long trial.  It has to

24   end.  And these deadlines will not slip again, no way, no how.

25   That's clear in this transcript.
```

CCJMFLOC

```
 1              Today is the last day any story of a stop.  It's one
 2    more story and it is a different borough and it is important to
 3    cover all five boroughs because I have heard arguments from the
 4    defense that it's not been proved that it's citywide.  I do
 5    think that it's fair to allow the plaintiff somebody from that
 6    borough, and it's not like they sat on this.  They really just
 7    learned about this particular guy on December 3.  If you don't
 8    believe them, I suppose you can question Mr. Brett Klein, but I
 9    suspect you believe what Mr. Moore and what Mr. Charney
10    represent, because they are not known for lying.  They just
11    learned of this guy and that's that.
12              As far as the police witnesses, that's interesting.  I
13    don't know why it's coming up so late.  I don't know who these
14    people are.  But if it's not cumulative and if it's by December
15    31, it's the same exception that I said I would make for you if
16    you come up with a witness that for some reason you couldn't
17    uncover earlier.  I will allow it, but not after December 31.
18    That's still two and a half months before trial.  I don't think
19    it affects motion practice.
20              You said we have already had summary judgment.  Well,
21    so what.  More evidence wouldn't have helped the city prevail
22    on summary judgment, so I don't see how that hurts, that it's
23    post class certification.  That's typical.  We often had
24    certification years before the close of discovery, particularly
25    in the old days when the standard was different.  We had it
```

CCJMFLOC

 1   very early.  The rules even say at the earliest practicable

 2   time.

 3          To add witnesses after class cert. is no big deal.  To

 4   add witnesses after summary judgment is not a big deal.  That's

 5   not a problem.  I really must say I'm a little not sympathetic

 6   to the prejudice argument.  I'm very sympathetic to the firm

 7   cutoff argument.  That I am sympathetic to.  And you say that I

 8   previously said November 16 is that date.

 9          By the way, to say that you were so generous in giving

10   them one week, everybody gave everybody a week because of

11   Hurricane Sandy.  There is not one case in this chambers where

12   we didn't get a letter at the end of the week, so that wasn't

13   exactly generosity.  That was courteous, and I appreciate your

14   courtesy.

15          Ms. Grossman, did you want to say more.

16          MS. GROSSMAN:  Your Honor, I have never thought in a

17   million years that I would have had to ask you for the cutoff

18   date back in May and back in the summer and back in November.

19   With your rulings, I take your rulings very seriously.  When

20   you say -- and I trust in those rulings.  When you say to the

21   plaintiff, that's it, November 16 or November 9, I never

22   thought in a million years that I would have to say, your

23   Honor, I just want to make sure that we don't get any other

24   additional witnesses, because this is years after discovery

25   closed.

CCJMFLOC

1          THE COURT:  No, it's not years after discovery closed.

2          MS. GROSSMAN:  It is.

3          THE COURT:  Years plural?

4          MS. GROSSMAN:  Discovery closed quite a few years ago

5   and for plaintiff --

6          THE COURT:  When did discovery close in this case?

7          MS. GROSSMAN:  2010.  2010, your Honor, discovery

8   closed.  There were rulings and discovery --

9          THE COURT:  What in the world have we been doing for

10  the last three years?

11         MS. GROSSMAN:  I would like to have the opportunity to

12  make my record and just say what I need to say because,

13  obviously, you are going to make your ruling and we will live

14  with it.

15         But when your Honor mentioned that the plan

16  contemplates that occasional witnesses may come to light, I

17  don't think it's meant that the occasional 28 witnesses --

18         THE COURT:  Why do you say 28?

19         MS. GROSSMAN:  Because five plaintiffs have identified

20  numerous stops that triggered subpoenas for the equivalent of

21  citizen witnesses and officer witnesses to be 28 in total.  And

22  so that is what this has triggered and that is not what I think

23  the rules --

24         THE COURT:  I agree with you.  The problem is here, if

25  the plaintiff were simply to say, I want to add Mr. Downs, he

CCJMFLOC

1    was stopped, I think everybody would want to sort of hear in

2    advance of trial from anybody who participated in or witnessed

3    that stop.  Maybe I'm wrong.  But I don't think anybody would

4    want to go into the story of that stop blind.

