BELDOCK LEVINE & HOFFMAN LLP
99 PARK AVENUE
NEW YORK, N.Y. 10016-1503

ELLIOT L. HOFFMAN
MYRON BELDOCK
BRUCE E. TRAUNER•
PETER S. MATORIN
KATHERINE G. THOMPSON
CYNTHIA ROLLINGS
JONATHAN MOORE*Δ
KAREN L. DIPPOLD
JONATHAN K. POLLACK
HENRY A. DLUGACZ
STEPHEN J. BLUMERT◊

TEL: (212) 490-0400
FAX: (212) 557-0565
WEBSITE: blhny.com

LAWRENCE S. LEVINE (1934-2004)

COUNSEL
MARJORY D. FIELDS
JODY L. YETZER

REF:

WRITER'S DIRECT DIAL:

ALSO ADMITTED IN:
*CALIFORNIA
ΔILLINOIS
• FLORIDA
◊NEW JERSEY

January 29, 2013

**DIRECT CONTACT:**
212.277.5893
jborchetta@blhny.com

VIA E- MAIL (Gregory_Brazeal@nysd.uscourts.gov)
Hon. Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *Floyd et al. v. City of New York et al.*, 08 Civ. 01034

Dear Judge Scheindlin:

We write on behalf of Plaintiffs to raise certain discovery and evidentiary matters that we would like to address at the January 31, 2013 conference currently scheduled in this matter. Specifically, we respectfully seek: (1) clarification on whether Defendants must provide information concerning *unsubstantiated* Internal Affairs Bureau ("IAB") and Office of the Chief of Department ("OCD") investigations concerning alleged suspicionless stops; (2) an order requiring Defendants to produce a 30(b)(6) witness to testify at deposition regarding recent NYPD policy changes; and (3) permission to use designated deposition testimony of non-party witnesses in Plaintiffs' affirmative case.

Unsubstantiated IAB and OCD Investigations

At the trial of this action, Plaintiffs intend to demonstrate that the NYPD's own inadequate investigations of civilian complaints of improper stops-and-frisks by NYPD officers constitute deliberate indifference to likely constitutional violations and ratification of unconstitutional stops. At the January 4, 2013 conference, this Court ordered Defendants to provide, for each officer witness, disciplinary histories related to suspicionless stops or arrests or summonses that began as suspicionless stops, including IAB and OCD histories. Jan. 4 Hr'g Tr. At 17-19. While the Court limited the identification of CCRB investigations to those that were substantiated, it is not our understanding that the Court so limited IAB and OCD investigations. While the CCRB is

independent from the NYPD, and therefore unsubstantiated CCRB allegations are arguably less probative of Plaintiff's *Monell* claims, the manner in which IAB and OCD investigates allegations of suspicionless stops are centrally relevant to those claims.

For example, OCD often assigns investigations into allegedly unlawful stops to the supervisor of the subject officer, which is an inherent conflict, and the failure of supervisors to meaningfully investigate or substantiate the allegations related to suspicionless stops supports Plaintiffs' claim of both deliberate indifference and ratification of unconstitutional stops. We have asked Defendants to provide information about officer witnesses' unsubstantiated IAB and OCD investigations, but they refuse. We therefore respectfully ask for clarification on the Court's previous ruling (Jan. 4 Hr'g Tr. at 19:9-13), and for an order directing Defendants to inform us of any unsubstantiated IAB and OCD investigations related to suspicionless stops or arrests that began as suspicionless stops for any officer on Plaintiffs' draft initial witness list.

