

| | | |
|---|---|---|
| MICHAEL A. CARDOZO<br>*Corporation Counsel* | **THE CITY OF NEW YORK**<br>LAW DEPARTMENT<br>**100 CHURCH STREET**<br>**NEW YORK, NY 10007** | HEIDI GROSSMAN<br>*Deputy Chief, Special Federal Litigation*<br>hgrossma@law.nyc.gov<br>(212) 788-0792 (tel)<br>(212) 788-9776 (fax) |

March 4, 2013

**BY E-MAIL**
The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

       Re:    Floyd et al., v. City of New York, et al., 08 Civ. 1034 (SAS)

Your Honor:

      Defendants submit this letter in response to plaintiffs' 2/28/13 letter, and in advance of the court conference scheduled on 3/5/13. In addition, defendants raise several additional issues.

      Plaintiffs complain that defendants have provided late notice of certain witnesses that defendants intend to call at trial, and ask that those witnesses be precluded. Plaintiffs' complaints should be rejected. Defendants have been required to engage in an inordinate amount of discovery in the past months, substantially impeding defendants' efforts to prepare for trial.[1] *See* Exhibit A (list itemizing defendants' burden associated with plaintiffs' recent discovery demands and new witnesses and Court rulings). Defendants have been severely prejudiced by these developments, and preclusion of defendants' witnesses would unfairly prevent defendants from mounting a defense. The Court has given plaintiffs great leeway in developing witnesses at

---

[1] Defendants have been doing their utmost to prepare for trial, a process that was interrupted by two major developments: (1) the Court's decision to hold a preliminary injunction hearing in Ligon; and (2) the Court's decision to permit plaintiffs to develop additional class-representative witnesses to present at trial. As a result of those decisions, defendants have been scrambling to prepare for the Floyd trial under enormous and often unfair pressure. Many of the ACCs assigned to Ligon are also assigned to Floyd, yet they had to devote their attention to the preliminary injunction hearing in Ligon while the Floyd plaintiffs' many counsel did not. At the same time, plaintiffs identified many new witnesses who complained about numerous stops. For each of these new witnesses, defendants had to locate records, identify, meet with, and prepare approximately 25 officers for deposition, while engaging in motion practice to preclude even more identified witnesses.

the last minute, and defendants respectfully request that they be granted the same leeway.

**1.      Plaintiffs' Motions To Exclude Certain Witnesses:**

Plaintiffs seek to preclude defendants from calling "new" witnesses at trial because of late notice and plaintiffs' lack time to depose these witnesses before trial.[2] However, many of the witnesses have been known to plaintiffs for years, and others are necessitated by witnesses recently identified by plaintiffs and by various recent court rulings. Plaintiffs delayed until 12/31/12, to identify Pedro Serrano, but nevertheless seek to preclude the testimony of defendants' witnesses Lt. Barrett and Sgt. Silva, offered to rebut "quota" allegations made by Serrano. Sometime prior to 12/31/12, Serrano provided plaintiffs with audio recordings Serrano made during two roll calls which he attended in the 40th Precinct; Lt. Barrett and Sgt. Silva are two voices heard on these unauthenticated recordings. While plaintiffs claimed to have produced these recordings to defendants on 12/31/12, they were only provided to defendants weeks later, after defendants' counsel requested them. Only then could defendants identify voices on the recordings and witnesses defendants may call in their defense. On 2/19/13, plaintiffs included the recordings on their JPTO exhibit list, evidencing intent to rely on the unauthenticated recordings at trial. A week later defendants identified Lt. Barrett and Sgt. Silva as a potential trial witness. Accordingly, plaintiffs, who have had custody of the recordings since at least 12/31/12, have had sufficient notice of these potential witnesses, and preclusion is unwarranted.

