```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

DAVID FLOYD, et al.,                    :

                      Plaintiffs,       :    08 Civ. 1034 (SAS)(HBP)

    -against-                           :    OPINION
                                             AND ORDER
THE CITY OF NEW YORK, et al.,           :

                      Defendants.       :

-----------------------------------X
```

          PITMAN, United States Magistrate Judge:


          The Honorable Shira A. Scheindlin, United States

District Judge, has referred this matter to me to address the

admissibility of testimony from defendants' proposed remedies

expert, Mr. James K. Stewart.  For the reasons set forth below, I

find that Mr. Stewart's opinions, as set forth in his report

dated April 15, 2013, are, in large part, inadmissible.

          The plaintiffs seek redress for defendants' allegedly

unconstitutional policy of conducting baseless stops and frisks.

The specific nature of plaintiffs' allegations and defendants'

responses are set forth in detail in Judge Scheindlin's decision

granting in part and denying in part defendants' motion for

summary judgment.  Floyd v. City of New York, 813 F. Supp. 2d 417

(S.D.N.Y. 2011).

The trial of this matter is currently proceeding before Judge Scheindlin.  For reasons unrelated to the present dispute, Judge Scheindlin has previously precluded defendants from offering expert testimony on the issue of liability and has limited them to an expert on the issue of what remedies would be appropriate if the plaintiffs succeed in establishing liability.  On or about March 5, 2013, plaintiffs served the report of their remedies expert, Dr. Samuel Walker.  Defendants served the report of their remedies expert, Mr. Stewart, on or about April 15, 2013.  By letter dated April 28, 2013, plaintiffs first sought to preclude Mr. Stewart's testimony, arguing in principal part that Mr. Stewart's opinions relate to liability and that defendants are attempting to evade the preclusion order that Judge Scheindlin previously entered.  Defendants, by letter dated May 1, 2013, argue in principal part that Mr. Stewart's report is nothing more than a point-by-point rebuttal of Dr. Walker's report.[1]

In his report, plaintiffs' expert sets forth in detail the steps he believes are appropriate to remedy the stop and frisk practices that plaintiffs claim violate the Constitution.

---

[1]On May 3, 2013, I offered counsel the opportunity to present oral argument concerning the dispute.  Both sides declined.

Specifically, plaintiffs' expert suggests a comprehensive reme-
dial program that includes formal guidelines for stops and
frisks, a performance assessment system to measure compliance
with those guidelines, enhanced training concerning the guide-
lines (both for new recruits and ongoing training for officers in
the field), improved reporting of stops and frisks, close daily
supervision of patrol officers by sergeants, close supervision of
sergeants' supervisory activity, systematic review of stop and
frisk activities, an internal investigatory and disciplinary
process and a procedure for citizens to register complaints.  In
addition, plaintiffs' expert recommends that the court appoint a
monitor to ensure that the foregoing remedial measures are
properly implemented.

        Defendants' expert does not claim that the plaintiffs'
suggestions lack merit, nor does he suggest alternative remedial
measures.  Rather, defendants' expert contends that the New York
City Police Department already utilizes most of the practices
suggested by plaintiffs' expert and that the practices in place
are sufficient to ensure compliance with the Constitutional
limitations on stops and frisks.  Defendants' expert appears to
be suggesting that there is no need for any remedial steps.

        Judge Scheindlin would reach the issue of an appropri-
ate remedy only if she found that New York City was engaging in a

3

practice of violating the Constitution.  If she did not make that

initial finding of liability, there would be no need to address a

remedy.  Yet, defendants' expert opines that the Police Depart-

ment's existing practices are sufficient to ensure that the

constitutional limitations on stops and frisks are observed.  If

defendants' expert were credited, the case would end with the

irreconcilable findings that the City of New York had a custom or

policy of violating the Constitution but, notwithstanding such

custom or policy, no remedy is necessary because existing moni-

toring and training programs are sufficient.

