# centerforconstitutionalrights
## on the front lines for social justice

July 10, 2013

**Via Electronic Mail**
Hon. Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

*The Clerk of the Court is directed to docket this letter and for ~~~ So Ordered.* [handwritten signature] 7/12/13

Re: *Floyd, et al. v. The City of New York, et al.,*
08 Civ. 01034 (SAS)(HBP)

Dear Judge Scheindlin:

Plaintiffs write in response to the Court's request for letters from the parties explaining the effect, if any, of New York City Council bill Int. No. 1079's creation of an inspector general ("IG") for the New York Police Department ("NYPD") on the remedies sought in this action.

If the IG becomes a reality, it would in no way diminish the need for the remedies and remedial process sought by Plaintiffs, all of which are necessary to redress and prevent the NYPD's unconstitutional stop-and-frisk policies and practices. The IG contemplated by Int. No. 1079 would be appointed by and serve at the pleasure of the Commissioner of the City Department of Investigation, *see* Int. No. 1079 §1(c)(2), who is appointed by the Mayor, and would be under no mandate to evaluate or report on the NYPD's stop-and-frisk policies and practices. *Id.* §1(c)(1). Moreover, even if the IG were to review the NYPD's stop-and-frisk policies and practices, the IG's powers would be limited to evaluating, reporting on, and making recommendations (to the Mayor and Police Commissioner but not the Court) untethered by and without regard to this Court's findings, requests or specific concerns. The IG would have no ability, and Int. No 1079 contains no mechanism, to require implementation of its recommendations. *Id.* §1(c)(1), (d)(2)-(3).

In contrast, as set forth in our March 4, 2013 remedies brief, Plaintiffs seek a time-limited Court-appointed monitor who would play a complementary but distinct role to the IG: overseeing and assisting with the implementation and, in certain instances, the development of remedies through a Joint Remedial Process, ordered by the Court, all of which will relate specifically to the NYPD's stop-and-frisk practices, and to evaluate and report directly to the Court and the parties on the City's compliance with those remedies. *See* Dkt #268 at 20-22. Only the Court and its agents—such as the monitor sought by Plaintiffs—would have the power to mandate changes to the NYPD's stop-and-frisk practices ordered by this Court.[1]

The primary purpose of the IG pursuant to Int. No. 1079, similar to other inspector generals, independent police auditors, and analogous municipal civilian police oversight entities around the country, is to provide independent review of and public reporting on police

---

[1] If in the future the IG caused significant changes to the NYPD's stop-and-frisk policies and practices, the City would be free to seek relief from the Court's remedial orders. *See* Fed. R. Civ. P. 60(b)(5); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992). But this mere contingency cannot replace the Court's duty to remediate ongoing harms *today*.

666 broadway, 7 fl, new york, ny 10012
t 212 614 6489  email development@CCRjustice.org
www.CCRjustice.org

department policies and procedures. *See* Samuel Walker, *The New World of Police Accountability* (2001), at 135-163 (discussing the history, development and role of city agencies or offices functioning to review and audit police department policies and procedures). While this is an important step towards increasing the NYPD's long term public accountability and transparency, it would not and could not ensure the implementation of the injunctive remedies in this case. The bill requires the IG to rely on the Mayor and Police Commissioner – who are confined and motivated by political priorities and, as demonstrated at trial, have been historically unwilling to acknowledge or address widespread unconstitutional behavior by NYPD officers — to agree to implement any of the reforms it recommends.

Thus, as the U.S. Department of Justice ("DOJ") noted in its Statement of Interest, it is not uncommon for federal courts to appoint independent monitors to enforce equitable remedies against police departments that are already subject to oversight from municipal civilian oversight agencies. *See* Dkt# 365, at 17-20. Similarly, if the Court grants Plaintiffs' request for the appointment of a monitor, the NYPD will join several other large municipal police departments around the country whose policies and practices were in recent years subject to the oversight of both court-appointed monitors *and* already-existing inspector generals or their functional equivalents. *E.g.*, compare PTE 582, at §4(A) (Consent Decree, Class Certification and Settlement Agreement in *Bailey v. City of Philadelphia*, 10-CV-5952, Dkt#16 (E.D. Pa. June 21, 2011)) (appointing court monitor to, as Plaintiffs request here, oversee implementation of court-ordered changes to Philadelphia Police Department's stop-and-frisk practices, to conduct independent reviews of that Department's stop-and-frisk practices, and to recommend additional remedial measures), *with* City of Philadelphia, Exec. Order No. 8-93, §4(b)-(c) (1994), amended copy available at http://www.phila.gov/pac/PDF/ Exec_Order_893.pdf (creating Police Advisory Commission with authority to study broad Department-related issues of concern to the public, and, based on the results of such studies, to make recommendations to the police commissioner); *compare* Consent Decree in *United States v. City of Los Angeles*, 00-CV-11769 (C.D. Cal. June 15, 2001), available at http://www.justice.gov/crt/about/spl/documents/laconsent.php (appointing court monitor to oversee implementation of remedial measures in DOJ suit against Los Angeles Police Department), *with* Los Angeles City Charter, Art. V, §573(c), available at http://www.amlegal.com/nxt/gateway.dll/California/laac/administrativecode?f=templates$fn=default.htm$3.0$vid=amlegal:losangeles_ca_mc (establishing Office of the Inspector General for the LAPD in 1996 with "the power and duty to . . . initiate any investigation or audit of the Police Department. . . ."); *compare* PTE 577, at §XIX (Consent Decree in *United States v. City of New Orleans*, 12-CV-1924, Dkt# 159-1 (E.D. La. Jan. 11, 2013)) (appointing court monitor to oversee implementation of remedies in DOJ suit against New Orleans Police Department ("NOPD")), *with* Code of Ordinances of the City of New Orleans, Chapter 2, Section 2-1121 (2009), available at http://www.nolaoig.org/uploads/File/ Policies/IPM%20%202-1121.pdf (creating Office of Independent Police Monitor within city Inspector General's office to review and monitor certain mandated issues within the NOPD and conduct investigations and report systemic problems publically).[2]

