## BELDOCK LEVINE & HOFFMAN LLP
### 99 PARK AVENUE
NEW YORK, N.Y. 10016-1503

ELLIOT L. HOFFMAN
MYRON BELDOCK
BRUCE E. TRAUNER*
PETER S. MATORIN
KATHERINE G. THOMPSON
CYNTHIA ROLLINGS
JONATHAN MOORE*△
KAREN L. DIPPOLD
JONATHAN K. POLLACK
HENRY A. DLUGACZ
STEPHEN J. BLUMERT◇

TEL: (212) 490-0400
FAX: (212) 557-0565
WEBSITE: blhny.com

**DIRECT CONTACT:**
212.277.5893
jborchetta@blhny.com

LAWRENCE S. LEVINE (1934-2004)

COUNSEL
MARJORY D. FIELDS
JODY L. YETZER

REF:

WRITER'S DIRECT DIAL

ALSO ADMITTED IN:
*CALIFORNIA
△ILLINOIS
• FLORIDA
◇NEW JERSEY

September 6, 2013

VIA ECF
Hon. Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *Floyd et al. v. City of New York*, 08 Civ. 01034

Dear Judge Scheindlin:

We write on behalf of Plaintiffs in opposition to the August 27, 2013 motion by Defendant City of New York (the "City") seeking to stay this Court's Opinion and Order of August 12, 2013 regarding remedies, Dkt. # 372 ("Remedies Order"). The City asks the Court to stay the Remedies Order based on arguments devoid of factual support that assert speculative harms, imaginary threats to public safety, and unspecified errors of law. The City has failed to meet its burden of establishing entitlement to a stay. We respectfully submit that this Court should deny the City's motion.

1. **The City's Burden**

A party seeking to stay an order pending appeal bears the burden of demonstrating that a stay should issue. *Nken v. Holder*, 556 U.S. 418, 434-434 (2009). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 434 (citation and quotation omitted). In

BELDOCK LEVINE & HOFFMAN LLP

determining whether to grant a stay, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426, 434 (citation and quotation omitted). "[T]he movant's burden of establishing a favorable balance of these factors is a heavy one and more commonly stay requests will be denied." *Merck Eprova AG v. Gnosis S.P.A.*, No. 07 Civ. 5898 (RJS), 2013 U.S. Dist. LEXIS 49798, * 3 (S.D.N.Y. Mar. 7, 2013) (quotation omitted) (*citing Optimum Shipping & Trading, S.A. v. Prestige Marine Services Pte. Ltd.*, 613 F. Supp. 2d 502, 503 (S.D.N.Y. 2009)). "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434.

## 2. The Remedies Order is Not Now Appealable

The Remedies Order is not yet ripe for appeal, which undercuts both the likelihood of appellate success and the specious contention that the City faces irreparable harm. "An order adjudging liability but leaving the quantum or relief still to be determined has been a classic example of non-finality and non-appealability from the time of Chief Justice Marshall to our own, . . . although in all such cases, as here, this subjects the defendant to further proceedings in the court of first instance that will have been uncalled for if the court's determination of liability is ultimately found to be wrong." *Taylor v. Brd of Ed.*, 288 F.2d 600, 602 (2d Cir. 1961). "[J]urisdiction is lacking when important issues regarding the nature and extent of the relief to be afforded still remain unresolved and are dependent on the particular circumstances of the case as it would develop in the proceedings to the entry of the order." *Groseclose v. Dutton*, 788 F.2d 356, 360 (6th Cir. 1986) (explaining *Hoots v. Commonwealth of Pennsylvania*, 587 F.2d 1340 (3d Cir. 1978), and *Taylor*).

BELDOCK LEVINE & HOFFMAN LLP

The Remedies Order commands two categories of next steps in the development of remedies. First, the parties and the Independent Monitor are to propose reforms that will be "submitted to the Court as soon as practicable, and implemented when they are approved." Remedies Order at 14 (the "Immediate Reforms"). Second, the parties are to supplement the Immediate Reforms by participating in a facilitated process allowing public comment, and the proposed reforms resulting from that process will then be implemented "once approved by the Court." Remedies Order at 30-31. The Remedies Order thus currently compels only the participation in further proceedings to develop remedies. As such, it is not yet ripe for appeal.

