UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID FLOYD, et al., <br><br> Plaintiffs, <br><br> - v - <br><br> THE CITY OF NEW YORK, et al., <br><br> Defendants. | No. 08 Civ. 1034 (SAS) <br><br> **DECLARATION OF COUNCIL SPEAKER CHRISTINE C. QUINN** |

COUNCIL SPEAKER CHRISTINE C. QUINN declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am the Speaker of the Council of the City of New York (the "Council"). I represent Council District 3 in the borough of Manhattan and have been a member of the Council since 1999. I was elected Speaker in 2006.

2. The Council District I represent has over 170,000 constituents, approximately one-third of whom are non-White.

3. In my capacity as Council Speaker, I have worked closely with the New York City Police Department ("NYPD") to ensure the safety of the residents of New York City and have a deep appreciation for the challenges faced by the NYPD. In addition, I communicate regularly with residents of my Council District and the City at large and have received hundreds of informal complaints from the public about being stopped and frisked by members of the NYPD without reasonable suspicion.

4. Beginning in March 2013, I co-sponsored legislation in the Council that would require the Commissioner of the Department of Investigation to investigate, review, and make recommendations relating to the policies and practices of the NYPD on an ongoing basis. This bill passed on June 27, 2013, by a vote of 40-11. Mayor Bloomberg vetoed the bill and the

Council overrode the Mayor's veto by a vote of 39-10 on August 22, 2013. The NYPD, however, has continued to resist the Council's efforts to monitor and reform the stop and frisk program.

5. The City's decision to seek a stay from this Court's remedy opinion follows a similarly disheartening pattern. The NYPD has a longstanding track record of refusing to participate in a meaningful reform of the NYPD's stop and frisk policies. For example, the Council passed a local law as early as 2001 requiring the NYPD to report statistics on various practices, including stop and frisk.[1] Yet the NYPD repeatedly refused even to provide the Council with the required data in a usable format until after a court ordered it released in response to a Freedom of Information Law request.

6. In addition, the NYPD refused to participate in three public hearings organized by the the Black, Latino, and Asian Caucus of the City Council in October 2012. And the Court itself noted that the City refused to participate in a joint effort to craft the remedies in this case. The City's request for a stay in this action appears to be yet another attempt to avoid engaging in necessary reforms.

7. I oppose the City's request for a stay because the joint remedial process is integral to repairing the damage in community relations caused by the current stop and frisk policies and to meaningfully move forward towards achieving reforms that balance the need for effective policing policies with protections for the constitutional rights of every New Yorker and, in particular, New York City's minority residents.

8. I see no reason why the Court-ordered joint remedial process—as well as the appointment of an independent monitor—will cause the NYPD "irreparable harm," as the City claims. Rather, the joint remedial process will facilitate a much-needed dialogue between the

---

[1] *See* N.Y.C. Admin. Code § 14-150(a)(5).

NYPD and the community. And the appointment of a monitor will only set in motion an in-depth probe into how the NYPD can implement meaningful reform. These remedies would represent welcome progress regardless of the outcome of the City's appeal.

9. I also disagree with the NYPD's claim that a stay would be in the public interest. Based on my perspective as Speaker of the City Council, the public has a strong interest in beginning the remedial process immediately and ending the practice of unconstitutional stops, with the dual goals of securing the liberties guaranteed by the Constitution, as well as fostering the kind of community trust in the NYPD that can ultimately contribute to its efforts to reduce crime.

10. The NYPD's stop and frisk policy has gone on for far too long, resulting in harm not only to those who have been unconstitutionally stopped, but to the City as a whole as public concern over the practice has bred mistrust between the City's residents and the police charged with protecting them. Contrary to the City's argument for a stay of this Court's remedial order, it is a *delay* in implementing important and necessary reforms – delay that could last months or even years while an appeal is resolved – that would cause irreparable harm to the City and its residents.

11. The Court-ordered remedies should therefore be allowed to take effect, regardless of what happens with the City's appeal in this case.

Dated: New York, New York
September 5, 2013

_____
CHRISTINE C. QUINN, SPEAKER
COUNCIL OF THE CITY OF NEW YORK