UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID FLOYD, et al.,

                Plaintiffs,

        - v -

THE CITY OF NEW YORK, et al.,

                Defendants.

No. 08 Civ. 1034 (SAS)

DECLARATION OF NEW YORK CITY COUNCIL MEMBER HELEN D. FOSTER

        NEW YORK CITY COUNCIL MEMBER HELEN S. FOSTER declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

        1.    I submit this affidavit in support of Plaintiffs' opposition to Defendants' Motion to Stay the Court's Injunctive Relief.  I am not a party to the above-captioned case.

        2.    I am an elected member of the Council of the City of New York (the "Council").  I represent Council District 16 in the Bronx and have been a member of the Council for 11 years.

        3.    I also serve on the Council's Public Safety Committee, which is responsible for legislatively overseeing the New York Police Department ("NYPD") and the NYPD's Civilian Complaint Review Board ("CCRB").

        4.    The Council District I represent, District 16, has over 175,000 constituents, more than of 95% of whom are non-White.  District 16 is also one of the poorest council districts in the City.

        5.    Before my election to the Council, I was Assistant Vice President for legal affairs for St. Barnabas Hospital.  I am also a former Assistant District Attorney for New York County.

1

6. In my capacity as a Council member, I communicate regularly with my constituents. My staff and I have received hundreds of informal complaints from the public about being stopped and frisked by members of the NYPD without reasonable suspicion.

7. In my capacity as a member of the Council's Public Safety Committee, I can attest to the fact that the New York City Police Department's stop and frisk policies are the source of a significant amount of tension between the police and residents of minority communities. It is my belief that the NYPD's practices reinforce negative racial stereotypes and create distrust of the NYPD on the part of Black and Latino residents of New York City. This distrust hampers my efforts to bring the community and NYPD together to deal with issues of crime and quality of life.

8. I was encouraged by the Court's recent opinion and order[1] regarding injunctive relief. The Court-ordered remedies mean that the NYPD must finally reform its stop and frisk policies to ensure that the constitutional rights of all New York are not being infringed upon. But I am disheartened and frustrated that the Bloomberg administration and the NYPD are seeking to stay the implementation of the remedies outlined in the Court's Remedies Opinion.

9. In the Remedies Opinion, the Court calls for community leaders, civic groups and other stakeholders to engage in a joint remedial process with the City and the NYPD. (Remedies Op. at 30.) This court-ordered remedial process—seeking "input from those who are most affected by the NYPD's use of stop and frisk"—is exactly the type of dialogue that would generate meaningful reforms. (*Id.* at 31).

10. I oppose the City's request for a stay because the joint remedial process is integral to repairing the damage in community relations caused by the current stop and frisk policies and to meaningfully move forward towards achieving reforms that balance the need for effective

---

[1] *Floyd v. City of New York*, No. 08-Civ-1034 (S.D.N.Y. August 12, 2013).

policing policies with protections for the constitutional rights of every New Yorker and, in particular, New York City's minority residents.

11. As a member of the City Council and the Council's Public Safety Committee—as well as a former Assistant District Attorney—I was eager to bring my experience and insight to discussions with the NYPD through the Court-ordered joint reform process. It is unfortunate that the NYPD is seeking to eschew the process before even sitting down at the table.

12. The stay is not in the public interest. Rather, starting the reform process through a dialogue between stakeholders and the NYPD will immediately pave the way for meaningful changes to the NYPD's stop and frisk policies. Such a dialogue will also ease tensions between the community and the NYPD because the members of the community will see that the NYPD is open to hearing their perspective on the current stop and frisk policies.

13. The NYPD's stop and frisk policy has gone on for far too long, resulting in harm not only to those who have been unconstitutionally stopped, but to the City as a whole as public concern over the practice has bred mistrust between the City's residents and the police charged with protecting them. Contrary to the City's argument for a stay of this Court's remedial order, it is a *delay* in implementing important and necessary reforms – delay that could last months or even years while an appeal is resolved – that would cause irreparable harm to the City and its residents.

Dated: New York, New York
       September 5, 2013

_____
HELEN D. FOSTER, MEMBER
COUNCIL OF THE CITY OF NEW YORK