UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID FLOYD, et al.,

                Plaintiffs,

- v -

THE CITY OF NEW YORK, et al.,

                Defendants.

No. 08 Civ. 1034 (SAS)

**DECLARATION OF COUNCIL MEMBER ROBERT JACKSON**

        COUNCIL MEMBER ROBERT JACKSON declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

        1.     I am a member of the Council of the City of New York (the "Council") and Co-Chair of the Council's Black, Latino and Asian Caucus (the "BLAC"). I represent Council District 7 in the borough of Manhattan and have been a member of the Council for 11 years.

        2.     The Council District I represent has approximately 156,000 constituents, 75% of whom are Black or Latino. Collectively, the 27 districts represented by the BLAC have over 4 million constituents, approximately 73% of whom are Black or Latino.

        3.     In my capacity as a Council Member, I communicate regularly with my constituents. My staff and I have received hundreds of informal complaints from the public about being stopped and frisked by members of the New York Police Department ("NYPD") without reasonable suspicion.

        4.     In my capacity as Co-Chair of the BLAC, I can attest to the fact that other members of the BLAC also receive complaints from constituents about suspicionless stops by

the NYPD on a regular basis. Each of the BLAC's 27 members reports receiving, on average, two or three complaints every month about the NYPD's stop and frisk policies and practices.

5. Members of the BLAC and I have worked to change the NYPD's stop and frisk policies and practices for years. It is our belief that the NYPD's practices reinforce negative racial stereotypes and create distrust of the NYPD on the part of Black and Latino residents of New York City. This distrust hampers efforts by the BLAC, including by my staff and me, to bring the community and NYPD together to deal with issues of crime and quality of life. It is also my belief that the distrust of the NYPD which stems, in part, from its stop and frisk policies and practices, spills over into other institutions of government, making it more difficult for members of the BLAC and me to engage youth and other constituents, in an effort to solve persistent community problems.

6. The Council and its members, including members of the BLAC, have taken significant actions to reform the NYPD's stop and frisk practices, including (a) passage of the Community Safety Act, which bans racial-profiling and requires the Commissioner of the Department of Investigations to investigate, review, and make recommendations relating to the policies and practices of the NYPD on an ongoing basis; (b) advocacy on behalf of individual constituents, and (c) direct communications with the NYPD to advocate a change in current practices. With the Court's recent opinion and order[1] regarding injunctive relief, we are encouraged that the NYPD must finally reform its stop and frisk policies to ensure that the constitutional rights of all New Yorkers are not being infringed upon.

---

[1] *Floyd v. City of New York*, No. 08-Civ-1034 (S.D.N.Y. August 12, 2013) (ECF No. 372) (the "Remedies Opinion").

7.      The BLAC, however, is disheartened and frustrated that the Bloomberg administration and the NYPD are seeking to stay the implementation of the remedies outlined in the Court's Remedies Opinion.

8.      The City's decision to seek a stay follows a familiar pattern.  The City has an longstanding track record of refusing to participate in meaningful reform of the NYPD's stop and frisk policies.  For example, the Council passed a local law as early as 2001 requiring the NYPD to report statistics on various practices, including stop and frisk.[2]  Yet the NYPD repeatedly refused even to provide the Council with the required data in a usable format until 2008, after a court ordered it released in response to a Freedom of Information Law request.

9.      In addition, the NYPD refused to participate in three public hearings organized by the BLAC in October 2012.  And the Court itself noted that the City refused to participate in a joint effort to craft the remedies in this case.  The BLAC believes that the City's request for a stay in this action is yet another attempt to avoid engaging in necessary reforms.

10.     In the Remedies Opinion, the Court calls for community leaders, civic groups and other stakeholders to engage in a joint remedial process with the City and the NYPD. (Remedies Op. at 30.)  This court-ordered remedial process—seeking "input from those who are most affected by the NYPD's use of stop and frisk"—is exactly the type of dialogue that the BLAC has sought to engage in with the City and the NYPD for years with little avail.  (*Id.* at 31.)  The BLAC believes that this court-ordered dialogue will finally force the NYPD to meaningfully engage with communities of color and to confront the reality that current stop and frisk policies reinforce negative racial stereotypes and engender a distrust of the police.

---

[2] *See* N.Y.C. Admin. Code § 14-150(a)(5).

11. The BLAC opposes the City's request for a stay because the joint remedial process is integral to repairing the damage in community relations caused by the current stop and frisk policies and to meaningfully move forward towards achieving reforms that balance the need for effective policing policies, with protections for the constitutional rights of every New Yorker and, in particular, New York City's minority residents.

12. I see no reason why the Court-ordered joint remedial process—as well as the appointment of an independent monitor—will cause the NYPD "irreparable harm," as the City claims. Rather, the joint remedial process will facilitate a much-needed dialogue between the NYPD and the community. And the appointment of a monitor will only set in motion an in-depth probe into how the NYPD can implement meaningful reform. These remedies would represent welcome progress regardless of the outcome of the City's appeal.

13. I also disagree with the NYPD's claim that a stay would be in the public interest. The public has a strong interest in beginning the remedial process immediately and ending the practice of unconstitutional stops, with the dual goals of securing the liberties guaranteed by the Constitution, as well as fostering the kind of community trust in the NYPD that can ultimately contribute to its efforts to reduce crime.

14. The NYPD's stop and frisk policy has gone on for far too long, resulting in harm not only to those who have been unconstitutionally stopped, but to the City as a whole as public concern over the practice has bred mistrust between the City's residents and the police charged with protecting them. Contrary to the City's argument for a stay of this Court's remedial order, it is a *delay* in implementing important and necessary reforms – delay that could last months or even years while an appeal is resolved – that would cause irreparable harm to the City and its residents.

15. The Court-ordered remedies should therefore be allowed to take effect, regardless of what happens with the City's appeal in this case.

Dated: New York, New York
September 5, 2013

_____
ROBERT JACKSON, MEMBER
COUNCIL OF THE CITY OF NEW YORK