

**THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK**
**Bill de Blasio – PUBLIC ADVOCATE**

September 6, 2013

9/6/13

**BY HAND**

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

The Clerk of the Court is directed to docket this amicus letter brief. SO ORDERED.

Shira A. Scheindlin, USDJ
9/6/13

Re:   *Floyd v. City of New York*, 08 Civ. 1034 (SAS)
      *Ligon v. City of New York, et al.*, 12 Civ. 2274 (SAS)

Dear Judge Scheindlin:

New York City Public Advocate Bill de Blasio (the "Public Advocate") respectfully requests leave to submit this letter brief as *amicus curiae* in opposition to the Defendant City of New York's request for a stay pending appeal of the Court's Remedies Opinion and Order, dated August 12, 2013 (the "Remedies Order", *Floyd*, ECF No. 372, *Ligon*, ECF No. 120), issued in conjunction with the Court's Liability Opinion in *Floyd* on the same date (the "Liability Order", ECF No. 373), and the amended preliminary injunction Opinion in *Ligon*, issued on February 14, 2013 (*Ligon*, ECF No. 105), collectively the "District Court Orders."[1] Contrary to the City's contentions, the constitutional rights of New Yorkers should weigh heaviest in the Court's decision whether to stay its Remedies Order. A stay of the Remedies Order will result in irreparable harm to the citizenry of New York by allowing the unconstitutional stop and frisk violations of untold numbers of people to continue, especially and disproportionately in communities of color.

---

[1] The Public Advocate respectfully requests the docketing of this letter on the Court's ECF system in both *Floyd* and *Ligon*. The plaintiffs in *Floyd* and *Ligon* consent to the Public Advocate filing as *amicus curiae*; Defendant City of New York has not yet responded to the Public Advocate's request for consent.

 **THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK**
**Bill de Blasio – PUBLIC ADVOCATE**

**The Public Advocate's Interest In Denying The Stay Of The Remedies Order**

The Public Advocate is one of only three city-wide elected officials, first in line of succession to the Mayor and a member of the New York City Council. New York City Charter ("Charter") §§ 10(a), 22, 24(a). Chief among his responsibilities is monitoring city agencies and officials to ensure compliance with the City Charter. *Id.* § 24(i). The Public Advocate is also the City's ombudsman, required to monitor and investigate the effectiveness of City agency responses to citizen complaints and to recommend measures to improve such responses. *Id.* §§ 24(h) and (f). In short, the Public Advocate is "the citizens' representative or protector," *Boykin v. 1 Prospect Park ALF, LLC*, No. 12 Civ. 06243, 2013 U.S. Dist. LEXIS 111978, at *57 (E.D.N.Y. Aug. 8, 2013), and operates as "a 'watchdog' over City government and a counterweight to the powers of the Mayor." *Green v. Safir*, 174 Misc.2d 400, 403, 664 N.Y.S.2d 232, 234 (N.Y. Sup. Ct. 1997).

Consistent with this role, the Office of the Public Advocate has a long history of investigating "[m]isconduct by those invested with police power." *Id.* The New York Police Department's "stop and frisk" policy is a prime example of a police practice investigated by the Public Advocate. In May 2013, the Public Advocate released a report (the "Report") evaluating the 2012 stop and frisk database that in many ways previewed this Court's findings.[2] The Report concluded, among other things, that while African-American and Latino New Yorkers comprise only 54% of the general population, they constituted 84% of all stops, and 88.8% of the people stopped were not charged.

---

[2] "Stop and Frisk and the Urgent Need for Meaningful Reforms," Office of the Public Advocate for the City of New York, May 2012, *available at*
http://advocate.nyc.gov/sites/advocate.nyc.gov/files/DeBlasioStopFriskReform.pdf.

2

 **THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK**
**Bill de Blasio – PUBLIC ADVOCATE**

In addition to the Report, the Public Advocate's Constituent Services Department has firsthand experience receiving complaints from constituents regarding stop and frisk, fielding thousands of complaints on the subject. Further, in the summer of 2012, the Public Advocate delivered to City Hall over 5,000 signatures from New Yorkers in support of an Executive Order to dramatically reduce the number of stops made by the NYPD.

