UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

`- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -` X

DAVID FLOYD, et al.,                              :

              Plaintiff,                    :

      -against-                              :

                  Case No.  08 Civ. 1034 (SAS)

CITY OF NEW YORK, et al.,                    :

              Defendant.                    :

`- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -` X

## MEMORANDUM OF LAW OF SERGEANTS BENEVOLENT ASSOCIATION IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO <u>FEDERAL RULE OF CIVIL PROCEDURE 24</u>

ANTHONY P. COLES
COURTNEY G. SALESKI
(seeking admission *pro hac vice*)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Proposed Intervenor
Sergeants Benevolent Association*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 3

III.    ARGUMENT ....................................................................................................... 7

      A.      The SBA May Intervene as of Right Pursuant to Rule 24(a) ............................. 7

            1.      This Motion Is Timely ............................................................. 8

                  a.      The SBA Has Acted Promptly to Participate in the
Remedial Proceedings ................................................. 10

                  b.      The SBA Has Acted Promptly to Appeal the Opinions.............. 11

                  c.      The SBA's Intervention Would Not Prejudice the Existing
Parties, and Denying Intervention Would Prejudice the
SBA ............................................................................. 13

            2.      The SBA Has a Direct, Protectable Interest in This Action ................... 14

            3.      The SBA's Interest May Be Impaired by the Disposition of This
Action................................................................................................ 17

            4.      The SBA's Interest Will Not Be Adequately Represented by the
Parties to This Action........................................................................ 19

      B.      Alternatively, the SBA Should Be Granted Permissive Intervention ................. 22

IV.     CONCLUSION.................................................................................................. 23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acree v. Republic of Iraq v. Beaty,*
  556 U.S. 848 (2009) ...........................................................................................9, 20

*CBS, Inc. v. Snyder*
  798 F. Supp. 1019 (S.D.N.Y. 1992), *aff'd,* 989 F.2d 89 (2d Cir. 1993) ...............................17

*Cook v. Bates,*
  92 F.R.D. 119 (S.D.N.Y. 1981) ...........................................................................10

*Ctr. for Biological Diversity v. Delgado,*
  61 F. App'x. 381 (9th Cir. 2003) .........................................................................10

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001)...................................................................................8

*Drywall Tapers and Pointers of Greater New York, Local Union 1974 of I.U.P.A.T.,*
  *AFL-CIO v. Nastasi & Associates Inc.,*
  488 F.3d 88 (2d Cir. 2007)...........................................................................10, 12

*E.E.O.C. v. A.T.&T. Co.,*
  506 F.2d 735 (3d Cir. 1974).........................................................................16, 18

*Farmland Dairies v. Commissioner of New York State Dep't of Agriculture and Markets,*
  847 F.2d 1038 (2d Cir. 1988)...............................................................................9

*Fleming v. Citizens for Albemarle, Inc.,*
  577 F.2d 236 (4th Cir. 1978), *cert. denied,* 439 U.S. 1071 (1979)........................................10

*Hodgson v. United Mine Workers,*
  473 F.2d 118 (D.C. Cir. 1972) ...........................................................................11

*In re Holocaust Victim Assets Litig.,*
  225 F.3d 191 (2d Cir. 2000)................................................................................9

*Liddell v. Caldwell,*
  546 F.2d 768 (8th Cir. 1976) ...........................................................................10

*Marino v. Ortiz,*
  484 U.S. 301 (1988)...........................................................................................9

*Massachusetts v. Microsoft,*
  373 F.3d 1199 (D.C. Cir. 2004)...........................................................................23

*N. Y. Pub. I. R. G. v. Regents*,
  516 F.2d 350 (2d Cir. 1975)................................................................21

*Natural Resources Defense Council v. Costle*,
  561 F.2d 904 (D.C. Cir. 1977) ......................................................11, 20

*Northwest Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) .............................................................19

*Smoke v. Norton*,
  252 F.3d 468 (D.C. Cir. 2001) ..........................................................12

*Spirt v. Teachers' Ins. & Annuity Ass'n*,
  93 F.R.D. 627 (S.D.N.Y.), *aff'd in part and rev'd in part on other grounds,* 691 F.2d
  1054 (2d Cir. 1982), *vacated on other grounds,* 463 U.S. 1223 (1983) ...........................10, 11

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) .............................................................16

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972)........................................................................19

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977)...............................................................9, 11, 12

*United States Postal Serv. v. Brennan*,
  579 F.2d 188 (2d Cir. 1978)..............................................................22

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ..................................................... passim

*United States v. Covington Technologies Co.*,
  967 F.2d 1391 (9th Cir. 1992) ..........................................................11

*United States v. Hooker Chems. & Plastics Corp.*,
  540 F. Supp. 1067 (W.D.N.Y. 1982) .................................................10

*Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of City of White Plains*,
  79 F.R.D. 437 (S.D.N.Y. 1978) .......................................................21

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
  782 F. Supp. 870 (S.D.N.Y. 1991) ...................................................11

## STATUTES

N.Y. City Admin. Code § 12-307(4) .............................................................6

N.Y. City Admin. Code § 12-307(6)b ......................................................7, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24 ................................................................................................................ passim

Fed. R. Civ. P. 24(a) ...................................................................................................................7, 8

Fed. R. Civ. P. 24(a)(2) ...............................................................................................................23

Fed. R. Civ. P. 24(b) ..............................................................................................................22, 23

Fed. R. Civ. P. 24(b)(1)(B) ..........................................................................................................22

Fed. R. Civ. P. 24(b)(3) ................................................................................................................22

Fed. R. Civ. P. 24(c) .....................................................................................................................23

Fed.R. App. P. 4 .............................................................................................................................9

Proposed Intervenor Sergeants Benevolent Association (the "SBA") submits this Memorandum of Law in Support of its Motion to Intervene Pursuant to Federal Rule of Civil Procedure 24.

