UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
DAVID FLOYD, et al.,

                Plaintiffs,

      - against -

CITY OF NEW YORK,

                Defendant.
----------------------------------------x

08-CV-1034 (SAS)

ECF Case

# MEMORANDUM OF LAW OF THE POLICE INTERVENORS IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24

DECHERT LLP

Steven A. Engel
James M. McGuire
1095 Avenue of the Americas
New York, New York 10036
T: (212) 698-3693
F: (212) 698-3599
steven.engel@dechert.com

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1
BACKGROUND .................................................................................................................. 2
ARGUMENT ........................................................................................................................ 8
THE MOTION TO INTERVENE SHOULD BE GRANTED....................................................... 8
A.     The Police Intervenors May Intervene as of Right Pursuant to Rule 24(a) ........................ 8
    1.    This Motion Is Timely ................................................................................................ 9
    2.    The Police Intervenors Have a Direct, Protectable Interest in This Action. ....................... 11
    3.    The Police Intervenors' Interest Could Be Impaired by the Disposition of This Action ........................................................................................................... 12
    4.    The Police Intervenors' Interest Will Not Be Adequately Protected by the Parties to This Action................................................................................................ 13
B.     Alternatively, the Police Intervenors Should Be Granted Permissive Intervention.......... 14
CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*CBS, Inc. v. Snyder*,
　798 F. Supp. 1019 (S.D.N.Y. 1992)...................................................................................12

*Cook v. Bates*,
　92 F.R.D. 119 (S.D.N.Y.1981) ..........................................................................................9

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001)..................................................................................................9

*E.E.O.C. v. A.T.&T. Co.*,
　506 F.2d 735 (3d Cir. 1974)........................................................................................12, 13

*Edwards v. City of Houston*,
　78 F.3d 983 (5th Cir. 1996) .....................................................................................8, 9, 10

*Hodgson v. UMW*,
　473 F.2d 118 (D.C. Cir. 1972).........................................................................................10

*In re Holocaust Victim Assets Litig.*,
　225 F.3d 191 (2d Cir. 2000)...............................................................................................9

*Massachusetts v. Microsoft*,
　373 F.3d 1199 (D.C. Cir. 2004) ......................................................................................15

*N. Y. Pub. I. R. G. v. Regents*,
　516 F.2d 350 (2d Cir. 1975).............................................................................................14

*Natural Resources Defense Council v. Costle*,
　561 F.2d 904 (D.C. Cir. 1977)....................................................................................10, 13

*Stallworth v. Monsanto Co.*,
　558 F.2d 257 (5th Cir. 1977) ...........................................................................................12

*Trbovich v. United Mine Workers of America*,
　404 U.S. 528 (1972)..........................................................................................................13

*United Airlines, Inc. v. McDonald*,
　432 U.S. 385 (1977)............................................................................................................9

*United States Postal Serv. v. Brennan*,
　579 F.2d 188 (2d Cir. 1978).............................................................................................15

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ...............................................................................8, 9, 12, 13

*United States v. City of Portland*,
  No. 3:12-cv-02265 (D. Or. Feb. 19, 2013) ............................................................................8

*United States v. Covington Technologies Co.*,
  967 F.2d 1391 (9th Cir. 1992) ............................................................................................10

*Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of City of White Plains*,
  79 F.R.D. 437 (S.D.N.Y. 1978) ..........................................................................................13

**STATUTES**

N.Y. Administrative Code § 12-307 ..............................................................................................4, 5

N.Y. Administrative Code § 12-306 .................................................................................................5

N.Y. General Municipal Code 50-K .................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24 ......................................................................................................................14, 16

*LEEBA*, 3 OCB2d 29, at 48 (BCB 2010) .........................................................................................7

*Uniformed Firefighters Ass'n*, Decision No. B-20-92 (BCB) .........................................................5

*Uniformed Firefighters Ass'n*, Decision No. B-43-86 (BCB) .........................................................5

The Patrolmen's Benevolent Association of the City of New York, Inc. ("PBA"), the Detectives' Endowment Association, Inc. ("DEA"), the NYPD Captains Endowment Association ("CEA") and the Lieutenants Benevolent Association of the City of New York, Inc. ("LBA") (collectively, the "Police Intervenors") respectfully submit this Memorandum of Law in Support of their Motion to Intervene Pursuant to Federal Rule of Civil Procedure 24.

