UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DAVID FLOYD, et al.,

                Plaintiffs,

        - against -

CITY OF NEW YORK,

                Defendant.
---------------------------------------------------------------x

08-CV-1034 (SAS)

ECF Case

## DECLARATION JOSEPH ALEJANDRO, TREASURER OF THE PATROLMEN'S BENEVOLENT ASSOCIATION

TO THE HONORABLE SHIRA A. SHEINDLIN
UNITED STATES DISTRICT COURT JUDGE

I, Joseph Alejandro, hereby declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information and belief:

1. I hold the rank of Police Officer and have served in the New York Police Department for more than 29 years.

2. I am assigned to the Bronx Task Force.

3. Since 1999, I have served as the Treasurer of the Patrolmen's Benevolent Association ("PBA"), one of the proposed intervenors in this matter.

4. I am familiar with the membership, functions and missions of the Patrolmen's Benevolent Association of the City of New York, Inc. ("PBA"), the Detectives' Endowment Association, Inc. ("DEA"), the NYPD Captains Endowment Association ("CEA") and the Lieutenants Benevolent Association of the City of New York, Inc. ("LBA") (collectively, the "Police Intervenors").

5. The Police Intervenors consist of four unions that collectively represent 29,000 of the 35,000 members of the NYPD.

6. The NYPD Police Officers are at the front line of police services in the City. Police officers are tasked with preserving the public peace, preventing crime, detecting and arresting offenders, suppressing public unrest, protecting the rights of persons and property, guarding the public health, preserving order at elections and all public meetings and assemblages; enforcing and preventing the violation of all laws and ordinances in force in the city; and for these purposes to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses.

7. While on duty, a police officer is aware of, and inspects, his or her post or sector for conditions requiring police attention, and renders all necessary police service in his or her assigned area and as directed.

8. Against a backdrop of 7,000 fewer uniformed officers in the NYPD, police officers have taken on increased responsibilities in recent years.

9. Adding to their traditional responsibilities of combating crime and answering an increasing number of calls for police service, police officers have taken on anti-terrorism responsibilities and other periodic initiatives coming out of city hall.

10. Police officers bear the principal responsibility of interfacing with the public in need of police services, effecting arrests, preparing the reports and other paperwork required in an increasingly regulated and scrutinized environment. Police officers also represent the class principally responsible for implementing the crime-fighting policies fashioned by the City's elected leadership.

11. The PBA is the designated collective bargaining agent for the more than 22,000 police officers employed by the NYPD. The PBA negotiates on Police Officers' behalf with the City of New York in matters of policy, terms and conditions of employment, and all matters relating to Police Officers' general welfare.

12. The DEA is the certified and recognized exclusive bargaining representative for a bargaining unit that I am informed consists of all the approximately 5,000 Detectives employed by the NYPD.

13. The LBA is the certified and recognized exclusive bargaining representative for a bargaining unit that I am informed consists of all the approximately 1,700 Lieutenants employed by the NYPD.

14. The CEA is the sole and exclusive collective bargaining representative for the unit that I am informed consists of all the approximately 730 employees of the NYPD in titles including Captain, Captain detailed as Deputy Inspector, Inspector and Deputy Chief (collectively, the "Captains").

15. The core mission of each of the Police Intervenors is to advocate for and protect the interests of its respective members of the NYPD.

16. The members of each of the Police Intervenors perform vitally important functions in connection with enforcing state and New York City laws and ensuring public safety.

17. In particular, they perform and supervise the policing practices and procedures challenged by the plaintiffs in this action.

18. The members of the Police Intervenors perform field police work, including patrolling, conducting surveillance, and engaging in stops, frisks, and searches.

19. Members of some of the Police Intervenors also supervise other officers, including in connection with their performance of the challenged practices and procedures.

20. As a practical consideration, some of the record-keeping procedures provided in the Court's Remedies Opinion in this matter—such as providing "tear off" documentation at the time of the stop or frisk—are not feasible for officers, who are often called upon to perform other jobs that have been given to them by a dispatcher due to understaffing and high incident volume.

21. Officers writing out narratives justifying a stop could be compelled to draft hastily in order to respond to other jobs and in order to provide a tear off form to the subject of the stop.

22. Hasty drafting could result in errors and omissions that could have consequences for the officer down the line (including discipline and being sued).

23. Perhaps more significantly, the time necessary to write out two separate narratives (four if a frisk is performed) and provide a tear off copy to the subject, could prevent the officer from responding to other jobs, including high priority jobs.

24. In light of these issues, the Remedies Opinion in this case has generated uncertainty among many officers.

Dated this 11th day of September, 2013

_____
Joseph Alejandro

15032416