

MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**HEIDI GROSSMAN**
*Deputy Chief, Special Federal Litigation*
Phone: (212) 356-3503
Fax: (212) 788-9776
hgrossma@law.nyc.gov

September 12, 2013

**BY E-MAIL AND ECF**
Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

                Re:  *Floyd v. City of New York*, 08 Civ. 1034 (SAS)
                    *Ligon v. City of New York, et al.*, 12 Civ. 2274 (SAS)

Your Honor:

        Defendant City of New York respectfully submits this reply to the *Floyd* and *Ligon* plaintiffs' opposition to defendants' August 27, 2013, application for a stay pending appeal of the District Court Orders, dated August 12, 2013.[1]

        1.  The Remedies Order Is Appealable.

        As a threshold matter, while plaintiffs argue that the City's appeal is premature, they have not moved to dismiss the City's appeal and that issue would be properly brought before the Second Circuit, not this Court. In any event, despite plaintiffs' contentions, the Remedies Order is appealable as an injunctive order under 28 U.S.C. § 1292(a)(1).

        First, the Remedies Order on its face explicitly grants both a permanent and a preliminary injunction (see Remedies Order, at 2-3; 8; 32-33). No greater scrutiny should be necessary to

---

[1] Defendant also submits this reply in opposition to the *amicus curiae* brief submitted by the NYC Public Advocate Bill de Blasio on September 6, 2013.

determine whether it is, in fact, subject to interlocutory appeal. *See CFTC v. Walsh*, 618 F.3d 218, 223-25 (2d Cir. 2010). Second, although an order merely directing a party to submit a remedial plan is generally not appealable, that general rule does not apply where, as here, "the content of the plan to be submitted has already been substantially prescribed by the district court." *McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 285 (2d Cir. 2004); *accord, e.g., Morrissey v. Curran*, 650 F.2d 1267, 1285 (2d Cir. 1981); *Spates v. Manson*, 619 F.2d 204, 209 (2d Cir. 1980); *Taylor v. Board of Education*, 288 F.2d 600, 604 (2d Cir. 1961); *Hart v. Community School Board*, 497 F.2d 1027 (2d Cir. 1974); *see also N.Y. State NOW v. Pataki*, 261 F.3d 156, 160 (2d Cir. 2001); *Frederick L. v. Thomas*, 557 F.2d 373, 380-81 (3d Cir. 1977); *Board v. Public Instruction v. Braxton*, 326 F.2d 616, 619 (5th Cir. 1964). Here, the nature of the Immediate Remedies is far more specified by this Court than a directive to submit a plan;[2] in fact, a fair reading of the Remedies Order requires the City, *inter alia*, to communicate and train officers in accordance with this Court's view of the Fourth and Fourteenth Amendments, including such novel concepts as indirect racial profiling. The Remedies Order sets forth major elements of the remedial plan; the Monitor has authority to broker agreement or make a recommendation on the details of the mandated FINEST message, the mandated changes in

---

[2] Plaintiffs cite to *Taylor v. Board of Education*, 288 F.2d 600, 604 (2d Cir. 1961), to argue that the general rule does not allow for an appeal of a liability decision where the quantum of relief has not yet been determined. Plaintiffs, however, fail to even acknowledge the long-enacted statutory exception to the general rule for interlocutory appeals where injunctions have been granted. *See id.* at 603, citing 28 U.S.C. §1292(a)(1). *Taylor* makes this exception very clear: in this school desegregation case, after a finding of liability, the court did no more than order the school board to submit a plan for desegregation by a date certain; the court did not prescribe the plan or telegraph its ultimate order in any way. Thus, the court found no injunction under §1292(a)(1), and no appeal was permitted. *Id.*

training, the mandated changes to the UF-250 form, and the mandated body-camera program. Indeed, that the process for developing and implementing the training is to be overseen by the Monitor and the Court does not change the directive that defendant must obey or else bear the pain of contempt.[3] Thus, the remedial plan's content has been "substantially prescribed" by the District Court, falls squarely in the exception of §1292(a)(1), and therefore, is appealable.

