179

# ORIGINAL

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------------------------X
     DAVID FLOYD, LALIT CLARKSON, DEON DENNIS,
 3   and David Ourlicht, individually and on
     behalf of a class of all others similarly
 4   situated;

 5                                  PLAINTIFFS

 6

 7                 -against-         Case No:
                                     08cv01034 (SAS)

 8

 9   THE CITY OF NEW YORK; NEW YORK CITY POLICE
     COMMISSIONER RAYMOND KELLY, in his individual
10   and official capacity; MAYOR MICHAEL BLOOMBERG,
     in his individual and official capacity; NEW
11   YORK CITY POLICE OFFICER RODRIGUEZ, in his
     individual capacity; NEW YORK CITY POLICE
12   OFFICER GOODMAN, in his individual capacity;
     NEW YORK CITY POLICE OFFICER JANE DOE, in her
13   individual capacity; NEW YORK CITY POLICE
     OFFICER ERIC HERNANDEZ, Shield # 15957, in his
14   individual capacity; NEW YORK CITY POLICE
     OFFICER CORMAC JOYCE, Shield # 31274, in his
15   individual capacity; NEW YORK CITY POLICE
     SERGEANT JAMES KELLY, Shield # 92145, in his
16   individual capacity; NEW YORK CITY POLICE
     OFFICER LUIS PICHARDO, Shield # 00794, in his
17   individual capacity; NEW YORK CITY POLICE
     OFFICER ANGELICA SALMERON, Shield # 7116, in
18   her individual capacity; NEW YORK CITY POLICE
     OFFICER MICHAEL COUSIN HAYES, Shield # 3487,
19   in his individual capacity; NEW YORK CITY
     POLICE OFFICER CHRISTOPHER MORAN, in his
20   individual capacity; and NEW YORK CITY POLICE
     OFFICERS JOHN DOES #1 through #11, in their
21   individual capacities;

22                                  DEFENDANTS.
     ------------------------------------------------X

23                 DATE: January 15, 2013

24                 TIME: 3:00 P.M.

25        (Continued on next page.)
```

The Clerk of the Court
is directed to
docket this transcript
of the January 15,
2013 conference
in Floyd v. City of
New York, 08 Civ.
1034.

Shira A. Scheindlin,
USDJ
9/18/13

9/18/13

1

2          DATE: January 15, 2013

3          TIME: 3:00 P.M.

4

5                    CONTINUED DEPOSITION of the Plaintiff,

6      CLIVE LINO, taken by the Defendants, pursuant to a Notice

7      and to the Federal Rules of Civil Procedure, held at the

8      offices of The New York City Law Department, 100 Church

9      Street, New York, New York 10007, before Sophia Toribio, a

10     Notary Public of the State of New York.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    A P P E A R A N C E S:

 2

 3    CENTER FOR CONSTITUTIONAL RIGHTS
             Attorneys for the Plaintiffs
 4           666 Broadway, Seventh Floor
             New York, New York 10012
 5           BY: DARIUS CHARNEY, ESQ.

 6

 7    MICHAEL A. CARDOZO, ESQ.
      CORPORATION COUNSEL
 8    NEW YORK CITY LAW DEPARTMENT
             Attorney for the Defendants
 9           100 Church Street
             New York, New York 10007
10           BY: MORGAN D. KUNZ, ESQ.
             File #: 2008-003588
11           Control #: KKK06537

12

13    ALSO PRESENT:
             HEIDI GROSSMAN, ESQ.
14           SUZANNA PUBLICKER, ESQ.

15

16                    *          *          *

17

18

19

20

21

22

23

24

25
```

C. LINO

1          MR. CHARNEY:  He's not going to answer that

2      question because Mr. Dunn instructed me not to

3      let him answer that question.  If you want to

4      speak to Mr. Dunn about it, feel free.  I have no

5      objection to that.

6          MR. KUNZ:  Okay.

7          MR. CHARNEY:  You could ask him, it might

8      help, if any of the three stops that you've

9      already asked him about in this deposition are

10     part of that lawsuit.  You can ask him that

11     question.

