UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
DAVID FLOYD, et al.,

                    Plaintiffs,

      - against -

CITY OF NEW YORK,

                    Defendant.
---------------------------------------------------------------x

08-CV-1034 (SAS)

ECF Case

**REPLY MEMORANDUM OF LAW OF THE
POLICE INTERVENORS IN FURTHER SUPPORT
OF MOTION TO INTERVENE PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 24</u>**

DECHERT LLP

Steven A. Engel
Edward A. McDonald
James M. McGuire
Joshua I. Sherman
1095 Avenue of the Americas
New York, New York  10036
T: (212) 698-3693
F: (212) 698-3599
steven.engel@dechert.com

15062435

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I. THE POLICE INTERVENORS MAY INTERVENE AS OF RIGHT
   PURSUANT TO RULE 24(A) ...................................................................................... 2

   A. This Motion Is Timely ....................................................................................... 2

   B. The Police Intervenors Have a Direct, Protectable Interest in These
      Actions ............................................................................................................... 5

   C. The Police Intervenors' Interest Could Be Impaired by the Disposition of
      These Actions ..................................................................................................... 8

   D. The Police Intervenors' Interest Will Not Be Adequately Protected by the
      Parties to This Action ........................................................................................ 9

II. ALTERNATIVELY, THE POLICE INTERVENORS SHOULD BE GRANTED
    PERMISSIVE INTERVENTION ................................................................................ 10

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**CASES**

*Catanzano v. Wing*,
   103 F.3d 223 (2d Cir. 1996)..................................................................................................3

*Cook v. Bates,*
   92 F.R.D. 119 (S.D.N.Y. 1981) ............................................................................................4

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)...................................................................................................3

*Dow Jones & Co., Inc. v. U.S. Dep't of Justice*,
   161 F.R.D. 247 (S.D.N.Y. 1995) .........................................................................................4

*E.E.O.C. v. A.T.&T. Co.*,
   506 F.2d 735 (3d Cir. 1974).................................................................................................8

*Edwards v. City of Houston,*
   78 F.3d 983 (5th Cir. 1996) ..............................................................................................3, 4

*Hodgson v. United Mine Workers*,
   473 F.2d 118 (D.C. Cir. 1972)..........................................................................................2, 3

*In re Holocaust Victim Assets Litig.*,
   225 F.3d 191 (2d Cir. 2000).................................................................................................3

*Sheppard v. Phoenix*,
   No. 91 Civ. 4148, 1998 WL 397846 (S.D.N.Y. July 16, 1998) ..........................................6

*Stallworth v. Monsanto. Co.*,
   558 F.2d 257 (5th Cir. 1977) ............................................................................................4-5

*Trbovich v. United Mine Workers of America*,
   404 U.S. 528 (1972).............................................................................................................9

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977)....................................................................................................1, 2, 4

*United States v. City of Detroit*,
   712 F.3d 925 (6th Cir. 2013) .......................................................................................1, 2, 3

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ...................................................................................2, 5, 6, 9

*United States v. City of Portland*,
   No. 12-cv-2265 (D. Or. Feb. 19, 2013), at 7 ................................................................................6

*United States v. Yonkers Bd. Of Educ.*,
   801 F.2d 593 (2d Cir. 1986) .........................................................................................................3

*Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of City of White Plains*,
   79 F.R.D. 437 (S.D.N.Y. 1978) ...................................................................................................9

*W.R. Grace & Co. v. Local Union 759*,
   461 U.S. 757 (1983) .....................................................................................................................5

*Watertown v. N.Y.S. Pub. Employee Relations Bd.*,
   95 N.Y.2d 73 (2000) ....................................................................................................................7

**RULES**

Federal Rule of Civil Procedure 24 ........................................................................................ *passim*

**OTHER AUTHORITIES**

*Uniformed Firefighters Ass'n*, 77 OCB 39 (BCB 2006) .................................................................7

*L. 2507 & L.L. 3621, DC 367 v. City and FDNY*, 69 OCB 20 (BCB 2002) ..................................8

LEEBA, 3 OCB2d 29, 48 (BCB 2010) .............................................................................................8

*City of New York*, 40 PERB ¶ 3017 ................................................................................................8

The Police Intervenors respectfully submit this Reply Memorandum of Law in Further Support of their Motion to Intervene Pursuant to Federal Rule of Civil Procedure 24.[1]

## INTRODUCTION

The Police Intervenors seek to intervene in order to participate in future remedial proceedings and all appellate matters. The Court's decisions directly concern police practices over an eight-year period, and the remedy will affect both the officers' day-to-day activities and their collective bargaining and other rights. Under well-established precedent, the police unions have a right to intervene under Rule 24(a).

