UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DAVID FLOYD, et al.,                                    :

               Plaintiffs,               :

          -against-                          :

CITY OF NEW YORK, et al.,                           :

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No.  08 Civ. 1034 (SAS)

**REPLY MEMORANDUM OF LAW OF SERGEANTS BENEVOLENT ASSOCIATION
IN FURTHER SUPPORT OF MOTION TO INTERVENE PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 24</u>**

ANTHONY P. COLES
COURTNEY G. SALESKI

DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Proposed Intervenor
Sergeants Benevolent Association*

# TABLE OF CONTENTS

**Page**

I.    The SBA May Intervene as of Right.................................................................... 1

    A.    The SBA Has Direct, Protectable Interests in This Action That Will Be
Impaired If the SBA Is Not Permitted to Participate ............................................. 1

    B.    This Motion Is Timely Because the SBA Has Acted Promptly to Intervene
in This Matter for the Purposes Stated................................................................ 6

    C.    The Interests of the SBA Will Not Be Adequately Protected by the Present
Parties to This Action............................................................................................ 8

II.   Alternatively, the SBA Should Be Granted Permissive Intervention ............................. 10

III.  CONCLUSION........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acree v. Iraq*,
370 F.3d 41 (D.C. Cir. 2004) ....................................................................7

*Bridgeport Guardians v. Delmonte*,
227 F.R.D. 32 (D. Conn. 2005) ...........................................................1, 8

*Drywall Tapers & Pointers, Local Union 1974  v. Nastasi & Assocs., Inc.*,
488 F.3d 88 (2d Cir. 2007) .........................................................................6

*Grubbs v. Norris*,
870 F.2d 343 (6th Cir. 1989) .....................................................................9

*In re Cincinnati Policing*,
209 F.R.D. 395 (S.D. Ohio 2002) .............................................................4

*Linton v. Comm'r of Health & Env't*,
973 F.2d 1311 (6th Cir. 1992) ...................................................................9

*Marino v. Ortiz*,
484 U.S. 301 (1988) ...................................................................................1

*Michigan State AFL-CIO v. Miller*,
103 F.3d 1240 (6th Cir. 1997) ...................................................................9

*Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*,
467 F.3d 73 (2d Cir. 2006) .......................................................................10

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ...............................................................................8, 9

*United States v. City of New Orleans*,
No. 12-1924, Order, Dkt. No. 102 (E.D. La. Aug. 31, 2012) ...................9

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977) ...................................................................................6

*United States v. City of Hialeah*,
140 F.3d 968 (11th Cir. 1998) ...................................................................5

*United States v. City of Detroit*,
  712 F.3d 925 (6th Cir. 2013) ................................................................................2, 4, 8, 9

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ...............................................................................2, 4, 8, 9

*Washington Electric Coop., Inc. v. Massachusetts Mun. Wholesale Electric Co.*,
  922 F.2d 92 (2d Cir. 1990).............................................................................................3

*Yniguez v. Arizona*,
  939 F.2d 727 (9th Cir. 1991) ...................................................................................6, 10

**STATUTES**

N.Y. City Admin. Code § 12-307(6) ..............................................................................4, 5

Fed. R. Civ. P. 24(a)(2)........................................................................................................10

Fed. R. Civ. P. 24(b) ...........................................................................................................10

**OTHER AUTHORITIES**

*Uniformed Firefighters Ass'n*, Decision No. B-20-92 (BCB) ...........................................5

*Uniformed Firefighters Ass'n*, Decision No. B-43-86 (BCB) ...........................................5

Proposed Intervenor the SBA[1] submits this Reply Memorandum of Law in Further Support of its Motion to Intervene Pursuant to Federal Rule of Civil Procedure 24.  The SBA, which represents the front line of law enforcement in the City and whose members' lives and livelihoods have been and will be affected by this litigation, should be allowed to participate in this matter as a party and should be permitted to defend its members' rights on appeal to the Second Circuit.[2]  The City consents to intervention,[3] and the motion should be granted.

