**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

DAVID FLOYD, et al.,

               Plaintiffs,

         - against -

CITY OF NEW YORK, et al.,

             Defendants.

———————————————————————— x

Docket No. 08-CV-1034 (AT)


**CORRECTED SUPPLEMENTAL MEMORANDUM OF LAW**
**OF THE PATROLMEN'S BENEVOLENT ASSOCIATION, THE**
**DETECTIVES ENDOWMENT ASSOCIATION, THE LIEUTENANTS**
**BENEVOLENT ASSOCIATION, AND THE CAPTAINS' ENDOWMENT**
**ASSOCIATION IN SUPPORT OF MOTION TO INTERVENE**

DECHERT LLP

Steven A. Engel
Edward A. McDonald
James M. McGuire
Elisa T. Wiygul*
   *pro hac vice motion pending
1095 Avenue of the Americas
New York, New York  10036
T: (212) 698-3693
F: (212) 698-3599
steven.engel@dechert.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 4

PROCEDURAL HISTORY ................................................................................................. 5

ARGUMENT ................................................................................................................... 9

POINT I:
    THE POLICE INTERVENORS' MOTION
    TO INTERVENE SHOULD BE GRANTED ................................................................. 9

       A.    The Police Intervenors May Intervene As Of
           Right Under Federal Rule Of Civil Procedure 24(a) ............................... 9

           1.    This Motion Is Timely ............................................................. 10

           2.    The Police Intervenors Have Direct,
               Protectable Interests In This Action ........................................... 13

           3.    The Police Intervenors' Interests Could Be
               Impaired By The Disposition Of This Action ............................. 18

           4.    The Police Intervenors' Interests Will Not Be
               Adequately Protected By The Parties To This Action ................. 19

       B.    Alternatively, the Police Intervenors
           Should Be Granted Permissive Intervention ........................................... 20

POINT II:
    THE POLICE INTERVENORS HAVE ARTICLE III STANDING ............................. 21

CONCLUSION ................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACORN v. United States,*
    618 F.3d 125 (2d Cir. 2010)........................................................................................23

*Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.,*
    19 F.3d 992 (5th Cir. 1994) ......................................................................................13

*Brennan v. N.Y.C. Bd. of Educ.,*
    260 F.3d 123 (2d Cir. 2001) .....................................................................................15

*Camreta v. Greene,*
    131 S. Ct. 2020 (2011) .............................................................................................22

*CBS, Inc. v. Snyder,*
    798 F. Supp. 1019 (S.D.N.Y. 1992).........................................................................15

*Cook v. Bates,*
    92 F.R.D. 119 (S.D.N.Y. 1981) ........................................................................... 10-11

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)........................................................................................10

*Diamond v. Charles,*
    476 U.S. 54 (1986)....................................................................................................21

*Dow Jones & Co. v. U.S. Dep't of Justice,*
    161 F.R.D. 247 (S.D.N.Y. 1995) .........................................................................11, 12

*E.E.O.C. v. A.T. & T. Co.,*
    506 F.2d 735 (3d Cir. 1974)..................................................................................15, 18

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ..................................................................................10, 11

*Florida v. Harris,*
    133 S. Ct. 1050 (2013)................................................................................................5

*Floyd v. City of New York,*
    --- F. Supp. 2d ----, No. 08 Civ. 1034,
    2013 WL 4046209 (S.D.N.Y. Aug. 12, 2013)............................................... *passim*

*Floyd v. City of New York,*
    --- F. Supp. 2d ----, Nos. 08 Civ. 1034, 12 Civ. 2274
    2013 WL 4046217 (S.D.N.Y. Aug. 12, 2013)............................................... *passim*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)..................................................................................................22

*Gully v. Nat'l Credit Union Admin. Bd.*,
341 F.3d 155 (2d Cir. 2003) ................................................................. 22

*Hodgson v. United Mine Workers*,
473 F.2d 118 (D.C. Cir. 1972) ............................................................... 11

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013) ....................................................................... 21

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000) ........................................................... 10, 12

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ............................................................... 22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................... 21

*N.Y. Pub. Interest Research Grp. v. Regents*,
516 F.2d 350 (2d Cir. 1975) ................................................................. 19

*Natural Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ............................................................... 19

*Stallworth v. Monsanto Co.*,
558 F.2d 257 (5th Cir. 1977) ............................................................... 15

*Tachiona v. United States*,
386 F.3d 205 (2d Cir. 2004) ................................................................. 21

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ......................................................................... 19

*U.S. Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978) ................................................................. 20

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977) ......................................................................... 11

*United States v. City of Detroit*,
712 F.3d 925 (6th Cir. 2013) ............................................................... 11

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ......................................................... *passim*

*United States v. City of Portland*,
No. 12-cv-02265 (D. Or. Feb. 19, 2013) ............................................... 10, 14

*United States v. Sokolow,*
 490 U.S. 1 (1989) .......................................................................................5

*Vulcan Soc. of Westchester Cnty., Inc. v. Fire Dept. of White Plains,*
 79 F.R.D. 437 (S.D.N.Y. 1978) ...............................................................19

*W.R. Grace & Co. v. Local Union 759,*
 461 U.S. 757 (1983) .................................................................................14

*Watertown v. N.Y.S. Pub. Emp. Relations Bd.,*
 95 N.Y.2d 73 (2000) ...............................................................................15

**STATUTES & RULES**

N.Y.C. Admin. Code § 12-306 ...........................................................................5

N.Y.C. Admin. Code § 12-307 ......................................................................5, 16

Fed. R. Civ. P. 24 ....................................................................................10, 20

