UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

DAVID FLOYD, et. al.,

Plaintiffs,

08 Civ. 1034 (AT)

-against-

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR MODIFICATION OF REMEDIAL ORDER**

THE CITY OF NEW YORK,

Defendant.

---------------------------------------- X

---------------------------------------- X

JAENEAN LIGON, et al.,

Plaintiffs,

12 Civ. 2274 (AT)

-against-

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR MODIFICATION OF REMEDIAL ORDER**

THE CITY OF NEW YORK, et. al.,

Defendants.

---------------------------------------- X

## INTRODUCTION

In an August 12, 2013 joint remedial order issued following separate liability rulings in these two stop-and-frisk cases ("the Remedial Order"), Southern District Judge Shira Scheindlin appointed a court monitor whose position "will come to an end when the City has achieved compliance." Since then, a new City administration has taken office, has made a commitment to reforming its stop-and-frisk policies and practices as contemplated by the Remedial Order, and has sought and received a remand from the Second Circuit to seek a resolution of these two cases.

Pursuant to that remand and in light of this change of circumstances, the parties have now agreed to seek a modification of the Remedial Order to establish a three-year period for the Court-appointed monitor that is more definite than the unspecified period currently in the Remedial Order. The parties therefore file this memorandum in support of a joint request that the Court amend the Remedial Order to incorporate this agreed-upon period, a period that is consistent with durational limits used in similar cases across the country. Assuming the Court makes the requested modification, the City will move to withdraw its pending Second Circuit appeals, and the parties will proceed with the remedial process already outlined in the Remedial Order.

## BACKGROUND[1]

### A. The Court's February 14 and August 12, 2013 Liability and Remedial Orders

In its February 14, 2013 Amended Opinion & Order on *Ligon* Plaintiffs' motion for preliminary injunction, the Court found that *Ligon* Plaintiffs had shown a clear likelihood of

[1] The discussion contained in this Background section is limited to developments in *Floyd* and *Ligon* since the District Court issued its liability rulings in both cases in 2013. The parties respectfully refer this Court to the prior submissions of the parties and prior rulings of the Court for a more complete recount of the factual and procedural histories of both cases.

success on their claim that the City has engaged in a pattern and practice of conducting unconstitutional *Terry* stops for trespass outside of Trespass Affidavit Program (TAP) apartment buildings in the Bronx. *Ligon* Dkt #105 at 97-98. In its August 12, 2013 Liability Opinion & Order in *Floyd*, the Court found by a preponderance of the evidence that the NYPD had engaged in a longstanding and widespread practice of suspicionless stops-and-frisks in violation of the Fourth Amendment and had adopted a policy of targeting certain racial groups for stops that resulted in the disproportionate and discriminatory stopping of black and Hispanic pedestrians in violation of the Equal Protection Clause of the Fourteenth Amendment, and that the City had been deliberately indifferent to these unconstitutional NYPD policies and practices. *Floyd* Dkt # 373 at 13-14.

To remedy these constitutional violations, the Court issued an August 12, 2013 Remedial Order covering both cases. The Remedial Order calls for three categories of preliminary injunctive relief in *Ligon*: (i) a new formal written policy on the legal standards for trespass stops outside TAP buildings, (ii) new procedures for supervising NYPD officers' trespass stop activity outside of TAP buildings, and (iii) changes to the NYPD's training materials and programs concerning trespass stops outside of TAP buildings. Floyd Dkt # 372 at 33-36; Ligon Dkt # 120 at 33-36. As for *Floyd*, the Order directs the City, in consultation with the Plaintiffs and the Court-appointed monitor, to develop "as soon as practicable" changes to the NYPD's stop-and-frisk and racial profiling-related written policies, training materials, and documentation, supervisory, monitoring, and disciplinary procedures (collectively the "Immediate Reforms"), which must be submitted to and approved by the Court in a subsequent order before they will be implemented. *Floyd* Dkt # 372 at 13-25. The Remedial Order also requires the City to institute a one-year pilot project in which NYPD officers in five precincts will wear body cameras on

patrol. It also directs the City and the *Floyd* Plaintiffs to participate in a 6-9 month "Joint Remedial Process," under the guidance of a Court-Appointed Facilitator, to solicit input from a variety of non-party stakeholders[2] on the stop-and-frisk issue about additional remedial measures to supplement the Immediate Reforms ("Joint Process Reforms"), which must also be submitted to the Court for approval. *Id.* at 25-33.

Finally, the Remedial Order appoints an Independent Monitor, Peter Zimroth, to oversee and assist with the development and implementation of the aforementioned *Floyd* and *Ligon* remedies and to monitor, assess, and report to the Court on the City's compliance with such remedies. *Floyd* Dkt # 372 at 12-13, 33-34. The Remedial Order currently states that Mr. Zimroth's position as monitor "will come to an end when the City has achieved compliance with the Immediate and Joint Process Reforms" in *Floyd*. *Id.* at 13.

