# Attachment 5




# POLICE STUDIES
## Patrolling Housing Facilities

### SUPPLEMENTARY PROCEDURES FOR INTERIOR PATROL OF MULTIPLE DWELLING BUILDINGS ENROLLED IN THE TRESPASS AFFIDAVIT PROGRAM

**<u>Interior Patrol (P.G. 212-59)</u>**

Patrolling multiple dwelling private buildings for criminal activity including trespassing under the Trespass Affidavit Program (TAP) is a valuable problem solving tool, as well as an important component of the Department's crime control strategy. Authorization for interior patrol, the tactically planned patrol of the interior hallways, stairways, lobbies, basements, rooftops and other common areas of multiple dwelling buildings that are **not** owned by the New York City Housing Authority is obtained through the Department's Trespass Affidavit Program.

To conduct interior patrol in a residential multiple dwelling private building in the Department's Trespass Affidavit Program, uniformed members of the service will be assigned in teams of two to locations at designated times and will be coordinating their activities with other assigned uniformed members. The number of uniformed members assigned to conduct a particular interior patrol will be based on the size of the building, the number and location of exits, and the nature of the crimes being addressed at that location. Absent exigent circumstances, teams of two or more uniformed members must remain together at all times.

After responding to the assigned location, and before entering the building, notify Communication Section dispatcher utilizing radio code 10-75I and make an Activity Log entry of the time and street address upon entering the building. Officers should inspect the front, rear and other exterior doors and interior of the lobby. Document in your Activity Log whether "No Trespassing" signs are legible and prominently displayed in areas where person entering the building can readily see them. If such signs are present, identify their specific location (e.g., vestibule entrance, vestibule, above the elevator, courtyard, roof, etc.). After doing so, proceed to the top floor of the building by elevator, if operable, and conduct an inspection of the roof, roof landing, elevator rooms and any other installations. Officers should patrol each floor, staircase and hallway within the building from the top floor to the ground floor. Officers should also inspect all accessible basement areas.

**Approaching Individuals Outside, Inside and Around TAP Buildings**

A uniformed member of the service may approach and ask non-threatening and non-accusatory questions of a person (that is, conduct a Level 1 request for information under *DeBour*) if the member has an objective credible reason to do so. However, mere presence in or outside a building enrolled in the Trespass Affidavit Program is not an "objective credible reason" to approach. A uniformed member of the service may <u>not</u>




# POLICE STUDIES
### Patrolling Housing Facilities

approach a person merely because the person has entered or exited or is present near a building enrolled in the Trespass Affidavit Program.

If an officer has an objective credible reason to approach an individual near or inside of a building enrolled in the Trespass Affidavit Program (in other words, more than mere presence or entry or exit), the officer may approach the person(s) and ask the person non-threatening, non-accusatory questions related to the reason for the approach.  The officer may ask the individual:

- If he or she lives in the building
- If he or she is visiting someone in the building
- If he or she has business in the building

as long as the questions would not cause a reasonable person to believe that he or she is suspected of some wrongdoing.

An individual who has been approached (in a Level 1 or Level 2 encounter) should not be detained, and may refuse to answer questions, answer only some questions, and is free to leave the building, unless there is reasonable suspicion to believe that the person has committed, is committing, or is about to commit a felony or Penal Law misdemeanor.  A person's decision to leave the building, remain silent or refuse to provide information or identification when questioned by the police does not support reasonable suspicion to stop or probable cause to arrest.  Remember, a Level 3 stop occurs whenever a reasonable person would not feel free to disregard the officer and walk away.

Based on the answers to the questions in an initial encounter, an officer may take reasonable measures to verify a person's authority to be present in the building when such authority is in question (e.g., asking for identification, requesting the name or apartment number of the person being visited, requesting keys to the building entrance doors, etc.).  If the individual refuses to explain or is unable to explain his/her presence in the building, the uniformed member may instruct the person that he or she must leave the building or be subject to arrest for trespass.  The uniformed member may then arrest the person for trespass if:

- The person refuses to exit the building and does not establish a right to be in the building.

