**ARNOLD & PORTER LLP**

Peter L. Zimroth
Peter.Zimroth@aporter.com

+1 212.715.1010
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

October 12, 2016

<u>VIA ECF</u>

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007-1312

  Re: *Floyd, et al. v. City of New York*, 08-CV-1034 (AT),
    *Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT),
    *Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT),
    <u>Consent to Search</u>

Dear Judge Torres,

  The New York City Police Department (NYPD) recently reached an agreement with the City Council Speaker to revise its policies related to requests for consent to search.  These revisions include eliciting an unequivocal affirmative response to a request for consent to search and providing a person searched pursuant to consent with a receipt/contact card.  These changes are not ones required by this court's orders or the parties' agreements.  They are the result of the agreement with the City Council Speaker, in lieu of the City Council enacting legislation.  They do not derogate from the protections of the court orders or anything in P.G. 212-11 as approved by the court; they increase protections.

  I do not believe the changes to P.G. 212-11 being proposed require the court's approval. Counsel for the *Floyd* plaintiffs have informed me that they intend to file papers with the court to

# ARNOLD & PORTER LLP

Honorable Analisa Torres
October 12, 2016
Page 2

the effect that court approval is required. They will be relying on an April 27, 2015 order of the court, which says that the monitor shall submit for the court's review any material changes to a previously approved Final Recommendation and that non-material changes do not need court approval. They believe that, because P.G. 212-11 was previously approved by the court, and because, in their view, the changes being contemplated are "material," court approval is required.

I disagree for these reasons:

1. The April 27, 2015 order was submitted by me, and I believe signed by the court, in the context of Final Recommendations that are part of the remedial process—in other words, Final Recommendations that deal with the requirements of the remedial order. I do not believe that the April 27 order contemplated a situation in which proposed changes are not part of the remedial process, such as the ones now being discussed. The court in *Floyd* made no findings concerning consent searches, and there is nothing in the remedial order requiring changes in the way the Department deals with consent searches. The only reference to consent searches in the liability opinion, pointed out by the plaintiffs, is the discussion of the stop of plaintiff Lalit Clarkson. Dkt #373 at 154-56. Mr. Clarkson was stopped, but did not consent to be searched and was not searched. The court found that the stop was unconstitutional because the officers lacked reasonable suspicion, but made no findings of fact or law relating to consent to search. If Your Honor believes there is a need to clarify the April 27 order, I will be pleased to submit an amendment that does so.

**ARNOLD & PORTER LLP**

Honorable Analisa Torres
October 12, 2016
Page 3

    2. The changes required by the City Council agreement do not derogate from the protections in the court-approved procedures or in the remedial order. They add to those protections.

    3. The precise language of the changes was negotiated between the Department and City Council Speaker Melissa Mark-Viverito. The Department has committed itself to that language, and it is understandable that the Department does not want to deviate from what was agreed.

    4. Perhaps the most important aspect of the agreement is that these changes would be embodied in NYPD policy and training and not in the law. Some advocates objected (and still object) to this, but that was the agreement. Court approval would embody the changes in law (the court order). The agreement with the City Council Speaker did not contemplate incorporating the changes in policy as part of the requirements of this litigation.

    5. The agreement between the City Council and the NYPD was negotiated and finalized in a highly charged, political atmosphere. Some people favor the agreement, and some do not. Those who don't continue to favor embodying these changes (and perhaps others) in law rather than in NYPD policy. Regardless of the merits of these contending views, these disagreements are appropriately resolved in the political arena. I do not believe that the court should be asked to intervene in these disputes—unless, of course, there is a derogation of the protections in the remedial order or the change was one required by the court order and parties' agreement, which is not the case here.

# ARNOLD & PORTER LLP

Honorable Analisa Torres
October 12, 2016
Page 4

  For these reasons, I am attaching for your information, but not for the court's approval, the draft interim order that makes the changes to the NYPD procedures and the contact card that the officers will be providing persons who were searched in a consent search.

