# centerforconstitutionalrights
## on the front lines for social justice

October 13, 2016

**VIA ECF**
Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007-1312

       Re:    *Floyd, et al. v. City of New York*, 08-CV-1034 (AT),
                 <u>Consent to Search  Changes to NYPD PG 212-11</u>

Dear Judge Torres:

      On behalf of Plaintiffs in the above-captioned matter, we write in response to the Independent Monitor's letter to Your Honor, dated October 12, 2016, Dkt #533, submitting for the Court's information a draft NYPD interim order reflecting changes to Department policy on consent searches conducted during *Terry* stops and Level 2 "Common Law Right of Inquiry" investigative encounters and a contact card to be given to persons subjected to such searches. In his letter, the Monitor indicates that he does not think that these changes, which were the product of an agreement between the NYPD and the office of New York City Council Speaker Melissa Mark-Viverito negotiated without the involvement or knowledge of the Monitor or Plaintiffs, require this Court's approval before they can be implemented within the NYPD.  Plaintiffs respectfully disagree with the Monitor and submit that, under prior orders of this Court, these changes must be approved by the Court before the NYPD can implement them.

      As the Monitor acknowledges, this Court's April 27, 2015 Order requires that material changes to previously Court-approved final Monitor recommendations must be approved by the Court. *See* Dkt #509 at 1. As he further acknowledges, the aforementioned policy changes would be made through revisions to NYPD Patrol Guide § 212-11, which sets forth the NYPD's formal written policies on *Terry* stops, frisks, and consensual and non-consensual searches conducted during *Terry* stops and which was previously approved by this Court on March 25, 2016. *See* Dkt # 527, at 12-25. The proposed revisions would set forth for the first time in written NYPD policy three steps that officers would be required to take to ensure that the consent given by the searched civilian is truly voluntary, as well a new requirement that officers provide a contact card to all persons subjected to consent searches during Level 2 encounters. *See* Monitor 10/12/16 Ltr to Court, Attachment 1 at ¶¶ 12, 16.

      Despite these material changes to PG 212-11, the Monitor states that these additional steps do not require Court approval because they are not "part of the remedial process" since "[t]he Court in *Floyd* made no findings concerning consent searches, and there is nothing in the

remedial order requiring changes in the way the Department deals with consent searches." Monitor 10/12/16 Ltr to Ct at 2. However, the Court's August 12, 2013 Remedial Order mandates that the NYPD "revise its policies and training regarding stop and frisk to adhere to constitutional standards" and expressly includes among those constitutional standards the standard for "when a search into clothing or into any object found during a search may be conducted." Dkt # 372 at 14-15. The aforementioned proposed PG 212-11 changes relate specifically to the constitutional standard for when a certain category of searches may be conducted during a *Terry* stop- i.e., voluntary consent. *See United States v. Vasquez*, 612 F.2d 1338, 1346-47 (2d. Cir. 1979) ("[W]hen the government relies on consent in lieu of a warrant it bears the burden of proving that any purported consent was in fact voluntary rather than the product of duress or coercion, express or implied."). Moreover, while the Court did not expressly find in its Liability Opinion that any NYPD officers had conducted unconstitutional consent searches during *Terry* stop encounters, the Court's findings with respect to the conduct of NYPD officers during the unconstitutional stop of named Plaintiff Lalit Clarkson strongly suggests that these officers misunderstood or ignored the concept of "voluntariness" of consent, *see* Dkt #373 at 155-56 (describing how officers repeatedly sought consent to search plaintiff even after he had clearly refused to give it several times, all while surrounding him on the sidewalk in a manner that indicated he was not free to leave), which is the very issue that the proposed PG 212-11 changes are designed to address. Thus, Plaintiffs submit that the proposed changes to PG 212-11 involve an issue that is very much a part of the remedial process ordered by the Court and are therefore material.

     The Monitor also notes that the proposed changes to PG 212-11 do not derogate, but rather add to, the protections in PG 212-11 and the Court's Remedial Order. Monitor 10/12/16 Ltr to Ct at 3. This is a red-herring. The changes contained in the March 25, 2016 version of Patrol Guide 212-11, which the Monitor submitted to the Court for approval, did not derogate any protections contained in the prior version of PG 212-11, which the Court had approved back on August 24, 2015. Rather, those changes, which the Monitor and the parties all agreed were material, dealt exclusively with the steps for officer documentation of *Terry* stops and supervisory review of that documentation and of the underlying stops themselves in light of the new, Court-approved Stop Report form. *See* Dkt # 517 at 11-13, # 527 at 18-20. Thus, whether or not the proposed consent search changes to PG 212-11 derogate or expand the protections already contained in PG 212-11 or the Court's Remedial Order is not relevant to the question of whether Court approval of these changes is required.