5           MS. GROSSMAN:  Maybe they should remove one of the

6    other plaintiffs, the other citizen witnesses, and maybe if the

7    punishment -- they should not be rewarded for allowing

8    discovery to go forward with these officers.  Maybe our

9    officers should not be subjected to a deposition, but we get

10   the opportunity to take the plaintiffs' deposition or the

11   witness deposition.  At least there has got to be some

12   communication that this is unacceptable and that we are not

13   burdened with now having to bring these officers in, meet with

14   them in the middle of all the preparation for trial prep, and

15   then make them appear for deposition.  It's just a burden.  You

16   may not think --

17          THE COURT:  I got you.

18          MR. CHARNEY:  Your Honor, can I just respond briefly

19   to that.  Both sides are trying to make a record.  I'll try to

20   be brief.

21          The first thing I want to say is, with respect to

22   discovery being over, that's not really true because in the

23   last two years the city has continued to produce documents

24   regarding new and revised policies around stop and frisk.  The

25   same discovery ended.  I'm not in any way suggesting that was

CCJMFLOC

1   improper on their part.  I think they were complying with their

2   obligations.

3        Then on the issue of the officer depositions, yes,

4   there are going to be depositions and we have to take them, and

5   we gladly accept that burden.  We are going to do the work.  We

6   understand it's a lot of work.  To just say that the city is

7   the only one who now has all this extra work they have to do

8   and we are in some ways creating work and we don't have to

9   accept the consequences of it, I don't think is accurate.

10        THE COURT:  Of course you are creating the work.  If

11   you didn't proffer Mr. Downs as a witness.  Of course the

12   plaintiffs are causing the additional work.

13        MR. CHARNEY:  We are, your Honor.  We are making work

14   for ourselves as well.

15        THE COURT:  That's your choice.  The defendant doesn't

16   have a choice.  What the defendant is saying is, you may create

17   more work, but you are doing it at your own initiative.  They

18   don't have that luxury.  They are saying the work is being

19   foisted on us.  We are not given a choice.

20        And so Ms. Grossman is saying, in the first instance,

21   I shouldn't allow Mr. Downs, I shouldn't allow these new

22   police.  But if I'm inclined to do it against all reason, then

23   at least in some way you should pay a price for that.  And the

24   price she suggests is, you want to put forth Downs, put him

25   forth, they will depose him, but you are going to take your

CCJMFLOC

1    chances on the police witnesses without knowing what they would

2    say.

3            And so one way to handle that is to say, well, she has

4    got a point and they shouldn't be deposed.  But they should

5    each be required to produce an affidavit describing to the best

6    of their knowledge their memory of that stop based on their

7    memo books and their memory.  That's the end of it.  Write up

8    their version so at least you have that piece of paper as to

9    what their version is, instead of going through a four-hour

10   deposition, which goes on and on and on, anyway, you get this

11   affidavit with their version and that's the best you are going

12   to get.  When you analyze it, maybe you won't call Mr. Downs,

13   maybe you will.  Depends what you see.

14           MR. MOORE:  Can I add a couple of points.  One is, the

15   process of notifying the class members and then getting

16   potential witnesses which by depositions would elicit

17   additional discovery from both sides is something that the

18   parties have been discussing for a while.

19           And so it shouldn't come as a surprise when

20   Ms. Grossman says, there is now 28 depositions.  That was

21   something that had to have been in contemplation of everybody

22   when we went through this process of notifying the class

23   members.  I don't think it would be fair to penalize either

24   side, really, for having basically gone through that process.

25           THE COURT:  I think that's right as to everybody up to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

CCJMFLOC

1    Mr. Downs.  In other words, this deadline to identify these

2    people was November 16, partly based on that notification.