<u>30(b)(6) Deposition Notice Regarding NYPD Operations Order No. 52 and Related Policies</u>

On January 23, 2013, Plaintiffs served a notice of deposition on Defendants pursuant to Federal Rule of Civil Procedure 30(b)(6) seeking testimony about the NYPD's development and implementation of Operations Order 52 and three other recently enacted NYPD policies, all of which we submit are highly relevant to, *inter alia*, Plaintiffs' claim of a policy and/or practice of imposing quotas on officer stop-and-frisk activity. *See* Ex. A, annexed hereto. As the Court itself has noted, Operations Order 52, which directs that NYPD managers and supervisors "<u>can</u> and <u>must</u> set performance goals," is "direct evidence" of a centralized and deliberate NYPD policy of "establishing performance standards and demanding increased levels of stops and frisks" that has resulted in the unlawful stops of Plaintiff class members. *See* 5/16/2012 Op. & Ord., Dkt # 206, at 17-19.[1] Operations Order 52, and the other related policies listed in this discrete 30(b)(6) notice, all of which themselves cite to and/or are cited in Operations Order 52, are therefore centrally relevant to Plaintiffs' *Monell* claims in this case.

In addition, all of the NYPD policies about which Plaintiffs seek 30(b)(6) testimony were enacted in the fall of 2011, more than a year after the close of fact discovery in this case, and Defendants did not begin to produce documents related to these new policies until June of 2012, even though such documents were responsive to document requests which Plaintiffs served on Defendants in October and December 2008. In an effort to streamline pretrial discovery, Plaintiffs have thus far tried to use the recent police officer depositions to inquire about how these new policies and procedures have been implemented at the command level, but the deposed officers have either been entirely unfamiliar with these new policies or have offered extremely vague and conflicting testimony about how the policies actually work in practice.

[1] Indeed, according to an NYPD Lieutenant recently deposed in this action, Operations Order 52 requires managers to establish "a certain amount activity . . . that an officer should generate within a specific time frame." *See* Ex. B, annexed hereto, Korabel Dep. 145:10-146:15.

Defendants have not responded to our 30(b)(6) notice. Pursuant to the Federal Rules of Civil Procedure and the SDNY's Pilot Project for Case Management Techniques in Complex Civil Cases, we therefore respectfully request an order requiring Defendants to designate and produce an appropriate 30(b)(6) witness prior to trial.

Deposition Designations in Lieu of Live Testimony

In an effort to tailor the presentation of evidence at trial, and mindful of the judicial resources that will be expended, we would like to discuss with the Court the possibility of designating deposition testimony for certain witnesses in lieu of live testimony.

Federal Rule of Civil Procedure 32(a)(4)(E) permits the "use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used." We propose designating the deposition testimony of particular officers who either did not witness a challenged stop or whose testimony about a stop is not sought, such that credibility determinations – and therefore live testimony – are less important. For example and without limitation, Plaintiffs intend to elicit testimony from eight NYPD employees to establish certain of the citywide practices that we challenge as unconstitutional – such as supervision and discipline practices – but who are unrelated to a challenged stop. These witnesses are largely officers who stopped and frisked a comparably high number of pedestrians, and the supervisors of those officers. Though live testimony is always preferable, the testimony from these witnesses is not particularly dependent on a credibility assessment.

Plaintiffs bear a burden of demonstrating a citywide pattern and practice. It is anticipated that the *Floyd* trial will proceed for four-to-six weeks, and each side has so far identified more than eighty witnesses. Given that putting on these witnesses through deposition would save time and resources while permitting Plaintiffs to offer important evidence, and in light of the limited need for live testimony from them, we believe it would be appropriate under Rule 32(a)(4)(E) to permit Plaintiffs to offer them through deposition. *See* 7 James Wm. Moore et al., Moore's Fed. Practice - Civil § 32.28 (explaining that saving time in a lengthy trial has been a basis for permitting testimony through deposition under this rule).

Thank you for your consideration.

Respectfully submitted,

By: Jenn Rolnick Borchetta
Jonathan C. Moore
BELDOCK LEVINE & HOFFMAN LLP

Encl.

CC (*via email*):
Heidi Grossman
Brenda Cooke
Linda Donahue
Suzanna Publicker
Cecilia Silver
Judson Vickers
Joseph Marutollo
Morgan Kunz
Lisa Richardson

*Counsel to Defendants*