Plaintiffs' further blatantly mischaracterize the 24 individuals identified in defendants' supplemental Rule 26 disclosures and added to defendants' JPTO witness list provided on 2/27/13, as "new" and "previously unidentified", and falsely claim that "most had never before been disclosed to plaintiffs or identified in exchanged documents." *See* Pl. 2/28/13 Ltr. at 2. In

fact, *16 of the 24 individuals were known to plaintiffs prior to 2/27/13*: (1) D.I. Byrne and Lt. Sallie were identified by P.O. Blakely during his deposition on 8/25/10, and in defendants' disclosures (NYC_2_00020140 – NYC_2_00020228); (2) Lt. Weiss was identified by plaintiffs' disclosures (PL000073-PL000074), and the Affidavit of Adrian Schoolcraft dated 12/16/10 (submitted by plaintiffs); (3) Lt. Mohan was identified by plaintiffs' disclosures (PL001201-PL001204), which were included on plaintiffs' JPTO exhibit list (Exhibit # 257) on 2/19/13; (4) Lt. Delafuente and Sgt. Huffman were listed on plaintiffs' witness list, dated 2/19/13; (5) Det. McMahon was identified in documents related to the Floyd incident burglary pattern that were produced by defendants on 10/25/12; (6) Lt. Mulet provided an affidavit in support of Defendants' Opposition to Plaintiffs' Rule 60(b) Motion on 10/12/11; (7) Insp. Catalina, Insp. Lehr, Chief McCarthy, Dep. Comm. O'Keefe, and Insp. Sweet testified at the Ligon preliminary injunction hearing in Oct. 2012; (8) Lt. Barrett and Sgt. Silva's voices are on audio recordings of 40th Precinct roll calls (PL001206) made by plaintiffs' witness P.O. Serrano, as discussed *supra*; and (9) John P. Beirne, Deputy Commissioner of Labor Relations, is the Fed. R. Civ. P. 30(b)(6) witness plaintiffs have demanded regarding Quest for Excellence. Of these witnesses, plaintiffs seek preclusion of Insp. Catalina, Insp. Lehr, Chief McCarthy, Dep. Comm. O'Keefe, Insp. Sweet, Lt. Mulet, Lt. Barrett, and Sgt. Silva on the ground that plaintiffs lacked notice of these individuals. Plaintiffs were clearly on notice of these individuals, but preclusion is further unwarranted for the reasons set forth below.

Plaintiffs' claim that Lt. Mulet should be precluded is belied by their own behavior in taking the position that defendants were on notice of witnesses on whom plaintiffs intend to rely (i.e. Eli Silverman) based on their identification in declarations or documents appended to

---

[2] Defendants note that the Federal Rules of Civil Procedure limit the number of depositions to 10 witnesses per side without Court order, so it is contemplated that parties will call witnesses at trial that the parties have not had an

3

plaintiffs' opposition to defendants' summary judgment motion.

Insp. Catalina, Insp. Lehr, Chief McCarthy, Dep. Comm. O'Keefe, and Insp. Sweet each testified in the Ligon preliminary injunction hearing, which plaintiffs attended. In fact, plaintiffs added Chief Hall, and Chief Shea – two other Ligon witnesses – to their own liability witness list. This Court ordered the Ligon and Floyd counsel to coordinate their presentation of their case for the remedial phase of the trial. *See, e.g.*, 1/31/13 Tr., 25:14-21. Further, counsel for the plaintiffs in Ligon have listed several of these same defendant witnesses for the remedies phase of this trial. (2/2/13 letter from NYCLU, Exhibit B). Given the overlap of evidence on liability and remedy, these witnesses should not be precluded.

The remaining 8 individuals identified by defendants on 2/27/13 are also not accurately characterized as "new". In fact, 5 of these 8 (Asst. Chief Secreto (PBQS), Asst. Chief Morris (PBMN), D.I. Holmes (81st Precinct,) D.I. Williams (28th Precinct), D.I. Green (43rd Precinct)) are current Commanding Officers of commands who have succeeded retired members of service deposed by plaintiffs during fact discovery. Plaintiffs seek injunctive relief and these witnesses will testify about current practices. Plaintiffs have been on notice of the sum and substance of the command structure and the role Borough Commanders and Commanding Officers play in the NYPD, so to claim lack of notice is disingenuous. In fact, where plaintiffs had an interest in obtaining updated information, i.e. Quest for Excellence, the plaintiffs sought follow-up discovery and demanded a testifying witness. That plaintiffs showed no interest in doing so here does not support their assertion that they had no notice. Certainly, witnesses who were deposed years ago who have not retired are not precluded from testifying about current practices. To prevent a successor to a deposed witness from testifying amounts to form over substance.