        The true nature of defendants' proposed expert emerges

when it is recalled that plaintiffs are asserting claims against

the City of New York pursuant to Monell v. New York City Dep't of

Soc. Servs., 436 U.S. 658 (1978).  The parties' Joint Pre-Trial

Order (Docket Item 272) frames the Monell issue as follows:

> Plaintiffs further contend that the suspicionless
> and race-based stops-and-frisks of the named Plaintiffs
> and Plaintiff class members are the result of policies
> and/or widespread customs and practices of the City of
> New York that encourage, sanction, and/or fail to
> prevent such unconstitutional stops-and-frisks.  These
> practices include but are not limited to:
>
> *       *       *
>
> v.    A deliberately indifferent failure to adequately
>       train, supervise, monitor, and discipline officers
>       to ensure that they conduct stops-and-frisks in
>       compliance with the Constitution.

(Joint Pre-Trial Order (Docket Item 272) at 7).[2]  Rather than addressing what remedies would be appropriate in the event plaintiffs establish liability, defendants' expert is squarely addressing the merits of the Monell claim, i.e., the adequacy of existing training and monitoring protocols.  Because (1) Judge Scheindlin has already precluded defendants from calling a liability expert and (2) defendants' remedies expert is really addressing liability issues, defendants' remedies expert is precluded except as set forth in the following two paragraphs.

Plaintiffs' expert opines that implementation of his proposed training and monitoring programs will not result in an increase in crime or otherwise compromise public safety.  In support of this conclusion, he relies on the experiences of the police departments in other cities that have been subject to consent decrees or similar court orders.  Defendants' expert takes issue with plaintiffs' expert's interpretation of the experiences in these other cities.  Testimony concerning the relevance and meaning of the experiences of other cities is appropriate rebuttal.

---

[2]Although the statement quoted in the text is taken from the section of the Pre-Trial Order entitled "Plaintiffs' Contentions," defendants frame the issue in virtually identical language (Pretrial Order (Docket Item 272) at 8-9).

Finally, defendants' expert seeks to offer an opinion on whether the City of New York has complied with the settlement agreement in <u>Daniels v. City of New York</u>, 99 Civ. 1695 (SAS). Plaintiffs' expert states that he believes the evidence will establish that the City did not comply with the settlement agreement in <u>Daniels</u>, and he relies on that belief to justify his opinion that a court-appointed monitor is necessary to ensure that remedial steps are properly implemented.  Defendants' expert, on the other hand, bluntly opines that the City has complied with the settlement agreement in <u>Daniels</u>.  Whether the City has complied with the settlement agreement in <u>Daniels</u> is not an appropriate subject for either expert to address.  Both experts have training and expertise in the area of police practices and criminal justice.  Neither is an attorney and neither appears to have any training or experience that would enable them to offer a helpful opinion on the issue of compliance with the <u>Daniels</u> settlement agreement.  Plaintiffs' expert should be permitted to testify as to his belief concerning the City's compliance solely to explain his conclusion that a court-appointed monitor is necessary.  His testimony should not be admitted to establish that the City did actually violate the <u>Daniels</u> settlement agreement.  Similarly, if defendants' expert wishes to offer his belief that the <u>Daniels</u> settlement agreement

was not violated as a basis for the conclusion that a court-appointed monitor is not necessary, he may do so.

Accordingly, defendants' expert is precluded from testifying to the opinions set forth in his report dated April 15, 2013 except as follows:  (1) defendants' expert may testify to the opinions expressed at pages 26-31 of his report; (2) defendants' expert may testify concerning his belief regarding New York City's compliance with the Daniels settlement agreement to the extent that belief is a predicate for his opinion concerning the need for a court-appointed monitor.[3]

Dated:  New York, New York
        May 6, 2013

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel

_____

[3]Although plaintiffs have raised other arguments in support of their application to preclude, I do not address them because it is not necessary to do so.

7