---

[2] *Compare also* District of Columbia, "Office of Police Complaints, Policy Recommendations" official website, available at http://policecomplaints.dc.gov/page/policy-recommendations, *with* Memorandum of Agreement between Washington, D.C. Metropolitan Police Department and DOJ, available at http://www.justice.gov/crt/about/spl/documents/dcmoa.php#_1_17 (approving

In addition, nothing in Int. No. 1079 in any way obviates the need for the Joint Remedial Process sought by Plaintiffs. *See* Dkt #268 at 8-16. There is no language in the bill requiring the IG to obtain input from relevant stakeholders or community groups about potential reforms to the NYPD's stop-and-frisk policies or practices or to factor such input into its reports and recommendations. As Professor Walker testified at trial, such input is an effective way to build public support for the Court-ordered remedies in this case and rebuild community confidence in the NYPD's stop-and-frisk practices, *see* Trial Tr. at 7520-23. Thus, not surprisingly, community input has been explicitly incorporated into court-approved remedies in recent police pattern-and-practice lawsuits around the country, *see* Dkt # 268 at 13-15, even in jurisdictions with existing municipal police oversight entities analogous to an inspector general. *See e.g.,* PTE 577, at 60-63 (Consent Decree in *United States v. City of New Orleans*); *Melendres v. Arpaio*, PHX-CV-07-2513 (D.Az. June 13, 2013), Dkt#580-04, at §XI ("Community Engagement" section included within Draft Agreement between DOJ and Maricopa County).

In sum, the roles of the IG, a court-appointed monitor, and the Joint Remedial Process are distinct and would each serve as complementary and necessary pieces of a comprehensive reform process and independent oversight and accountability system for the NYPD.[3] In the future, similar to the way DOJ consent decrees provide, when the IG and court monitor are hired or appointed, there may be a need to specify mechanisms for information-sharing and coordination of efforts, *Accord* PTE 577, at ¶¶440-443; Consent Decree in *United States v. City of Los Angeles*, 00-cv-11769, at 65-71 (C.D.Cal. June 15, 2001). At that time, Plaintiffs can provide the Court with a sample order with such provisions after consulting with the court monitor, Defendants and the IG.

Thank you for your time and consideration.

---

court monitor to oversee implementation of judicially imposed reforms to police department when the Department was already under the oversight authority of an office similar to the IG with the role of reviewing, studying and making recommendations to police commissioners for needed reforms); *compare* Court-approved settlement agreement in *Allen v. City of Oakland*, 00-CV-4599 (N.D.Cal. Mar. 14, 2003) (same), *with* City of Oakland "Citizens' Police Review Board (CPRB)," official website, available at http://www2.oaklandnet.com/Government/o/CityAdministration/d/CPRB/index.htm. Additionally, the New York City Fire Department's court-ordered reforms to its racially discriminatory hiring practices are currently overseen by a court-appointed monitor, even though the FDNY has an inspector general appointed by the Commissioner of the City Department of Investigation, *see* www.nyc.gov/html/doi/html/contact/inspectors.shtml; N.Y. City Charter §§ 803, 807, 830, 831.

[3] Given the complicated nature of the court-appointed monitor's role, Plaintiffs seek an opportunity to provide a proposed order to the Court outlining its functions, responsibilities and tasks in greater detail if and when the Court orders the appointment of a monitor. Due to the page limitations in the remedy and post-trial briefs and the uncertain scope of the Court's liability determination, we have only provided a summary of the roles and duties of a court monitor.

Respectfully submitted,

Sunita Patel

cc: All Counsel (*via email*)