### 3. The City has Failed to Show Likely Success on the Merits

The City's summary assertion that this Court erred in finding the City liable for violating Plaintiffs' Fourth and Fourteenth Amendment rights does not support entry of a stay. In addition to the fact that the City's current appeal is subject to dismissal for lack of appellate jurisdiction, the Liability and Remedies Orders stand solidly on Circuit and Supreme Court precedent. The City's single paragraph on this factor, lacking any articulation of how the City will likely succeed on appeal, hardly constitutes the required "strong showing."

Moreover, the City's position that the injunctive relief ordered is beyond the permissible scope, *see* Def.'s Mot. Stay at 3, ignores both this Court's broad equitable power to remedy proven constitutional violations and that the specific remedies have yet to be detailed. *See infra*. And contrary to the City's assertions, Def.'s Mot. Stay at 3, the Remedies Order does require the development of milestones and timelines. *E.g.* Remedies Order at 12-13.

Plaintiffs are likely to succeed on the merits of the appeal, and the City has made no showing otherwise.

3

### 4. The Absence of Irreparable Harm to the City Pending Appeal

#### a. The City Does not now Face Any Irreparable Harm

The City concedes that no remedial action has yet been ordered, Def.'s Mot. Stay at 2, but submits that irreparable harm is imminent because of a scheduled meeting with the Independent Monitor about the process for developing remedies. Def.'s Mot. Stay at 2. Besides bordering on ridiculous, this argument ignores precedent. An order to submit a remedial proposal or participate in a process to craft remedies is not even appealable, let alone a basis to *stay* an appeal. *Taylor*, 288 F.2d at 604 ("a command that relates merely to the taking of a step in a judicial proceeding is not generally regarded as a mandatory injunction."); *Bridgeport v. Bridgeport Guardians Inc.*, 05-2481-cv (L) & 05-2693-cv (con), 06-0727-cv, 2007 U.S. App. LEXIS 28662 (2d Cir. 2007); *Henrietta D. v. Guiliani*, 246 F.3d 176 (2d Cir. 2001) (dismissing on jurisdictional grounds appeal of an order requiring magistrate judge to develop remedial plan in consultation with parties following finding of liability); *Spates v. Manson*, 619 F.2d 204 (2d Cir 1980). Until this Court so-orders the Immediate Relief, there is no appealable order and no possible harm. *See Bridgeport*, 2007 U.S. App. LEXIS at * 4-5 (dismissing appeal where "[i]t is undisputed that no [remedial] plan has, as yet, been formulated or approved by the district court").

The remainder of the City's irreparable harm argument suffers from similar fundamental defects: all of the purported dangers are either mere potentialities, or economic and administrative concerns that as a matter of law do not constitute irreparable injury. *See Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (opining that to establish irreparable injury, "the harm must be imminent or certain, not merely speculative."); *Nken*, 566 U.S. at 435 (opining that a possible injury is insufficient to establish irreparable injury); *Schwartz v. Dolan*, 159 F.R.D. 380,

Beldock Levine & Hoffman LLP

384 (N.D.N.Y. 1995) ("Because defendant alleges only administrative and economic harm, this court finds that they are unable to allege injury amounting to irreparable harm."), *id.*, 86 F.3d 315, 318 (2d Cir. 1996) (noting that Second Circuit also denied defendant's application for a stay pending appeal in the *Schwartz* case). The FINEST message is not yet written and will not be written until the parties agree on or propose its content and the Court so-orders its distribution. We also submit that the FINEST message cannot be written until the Immediate Relief is developed, as the Court ordered the FINEST message to include an explanation of that relief. *See* Remedies Order at 25. The re-training of police officers will not roll out until the parties agree on or propose the contours of that re-training and the Court so-orders its implementation. The body-worn camera pilot program likewise is subject to development and court approval prior to commencement. Moreover, these supposed harms are by definition not irreparable: after the appeal has been decided, the City may send an updated FINEST message, conduct additional training if needed, and cease use of body-worn cameras. *See Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. State*, NO. CIV. S-04-2265 FCD KJM, 2009 U.S. Dist. LEXIS 89371, * 14-15 (E.D. Cal. Sept. 11, 2009) (declining to enter stay where State would have to issue licenses only to then, if successful on appeal, revoke them, because available process of revocation ameliorated purported interim harm).