Despite presenting these findings to the City and the NYPD, no meaningful changes in the administration, oversight, and application of stop and frisk followed. The District Court Orders invalidating the NYPD's stop and frisk practice as an unconstitutional violation of New Yorkers' Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure and receive equal protection under the law required the City to hear the voices it has long ignored and undertake the remedial efforts it has long resisted.

Accordingly, as the city-wide elected public official charged with "pointing the way to right the wrongs of government,"[3] and one with a track record of shedding light on the unconstitutional wrongs of the City's stop and frisk practice, the Public Advocate has a unique perspective and interest in preserving the Remedies Order and denying the City's request for a stay pending appeal of the District Court Orders.

---

[3] *Green*, 174 Misc.2d at 403, 664 N.Y.S.2d at 234 (recognizing that the Charter Revision Commission, which created the Office of the Public Advocate, envisioned "an independent public official to monitor the operations of City agencies with the view to publicizing any inadequacies, inefficiencies, mismanagement and misfeasance found, with the end goal of pointing the way to right the wrongs of government.").

 **THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK**
**Bill de Blasio – PUBLIC ADVOCATE**

A Stay Of The Remedies Order Will Not Irreparably Harm The City But Will Cause Irreparable Constitutional Injury To The Citizens Of New York

The City seeks a stay of the Remedies Order on the ground that, *inter alia*, the City will suffer irreparable harm. But the City has it backwards. It is the irreparable harm to the constitutional rights of thousands of New Yorkers should the Remedies Order *not* be implemented that weighs decisively *against* granting a stay. This Court found, and the Report and thousands of complaints received by the Public Advocate have confirmed, that the way in which the NYPD conducts stop and frisk violates the Fourth and Fourteenth Amendment rights of New Yorkers. The violation of an individual's civil liberties and constitutional rights is *per se* irreparable harm that cannot justify staying an injunction crafted to cease and remedy the violation.[4]

In fact, when faced with similar constitutional violations by a city's police force, courts have refused to stay the implementation of remedial measures. For example, in *United States v. City of New Orleans*, No. 12 Civ. 01924, 2013 WL 492362 (E.D. La. Feb. 8, 2013), the District Court rejected New Orleans' attempt to stay pending appeal the implementation of remedial measures contained in a consent decree. Those measures sought to change the policies and practices of the New Orleans police force, which had been engaged in a pattern and practice of excessive force, unlawful searches and seizures, and discriminatory policing. The District Court denied the stay because "the residents of New Orleans will suffer substantial harm to their interests in having a constitutional police force if the Court grants the City's [stay] motion." *Id.* at *4. The same applies

---

[4] *See* Remedies Order, --- F. Supp. 2d ---, 2013 WL 4046217, at *2-*4 (S.D.N.Y. Aug. 12,2013); *Armstrong v. Brown*, 857 F. Supp. 2d 919 (N.D. Cal. 2012) (denying officials' request to stay system-wide injunctive relief where officials' efforts to comply with Americans with Disabilities Act of disabled state prisoners and parolees had been inadequate, ineffective, and unconstitutional).

4


## THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK
### Bill de Blasio – PUBLIC ADVOCATE

with equal force here, where hundreds of thousands of innocent New Yorkers of color have been stopped and frisked and thousands more will follow if the Remedies Order is stayed.

The City's suggestion that harm will come of the additional training ordered by the Court – let alone irreparable harm – is unfounded. Any additional training that results from implementation of the Remedies Order should be conducted in a manner so as not to harm a Police Department that must operate under principles of "courtesy, professionalism, and respect." Research conducted by the Office of the Public Advocate on the manner in which stop and frisk has been utilized supports this Court's holding that increased training must be integrated into the NYPD's on-going operations. Neither the City, the NYPD, nor anyone else will be injured through this training process to ensure constitutional and effective policing.