## I.   INTRODUCTION

The SBA, a collective bargaining unit representing sergeants in the New York City Police Department (the "NYPD"), respectfully requests that this Court allow it to intervene in this matter for the purposes of (1) participating in the remedies phase of this matter, and (2) timely (within the prescribed 30-day period) appealing this Court's August 12, 2013 opinions.  The SBA submits that its participation will bring to these proceedings a unique and valuable perspective concerning the stop and frisk practices at issue in this matter.  Sergeants spend their days working in the field, on patrols, conducting surveillance, and in numerous other situations that bring them directly in contact with potential suspects.  In addition, sergeants are responsible for supervising subordinate officers, directing their patrols, reviewing records of their stops, and otherwise training, advising, and disciplining them.  There is no group that can serve as a better voice for the police on the ground, dealing with the day-to-day realities of law enforcement in New York.

As demonstrated below, the SBA satisfies the standards for mandatory intervention and, in the alternative, permissive intervention.  Of particular note is the SBA's direct and substantial interest in any reforms to stop and frisk policies.  Such reforms likely will directly affect SBA members by increasing their workload and affecting staffing and employee safety, practical impacts that are mandatory subjects of collective bargaining under New York law.  The City of New York (the "City") is required to negotiate with the SBA regarding matters that have a practical effect on sergeants' workload, staffing, safety, and other matters that may be affected by City decisions.

Moreover, police sergeants play a unique, dual role as police officers who both supervise *and* personally conduct stops and frisks. Accordingly, the Court's opinions in this matter have given sergeants substantial future responsibility for ensuring that all suspects' constitutional rights are respected. While this Court is correct to acknowledge the importance of sergeants to this process and to note that they will be critical to any future reforms, it should also know that such reforms have the potential both to put sergeants' safety at risk and to impose on them burdensome and possibly challenging additional duties and responsibilities. Moreover, failure to meet those new duties and responsibilities can also lead to disciplinary measures by the NYPD against the SBA's members, resulting in a potential divergence of interests between the City and SBA members. As the organization representing the individuals most directly affected by changes to NYPD policy, the SBA should be permitted to present the Court with its analysis of any proposed reforms based on the collective knowledge, experience, and expertise of its members.

Having reviewed this Court's two opinions in this matter dated August 12, 2013 (the "Liability Opinion" and the "Remedies Opinion"; collectively, the "Opinions"), the SBA has determined that its members, who are both field police officers and supervisors, will be uniquely affected by both the remedial proceedings to be conducted before this Court and the appeal of this matter currently pending before the Second Circuit Court of Appeals, particularly when the impact of the Court's decision will directly affect its members' day-to-day job responsibilities. Therefore, it is especially important that the SBA be made a party to those proceedings. Relevant case law permits unions to intervene post-judgment for purposes of both participating in remedial proceedings and seeking review of the judgment on appeal.

Simply put, the SBA's intervention in this matter will benefit the Court and its appointed Monitor in their effort to identify needed changes to NYPD's stop and frisk practices and to decide among the options for change, making a positive difference both for the SBA's members and for the public.  This Court should grant the SBA's motion to intervene, give its members the necessary representation that they would not otherwise have, and create an opportunity for meaningful and effective reforms that will be satisfactory to all interested and affected parties.

## II.    FACTUAL BACKGROUND

The SBA is a an independent municipal police union whose membership consists of approximately 13,000 active and retired sergeants of the NYPD.  The SBA is the collective bargaining unit for those sergeants in their contract negotiations with the City of New York (the "City").  The SBA's central mission is to advocate for, and protect the interests of, its NYPD police sergeant members.  Affidavit of Edward D. Mullins ("Mullins Aff.") ¶ 3.

NYPD police sergeants are at the front line of police services in the City.  Mullins Aff. ¶ 7.  Among other things, a sergeant is responsible for supervising patrolmen and other subordinate officers, implementing policies of the NYPD on the street level.  *Id.*  A sergeant is required to train, instruct, monitor, and advise subordinates in their duties, and is held directly responsible for the performance of those subordinates.  *Id.*   Failure to carry out any of the above responsibilities can, and often does, result in the imposition of disciplinary sanctions against the sergeant, who is the front-line supervisor responsible for carrying out the mission of the NYPD during thousands of street-level encounters.  Mullins Aff. ¶ 12.

In addition to supervisory responsibilities, however, a sergeant also routinely performs field police work, which typically consists of relatively complex law enforcement activities with which only sergeants are entrusted.  Mullins Aff. ¶ 8.  Some sergeants spend the entire work day in the field patrolling streets in his or her precincts, either in uniform or in plain clothes

conducting surveillance.  Mullins Aff. ¶ 9.  Sergeants also patrol in the field in cars, unmarked

vans, on foot, and on horseback.  Mullins Aff. ¶ 10.  They are directly dispatched to more

difficult and complex calls, are expected to determine and verify probable cause in all arrests in

their units, and are the only police officers authorized to use certain types of non-lethal weapons

such as Tasers.  *Id.*  Sergeants are also required to prepare various law enforcement reports and

are ultimately responsible for all paperwork in their units.  Mullins Aff. ¶ 11.