**INTRODUCTION**

The Court's decision in this matter may literally re-write the rules governing how the 35,000 members of the New York City Police Department ("NYPD") conduct themselves on a day-to-day basis. In the Liability Opinion, the Court reviewed police practices involving more than 4.4 million *Terry* stops, over an eight-year period. Liability Opinion ("Liability Op.") at 1. The Court recognized that over that period, New York City saw a virtually unprecedented drop in the crime rate, with a 17% drop in index crime reports and 30% drop in reported murders. *Id.* at 64 n.210. The Police Intervenors represent those responsible for the sharp decrease in crime.

In this litigation, the Court found that the NYPD's use of stop and frisk violated the constitutional rights of the plaintiff class. Having made these findings, the Court entered "broad equitable relief" to reform the use of stop and frisk. Remedies Opinion ("Remedies Op.") at 2. The Court recognized that caution was in order when it came to granting relief that would "affect the internal operations of the NYPD, the nation's largest municipal police force and an organization with over 35,000 members." *Id.* at 7. Nonetheless, the Court found that an appropriate remedy would "inevitably touch on issues of training, supervision, monitoring, and discipline." *Id.* at 11. The Remedies Opinion also envisioned a monitorship that would last for

years and that would address all of these matters. *Id.* at 12-13, 29. These remedies will directly touch upon the rights and interests of the members of the NYPD, including rights subject to existing collective bargaining with the City of New York.

The Police Intervenors collectively represent over 29,000 of the 35,000 members of the NYPD, including the officers, captains, detectives, and lieutenants. The Police Intervenors represent the police officers who would be impacted by the remedial order. The Court's liability findings directly concern their activities, and the changes to existing policies will directly affect their workload and, potentially, their safety as well. In addition, the remedies ordered by the Court will touch upon matters of training, supervision, monitoring, and discipline that are subject to collective bargaining with the City. Accordingly, the Police Intervenors respectfully move to intervene in this litigation so as to (1) participate in the remedies phase and (2) in the appeal of the Court's opinions.

## BACKGROUND

The Police Intervenors consist of four unions that collectively represent 29,000 of the 35,000 members of the NYPD. Declaration of Joseph Alejandro ("Alejandro Decl.") ¶ 5. The NYPD Police Officers are at the front line of police services in the City. Police officers are tasked with preserving the public peace, preventing crime, detecting and arresting offenders, suppressing public unrest, protecting the rights of persons and property, guarding the public health, preserving order at elections and all public meetings and assemblages; enforcing and preventing the violation of all laws and ordinances in force in the city; and for these purposes to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses. *Id.* ¶ 6. While on duty, a police officer is aware of, and inspects, his or her

post or sector for conditions requiring police attention, and renders all necessary police service in his or her assigned area and as directed. *Id.* ¶ 7. Against a backdrop of 7,000 fewer uniformed officers in the NYPD, police officers have taken on increased responsibilities in recent years. *Id.* ¶ 8. Adding to their traditional responsibilities of combating crime and answering an increasing number of calls for police service, police officers have taken on anti-terrorism responsibilities and other periodic initiatives coming out of city hall. *Id.* ¶ 9. Police officers bear the principal responsibility of interfacing with the public in need of police services, effecting arrests, preparing the reports and other paperwork required in an increasingly regulated and scrutinized environment. Police officers also represent the class principally responsible for implementing the crime-fighting policies fashioned by the City's elected leadership. *Id.* ¶ 10.

The PBA is the designated collective bargaining agent for the more than 22,000 police officers employed by the NYPD. The PBA negotiates on Police Officers' behalf with the City of New York in matters of policy, terms and conditions of employment, and all matters relating to Police Officers' general welfare. *Id.* ¶ 11. The DEA is the certified and recognized exclusive bargaining representative for a bargaining unit consisting of all the approximately 5,000 Detectives employed by the NYPD. *Id.* ¶ 12. The LBA is the certified and recognized exclusive bargaining representative for a bargaining unit consisting of all the approximately 1,700 Lieutenants employed by the NYPD. *Id.* ¶ 13. The CEA is the sole and exclusive collective bargaining representative for the unit consisting of all the approximately 730 employees of the NYPD in titles including Captain, Captain detailed as Deputy Inspector, Inspector and Deputy Chief (collectively, the "Captains"). *Id.* ¶ 14. The core mission of the PBA, DEA, LBA and CEA is to advocate for and protect the interests of its respective members of the NYPD. *Id.* ¶ 15.