Moreover, delaying review until the Immediate Relief is implemented will in no way change the perspective of the matter on appeal. The questions of law to be answered on appeal are ripe for adjudication now. Any details of the Immediate Relief are dependent upon the legal definition of reasonable suspicion and equal protection as already defined by the district court in the Liability Order. This is not like *Groseclose v. Dutton*, 788 F.3d 356 (6th Cir. 1986), a case relied upon by plaintiffs, where the Sixth Circuit found the totality of conditions for death row inmates unconstitutional and ordered officials to submit a plan to remedy the totality of conditions. Finding that the order of a plan was not an appealable injunction, the Sixth Circuit emphasized that details of the plan might change the appellate perspective of the issues, *e.g.*, while the cumulative effect of several specific cell conditions like lighting, ventilation, size and heating created a violation, if the plan ultimately implemented shortened the time inmates were confined to the cells, then the appeals court might not have to address each specific condition if the time exposed to the condition were shortened. *Id.* at 360-61. Rather, this case is more like

---

[3]This is not a case, like *Taylor,* where the defendants' failure to submit a desegregation plan would not necessarily lead to contempt but would instead lead to implementation of a desegregation plan without defendant's input. *Taylor,* 288 F.2d at 604 ("To be sure, the opinion used the word 'ordered' with respect to the filing of a plan, just as courts often 'order' or 'direct' parties to file briefs, findings and other papers. Normally this does not mean that the court will hold in contempt a party that does not do this, but rather that if he fails to file by the date specified, the court may refuse to receive his submission later and may proceed without it.").

the Third Circuit's *Frederick L.* 557 F.2d 373, explained in *Groseclose*, 788 F.2d at 359, where the district court ordered the school district to submit a plan reasonably calculated to identify all of its learning disabled pupils and mandated the eventual submission of interim and final plans for the proper placement of students identified as learning disabled. In *Frederick L.*, the Third Circuit held that, unlike the facts of *Taylor*, delaying the day for appellate review in the instant case would not clarify the question on appeal because:

> [t]he precise ingredients of the plan for identification of learning disabled students will have no such metamorphosizing effect on our understanding of this case . . . The precise plan ultimately adopted will determine how identification is accomplished, but the nature of the plan cannot affect the extent to which identification is done. Because deferring review will not alter the appellate perspective, it would appear to us that the present appeal is not premature.

*Groseclose*, 788 F.2d at 359 (quoting *Frederick L.*, 557 F.2d at 380-81). Similarly, here, deferring appeal will not change the substantive issues.

2. Defendant Will Suffer Irreparable Harm if No Stay is Granted.

For the same reasons that the gravamen of the appellate perspective will not be altered with further proceedings before the Monitor, and hence the District Court Orders are appealable now, the balance of equities weighs in favor of staying the Remedies Order now. Further steps into the Monitor process will not change the fact that this Court ordered remedies based on legal errors, in defendant's view. The Remedies flow directly and inextricably from the foundations of the Liability Order, which is flawed. As set forth in defendant's moving letter, regardless of the Monitor Process, which is already underway, there are at least four specific categories of Immediate Relief that are ordered to be implemented "as soon as practicable," in addition to participation in a Joint Remedial Process. Going through the process of obtaining Monitor recommendations and subsequent court orders on the details of the Immediate Relief, *e.g.*, the text of the Finest Message summarizing the Liability Order, in no way changes that the City will

be irreparably harmed by a Finest Message that reflects in any way what defendant contends are errors in law. Waiting for that court-ordered text as a prerequisite for a stay, and in accord with Monitor process in the Remedies Order, does nothing to change the perspective for the stay as it stands right now– it merely wastes time, effort and resources. Most importantly, the time lag will continue to foster the inevitable confusion flowing from the highly publicized and extant Liability Order which negates officer reliance on long-held constitutionally valid factors for stop, question and frisk conduct and creates liability for the novel concept of indirect racial profiling as a surrogate for intentional discrimination. The District Court Orders should be stayed pending appeal, so that the confusion caused by the Orders, and any chilling effect in lawful enforcement activity that naturally arises from such confusion, are mitigated.[4]