12         MR. KUNZ:  I appreciate the offer.  I think

13     at this point, we have the directions not to

14     answer for the main issues that we need to call

15     the judge on, so I think we should go ahead and

16     do that.

17         MR. CHARNEY:  Go ahead.

18         (Whereupon, at 4:00 P.M., a conference call

19     was placed to Judge Shira Scheindlin.)

20         JUDGE SCHEINDLIN:  Hello.

21         MR. KUNZ:  Hello, Your Honor.  This is

22     Morgan Kunz from the City of New York.  How are

23     you?

24         JUDGE SCHEINDLIN:  Yes, fine, thank you.

25     Yourself?

C. LINO

1          MR. KUNZ:  Good.  We are on the record here

2     on our end.  With me is Ms. Suzanna Publicker and

3     Ms. Heidi Grossman for the City of New York, and

4     Mr. Charney is here for the Plaintiffs.

5          JUDGE SCHEINDLIN:  Okay.

6          MR. KUNZ:  We are in the deposition of Clive

7     Lino and there are two specific issues that have

8     come up.  One is in regard to, you may recall

9     from a recent conference, that Mr. Lino has been

10    stopped numerous times, I believe upwards of

11    20 times, and he's indicated that at the trial,

12    he only intends to speak about three specific

13    stops.

14         JUDGE SCHEINDLIN:  All right.

15         MR. KUNZ:  We want to inquire into the other

16    stops.  And the reason we want to inquire into

17    those stops is because Mr. Lino does intend to

18    testify at the trial that he has been stopped on

19    numerous times, upwards of 20, and he wants to

20    talk about the effect that those repeated stops

21    have had on him.

22         JUDGE SCHEINDLIN:  What does that mean, the

23    effects?  I thought we discussed that issue

24    before and now that there is no request for

25    damages, what does it matter whether he, you

C. LINO

1      know, has a psychological impact or a backache or

2      can't sleep?  What does that matter, the effects

3      on him?  I thought we talked about that.

4           MR. CHARNEY:  Your Honor, this is

5      Mr. Charney.  I guess that might actually resolve

6      the issue.  One of the issues that we believe is

7      relevant to injunctive relief is the global

8      impact that the stop-and-frisk practices have on

9      New Yorkers.

10          JUDGE SCHEINDLIN:  Yes, but I don't think we

11     need to know the individual impact.  I think the

12     law assumes that a victim of any unconstitutional

13     behavior -- let's just take a First Amendment

14     case, to remove it from here, that's presumed

15     injury.  I've written other decisions in other

16     kinds of cases.  Any limitation of your First

17     Amendment right, for example, is an automatic

18     injury.  So any imposition of your Fourth

19     Amendment right is an automatic injury or your

20     Fifth Amendment right or Sixth Amendment right.

21     I think injury is presumed when someone is

22     deprived of a constitutional right.  That's my

23     understanding of the law.  You might know more

24     about that than I do, but.

25          MR. CHARNEY:  All right.  So, I guess is it

C. LINO

1      your ruling then that he is not permitted to

2      testify about the impact that being stopped

3      repeatedly has had on him or his view of the

4      police department or anything like that?

5           JUDGE SCHEINDLIN:  I don't see the relevance

6      of that with the issues in front of me.  I agree

7      with you that you need to prove injury.  But when

8      you go back to your office and you do the

9      research, if you think I'm not right -- I know

10     I've written as to the deprivation of

11     constitutional right is, per se, an injury.

12          MR. CHARNEY:  I agree with you.  I guess the

13     only -- and I will just add this one comment and

14     then I think we will maybe resolve this, with

15     respect to injunctive relief and the need for

16     certain forms of injunctive relief.  One of the

17     issues obviously for us is the relationship

18     between the community and the police department

19     and whether or not that's a cooperative

20     relationship, a distrustful relationship and that

21     kind of issue, and we believe that this testimony

22     about how being stopped repeatedly, how it

23     impacts his view of the police or his attitude

24     toward the police.  We think it may be relevant

25     to that question.