The City consents to intervention. Plaintiffs object to the motion's timing, but they can identify no genuine prejudice to their interests. Where an applicant seeks to intervene for the remedial phases or for appeal, the "critical inquiry" is not how long the case has been pending, but whether the intervenor acted "promptly" after the judgments. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977). As the Sixth Circuit recently held, where a public union seeks to intervene "on a prospective basis, allowing appeal of recently issued orders and participation in new matters," the district court may not deny intervention because the union did not participate earlier. *United States v. City of Detroit*, 712 F.3d 925, 932 (6th Cir. 2013).

Plaintiffs also argue that the Police Intervenors lack any cognizable interest under Rule 24(a). That is incorrect. As the Ninth Circuit has recognized, police unions "have a protectable interest in the merits phase of the litigation" where the plaintiffs "seek[] injunctive relief against

---

[1] Terms are as defined in the Police Intervenors' September 12, 2013 memorandum of law in support of their motion to intervene ("Initial Br."). Floyd's and Ligon's opposition briefs are abbreviated as "Floyd Br." and "Ligon Br."

15062435

its member officers and raise[] factual allegations that its member officers committed unconstitutional acts in the line of duty." *United States v. City of Los Angeles*, 288 F.3d 391, 399 (9th Cir. 2002). The Police Intervenors also have a protectable interest in the fashioned remedies since their "state-law rights to negotiate about the terms and conditions of [their] members' employment" may be abridged "as part of court-ordered relief after a judicial determination of liability." *Id.* at 400. Because the Court's judgment may impair or impede these state collective bargaining and other legal rights, the motion to intervene should be granted.

## ARGUMENT

**I.     The Police Intervenors May Intervene as of Right Pursuant to Rule 24(a)**

    **A.     This Motion Is Timely**

Plaintiffs argue that the motion is untimely because the Police Intervenors did not choose to intervene earlier, Floyd Br. at 8-10; Ligon Br. at 4-6, yet they misunderstand this application. In marked contrast to the cases upon which they rely, the intervenors seek to participate on a prospective basis, for both the remedial process and as to the pending appeal (and any future one). The Supreme Court addressed the issue in *United Airlines v. MacDonald*, 432 U.S. at 395-96, and held that a motion to intervene for purposes of appeal would be timely if filed within 30 days of the judgment. Under such circumstances, courts "often permit intervention even after final judgment, for the limited purpose of appeal, or to participate in future remedial proceedings." *City of Detroit*, 712 F.3d at 931.

Thus, in *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C. Cir. 1972) (a case approved by *United Airlines*, 432 U.S. at 395 n.16), the application was timely even though the union members sought to intervene "after the action was tried, and some seven years after it was

filed." 473 F.2d at 129. The proposed intervenors "sought only to participate in the remedial, and if necessary the appellate, phases of the case," and thus, timeliness posed "no automatic barrier to intervention in post-judgment proceedings where substantial problems in formulating relief remain to be resolved." *Id.* Similarly, in *City of Detroit*, the Sixth Circuit permitted a union to intervene in an environmental case that had been pending for 30 years. The Court found that "[t]he mere passage of time—even 30 years—is not particularly important to the progress-in-suit factor. Instead, the proper focus is on the stage of the proceedings and the nature of the case." 712 F.3d at 931. And in *Edwards v. City of Houston,* 78 F.3d 983, 1000 (5th Cir. 1996), the Court ruled that the police unions' motion to intervene prospectively in a civil rights case was timely, where they moved to intervene 37 and 47 days after the publication of the consent decree.