## I.      The SBA May Intervene as of Right.

### A.      The SBA Has Direct, Protectable Interests in This Action That Will Be Impaired If the SBA Is Not Permitted to Participate.

A party seeking to intervene "must show *only an interest within the context of the case, and . . .* demonstrate that its interest *may be* impaired by an adverse decision in the case." *Bridgeport Guardians v. Delmonte*, 227 F.R.D. 32, 34 (D. Conn. 2005) (emphasis added) (citing *Brennan v. N.Y. City Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001)).  The party "need not have an independent cause of action to be considered to have an interest within the scope of Rule 24(a)." *Id.* (citing *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972)).  The SBA has satisfied these standards.  The SBA has direct and protectable interests in the matters decided in both the Liability and Remedies Opinions.

First, the Liability Opinion characterized various actions of SBA members as violating the U.S. Constitution, and then proceeded to articulate standards for constitutional stops and

---

[1] All-capitalized and initially capitalized terms used in this Reply refer to those terms as defined in the SBA's opening brief.

[2] The U.S. Supreme Court has suggested that a non-party seeking to intervene for purposes of an appeal should first seek intervention in the district court.  *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("We think the better practice is for such a nonparty to seek intervention for purposes of appeal[.]").

[3] *See* Letter from Heidi Grossman to this Court dated October 13, 2013, Dkt. No. 414.

frisks that the SBA believes are in many respects vague, ambiguous, or difficult to apply in practice.  Liability Op. 71-98; 181-92.  The Liability Opinion also identifies sergeants by name, asserts that they are untruthful, and concludes that numerous stops that they supervised, approved, or conducted broke the law (as noted in the SBA's opening brief at 5).  In addition, the Liability Opinion derogates the general practices and performance of NYPD sergeants, including findings that assert the creation of "a culture of hostility" perpetuated by Sergeant Raymond Stukes, Liability Op. 72-74; inadequate supervision of stops by Sergeant Charlton Telford; *id.* at 86-87; insufficient record-keeping by Sergeant Michael Loria; *id.* at 90-91; and various examples of allegedly poor supervision by sergeants generally, *id.* at 95-98.

Such findings are sufficient to establish a direct, protectable interest.  *See United States v. City of Los Angeles*, 288 F.3d 391, 404 (9th Cir. 2002) (finding "protectable interest in the merits" for police union based on "factual allegations that its member officers committed unconstitutional acts in the line of duty").  These aspects of the Liability Opinion, if affirmed, would adversely affect the careers and lives of these SBA members, and cast doubt on the ability of other members to perform their duties effectively while avoiding similar accusations in the future, which in turn affects officer and public safety.  Thus, the SBA has a strong protectable interest in the merits of this action and must participate to defend its members with respect to their past conduct, to help shape better standards to govern future conduct, and to gain the clarity necessary for the sergeants to protect themselves and the public.  Only an entity such as the SBA, which is the sole organizational voice of police sergeants in the NYPD, can properly articulate and address such issues for the Court.

Plaintiffs' assertion that "[t]he Plaintiffs and unions have no dispute with each other" is wrong.  Pl.'s Mem. of Law 5.  The SBA vigorously disputes Plaintiffs' contentions (now adopted

by the Court in the Liability Opinion) that its members acted wrongfully (among other contentions).  And Plaintiffs' citation to *Washington Electric Coop., Inc. v. Massachusetts Mun. Wholesale Electric Co*., 922 F.2d 92, 97 (2d Cir. 1990), does nothing to further their argument. In that case, the Court found that the proposed intervenor's alleged interest was dependent on multiple, yet-to-occur contingencies, including a loss by the current plaintiffs in the matter. Here, the SBA's interests in the Liability Opinion are concrete and not based on any contingencies.