**ADMINISTRATIVE DECISIONS**

*City of New York,*
 40 PERB ¶ 3017, Case No. DR-119 (PERB Aug. 29, 2007).......................17

*City of New York v. Uniformed Firefighters Ass'n,*
 Decision No. B-43-86, 37 OCB 43 (BCB 1986) ......................................17

*L. 2507 & L. 3621, DC 367 v. City of New York,*
 Decision No. B-20-2002, 69 OCB 20 (BCB 2002) ...................................16

*Patrolmen's Benevolent Assoc. of the City of N.Y., Inc. v. City of New York,*
 6 OCB2d 36 (BCB 2013) .......................................................................16

*Uniformed Firefighters Ass'n v. City of New York,*
 Decision No. B-20-92, 49 OCB 20 (BCB 1992) ......................................17

*Uniformed Firefighters Ass'n v. City of New York,*
 Decision No. B-39-2006, 77 OCB 39 (BCB 2006) ..................................16

**OTHER AUTHORITIES**

City Press Release, *Mayor de Blasio Announces Agreement in Landmark Stop-And-Frisk Case* (Jan. 30, 2014), *available at* http://www1.nyc.gov/office-of-the-mayor/news/726-14/mayor-de-blasio-agreement-landmark-stop-and-frisk-case#/0 ...............7

Pursuant to Federal Rule of Civil Procedure 24 and the February 25, 2014 Order of the Court, the Patrolmen's Benevolent Association of the City of New York, Inc. ("PBA"), the Detectives Endowment Association, Police Department, City of New York, Inc. ("DEA"), the Lieutenants Benevolent Association of the City of New York, Inc. ("LBA"), and the Captains' Endowment Association of New York, Inc. ("CEA," and collectively, the "Police Intervenors") respectfully submit this supplemental memorandum in support of their motion to intervene in this matter.

## INTRODUCTION

This case concerns two sweeping opinions by this Court that threaten literally to rewrite the rules governing how the 35,000 members of the New York City Police Department ("NYPD") conduct themselves on a day-to-day basis.  The Police Intervenors represent more than 29,000 of the NYPD's 35,000 members, including the officers, detectives, lieutenants, and captains.  These are the officers whose conduct was directly placed at issue at the prior trial, whose reputations would be unfairly marred were those decisions to stand, and whose activities would be directly affected by the remedial order entered by the Court.

The extraordinary proceedings before this Court are a matter of public record.  The District Court permitted the *Floyd* case to proceed to trial as an amorphous class of millions of individuals purportedly stopped unlawfully by the NYPD.  Although the Court admitted that the constitutionality of each *Terry* stop must necessarily be judged according to its individual facts and circumstances, the Court nonetheless allowed Plaintiffs to sweep that bedrock precept aside by presenting statistical evidence that sought to place more than 4.4 million stops at issue.

Based on this untenable evidence, the Court found that over an eight-year period, the men and women of the NYPD had purportedly committed more than 200,000 constitutional

violations.  The Court made these findings even though the self-selected class members were able to show that *fewer than half* of the specific stops as to which the Court heard testimony were unconstitutional, and Plaintiffs' expert could opine only that 6% of the stops at issue were "apparently unjustified."  The Court similarly made the highly injurious finding that the NYPD officers had engaged in intentional racial discrimination.  That finding, too, was based upon statistical data showing that black and Hispanic New Yorkers had been stopped in close proportion to their appearance in crime suspect data, rather than to their numbers in the neighborhood population.  The legal import of the District Court's conclusion, if applied beyond race, is breathtaking:  The NYPD apparently should be stopping not only black and Hispanic New Yorkers, but also women, children, and the elderly in proportion to their appearance in the population.  To state the proposition is to refute it.

Having found system-wide violations where there were none, the Court created a complex remedial process that would place the NYPD and its policies under the supervision of this Court and a monitor for a period of years.  After the City appealed, the Second Circuit stayed the Court's orders and took the extraordinary step of disqualifying the district judge who had sat as both judge and jury at the bench trial.  The City filed a 110-page appeal brief detailing a dozen grounds for finding error.  Despite the progress of the appeal, and the likelihood of success on the merits, the City now has turned its back on the officers of the NYPD, requesting a remand for the avowed purposes of leaving the highly prejudicial findings of the Court unreviewed and of requiring this Court to devote years towards fashioning and supervising a wholly unnecessary and unjustified injunction.

The Police Intervenors seek to ensure that the views of their members are properly heard, and that the orders of the Court are subjected to the appropriate scrutiny of this Court and the

Court of Appeals.  The City may have the policy discretion to adopt the measures that it sees fit, but it does not have the right to acquiesce in an injunction that infringes upon the rights of the Police Intervenors and their officers.  Under established law, the Police Intervenors have a right to intervene because they "have a protectable interest in the merits" ruling where plaintiffs seek "injunctive relief against [their] member officers and raise[] factual allegations that [their] member officers committed unconstitutional acts in the line of duty."  *United States v. City of Los Angeles*, 288 F.3d 391, 399 (9th Cir. 2002).  The Unions also have a protectable interest in any decree that would implement this Court's Remedies Order, setting the rules for their day-to-day activities and abridging their "state-law rights to negotiate about the terms and conditions of [their] members' employment."  *Id.* at 400.

The Police Intervenors moved to intervene soon after the Court's prior orders.  Dkt. Nos. 390 (*Floyd*), 133 (*Ligon*).  After the Court of Appeals stayed the proceedings in this Court, Dkt. Nos. 418 (*Floyd*), 157 (*Ligon*), the Police Intervenors moved to intervene in the Second Circuit.  Before that Court had ruled on that motion, the City sought the limited remand here, and the Court of Appeals granted a remand, directing also that this Court address the Police Intervenors' motion to intervene, because "the appropriateness of intervention and the form it takes could well bear on settlement negotiations."  Dkt. Nos. 426 (*Floyd*), 166 (*Ligon*) at 7-8.