**B. The City's Appeals of the Liability and Remedial Orders**

On August 16, 2013, the City filed notices of appeal of the Liability and Remedial Orders in both *Floyd* and *Ligon*. *See Floyd* Dkt #379; *Ligon* Dkt # 123. Thereafter, the City sought and the Second Circuit granted a stay of all of these Orders pending the outcome of the appeals. *See Floyd v. City of New York*, 13-3088 ("*Floyd* Appeal"), Dkt # 247 (2d Cir. Oct. 31, 2013); *Ligon v. City of New York*, 13-3123 ("*Ligon* Appeal"), Dkt #174 (2d Cir. Oct 31, 2013). In its order granting the stay, the Second Circuit did not express any views on the merits of the City's appeals, *id*, which to date have not been fully briefed.

---

[2] These stakeholders include: members of communities where stops most often take place, representatives of religious, advocacy and grassroots organizations, NYPD personnel and representatives of police organizations, including the police unions, local elected officials and community leaders, and the Civil Rights Division of the U.S. Department of Justice, and representatives of groups concerned with public education and public housing. *Floyd,* Dkt # 372 at 29.

On February 21, 2014, the Second Circuit granted the City's request for a limited remand of both cases to this Court for the purpose of exploring a resolution of the cases and vacated the stay to the extent necessary to effectuate such a resolution. *Floyd Appeal*, Dkt # 476-1 at 2-3, 8-9.

### C. The Parties' Agreement for Resolving the Appeals and Proposed Modification to the Remedial Order

As set forth in the parties' March 4, 2014 joint letter to the Court, the parties have reached an agreement for resolving the appeals in both *Floyd* and *Ligon*. Under this agreement, the parties now jointly request that this Court modify the August 12, 2013 Remedial Order by amending paragraph 12 of Section II.B.1 to specify that the Court-Appointed Monitor's term in *Floyd* shall end no sooner than three years from the date of the final order approving the injunctive remedies in that case and, with respect to the preliminary injunctive relief in *Ligon*, shall end no sooner than three years from the date of the final order approving that relief.[3] The termination of the monitorship shall be conditioned upon the City showing, by a preponderance of evidence at that time, substantial compliance with all Court-ordered remedies. *See* Carter Decl., Ex A. If this Court approves the proposed modification, the City will then immediately move to withdraw its appeals in both cases with prejudice. Upon withdrawal of the appeals , the City, along with the *Floyd* and *Ligon* Plaintiffs and the Court-Appointed Monitor and Facilitator, will proceed with the consultative processes for developing the Immediate and Joint Process Reforms in *Floyd* and preliminary injunctive relief in *Ligon* set forth in Sections II.B.2 - 4 and III of the Remedial Order. *See Floyd* Dkt # 440 at 1; Carter Decl. ¶¶ 3, 5.

---

[3] Neither the Remedial Order nor the proposed modification addresses the claims in *Ligon* beyond those covered by the preliminary injunction.

The parties have also agreed that when the monitorship ends, the City will authorize the Inspector General of the NYPD (IG) to use his or her authority under Section 803 of Chapter 34 of the New York City Charter to continue to monitor and report to the parties and the public during the pendency of this Court's jurisdiction over *Floyd* and *Ligon* on the NYPD's compliance with the reforms required by the Remedial Order. While the IG will not be an agent of nor report to the Court, nor otherwise be subject to any Court oversight, he or she and his or her staff will be able to communicate directly with the parties and their counsel in order to effectively perform this monitoring function. Finally, the parties have agreed that, if the City can show it has maintained substantial compliance with the aforementioned reforms for two years following the termination of the monitorship, the *Floyd* and *Ligon* Plaintiffs will not oppose a City motion to terminate the Court's jurisdiction over *Floyd* and the preliminary-injunction aspect of *Ligon* made at the end of the two-year period. *Floyd* Dkt # 440 at 1.

**ARGUMENT**

**THE PROPOSED MODIFICATION TO THE AUGUST 12, 2013 REMEDIAL ORDER IS FAIR, EQUITABLE, AND IN THE INTERESTS OF JUSTICE**

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *Brown v. Plata*, 131 S.Ct. 1910, 1946 (2011)(quoting *New York State Ass'n for Retarded Children, Inc. v. Carey,* 706 F.2d 956, 967 (2d Cir. 1983)(Friendly, J.)). Indeed, "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need," *New York State Ass'n*, 706 F.2d 967 (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)), which is especially true for injunctions in institutional reform litigation. *Id.* at 969. "Sound judicial discretion may call for modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *System Federation No. 91,*

*Railway Employees' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961); *see also Davis v. N.Y. City Housing Auth.*, 278 F.3d 64, 66-67 (2d Cir. 2002)("It is, of course, well established that a district court has the power, in the exercise of its discretion, to modify its past injunctive decrees in order to accommodate changed circumstances.")(citing *System Federation No. 91*). A district court does not abuse its discretion if the modification does not "thwart[] the purpose behind the injunction." *Sierra Club v. United States Army Corps of Engineers*, 732 F.2d 253, 257 (2d Cir. 1983)(citing *Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942)); *see also New York State Ass'n*, 706 F.2d at 969 (approving modification that was "not [] a derogation of the primary objective of the decree").