**Level 3 Stop**

Under the Fourth Amendment to the United States Constitution, a person is <u>stopped</u> (temporarily detained in a Level 3 encounter) if under the circumstances a reasonable person would not feel free to disregard the police and walk away. A Level 3 stop may only be conducted when an officer has *individualized, reasonable suspicion*




# POLICE STUDIES
### Patrolling Housing Facilities

*that the subject is committing, has committed, or is about to commit a crime.* In New York State, this means a felony or a misdemeanor in the Penal Law. (CPL § 140.50(1)).

A uniformed member of the service may not stop a person on suspicion of trespass unless the uniformed member <u>reasonably suspects</u> that the person was in or is in the building without authorization. **Mere presence near, entry into, or exit out of a building enrolled in the Trespass Affidavit Program, without more, is <u>not</u> sufficient to establish reasonable suspicion for a stop on suspicion of trespass.** Some factors that may contribute to "reasonable suspicion" that a person is trespassing, in addition to those factors set forth in PG 212-11, are contradictory assertions made to justify presence in the building or assertions lacking credibility made to justify presence in the building.

In order to conduct a frisk, a police officer must *reasonably suspect that the person stopped is armed and dangerous.* A frisk is a protective measure for the safety of the officer and may not be used as a subterfuge for the discovery of evidence of a crime, such as drugs. A frisk is a carefully limited running of the hands or pat-down over the *outside* of a person's clothing, feeling for a weapon which might be used to harm the officer or others nearby. The frisk must be strictly limited to that which is necessary to uncover weapons.

If a Level 3 stop is made, the officer should take appropriate actions as per P.G. 212-11, "Investigative Encounters." Ensure that a **Stop, Question and Frisk Report Worksheet (PD344-151A)** is prepared and an **Activity Log** entry is made documenting the encounter.

**Arrest**

If probable cause develops that a person has committed or is committing an offense, an arrest may be effected, as per P.G. 208-01 "Law of Arrest." When a trespass arrest is made, you must prepare a **Trespass Crimes - Fact Sheet (PD351-144)** and document the arrest in your **Activity Log**. You must describe the factors that led you to approach and question the individual. Your description should be detailed and contain facts that were important to establishing probable cause. If the arrest arose from a Level 3 stop, you must also prepare a **Stop, Question and Frisk Report Worksheet**. Copies of the **Trespass Crimes – Fact Sheet (PD351-144)** and **Trespass Crimes – Owner's Affidavit (PD651-051)** or New York County District Attorney's supporting affidavit, as appropriate for the building, must be included in arrest package.

The **Trespass Crimes – Owner's Affidavit (PD651-051)**, will be utilized for Department Trespass Affidavit Program buildings in the Bronx, Brooklyn, Staten Island and Queens. The New York County District Attorney's Office manages a Trespass Affidavit Program in Manhattan and utilizes its own supporting affidavits. The **Trespass Crimes – Fact Sheet (PD351-144)** will be prepared in every instance, including

 

# POLICE STUDIES
**Patrolling Housing Facilities**

Manhattan for a trespass arrest in a building participating in a Trespass Affidavit Program

**Completing Interior Patrol**

Officers should notify the Communications Section Dispatcher upon exiting the building and make an Activity Log entry indicating the time the building inspection was completed and any conditions noted.

**Trespass Crimes – Fact Sheet (Front)**




# POLICE STUDIES
## Patrolling Housing Facilities



**TRESPASS CRIMES – FACT SHEET**
PD 351-144 (05-12)

**Complete all Captions on BOTH Sides of This Form**

| Defendant's Name | | Arrest No. | |
|---|---|---|---|
| Date of Arrest | Time of Arrest | Location | |
| Arresting Officer's Name | Shield No. | Tax No. | Command |
| Observing Officer's Name | Shield No. | Tax No. | Command |

1. Were there "No Trespassing" and/or "Tenants and Guests Only"  ☐ Yes
   signs conspicuously posted at the location?  ☐ No