               Respectfully submitted,

               */s/ Peter L. Zimroth*

               Peter L. Zimroth
               Monitor

Attachments: (1) Draft interim order
        (2) Draft contact card

ARNOLD & PORTER LLP

# Attachment 1



# DRAFT INTERIM ORDER

| SUBJECT: | **REVISION TO PATROL GUIDE 203-09, "PUBLIC CONTACT – GENERAL," PATROL GUIDE 204-09, "REQUIRED FIREARMS/EQUIPMENT," PATROL GUIDE 212-11, "INVESTIGATIVE ENCOUNTERS: REQUESTS FOR INFORMATION, COMMON LAW RIGHT OF INQUIRY AND LEVEL 3 STOPS," PATROL GUIDE 218-13, "INVENTORY SEARCHES OF AUTOMOBILES AND OTHER PROPERTY" AND PATROL GUIDE 221-16, "VEHICLE CHECKPOINTS"** | |
|---|---|---|
| DATE ISSUED: | REFERENCE: | NUMBER: |
| **09-12-16** | **P.G. 203-09, P.G. 204-09, P.G. 212-11, P.G. 218-13 AND P.G. 221-16** | **DRAFT 10** |

     1.     In order to ensure that permission to conduct a consent search is obtained from members of the public in a knowing, intelligent and voluntary manner, uniformed members of the service will now be required to ask specific questions requesting permission prior to conducting a consent search. When a consent search has been completed the uniformed member of the service will offer the individual a **CONTACT CARD (PD142-011)**. Additionally, a **CONTACT CARD** will be offered to a member of the public under two specific circumstances: first, when they request the personal information of a uniformed member of the service, and second, during vehicle checkpoints established for the purpose of DWI checks. In addition, members of the service should be aware that the offering of a **CONTACT CARD** to a member of the public under other appropriate circumstances is an effective way to establish and encourage good police/citizen relations.

     2.     The **CONTACT CARD** has been revised to reflect new captions for rank and shield number. When providing a **CONTACT CARD** to a member of the public the rank, name, shield and command captions must be completed, and the telephone number and email address captions are optional.

     3.     Therefore, effective immediately, Patrol Guide 203-09, "Public Contact - General" is amended as follows:

     a.     **REVISE** step "**1**," opposite "PUBLIC CONTACT," on page "**1**" to read:

"**PUBLIC CONTACT**     **1.**     **Courteously and clearly state your rank, name, shield number and command, or otherwise provide them, to anyone who requests you to do so. Allow the person ample time to note this information, unless a CONTACT CARD (PD142-011) is offered.**
     **a.**     **Offer a CONTACT CARD to person requesting information with rank, name, shield and command captions completed, or under other appropriate circumstances.**"

    b.    **ADD** new "NOTE" following step "**1**," on page "**1**" to read:

"*NOTE*    *A uniformed member of the service performing duty in an undercover (UC) capacity and those UMOS operating in operational support of a UC or a confidential informant, are exempt from providing CONTACT CARDS due to the sensitive nature of their assignment.*"

4.    In addition, Patrol Guide 204-09, "Required Firearms/Equipment" is amended as follows:

    a.    **ADD** new step "**27**," opposite "REQUIRED EQUIPMENT," on page "**5**" to read:

"**REQUIRED EQUIPMENT**    **27.**    **At least ten CONTACT CARDS (PD142-011), at the commencement of tour.**"

    b.    **REVISE** second paragraph, opposite "ADDITIONAL DATA" statement, on page "**5**" to read:

"**ADDITIONAL DATA**    *Uniformed members of the service assigned to civilian clothed enforcement duties are required to have their service 9MM semi-automatic pistol and one extra fully loaded magazine or their service .38 caliber revolver with twelve extra cartridges, handcuffs with key, at least ten CONTACT CARDS at the commencement of tour and the 'color of the day' head/arm band on their persons. In addition, O.C. pepper spray device and holder will be carried by such members as specified in P.G. 221-07, 'Use of Oleoresin Capsicum Pepper Spray Devices'.*"

5.    Furthermore, Patrol Guide 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops" is amended as follows:

    a.    **REVISE** step "**12**," opposite actor "UNIFORMED MEMBER OF THE SERVICE," on page "**4**" to read:

"**UNIFORMED MEMBER OF THE SERVICE**    **12.**    **You may request consent to search; the consent must be voluntarily given.**
    **a.**    **Ask for consent to search in a manner that elicits a clear 'yes' or 'no' response.**
    **b.**    **Follow up by explicitly saying,** *I can only search you, if you consent.*
    **c.**    **Specifically ask the person,** *Do you understand?*
    **d.**    **If a consent search is conducted offer the person a CONTACT CARD (PD142-011) with rank, name, shield, and command captions completed.**"