     The Monitor also makes much of the fact that the NYPD bargained with the City Council for the precise language embodied in the proposed changes to PG 212-11 and to ensure that the changes were embodied in NYPD policy rather than law, and he argues that the NYPD should be able to enjoy these benefits of its bargain with the City Council. Monitor 10/12/16 Ltr to Ct at 3. However, the Monitor fails to mention that while Plaintiffs do think that the proposed changes to PG 212-11 should state more clearly that a person's consent must be affirmative and that silence cannot constitute consent (and have proposed language to that effect to the NYPD and the Monitor), we will not object to the current language of the proposed changes that the Monitor has submitted to the Court. Thus, the need to obtain Court approval will not prevent the NYPD/City Council agreed-upon consent search changes to PG 212-11 from taking effect. As for the concern about these changes becoming law through an order of the Court, Plaintiffs

submit that the NYPD should have thought of that when, unbeknownst to Plaintiffs, the Monitor or the Court, it decided to engage in a secret negotiation with City Council over the rules for a policing tactic that is frequently conducted during *Terry* stop encounters and is subject to the requirements of the Fourth Amendment.[1] While the Monitor is concerned with preserving the benefits of the NYPD's bargain with the City Council, Plaintiffs, who are not parties to the NYPD-City Council back-room deal, are concerned with protecting the constitutional rights of the thousands of class members we represent by, among other things, ensuring that the requirements of this Court's orders, including the requirement that reforms to NYPD policies governing officer conduct during *Terry* stop encounters be approved by the Court, are complied with by the governmental actor found to have violated those class members' rights for the better part of a decade.

Moreover, we note that the changes that were agreed to by the NYPD after consultation with the City Council are not embodied in any written agreement, or local law, which means that they could be changed and/or abandoned at any time by the NYPD. This is exactly the reason why material changes to PG 212-11 must be Court-ordered. Absent a Court order there is no guarantee or legal impediment to the NYPD abandoning these changes at a later date.

Lastly, the Monitor contends that by approving the proposed consent search changes to PG 212-11, the Court will be inserting itself into a political dispute more appropriately resolved in the "political arena." Monitor 10/12/16 Ltr to Ct at 3. In this argument Plaintiffs hear echoes of the troubling argument which the NYPD previously put forward in this case when opposing Court-ordered injunctive relief designed to remedy the NYPD's longstanding and widespread unconstitutional stop-and-frisk practices. *See* Dkt # 176 at 31-32. The Court rejected the NYPD's argument then, *see* Dkt # 206 at 54-55, and should do so again now.

Accordingly, for all of the foregoing reasons, Plaintiffs respectfully submit that the proposed consent search changes to NYPD Patrol Guide Section 212-11 must be approved by this Court before the NYPD may implement them.

                                              Respectfully submitted,

                                              /s/ Darius Charney
                                              Darius Charney
                                              Baher Azmy
                                              CENTER FOR CONSTITUTIONAL RIGHTS
                                              666 Broadway, 7th Floor

---

[1] The NYPD did not inform Plaintiffs or the Monitor of its agreement with City Council until July 13, 2016, almost a week after the agreement was actually reached. *See* J. David Goodman, "New York Council Won't Vote on Police Reform Bills, but Agency Agrees to Changes," *New York Times*, July 12, 2016 (reporting that Council Speaker Mark-Viverito informed City Council Members on July 7, 2016 that the agreement had been reached), available at http://www.nytimes.com/2016/07/13/nyregion/new-york-city-council-will-not-vote-on-police-reform-measures.html

3

Case 1:08-cv-01034-AT   Document 534   Filed 10/13/16   Page 4 of 4

New York, NY 10012
dcharney@ccrjustice.org
bazmy@ccrjustice.org


Jonathan C. Moore
Joshua Moskovitz
BELDOCK, LEVINE & HOFFMAN, LLP
99 Park Avenue
New York, NY 10016
jmoore@blhny.com
jmoskovitz@blhny.com

*Attorneys for Plaintiffs*