3    Notification went out, certain people turned up, you added some

4    citizen witnesses, and I allowed it, and I allowed all the

5    surrounding depositions.  But now Ms. Grossman says, that was

6    bad enough, but more, another whole set of five?  You know,

7    it's not right.

8           Now we are in the middle of the holidays.  We have got

9    Christmas next week, New Years the week after, and lots of

10   stuff due.  No, we shouldn't have to produce these three

11   officers.

12          Again, I have some sympathy for that.  I think

13   depositions go on way too long as it is and they are kind of

14   unnecessary.  If these three guys wrote up their memo books and

15   start their affidavit saying based on my memory and my memo

16   book and here is my version in numbered paragraphs.  That's

17   what you are going to get and you'll have to make a decision

18   based on that rather than deposing three more people.  There

19   has to be some price and some end.  That's all.

20          MR. MOORE:  I don't know that there has to be a price

21   necessarily, Judge.  Obviously, if you want to extract a price,

22   that's your option.  As you say, it's not usual, especially in

23   this kind of litigation, that there are witnesses who appear

24   late on the scene.  I've been involved in trials where we have

25   been doing depositions in the middle of the trial.

CCJMFLOC

1          THE COURT:  Of course.  I have, too.  That's why I

2     said I would do it for both sides.  Sometimes in a commercial

3     case one witness who they thought was going to testify gets

4     sick or dies or whatever and they substitute somebody and I say

5     it's fine as long as he's deposed in the middle of the trial.

6     They say okay, we will do it at night.  I've been through that

7     any number of times, too.

8          This is kind of different.  What she is saying is,

9     after the close of fact discovery, anyway, which Ms. Grossman

10    says was 2010, it seems like the case has sort of evolved and

11    doubled since then in terms of these new incidents.

12          And all she is saying is, if it helps to add a

13    disincentive to even dream about anything else, and today is

14    December 19 and it's over for citizen witnesses.  Citizen

15    witness plaintiffs who say, I was wrongfully stopped, that's

16    over with Downs anyway.  But even then she is saying there

17    should be some price extracted for the very late notice, even

18    though it's an innocent lateness.

19          You have just learned of him on December 3, had him

20    in, talked to him and acted within a week.  Still, you could

21    learn about somebody even more exciting tomorrow and it's just

22    unfortunately too bad

23          MR. MOORE:  That's fine.  I think we can live with

24    that.

25          Let me also point out that the city objected to doing

CCJMFLOC

1    the class discovery until after class cert.  So when she talks

2    about 28 depositions, most of that is attributable to -- all

3    but three or four depositions, which will be very short, are

4    attributable to that class member to come forward and now we

5    are doing some discovery about.

6            MS. GROSSMAN:  Your Honor, they have one person who

7    responded to a mailing who is a witness.  So all the time, all

8    the time we could have been doing --

9            MR. MOORE:  Could you not yell into the phone.  If I

10   could finish.  I'm in the middle of saying something.

11           What it comes down to here is you have essentially --

12   and this is December 19, trial is March --

13           THE COURT:  I want to say 11th, but go ahead.

14           MR. MOORE:  Whatever.  I talk about today is December

15   19.  Trial is almost three months away.  We are talking about

16   an additional three or four depositions, very short, two or

17   three hours.

18           I think it's really exaggerated to say there is any

19   need for any punishment here.  This is an important case.  As

20   it gets more attention, people come forward.  The issue of the

21   officers, you have to understand what a courageous act it is

22   for an officer who is currently an officer in the NYPD to come

23   forward and even talk about this.

24           THE COURT:  I appreciate all that, but that officer,

25   whoever it is, has had years, but okay.

CCJMFLOC

1          MR. MOORE:  I understand.  All I'm saying is, I don't

2     think you can argue that we are trying to abuse this.  You are

3     not saying we have two weeks before trial --

4          THE COURT:  I understand everybody's point.

5          Ms. Grossman, what did you want to say was not further

6     from the truth?

7          MS. GROSSMAN:  The plaintiff seemed to be thinking

8     that this class certification discovery is something we

9     contemplated.  At the end with the thousands of mailings that

10     went on, there is one person who is identified as a potential

11     witness, and the other witnesses have nothing to do with the

12     mailing.