As to Insp. Pfister, whom plaintiffs seek to preclude, on 1/4/13 this Court granted

opportunity to depose.

defendants' *in limine* motion seeking to preclude evidence and testimony regarding unsubstantiated OCD and IAB investigations concerning suspicionless stops. On 1/31/13, upon plaintiffs' application, this Court reversed its prior decision and directed defendants' to produce numerous investigative files. At that time, defendants stated that defendants should be permitted to call an appropriate witness concerning this issue and the Court agreed. *See* 1/31/13 Tr., 59:22-60:5. Insp. Pfister is a witness who is necessitated by the recent and ongoing discovery concerning OCD and IAB files and must not be precluded.

2.  **Defendants Expert Witness' Testimony Should Not Be Limited To Rebuttal**

Plaintiffs delayed until 2/7/13 to identify their remedies expert, and now, incredibly, they seek to preclude defendants from calling an expert to meet that witness. The Court specifically permitted defendants extra time to disclose their witnesses, noting in sum and substance that defendants were not bound by the same time frame because plaintiffs were so delayed. Notwithstanding, prior to the consolidation of the remedies phases of the Floyd and Ligon cases, plaintiffs only identified Lou Reiter as their police practices expert on the subject of training, supervision, discipline and monitoring. It was our understanding that Reiter was plaintiffs' police practices expert for both liability and remedy aspects of the case. Plaintiffs' identification of Dr. Samuel Walker as an expert on "remedy"[3] is an attempt to bolster the testimony of Reiter and is an obvious end-run around Fed. R. Civ. P 26(a)(2), which should not be permitted. Now that the procedural posture of the case has changed and the Court has consolidated the remedy phase of Floyd and Ligon, we should not be precluded from identifying a testifying expert on the

---

[3] Plaintiffs have only identified that Walker will testify regarding the "contours, breadth, and scope of the remedial measures necessary to cure the pattern and practice of suspicionless and racially discriminatory stops-and-frisks on the part of Defendant City of New York." *See* Plaintiffs' Proposed JPTO dated 2/19/13. Defendants do not know on which specific subjects Walker will testify and whether those subjects with be duplicative of Reiter's testimony. To the extent that Walker's testimony will cover the same topics that Reiter will discuss, Defendants should not be precluded from countering Walker's testimony. If Reiter's testimony is the same as Walker's, Walker's testimony should be precluded as cumulative and duplicative. However, if Walker will expand upon Reiter's testimony or

areas of police practices. Therefore, defendants do not waive their right to call James K. Stewart as a police practices expert in the remedial phase of the litigation.

Further, defendants submit that plaintiffs' belated identification of Walker as an expert is prejudicial to defendants, and plaintiffs should be precluded from offering his testimony at trial. Plaintiffs have not provided any reason for waiting until Feb. 2013 to identify this expert, when they knew for over a month that their request to bifurcate the trial had been denied. Moreover, plaintiffs' late disclosure of Walker failed to comply with Rule 26(a)(2) as plaintiffs have failed to provide a written report setting forth Walker's opinions and the basis and reasons for them, the facts or data considered or relied upon, a list of other cases in which he testified as an expert, and/or a statement of his compensation in this matter. *See* Fed. R. Civ. P. 26(a)(2).

**3.  Deposition Designation:**

Plaintiffs did not repeatedly seek to discuss the issue of designated deposition testimony and plaintiffs misstate a discussion with defense counsel regarding deposition designation in lieu of live testimony. Defense counsel informed plaintiffs' counsel that some of the witnesses are retired and asked if plaintiffs were amenable to designating deposition testimony in lieu of live testimony. Plaintiffs failed to provide defendants with designated testimony for the retired officers. While defendants remain open to designated deposition testimony in lieu of live testimony, defendants need to review the proposed designations and consider proposed counter-designations. Given trial commences on 3/18/13, defendants cannot guarantee they will be able to respond by the date they propose. Since plaintiffs have listed retired Borough Commander Raymond Diaz as the 15th witness they intend to call at trial, defendants will make best efforts to review any designated testimony by 03/12/13. As to the remaining witnesses, defendants propose staggering their responses based on the order these witnesses will be called at trial.