  The City's feigned privacy concerns related to the body-worn camera pilot program ring hollow. *See* Def.'s Mot. Stay 2, 3. This is the same police department that reportedly conducts surveillance on innocent Muslims (*see* http://nation.time.com/2013/08/28/nypd-designates-mosques-as-terrorism-organizations/#ixzz2dHBmfyhJ), and, until challenged by the New York State legislature and others, maintained a database on millions of innocent civilians caught in the stop and frisk dragnet. *See* http://cityroom.blogs.nytimes.com/2010/07/16/paterson-signs-bill-

5

BELDOCK LEVINE & HOFFMAN LLP

limiting-street-stop-data/. This Court directed the body-worn camera program to be tailored to protect privacy interests. Remedies Order at 27 ("The Monitor will also establish procedures for the preservation of stop recordings for use in verifying complaints in a manner that protects the privacy of those stopped."). Moreover, it was *the City's police practices expert* who raised the potential of this program at trial and testified that he "think[s] it is a good idea." Trial Tr. at 7817-7818 (May 17, 2013). *See also* Remedies Order at 25.

Finally, on this point, we note our exception to the City's unfounded and unsupported assertion that an injunction would unleash havoc on policing in New York. *See* Def.'s Mot. Stay at 2, 3. We believe members of the NYPD are entirely capable of complying with successive judicial orders while also honoring their charge to protect and serve.

b. **Federalism Concerns are Not a Basis to Stay the Remedies Order**

Federalism considerations do not support a finding of irreparable harm to the City. The City suggests that the Second Circuit granted a stay where a finding of irreparable harm was based on threats to federalism in *United States v. Bloomberg*, No. 11-5113 (L), 12-491 (XAP), 2013 U.S. App. LEXIS 2792 (2d Cir. Feb. 7, 2013), but the Circuit's opinion in that case says nothing of the sort. *See id.* (one-sentence order granting stay without discussion).

Importantly, principles of federalism do not preclude federal courts from fulfilling their duty to remedy and prevent constitutional violations, even where the relief ordered involves local government institutions. *See Brown v. Plata*, 131 S. Ct. 1910, 1928-29 (2011) ("Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration."); *Allee v. Medrano*, 416 U.S. 802, 815 (1974) ("Where, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate."); *Ass'n of Surrogates & Supreme Court Reporters Within City of New York v. State of N.Y.*, 966 F.2d 75, 79

BELDOCK LEVINE & HOFFMAN LLP

*opinion modified on reh'g*, 969 F.2d 1416 (2d Cir. 1992) ("state budgetary processes may not trump court-ordered measures necessary to undo a federal constitutional violation").

This Court recognized that its equitable authority is limited by concerns of federalism, and it issued the Remedies Order within those limits and in light of its concomitant obligation to enforce the Constitution. Remedies Order at 6-8.

### 5. **Plaintiffs Will Suffer Substantial Injury if a Stay is Issued**

Staying the remedial process established by the Court would substantially harm the Plaintiff class. It is well established that a violation of one's constitutional rights constitutes irreparable harm. *See State of Connecticut Dep't of Envtl. Prot. v. Occupational Safety and Health Admin.*, 356 F.3d 226, 231 (2d Cir. 2004). And it is inconceivable that unconstitutional stops and frisks will cease under the NYPD's current regime if the remedies this Court ordered are not implemented. Indeed, such violations have occurred since the Court issued its Liability and Remedies Opinions last month. *See* Declaration of David Ourlicht ¶ 4.

Acknowledging the irreparable nature of constitutional violations, the City claims that federalism trumps Plaintiffs' constitutional rights, but noticeably fails to cite any precedent in support of this argument. *See* Def.'s Mot. Stay at 2, 3. *Davis v. Lansing*, 851 F.2d 72 (2d Cir. 1988), and *Younger v. Harris*, 401 U.S. 37 (1971), Def.'s Mot. Stay at 3, do not stand for such a principle, and the City's reliance on these cases is entirely misplaced. The facts of *Davis* and *Younger* required use of an abstention doctrine to avoid interference with an ongoing state criminal proceeding, which are plainly not the circumstances here. Neither case involved a federal court's attempts to remedy longstanding and widespread unconstitutional conduct on the part of a municipality. The Remedies Order does not interfere in any ongoing state proceeding, nor does the City contend that it does. To the contrary, the Remedies Order appropriately serves

BELDOCK LEVINE & HOFFMAN LLP

to stop the further violations of the constitutional rights of New Yorkers and thus is wholly consistent with principles of federalism. *See Todaro v. Ward*, 565 F.2d 48, 53 (2d Cir. 1977) ("[A] policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution.").