**The Public Interest Weighs Squarely Against Granting A Stay Of The Remedies Order**

The public interest of New Yorkers requires NYPD policies and practices that comport with constitutional norms. For several years now, the City has refused to engage in effective reform of its stop and frisk policy and practice. As the Report noted, the NYPD announced a series of reforms to stop and frisk in May 2012. These reforms resulted in little substantive change because despite the overall reduction in stops, the proportion involving African-American and Latino New Yorkers remained practically the same. Even now, in the face of a well-reasoned federal judicial opinion supported by record evidence, through its stay application, the City is seeking to avoid continuing to meet with plaintiffs and the court-appointed monitor to discuss the implementation of the Remedies Order. The City's continued stonewalling harms New York, and a stay would reward such obstinance. In case after case, courts have refused to halt the implementation of measures that

 **THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK**
**Bill de Blasio – PUBLIC ADVOCATE**

will remedy a city's constitutional violations where the city has failed to remedy the serious deficiencies on its own.[5]

The City's unsubstantiated claim that crime will rise if the NYPD is required to depart from the unconstitutional way it conducts stop and frisk provides no basis for a stay. Recent events in New York City and peer-reviewed research suggest that there is no correlation between a heavy reliance on stop and frisk and a decline in crime. According to the City's own data, the use of stop and frisk has fallen more than 50% in New York City since last year, while overall crime has declined 2.7% over the same period, including a 30% decline in murders.[6] Stop and frisk shows "few effects" on burglary and robbery levels.[7]

A court-appointed monitor should not reverse the City's success in decreasing crime. This Court's Remedies Order provides the monitor only with limited, specific mandates that if appropriately carried out should not impede the NYPD's anti-crime efforts. In Los Angeles, a federal monitor was in place as part of a consent decree and transition agreement from 2001 until May of 2013.[8] This monitor was charged with, among other tasks, overseeing the elimination of

---

[5] *See City of New Orleans*, 2013 WL 492362, at *4 (finding implementation of reforms in the public interest where the U.S. Department of Justice's investigation found "systemic failures [that] 'have created an environment that permits and promotes constitutional harm'" and the City took no remedial action); *Chandler v. James*, 998 F. Supp. 1255, 1264-65 (M.D. Ala. 1997) (refusing to stay permanent injunction barring public schools from encouraging religion where schools continued to evidence "their unwillingness to comply with the court's Permanent Injunction, or, for that matter, with Supreme Court and Eleventh Circuit precedent detailing proscribed activity.").

[6] Tamar El-Ghobashy & Michael Howard Saul, "New York Police Use of Stop-and-Frisk Drops: Plummet in Disputed Tactic Tracks Overall Decrease in Crime," WALL STREET JOURNAL, May 6, 2013.

[7] Richard Rosenfeld & Robert Fornango, *The Impact of Police Stops on Precinct Robbery and Burglary Rates in New York City, 2003-2010*, JUSTICE QUARTERLY, August 21, 2012.

[8] U.S. v. City of Los Angeles, Joint Final Status Report; Decl. of Alexander Bustamante, May 3, 2013, *available at*



# THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK
## Bill de Blasio – PUBLIC ADVOCATE

biased-based policing. Over the period during which the LAPD operated under the supervision of a federal monitor, violent crime dropped more than 50%, and property crime dropped 40%.[9] Over the same period, citizen satisfaction with the LAPD rose substantially to 83%.[10] In fact, the current use of stop and frisk exacerbates the rift in community relations and may *prevent* crime from falling as low as it could absent a curtailing of the practice.[11]

The Public Advocate has voiced the need for a ban against the use of race as the sole basis for stopping and frisking an individual,[12] urged the use of CompStat to measure not just the number of stops but also the effectiveness of the tactic,[13] and demanded accountability for unwarranted

---

http://atty.lacity.org/stellent/groups/electedofficials/@atty_contributor/documents/contributor_web _http content/lacityp_025573.pdf.

[9] U.S. Department of Justice, Uniform Crime Reporting Statistics, *available at* http://www.ucrdatatool.gov/Search/Crime/Local/RunCrimeJurisbyJurisLarge.cfm.