       In this matter, the Court has examined the constitutionality of a policing tool referred to

as "stop, question and frisk," whereby a police officer may briefly detain an individual upon

reasonable suspicion that criminal activity "may be afoot" and may, in connection with the

detention, perform a protective frisk of the individual if the officer reasonably believes that the

person is in possession of a weapon.  Liability Op. 19-26.  Plaintiffs in this matter (characterized

by the Court as "blacks and Hispanics who were stopped"), individually and on behalf of a class,

argued that NYPD's use of stop and frisk (1) violated their Fourth Amendment rights because

they were stopped without a legal basis; and (2) violated their Fourteenth Amendment rights

because they were targeted for stops based on their race.  Liability Op. 1-2.  On August 12, 2013,

following a nine-week bench trial, the Court issued and entered the Liability Opinion, finding the

City liable for violating Plaintiffs' Fourth and Fourteenth Amendment rights; and the Remedies

Opinion, which ordered a permanent injunction requiring the City to conform its stop, question

and frisk practices to the U.S. Constitution.  Liability Op., Dkt. No. 373; Remedies Op., Dkt. No.

372.  The Remedies Opinion also ordered the appointment of an independent Monitor to oversee

the implementation of reforms that would bring the stop and frisk practices into constitutional

compliance.  Remedies Op. 9-13.

The Remedies Opinion contains the following specific statements and findings regarding sergeants and supervising officers generally:

- "An essential aspect of the Joint Process Reforms will be the development of an improved system for monitoring, supervision, and discipline," Remedies Op. 23;

- "[C]omprehensive reforms may be necessary to ensure the constitutionality of stops, including revisions to written policies and training materials, improved documentation of stops and frisks, direct supervision and review of stop documentation by sergeants," Remedies Op. 23;

- "[B]ased on the findings in the Liability Opinion, there is an urgent need for the NYPD to institute policies specifically requiring sergeants who witness, review, or discuss stops to address not only the effectiveness but also the constitutionality of those stops, and to do so in a thorough and comprehensive manner," Remedies Op. 24; and

- "Because body-worn cameras are uniquely suited to addressing the constitutional harms at issue in this case, I am ordering the NYPD to institute a pilot project in which bodyworn cameras will be worn for a one-year period by officers on patrol in one precinct per borough — specifically the precinct with the highest number of stops during 2012. The Monitor will establish procedures for the review of stop recordings by supervisors and, as appropriate, more senior managers," Remedies Op. 27.

The Liability Opinion also specifically mentions sergeants in numerous places, highlighting the role of sergeants both in carrying out and in supervising stop, question and frisk practices. For example, the Court notes that Sergeant Jonathan Korabel was one of two officers who conducted one of the stop-and-frisk arrests at issue in this matter. Liability Op. 125-26 n.463. Similarly, the Court identified Sergeant James Kelly as one of three officers involved in what the Court determined was an unconstitutional frisk of Plaintiff Floyd. Liability Op. 164. The Court noted as to one of the incidents at issue that, after conducting the stop and recovering a knife, two officers called Sergeant Daniel Houlahan to the scene to assist them in the field. Liability Op. 142-43.

While the Opinions conclude that many of the actions of these sergeants were improper and that the stops and frisks should have been conducted differently, they do not contemplate the involvement of sergeants in the remedial proceedings. Nor do they address the perspectives and

experiences of sergeants as police officers with the dual role of both conducting and supervising or reviewing police action that involves stop and frisk practices.  Likewise, the Opinions do not analyze the effect that the proposed reforms will have on the collective bargaining rights of the SBA.  Nor do the Opinions acknowledge the potential divergence of interests between the City and its employees due to their status as collective bargaining counterparties.

Because the SBA is a recognized bargaining unit representing employees of New York City (*i.e.*, police officers), its bargaining authority is defined by the New York City Collective Bargaining Law ("NYCCBL").  N.Y. City Admin. Code § 12-307(4).   The NYCCBL provides:

> [A]ll matters, including but not limited to pensions, overtime and time and leave rules which affect employees in the uniformed police, fire, sanitation and correction services, or any other police officer as defined in subdivision thirty-four of section 1.20 of the criminal procedure law who is also defined as a police officer in this code, shall be negotiated with the certified employee organizations representing the employees involved.

N.Y. City Admin. Code § 12-307(4).  The SBA is a certified employee organization representing police sergeants, and is recognized by the City as sole and exclusive collective bargaining representative for all employees of the NYPD with the title of sergeant.[1]  Therefore, the City is required to negotiate with the SBA all matters within the scope of collective bargaining under the NYCCBL.  The NYCCBL circumscribes the scope of collective bargaining as follows:

> **Scope of collective bargaining; management rights. a.** Subject to the provisions of subdivision b of this section and subdivision c of section 12-304 of this chapter, public employers and certified or designated employee organizations shall have the duty to bargain in good faith on wages (including but not limited to wage rates, pensions, health and welfare benefits, uniform allowances and shift premiums), hours (including but not limited to overtime and time and leave benefits), working conditions and provisions for the deduction from the wages or salaries of employees in the appropriate bargaining unit who are not members of the certified or designated employee organization of an agency shop fee to the extent permitted by law, but in no event exceeding sums equal to the periodic dues uniformly required of its members by such certified or designated employee

---

[1] *See* Sergeants Benevolent Association June 1, 2005 – August 29, 2011 Agreement, *available at* http://sbanyc.org/documents/resources/2005-2011SbaContract.pdf

organization and for the payment of the sums so deducted to the certified or
designated employee organization, subject to applicable state law, except that:

* * *

**b.** It is the right of the city, or any other public employer, acting through its
agencies, to determine the standards of services to be offered by its agencies;
determine the standards of selection for employment; direct its employees; take
disciplinary action; relieve its employees from duty because of lack of work or for
other legitimate reasons; maintain the efficiency of governmental operations;
determine the methods, means and personnel by which government operations are
to be conducted; determine the content of job classifications; take all necessary
actions to carry out its mission in emergencies; and exercise complete control and
discretion over its organization and the technology of performing its work.
Decisions of the city or any other public employer on those matters are not within
the scope of collective bargaining, but, *notwithstanding the above, questions
concerning the practical impact that decisions on the above matters have on
terms and conditions of employment, including, but not limited to, questions of
workload, staffing and employee safety, are within the scope of collective
bargaining.*

N.Y. City Admin. Code § 12-307(6)b (emphasis added).  While the City retains discretion under

the NYCCBL to make high-level policy decisions regarding how public employees such as

police officers are to perform their work, the practical impact resulting from those decisions

remains the subject of collective bargaining.  Unions such as the SBA have authority to negotiate

with the City regarding matters that have a practical effect on their workload, staffing, safety,

and other matters that may be affected by City decisions.  The City is required to negotiate with

the SBA all matters within the scope of collective bargaining under the NYCCBL.

## III.    ARGUMENT

### A.    The SBA May Intervene as of Right Pursuant to Rule 24(a).

Federal Rule of Civil Procedure 24(a) provides for non-party intervention as of right.

Fed. R. Civ. P. 24(a).  A court must grant a non-party's motion to intervene as of right if: (1) the

motion is timely; (2) the putative intervenor has an interest in the existing litigation; (3) the

intervenor's interest would be impaired by the outcome of the litigation; and (4) the intervenor's

interest will not be adequately represented by the existing parties.  *Id.*; *D'Amato v. Deutsche Bank,* 236 F.3d 78, 84 (2d Cir. 2001).  Courts construe these requirements liberally in favor of intervention, a principle the Ninth Circuit has articulated as follows:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, [the court] often prevent[s] or simplif[ies] future litigation involving related interests; at the same time, [the court] allow[s] an additional interested party to express its views . . . .

*United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (emphasis in original) (internal quotation marks and citation omitted).

Here, all four factors are met.  This Motion is timely because the SBA has filed it before the reform implementation has begun and before the time for appealing the Opinions expires. The SBA's interest in the litigation is that the reforms will directly affect SBA members by increasing their workload and affecting staffing and employee safety, practical impacts that are mandatory subjects of collective bargaining under New York law.  That interest will be impaired if the SBA is not permitted to provide input regarding the practical import of proposed reforms. The SBA's interest would not adequately be represented by the City, which, though its interests may overlap with those of the SBA, will not present the Court or the Monitor with the unique perspective that the SBA will present—a perspective that will also benefit the Court and the Monitor as they develop remedial reforms to specific NYPD practices.  Because it satisfies the requirements of Rule 24(a), the SBA should be granted intervention in this matter as of right.

### 1.    This Motion Is Timely.

Courts determine the timeliness of a motion for leave to intervene by examining the totality of the circumstances, with a particular emphasis on four factors:

> (1) how long the applicant had notice of its interest in the action before making the motion; (2) the prejudice to the existing parties resulting from this delay; (3)

the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention.

*In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000); *accord Farmland Dairies v. Commissioner of New York State Dep't of Agriculture and Markets*, 847 F.2d 1038, 1044 (2d Cir. 1988). In evaluating the timeliness of a post-judgment application to intervene for the purposes of participating in the appellate or relief phases of a litigation, "[t]he critical inquiry . . . is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977).

Courts frequently permit intervention in a district court matter after the issuance of a judgment in circumstances where the party seeking to intervene did not have notice of its interest in the litigation until after the court issued a judgment, and where the party seeking to intervene will be the only party prosecuting an appeal. As the D.C. Circuit noted in *Acree v. Republic of Iraq*:

> Post-judgment intervention is often permitted . . . where the prospective intervenor's interest did not arise until the appellate stage or where intervention would not unduly prejudice the existing parties. *See* Wright & Miller § 1916.

370 F.3d 41, 50 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848 (2009).

Courts have stated that a non-party seeking to participate post-judgment in a district court matter for purposes of appealing the judgment should move to intervene in the district court matter and then file a notice of appeal. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("We think the better practice [as contrasted with filing a non-party appeal directly with the Circuit Court] is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable."). When a non-party moves to intervene within the 30-day period provided for taking an appeal pursuant to Federal Rule of Appellate Procedure 4, the motion is

timely.  *See Drywall Tapers and Pointers of Greater New York, Local Union 1974 of I.U.P.A.T.,*

*AFL-CIO v. Nastasi & Associates Inc.*, 488 F.3d 88, 95 (2d Cir. 2007) ("Since Local 52 filed a

notice of appeal within 30 days of the Order issuing the Consent Injunction, albeit at a time when

it was not a party, its status as a party, if intervention is granted, should permit it to renew its

appeal.").

    The timeliness requirement of Rule 24 is a lenient one.  *See, e.g., Cook v. Bates,* 92

F.R.D. 119, 122 (S.D.N.Y. 1981) ("In the absence of prejudice to the opposing party, even

significant tardiness will not foreclose intervention.").  Thus, even when a motion to intervene

"was filed several years after the underlying matter had been pending in this court, mere lapse of

time does not render it untimely."  *Id.*

> a.   **The SBA Has Acted Promptly to Participate in the Remedial
>        Proceedings.**

    This Motion is timely to the extent that it seeks intervention in this matter for the purpose

of participating in the remedial proceedings to be conducted pursuant to the Remedies Opinion.