The members of each of the Police Intervenors perform vitally important functions in connection with enforcing state and New York City laws and ensuring public safety. *Id.* ¶ 16. In particular, they perform and supervise the policing practices and procedures challenged by the plaintiffs in this action. *Id.* ¶ 17. The members of the Police Intervenors perform field police work, including patrolling, conducting surveillance, and engaging in stops, frisks, and searches. *Id.* ¶ 18. Members also supervise other officers, including in connection with their performance of the challenged practices and procedures. *Id.* ¶ 19.

On August 12, 2013, following a nine-week trial, the Court issued and entered its Liability Opinion, finding that the City was liable for violating the Fourth and Fourteenth Amendment rights of the plaintiffs; and the Remedies Opinion, which ordered a permanent injunction that the Court determined was necessary so as to conform the NYPD's stop, question and frisk practices to the United States Constitution. Liability Op., Dkt. No. 373; Remedies Op., Dkt. No. 372. The Remedies Opinion also ordered the appointment of an independent Monitor to oversee the implementation of reforms. Remedies Op. 9-13.

Because the Police Intervenors are recognized bargaining units representing employees of New York City (i.e., police officers), their bargaining authority is defined by the New York City Collective Bargaining Law ("NYCCBL"). N.Y. City Admin. Code § 12-307(4). Under the NYCCBL:

> [A]ll matters, including but not limited to pensions, overtime and time and leave rules which affect employees in the uniformed police, fire, sanitation and correction services, or any other police officer as defined in subdivision thirty-four of section 1.20 of the criminal procedure law who is also defined as a police officer in this code, shall be negotiated with the certified employee organizations representing the employees involved.

4

N.Y. City Admin. Code § 12-307(4). The City is required to negotiate with the Police Intervenors regarding all matters within the scope of collective bargaining under the NYCCBL, which include topics such as wages, hours, and working conditions, including "the practical impact that decisions on [certain matters of policy] have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety." N.Y. City Admin. Code § 12-307(6)b.

In various respects, the Remedies Order affects or implicates the Police Intervenors' rights under Section 12-306 of N.Y.C. Administrative Code, which makes it an improper practice for a public employer or its agents to "refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees" and "to unilaterally make any change as to any mandatory subject of collective bargaining or as to any term and condition of employment established in prior contract, during a period of negotiations with a public employee organization as defined in subdivision d of section 12-311 of this chapter."

**Training**

Under the Remedies Opinion, stop and frisk training appears to be mandatory and therefore likely is properly a subject of bargaining between the respective Police Intervenors and the City because it is required by the employer as a qualification for continued employment. *See Uniformed Firefighters Ass'n*, Decision No. B-43-86 at 15 (BCB); *Uniformed Firefighters Ass'n*, Decision No. B-20-92 at 8 (BCB).

**Recordkeeping**

The Immediate Reforms in Part II(B)(2)(b) of the order require that police officers complete a narrative detailing reasons for a stop, along with a separate explanation of why a pat down, frisk, or search was performed.[1] This information must also be recorded in the officer's Activity Log. The officer must also provide a "tear off" form to the subject of the stop detailing the reasons for the stop, and where applicable, a frisk. The time and effort necessary to complete the UF 250 form, record the same information in the memo book, and provide a tear-off form to the subject of the stop, implicate the NYPD's obligation to bargain over the resulting practical impact on workload.

As a practical consideration, this procedure is not feasible for officers, who are often called upon to perform other jobs that have been given to them by a dispatcher due to understaffing and high incident volume. Alejandro Decl. ¶ 20. Officers writing out narratives justifying a stop could be compelled to draft hastily in order to respond to other jobs and in order to provide a tear off form to the subject of the stop. *Id.* ¶ 21. Hasty drafting could result in errors and omissions that could have consequences for the officer down the line (including

---

[1] The Remedial Order requires that:

1. The UF 250 form must be revised to include a narrative section where the officer must record, in her own words, the basis for the stop.
2. The UF 250 must be revised to require a separate explanation of why a pat-down, frisk or search was performed.
3. The UF 250 should contain a tear off portion stating the reason for the stop, which is given to the stopped person. The tear off should provide the reasons for the stop, the badge numbers of the stopping officers, and information on how to file a complaint.
4. Officers must properly record a stop in their Activity Log.
5. The Department must implement measures to adequately discipline officers who fail to comply.

discipline and being sued). *Id.* ¶ 22. Perhaps more significantly, the time necessary to write out two separate narratives (four if a frisk is performed) and provide a tear off copy to the subject, could prevent the officer from responding to other jobs, including high priority jobs. *Id.* ¶ 23.