Much more than having administrative or economic consequences, the inevitable confusion that results if the District Court Orders are not stayed is intrinsic to officers' effective and proper performance of their duties and safeguarding of the public. It is obvious that to the extent that the Liability Order constrains police enforcement conduct that would otherwise be lawful, the public is at increased risk of harm. It is also obvious that the harm both to the public and to the officers arising from the confusion cannot be easily cured in the same way that a license ordered to be granted can be revoked later if an appeal is successful and no stay is imposed, as plaintiffs argue. The fundamental exercise of police powers is at stake here, and involves training and experience in the weight to be given to the totality of the circumstances known to an officer when he or she suspects criminal activity, which cannot be easily quantified.

---

[4] Defendant notes that the District Court Orders will have no collateral estoppel effect at any time while an appeal is pending, so that a stay will not prejudice any alleged claims of unconstitutional stop activity during the pendency of the stay.

*See Florida v. Harris*, 133 S. Ct. 1050, 1055-56 (2013) (rejecting "rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach" to assess Fourth Amendment probable cause).

Plaintiffs confusingly characterize the process in the Remedies Order as mere steps in the judicial proceeding, at times concluding that as such it is not an appealable injunction and at other times concluding that it is not a basis for a stay. Nevertheless, the cases that plaintiffs rely on to support this characterization are materially distinct and do not involve the type of prescribed relief at issue in the Remedies Order: *e.g.*, *Taylor*, 288 F.2d at 604 (invitation to submit desegregation plan not determinative where court itself had not prescribed relief); *Bridgeport v. Bridgeport Guardians, Inc.*, 2007 U.S. App. LEXIS 28662 (2d Cir. 2007) (order to submit patrol assignment rotation plan so that all patrol officers who desire assignments in specialized divisions would have equal access regardless of race not appealable injunction where no remedial plan had been formulated); *Henrietta D. v. Guiliani*, 246 F.3d 176 (2d Cir. 2001) (no appellate jurisdiction where district court at most ordered magistrate judge to develop a remedial plan with the parties and prescribed no parameters for the plan); *Spates v. Manson*, 619 F.2d 204, 209 (2d Cir. 1980) (court order to correctional facility to submit a plan to meet constitutional mandate of adequate access to the courts not appealable because it did not prohibit or require specific practices or substantially prescribe the content of the plan).

3. Defendant Is Likely to Succeed on the Merits of the Appeal.

While plaintiffs acknowledge that a basis for a stay is an applicant's likelihood to succeed on the merits, they argue that defendant has failed to make this showing, conveniently ignoring the years of litigation and substantive motion practice in which defendant set forth its legal and factual positions, which will be the subject of the appeal and to which defendant respectfully

6

refers the Court. To reargue that showing to this Court in this application would be futile in light of the District Court Orders and a waste of judicial and City resources. Notably, this is the case even though the District Court Orders finding a widespread pattern and practice of unconstitutional stop activity and substituting the novel concept of indirect racial profiling for intentional discrimination were based on, *inter alia*: (1) 19 anecdotal incidents hand-picked by plaintiffs where the District Court actually found reasonable suspicion in the majority of them, and found at least two of them close questions; (2) statistical evidence based on UF250 forms which the District Court had previously acknowledged was insufficient to support a finding of lack of reasonable suspicion; (3) no evidence of intentional discrimination in any class representative encounter, and purported evidence of intentional discrimination in only a single incident of a class member with a history of alleging discrimination in employment-related claims and with a worldview that a mere greeting by a police officer on the street amounts to a *Terry* stop; and (4) dilution of suspect description as a component of a lawful stop or proper statistical analysis.