C. LINO

1   JUDGE SCHEINDLIN:  If he's stopped three

2   times or 20 times, I think you're qualified to

3   say how that affects your view of the police in

4   your neighborhood.  I mean, I had had similar

5   testimony that the people are, whatever, when

6   they see the police, they are afraid or there is

7   no one to turn to because of the police stopping

8   them.  I mean, you read the last one.

9   MR. CHARNEY:  Yes.

10   JUDGE SCHEINDLIN:  So, general testimony

11   like that doesn't depend on whether it's three or

12   if it's 20, but we may be getting a little far

13   afield from what Mr. Kunz would like to discuss.

14   MR. CHARNEY:  Okay.

15   MR. KUNZ:  A little bit, Your Honor.

16   Essentially, we just want an order from Your

17   Honor saying that the Plaintiff, Mr. Lino in

18   particular, will only be allowed to testify about

19   the three particular stops and he will not

20   testify even about the fact that he's been

21   stopped other times.

22   JUDGE SCHEINDLIN:  No, that I can't do.  He

23   certainly can say I've been stopped many, many

24   other times over a period of ten years or

25   five years, whatever the fact is.  I think he can

C. LINO

1    say that generality and then he can say, the next

2    generality, all of these stops collectively makes

3    me whatever it is, afraid of the police or

4    antagonistic of the police or distrustful,

5    whatever word he wants to use.  But if he does

6    that, then what do you think you should be able

7    to ask?

8         MR. KUNZ:  Then I think we should be able to

9    explore the circumstances of those specific

10   stops.

11        JUDGE SCHEINDLIN:  Why?  In other words,

12   he's still making the general statement that I've

13   been stopped X number of times over X number of

14   years, I described three of them.  There is no

15   need to describe the other 17.  The fact of the

16   matter is I've been stopped 20 times.  I have

17   this and this view of the police in my community.

18   It's a generality.  Why would I want to listen,

19   as the judge, the trier of the facts, to 17

20   descriptions of 17 other stops that are not in

21   dispute?  Unless your point is, okay, five of

22   them were based on reasonable suspicion or what,

23   but that still leaves 15 that weren't, according

24   to him, according to his version.

25        MS. GROSSMAN:  Your Honor, this is Heidi

C. LINO

1      Grossman.  I think in terms of going to the

2      details of all the stops, I understand your

3      concern, but the witness has already said that

4      there are many, you know, we went through many

5      stops, a handful of stops that he didn't

6      remember.  So even if we can go through just to

7      say do you remember, do you not remember?  What

8      you remember, was it constitutional, was it not?

9      I think we would like to be able --

10         JUDGE SCHEINDLIN:  He's no judge of

11      constitutional or not.  All he can tell you is

12      what he remembers is either facts of the stops.

13      That would be I don't know how many of the other

14      17 or so he would even remember the facts of.

15         MR. CHARNEY:  Your Honor, can I interject

16      for a second on that question?

17         JUDGE SCHEINDLIN:  Yes.

18         MR. CHARNEY:  Because I want to go back to

19      something you said, a very important thing you

20      said I believe on December 11th about the length

21      of these depositions and the requirement that the

22      parties use common sense.

23         JUDGE SCHEINDLIN:  Yes, I still would like

24      that.  That's why I said what he can say in

25      generality.  These are the three I've described;