In opposing intervention, Plaintiffs rely upon cases where the movants asked the district court to revisit its prior rulings. For instance, in *United States v. Yonkers Bd. Of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986), which involved residential segregation, the court found against the city on liability and then conducted a three-month proceeding to determine the location of a new multifamily housing site. Subsequently, nearby homeowners moved to intervene so as to ask the Court to redo the completed proceeding, and it was for that reason the motion was untimely.[2]

By contrast, here, intervenors seek to participate in a remedial process that has just begun. Given that this Court deferred its remedial order in *Ligon* until after the *Floyd* trial, the

---

[2] Plaintiffs' other cases are to the same effect. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (unnamed class member may appeal approval of a class settlement, but the motion to intervene, filed three days before the fairness hearing, was untimely); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198-99 (2d Cir. 2000) (same); *Catanzano v. Wing*, 103 F.3d 223, 233-34 (2d Cir. 1996) (movants were untimely where they knew of their interests for "months (probably) years" and sought to raise new arguments in the case).

Police Intervenors reasonably determined to abide the outcome of the *Floyd* trial—which could have resulted in no liability and no City-wide remedial order—before investing their limited resources in intervention. Intervenors could sensibly wait until the Court issued its recent decisions prior to committing the resources to participating in future proceedings.[3]

Plaintiffs further cannot demonstrate any prejudice from the timing of the intervention. *See Cook v. Bates,* 92 F.R.D. 119, 122 (S.D.N.Y. 1981) ("In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention."). The *Floyd* Plaintiffs speculate that they might have presented their case differently at trial if the Police Intervenors had intervened sooner, Floyd Br. at 9, but they provide no examples of how. The *Ligon* Plaintiffs claim that intervention would "render idle the court's and parties' careful consideration of, and dialogue concerning, the appropriate remedies," Ligon Br. at 5, but they, too, fail to explain how this would be so. The Police Intervenors' participation going forward would cause no delay, and Plaintiffs' concern for the impact on future remedial proceedings is not cognizable, because "prejudice to the existing parties other than that caused by the would-be intervenor's failure to act promptly was not a factor meant to be considered" under Rule 24(a). *Stallworth v.*

---

[3]   The Police Intervenors' motion also is timely with respect to its interest in the liability phase when measured "from the time [they] became aware that [their] interest would no longer be protected by the existing parties to the lawsuit." *Edwards*, 78 F.3d at 1000; *see also United Airlines,* 432 U.S. at 394 (intervenor promptly moved "as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives"); *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 252-53 (S.D.N.Y. 1995) (Sotomayor, J.) (finding intervention timely where the movant "had some basis for believing that [defendant] would adequately protect her interest" and only sought to intervene after "she realize[d] that the [defendant] might not fully exercise its right to appeal"). To date, the City had defended the liability issues and has prosecuted the appeal, but this may change after the election, since the Democratic mayoral candidate has recently filed briefs in support of Plaintiffs.

*Monsanto. Co.*, 558 F.2d 257, 266 (5th Cir. 1977). By contrast, as discussed *infra*, the Police Intervenors would suffer concrete prejudice if denied the opportunity to intervene.

### B. The Police Intervenors Have a Direct, Protectable Interest in These Actions

In their Initial Brief, the Police Intervenors demonstrated that they have a protectable interest in this litigation because the Liability Opinion directly concerns the constitutionality of officers' conduct, and the Remedies Opinion directly impacts officers' work, training, safety and collective bargaining rights. A police union has a "protectable interest in the merits phase of the litigation" where plaintiffs seek "injunctive relief against its member officers" and allege that officers "committed unconstitutional acts in the line of duty." *City of Los Angeles*, 288 F.3d at 399-400. Here, Plaintiffs challenged police officers' conduct, relying upon police officer witnesses and the UF-250 forms, and the Remedies Opinion directs numerous actions that, in turn, will have a direct impact upon officers' day-to-day activities. Plaintiffs' failure to address *City of Los Angeles* on this point is telling.