Second, the SBA has multiple, direct, protectable interests affected by the Remedies Opinion in this matter.  First, the Remedies Opinion and proceedings to be conducted thereunder will establish rules that SBA members will be required to follow when carrying out stop, question and frisk policies.  Like the Liability Opinion, the standards for constitutionality articulated by the Court in the Remedies Opinion directly affect how the SBA members conduct that technique; how they review their supervisees' implementation of that technique; and how they will train other officers in that technique.  In this respect, the Remedies Opinion directly affects the day-to-day realities of SBA members in the field—including matters that bear on officer and public safety, resulting in the SBA's direct interest in the Remedies Opinion and proceeding.

In the Remedies Opinion, this Court pointed repeatedly to other collaborative remedial proceedings involving police reforms as exemplars of how such reforms should be achieved, and specifically recommended that the approaches taken in those other matters be used as models for the remedial proceedings in this case.  In particular, the Court directed the parties to the reforms implemented in Cincinnati, Ohio, and noting that that process may be used as a model. Remedies Op. 28, 30-31.  Significantly, one of the direct participants in the Cincinnati

Collaborative Procedure was the Fraternal Order of Police, *a bargaining unit representing police officers,* just like the SBA. *In re Cincinnati Policing*, 209 F.R.D. 395, 403 (S.D. Ohio 2002). In approving the resulting consent decree, the Southern District of Ohio noted that the police union, as a formal party to the agreement, played a critical role in formalizing the reforms. *Id.* at 403.

Similarly, in *City of Los Angeles*—to which this Court cited in the Remedies Opinion for the proposition that all affected parties should be permitted to participate in the remedial process—the Ninth Circuit disapproved of the concept of "'streamlining' the litigation" by excluding certain proposed intervenors, a goal the court warned "should not be accomplished at the risk of marginalizing those-*such as the Police League* and the Community Interveners-*who have some of the strongest interests in the outcome*." 288 F.3d at 404. The Ninth Circuit in *City of Los Angeles* reversed the decision of the district court not to permit the Police League, a bargaining unit representing certain ranks of police officers, to intervene in the remedial proceedings as a matter of right pursuant to Rule 24. *Id.*

*City of Los Angeles* supports the SBA's second direct, protectable interest in the Remedies Opinion in this matter. The court noted, just as the SBA has argued, that "[t]he Police League has state-law rights to negotiate about the terms and conditions of its members' employment as LAPD officers and to rely on the collective bargaining agreement that is a result of those negotiations. . . . These rights give it an interest in the consent decree at issue." *Id.* at 399-400. The SBA has analogous state-law collective bargaining rights under the NYCCBL. N.Y. City Admin. Code § 12-307(6). Without the participation of the SBA, these proceedings will undermine their collective bargaining rights.

The impairment of SBA members' rights will occur both immediately and as the remedial proceedings unfold. One example of an immediate impact is that mandatory training

directed by the Court will become a qualification for continued employment which, absent Court direction, would be treated as a routine subject of collective bargaining. *See Uniformed Firefighters Ass'n*, Decision No. B-43-86 at 15 (BCB); *Uniformed Firefighters Ass'n*, Decision No. B-20-92 at 8 (BCB). Those aspects of the Remedies Opinion that affect the SBA's collective bargaining rights demonstrate the SBA's direct, protectable interest here in minimizing the erosion of the SBA's rights.

Plaintiffs' argument that some of the issues the SBA provides as examples of collective bargaining matters may not be specifically held to be within the scope of collective bargaining, Pl.'s Mem. of Law 5-6, misses the point: the very purpose of the remedial proceedings is to determine specific remedies to be implemented. Moreover, the mere "threat" that collective bargaining rights will be impaired constitutes a substantial affect, and the SBA is "not required to prove with certainty that particular employees would lose contractual benefits." *United States v. City of Hialeah*, 140 F.3d 968, 982 (11th Cir. 1998). Many of the proposed remedies predictably will have an impact on the SBA's collective bargaining rights (if the SBA is not involved) regarding issues that have a practical impact on the SBA's members' workload, staffing, and safety (among other things), including changes to training, forms and other paperwork, discipline, and supervision (among other things). *See* N.Y. City Admin. Code § 12-307(6)b.[4] Moreover, as discussed above, the remedies will affect interests of the SBA regardless of whether they implicate collective bargaining, and the SBA must have a role in shaping them.