Pursuant to this Court's Order of February 25, the Police Intervenors file this supplemental memorandum restating the grounds for their motion.  The Police Intervenors seek to intervene for three purposes:  to participate in this Court's consideration of any proposed settlement, to participate in any future remedial proceedings, and to appeal the District Court's prior Orders, so as to ensure that the Orders are reviewed on the merits and that the NYPD and its members are not burdened and besmirched by findings and remedies that are legally infirm.

## BACKGROUND

The Police Intervenors collectively represent 29,000 of the 35,000 members of the NYPD.  *See* Declaration of Joseph Alejandro ("Alejandro Decl.") ¶ 6, Declaration of Steven A. Engel, Esq. ("Engel Decl."), Ex. A.  Their members stand at the front line of police services in the City.  Members perform the core function of enforcing state and New York City laws and thereby ensuring public safety.  *Id.* ¶ 12.  They perform field police work, including patrolling, conducting surveillance, and engaging in the stop, question and frisk procedures at issue in this action.  *Id.* ¶ 14.  Members also supervise other officers, including their performance of the challenged practices.  *Id.* ¶ 13.

The PBA is the designated collective bargaining agent for the more than 22,000 police officers employed by the NYPD.  The PBA negotiates on Police Officers' behalf with the City on matters of policy, terms and conditions of employment, and all matters relating to the Officers' general welfare.  *Id.* ¶ 7.  The DEA is the exclusive bargaining representative for the approximately 5,000 NYPD Detectives.  *Id.* ¶ 8.  The LBA is the exclusive bargaining representative for the approximately 1,700 NYPD Lieutenants.  *Id.* ¶ 9.  The CEA is the exclusive bargaining representative for the approximately 730 employees of the NYPD with titles including Captain, Captain detailed as Deputy Inspector, Inspector and Deputy Chief.  *Id.* ¶ 10.  The mission of each of the Unions is to protect the interests of their respective NYPD members.  *Id.* ¶ 11.

Under the New York City Collective Bargaining Law ("NYCCBL"), the City must negotiate with the Unions regarding all matters within the scope of collective bargaining, such as wages, hours, and working conditions, including "the practical impact that decisions on [certain matters of policy] have on terms and conditions of employment, including, but not limited to,

questions of workload, staffing and employee safety." N.Y.C. Admin. Code § 12-307(b). The City's Administrative Code makes it an improper practice for a public employer or its agents to "refuse to bargain collectively in good faith on matters within the scope of collective bargaining" with certified public employees unions and "to unilaterally make any change as to any mandatory subject of collective bargaining or as to any term and condition of employment established in prior contract." N.Y.C. Admin. Code § 12-306(4), (5).

## PROCEDURAL HISTORY

On August 12, 2013, following a bench trial in *Floyd*, the Court found that the City had violated Plaintiffs' constitutional rights and issued an injunction directed at modifying the NYPD's policies, training, supervision, and discipline when it comes to stop, question and frisk. *See Floyd v. City of New York*, --- F. Supp. 2d ----, No. 08 Civ. 1034, 2013 WL 4046209 (S.D.N.Y. Aug. 12, 2013) (hereinafter "*Liability Op.*"); *Floyd v. City of New York*, --- F. Supp. 2d ----, Nos. 08 Civ, 1034, 12 Civ. 2274, 2013 WL 4046217 (S.D.N.Y. Aug. 12, 2013) (hereinafter "*Remedies Op.*"). The Liability Opinion declared that over an eight-year period, NYPD officers had made "*at least* 200,000 stops . . . without reasonable suspicion," and that "blacks are likely targeted for stops based on a lesser degree of objectively founded suspicion than whites." *Liability Op.*, 2013 WL 4046209, at *4, *5 (emphasis in original). These conclusions were based exclusively on statistical analysis of the UF-250 forms the NYPD uses to document stops, despite the absence in the form of anything like a comprehensive account of a stop, and without any consideration of the totality of the unique circumstances of each of the 4.4 million stops, as required by Supreme Court precedent. *See, e.g.*, *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013); *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

The Remedies Opinion declared that these allegedly pervasive practices required the Court to appoint a Monitor to oversee the implementation of an array of reforms. *Remedies Op.*, 2013 WL 4046217, at *3-*6, *14. The Remedies Opinion mandated "broad equitable relief" that, as the Court recognized, would "inevitably touch on issues of training, supervision, monitoring, and discipline." *Id.* at *1, *4. The Opinion required "an initial set of reforms to the NYPD's policies, training, supervision, monitoring, and discipline regarding stop and frisk," *id.* at *5, including "Revisions to Policies and Training Materials," *id.* at *6, onerous "Changes to Stop and Frisk Documentation," *id.* at *7, "Changes to Supervision, Monitoring, and Discipline," *id.* at *9, a "FINEST message" describing these reforms to officers, *id.* at *10, and a pilot program for "body-worn cameras," a reform the Plaintiffs had not even requested, *id.* at *10-*11. The Court further ordered a "Joint Remedial Process for Developing" additional reforms. *Id.* at *12. Later orders installed a Facilitator and an Academic Advisory Council in this cumbersome process, one more consistent with an administrative agency than an Article III court. Dkt. Nos. 384, 403 (*Floyd*), 128, 144 (*Ligon*).