In addition, it is well-established that federal courts have the authority under F.R.C.P. 54(b) to reconsider or modify their interlocutory orders at any time prior to entry of final judgment. *See* Fed.R.Civ.P. 54(b)(stating that non-final judgments "may be revised at any time before entry of [final judgment]"); *SEC v. Amerindo Investment Advisors, Inc.*, 2014 U.S. Dist. LEXIS 15696, *7-8 (S.D.N.Y. Jan. 31, 2014)("For non-final orders, . . . Rule 54(b) allows for reconsideration in the district court's equitable discretion.") The principle that federal courts have the inherent power to revise or modify such orders is also well established in the case law. *See, e.g., United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("[W]hether the case sub judice be civil or criminal[,] so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.")(internal quotation marks omitted), *cert. denied*, 460 U.S. 1070 (1983); *Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 33 (2d Cir. 2002)(same)(quoting *LoRusso*); *Parmar v. Jeetish Imports, Inc.*, 180 F.3d 401, 402 (2d Cir. 1998)("All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the

claims to which they pertain.");*Grace v. Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000)(same)(citing *LoRusso*)). The Remedial Order, by its own terms, is not a final order or judgment in either *Ligon* or *Floyd*, as it imposes only preliminary injunctive relief in *Ligon,* sets forth a process for developing remedies in *Floyd*, and specifically contemplates the issuance of future remedial orders in both cases. *See Floyd* Dkt # 372 at 13-14, 31-35.

Under the foregoing standards, the parties' proposed modification to the August 12, 2013 Remedial Order is warranted. As set forth in the Background section above, there has been a change in the factual circumstances surrounding the *Floyd* and *Ligon* cases since the Remedial Order was issued, namely, a decision by the new mayoral and NYPD administration that assumed office on January 1, 2014 to withdraw its appeals and reform the New York City Police Department's ("NYPD") stop-and-frisk policies and practices as set forth in the Remedial Order. *See* Carter Decl. ¶¶ 3, 5. Should the City's motion to withdraw the appeals be granted, the City expects to develop, implement and come into compliance with the required injunctive remedies in *Floyd* and *Ligon* more quickly than appeared to be the case when the Remedial Order originally issued in August 2013. Thus, Court oversight for a minimum of five years- at least three of which will involve a Court-appointed monitor- with a substantial compliance requirement built in is appropriate in light of the changed circumstances.

Moreover, the single proposed modification in no way thwarts the purpose of the Remedial Order, which is to "reform [the NYPD's] practices and policies related to stop-and-frisk to conform with requirements of the United States Constitution" so that stop-and-frisk "is carried out in a manner that protect the rights and liberties of all New Yorkers, while still providing much needed police protection." *Floyd* Dkt 372 at 2. The proposed modification does not eliminate or alter in any way the substantive reforms which the City will be required to

develop, implement and comply with under the Remedial Order, nor does it any way restrict the Court-Appointed Monitor's ability to assist with and oversee the development and implementation of the injunctive remedies in both cases and to monitor and assess the City's compliance with such remedies. *See id.* at 12-13, 33. As written, the modification explicitly ensures that the Monitor will continue in his or her position until the City has substantially complied with all of the *Floyd* and *Ligon* injunctive remedies contemplated by the Remedial Order and gives the Monitor the authority to establish the criteria for measuring compliance. *See* Carter Decl., Ex. A ¶ 12(a)-(d).

Even with the parties' agreed-upon modification, the Remedial Order's monitorship provisions would also be consistent with those found in the vast majority of the consent decrees and settlement agreements in police department pattern and practice lawsuits and investigations brought by the Department of Justice Civil Rights Division and private civil rights plaintiffs over the past decade and a half. The modification's requirement that the City show substantial compliance in order to end Court oversight is found in at least twelve such consent decrees, memoranda of understanding, and settlement agreements since 1999. *See United States v. State of New Jersey*, 99-cv-5970, Dkt # 5 ¶ 131 (D.N.J. Dec. 29, 1999); *United States v. City of Los Angeles*, 00-cv-11769, Dkt # 123 ¶ 179 (C.D. Cal. June 15, 2001); *Memorandum of Agreement between the United States Department of Justice and District of Columbia and the District of Columbia Metropolitan Police Department*, June 13, 2001 ¶ 182, available at http://www.justice.gov/crt/about/spl/documents/dcmoa.php; *Memorandum of Agreement between the United States Department of Justice and the City of Cincinnati, Ohio and the Cincinnati Police Department*, April 12, 2002, available at http://www.cincinnati-oh.gov/police/linkservid/EA1A2C00-DCB5-4212-8628197B6C923141/showMeta/0/; *In re*