   IF YES, Where? _____

2. Was defendant seen entering the location?   ☐ Yes   ☐ No

   IF YES, how did the defendant gain access to the building? _____

3. How long did you observe the defendant in the building before you approached? _____

4. Where was the defendant when he was stopped? _____

5. Describe the factors that led to the decision to approach and question the defendant:

   _____
   _____
   _____
   _____
   _____

6. Did you approach the defendant and ask:

   a) Do you live in the building? (response) _____

   b) Are you visiting someone in the building? (response) _____

   c) Do you have business in the building? (response) _____

**OVER**

*PATROLLING HOUSING FACILITIES*                                                                5




# POLICE STUDIES
## Patrolling Housing Facilities

7. How was it determined that the defendant was not a tenant, guest or on business in the building, prior to arrest?
   _____
   _____

   a) Did defendant provide an apartment number?  ☐ Yes  ☐ No  IF YES, Apt No._____

   b) Did defendant provide a name of an alleged tenant he/she was visiting?    ☐ Yes  ☐ No
      Name Provided _____

   c) Did you go to apartment defendant indicated and was it unoccupied?    ☐ Yes  ☐ No
      IF YES, from which source did you verify the occupancy of said apartment: (check all that apply)

      ☐ Superintendent (indicate full name) _____

      ☐ Landlord (indicate full name) _____

      ☐ Tenant Roster (must provide copy of roster)

8. Did defendant make <u>any</u> statements?    ☐ Yes  ☐ No  IF YES, defendant stated in sum and substance:
   _____
   _____
   _____

Statement made to _____ Shield No. _____ Tax No. _____

at approximately _____ (time) at _____ (location)

on _____ (date)

9. Was evidence recovered from the defendant?    ☐ Yes  ☐ No

   a) IF YES, describe the evidence and EXACTLY where the evidence was recovered from _____
      _____

   b) Did you recover the evidence?    ☐ Yes  ☐ No

   IF NO, did you observe the recovery of the evidence?    ☐ Yes  ☐ No

   c) Indicate officer who recovered evidence:

   Rank/Name _____ Shield No. _____ Tax No. _____

| Reporting Officer's Signature | Date |
|---|---|
|  |  |

**Trespass Crimes – Fact Sheet (Back)**

*PATROLLING HOUSING FACILITIES*                                                                 6




# POLICE STUDIES
**Patrolling Housing Facilities**



**TRESPASS CRIMES – OWNER'S AFFIDAVIT**
PD 651-051 (05-12)

1. **Whereas** the undersigned is the owner, managing agent or other person in authority relating to the supervision of the premises located at:

   _____
   (Address of Location)

2. **Whereas** the building described above is a dwelling in which only tenants, invited guests, and authorized personnel are licensed or privileged to enter or remain; and

3. **Whereas** the undersigned is fearful that in recent months, persons who are neither tenants, nor invited guests, nor authorized personnel have occupied the above-described premises for the purchase and use of illegal drugs or to commit other illegal activity; now

4. **THEREFORE IT IS AGREED THAT** the undersigned, having proper permission and authority to do so, hereby binds the owner from the date indicated below for six months, granting full permission and authority to the New York City Police Department (the Department), its employees and agents to enter upon the above described premises at any and all hours of the day for the purpose of arresting those persons found thereon who are not tenants, their family members or invited guests.

5. **IT IS AGREED THAT** members of the Department performing this function act as agents of the undersigned, and are hereby entitled to revoke a person's license and privilege to be in a building if the person, when approached by an officer, refuses to establish a legitimate reason for being in the building. That person should be ordered to leave the building and may be arrested for trespass if he or she refuses to leave the building after being so ordered.

6. **IT IS AGREED THAT** the policy of license and privilege set forth herein has been adequately communicated to all tenants and management personnel.

7. **IT IS AGREED THAT** the undersigned shall place conspicuous signs alerting all persons to building policy that access is limited to tenants, invited guests, and authorized personnel, and that compliance with police inquiries is a condition of building access and use.

   FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO PENAL LAW SECTION 210.45.

_____
(Print Name of Owner/Managing Agent)

_____
(Signature of Owner/Managing Agent)               (Date)

**Trespass Crimes – Owner's Affidavit**