                                                    INTERIM ORDER NO. **DRAFT 10**

    b.    **ADD** new "NOTE" following step "**12**," on page "**4**" to read:

"***NOTE***    ***If a person does not consent to a search, you cannot conduct a search.***

    c.    **REVISE** subdivision "**e**," under step "**16**," opposite actor "UNIFORMED MEMBER OF THE SERVICE," on page "**4**" to read:

"**UNIFORMED MEMBER OF THE SERVICE**    **e.**    **You may seek consent to search. Consent must be voluntarily given.**
    **(1)**    **Ask for consent to search in a manner that elicits a clear 'yes' or 'no' response.**
    **(2)**    **Follow up by explicitly saying, *I can only search you, if you consent.***
    **(3)**    **Specifically ask the person, *Do you understand?***"

    d.    **ADD** new "NOTE" following step "**16**," subdivision "**e**," substep "**3**," on page "**4**" to read:

"***NOTE***    ***If a person does not consent to a search, you cannot conduct a search.***

    6.    Patrol Guide 218-13, "Inventory Searches of Automobiles and Other Property" is amended as follows:

    a.    **REVISE** subdivision "**d**," under step "**2**," opposite actor "UNIFORMED MEMBER OF THE SERVICE," on page "**1**" to read:

"**UNIFORMED MEMBER OF THE SERVICE**    **d.**    **Consent of the owner to break open the locked item.**
    **(1)**    **Ask for consent to search in a manner that elicits a clear 'yes' or 'no' response.**
    **(2)**    **Follow up by explicitly saying, 'I can only conduct a search, if you consent.'**
    **(3)**    **Specifically ask the person, 'Do you understand?'**
    **(4)**    **If a consent search is conducted offer the person a CONTACT CARD (PD142-011) with rank, name, shield and command captions completed.**"

    b.    **ADD** new "NOTE" following step "**2**," on page "**1**" to read:

"***NOTE***    ***If the owner does not consent to a search, you cannot conduct a search unless a search warrant is obtained.***

        INTERIM ORDER NO. **DRAFT 10**

7. Patrol Guide 221-16, "Vehicle Checkpoints" is amended as follows:

   a. **ADD** new step "**14**," and accompanying "NOTE," opposite actor "UNIFORMED MEMBER OF THE SERVICE ASSIGNED TO CHECKPOINT," on page "**2**" to read:

| "**UNIFORMED MEMBER OF THE SERVICE ASSIGNED TO CHECKPOINT** | **14.** | **Offer vehicle operator a CONTACT CARD (PD142-011) with rank, name, shield and command captions completed.** |
|---|---|---|
| | **a.** | **Provide vehicle passenger with CONTACT CARD, when requested.** |
| *NOTE* | | *CONTACT CARDS will only be distributed during vehicle checkpoints that have been established for the purpose of DWI checks. Effecting an arrest or issuing a summons fulfills the obligation of offering a CONTACT CARD.*" |

   b. **RENUMBER** current steps "**14 through 19**," to read:

   "**15 through 20**"

8. Therefore, effective immediately, commands will requisition the revised **CONTACT CARDS** through the Quartermaster Section using the following information:

| **INDEX NUMBER** | **PD NUMBER** | **TITLE** |
|---|---|---|
| **2254** | **PD142-011** | **CONTACT CARD** |

9. Existing copies of **CONTACT CARDS (PD142-011)** with a revision date prior to **[Rev. XX-16]** are **OBSOLETE** and should be destroyed upon receiving the newly revised **CONTACT CARDS (PD142-011)**.

10. Upon publication, this Interim Order has been incorporated into the On-Line Patrol Guide.

11. Any provisions of the Department Manual or any other Department directive in conflict with the contents of this Order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All Commands**

INTERIM ORDER NO. **DRAFT 10**

# Attachment 2

**NYPD** New York City Police Department

Rank/Name _____

Shield _____ Cmd. _____ Tel. _____

EMail _____ @nypd.org



NYPD nypdcrimestoppers.com
**CRIMEstoppers**
YOU DON'T HAVE TO GIVE YOUR NAME.  1-800-577-TIPS

$10,000 REWARD
FOR THE ARREST AND CONVICTION OF ANYONE SHOOTING A NYC POLICE OFFICER
CALL 1-800 COP-SHOT

1 866 GUN-STOP
1 866 486-7867

CONTACT CARD  PD 142-011  (Rev. 09-16)