13          The plaintiffs knew about these witnesses and they

14     never gave us the names.  They didn't decide who they were

15     using.  And the Court was generous to give them until November

16     9, even though there were some individuals known to them back

17     in May and they waited all this time, but we all thought this

18     was going to be the end.  We objected strenuously.

19          And I would also add, your Honor, on the Staten Island

20     piece, the plaintiff had years to identify a person who was

21     stopped in Staten Island and that they are identifying them

22     now, you know, in December --

23          THE COURT:  It's not as if they held back and

24     sandbagged you.  This particular potential citizen witness just

25     came to their attention.

CCJMFLOC

1            MR. MOORE:  I would also note, Judge, that they also

2       have information --

3            MS. GROSSMAN:  I was speaking.

4            I do strenuously object to, as you can imagine, to now

5       the late notice of these officers.  Now, why is it that at this

6       conference that we are first learning about new witnesses when

7       November was supposed to be the date for all final notice of

8       the witnesses from the plaintiff?  This is just not right.

9       It's not right.  It's not the way discovery rules are supposed

10      to play out.  It is not the way the pilot project plan is

11      supposed to play out.  And I don't even know the names of these

12      officers.  Let them tell us the names right now in this court

13      conference.

14           MR. CHARNEY:  Your Honor.  Can I please respond.  All

15      of these are inaccurate.  I don't want to keep you on the phone

16      longer than you have to.  I know you are very busy.

17           Just so the record is clear, November 16 or November

18      9, whatever deadline we are talking about here, we just need to

19      be clear that that was a deadline that your Honor set, was very

20      clear about this at the August conference, specifically for

21      those potential class member witnesses who were going to

22      receive a mailing or had contacted the plaintiff in the few

23      months and weeks after the class certification decision.  That

24      was clear.  If you read that transcript, that's exactly what we

25      were discussing.

1    So for Ms. Grossman to say that we had to give all

2  possible trial witnesses of any kind by November 16 is simply

3  not true.

4    Now, with respect to these officers who have come

5  forward, as your Honor probably can imagine, this is not

6  something we had any control over.  For officers to come

7  forward at all to talk about what goes on at the police

8  department publicly is at great risk to their careers, and

9  there is a case currently pending in the Southern District

10  around an officer who came forward and was retaliated against

11  and had the lawsuit that the civil liberties union is

12  representing him in.  This is not something that officers are

13  constantly coming out and doing.  We have no control of whether

14  or not an officer is going to contact us, when they contact us,

15  if they contact us, to tell us that they have information

16  relevant to our case.  This is another situation where we are

17  not holding anything back, sitting down, not doing any work,

18  lounging around and waiting until the last minute to identify

19  witnesses.

20    MS. GROSSMAN:  Critical question is, how long have

21  they known about these officers?  When did you first learn

22  about them?

23    MR. CHARNEY:  If you would let me finish, Ms.

24  Grossman.  We just actually met with earlier today.  We did not

25  know the substance of his testimony until earlier today.  So,

CCJMFLOC

1   again, this is a situation where we are not waiting or sitting

2   around and then at the last minute disclosing new witnesses and

3   information to you.

4           THE COURT:  I guess that was a careful lawyer answer.

5   What you said was, you didn't know the substance of his

6   testimony until today.

7           MR. CHARNEY:  Your Honor, I will go further because I

8   know what you are asking.  We were first contacted by this

9   individual within the last three weeks.  It has not been that

10  we have been sitting around thinking about or waiting on for

11  months.

12          THE COURT:  That's one of the two.  Didn't you mention

13  there was another potential --

14          MR. CHARNEY:  There is another officer who called me

15  on Monday, this past Monday, so that's two days ago.  I have

16  not had the chance to meet with him.  I hope to meet with him

17  next week.  Given that we now have a December 31 deadline, I am

18  going to do my best to make that happen.