---

provide different opinions on these same topics, defendants should be permitted to counter these new opinions.

4.   **Modification of the Protective Order:**

Defendants believe that the issue of removing the confidentiality designation should be dealt with on case by case basis. Plaintiffs should produce a list of all confidential material that they seek to introduce at trial, and defendants will then state if they agree or object.

5.   **Trial Date, Opening Statements, and Witness Order**

Defendants understand that the trial is set for 3/18/13. Defendants also request an opening statement and seek permission to split the opening among two Assistant Corporation Counsel. Defendants ask that opening statements be limited to one hour and thirty minutes for each side. While defendants hope that they will not have to call a witness more than once, given that plaintiffs are calling defendants' witnesses on their case in chief, defendants cannot anticipate when it may be necessary to recall a witness on defendants' case in chief or reserve testimony for defendants' case in chief. As such, defendants reserve the right to call witnesses in their own case on a case by case basis and reserve their direct examination of a witness until their case in chief. Defendants are mindful that this is a bench trial and will respect the Court's time.

6.   **NYCLU Declaration**

Plaintiffs cannot produce an affidavit establishing that the NYCLU mailed a copy of their report to the NYPD, despite representations during the 1/4/13 and 1/31/13 conferences to the contrary. Thus, they cannot establish that the NYPD had notice of this report and it is not relevant to plaintiffs' deliberate indifference claim. Plaintiffs' attempt to use a newspaper article to establish the truth of their assertion that the report was mailed to the NYPD is plainly not allowed by FRE 802, nor does the article indicate that the NYPD received a copy of the report.

7.   **Incorporation of *Ligon* Record**

Defendants oppose incorporation of the Ligon case record into this matter. Some of the

Ligon evidence is irrelevant and inadmissible, and its inclusion could complicate the presentation of evidence in Floyd and prejudice defendants.[4] Further, as Ligon dealt with different instances of alleged suspcionless stops than are being tried in Floyd, it would be prejudicial to defendants, at this late stage, to add the 11 instances that were testified about in the Ligon hearing to Floyd.

**8.     The Testimony of Chief Esposito**

Plaintiffs intend to call Chief Esposito as their 13th witness, which will likely occur during the first week of trial. Since Chief Esposito is retiring at the end of March 2013, defendants seek to defer his testimony until after 4/2/13, which would accommodate Chief Esposito's schedule as he transitions out of his position by ensuring the smooth running of the duties of the Office of Chief of Department. He is available to testify after he leaves his post.

**9.     Plaintiffs' Requested Relief Concerning the Joint Pre-Trial Order ("JPTO")[5]**

Defendants submit that inclusion of the motion *in limine* rulings in Section 14 of the JPTO will aid the Court and that plaintiffs are free to submit counter statements. Defendants similarly propose that plaintiffs submit counter-proposals for Section 2 and Section 7, and the parties can meet and confer and if the parties cannot agree, each party will submit its own proposal for Court consideration. Defendants have no objection to having the final JPTO due to the Court on 3/11/13; however, defendants reserve the right to make adjustments prior to the JPTO's submission to the Court.

---

[4] For example, hearsay testimony by plaintiff witnesses admitted in Ligon concerning experiences of their friends should not be admitted in Floyd, and this Court granted defendants' motion *in limine* excluding such evidence.
[5] Defendants deny that plaintiffs have made repeated requests to meet and confer and/or that defendants have ignored plaintiffs' requests to meet-and-confer regarding the JPTO, which was sent to Plaintiffs' counsel on 2/27/13.

Defendants thank the Court for its time and consideration of this request.

Respectfully submitted,

*/s/ Heidi Grossman*

Heidi Grossman
Deputy Chief, Special Federal
Litigation Division

cc: Attorney for Plaintiffs, (via email):
Jenn Rolnick Borchetta, Esq.
Bruce Corey, Esq.
Darius Charney, Esq.
Eric Hellerman, Esq.
Gretchen Hoff Varner, Esq.
Kasey Martini, Esq.
Jonathan Moore, Esq.
Sunita Patel, Esq.