The City concedes that constitutional violations are "always irreparable," Def.'s Mot. Stay at 2, yet suggests that future violations of New Yorkers' constitutional rights can be remedied through suits for money damages. As this Court has noted, individual § 1983 damage suits "are particularly ineffective as a remedy for unconstitutional stops, where individuals often do not know what the basis for their stop was, and thus cannot know whether the stop lacked a legal basis or was influenced improperly by race." Remedies Order at 8 n. 21. Given that victims lack the resources to retain attorneys, who are unlikely to take stop cases on contingency due to low damage awards, and that injunctive relief in the form of policy change is very difficult to obtain, the City's suggestion that victims may simply file lawsuits is at best disingenuous. *See* Amicus Curiae Brief of The Bronx Defenders, *et al.* (Dkt # 208) at 11. The City's implicit acknowledgment that a stay will result in additional constitutional violations only underscores the necessity of commencing the remedial process without further delay.

The drop in the absolute number of recorded stops in the Second Quarter of 2013 in no way suggests that this risk of constitutional violations has diminished. *See* Def.'s Mot. Stay at 3. Preliminarily, this Court held that the numerical decrease in stop activity may have resulted not from fewer stops but from the NYPD's legally incorrect training on what constitutes a forcible *Terry* stop, which has resulted in officers failing *to record Terry* stops which they *actually conducted.* Remedies Order at 5 n.8; Liability Order (Dkt 373) at 104-105. Regardless, there is no evidence that the statistical indicia of a widespread pattern of unconstitutional stops (*i.e.*,

BELDOCK LEVINE & HOFFMAN LLP

severe racial disparities, abysmally low hit rates, and frequent use of highly subjective and constitutionally suspect stop rationales) have abated.

### 6. The Public Interest Weighs Decidedly Against a Stay

A stay would be against the public interest. Enjoining unconstitutional conduct on the part of the NYPD, which is the express purpose of the reforms to be developed through the remedial processes contemplated by the Court, is clearly in the public interest. *See, e.g., G&V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *ACLU v. Reno*, 217 F.3d 162, 180-81 (3d Cir. 2000) ("Neither the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

And it is against the public interest to delay the day when such reforms will be implemented. A stay would postpone that day. As explained in the declarations submitted herewith, large numbers of New York City residents, particularly those in communities most heavily impacted by the City's current unconstitutional stop-and-frisk policies and practices, have long been concerned by and have long demanded an end to those policies and practices, a sentiment most recently expressed in the votes of the overwhelming majority of the New York City Council to pass the Inspector General and anti-profiling legislation. *See* Declaration of Christine Quinn ¶¶ 3, 4, 10 (noting that the City Council Speaker has "received hundreds of informal complaints from the public about being stopped and frisked by members of the NYPD without reasonable suspicion"); Declaration of Robert Jackson ¶¶ 3-6, 14, Declaration of Helen

9

Beldock Levine & Hoffman LLP

Foster ¶¶ 6-7, 13, and Declaration of Joo-Hyun Kang ¶¶ 10-15; *see also* http://www.nytimes.com/2013/08/23/nyregion/council-overrules-bloomberg-on-police-monitor-and-profiling-suits.html?pagewanted=all&_r=0.

Community stakeholders are also ready, able, and eager to engage in a dialogue with the NYPD about how best to address these constitutional problems, which is precisely what the Remedies Order will enable them to do. *See* Quinn Decl. ¶ 9 ( "the joint remedial process will facilitate a much-needed dialogue between the NYPD and the community"); Jackson Decl. ¶ 10 ; Foster Decl. ¶¶ 9, 11-12 (Councilmember Foster "was eager to bring [her] experience and insight to discussions with the NYPD through the Court-ordered joint-reform process"); Kang Decl. ¶ 18 (Joint remedy process "is the first step in the path to meaningful reform," and members of Communities United for Police Reform "are committed, willing and able to engage in [it]."). Moreover, the City's own remedies' expert testified at trial that "a police department working collaboratively with outside experts to address patterns of unconstitutional behavior" (precisely the working relationship between the City and the Monitor envisioned by the Court, *see* Remedies Order at 9-13), is "a good approach to remedying that unconstitutional behavior." Trial Tr. at 7817:4-8 (May 17, 2013). The public interest strongly favors moving forward with the remedial processes established by the Court.