[10] Christopher Stone, Todd Foglesong, Christine M. Cole, "Policing Los Angeles Under a Consent Decree: The Dynamics of Change at the LAPD," Harvard Kennedy School of Government, May 18, 2009.

[11] A review of social science research finds that "the substance and procedure of how stops are conducted in New York have costs on legitimacy, and that the legitimacy deficits that ensue have negative effects on public safety." Jeffrey Fagan, Tom Tyler, and Tracey Meares, "Street Stops and Police Legitimacy in New York," Conf. Paper, John Jay College of Crim. Justice Conference on Understanding the Crime Decline in New York City, Sept. 2011, *available at* http://www.jjay.cuny.edu/Fagan_Tyler_and_Meares_Street_Stops_and_Police_Legitimacy_in_Ne w_York.pdf.

[12] "Video: De Blasio Slams Mayor's 'Fear-Mongering' on Racial Profiling Bill," June 24, 2013, *available at* http://pubadvocate.nyc.gov/news/2013-06-24/video-de-blasio-slams-mayors-fear-mongering-racial-profiling-bill.

[13] "De Blasio on Reduction of Stop and Frisks: Public Safety Depends on Right-sized Approach, Deeper Police-Community Collaboration," Aug. 3, 2012, *available at* http://pubadvocate.nyc.gov/news/2012-08-03/de-blasio-reduction-stop-and-frisks-public-safety-depends-right-sized-approach-deepe.

 **THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK**
**Bill de Blasio – PUBLIC ADVOCATE**

stops.[14] The specific remedial acts required by the Remedies Order will hopefully help accomplish these goals. The immediate reforms ordered in the Remedies Order – including revising the policies and training that have led to racial profiling, simplifying the stop and frisk documentation, and improving the supervision, monitoring, and discipline of officers performing stop and frisks – should be carried out in a way to simultaneously ensure the constitutionality of individual stops and ensure the practice's effectiveness in providing much needed police protection.

It is well-past time for the City to cease the meritless scare tactic of contending that conforming the use of stop and frisk to constitutional standards will increase crime or make the public unsafe. There is simply no proof of the divisive proposition that the District Court Orders will harm the public. The Administration is free to make this specious argument in the political process, but for the City to make this claim in a court application without any factual support is a cynical politicization of the judicial process. It insults the public's intelligence and demeans the Court's considered process. The Public Advocate calls on the City to act constructively on the merits of this issue by finally acknowledging in a mature manner that those who have a different point of view – most notably, this Court – are also motivated by the City's safety and the public interest, and to work with the Court, the monitor and the plaintiffs to protect constitutional safeguards and ensure public safety. The City's fear mongering about the impact of the Remedies Order, like its earlier aspersions about the integrity of the independent judiciary,[15] should have no impact on this Court's consideration of the stay request.

---

[14] "De Blasio Launches Campaign to Reform Stop and Frisk, Repair Police-Community Divide," Aug. 3, 2012, *available at* http://pubadvocate.nyc.gov/news/2012-05-09/de-blasio-launches-campaign-reform-stop-and-frisk-repair-police-community-divide.

[15] *See* Bill de Blasio, "The Bloomberg Administration's Attack of the Judiciary," HUFFINGTON POST, June 3, 2013.



# THE PUBLIC ADVOCATE FOR THE CITY OF NEW YORK
## Bill de Blasio – PUBLIC ADVOCATE

For the foregoing reasons, on behalf of the Public Advocate for the City of New York, we respectfully request that the Court deny the City's request for a stay of the Remedies Order pending appeal.

                              Respectfully submitted,

                              OFFICE OF THE PUBLIC ADVOCATE
                              FOR THE CITY OF NEW YORK

                By: _____
                              Steven R. Newmark
                              General Counsel

                              One Centre Street
                              New York, N.Y. 10007

                              BAKER & HOSTETLER LLP

                By: _____
                              John Siegal
                              Fernando A. Bohorquez, Jr.
                              Jacqlyn R. Rovine

                              45 Rockefeller Plaza
                              New York, N.Y. 10111

                              Attorneys for Public Advocate
                              Bill de Blasio

cc:    All parties of record and amicus,
        served by First Class Mail.