Courts have held that intervention after the liability phase of a litigation is timely when a yet-to-

be-determined remedy will affect the rights of the intervening third party.  *See, e.g., Spirt v.*

*Teachers' Ins. & Annuity Ass'n*, 93 F.R.D. 627, 637 (S.D.N.Y. 1982), *aff'd in part and rev'd in*

*part on other grounds*, 691 F.2d 1054 (2d Cir. 1982), *vacated on other grounds*, 463 U.S. 1223

(1983); *United States v. Hooker Chems. & Plastics Corp.*, 540 F. Supp. 1067, 1082-83

(W.D.N.Y. 1982); *see also Fleming v. Citizens for Albemarle, Inc.*, 577 F.2d 236, 237-38 (4th

Cir. 1978), *cert. denied*, 439 U.S. 1071 (1979); *Liddell v. Caldwell*, 546 F.2d 768, 771 (8th Cir.

1976).  Accordingly, courts have permitted parties to intervene at the post-judgment remedy

phase.  *See, e.g., Ctr. for Biological Diversity v. Delgado*, 61 F. App'x. 381 (9th Cir. 2003); *see*

*also United States v. Covington Technologies Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (holding

that court may permit intervention at any stage in the proceeding, including post-judgment).

In granting a party's post-judgment motion for leave to intervene for certain purposes, the

*Spirt* court noted that:

> [I]t is beyond peradventure that post-judgment intervention motions are, in certain
> circumstances, "timely," *see*, *e.g.*, *United Airlines, Inc. v. McDonald*, 432 U.S.
> 385, 396, 97 S.Ct. 2464, 2471, 53 L.Ed.2d 423 (1977), and that such
> circumstances may be presented where, as is the case here, intervention is sought
> with respect to a post-judgment proceeding that seeks to resolve a substantial
> problem in formulating the relief to be granted on account of the judgment, *see*
> *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C.Cir.1972).

93 F.R.D. at 637. Courts have expressly recognized as timely post-judgment intervention for the

purpose of having a voice in shaping the relief to be granted. *See Natural Resources Defense

Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977); *Hodgson v. UMW*, 473 F.2d 118 (D.C. Cir.

1972); *see also Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp.

870 (S.D.N.Y. 1991) (holding that motion to intervene was timely even though filed almost two

years after notice of interest in case, because motion was filed shortly after interest became

direct). Thus, the SBA is timely for intervention in the remedies phase before this Court.

### b. The SBA Has Acted Promptly to Appeal the Opinions.

The SBA has filed this Motion within the 30-day period for filing a Notice of Appeal

(and has simultaneously filed its own Notice of Appeal). Accordingly, this motion is timely for

the purpose of the SBA's participation in the Appeal.

While Rule 24 does not set forth a specific time for seeking intervention for the purpose

of appealing a judgment, courts that have examined this issue have held that, if the motion to

intervene is filed within the 30-day period for filing a notice of appeal, it is timely. For example,

the U.S. Supreme Court held in *McDonald* that a motion to intervene filed after judgment, but

within the 30-day period for parties to the litigation to appeal the judgment, was timely.

*McDonald*, 432 U.S. at 396 ("[T]he respondent filed her motion within the time period in which the named plaintiffs could have taken an appeal. We therefore conclude that the Court of Appeals was correct in ruling that the respondent's motion to intervene was timely filed and should have been granted.").  Similarly, in *Drywall Tapers*, the Second Circuit held that a notice of appeal filed by a non-party, after the non-party moved for leave to intervene, but before the court had ruled on the motion, was not untimely.  488 F.3d 88, 95 (2d Cir. 2007).

The prospect that the City may not pursue the Appeal further supports a finding that this Motion is timely.[2]  Courts have held that, when a party seeking to intervene in a district court case that has proceeded to judgment acts promptly after finding out that an existing party may not appeal the judgment, its motion for leave to intervene is timely.  The D.C. Circuit reasoned in such a case as follows:

> [T]he appellants claim that in moving to intervene they were prompted by the post-judgment prospect that the Government might not appeal. Prior to the entry of judgment, the appellants say, they had no reason to intervene; their interests were fully consonant with those of the Government, and those interests were adequately represented by the Government's litigation of the case. We agree. In these circumstances a post-judgment motion to intervene in order to prosecute an appeal is timely (if filed within the time period for appeal) because "the potential inadequacy of representation came into existence only at the appellate stage." *Dimond v. District of Columbia,* 792 F.2d 179, 193 (D.C. Cir. 1986); *see United Airlines, Inc. v. McDonald,* 432 U.S. 385, 395-96, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977).

*Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001).

Here, the SBA did not have reason to intervene for purposes of appealing the Opinions until after the Opinions were issued.  Moreover, the SBA's reason for intervention was amplified after it learned that the City, under a prospective new mayoral administration, may not continue

---

[2] On August 16, 2013, the City filed a Notice of Appeal of the Opinions, thereby initiating proceedings in the U.S. Court of Appeals for the Second Circuit.  Notice of Appeal, Dkt No. 379. While the Appeal remains pending at this time, following the Democratic primary election held on September 10, 2013, the only two remaining Democratic candidates have stated that they will not pursue the Appeal.

to pursue the Appeal.  The SBA acted promptly after learning of its interest in this matter and, therefore, this Motion is timely.

        **c.**    **The SBA's Intervention Would Not Prejudice the Existing Parties, and Denying Intervention Would Prejudice the SBA.**

Because the liability phase of this matter has already been decided by this Court and the remedies phase is only beginning, there can be no prejudice to the existing parties.  The SBA seeks the right to participate only in shaping the remedies to be awarded at the district court level and review of the Opinions at the appellate level.  Because both of the phases in which the SBA would participate as an intervenor are in their earliest stages, its addition as a party to this matter cannot result in any prejudice to Plaintiffs, the City, or any of the individual defendants.