**Body Cameras**

The BCB has held that "decisions regarding the selection or use of equipment involve the City's discretion over the methods, means and technology of performing its work." *LEEBA*, 3 OCB2d 29, at 48 (BCB 2010) (citing *UFA*, 61 OCB 6, at 7 (BCB 1998)). Body cameras that would presumably record every act and utterance of police officers, supervisors and citizens are not standard equipment such as utility belts or flashlights. Although the bargainability of body cameras is an issue of first impression for the BCB, this aspect of the Remedial Order also implicates the Police Intervenors' bargaining rights.

**Discipline**

The Remedies Opinion appoints a Monitor, whose responsibilities, though "specifically and narrowly focused on the City's compliance with reforming the NYPD's use of stop and frisk[,] . . . will invariably touch on issues of training, supervision, monitoring, and discipline." Remedies Op. at 11. Part of the monitor's responsibility is to develop a set of reforms of the NYPD's "policies, training, supervision, monitoring, and discipline regarding stop and frisk." *Id.* at 12.

Additionally, N.Y. General Municipal Code 50-K provides certain protections for officers that are sued. The Police Intervenors and their respective members have an interest in ensuring that those interests are protected, and not diluted, within the remedial process.

The Court's opinions do not analyze the effect that the proposed reforms will have on the collective bargaining rights of the Police Intervenors. Nor do the opinions acknowledge the potential divergence of interests between the City and its employees due to their status as collective bargaining counterparties. Accordingly, the Police Intervenors have a unique interest in ensuring that their legal rights are protected in the context of this litigation.

**ARGUMENT**

**THE MOTION TO INTERVENE SHOULD BE GRANTED**

The Court's opinions in this matter directly affect the interests of the police officers who make up the NYPD. The Police Intervenors represent the members who will be subject to any changes in training, supervision, monitoring, and discipline resulting from the Court's Remedies Opinion and any subsequent opinion. Numerous courts accordingly have permitted police unions to intervene in institutional litigation, such as this case, that touches upon the interests of their members. *See, e.g.*, *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002); *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996); *United States v. City of Portland*, No. 3:12-cv-02265 (D. Or. Feb. 19, 2013) (granting police union's motion to intervene as of right in the remedy phase of a proceeding regarding a proposed settlement agreement between the United States and the city of Portland).

**A.   The Police Intervenors May Intervene as of Right Pursuant to Rule 24(a)**

The Police Intervenors have standing to intervene as of right under Federal Rule of Civil Procedure 24(a). To intervene as of a right, an applicant must demonstrate that (1) the motion is timely, (2) the applicant has a legal interest in the subject matter of the litigation, (3) that interest may be impaired by the outcome of the litigation, and (4) the applicant's interest may not be

adequately represented by the existing parties. *See, e.g.*, *City of Los Angeles*, 288 F.3d at 398; *D'Amato v. Deutsche Bank,* 236 F.3d 78, 84 (2d Cir. 2001); *Edwards*, 78 F.3d 983. The Police Intervenors readily satisfy all four elements of the rule.

### 1. This Motion Is Timely

Under Rule 24, the timeliness of the motion is determined by the totality of the circumstances. *See In re Holocaust Victim Assets Litig.,* 225 F.3d 191, 198 (2d Cir. 2000). In making that determination, the Court may consider how long the applicant had notice of its interest, as well as the prejudice that would be imposed upon the existing parties, as well as the applicant, from the granting or denial of the application. *Id.* The timeliness requirement of Rule 24 is liberally construed. *See*, *e.g., City of Los Angeles*, 288 F.3d at 398; *Cook v. Bates,* 92 F.R.D. 119, 122 (S.D.N.Y.1981) ("In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention."). In addition, where the applicant seeks to intervene only after the Court has issued its decision for the purpose of participating in the remedial phases or the appeal, "[t]he critical inquiry . . . is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977).

In this matter, the Police Intervenors are filing this motion shortly after the Court has issued its Liability and Remedies Opinions for the purpose of participating in the remedial proceedings, as well as the appellate process. Numerous courts have recognized that post-liability motions are timely, where the remedies fashioned by the Court would impact their interests. *See*, *e.g.*, *McDonald*, 432 U.S. at 396 ("[T]he respondent filed her motion within the time period in which the named plaintiffs could have taken an appeal. We therefore conclude that

9

the Court of Appeals was correct in ruling that the respondent's motion to intervene was timely filed and should have been granted."); *Edwards*, 78 F.3d at 1000 (police union filed a timely intervention motion by filing within 37 and 47 days of notice of the consent decree); *see also United States v. Covington Technologies Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992); *Natural Resources Defense Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977); *Hodgson v. UMW*, 473 F.2d 118 (D.C. Cir. 1972).