4.       Federalism, No Lack of Remedy for Plaintiffs and the Public Interest Weigh in Favor of a Stay.

Despite plaintiffs' short-shrift, federalism concerns are integral to establishing the impropriety of any injunctive relief and support a stay.[5] The Remedies Order is a far cry from a simple directive to engage in constitutional stop activity. It is an open-ended, complexly layered scheme involving numerous participants and undefined stakeholders implicating changes to myriad NYPD systems from training to discipline, as well as community relations. It is an

---

[5] The stay granted in *U.S. v. Bloomberg*, 2013 U.S. App. LEXIS 2792 (2d Cir. Feb. 7, 2013), referenced in defendants' moving letter and in the *Ligon* plaintiffs' opposition, was granted after defendant submitted an application asserting only federalism concerns as irreparable harm.

intrusion into municipal executive policing by a federal court in an area in which the federal judiciary has admitted it has no expertise. Unlike in the plaintiffs' cases cited to diminish the importance of the federalism concerns, none of which address a stay application, the City has not conceded any wrongdoing and it has challenged the Court's findings, which make unconstitutional law enforcement conduct that would be otherwise lawful. *See, e.g., Brown v. Plata*, 131 S. Ct. 1910 (2011) (in California prison over-crowding case, defendant conceded twenty year history of systemic constitutional violations); *Allee v. Medrano*, 416 U.S. 802, 814 (1974) (injunction requiring no more than to abide by constitutional requirements in a case involving unchallenged findings that officers conspired to deprive plaintiffs of their constitutional right to engage in certain union organizational activities; "no contention that this decree would interfere with law enforcement by restraining the police from engaging in conduct that would be otherwise lawful").

As for the harm to plaintiffs should a stay not issue, plaintiffs inexplicably reject as disingenuous the indisputable fact that damages remedies under 42 U.S.C. §1983, viable in some form since the Civil Rights Act of 1871 to redress constitutional violations, would remain available if a stay were in place. They emphasize this mistruth by saying that victims lack resources to retain attorneys who are in turn unlikely to take such low damage award cases on contingency[6]; but, of course these very concerns were answered almost four decades ago when 42 U.S.C. § 1988(b) was enacted, awarding attorneys' fees to prevailing parties in §1983 actions. A stay would not affect these provisions, and Class Counsel knows this very well as they

---

[6] Indeed, the *Ligon* plaintiffs are still seeking money damages, and the *Floyd* plaintiffs asserted damages claims until shortly before trial.

themselves sought permission to move for attorneys' fees under these statutes a few weeks ago in *Floyd*, and in numerous other civil rights cases over the years. Plaintiffs offer no legitimate answer to defendant's argument that any alleged harms at issue here are simply not of the same ilk as constitutional harms curable only by pure equitable relief (*e.g.*, school desegregation), and do not outweigh defendant's interests in securing a stay.

Finally, the public interest in being protected by a police force unhampered by untested new limits of constitutional enforcement activity and confusion, at a time when stops are ever-decreasing, favors a stay. Yet, plaintiffs offer five declarations, including three from City Council members, to argue the contrary. For the most part these declarations rely upon hearsay and complaints about stops, including one of plaintiff Ourlicht allegedly in August 2013, none of which are presented as having been proven unconstitutional.[7] Plaintiffs' suggestion is that the volume of complaints about stops is a basis to believe the stops are unconstitutional, but even the broadest reading of the District Court Orders or the plaintiffs' expert evidence does not lead to this conclusion. These declarations, and plaintiffs' references to out-of-context hearsay comments of former NYPD Commissioner Bratton, who oversaw a consent decree involving the Los Angeles Police Department, are not part of the record and should be disregarded.

---

[7] Notably, of the three stops of Ourlicht tried in *Floyd*, the Court only found one of them lacking reasonable suspicion.

For the foregoing reasons, defendant's application for a stay pending appeal of the District Court Orders should be granted.

Respectfully submitted,

*Heidi Grossman*

Heidi Grossman
Linda Donahue
Assistants Corporation Counsel
Special Federal Litigation Division

cc:   Darius Charney, Esq. (via email)
      Christopher Dunn, Esq. (via email)