C. LINO

1   I been stopped many other times over a period of
2   years and collectively this has given me a
3   certain attitude.
4       MR. CHARNEY:  And that is exactly what he's
5   already -- he's been asked specifically about
6   those three.  He's answered questions about the
7   three, those are the three he would testify to
8   about the specific circumstances at trial.
9           With respect to the others, the City is
10  proposing going through each one, giving him the
11  date, the time, do you remember it.  He's already
12  answered no to most of them.
13      JUDGE SCHEINDLIN:  Wait, who has the date
14  and time?
15      MR. KUNZ:  Well, I --
16      MR. CHARNEY:  Hold on, I'm not finished.
17  Sorry, Mr. Kunz.  The other piece that hasn't
18  been mentioned is that the City was given records
19  by us of all the Complaints Mr. Lino has filed
20  regarding many of these stops.  And many of these
21  CCRB Complaints have been investigated, so the
22  fact that the stop happened is established.  We
23  are not, as I mentioned before, we are not
24  contesting for purposes of this trial whether or
25  not those stops were constitutional or not.  It's

C. LINO

1        just the three, so those are the three he will

2        testify specifically about.

3              JUDGE SCHEINDLIN:  Well, with respect to the

4        others that you know about, you're not contesting

5        that they were constitutional or

6        unconstitutional?  What you are saying?

7              MR. CHARNEY:  Mr. Lino will not -- we, first

8        of all, the Plaintiffs will not assert or try to

9        prove that these other 17 or 20 were

10       unconstitutional.

11             JUDGE SCHEINDLIN:  That means you're

12       conceding they were constitutional?

13             MR. CHARNEY:  No, we are not conceding

14       either way, but we also don't think it's relevant

15       for the purposes of --

16             JUDGE SCHEINDLIN:  But if you wanted to say

17       that based on the totality of the number of

18       stops, he has this and this view, I guess there

19       is a question sort of there, that if somebody

20       stops -- let's move away from Mr. Lino.  Let's

21       just say a hypothetical drug dealer.  So this

22       drug dealer over ten years is stopped and then

23       arrested or whatever and convicted 20 times.  I'm

24       sure he has a view about police, too, and I'm

25       sure his view is I don't like these guys because

C. LINO

1          every time I'm out in the street drug dealing,

2          they stop me.  But it doesn't prove much if he's

3          publicly dealing drugs, you know, this

4          hypothetical person.  Nobody much would care

5          about his view, he's breaking the law 20 times.

6          So it does decant in a way to know what these

7          stops are about.

8               Now, I don't know Mr. Lino from a hole in

9          the wall.  I don't know whether he does, in fact,

10         have convictions; were some of these stops real

11         things like drugs or guns and they were found.  I

12         don't know enough, but that can color somebody's

13         view and their view is of little interest if in

14         fact they are breaking the law repeatedly, like a

15         drug dealer on a street corner.

16              MR. CHARNEY:  I hear you, but I guess the

17         problem is that he doesn't have any recollection.

18         He already went through --

19              JUDGE SCHEINDLIN:  Let's start with this,

20         does he have a criminal record?

21              MR. CHARNEY:  He definitely has no felony

22         conviction.  He definitely has a couple of

23         arrests, I believe, for misdemeanors.

24              JUDGE SCHEINDLIN:  I didn't ask about

25         arrests.

C. LINO

1      MR. CHARNEY:  Definitively, I can say with

2    100 percent certainty, he has no felony

3    convictions of any kind.

4      JUDGE SCHEINDLIN:  I heard felony, do you

5    know if he has any convictions?

6      MR. CHARNEY:  I'm not sure if he has any

7    misdemeanor convictions for some open container

8    violations, I think, that he may have paid a fine

9    for, but I don't believe he has any convictions

10   for misdemeanor crimes of any kind.

11     JUDGE SCHEINDLIN:  Right.  Well, that's

12   helpful to see right there, because I think, as I

13   said in my hypothetical, that would color

14   somebody's view of the police, too.  So, there

15   has to be some position taken with regard to the

16   17 or the non-three.  If you want to introduce

17   that there have been so many, you have to have a

18   general view that, you know, most if not all, in

19   his view, were baseless, that he was just stopped

20   for being there.

21     MR. CHARNEY:  I guess the struggle will be

22   if he doesn't really remember the specific facts.