In addition, as Plaintiffs admit, numerous courts have recognized that police unions' state-law labor rights may be affected by federal court decrees. *See* Ligon Br. at 9 (citing cases). The Police Intervenors have "state-law rights to negotiate about the terms and conditions of [their] members' employment . . . and to rely on the [resulting] collective bargaining agreement[s]." *City of Los Angeles*, 288 F.3d at 399-400; *see also W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 771 (1983). If a proposed remedies order "contains – ***or even might contain*** – provisions that contradict the terms" of the CBA, the union members have "a protectable interest." *United States v. City of Portland*, No. 12-cv-2265 (D. Or. Feb. 19, 2013),

5

at 7 (emphasis added).[4]  Indeed, even if there is a dispute whether an order touches upon a bargaining right, a union has the "right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve" the ultimate injunction.  *City of Los Angeles*, 288 F.3d at 400.[5]

Plaintiffs claim that in *City of Los Angeles* it was "undisputed that implementation of the consent decree would affect the state statutory and contractual rights of the intervening unions." *Ligon* Br. at 10.  But that is simply incorrect.  There, the United States argued that the consent decree preserved the unions' rights to bargain with the City, and thus, it was "purely speculative that the parties will not agree on what provisions are subject to collective bargaining and on how any disputes over those provisions should be resolved." 288 F.3d at 401.  The Ninth Circuit rejected that reasoning because the consent decree purported to federalize what otherwise would be a state law process and because Rule 24's standard was whether the order "'may' impair rights 'as a practical matter'" not "whether the decree will 'necessarily' impair them." *Id.*

The Remedies Opinion plainly contemplates reforms to many terms and conditions of employment ordinarily subject to collective bargaining.  While Plaintiffs contend that the final injunction may not necessarily interfere with those rights, the purpose of the Police Intervenors'

---

[4] Thus, the case is distinguishable from *Sheppard v. Phoenix*, No. 91 Civ. 4148, 1998 WL 397846 at *6 (S.D.N.Y. July 16, 1998), relied upon by Plaintiffs, where the court was faced, not with the complex remedial process contemplated by the Remedies Order, whose full contours remain to be determined, but rather what the court called a "narrowly drawn" consent decree. *Id.*

[5] The Police Intervenors also have an interest in representing their members' statutory interests and rights in police disciplinary proceedings, the procedures for which may be part of the ordered remedies.

motion is to ensure this will not be the case. Absent intervention, the unions could not ensure that their rights will be protected.

Plaintiffs similarly miss the point by claiming that the so-called "Management Rights" provision of the NYCCBL would exempt every practice covered by the remedial order from bargaining. As a threshold matter, whether the management rights' clause even applies to NYPD bargaining units is unclear. *See, e.g.*, *Uniformed Firefighters Ass'n*, 77 OCB 39 (BCB 2006) (dissenting op. of Members Moerdler and Simon).

Even if it were applicable to the police unions, however, the starting point for determining whether it would apply to the remedies at issue would be public employers' duty "to bargain in good faith concerning all terms and conditions of employment." *Watertown v. N.Y.S. Pub. Employee Relations Bd.*, 95 N.Y.2d 73, 78 (2000). New York's public policy in favor of collective bargaining is "strong and sweeping." *Id.* The presumption in favor of bargaining "may be overcome only in 'special circumstances' where the legislative intent to remove the issue from mandatory bargaining is 'plain' and 'clear' or where a specific statutory directive leaves 'no room for negotiation.'" *Id.* (internal citations omitted). In other words, the management rights' clause arguably takes matters outside the duty to bargain only where the legislative intent is "plain" and "clear" based on a "specific statutory directive."

There is no "plain" and "clear" legislative intent to exclude from bargaining the subjects identified in the Initial Brief. *See* Initial Br. at 5-7. None is expressly named in the management rights' clause, and even where state regulators have found the clause to apply, such as to training, for example, the regulators also have recognized exceptions. *See, e.g.*, *L. 2507 & L.L. 3621, DC 367 v. City and FDNY*, 69 OCB 20 (BCB 2002) (training is subject for bargaining when it "is

7

required by the employer as a qualification for continued employment, or improvement in pay or work assignments").[6]  Accordingly, what is decisive here is not how the New York labor regulators might decide a particular question, but that these matters are arguable and ordinarily could be submitted to state proceedings.  The Police Unions plainly have a right to have their interests heard in front of this Court and to ensure that the remedies ordered do not unnecessarily prejudice their rights in state law proceedings.