---

[4] Without conceding that its interest rises or falls solely on the basis of "practical impacts" that are the subject of mandatory collective bargaining, the SBA respectfully submits that such impacts cannot always be ascertained in advance or in the abstract because they must be assessed individually, based on effects that may not be immediately foreseeable to the Court, the City, or Plaintiffs. On the other hand, practical impacts can be far more easily recognized by an organization such as the SBA with the unique perspective and experience of having members who implement City and NYPD policy at the street level.

**B.    This Motion Is Timely Because the SBA Has Acted Promptly to Intervene in This Matter for the Purposes Stated.**

The SBA moved to intervene in this matter within 30 days after the issuance of the two Opinions.[5]  It does not seek to re-litigate issues decided at trial, but to accomplish two forward-looking objectives: (1) to challenge certain aspects of the Opinions on appeal; and (2) to participate in remedial proceedings that have yet to begin.  As set forth at length in the SBA's opening brief, the purposes of the SBA's intervention, the events that prompted it to intervene, and its inability to have foreseen the necessity of its involvement in this matter, fully support a finding that its motion is timely.  *See* SBA's Mem. of Law 7-13.  Moreover, this Motion is timely under cases holding that a post-judgment motion to intervene is timely if filed within the time for filing an appeal.  *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96, (1977) (holding that, because post-judgment  motion to intervene was filed within time period for taking appeal, motion was timely); *Yniguez v. Arizona,* 939 F.2d 727, 734 (9th Cir. 1991) (noting that the "general rule [is] that a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal").

The Sixth Circuit's recent decision in *United States v. City of Detroit* supports a finding of timeliness here.  712 F.3d 925 (6th Cir. 2013).  The Sixth Circuit reviewed the denial of motions to intervene pursuant to Rule 24 that certain municipal employees' unions had filed to challenge a remedial order issued after 30 years of litigation that sought to bring the City of Detroit's municipal water and sewer authority into environmental regulatory compliance.  *Id.* at

---

[5] The Second Circuit has endorsed the practice of intervening for purposes of appeal and has held that a motion to intervene filed within 30 days after judgment is timely in such a situation. *Drywall Tapers & Pointers, Local Union 1974 v. Nastasi & Assocs., Inc.*, 488 F.3d 88, 95 (2d Cir. 2007) ("Since Local 52 filed a notice of appeal within 30 days of the Order issuing the Consent Injunction, albeit at a time when it was not a party, its status as a party, if intervention is granted, should permit it to renew its appeal.").

926-27.  The Sixth Circuit held that the unions' motions were *not* untimely, and that the district court's denial of the motions was an abuse of discretion.  *Id.*

The Sixth Circuit reasoned that "[t]he mere passage of time—even 30 years—is not particularly important to the progress-in-suit factor," and that "the proper focus is on the stage of the proceedings and the nature of the case[.]"  *Id.* at 931.  "Where future progress remains and the intervenor's interests are relevant, intervention may be the most effective way to achieve a full and fair resolution of the case."  *Id.*  The court held that the appropriate way of addressing any timeliness concerns raised by the unions' motions to intervene was to limit the unions' role to a prospective one directed at the remedial process and any timely appeal of past orders.  *Id.*

Like the unions in *City of Detroit*, the SBA seeks only a prospective role to shape future remedial efforts and challenge certain rulings of the lower court on appeal.  The SBA acted promptly as soon as it knew that it would have any interest in participating in future proceedings in this case.  *See Acree v. Iraq*, 370 F.3d 41, 49-50 (D.C. Cir. 2004) ("Post-judgment intervention is often permitted . . . where the prospective intervenor's interest did not arise until the appellate stage. . . .  In particular, courts often grant post-judgment motions to intervene where no existing party chooses to appeal the judgment of the trial court[.]").