The City of New York appealed the orders on August 16, 2013. Dkt. Nos. 379 (*Floyd*), 123 (*Ligon*). With the City's consent, the Police Intervenors moved promptly to intervene in this Court for the purpose of participating in remedial proceedings and on appeal. Dkt. Nos. 390 (*Floyd*), 133 (*Ligon*). The motion was fully submitted as of October 25, 2013. Dkt. Nos. 401, 415 (*Floyd*), 140, 155 (*Ligon*). Meanwhile, the City moved to stay proceedings pending appeal. On October 31, 2013, the Court of Appeals "stay[ed] all proceedings" pending "further action by the Court of Appeals on the merits of the ongoing appeals," with the exception of ordering the District Court to re-assign these cases to a different district judge. Dkt. Nos. 418 (*Floyd*), 157 (*Ligon*).

Pursuant to the Second Circuit's order, this Court's consideration of the Police Intervenors' motion was stayed, along with all other proceedings.  The Police Intervenors thereafter filed a motion to intervene directly in the Second Circuit.  Second Circuit Dkt. Nos. 252 (*Floyd*), 178 (*Ligon*).  Again, the City consented to the motion.

On December 10, 2013, the City filed a 110-page appeal brief, demonstrating that this Court's prior decisions were premised on numerous errors of law.  *See* Second Circuit Dkt. No. 347-1 (*Floyd*).  After the new Mayor took office, the City did an about face.  On January 30, 2014, the City moved the Court of Appeals, with the Plaintiffs' consent, for a limited remand to this Court "for 45 days to permit the parties to explore a resolution."  Second Circuit Dkt. Nos. 459 (*Floyd*), 274 (*Ligon*).

While the City's motion expressed an interest in "explor[ing] a resolution," the City was more explicit about its intentions to the press.  According to the City, the purpose of remand was to "fully embrace [the] stop-and-frisk reform" ordered by the Court.  City Press Release, *Mayor de Blasio Announces Agreement in Landmark Stop-And-Frisk Case* (Jan. 30, 2014), *available at* http://www1.nyc.gov/office-of-the-mayor/news/726-14/mayor-de-blasio-agreement-landmark-stop-and-frisk-case#/0 ("Press Release").  To that end, the City announced that it had reached "a historic agreement" with Plaintiffs and that "[u]nder the agreement with plaintiffs announced [that day], a court-appointed monitor will serve for three years, overseeing the NYPD's reform of its stop-and-frisk policy."  *Id.*

The City thus embraced this Court's liability findings and the full scope of the now-stayed injunction.  The City will place the NYPD under the supervision of a federal monitor empowered to report to the Court "on the city's progress meeting its obligation to abide by the United States Constitution."  *Id.*  That monitorship will last for a minimum of three years, at

which point the City could petition to end the monitorship if it can show that the NYPD is "in substantial compliance with the decree." *Id.* "Once that resolution has been confirmed by the District Court, the [C]ity will immediately move to withdraw its appeal." *Id.*[1]

After the City moved to remand, the Court of Appeals directed the Police Intervenors and the Sergeants' Benevolent Association ("SBA") to respond to the City's motion. The Police Intervenors and the SBA opposed the remand and asked the Court of Appeals to rule first on their intervention motions. The Court of Appeals granted the City's motion for a remand to "supervis[e] settlement discussions among such concerned or interested parties as the District Court deems appropriate" and ordered this Court on remand to "resolv[e] the [pending] motions to intervene." Dkt. Nos. 426 (*Floyd*), 166 (*Ligon*) ("Remand Order") at 8-9.

The Court recognized that "while there is authority" for allowing intervention directly before the Court of Appeals, "it is generally preferable that the decision be made first by the district court." *Id.* at 7. The Court ruled that the District Court should determine the intervention motions "in the first instance, particularly because the appropriateness of intervention and the form it takes could well bear on settlement negotiations," and this Court "is better positioned to deal with the complexities that might arise during multi-faceted settlement negotiations in which a variety of interests must be accommodated." *Id.* at 7-8.

---

[1]  The parties confirmed this understanding in the status report filed with the Court on March 4, 2014. According to the City and the Plaintiffs, they intend to submit a "joint application to modify" the Court's remedial order solely "by specifying that the term of the Court-appointed monitor be limited to three years provided that the City can show by the end of that term that it has substantially complied with all Court-ordered injunctive relief." *See* Dkt. Nos. 433 (*Floyd*), 169 (*Ligon*). That Court-ordered injunctive relief is intended to include all of the various processes reflected in the Remedies Order. *See id.*

On February 25, this Court ordered the Police Intervenors and the SBA to "file supplemental moving papers by March 5, 2014" and terminated the previous motions to intervene.  Dkt. Nos. 428 (*Floyd*), 167 (*Ligon*).  Because the Court terminated the earlier motions and scheduled a full round of briefing, the Police Intervenors are filing together with this memorandum a new notice of motion restating the relief previously requested.

## ARGUMENT

### POINT I

### THE POLICE INTERVENORS' MOTION TO INTERVENE SHOULD BE GRANTED

The Liability and Remedies Opinions in this matter directly affect the interests of the Police Intervenors' members.  The Police Intervenors represent the officers, detectives, lieutenants, and captains who will be subject to any changes in training, supervision, monitoring, and discipline resulting from the Court's Remedies Opinion.  As the Court of Appeals recognized, "a variety of interests must be accommodated" in any settlement of this matter. Remand Order at 8.  The Police Intervenors ask the Court to grant the motion to intervene both to safeguard their interests regarding any remedies imposed and to allow the Police Intervenors to appeal, as party appellants, the erroneous prior findings of the Court that the City now relies upon in acquiescing to the proposed remedies.