*Cincinnati Policing*, 99-cv-3170, Collaborative Agreement ¶ 126 (S.D. Ohio April 19, 2002), available at http://www.acluohio.org/assets/issues/PolicePractices/CincinnatiAgreement/finalsettlement.pdf, *approved by In re Cincinnati Policing*, 99-cv-3170, Dkt # 91 (S.D. Ohio Aug. 5, 2002); *United States v. City of Detroit*, 03-cv-72258, Dkt # 22 ¶ 148 (E.D. Mich. July 18, 2003); *United States v. Territory of the Virgin Islands*, 08-cv-00158, Dkt # 3 ¶ 103 (D.VI. Mar. 24, 2009); *United States v. City of Seattle*, 12-cv-1282, Dkt # 3-1 ¶¶ 223, 229-30 (W.D. Wash. July 27, 2012); *United States v. Town of East Haven*, 12-cv-1652, Dkt # 2-1 ¶ 233 (D. Conn. Nov. 20, 2012); *United States v. City of New Orleans*, 12-cv-1924, Dkt # 159-1 ¶¶ 486, 491 (E.D. La. Jan. 11, 2013); *United States v. Commonwealth of Puerto Rico*, 12-cv-2039, Dkt # 57-1 ¶ 299 (D.P.R. July 17, 2013).[4] In addition, the proposed modification's language on substantial compliance is consistent with that which is found in the aforementioned consent decrees and memoranda of understanding in New Jersey, Los Angeles, Washington, DC, Cincinnati, Detroit, and the Virgin Islands. *See supra*. Finally, under the parties' proposed modification and agreements, the independent oversight of the NYPD's stop-and-frisk policies and practices (Court and the NYPD Inspector General) will last a minimum of five years, which is comparable to the length of oversight specified in all but one of the aforementioned consent decrees, settlement agreements and memoranda of understanding. *See supra*.[5]

Accordingly, the proposed modification to the August 12, 2013 Remedial Order is fair and equitable to the parties, in the interests of justice, and therefore should be approved by this Court.

[4] The parties can provide copies of these decrees, memoranda, and agreements upon request.
[5] The Puerto Rico consent decree, with a 10-year term, is the lone exception.

## CONCLUSION

For the reasons stated above, the Court should grant the parties' joint request for modification to the August 12, 2013 Remedial Order.

Dated: New York, New York
April 3, 2014

Respectfully submitted

By: /s/Zachary Carter
Zachary Carter
Heidi Grossman
Linda Donahue
Brenda Cooke
NEW YORK CITY LAW DEPARTMENT
OFFICE OF THE CORPORATION COUNSEL
100 Church Street
New York, NY 10007
(212) 356-1000
zcarter@law.nyc.gov

*Attorneys for Floyd and Ligon Defendants*

By: /s/Darius Charney
Darius Charney
Baher Azmy
Sunita Patel
Chauniqua Young
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464
dcharney@ccrjustice.org

Jonathan C. Moore
BELDOCK, LEVINE & HOFFMAN, LLP
99 Park Avenue, 16th Floor
New York, NY 10016
(212) 490-0900

        Eric Hellerman
        Gretchen Hoff-Varner
        Bruce Corey
        COVINGTON & BURLING, LLP
        620 Eighth Avenue
        New York, NY 10018
        (212) 841-1000

        *Attorneys for Floyd Plaintiffs*

By: /s/Alexis Karteron
        Alexis Karteron
        Christopher Dunn
        Jordan Wells
        NEW YORK CIVIL LIBERTIES UNION
        FOUNDATION, INC.
        125 Broad Street, 19th Floor
        New York, NY 10004
        (212) 607-3300
        akarteron@nyclu.org

        Mariana Kovel
        THE BRONX DEFENDERS
        860 Courtlandt Avenue
        Bronx, New York 10451

        Juan Cartagena
        Roberto Concepcion, Jr.
        LATINO JUSTICE PRLDEF
        99 Hudson Street, 14th Floor
        New York, New York 10013

        J. McGregor Smyth, Jr.
        NEW YORK LAWYERS FOR THE
        PUBLIC INTEREST
        151 West 30th Street, 11th Floor
        New York, New York 10001

        John A. Nathanson
        Jeffrey Resetarits
        SHEARMAN & STERLING, LLP
        599 Lexington Avenue
        New York, New York 10022

        *Attorneys for Ligon Plaintiffs*