19          THE COURT:  You are saying you just learned of him two

20  or three days ago?

21          MR. CHARNEY:  Yes, just learned of him two or three

22  days ago.

23          THE COURT:  My question is, what happens when you

24  learn about somebody great on January 17?

25          MR. MOORE:  I guess we are out of luck, Judge.

CCJMFLOC

1          MS. GROSSMAN:  Your Honor, my position is that the

2     discovery, it's not about trial witnesses.  It's about

3     discovery closed in 2010 and that's when the plaintiffs were

4     obligated to give us notice of their witnesses.  Now, the

5     plaintiffs have known about this particular officer for three

6     weeks and then they sit on that information.

7          THE COURT:  No.  That's not quite accurate.  They

8     learned of him as a potential witness three weeks ago.  There

9     was nothing to tell you then until they can meet the person and

10    see if he has something to offer that they would actually want

11    him as a witness.  So they are candid to say they learned of

12    his existence and, therefore, potential witness three weeks

13    ago, but I don't think people are required to tell each other

14    about potential witnesses.

15          Now that they have actually sat down today and talked,

16    the plaintiffs' counsel should make a quick decision.  There is

17    not that many business days between now and the 31st as to

18    whether he will be a trial witness.  They will make that

19    decision by the 31st, so there is time to depose them.  Those

20    two I am sure you want deposed.  If they are going to be

21    allowed to be added to this schedule, surely you are going to

22    want to depose those police officers

23          MS. GROSSMAN:  Your Honor, my understanding is that

24    that discovery closed and I would imagine in many cases

25    discovery can close and then witnesses come up after.  That's

CCJMFLOC

1    what the rules provide.  And this is not right.  The fact is --

2         THE COURT:  Ms. Grossman, earlier in this conference I

3    already said, that happens in cases all the time, that

4    discovery closes and then for some reason or another, sometimes

5    it's illness, sometimes it's death, sometimes it is a

6    newly-discovered witness but who has unique and critical and

7    noncumulative evidence, and we take it.

8         These rules are not like steel; in other words, that

9    they can never be bent.  Most of these rules say, unless the

10   Court orders otherwise, when deadlines are set.  Right in the

11   Federal Rules of Civil Procedure you will find a qualifying

12   phrase, unless the Court orders other otherwise or exceptional

13   circumstances.  There are lots of flexibility in all of these

14   rules.

15        I really also don't accept the finality of this notion

16   that discovery ended in 2010 as if that, again, was an iron

17   curtain, not to confuse good metaphors.  It's not as if an iron

18   curtain came down on that date.  There were still expert

19   discovery going on, there were documents being produced.  There

20   was this mailing.  It was anticipated it might produce a

21   plaintiff and it did indeed produce one.  This is a fluid

22   situation here.  It's not rigid.  I can't make it rigid,

23   although I appreciate the need for cutoffs.

24        Everyone has got strong arguments here.  I am going to

25   allow Downs in as a trial witness.  I am going to accept the

CCJMFLOC

1    suggestion that the plaintiff should not be allowed to depose

2    the officers, so long as they each submit an affidavit based on

3    their memory and their memo books that describes their version

4    of the events of that stop.  And the police officers that have

5    come forward, if the plaintiffs identify them by December 31, I

6    guess name rank and serial number, they are in, too, and then

7    that's it.

8              MR. MOORE:  With respect to that, the affidavits --

9              MS. GROSSMAN:  Your Honor, we can depose Downs?

10             THE COURT:  Of course.

11             MR. MOORE:  If I could just make an additional point

12   about this.  These three affidavits that went out.  If you look

13   at that, the record in this case, it's almost -- if there is no

14   UF250, or even if there is a UF250, there is no entry in the

15   memo book, so there is going to be nothing, probably, that we

16   are going to get from that by way of affidavit as of then.  If

17   it's a UF250 it's going to be a checkoff.  There is going to be

18   no narrative.

19             THE COURT:  There is going to be a narrative.  They

20   are required to put in that affidavit whatever can they

21   remember about this event.  They may say, I have no memory of

22   the event.  I have no entry in my memo book.  I have no UF250.