The City's inflammatory claim that the reforms to be developed through the remedial process will threaten public safety has no basis in fact. Former NYPD Commissioner William Bratton, one of the architects of the CompStat system that the City credits as a major contributor to New York's City's crime decline over the past two decades, *see* D Weisburd *et al.*, *The Growth of Compstat in American Policing* (Police Foundation 2004), available at http://www.scribd.com/doc/112729979/Weisburd-Et-Al-2004-The-Growth-of-Compstat-in-

BELDOCK LEVINE & HOFFMAN LLP

American-Policing-Police-Foundation-Report; Dkt # 144 ¶¶ 94-98, stated less than two months ago that effective policing and constitutional policing are in no way incompatible. *See Morning Joe*, MSNBC Television, July 22, 2013, available at http://www.nbcnews.com/id/3036789/ns/msnbc-morning_joe/vp/ 52541421#52541421. Mr. Bratton should know, because as chief of the Los Angeles Police Department from 2002-2009, he oversaw implementation of court-ordered reforms designed to address, among other things, constitutional problems with the LAPD's pedestrian and vehicle stop practices and racial profiling, all while violent crime in Los Angeles decreased by more than 40%. *See* Consent Decree in *United States v. City of Los Angeles*, 00-CV-11769 (C.D. Cal. June 15, 2001); C. Stone *et al.*, *Policing Los Angeles Under a Consent Decree: The Dynamics of Change in the LAPD* (Harvard Kennedy School 2009), at 6-9.

The City's argument that the cost of body-worn cameras is against the public interest is overblown, given that the cameras will be tested only in five (out of seventy six) NYPD Precincts for one year and will not be expanded department-wide unless and until the Monitor and this Court determines they are cost-effective. *See* Remedies Order at 27. And, again, *it was the City's expert* who raised the prospect of body-worn cameras, and the program will not be implemented until the Court so-orders the Immediate Reforms.

The City bemoans the potential cost of the remedial process to taxpayers, Def.'s Mot. Stay at 3, yet the City repeatedly refused opportunities to avoid these costs. The City could have agreed to engage in the dialogue around stop-and-frisk recommended by the New York State Attorney General in 1999, but instead the City turned a blind eye to the problem. *See* Dkt. # 373 at 61-63. The City could have avoided the appointment of a monitor and the costs and attorneys' fees expended over years of litigation if it had meaningfully implemented the anti-racial profiling policy and audits required by the 2003 settlement in *Daniels v. City of New York*, 99 Civ. 1695

11

BELDOCK LEVINE & HOFFMAN LLP

(SAS), but instead the City chose to dive further into litigation. *See* Dkt. # 373 at 115. In January of this year, the City could have avoided the significant costs of trial if it had agreed to participate in the collaborative remedial process then proposed by Plaintiffs, the same process the Court has now ordered, but instead the City rejected Plaintiffs' proposal. *See* Remedies Order at 7-8 and n.20. Now the cost and duration of the remedial process is largely within the City's control. The City's full cooperation with the Monitor and engagement in the remedial process will lessen the expense of remedying its unconstitutional stop and frisk practices. Yet the City continues to fight the inevitable, driving up litigation costs rather than participating in necessary change.

The decrease in stops, which the City urges "should not be ignored," Def.'s Mot. Stay at 3, is important, not because it diminishes the real and proven injury to Plaintiffs, a contention discredited *supra*, but because it belies any argument that changes to stop activity will threaten public safety. It has been widely reported that the crime rate has continued to decline even as the number of recorded stops decreased. *See* Remedies Order at 4-5. While Plaintiffs proved an ongoing and substantial constitutional injury at trial, the City, again, merely speculates. The absence of any factual citations in the City's public interest argument is telling. *See* Def.'s Mot. Stay at 3. The public interest demands mending the City's unconstitutional stop and frisk practice without further delay.

## 7. Conclusion

The City's insistence on continuing this litigation rather than righting an injustice too long inflicted on New Yorkers is disappointing. On the merits of this motion, the City has failed to meet its heavy burden of establishing entitlement to a stay. We respectfully submit that this

BELDOCK LEVINE & HOFFMAN LLP

Court should not permit the City to postpone justice. The City's motion for a stay should be denied.

Thank you for your time and consideration.

Respectfully submitted,

Jonathan C. Moore
Jenn Rolnick Borchetta
BELDOCK LEVINE & HOFFMAN LLP

Darius Charney
Sunita Patel
Chauniqua Young
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS

Eric Hellerman
Kasey L. Martini
Bruce Corey
COVINGTON & BURLING LLP

CC (*via ECF*):
Heidi Grossman
Brenda Cooke
Linda Donahue
Suzanna Publicker
Judson Vickers
Joseph Marutollo
Morgan Kunz
Lisa Richardson
Assistants Corporation Counsel, Special Federal Litigation Division
NEW YORK CITY LAW DEPARTMENT

*Attorneys for Defendant*