On the other hand, if the SBA is excluded from either the Appeal or the remedial proceedings, it will be severely prejudiced because it will be prevented from presenting its legal theories regarding the Opinions to the reviewing court and simultaneously shut out of the reform process, a process that will address and seek to change the way in which sergeants do their jobs, and thereby directly affect its members' terms and conditions of employment.

As this Court acknowledged in the Opinions, sergeants play a major role, both directly in the field and indirectly as supervising officers, in the administration of stop, question and frisk policies.  Indeed, as the evidence introduced at trial established, sergeants are primarily responsible for carrying out the street-level practices of the NYPD's administration, including the implementation of its stop, question and frisk policy.  The Opinions specifically note numerous instances of stops that were either conducted personally by sergeants or were reviewed or supervised by sergeants.  *See*, *e.g.*,  Liability Op. 125-26 n.463 (noting that sergeant was one of two officers who conducted stop and frisk); Liability Op. 164 (identifying sergeant as one of three officers involved in frisk); Liability Op. 142-43 (noting that two officers who conducted

stop called sergeant to scene to assist them).  The perspectives of the sergeants regarding the practical factors at play in policing should be presented to this Court as this matter moves forward.

### 2.    The SBA Has a Direct, Protectable Interest in This Action.

The Opinions specifically address the role sergeants will be required to play under the reformed system.  Thus, the reforms they mandate will have an immediate practical impact on workload, staffing, safety, and other terms and conditions of employment of the SBA's members.  For example, the Remedies Opinion contains directives for "an improved system for monitoring, supervision, and discipline," Remedies Op. 23; "direct supervision of review of stop documentation by sergeants," Remedies Op. 23; "policies specifically requiring sergeants who witness, review, or discuss stops to address not only the effectiveness but also the constitutionality of those stops, and to do so in a thorough and comprehensive manner," Remedies Op. 24; and, in connection with the Court's order that the NYPD institute the use of bodyworn cameras, "procedures for the review of stop recordings by supervisors and, as appropriate, more senior managers," Remedies Op. 27.

All of these findings and conclusions will have a significant practical impact on the terms and conditions of the SBA's members' employment because, among other things, they impose an increased workload on sergeants, who will now be required to monitor more directly their subordinates' stops and documentation thereof.  The Court's findings also affect the safety of sergeants who frequently conduct stops themselves and may now be limited in their ability to protect themselves from dangerous situations involving weapons, depending upon the reforms. The findings also direct the creation of new disciplinary procedures for officers who are found to have engaged in unconstitutional stops, which will affect sergeants both in the conduct of stops and in the supervision of subordinate officers who conduct stops.

Many of these mandated reforms fall within the scope of collective bargaining as set forth in § 12-307(6)b of the NYCCBL.  As discussed above, the City is required to negotiate with the SBA regarding such reforms.  Thus, the SBA has a direct interest in advocating for its members in this matter by participating in the proceedings that will present the options for reforms and by raising arguments in the Appeal that protect its members.  The Opinions directly address the role of sergeants in the carrying out and supervision of the stop and frisk policy.  Changes to that policy could result in practical impacts affecting the terms and conditions of SBA members' employment.  Thus, the SBA has a protectable legal interest in both the Appeal and the remedial process.  Participation in the Appeal will allow the SBA to advocate for its members' interests as front-line officers who are charged with carrying out NYPD policy in the field—officers who will be directly affected in a practical way should the Opinions stand.  For similar reasons, the SBA should have a seat at the table as the remedial process moves forward because its members have uniquely relevant knowledge and valuable insight into what reforms would work in practice.

On a more immediate level, because of the uncertainty now surrounding previously well-established and ingrained stop and frisks practices, the implementation of disciplinary measures for officers who engage in stops that are later found to be unconstitutional potentially could serve to deter officers from stopping and/or frisking suspects at all,[3] an effect that would have direct relevance to officer safety because officers will be stripped of their ability to locate dangerous weapons carried by individuals they question.  Participation in this matter by the SBA would serve to allay such concerns by giving officers more direct representation in both the Appeal and

---

[3] At least one union has already warned officers not to conduct stops if they fear doing so might violate any emerging new rules or laws regarding the stop and frisk practices.  *See* Dana Sauchelli, *NYPD cops say they won't go above and beyond the call of duty over 'stop-frisk' lawsuit risks*, N.Y. POST, Aug. 24, 2013.

the reform process.  For this reason, the SBA's involvement is critical to the safety and

confidence of NYPD officers, who are currently left to make difficult judgment calls in the field

without any guidance or any assurance that their interests are being considered and protected in

this matter.

Courts have permitted intervention by unions when, as here, collective bargaining may be

undermined by the result of a court proceeding to which the unions are not parties.  *See E.E.O.C.*

*v. A.T.&T. Co.*, 506 F.2d 735, 741-42 (3d Cir. 1974); *Stallworth v. Monsanto Co.*, 558 F.2d 257,

268-69 (5th Cir. 1977).  In *City of Los Angeles*, *supra*, the Ninth Circuit affirmed the district

court's conclusion that a police union had an interest in litigation involving a proposed consent

decree between the City of Los Angeles and the United States, because the consent decree may

have been inconsistent with the terms of the memorandum of understanding between the city and

the union governing the terms and conditions of the Police League's members' employment. 288

F.3d at 399-400.  The court observed, "The Police League has state-law rights to negotiate about

the terms and conditions of its members' employment as LAPD officers and to rely on the

collective bargaining agreement that is a result of those negotiations."  *Id.*  The Ninth Circuit

reasoned that, to the extent that it was disputed whether or not the consent decree conflicted with

the memorandum of understanding, "the Police League has the right to present its views on the

subject to the district court and have them fully considered in conjunction with the district court's

decision to approve the consent decree." *Id* at 400.