The Court's granting of this motion will cause no prejudice to the existing parties. The Police Intervenors seek only to participate in future proceedings for the purpose of protecting their members' interests in the remedial proceedings and the appellate process. As the Court recognized in the Remedies Opinion, the Police Intervenors' participation and wide-ranging knowledge of NYPD policing practices will be affirmatively beneficial to the parties and to the Monitor in connection with the remedial process. Remedies Op. at 29 (contemplating the participation of "NYPD personnel and representatives of police organizations"). The Police Intervenors' participation in the appellate process can obviously cause no cognizable prejudice to any party.

In addition, the Police Intervenors have significant interests that will be prejudiced if they are compelled to live with the results of a process in which they had no active participation. The Liability Opinion concerns the activities of many of the members of the Police Intervenors. Likewise, the Remedies Opinion concerns significant alterations to the training, supervision, monitoring, and discipline of the NYPD. Those remedies are expected to change the way in which the Police Intervenors do their jobs, and many of them, such as issues concerning body cameras, evaluation, and training implicate the collective bargaining rights of the Police

Intervenors. These rights can best be protected through their participation as parties in the proceedings going forward.

### 2. The Police Intervenors Have a Direct, Protectable Interest in This Action

For similar reasons, the Police Intervenors have a direct interest in this action. The Remedies Opinion will directly impact the rules that the police must employ when they conduct stops and frisks, and these rules will directly impact how officers do their jobs. Indeed, by regulating the circumstances when officers frisk suspects, the Remedies Opinion also may have an impact upon the safety of officers as well. In addition, the contemplated remedies are designed to provide new guidance to police officers, new policies for the "monitoring, supervision, and discipline" of officers, Remedies Op. 23, and new training procedures. All of these matters implicate the interests of the Police Intervenors.

The Court's opinions in this matter have generated substantial public notice. They also have generated substantial uncertainty among the members of the Police Intervenors with respect to how they should conduct their jobs. Such reforms could discourage officers from performing stop and frisks, and such an impact bears directly on officer safety. The uncertainty surrounding the opinions, and the proposed remedies, has led many officers to question established procedures, as well as to fear the possibility of disciplinary measures as well as civil litigation. There is a significant risk that uncertainty over the Court's opinions may impact the officers' day to day jobs, including the measures they take both to safeguard public safety, and their own safety. The Police Intervenors therefore have significant interests in this litigation, interests that their participation would help to secure.

In addition, federal courts routinely grant intervention by unions when, as here, collective bargaining may be undermined by the result of a court proceeding to which the unions are not parties. *See E.E.O.C. v. A.T.&T. Co.*, 506 F.2d 735, 741-42 (3d Cir. 1974); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 268-69 (5th Cir. 1977); *CBS, Inc. v. Snyder,* 798 F. Supp. 1019, 1023 (S.D.N.Y. 1992), *aff'd,* 989 F.2d 89 (2d Cir. 1993). As the Ninth Circuit recognized in granting intervention in a similar case, police unions have "state-law rights to negotiate about the terms and conditions of its members' employment . . . and to rely on the collective bargaining agreement that is a result of those negotiations." *City of Los Angeles*, 288 F.3d at 399-400.

Here, the Remedial Opinions contemplate changes to police training regarding stop and frisk; to the UF250 forms and other paperwork that the officers need to complete; and to discipline and supervisory process. The Court also contemplates that some officers will begin to wear body cameras. These matters would fall within, or arguably fall within, the collective bargaining process secured to the Police Intervenors under state law. As the Ninth Circuit recognized, the police unions have a right to participate in the fashioning of remedies that would directly affect their interests.

### 3. The Police Intervenors' Interest Could Be Impaired by the Disposition of This Action

As discussed above, the rules set forth by the Remedies Opinion will affect their members' day to day business in ways directly and concretely different from any other non-parties to this litigation. Accordingly, if the Police Intervenors are not permitted to intervene, they could be bound through their membership in the NYPD in ways that could adversely affect

them. Those interests include their on-the-job activities, as well as their collective bargaining rights. *See AT & T,* 506 F.2d at 742; *see also City of Los Angeles*, 288 F.3d at 401.