23     JUDGE SCHEINDLIN:  That's not a struggle,

24   that's the best he can do.  If he doesn't

25   remember, he doesn't remember.  But apparently,

C. LINO

1          if there is a CCRB investigation of them, those

2          records might refresh his recollection.

3               MR. KUNZ:  Exactly, Your Honor.

4               MR. CHARNEY:  But I guess then how does that

5          play at a trial?  Are Defendants going to be

6          allowed to ask him about 20 stops at trial that

7          he is not taking the position were unjustified at

8          this point?

9               JUDGE SCHEINDLIN:  Maybe so, because in the

10         hypothetical I gave, and I don't think he's going

11         to meet that hypothetical, if there was some guy

12         standing on a street corner dealing drugs

13         20 times and is stopped 20 times where in plain

14         view he's selling crack, nobody is really

15         interested in his view of the police.  It's not

16         as if he's sort of a regular guy trying to come

17         and go or go to work or come home or whatever and

18         he's constantly being stopped.  That's the

19         paragon you want to present, that regular

20         people --

21              MR. CHARNEY:  Yes.  So, I guess short of --

22              JUDGE SCHEINDLIN:  I'm sorry, let me finish.

23         The paragon you're trying to present is that

24         regular citizens, regular people in New York,

25         whatever you want to call them, are being

C. LINO

1  improperly sort of accosted for no basis --

2          MR. CHARNEY:  Or an unjustified basis.

3          JUDGE SCHEINDLIN:  -- or I guess because of

4  the neighborhood they live in or something and

5  that that's wrong.  But if somebody, a

6  hypothetical person, was committing criminal acts

7  in front of everybody and was stopped, that would

8  be a different case and you're not worried,

9  that's not Mr. Lino.

10          MR. CHARNEY:  No.

11          JUDGE SCHEINDLIN:  I guess everybody has a

12  right to try to find out who Mr. Lino is and

13  whether these stops really are these sort of

14  unjustified and truth at random things or whether

15  folks were seeing him doing bad things and I

16  guess they want to go into that a little bit.

17          MR. CHARNEY:  How does that affect whether

18  the three stops that we are specifically alleging

19  are unconstitutional or not?

20          JUDGE SCHEINDLIN:  Good point, because you

21  want to put in the totality of the stops coloring

22  his view of the police.  You want to say in

23  addition to these three, there is a whole series

24  of over ten years and 20 stops, he has these

25  views.  You want to introduce it that way.

C. LINO

1          MR. CHARNEY:   I guess before, because I
2     think you've given me something to think about,
3     if Mr. Lino or if Plaintiffs and Mr. Lino
4     decided, look, I'm only going to testify about
5     these three stops and I'm not even going to
6     mention the fact, not event specifics, but the
7     fact that I've been stopped other times.
8          JUDGE SCHEINDLIN:   Right, that's what
9     Mr. Kunz has said.   He's not even allowed to have
10    a trial record that there have been 20 or more
11    stops over X number of year period, then that is
12    one thing.   It's a tactical decision because
13    there might be something powerful about saying
14    there have been 20 or more stops over five years,
15    but only if you're willing to look at those stops
16    from your point of view, pretty much a pattern of
17    no basis for any of them, really.   You may want
18    to put the time in because that's powerful.   On
19    the other hand, if you want to forego it, as
20    either Mr. Kunz or Ms. Grossman, I forgot who
21    said it, if you want to just not have anything on
22    the record about years of other stops, just
23    three, then so be it.
24         MR. CHARNEY:   Okay.
25         JUDGE SCHEINDLIN:   Okay.

C. LINO

1          MR. CHARNEY:  We have one other issue.

2          MS. GROSSMAN:  Your Honor, this is Heidi

3     Grossman again.

4          JUDGE SCHEINDLIN:  I don't have a record,

5     you know that.  I have no Reporter here.