### C. The Police Intervenors' Interest Could Be Impaired by the Disposition of These Actions

In their Initial Brief, the Police Intervenors explained how their interests would be impaired by the disposition of these actions.  As to liability, the Police Intervenors would plainly be prejudiced if the City were to compromise or withdraw the appeal.  And as to remedy, the Police Intervenors have an interest in the rules set forth by this Court, and their collective bargaining and other rights of members could be impaired.  Plaintiffs respond only to the latter point, contending that the Police Intervenors may protect themselves through collective bargaining and the New York state courts.  Ligon Br. at 11-12.  Yet as noted, this Court's orders would impair or impede any state process.  *See, e.g.*, *City of Los Angeles*, 288 F.3d at 401 (court's order would "override [the union's] bargaining rights under [state] law"); *E.E.O.C. v. A.T.&T. Co.*, 506 F.2d 735 (3d Cir. 1974) (union's interest in its collective bargaining agreement

---

[6]  The Police Intervenors would similarly have rights to bargain over bodyworn cameras.  Plaintiffs contend that the BCB has held that "decisions regarding the selection or use of equipment" are management prerogatives.  LEEBA, 3 OCB2d 29, 48 (BCB 2010).  Yet PERB (the labor board with jurisdiction over NYPD scope of bargaining petitions) has found that interests such as officer safety, privacy, and discipline may outweigh the City's general interest in choosing the technology at issue.  *See, e.g.*, *City of New York*, 40 PERB ¶ 3017.

8

would "be impaired or impeded" if the agreements are "modified or invalidated"). Plaintiffs do not explain how the Police Intervenors could challenge this Court's order through a state law process, but the relevant inquiry is that the Police Intervenors' interest may be impaired if these matters are determined without their participation.

### D. The Police Intervenors' Interest Will Not Be Adequately Protected by the Parties to This Action

In their Initial Brief, the Police Intervenors demonstrated that their interest will not adequately be protected by the parties because their interests are adverse to Plaintiffs, and not aligned with the City. The inadequacy requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). In response, Plaintiffs contend that the City may protect the Police Intervenors' interests in their members' safety and their confusion over the constitutional standards. Floyd Br. at 6-7. As noted above, the interests of the Police Intervenors and the City may diverge with the next Administration. *See supra* p. 4 note 3. And the cases Plaintffs cite are inapposite because in those cases the government was acting on behalf of its constituents not, as here, on behalf of its employees. *See City of Los Angeles*, 288 F.3d at 401-02.

In addition, there can be no argument that the City would represent the unions' interests in the remedial process, because unions and their employers have adversarial interests in that sphere. *See, e.g.*, *Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of City of White Plains*, 79 F.R.D. 437, 441 (S.D.N.Y. 1978). Indeed, the City acknowledged the same point in

9

consenting to intervention.  *See* Oct. 18, 2013 Letter of Heidi Grossman to the Court (*Ligon* Dkt # 152; *Floyd* Dkt # 414).  This acknowledgement satisfies the "minimal" burden applicable here.

## II. Alternatively, the Police Intervenors Should Be Granted Permissive Intervention

As shown in the Initial Brief, the Police Intervenors also meet the standard for permissive intervention.  Fed. R. Civ. P. 24(b).  In response, Plaintiffs essentially rehash the same arguments in opposing Rule 24(a)(2) intervention.  *See, e.g.*, Ligon Br. at 14-15.  For the same reasons discussed above and in the Initial Brief, these arguments are incorrect and permissive intervention is appropriate as well.

## CONCLUSION

The Police Intervenors respectfully request that the Court grant their motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissively under Rule 24(b).

Dated:  New York, New York
        October 25, 2013

                                                      DECHERT LLP

                                       By:  */s/ Steven A. Engel*
                                              Steven A. Engel
                                              Edward A. McDonald
                                              James M. McGuire
                                              Joshua I. Sherman
                                              1095 Avenue of the Americas
                                              New York, New York  10036
                                              T: (212) 698-3693
                                              F: (212) 698-3599
                                              steven.engel@dechert.com

                                              *Attorneys for the Proposed Intervenors*
                                              *Patrolmen's Benevolent Association of the*
                                              *City of New York, Inc., the Detectives*

*Endowment Association, Police Department, City of New York, Inc., the Lieutenants Benevolent Association of the City of New York, Inc., and the Captains' Endowment Association of New York, Inc.*