Under the relevant law, Plaintiffs' criticism of the SBA for not intervening at the outset of the case is unfounded.  The SBA did not know until the issuance of the Liability Opinion that the Court would criticize several SBA members, find their conduct to have violated the law, and articulate unclear standards for constitutionally acceptable stops and frisks.  And the SBA did not know, and could not have known, of the particular interest it would have in the separate Remedies Opinion and proceeding (which had not yet been ordered and was not reasonably foreseeable) until after the Remedies Opinion had been issued.  Because the SBA's interest in

this matter did not crystallize until after the Court issued the Opinions and the SBA has acted

promptly since that time, the SBA's motion is timely.

### C. The Interests of the SBA Will Not Be Adequately Protected by the Present Parties to This Action.

The inadequacy requirement of Rule 24(a) "is satisfied if the applicant shows that

representation of his interest 'may be' inadequate; and the burden of making that showing should

be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10; *see also City of Los Angeles*, 288 F.3d

at 39. The interests of the SBA will not be adequately represented by any current party to the

litigation.

The interests of the City and the SBA are not the same, and the City consents to the

SBA's intervention. *See* Dkt. No. 414. While the City is rightly concerned with overarching

policy issues and the macro-level effectiveness of the NYPD, the SBA is uniquely focused on the

interests of individual officers who serve as the first-line boots on the ground in law

enforcement. *See, e.g., Bridgeport Guardians*, 227 F.R.D. at 35 ("The City's interest is in public

safety and managerial efficiency; its interests do not necessarily align with those of the Union

concerning pay, seniority, and assignments."). Nor, as the SBA noted in its opening brief, does it

make any sense to suggest that the employer of members of a collective bargaining unit has

interests that are completely aligned with its employees, because the two parties are in naturally

adversarial stances on many issues relating to the members' terms and conditions of

employment. The City agrees. *See* Dkt. No. 414 ("[r]ecognizing that the interests of the City

and the Unions may differ on collective bargaining issues").

Plaintiffs' arguments suggesting that the SBA is adequately represented by the City are

meritless. Plaintiffs erroneously suggest that the SBA is required to point out specific instances

in which it would have handled past aspects of the case differently from the way an existing

party did.  That is not the standard for intervention.  Rather, as discussed above, the SBA has

satisfied the "minimal" burden of showing inadequate representation under Rule 24(a)(2).

*Trbovich,* 404 U.S.  at 538 n.10; *cf. Grubbs v. Norris*, 870 F.2d 343, 347 (6th Cir. 1989)

("question of adequate representation does not arise unless the applicant is somehow represented

in the action").  Indeed, a potential intervenor is required to show only that the representation

may be inadequate, not that it will be or has been inadequate.  *See Michigan State AFL-CIO v.*

*Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997); *Linton v. Comm'r of Health & Env't*, 973 F.2d

1311, 1319 (6th Cir. 1992).

Moreover, no presumption exists that the City adequately represents the interests of the

SBA or its members, and the City's status as a government entity does not make it an adequate

representative of the interests of the SBA or its members.  The presumption of adequacy to

which Plaintiffs refer in their brief "is restricted to lawsuits involving matters of sovereign

interest."  *United States v. City of New Orleans*, No. 12-1924, Order, Dkt. No. 102, at 4 (E.D. La.

Aug. 31, 2012) (cited at Pl.'s Mem. of Law 7 and attached as Pl.'s Mem. of Law Exh. D.).[6]

Unlike this case, all of the cases Plaintiffs cite involved proposed intervenors that were private

citizen groups or individual citizens whose interests were coextensive with (and thus held to be

adequately represented by) existing municipal parties.  Pl.'s Mem. of Law 7.  Here, the SBA's

members are City employees and, therefore, the City does not represent them solely as

constituents in this matter.  To the extent that it represents the SBA at all, the City does so only