**A.**   **The Police Intervenors May Intervene As Of Right Under Federal Rule of Civil Procedure 24(a)**

The Police Intervenors have a right to intervene under Rule 24(a), which provides:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  To intervene as of right, an applicant must demonstrate that (1) the motion is timely, (2) the applicant has a legal interest in the subject matter of the litigation, (3) that interest may be impaired by the outcome of the litigation, and (4) the applicant's interest may not be adequately represented by the existing parties.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001).

The Police Intervenors readily satisfy all four elements.  Indeed, numerous courts have permitted police unions to intervene in civil rights litigation that touches upon the interests of their members.  *See, e.g.*, *City of Los Angeles*, 288 F.3d at 398 (reversing denial of police union's motion to intervene as of right for all purposes); *Edwards v. City of Houston*, 78 F.3d 983, 989 (5th Cir. 1996) (en banc) (reversing denial of police union's motion to intervene for purposes of opposing proposed consent decree and for purposes of appeal, vacating approval of consent decree, and ordering new fairness hearing regarding proposed consent decree); *United States v. City of Portland*, No. 12-cv-02265 (D. Or. Feb. 19, 2013) (granting police union's motion to intervene as of right in the remedy phase of a proceeding regarding a proposed settlement agreement between the United States and the City of Portland).

### 1.  <u>This Motion Is Timely</u>

Under Rule 24, the timeliness of the motion is determined by the totality of the circumstances.  *See In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000).  The Court may consider "(1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention."  *Id.*  The timeliness requirement is liberally construed.  *See, e.g.*, *City of Los Angeles*, 288 F.3d at 398; *Cook v. Bates*, 92 F.R.D.

119, 122 (S.D.N.Y. 1981) ("In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention.").

Where the applicant seeks to intervene for the purpose of appeal, "[t]he critical inquiry . . . is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977) (a motion to intervene for purposes of appeal filed within 30 days of the judgment would be timely). Thus, courts "often permit intervention even after final judgment, for the limited purpose of appeal, or to participate in future remedial proceedings." *United States v. City of Detroit*, 712 F.3d 925, 932 (6th Cir. 2013) (permitting a union to intervene as to future remedial proceedings in an environmental case that had been pending for 30 years) (internal citations omitted); *see also Edwards*, 78 F.3d at 1000 (permitting police unions to intervene prospectively in a civil rights case, where the motions to intervene were filed 37 and 47 days after the publication of a consent decree); *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C. Cir. 1972) (permitting intervention "in the remedial, and if necessary the appellate, phases of [a] case" that had been pending for seven years).

Courts also have recognized that a motion is timely when measured "from the time [prospective intervenors] became aware that [their] interest would no longer be protected by the existing parties to the lawsuit." *Edwards*, 78 F.3d at 1000; *see also United Airlines*, 432 U.S. at 394 ("[A]s soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests."); *Dow Jones & Co. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 252-53 (S.D.N.Y. 1995) (Sotomayor, J.) (finding intervention timely because movant

intervened only after "she realize[d] that the [defendant] might not fully exercise its right to appeal").

Accordingly, the Police Intervenors' motion is timely. The original motion was filed within 30 days of this Court's Liability and Remedies Orders. The Police Intervenors reasonably determined to await the outcome of the *Floyd* trial—which could have resulted in no finding of liability and no City-wide remedial order—before investing their limited resources in seeking to intervene and participate in future proceedings. The Remedies Order's capacious scope made clear that the Police Intervenors' collective bargaining rights—as to which their interests were not aligned with the City's—could be jeopardized.

In addition, by September 2013, the possibility had begun to arise that the City, under a new Mayor, might not share the Police Intervenors' interests as to liability. With the City having now announced its intent to acquiesce in the judgment and withdraw the appeal, there can be no doubt that the City does not adequately represent the Police Intervenors' interests. Whether measured from the time of the original filing, or from the present filing, the Police Intervenors have plainly sought to intervene promptly after they "realize[d] that the [defendant] might not fully exercise its right to appeal." *Dow Jones*, 161 F.R.D. at 252-53.

In determining timeliness, courts also consider whether any delay in filing prejudiced the existing parties. *See, e.g.*, *Holocaust Victim Assets Litig.*, 225 F.3d at 198. Neither the Plaintiffs nor the City can claim prejudice here. The Police Intervenors seek to participate in future proceedings for the purpose of protecting their members' interests in the consideration of any proposed settlement, the implementation of any reforms, and by appealing the underlying Liability and Remedies Opinion that form the basis for the City's planned acquiescence in the Plaintiffs' positions. As the Court recognized in the Remedies Opinion, the Police Intervenors'

12

participation and wide-ranging knowledge of NYPD policing practices will be affirmatively beneficial to the parties and to the Monitor in connection with any remedial process. *Remedies Op.*, 2013 WL 4046217, at *12 (contemplating the participation of "NYPD personnel and representatives of police organizations"). The settlement negotiations that the City and Plaintiffs are apparently pursing have only begun with the change in the Administration, when those parties were well aware of the Police Intervenors' motion to intervene (a motion to which the City in fact consented at the time it was filed).

        **2.**     **The Police Intervenors Have Direct, Protectable Interests In This Action**

       The Police Intervenors have a direct interest in this action. As noted above, a police union has a "protectable interest in the merits phase of the litigation" where plaintiffs seek "injunctive relief against its member officers and raise[] factual allegations that [the union's] member officers committed unconstitutional acts in the line of duty." *City of Los Angeles*, 288 F.3d at 399-400. This interest includes challenging both the district court's liability findings and the remedies decision, because the validity and breadth of the latter depend on the former. *See id.*; *see also Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 19 F.3d 992, 994 (5th Cir. 1994) (allowing intervenor fire fighters' association to challenge underlying issue of municipal liability). The Police Intervenors likewise have an interest in the contours of any injunction to the extent it is premised upon the harmful findings against its members.