23   I don't know what more you would learn at a deposition.  That's

24   the testimony.  It's fine.

25             MR. MOORE:  That's what we might --

CCJMFLOC

 1          THE COURT:  That's the testimony.  If that's what the

 2     affidavit says, that's also what the testimony would be.  We

 3     don't give depositions in criminal cases and people do go to

 4     trial and witnesses get cross-examined, Mr. Moore.  It will

 5     work out.  It will work out.  I'm not worried about that.

 6     That's the ruling with the two cutoff dates.  No more civilian

 7     plaintiffs after today.

 8          MR. MOORE:  Can I just ask a clarifying question?

 9          THE COURT:  Sure.

10          MR. MOORE:  Mr. Downs was a plaintiff in one of these.

11          THE COURT:  I know.

12          MR. MOORE:  I should know this, but I don't know if

13     anybody was actually deposed in that case.

14          THE COURT:  Can't Mr. Klein tell you?

15          MR. MOORE:  I didn't talk to him.

16          THE COURT:  Talk to him.

17          MR. CHARNEY:  I can tell you that Mr. Downs himself

18     was never deposed in that case.

19          THE COURT:  You can call Mr. Klein, he is a friendly

20     fellow.  Ask him whether there were any depositions taken.

21          MR. CHARNEY:  I will do that, your Honor.

22          MR. MOORE:  Are we permitted to access any document

23     that he may have on the case?

24          THE COURT:  Not for me to tell you that.  Ask

25     Mr. Klein if he will turn over his file.

CCJMFLOC

1              MR. MOORE:  I am sure he would.  I don't want to have

2     the city scream that we are somehow getting access to documents

3     that we shouldn't have.

4              THE COURT:  That's not true.  If Mr. Klein voluntarily

5     gives them to you, fine.  I think you should produce whatever

6     you get to the city.  That's fair.  If you get materials,

7     produce it to the city, but there is nothing unethical about

8     you're asking Mr. Klein if he would share his file.  It's his

9     papers.

10             MR. MOORE:  In the excess of caution.

11             THE COURT:  It's his file.  He's a free man.  He's

12    welcome to share it.  He is also allowed to shred it.  It's

13    completely up to him.

14             Now, let's talk about this trial date.  It would be

15    much better for my schedule to start on March 11.  That's what

16    I counted on.  I realize it says jury selection, in retrospect,

17    and I think I said we will just select a jury and start the

18    following Monday.  I probably said it.

19             If this is really going to last, and this is what I

20    have it down for, four to six weeks, I need to get going.

21    There are holidays in between.  We are going to get slowed

22    down, inevitably.  Some days I know I can't sit and I'll tell

23    you which days are on and which days are off.  I probably have

24    some speaking stuff in March and April.  I always do.  I'll

25    share the days on and off with you.  I really would like you to

CCJMFLOC

1    adjust yourselves to the idea of starting March 11.

2            MS. GROSSMAN:  Your Honor, do you think that we can at

3    least -- we are like 100 witnesses.

4            THE COURT:  Can I put you on hold for one minute,

5    folks?

6            Never mind.  They hung up.  Go head.

7            MS. GROSSMAN:  There are at least a hundred witnesses

8    that the plaintiffs have identified so far.  We are going to

9    speak with the plaintiffs to see if they are really serious.

10           THE COURT:  That's also what we will learn on that

11   February date.  That's the drop dead date for the witness list,

12   but go ahead.

13           MS. GROSSMAN:  Your Honor, all I'm saying is, I was

14   just hoping that you could be a bit flexible for us as the 11th

15   or 18th as we see how things are going in the month of January

16   with all the discovery that has to be done.  This is so

17   unusual.

18           I understand when witnesses come forward and you fit

19   it in, but I'm sure and I know you appreciate, because you've

20   acknowledged this, that up to 30 witnesses or 28 witnesses

21   between now and January and then to have to bring a hundred

22   witnesses in to prepare them for a trial before your Honor, to

23   do it in a way that's efficient for you that's not duplicative

24   and repetitive, it takes a lot of planning and it's not the

25   sort of thing -- that every week may count is what I'm saying.