Other courts have employed similar reasoning in finding a protectable interest for unions

seeking to intervene in litigation.  In *EEOC v. AT & T*, a union was permitted to intervene to

contest a proposed consent decree between the government and an employer that could have

affected the terms of a collective bargaining agreement.  506 F.2d 735, 741-42 (3d Cir. 1974).  In

*CBS, Inc. v. Snyder,* the court recognized that a union had a legally protectable interest in participating in proceedings that may have affected the interpretation or enforceability of a collective bargaining agreement.  798 F. Supp. 1019, 1023 (S.D.N.Y. 1992), *aff'd,* 989 F.2d 89 (2d Cir. 1993).

The Court's prescribed changes to supervision, training, discipline, and other policing matters create a protectable interest for the SBA because they interfere with the ability of the SBA to negotiate collectively regarding the practical impact of proposed City reforms—specifically, the way in which those reforms will affect sergeants' ability to perform their primary policing duties while simultaneously managing paperwork concerning stops.  Moreover, the practical effect of such reforms could be to discourage officers from performing stop and frisks altogether in order to avoid disciplinary or legal proceedings in the event that a given stop is later determined to have been unconstitutional.  Such an impact bears directly on officer safety.  To the extent that it is disputed whether or not the Opinions conflict with any collective bargaining rights, the SBA "has the right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision[.]"  *City of Los Angeles*, 288 F.3d at 400.

> **3.**     **The SBA's Interest May Be Impaired by the Disposition of This Action.**

If the SBA is not permitted to intervene in this matter and in the Appeal on the bases set forth above, it and its members will be bound by the result of a proceeding in which they were not permitted to participate.  The results of both the Appeal and the reform proceedings will have a direct, practical impact on the SBA's membership that it will not have been properly permitted to negotiate collectively in accordance with the NYCCBL.  Therefore, the SBA's "continuing ability to protect and enforce [its] contract provisions will be impaired or impeded by" a

judgment that approves the mandated reforms without the SBA's involvement or input.  *AT & T,* 506 F.2d at 742; *see also City of Los Angeles*, 288 F.3d at 401 (permitting intervention of union to challenge consent decree because "the consent decree by its terms purports to give the district court the power, on the City's request, to override the Police League's bargaining rights under California law and require the City to implement disputed provisions of the consent decree").

While the presence of the City as a party to this matter will protect some of the interests of the SBA, it will not protect them all because, although there is some similarity and overlap of interests between the two parties, the SBA has a distinct mission and objective:  protection of and advocacy for its members.  Mullins Aff. ¶ 3.  The City, by contrast, will protect and advocate for the interests of the NYPD and the Department as a whole, without nearly as much regard for the practical impact any changes to policy will have on individual police officers.  The SBA is particularly unique in this respect because no other rank of police officer plays the dual role that is played by sergeants.

Should the Second Circuit affirm the Opinions, the practical impact will be the implementation of reforms without any participation by the sergeants who will be immediately responsible for implementing them.  Such a result likely would violate the NYCCBL or otherwise impair those sergeants' collective bargaining rights.  Likewise, conducting the remedial proceedings without the SBA would prevent the SBA from representing its members in discussions about the practical impact of proposed reforms.  It would also deprive the Court and the court-appointed Monitor of the ability to hear directly relevant perspectives on those practical impacts before deciding what options for reform are appropriate.

4.     **The SBA's Interest Will Not Be Adequately Represented by the Parties to This Action.**

The City is an inadequate representative of the SBA's interests in both this matter and in the Appeal.  To determine whether the existing parties to a matter adequately represent a prospective intervenor's interest, courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.  *Northwest Forest Res. Council v. Glickman,* 82 F.3d 825, 838 (9th Cir. 1996). The requirement of inadequate representation "is satisfied if the applicant shows that representation of his interest [by existing parties] *may be* inadequate." *City of Los Angeles, supra,* 288 F.3d at 398 (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972)) (alteration in original) (emphasis added) (internal quotation marks omitted).  This showing is "minimal." *Trbovich*, 404 U.S. at 538 n.10.

Here, the City will not "undoubtedly" make "all" of the SBA's arguments.  Certainly, if the City (under a new mayor) chooses not to pursue the Appeal, *none* of the SBA's arguments will be made.  Representation is inadequate when an existing party has chosen not to pursue an appeal and a non-party intervenes for the purpose of prosecuting the appeal. *Yniguez*, 939 F.2d at 730 ("Having decided not to appeal the district court's decision on the merits, the Governor inadequately represents the interests of [proposed intervenors]").  In *Yniguez*, for example, the sponsors of a ballot initiative chose not to seek to intervene in the district court proceedings, relying on a governmental defendant to represent their interests. *Id.*  When they learned that the governmental defendant had opted not to appeal, they sought to intervene for purposes of bringing the appeal themselves.  *Id.*  The district court denied intervention but the Ninth Circuit

reversed, holding, among other things, that the proposed intervenors had established inadequacy of representation because "no representation constitutes inadequate representation." *Id.* at 737; *see also Acree*, 370 F.3d at 50 ("In particular, courts often grant post-judgment motions to intervene where no existing party chooses to appeal the judgment of the trial court.").  Likewise here, the City's representation is inherently inadequate because it may not even prosecute the Appeal at all, an eventuality that requires the SBA to intervene now to preserve its rights.