### 4. The Police Intervenors' Interest Will Not Be Adequately Protected by the Parties to This Action

Because plaintiffs claim to have been unlawfully stopped by the NYPD, their interests are plainly not aligned with the Police Intervenors. While the City's interests are in some respects parallel to those of the Police Intervenors, they are not identical, and the City is not an adequate representative of the Police Intervenors, both when it comes to remedies and, potentially, appeal.

As the Supreme Court has emphasized, the inadequacy requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972); *see also City of Los Angeles*, 288 F.3d at 39.

Courts have recognized that unions and their employers do not, as a general matter, have an identity of interests. *See Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of City of White Plains*, 79 F.R.D. 437, 441 (S.D.N.Y. 1978) ("Although the municipalities involved have the same interest in seeking qualified and efficient fire personnel, it could hardly be said that all the interests of the union applicants are the same as those of the municipalities."). With respect to remedial matters that bear upon collective bargaining, the City's interests are plainly not aligned with those of the Police Intervenors. The Police Intervenors can hardly rely upon the City to protect their interests in those proceedings.

In addition, the Police Intervenors are uniquely situated to provide their members' perspective in connection with the remedial proceedings and the appeals. *See Costle*, 561 F. 2d

13

at 912 (granting intervention because "the appellants' interest is more narrow and focu[]sed than EPA's, being concerned primarily with the regulation that affects their industries"); *N. Y. Pub. I. R. G. v. Regents*, 516 F.2d 350 (2d Cir. 1975) ("[W]e are satisfied that there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the [state authority party]"). The Police Intervenors have a distinct perspective on many of the supervisory, disciplinary, and safety elements involved in the Remedial Opinion. Indeed, the Remedies Opinion itself identifies the Police Intervenors as an interested stakeholder who will participate informally in the later stages of the remedies proceedings. *See* Remedies Op. 29. As numerous courts have recognized, it is entirely appropriate for the Police Intervenors to participate formally as well in all further stages of this case.

Finally, to the extent that the City chooses to compromise this matter with the Plaintiffs, or to dismiss the appeal, then the Police Intervenors will have a discrete interest in the matter. For this reason, too, the Police Intervenors seek to intervene so as to ensure that their interests will be protected.

**B.     Alternatively, the Police Intervenors Should Be Granted Permissive Intervention**

In the alternative, the Police Intervenors meet the standard for permissive intervention. Fed. R. Civ. P. 24(b). The threshold requirement for permissive intervention is a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention must not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In addition, the court may consider factors such as whether the putative intervenor will benefit from the application, the nature and extent of

14

its interests, whether its interests are represented by the existing parties, and whether the putative intervenor will contribute to the development of the underlying factual issues. *See, e.g.*, *United States Postal Serv. v. Brennan,* 579 F.2d 188, 191-92 (2d Cir. 1978).

For the reasons stated above, the Police Intervenors can meet the standard for permissive intervention. The Police Intervenors' conduct is directly at issue in this litigation, and the remedial order will directly affect their day to day activities, including training, discipline, and safety. In addition, the litigation will impact their collective bargaining rights as well. The Police Intervenors' participation would not unduly delay or cause prejudice to any parties in this matter. Accordingly, permissive intervention would be appropriate as well.[2]

---

[2] Under the circumstances, a Rule 24(c) pleading would appear to be unnecessary. *See, e.g.*, *Massachusetts v. Microsoft*, 373 F.3d 1199, 1250 n.19 (D.C. Cir. 2004) (holding that a Rule 24(c) pleading is unnecessary because "judgment had already been rendered" and, "in any event, 'procedural defects in connection with intervention motions should generally be excused by a court'") (quoting *McCarthy v. Kleindienst,* 741 F.2d 1406, 1416 (D.C. Cir. 1984)).

## CONCLUSION

For all of the above reasons, the Police Intervenors respectfully requests that the Court grant its motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissively under Rule 24(b).

DECHERT LLP

By: /s/ James M. McGuire

Steven A. Engel
James M. McGuire
1095 Avenue of the Americas
New York, New York 10036
T: (212) 698-3693
F: (212) 698-3599
steven.engel@dechert.com

*Attorneys for the Proposed Intervenors Patrolmen's Benevolent Association of the City of New York, Inc., the Detectives' Endowment Association, Inc., the NYPD Captains Endowment Association and the Lieutenants Benevolent Association of the City of New York, Inc.*