6          MS. GROSSMAN:  We do.

7          JUDGE SCHEINDLIN:  Oh, you do, right, right.

8     Go ahead.

9          MS. GROSSMAN:  Just clarification.  We are

10          at a deposition and so we understand that it may

11          not be admissible and but I guess my question is,

12          if we can briefly go through it at the deposition

13          so we don't have to worry about bringing Mr. Lino

14          back.  Number two, I do want to remind the Court

15          about its ruling during the January 4th in limine

16          conference which is that when there is an arrest

17          of an individual that he doesn't remember, that

18          that goes to credibility and we are free to

19          discuss --

20          MR. CHARNEY:  No.

21          MS. GROSSMAN:  -- discuss that, if there are

22          arrests that he doesn't remember.  I can point to

23          you --

24          JUDGE SCHEINDLIN:  I vaguely remember that.

25          I remember saying something like, you know,

C. LINO

1        probably, gee, if I were arrested, I'd sure

2        remember that.  Being arrested is a traumatic

3        event.

4               MS. GROSSMAN:  Right.

5               JUDGE SCHEINDLIN:  It would be unlikely if

6        somebody said, gee, I can't remember if I've ever

7        been arrested and it turns out they've been

8        arrested eight times.  That would be odd to me.

9               MS. GROSSMAN:  Right.  We just want to know

10       that whatever it is that Mr. Charney chooses

11       tactically to do or not, that we can still

12       explore those kinds of questions.

13              JUDGE SCHEINDLIN:  "Those kinds" meaning has

14       he ever been arrested?

15              MS. GROSSMAN:  Right, and do you remember if

16       you've been arrested?  I would submit that if

17       there was, I guess, a summons issued, you know,

18       just to know if he remembered or not.  We are not

19       going into all the detail.

20              JUDGE SCHEINDLIN:  It's a deposition, you

21       can do it.  I'm not ruling against that.

22              MS. GROSSMAN:  Thank you, Your Honor.

23              MR. CHARNEY:  Your Honor, just so the record

24       is clear on this, at this deposition today,

25       Mr. Kunz was asking Mr. Lino questions such as

C. LINO

1    what Ms. Grossman just mentioned, do you recall

2    receiving a summons?

3        JUDGE SCHEINDLIN:  Right.

4        MR. CHARNEY:  Mr. Kunz had the summons in

5    front of him, asked the question.  Mr. Lino

6    didn't say I didn't recall, but Mr. Kunz then did

7    not show him the summons to try to refresh his

8    recollection.

9        JUDGE SCHEINDLIN:  But you are right there,

10    Mr. Charney.  Did you say on the record, I would

11    like you to show my client --

12        MR. CHARNEY:  I did not because I didn't

13    know he was going to have to answer these

14    questions.  But I will do so and say --

15        JUDGE SCHEINDLIN:  Yes, then you have a

16    record that they refused to show you a document,

17    right in their hand.

18        MR. CHARNEY:  Okay.

19        MS. GROSSMAN:  Your Honor, I just want to

20    note that we asked general questions but

21    Mr. Charney objected to and directed his witness

22    not to answer.  So, of course, we didn't have an

23    opportunity to even show him.

24        MR. CHARNEY:  That's not true.

25        MS. GROSSMAN:  Of course, now, with your

C. LINO

1      ruling, we can certainly proceed and refresh his

2      memory if we need to.

3          JUDGE SCHEINDLIN:  Okay, okay.  But yes, you

4      are allowed to ask him about arrests and

5      summonses.  But I'm not saying right now whether

6      it's admissible, but you're there at the

7      deposition, get it done.

8          MR. CHARNEY:  And the last thing, just to

9      make sure --

10         JUDGE SCHEINDLIN:  You have to hold on one

11     second, I'm sorry.

12         MR. CHARNEY:  Sure.

13         (Whereupon, a short recess was taken from

14     4:17 P.M. until 4:19 P.M.)

15         JUDGE SCHEINDLIN:  Sorry, I'm back.

16      Hello?

17         MR. KUNZ:  Yes, Your Honor, Morgan Kunz

18     here.  So, I think we are clear on this

19     particular issue.  There was another direction

20     not to answer that is related to this issue.