---

[6] *City of New Orleans* is completely inapposite to this case for other reasons, including the fact
that the motion to intervene in that decision was filed by a police union that had no collective
bargaining relationship with the existing municipal party.  *Id.* at 21.  The court distinguished it
on this basis from *City of Los Angeles*, stating, "This distinction is important because no
contractual rights of the NOPD officer members are threatened or impaired by the proposed
Consent Decree."  *Id.*  Here, unlike in *City of New Orleans*, the SBA's officer members *do* have
a collective bargaining relationship with the City that *are* threatened by the prospect of the
proposed reforms, including any future consent decree.

as an employer and a collective bargaining counterparty with interests that are antagonistic to, or

at least inconsistent with, those of the SBA with regard to issues that may be raised on appeal

and in the remedial proceedings.

Moreover, the leading mayoral candidate, City Public Advocate Bill De Blasio, has

indicated he will abandon the appeal if elected.  SBA's Mem. of Law 12 n.2.  On October 15,

2013, Mr. De Blasio filed with the Second Circuit an *amicus* brief opposing the City's pending

request for a stay of the Orders in this matter pending appeal (a motion the SBA supports and has

filed a memorandum of law in support of), thereby confirming that he will *not* adequately

represent the SBA's interests in this action.  Courts have held that such a situation renders

representation inadequate.  *See Yniquez v. State of Ariz.*, 939 F.2d 727, 730 (9th Cir. 1991)

("[N]o representation constitutes inadequate representation.").[7]

## II.      Alternatively, the SBA Should Be Granted Permissive Intervention.

In the alternative, and for the same reasons stated above and in the SBA's opening brief,

this Court should grant the SBA permissive intervention.

## III.     CONCLUSION

For all of the above reasons, the SBA respectfully requests that the Court grant its motion

to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative,

permissively under Rule 24(b).

---

[7] Plaintiffs suggest in passing and without any support that the SBA lacks standing to pursue the appeal.  Pl.'s Mem. of Law 10.  Plaintiffs are wrong.  In fact, a nonparty may appeal a judgment if it is either bound by the judgment or has an interest affected by the judgment—both of which exceptions are applicable here.  *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 77-79 (2d Cir. 2006).

Dated:  New York, New York.            Respectfully submitted,
       October 25, 2013

DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
212.335.4500

By:  /s/ Anthony P. Coles
      Anthony P. Coles
      Courtney G. Saleski
      Attorneys for Proposed Intervenor
      Sergeants Benevolent Association

## CERTIFICATE OF SERVICE

I, hereby certify that on October 25, 2013, a true and correct copy of the foregoing Reply

Brief in Further Support of Motion to Intervene was filed electronically and is available for

viewing and downloading from the ECF system.  A true and correct copy of the same was served

via U.S. mail, postage prepaid, upon the following:

Darius Charney
Sunita Patel
Chauniqua Young
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
*Attorneys for Plaintiffs*

Eric Hellerman
Kasey Martini
Bruce Corey, Jr.
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
*Attorneys for Plaintiffs*

Jonathan Moore
Jenn Rolnick Borchetta
Beldock Levine & Hoffman LLP
99 Park Avenue, Suite 1600
New York, NY 10016
*Attorneys for Plaintiffs*

Heidi Grossman
Brenda Cooke
Linda Donahue
Morgan Kunz
Joseph Marutollo
Suzanna Publicker
Lisa Richardson
Judson Vickers
Assistant Corporate Counsel
New York City Law Department
100 Church Street
New York, NY 10007
*Attorneys for Defendants*

Steven A. Engel
James M. McGuire
Joshua I. Sherman
Dechert LLP
1095 Avenue of the Americas
New York, New York  10036
*Attorneys for the Proposed Intervenors Patrolmen's Benevolent Association of the City of New York, Inc., the Detectives Endowment Association, Police Department, City of New York, Inc., the Lieutenants Benevolent Association of the City of New York, Inc., and the Captains' Endowment Association of New York, Inc.*

/s/ Anthony P. Coles
Anthony P. Coles