       In its prior decisions, this Court allowed Plaintiffs' expert to opine on the lawfulness of 4.4 million stops conducted by members of the Police Intervenors based exclusively on the expert's review of the UF-250 forms. These forms were not, and have never been, the sole evidence in support of the constitutionality of a particular *Terry* step, yet this Court relied upon them to find that the officers had made "*at least* 200,000 stops . . . without reasonable suspicion"

over an eight-year period. *Liability Op.*, 2013 WL 4046209, at *4. This Court also found that several specific members of the Police Intervenors had committed unconstitutional stops and/or frisks. *See id.* at *47-*69.

The Police Intervenors have a vital interest in challenging these erroneous and damaging findings about their members' conduct, findings that have chilled lawful and proactive police conduct, *see* Alejandro Decl. ¶¶ 24-27, and that would unfairly undermine public confidence in their work. The Police Intervenors' members' interests are likewise impaired by the sweeping reforms contemplated by the Remedies Opinion, which directs numerous acts that will have a direct impact upon the officers' day-to-day activities.

In addition, the Police Intervenors have an interest in appealing this Court's Orders because a federal court remedial order, when issued pursuant to a liability finding, allows the district court to set employment practices that would otherwise be subject to bargaining under state law. The Police Intervenors' state law rights may be abridged only "as part of court-ordered relief after a judicial determination of liability." *City of Los Angeles*, 288 F.3d at 400. The Police Intervenors have "state-law rights to negotiate about the terms and conditions of [their] members' employment . . . and to rely on the [resulting] collective bargaining agreement[s]." *Id.* at 399-400; *see also W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 771 (1983). Critically, the possibility of such abridgment is sufficient for intervention. If a proposed remedial order "contains—*or even might contain*—provisions that contradict the terms" of the collective bargaining agreement, the union members have "a protectable interest." *United States v. City of Portland*, No. 12-cv-02265 (D. Or. Feb. 19, 2013), at 7 (emphasis added).

Indeed, even when the issue of whether an order touches upon a bargaining right is disputed, a union has the "right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve" the ultimate injunction. *City of Los Angeles*, 288 F.3d at 400-01 (allowing intervention despite the argument that the decree's effect on collective bargaining was merely speculative); *see also E.E.O.C. v. A.T. & T. Co.*, 506 F.2d 735, 741-42 (3d Cir. 1974); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 268-69 (5th Cir. 1977); *CBS, Inc. v. Snyder*, 798 F. Supp. 1019, 1023 (S.D.N.Y. 1992), *aff'd*, 989 F.2d 89 (2d Cir. 1993). As the Second Circuit has confirmed, "'except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention,'" but rather by reference to the four factors set forth above. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (reversing denial of leave to intervene as of right where intervenors sought to challenge proposed settlement based on enroachment on their contractual employment rights, in part on the grounds that plaintiff's underlying claims lacked merit).

Public employers have a duty "to bargain in good faith concerning all terms and conditions of employment." *Watertown v. N.Y.S. Pub. Emp. Relations Bd.*, 95 N.Y.2d 73, 78 (2000). New York's public policy in favor of collective bargaining is "'strong and sweeping,'" and to overcome the presumption in favor of bargaining, the statute must be "'plain' and 'clear'" or "leave[] 'no room for negotiation.'" *Id.* at 78-79 (internal citations omitted). The Plaintiffs have never pointed to any such unmistakable statute removing the matters at issue here from collective bargaining.[2] As the Court recognized, the decisions of the Monitor would "inevitably

---

[2]   In past briefing, Plaintiffs have relied on the so-called "management rights" provision of the New York City Administrative Code to argue that the Remedies Order does not violate the

touch on issues of training, supervision, monitoring, and discipline." *Remedies Op.*, 2013 WL 4046217, at *4.  These changes include the introduction of body cameras; changes to police training procedures; changes to the UF-250 forms and other mandatory paperwork; and alterations to the disciplinary and supervisory processes.  These subjects would fall within, or arguably fall within, the collective bargaining process secured to the Police Intervenors under state law.

For instance, the Court's Liability Opinion faults the NYPD's Quest for Excellence Program, "a set of new policies for evaluating the performance of officers and encouraging the use of performance goals," for allegedly encouraging officers to make unconstitutional stops. *See Liability Op.*, 2013 WL 4046209, at *32-*33.  The Board of Collective Bargaining recently confirmed, however, that "the procedural aspects of employee performance evaluations are mandatory subjects of bargaining," and the procedural aspects include a number of the policies that are part of the Quest for Excellence Program.  *Patrolmen's Benevolent Assoc. of the City of N.Y., Inc. v. City of New York*, 6 OCB2d 36, at 5-8, 14, 19-21 (BCB 2013).

While the Police Intervenors indisputably enjoy the right under state law to bargain over the procedures related to this program, the Remedies Opinion contemplates significant changes to these procedures, as well as other NYPD evaluation and disciplinary procedures, without any

_____

Police Intervenors' collective bargaining rights.  *See* N.Y. City Admin. Code § 12-307(b).  First, it is an open question whether that provision is preempted by the state labor law.  *See Uniformed Firefighters Ass'n v. City of New York*, Decision No. B-39-2006, 77 OCB 39 (BCB 2006) (dissenting op. at 2-3, 8-9).  And even where the management rights provision applies, state and local law find exceptions.  *See, e.g., L. 2507 & L. 3621, DC 367 v. City of New York*, Decision No. B-20-2002, 69 OCB 20, at 5-6 (BCB 2002) (training is a subject for bargaining when it "is required by the employer as a qualification for continued employment or improvement in pay or work assignments").  As discussed above, moreover, if the agreement merely *might* violate state law rights, the Police Intervenors have shown a cognizable interest supporting intervention as of right.

consideration for the Police Intervenors' state law rights to address these matters.  *See, e.g.*, *Remedies Op.*, 2013 WL 4046217, at *9, *10 (requiring the NYPD to "improve its procedures for imposing discipline in response to the Civilian Complaint Review Board's ('CCRB') findings of substantiated misconduct" and stating that "it may be appropriate" to implement measures such as "direct supervision and review of stop documentation by sergeants, indirect supervision and review by more senior supervisors and managers, improved citizen complaint procedures, [and] improved disciplinary procedures," among other changes in evaluation procedures).