CCJMFLOC

 1          THE COURT:  I hear you, but I'm still saying if it's

 2     going to be four to six weeks, starting March 11 is just far

 3     preferable to the Court.  I'm telling you now that that's my

 4     strong preference.  Obviously, I'll listen at any point to any

 5     argument that people have to make as to what they think they

 6     can accomplish that week, I'll listen, but my inclination is to

 7     tell you now to think pretty hard about the week of March 11.

 8     Certainly don't book yourself for another trial.  That's a

 9     fact.

10          MS. GROSSMAN:  Your Honor, I know that when we spoke

11     months ago about March, there were those holidays in there.  I

12     don't know if you can let us know when you think there will be

13     dates you won't be in and when you think the Court will be in

14     session so we can plan.

15          THE COURT:  I can.  Hold on.  I can.  I wasn't going

16     to do it right now, but I am sure I can.  Hold on.

17          Monday night and Tuesday night, the 25th and 26th of

18     March are the first and second seder.  I don't really want to

19     come in on either the 25th or the 26th of March.  March 25 and

20     March 26, the nights of those two are the first seder and the

21     second seder.  While the day of the first seder isn't usually a

22     holiday, I'm usually busy cooking.  I really don't want to come

23     in either of those two days, the 25th or the 26th.  That said,

24     I have no idea when Good Friday and Easter Sunday are.  I don't

25     observe those holidays, so I don't know which days they are,

CCJMFLOC

 1    but maybe they are in my calendar.

 2             One second.

 3             MS. GROSSMAN:  Is it fair to say, your Honor, if it's

 4    Good Friday, that would be a day that would be off --

 5             MR. MOORE:  Good Friday is March 29, Judge.

 6             THE COURT:  So it's early like Passover.  It's March

 7    29.  So Easter Sunday is that Sunday.

 8             My usual practice on Good Friday, and I've been

 9    educated over the years by those who do observe it, people

10    usually tell me they can work until noon.

11             MR. MOORE:  That's the traditional point.

12             THE COURT:  That's what I've been told over the years.

13    If we can do those couple of hours, it's better for me, for

14    everybody, I think, to use every bit we can.  I would say we

15    stop at noon on the 29th.  So that's a week that is cut off.

16    Then I am going to look for a moment in April and just see if I

17    have speaking stuff.  Maybe I don't.  Just as it turns out --

18    Florida.  Yes.  I do have a speaking engagement that will take

19    me away on April 11 and 12, if we are still on trial.  April 11

20    and 12.  That's the only one I see for that period of time.

21    Those are the only days I wouldn't be sitting.

22             MR. MOORE:  So the 25th and 26th, half day the 29th,

23    and then April 11th and 12th.

24             THE COURT:  Right.  If we are still on.

25             MR. MOORE:  Otherwise, you're five days a week?

CCJMFLOC

1          THE COURT:  I am.  It's going to be hard.  Nonjury.

2     I'm supposed to start the next six-week trial May 6.  That's

3     the point.  So it's very tight to go from one six-week one to

4     one six-week one if that's what it's going to be.

5          MR. MOORE:  Maybe we will finish earlier.

6          THE COURT:  Not if there is a hundred people.

7          MR. MOORE:  There won't be a hundred people.  You know

8     the process.

9          THE COURT:  We are talking about both sides.  I think

10    she meant a hundred, I was hoping, together total.  50, 50.  If

11    it came out that way, wouldn't be a big shock here.  I would

12    hope it wouldn't be that many.  I wonder how many witnesses we

13    had in the Ligon case just for a PI.  One borough with a few

14    stops.

15         MS. GROSSMAN:  Less than 30.  About 30 or less, in

16    that ballpark.

17         THE COURT:  That was just week and a half.

18         It wouldn't actually shock me that it would be three

19    times that, but we will see.