Furthermore, even if the Appeal does continue, the City may choose not to challenge the need for reforms such as proposed increases in sergeants' responsibilities to review stop documentation and recordings, and may instead focus on preserving in some form the broader practices this Court held were impermissible, such as the use of descriptions and performance goals.  For similar reasons, the City may not be capable of or willing to present arguments that are uniquely important to the SBA's members because its emphasis may be on the higher-level institutional practices that it defended below.  Moreover, the SBA's perspective concerning the discrete supervisory, disciplinary, and safety elements of the Opinions may be neglected by the City if it sets its sights on broader, less granular issues such as the district court's finding that the City was deliberately indifferent to constitutional offenses.  In this context, the City may have an incentive to agree to overly broad oversight reforms, rather than evaluating individually how each proposed reform might ensure the constitutionality of the NYPD's police work while simultaneously preserving its effectiveness.

The Second Circuit has held that intervention by a non-party is appropriate when an existing party's perspective on the issues at stake may be less focused and informed than that of the proposed intervenor.  *See Costle*, 561 F. 2d at 912 (granting motion to intervene because "the appellants' interest is more narrow and focussed [sic] than EPA's, being concerned primarily

with the regulation that affects their industries").  Due to its members' narrower and more focused expertise, the SBA is likely to make a more vigorous presentation to the court regarding the discrete details of their supervisory and field work than the City will be able to make.  *N.Y. Pub. I. R. G. v. Regents*, 516 F.2d 350 (2d Cir. 1975) ("[W]e are satisfied that there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the [state authority party]").

Courts also have noted that unions and their collective bargaining counterparties (i.e., employers) do not, as a general matter, have an identity of interests.  *See Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of City of White Plains*, 79 F.R.D. 437, 441 (S.D.N.Y. 1978) ("Although the municipalities involved have the same interest in seeking qualified and efficient fire personnel, it could hardly be said that all the interests of the union applicants are the same as those of the municipalities.  This court would be hard pressed to find that the employers of the unions, with whom the collective bargaining is done, would represent the interests of the unions in these agreements and otherwise with the same vigor and advocacy as would the unions themselves.").  Here, the SBA and the City, while aligned on many issues, are adversaries to one another in the collective bargaining process and find themselves in antagonistic postures toward one another in many instances.[4]  Thus the SBA cannot rely on the City to present the views of police sergeants, city employees who sit on the other side of the City at the collective bargaining table.

---

[4] For example, sergeants face potential civil liability for approving stops.  In such circumstances, the City and SBA member's positions are adversarial to the extent that the City seeks to argue that the sergeant did not act within the scope of his or her employment in order to decline indemnification and thereby protect its own interests.

The SBA would not adequately be represented by the City in either the Appeal or the remedial phase of this matter. Thus, the SBA should be allowed to weigh in on the issues in this matter on its own behalf.

**B.      Alternatively, the SBA Should Be Granted Permissive Intervention.**

In the alternative, this Court should find that the SBA meets the standard for permissive intervention, which may be granted in the court's discretion. Fed. R. Civ. P. 24(b). The threshold requirement for permissive intervention is a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention must not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In addition, the court may consider factors such as whether the putative intervenor will benefit from the application, the nature and extent of its interests, whether its interests are represented by the existing parties, and whether the putative intervenor will contribute to the development of the underlying factual issues. *United States Postal Serv. v. Brennan,* 579 F.2d 188, 191-92 (2d Cir. 1978) (quoting *Spangler v. Pasadena City Board of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977)).

In the event that the Court is inclined not to grant the SBA's application for intervention as of right, it should nevertheless permit the SBA to intervene for the purposes stated above. The SBA has various claims and defenses under the NYCBBL and other state and federal laws related to the proposed reforms and their effect on SBA members' duties and obligations. The SBA's participation would not unduly delay either the Appeal or the reform proceedings, which can begin as scheduled with the SBA participating from the outset. Both proceedings would benefit from the SBA's inclusion due to its unique perspective on the relevant issues, as discussed above. Finally, for the same reasons set forth above, the SBA has significant interests in the outcome of the process, its interests would not adequately be represented by the City, and

it is a source of critical factual information regarding the nature of police work and how best to reform policies in a way that enables that work to be done effectively. Accordingly, permissive intervention should be granted.

## IV. CONCLUSION

For all of the above reasons, the SBA respectfully requests that the Court grant its motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissively under Rule 24(b).[5]

Dated: New York, New York.
        September 11, 2013

Respectfully submitted,

DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
212.335.4500


By: /s/ Anthony P. Coles
    Anthony P. Coles
    Courtney G. Saleski
    (seeking admission *pro hac vice*)
    Attorneys for Proposed Intervenor
    Sergeants Benevolent Association

---

[5] While Rule 24(c) states that a "motion to intervene must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought," the pleadings are closed in this matter, judgment has already been rendered, and the SBA seeks to participate only prospectively, for the purposes of appeal and to have a voice in the remedial proceedings. Therefore, there are no pleadings to be filed at this time. The SBA respectfully requests that this Court excuse it from this requirement, as courts have done in similar circumstances. *See, e.g.*, *Massachusetts v. Microsoft*, 373 F.3d 1199, 1250 n.19 (D.C. Cir. 2004) (reversing district court's denial of motion to intervene and  noting that proposed intervenor seeking only to participate in appeal  was not required to file pleading under Rule 24(c) because "judgment had already been rendered" and, "in any event, 'procedural defects in connection with intervention motions should generally be excused by a court'") (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1416 (D.C. Cir. 1984)).