21     Mr. Lino is involved in another lawsuit filed by

22     the New York Civil Liberties Union in regard to

23     the alleged presence of his name in a NYPD

24     database.

25         JUDGE SCHEINDLIN:  Is that that State Court

C. LINO

1        case?

2                MR. CHARNEY:  Yes, the State Court case.

3                MR. KUNZ:  That's correct, Your Honor.

4                JUDGE SCHEINDLIN:  The one that recently got

5        decided?

6                MR. KUNZ:  Yes, there was a recent Appellate

7        Division decision on it.

8                JUDGE SCHEINDLIN:  Yes.

9                MR. KUNZ:  Right.  So, we would like to ask

10       Mr. Lino some questions in regard to that stop

11       and the lawsuit and --

12               JUDGE SCHEINDLIN:  Wait, not about the

13       lawsuit.  That stop is one thing.  We just talked

14       about other stops can be inquired into briefly,

15       not about the lawsuit.  I'm not interested -- I

16       mean, I'm very interested in that lawsuit, but

17       not for the purpose of my lawsuit.

18               MR. CHARNEY:  Your Honor, can I just

19       interject?  Your ruling about asking about other

20       stops is contingent on us, Mr. Lino talking

21       about --

22               JUDGE SCHEINDLIN:  Actually, it's not

23       because Ms. Grossman said correctly, we are at

24       the deposition now, we have to get it done.  You

25       may make a strategic decision down the road

C. LINO

1     that's tactical.

2          MR. CHARNEY:  What if we represent on the

3     record today --

4          JUDGE SCHEINDLIN:  If you're ready to make

5     that decision now, then I think that that's all

6     right.  What she's saying is you need to go back

7     and confer and think about it.  Everybody is

8     there and Mr. Lino is there.

9          MR. CHARNEY:  I agree.  I just want to

10    confer with my client, because really, the burden

11    would be on him to have to answer these

12    questions.  If we decide today that he will only

13    testify at trial about the three stops and not

14    about --

15         JUDGE SCHEINDLIN:  Not anything more about

16    the whole record of all those --

17         MR. CHARNEY:  Then he doesn't have to answer

18    any questions about other stops today, correct?

19         JUDGE SCHEINDLIN:  Yes, with the one

20    question about arrests and summonses.  I will

21    still allow to test his memory about that.

22         MR. CHARNEY:  Okay.  I guess with respect to

23    this NYCLU stop related to that lawsuit, I've

24    been instructed by his attorney in that case,

25    because we don't represent him in that case, not

C. LINO

1        to let him answer questions because his attorney

2        in that case is not present for this deposition,

3        and that particular stop is not related to the

4        Floyd case.

5                JUDGE SCHEINDLIN:  All right.

6                MR. CHARNEY:  He had no intention to testify

7        about it.

8                MR. KUNZ:  Your Honor, this is Morgan Kunz

9        again.  Our perspective on this particular issue

10       is that because that stop has ripened into a

11       lawsuit, we believe it could go towards his

12       potential bias or opinion of police officers and

13       we just want to explore --

14               JUDGE SCHEINDLIN:  I can't permit that.

15       Depending what decision Mr. Charney takes, I

16       can't do that.  Is that still an active case?

17               MR. CHARNEY:  I believe so.

18               MR. KUNZ:  Yes, it's my understanding it's

19       an active case.  But look, Mr. Lino was noticed

20       to come to today's deposition, so his attorney in

21       that case could have come if he wanted to and he

22       chose not to.

23               MR. CHARNEY:  But the notice was sent to me,

24       it wasn't sent to Mr. Dunn.

25               JUDGE SCHEINDLIN:  Right, it's related to

C. LINO

1    the Floyd case.  I can't open this up to

2    everything that concerns this man.  You know, you

3    might ask him about Section 8 Housing money, if

4    he gets it, but that's not my business.  There

5    has to be a limitation.