The Remedies Opinion also would modify mandatory police training practices, which are a subject of bargaining to the extent the City requires them as a qualification for continued employment.  *See Uniformed Firefighters Ass'n v. City of New York*, Decision No. B-20-92, 49 OCB 20, at 8 (BCB 1992); *City of New York v. Uniformed Firefighters Ass'n*, Decision No. B-43-86, 37 OCB 43, at 15 (BCB 1986).  The Remedies Opinion orders that the UF-250 form must be amended to be far more time-consuming, including requiring a separate narrative section, a separate explanation of why any frisk or search was necessary, a tear-off sheet to be provided to the individual stopped, and a revised check-box section on which officers will need to receive new training.  *Remedies Op.*, 2013 WL 4046217, at *8-*9.

The Remedies Opinion would also require many officers to wear body cameras while on patrol.  These body cameras, which indisputably are not standard equipment, would record every act and utterance of police officers, as well as supervisors and citizens.  The New York Public Employment Relations Board, which has jurisdiction over NYPD scope of bargaining petitions, has found that the City's general right to choose technology and equipment may be outweighed by interests such as officer safety, privacy, and discipline that are implicated by the remedy.  *See, e.g.*, *City of New York*, 40 PERB ¶ 3017, Case No. DR-119 (PERB Aug. 29, 2007).

In short, there can be little doubt that the Remedies Opinion imposes upon the NYPD's members a host of new and burdensome procedures and requirements, many of which are defined by the Opinion and others that remain to be determined. These matters infringe upon the unions' state law rights to bargain with the employer over such changes to terms and conditions. Without formal intervention, the Remedies Opinion would provide the Police Intervenors with no forum to ensure that they might object to any changes that would contradict the CBA or existing procedures subject to bargaining. Under well-established law, any impact (or even arguable impact) upon the Police Intervenors' labor rights provides a basis for intervening as of right under Rule 24(a).

### 3. The Police Intervenors' Interests Could Be Impaired By The Disposition of This Action

As discussed above, the dictates of the Remedies Opinion will affect the Police Intervenors' members' day-to-day business in ways that are directly and concretely different from all other non-parties to this litigation. Accordingly, if the Police Intervenors are not permitted to intervene, they would be bound in many ways that would adversely affect them. The Remedies Opinion envisions a process in which the NYPD will be ordered to modify its existing policies, training, discipline, equipment, and supervision. Those matters will directly affect the Unions' members in their day-to-day activities and collective bargaining rights. *See AT & T*, 506 F.2d at 742; *see also City of Los Angeles*, 288 F.3d at 401. The City is now content to acquiesce in these mandates or prescriptions, apparently heedless of the impact they would impose upon the officers of the NYPD.

**4.      The Police Intervenors' Interests Will Not Be
          <u>Adequately Protected By The Parties To This Action</u>**

The inadequacy requirement of Rule 24(a) "is satisfied if the applicant shows that

representation of his interest 'may be' inadequate; and the burden of making that showing should

be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10

(1972); *see also City of Los Angeles*, 288 F.3d at 398.

There can be no doubt the Police Intervenors meet this standard.  The City does not

represent the Police Intervenors' interests.  The City intends to withdraw its appeal, has tried to

withdraw its consent to the Police Intervenors' intervention motion, and has expressed the intent

to allow the District Court's prior decisions to go entirely unreviewed.  However the City seeks

to defend this course of action, it certainly cannot think that it truly represents the interests of the

35,000 men and women of the NYPD.

In addition, with respect to the matters that bear upon collective bargaining, the City's

interests have never been aligned with those of the Police Intervenors.  *See Vulcan Soc. of*

*Westchester Cnty., Inc. v. Fire Dept. of White Plains*, 79 F.R.D. 437, 441 (S.D.N.Y. 1978)

("Although the municipalities involved have the same interest in seeking qualified and efficient

fire personnel, it could hardly be said that all the interests of the union applicants are the same as

those of the municipalities.").  The City acknowledged the same point in previously consenting

to the Police Intervenors' intervention.  Dkt. Nos. 414 (*Floyd*), 152 (*Ligon*).

Finally, the Police Intervenors are uniquely situated to provide their members' views in

this case and on appeal.  *See Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir.

1977) (granting intervention because "the appellants' interest is more narrow and focu[]sed than

EPA's, being concerned primarily with the regulation that affects their industries"); *N.Y. Pub.*

*Interest Research Grp. v. Regents*, 516 F.2d 350, 352 (2d Cir. 1975) ("[T]here is a likelihood that

the pharmacists will make a more vigorous presentation of the economic side of the argument than would the [state authority party].").  The Police Intervenors have a distinct perspective and strong views on many issues raised by this Court's Opinions.  They thus should be allowed to participate formally as participants in the consideration of any consent decree, in the implementation of any remedies, and as party appellants.