20         MR. MOORE:  It would shock me.

21         THE COURT:  If we ended up with 90 witnesses, that

22    would shock you?

23         MR. MOORE:  That would shock me.

24         THE COURT:  How many incidents are we putting on?

25    Including Downs, how many incidents are you going to describe?

CCJMFLOC

1    Are we up to eight?

2             MR. CHARNEY:  We have 13, some of whom were stopped

3    more than once.  Not all of them were stopped more than once.

4             THE COURT:  If you did all 13 of those people and then

5    there are two officers per, that would be 40 right there.

6             MS. GROSSMAN:  And I think we count that there are at

7    least 30 incidents that you are going to have testimony about.

8             THE COURT:  Right.  But in Ligon, for example, they

9    couldn't always identify any officers.

10            MR. MOORE:  That issue here as well, your Honor.

11            THE COURT:  That was one of the arguments there, is

12   that the whole thing was a problem because they couldn't pin

13   down the date and couldn't find the officers.  I heard only one

14   side of the stop, so I don't know.  But if there really are 13

15   incidents, my guess is, you're in the 40 witness range right

16   there.  And then there is the experts, there is, obviously, the

17   city's personnel.  Now, the plaintiff may have these police

18   officers who have come forward.  As I say, I'm easily at 50.

19            MR. MOORE:  I always underestimate.  My goal is always

20   try to simplify it.

21            THE COURT:  Mine, too.  But with 13 incidents, plus

22   with the people I just mentioned, we are already between 50 or

23   60 witnesses, I think.  We will see.  I would urge you to make

24   it as lean as you can.  This is a nonjury record.  It's going

25   to be very difficult to write the findings of fact.  It's

CCJMFLOC

1    really a terrible burden for the Court, yet another reason of

2    my disappointment in not having a jury trial, since I'm on the

3    record already.  I might as well stay on the record.

4           Is there anything further today?  Do we have another

5    date together?

6           MS. GROSSMAN:  Your Honor, the only thing I would say

7    is, I understand that the plaintiffs have a deadline of

8    December 31.  If they know as of tomorrow that these officer

9    witnesses are going to be called as witnesses, we would like to

10   know it sooner and not wait until December 31.

11          THE COURT:  I think that's fair.  If you make a

12   decision, I'll address Mr. Moore, but it's to all plaintiffs'

13   counsel.  If you make a decision and you know you are going to

14   call officer X, it's absolutely the right thing to do to tell

15   the city when you make that decision.

16          MR. MOORE:  The December 31 date applies to both

17   parties, right?

18          MS. GROSSMAN:  No.  Right now we are just learning --

19   this is about the plaintiff citizen witnesses.  We have not

20   even had the chance to figure out what kind of rebuttal

21   witnesses we are going to have to these officers and to Downs

22   and what we need to do --

23          MR. MOORE:  Setting those aside, you have had notice

24   of these other people.  So presumably --

25          THE COURT:  I'll have to handle that if and when it

CCJMFLOC

1     arises.  Again, Ms. Grossman has a point.  If these are new

2     people, there may be new rebuttal to it.  I don't know.  I'll

3     have to handle it as it arises.

4              MR. MOORE:  In my experience, Judge, if both sides are

5     cooperating, they are going through a process of notifying who

6     the witnesses are.

7              THE COURT:  For sure.  If Ms. Grossman knows about

8     somebody now that hasn't been mentioned, she should tell you.

9     I can only hold you to your own ethical obligations.  I won't

10    know.  I'm saying to both of you, if you decide you are calling

11    officer X tomorrow, you should let her know tomorrow.  There is

12    no way I can investigate behind that, but that should be your

13    obligation.  Same is true for Ms. Grossman.  If she knows of a

14    witness who has never been mentioned before that she is

15    definitely planning to call at trial, she should tell you, of

16    course.

17             Do we have a next date for any reason, for anything in

18    the courtroom?

19             MS. GROSSMAN:  We have the motion in limine

20    conference.

21             THE COURT:  I'll see you then.

22                              o0o

23

24

25