6        MR. KUNZ:  Okay.

7        JUDGE SCHEINDLIN:  Okay, thank you.

8        MS. GROSSMAN:  Your Honor, just one thing,

9    the underlying stop, though, which we should be

10   able to at least explore that because those are

11   facts.  It has nothing to do with attorney-client

12   discussions.  It's just about what he remembers

13   about the stop --

14       JUDGE SCHEINDLIN:  We are not going into

15   other stops that are not at issue here depending

16   on what Mr. Charney decides.

17       MR. CHARNEY:  Yeah.

18       MS. GROSSMAN:  I would just ask just to give

19   consideration to this one particular stop because

20   it is the subject of another lawsuit.

21       JUDGE SCHEINDLIN:  That is exactly precisely

22   why I'm not going there.  That suit is not part

23   of my case, it's not part of my case.

24       MS. GROSSMAN:  But it does go to his overall

25   view of the police.  I know Mr. Kunz said this

C. LINO

1          and I don't mean to belabor a point that you

2          might have rejected already, but it goes to his

3          overall bias regarding his beliefs, his interests

4          and his motivations behind coming to testify

5          here.  So, I'm not looking to spend hours on this

6          but to generally --

7               JUDGE SCHEINDLIN:  I don't think you can go

8          into the stop, but you certainly can

9          cross-examine him at trial to whether he's

10         Plaintiff in another lawsuit, to show he's

11         brought another lawsuit and what he's seeking in

12         that lawsuit.  That's fair ground, but not the

13         fact of the stop.  I'm not going into the stop.

14         That's somebody else's case.

15               MS. GROSSMAN:  You know, I guess --

16               JUDGE SCHEINDLIN:  Look, Ms. Grossman, I

17         never want to continue arguing after I've ruled.

18         That's my ruling.  You can ask him about being a

19         Plaintiff in another lawsuit, but that's it, not

20         the facts of the underlying stop.  That's

21         somebody else's case and that's my ruling.

22               MS. GROSSMAN:  Your Honor, you made rulings

23         about the police officers, where if there are

24         other incidents whether it's a stop, question and

25         frisk, a suspicionless stop, that we have to turn

C. LINO

1    that information over.

2        JUDGE SCHEINDLIN:  Yes, you do.  Their

3    conduct is at issue.  I can't go on.  I told you

4    what you can do; arrests, summonses, other

5    lawsuits that he's brought, but not the facts of

6    the underlying stop.  Okay, I think I have gotten

7    through the issues that you've raised within

8    25 minutes.  Thank you.

9        MS. GROSSMAN:  Thank you.

10       MR. KUNZ:  Thank you, Your Honor.

11       MR. CHARNEY:  Thank you, Your Honor.

12       (Whereupon, at 4:25 P.M., the conference

13    call to Judge Shira Scheindlin ended.)

14       MR. CHARNEY:  Let me just talk to my client

15    about the question that we need to resolve

16    because we might be able to hopefully end this

17    very soon.

18       (Whereupon, a short recess was taken from

19    4:25 P.M. until 4:36 P.M.)

20       MR. CHARNEY:  Mr. Lino and I have discussed

21    it and we have agreed, he has agreed that he will

22    only testify about the three stops that we've

23    already identified at trial and will not testify

24    about not only the facts of any other stops, but

25    the fact that he has been stopped on other

C. LINO

1                    C E R T I F I C A T E

2

STATE OF NEW YORK        )
3                         :  SS.:
COUNTY OF KINGS          )
4

5          I, SOPHIA TORIBIO, a Notary Public for and

6     within the State of New York, do hereby certify:

7               That the witness whose examination is

8     hereinbefore set forth was duly sworn and that such

9     examination is a true record of the testimony given by that

10    witness.

11              I further certify that I am not related to any

12    of the parties to this action by blood or by marriage and

13    that I am in no way interested in the outcome of this

14    matter.

15              IN WITNESS WHEREOF, I have hereunto set my hand

16    this 31st day of January 2013.

17

18

19    _____

20              SOPHIA TORIBIO

21

22

23

24

25