**B.**     **Alternatively, The Police Intervenors Should Be Granted Permissive Intervention**

In the alternative, the Police Intervenors meet the standard for permissive intervention. Fed. R. Civ. P. 24(b).  The threshold requirement for permissive intervention is a "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Permissive intervention must not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  In addition, courts may consider factors such as whether the putative intervenor will benefit from the application, the nature and extent of its interests, whether its interests are represented by the existing parties, and whether the putative intervenor will contribute to the development of the underlying factual issues.  *See, e.g.*, *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978).

The Police Intervenors' appeal of the underlying Orders cannot cause cognizable prejudice, since the parties have no cognizable interest in precluding an appeal of highly questionable, sweeping findings.  The Police Intervenors do not deny the new Administration the right to pursue different policies from its predecessor.  The City may pursue whatever police policies its leadership deems wise and expedient, so long as it does so consistent with the rights of the police unions.  In the context of this case, however, the City should not be permitted to avoid scrutiny of its own policy choices by dropping a meritorious appeal of the prior decisions issued by this Court.

For the reasons stated above, the Police Intervenors meet the standard for permissive intervention.  The Police Intervenors' conduct is directly at issue in the Liability Order; the Remedies Opinion, if implemented, would directly affect both their day-to-day activities and their collective bargaining rights.  The Police Intervenors' participation would not unduly delay or cause prejudice to any parties in this matter.  Accordingly, permissive intervention is appropriate as well.

**POINT II**

**<u>THE POLICE INTERVENORS HAVE ARTICLE III STANDING</u>**

Plaintiffs have previously argued that the Police Intervenors should not be permitted to intervene for purposes of appeal on the grounds that they lack Article III standing.  While intervenors need not show separate standing to intervene in the remedial process, *see Diamond v. Charles*, 476 U.S. 54, 68 (1986), they can readily demonstrate standing for purposes of appeal.

As the Second Circuit has recognized, "[t]o have standing at the appellate stage . . . a litigant must demonstrate 'injury caused by the judgment rather than injury caused by the underlying facts.'"  *Tachiona v. United States*, 386 F.3d 205, 211 (2d Cir. 2004).  The litigant need not be bound by the judgment, *id.*, but must demonstrate, *inter alia*, an "injury in fact" that is "concrete and particularized."  *Id.* at 210, 212; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Article III standing requirement is designed to separate plaintiffs who allege no more than "generalized grievance[s]," such as the referendum sponsors in *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013), from those who can demonstrate a concrete stake in the proceeding. So long as the plaintiff can show such an injury in fact, Article III does not pose a significant bar. Thus, an environmental plaintiff may demonstrate Article III standing simply by alleging that an

unlawful act would diminish "'the aesthetic and recreational values'" of an area the plaintiff uses.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000). The Fifth Circuit recognized a union's standing to intervene and challenge on appeal a ruling affecting its members' wages.  *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 456-58 (5th Cir. 2005).  And in a closely analogous case, the Supreme Court found that a government officer had standing to appeal a finding that his actions were unconstitutional, even though he had prevailed on a qualified immunity defense, because the "judgment may have prospective effect," since "the official regularly engages" in the acts found unconstitutional.  *Camreta v. Greene*, 131 S. Ct. 2020, 2029 (2011).

The Police Intervenors have amply demonstrated a concrete "injury caused by the judgment."  Far from positing only a "generalized grievance," they have shown that the judgments will directly impair the police officers' day-to-day activities, including training, discipline, paperwork, and equipment, as well as their professional reputations and their collective bargaining rights.  The injunction requires the City to compel its officers to comply with the district court's view of the law and the ostensibly appropriate remedies.  *See, e.g.*, *Remedies Op.*, 2013 WL 4046217, at *10 ("The [mandated FINEST] message should order all NYPD personnel to comply immediately with those standards.").

Moreover, the Police Intervenors have standing because the August 2013 Orders finding widespread constitutional violations, including intentional racial discrimination, impose upon them serious reputational harm.  "The Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing."  *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161-62 (2d Cir. 2003) (citing cases).  Thus, in *Gully*, the Court of Appeals found that the appellant had standing to challenge findings that she had engaged in misconduct, even

though no other punishment had been imposed on her.  *Id.* at 162.  Similarly, in *ACORN v. United States*, 618 F.3d 125 (2d Cir. 2010), the Second Circuit found that even a memorandum that was purportedly rescinded but which contained restrictions on the plaintiff that remained in force provided the plaintiff with standing to challenge the reputational harm done by the memorandum.  *Id.* at 134-35.  While the Police Intervenors are not presently obliged to show Article III standing, they readily can do so.

## CONCLUSION

For all of the above reasons, the Police Intervenors respectfully request that the Court grant its motion to intervene for purposes of participating as parties in the consideration of any proposed consent decree, of participating in any remedial proceedings, and of appealing this Court's previous Liability and Remedies Orders.

Dated:  March 5, 2014
        New York, New York                    Respectfully submitted,

                                              /s/ Steven A. Engel
                                              Steven A. Engel
                                              Edward A. McDonald
                                              James M. McGuire
                                              Elisa T. Wiygul*
                                                  *pro hac vice motion pending*
                                              DECHERT LLP
                                              1095 Avenue of the Americas
                                              New York, New York 10036
                                              T: (212) 698-3693
                                              F: (212) 698-3599
                                              steven.engel@dechert.com
                                              *Attorneys for Proposed Intervenors the*
                                              *Patrolmen's Benevolent Association of the*
                                              *City of New York, Inc., the Detectives*
                                              *Endowment Association, Inc., the*
                                              *Lieutenants Benevolent Association of the*
                                              *City of New York, Inc., and the Captains'*
                                              *Endowment Association of New York, Inc.*

15168798

23