# ARNOLD & PORTER
# I KAYE SCHOLER

Peter DOUMENT
+1 212.836.7316 Direct
Peter ELECTRONICALLY FILED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/17

February 17, 2017

**VIA ECF**

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007-1312

> Re:   *Floyd, et al. v. City of New York*, 08-CV-1034 (AT),
> *Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT),
> *Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT),
> Recommendation regarding Recruit Training: Recognizing the Characteristics of
> Armed Suspects

Dear Judge Torres,

I am submitting my recommendation regarding the recruit training module, *Recognizing the Characteristics of Armed Suspects,* consisting of a lesson plan and a PowerPoint presentation.  All parties agree that the enclosed revised training module should be approved.

The court's liability and remedies decisions identified this module as needing revision in two ways.  First, the version of the PowerPoint presentation and lesson plan reviewed by the court included a section on "unusual firearms," such as guns in the shape of cell phones or pens. The court found the material misleading because it could encourage officers to perform stops and frisks based just on bulges created by cell phones or other common objects, which officers could not reasonably suspect to be weapons.  *Floyd v. City of New York*, 959 F. Supp. 2d 540, 614 (S.D.N.Y. 2013) (liability decision); *Floyd v. City of New York*, 959 F. Supp. 2d 668, 680 (S.D.N.Y. 2013) (remedies decision).  Second, the lesson plan needed to state that an officer's "fear for safety" is grounds for a protective frisk only when the fear is reasonable and related to a weapon.  *See* liability decision at 615 n.365.

# ARNOLD & PORTER
# I KAYE SCHOLER

Honorable Analisa Torres
February 17, 2017
Page 2

The new materials make both these changes. The section on "unusual firearms" cited by the court has been removed. And the materials now clearly state the requirements for a protective frisk in language that is being used elsewhere in the recruit curriculum and has already been approved by the court. Based on my review of the materials, I believe the training module meets the requirements of the court orders and the parties' agreements, and should be approved.

Respectfully submitted,

*/s/ Peter L. Zimroth*

Peter L. Zimroth
Monitor

Attachments:   (1) *Recognizing the Characteristics of Armed Suspects* Lesson Plan
(2) *Recognizing the Characteristics of Armed Suspects* PowerPoint Presentation

APPROVED.

SO ORDERED.

Dated: February 24, 2017
New York, New York

**ANALISA TORRES**
**United States District Judge**

# Attachment 1

# Firearms &Tactics Section
## FTS – (117)
## Recognizing the Characteristics of Armed Suspects
## Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

**FTS- 117**
**SYNOPSIS**
**Date Prepared:** JUNE 2016 **Date Reviewed / Revised:** OCTOBER 2016
**Prepared By:** DET. Patrick J. DeCanio
**Reviewed/Approved By:** INSP**.** Raymond Caroli
This module will provide the police officer with various methods to assist in identifying suspects armed with a firearm
**Method of Instruction:** Lecture / discussion / demonstration / question and answer
**Time Allocated:** 2 Hours
**Training Need:**
**Terminal Learning Objective:** At the completion of this module, participants will understand and describe many of the characteristics that would lead an officer to reasonably believe a person is armed with a gun
**Learning Outcomes:**
1. Identify the elements necessary to conduct a valid stop, question and possible frisk
2. Describe the differences between a stop, frisk and search
3. Explain why it is important to develop skills for identifying characteristics of armed suspects
4. Define the acronym IB PACE
5. List some factors that lead to the acronym IB PACE
6. Define the term articulable facts
7. Describe factors that may lead a police officer to reasonably believe a person may be armed

**Required Reading:**
**Instructional Resources Required:**
- PowerPoint projector
- Computer with monitor
- Classroom seating
- Training firearm
**Evaluation Strategies:**
- Observation of the level and quality of classroom participation.
**References:**
People v. DeBour
Graham v. Connor
Terry v. Ohio

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

Patrol Guide 212-11
Patrol Guide and Legal Bureau Bulletins
Characteristics of Armed Suspects, Louis Sevelli, NYPD (Ret)
NYPD LP-Policing Legally- Investigative Encounters with the Public
Dr. Paul Ekmen-Psychologist
HIDTA
US Department of Justice
FBI Report- "Violent Encounters: A Study of Felonious Assaults on Our Nation's Law
Enforcement Officers."
Force Research Science Center
Videos of Police Encounters
Arresting Communication- Essential Interaction Skills for Law Enforcement, LT. Jim Glennon
The Invisible Gorilla – Christopher Chabris and Daniel Simons

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Introduction

Remaining alert to signs and cues indicating possible possession of a gun is essential to directing your focus from the myriad distractions vying for your attention in the streets. Gathering those behavioral cues, along with other factors will allow you to justify stopping, questioning, frisking or arresting a suspect. Proficiency at absorbing pertinent behavioral indicators and the ability to appropriately articulate the reasons for a stop are mutually reinforcing skills. Properly employed, each complements the other. Both are essential to ensuring that you apprehend the armed perpetrator, taking that illegal firearm off the streets. It is important to note that none of the individual factors listed in this lesson plan are meant to constitute reasonable suspicion, or probable cause on their own, but based upon the totality of the circumstances, and put into proper context in the environment where they are encountered, they allow an officers to look for "clusters" of articulable facts that would lead a reasonable officer to believe a suspect is armed with a firearm. These vital skills go far beyond "hunches", or "gut feelings", and can help prevent the use of "boilerplate" language by an officer to describe the facts which they observed.

This lesson will explore the behavioral cues and related factors that often indicate the presence of a weapon; it will further explore how to appropriately articulate the facts you observed.

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

**Learning Outcomes:**

In this module, the participants are expected to achieve the following outcomes:

1. Identify the elements necessary to conduct a valid stop, question and possible frisk of a person who may be armed
2. Describe the differences between a stop, frisk and search
3. Explain why it is important to develop skills for identifying characteristics of armed suspects
4. Define the acronym IB PACE
5. List some factors that lead to the acronym IB PACE
6. Define the term articulable facts
7. Describe factors that may lead a police officer to reasonably believe a person may be armed

The instructor should discuss the learning outcomes

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Why should every MOS become proficient in recognizing armed suspects?

Armed suspects often display specific characteristics that are identifiable and articulable. Experience and training can make an officer adept at recognizing these characteristics. Every officer should become proficient in discerning these cues due to obvious officer as well as public safety concerns.

**Instructor Notes:**

Instructor should stress at the beginning of the lesson that none of the following indicators by themselves constitute legal grounds for a stop or a frisk. They should, however, raise an officer's awareness and may prompt the officer to observe for other cues. Utilizing some of the techniques in this lesson plan allow an officer to identify "clusters" of articulable facts. In other words, based upon all available data, and the totality of the circumstances, numerous cues can lead an MOS to reasonably believe a person may be armed.

## Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## What are some of the techniques that may help identify characteristics of armed suspects?

To become more proficient in recognizing the characteristics of an armed suspect, be observant of the following things:

☐ Be alert to a suspect's behavior before he sees you
☐ When he sees you:
o  Pay attention to a suspect's *reaction* to you looking at him
☐ Scan body areas common to concealing weapons (Visual Frisk)
☐ Look for, or use the following 'Characteristics' and related information
☐ Make a mental note of "***articulable facts***"
☐ Look for "Clusters" of facts
☐ It is all about honing *observation and communication skills*

**Instructor Notes:**
The instructor should mention that the above information will be discussed throughout the lesson plan

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Articulable Facts

Articulable facts are those facts or circumstances you observe that lead you to reasonably believe a suspect is armed, and which you can later describe with specificity to explain your belief.

☐ Observed before stop/arrest
☐ Described with specificity later

It is simple for an officer to know that he or she needs to have reasonable suspicion before conducting a forcible stop. However, it can be difficult to understand exactly when you have reasonable suspicion. Reasonable suspicion exists when the information known to the member of the service would make a prudent and cautious police officer under the circumstances believe criminal activity is at hand.  The officer must have a particularized and objective basis for suspecting the person stopped of the criminal conduct.  The officer must be able to articulate specific facts establishing justification for the stop; hunches or gut feelings are not sufficient. Because determining reasonable suspicion requires a case-by-case factual analysis, no judge, manual, or course could ever list every single scenario in which you would or would not have reasonable suspicion. The more specific facts you observe and are able to articulate later, the better. This will allow your supervisors and prosecutors and courts to better understand the basis for any stop or frisk you conduct.

You may use observation and surveillance to the extent that these acts do not interfere with the person's liberty.

**Instructor Notes:**
An officer should not overly dwell on what they are **_not_** permitted to do in situations where they believe a suspect may be armed with a firearm, stating objectives in negatives can be counterproductive. The guidelines of what is not permitted during an investigative encounter are well documented in case law such as _People v DeBour_. An officer should concentrate on the things they **_are_** permitted to do, and the tactics they are permitted to employ to protect themselves from armed individuals, and get that illegal weapon off the street.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

Sometimes there is a misconception that an officer has no recourse, or they can do *nothing* if they only have a "hunch", or "gut feeling." Nothing can be farther from the truth. If the attendant circumstances are sufficient to arouse the officers' interest, but the officer currently lacks adequate information to conduct an investigative encounter, he or she is well within his or her rights, and encouraged to, get more facts, gather more information, and continue to observe as appropriate. No level of proof is needed for an officer to simply conduct surveillance so long as the surveillance is unobtrusive and doesn't restrict the subject's freedom of movement.

**Instructor Notes:**
Instructor should emphasize that observation and surveillance are powerful tools in seeking out and detecting criminality.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## INVESTIGATIVE ENCOUNTERS

In the context of this procedure, an investigative encounter is a police interaction with a member of the public/civilian for a law enforcement or investigative purpose. The New York State Court of Appeals in the case of *People v. DeBour* established the types or levels of such encounters and the authority of the police at each level, consistent with federal constitutional standards. These encounter levels and the authority of the police at each level are outlined in the definitions that follow.

REQUEST FOR INFORMATION (LEVEL 1 ENCOUNTER) – A request for information is an encounter between a civilian and a uniformed member of the service conducted for the purpose of requesting information from the civilian. The uniformed member of the service must have an objective credible reason to approach the civilian. This type of encounter does not require any suspicion of criminal activity. The objective is to gather information and not to focus on the person as a potential suspect. A police officer may seek information related to the reason(s) the person was approached, such as the person's name, address and destination if those questions are related to the objective credible reason for the approach. The officer may not ask accusatory questions. The person may refuse to answer questions and/or walk or even run away. Refusal to answer questions and/or walking or running away does not escalate the encounter. At this level, the officer may not seek consent to search, may not use force, and may not create a situation (either by words or actions) where a reasonable person would not feel free to leave and terminate the encounter.

OBJECTIVE CREDIBLE REASON - A reason is objectively credible if it is based on more than a hunch or a whim. The reason to gather more information may relate to a public safety/service function or a law enforcement function, but need not be based on any indication of criminality.

COMMON-LAW RIGHT OF INQUIRY (LEVEL 2 ENCOUNTER) – A common-law right of inquiry is an encounter between a civilian and a uniformed member of the service conducted for the purpose of asking the civilian pointed or accusatory questions because the police officer has a "founded suspicion" that criminal activity is afoot. "Founded suspicion" is a lower level of suspicion than the "reasonable suspicion" required to conduct a "stop" or Level 3 encounter. Upon a founded suspicion of criminality, the officer may approach a person to ask accusatory questions and may seek consent to search; however, consent must be voluntarily given. During a "Request for Information/Level 1 Encounter," giving innocuous answers does not escalate the encounter, but providing false information may give rise to founded suspicion. During a Level 2 encounter, force may not be used, the person is free to refuse to answer questions, and is free to leave. Refusal to answer questions or walking away does not raise the level of suspicion. The officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away.

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

FOUNDED SUSPICION – Founded suspicion of criminal activity arises when there is some present indication of criminality based on observable conduct or reliable hearsay information.

LEVEL 3 TERRY STOP (LEVEL 3 ENCOUNTER) – A level 3 stop is any encounter between a civilian and a uniformed member of the service in which a reasonable person would not feel free to disregard the officer and walk away. A Level 3 stop may take place even without the threat or use of physical force by the officer; whether an encounter amounts to a stop will be judged by the facts and circumstances of the encounter. A stop may be conducted only when a police officer has an individualized reasonable suspicion that the person stopped has committed, is committing, or is about to commit a felony or Penal Law misdemeanor. The police officer may ask questions and detain the person while an expeditious investigation is conducted to determine if there is probable cause to arrest the person. The police officer may seek consent to search. The consent must be voluntarily given. Reasonable force may be used to stop a person. The type and amount of force used must be objectively reasonable under the circumstances.

REASONABLE SUSPICION - Reasonable suspicion exists when the information known to the member of the service would make an ordinarily prudent and cautious police officer under the circumstances believe criminal activity is at hand. The officer must have a particularized and objective basis for suspecting the person stopped of the criminal conduct. The officer must be able to articulate specific facts establishing justification for the stop; hunches or gut feelings are not sufficient.

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

12

## What are the elements necessary to conduct a valid stop, question and possible frisk?

A constitutionally valid stop, question, and possible frisk consist of the following elements:

- Reasonable suspicion that a person is committing, has committed, or is about to commit a felony or a Penal Law misdemeanor
- A stop and detention of a person
- Reasonable force may be used
- Takes place within the officer's geographical area of employment
- The officer may frisk when there is reasonable suspicion that the person is armed and dangerous
- The officer conducts questioning regarding the suspected crime
- The investigation lasts a reasonable amount of time
    - There is no set time limit for the purpose of conducting an investigation
    - The officer must act reasonably and diligently and not use the stop to wait out a suspect

**Instructor Notes:**
The suspicion must relate to ANY felony OR only those misdemeanors that are contained in the Penal Law.  While you are empowered to issue a summons or make an arrest upon probable cause that a person has committed a misdemeanor contained in the Administrative Code, reasonable suspicion that a person committed an Administrative Code misdemeanor or other misdemeanors not found in the Penal Law may not serve as the basis for an investigative Level 3 *Terry* stop.

## Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## What are the differences between a stop, frisk and search?

### Stop
Any encounter between a civilian and a UMOS in which a reasonable person would not feel free to disregard the officer and walk away.

### Frisk
A running of the hands over the outside of clothing, feeling for a weapon
☐ A frisk is done only as a protective measure – it is not a search for contraband.
☐ An officer may conduct a frisk when they reasonably suspect a person is armed and dangerous
☐ When an officer conducts a stop based on reasonable suspicion that the suspect has committed a violent crime (such as rape, robbery, or assault with a deadly weapon), the law presumes reasonable suspicion that the person is armed and dangerous, and therefore the officer may conduct a frisk to determine if the subject is armed
☐ If a portable container is within the suspect's reach and it is believed a dangerous item is inside, an officer may squeeze the container if it's soft or open it if it's hard and unlocked to determine is the object is dangerous

### Search Arising From Frisk
To place hands inside a pocket or other interior parts of clothing to remove an object the officer felt during a frisk and reasonably suspects is a weapon or dangerous instrument. It is not a search for contraband.

**Instructor Notes:**
Instructor should reinforce that a frisk, or a search arising from a frisk is for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of the sort not ordinarily carried in public places by law abiding citizens.  It is NOT a search for contraband.

## Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## What are the elements that contribute to the "IB PACE" strategy?
**1. INTELLIGENCE**
**2. BEHAVIOR**
**3. PHYSICS**
**4. APPEARANCE**
**5. CLOTHING**
**6. ENVIRONMENT**

The elements in the **IB PACE** strategy are a powerful and useful evaluative instrument that an officer can employ at any stage in an encounter, from mere observation up to probable cause to dispel or confirm his or her suspicions.  Many of the characteristics in **IB PACE** are obvious, while others are more subtle.  No detail should be ignored, every situation is different. Conspicuous indicators may not be present in all scenarios.  Where certain characteristics can have more "weight" that others, an officer should make a mental note of *all* relevant observable and articulable facts experienced during an investigative encounter and must be weighed and considered in light of the context in which they are observed.

**Instructor Notes:**
Stress that these are merely factors to keep in mind and that any individual factor by itself may not necessarily support reasonable suspicion. These factors should raise an officer's awareness, and must be weighed and considered in light of the context in which they are observed.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## INTELLIGENCE:

Information that a person(s) is carrying, may be carrying, will be carrying, or is known to carry a gun. Furthermore, information compiled through recent crime reports, Crime Information Center maps, confidential informants, as well as Department Smart Phones and Tablets, identifying facts and circumstances where illegal guns or gun violence may be prevalent.

☐ Recent "Gun Runs", or crimes committed with firearms
☐ Strong Resemblance to the Suspect of a Crime
☐ Information gained by ShotSpotter
☐ Credible information received regarding a shooting that is going to occur
☐ PDU, FIO
☐ Intelligence from Gang division indicating conflict between rival gangs
☐ Reliable hearsay information, for example, that a person is carrying a weapon or known to carry a weapon
☐ Information from any of the following sources that indicates a person possesses a weapon:

- An Identified Individual
- Confidential Informant
- Victim or witness
- Social Media
-  A fellow MOS


**Instructor Notes:**


# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

☐ Statements made by victim or witness
☐ Statements made by the suspect;
    ☐ I have a gun
    ☐ I am going to shoot/kill you
    ☐ I am going to shoot/kill someone
    ☐ I am going to shoot/kill myself
☐ Graffiti depicting;
    ☐ Murder statements
    ☐ Disrespect
    ☐ Retaliation
    ☐ Caricature of someone holding gun
☐ Crosshairs in graffiti
☐ Cross-outs or upside down gang symbols

**Reasonable Suspicion of a Violent Crime**: If an officer has reasonable suspicion that the subject has committed, is committing, or is about to commit a violent crime, such as a murder, assault, kidnapping, rape, robbery, or burglary, the officer may conduct a frisk to determine if the person is armed with a weapon. An officer need not articulate independent facts of a weapon; only the facts supporting a stop based on reasonable suspicion of a violent crime.

**Instructor Notes:**
Keep in mind that these facts and circumstances, on their own, do not necessarily constitute reasonable suspicion supporting a stop or a frisk.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## BEHAVIOR

Actions taken by a person consistent with an armed suspect.
Where many of the actions or behavior of an armed suspect may be deliberate or conscious behavior, there are also a number of important characteristics that may be displayed unconsciously and non-verbally. For the sake of the **IB PACE** strategy, *communication* is included within BEHAVIOR.

SUSPICIOUS OR EVASIVE BEHAVIOR; Suspicious or evasive behavior, including "tell-tale" signs of a particular crime, can contribute to facts observed by the officer that leads to reasonable suspicion.  Generally, evasive behavior by itself will not lead an officer to reasonable suspicion.  It must be coupled with more specific information that links the behavior to a specific type of crime, such as casing a victim or location, acting as a lookout, or actions indicative of concealing possession of a weapon.  The officer must be able to articulate something specific about the suspicious nature of the movement.  The officer's training, experience, and or expertise in identifying that type or crime or peculiarities of a specific area are often taken into account in these situations.

Anthropologists began taking serious interest in nonverbal communication through gestures, postures, and facial expressions in the 1940's. it is believed, however that the publication of Ray Birdwhistells's 1952 book *Introduction to Kinesics* marked the beginning of formal research into what we know familiarly as "body language. Over 65 years later, the results of *kinesics* are deeply entrenched in our culture, giving us a whole new language with which to interpret everyday encounters and interaction.

Research has shown that as much as 93% of communication happens **non-verbally**, a suspect is *always* communicating with you, even if they are not speaking. The most important skills a police officer needs to master are those skills associated with observation and the art and science of communication.

**Instructor Notes:**
Instructor should state that as it pertains to the behavioral cues listed, many are obvious, while others are more subtle. Knowing what to look for can allow an officer to articulate that his or her suspicion was raised beyond merely a "hunch" or "gut feeling".

## Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

THEORY OF BEHAVIORAL ANALYSIS - A person engaged in deception or an act in which the person fears being discovered may **suffer mental stress, fear, or anxiety** that is manifested through involuntary physical and physiological reactions that serve to dissipate the stress, fear, or anxiety. These reactions on their own do not necessarily indicate that a person is armed with a firearm. In the case of persons with disabilities, these reactions may not be at all indicative of fears of being discovered. Giving innocuous answers on their own does not raise the level of the encounter, whereas providing false information may give rise to Founded Suspicion.

THE 50/50 CHARACTERISTIC - An armed suspect may be so self-conscious about being armed in the presence of a police officer that he will go to great lengths to act or speak relaxed while his body language exhibits the opposite. For instance, a person may be verbally conveying compliance, while physically reading for a fight. This 50/50 indicator is often referred to as incongruence (inconsistency) and is used to identify deceptive people. When there is a conflict between the words and the body, **believe the body**!

**Instructor Notes:** Remember, people may be deceitful for a wide range of reasons, and it may have nothing to do with whether they are carrying a firearm. This is just one factor that should increase your awareness.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

**What is important to know about a person's behavior when trying to evaluate if he or she is armed?**
**Actions**
☐ Deliberate acts
☐ Actions taken to help conceal the gun
☐ Actions taken to avoid apprehension
☐ Actions taken to avoid identification
☐ Actions taken to determine if you are looking at him
☐ Actions taken to 'ditch' the gun

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Touching/Adjustment:

Armed suspects often touch the weapon, through their clothing, for several reasons. The touching of the weapon can be *adjustment*, *nervous assurance*, or *aggressive* in nature. Touching is usually done by an armed suspect to ensure that the weapon is in the right place or not protruding, or "printing" from the clothing.

It is also done to adjust the weapon into a more comfortable or secure position. As firearms carried by suspects are frequently not carried with a holster, a firearm can shift through normal movement, such as walking. This may cause pain or discomfort, or may be necessary to prevent loss of the weapon. Furthermore, it is an unnatural feeling to have a weapon, such as a firearm, in the waistband, pants pocket, jacket pocket, sock, ankle, groin, etc …

Criminals who carry illegal concealed firearms often are self-conscious and give several indicators that they are armed. Even if they are careful to discreetly conceal a firearm, they are usually nervous and unable to control the touching of the weapon. This nervous touching often manifests itself by touching the weapon with the hand, wrist, heel of hand, forearm, and if the firearm is higher on the waist, by the elbow. If the firearm is under the shoulder (like in a shoulder holster) it will be touched with the bicep.

## Draping

When an armed suspect is attempting to conceal a weapon from view, especially the view from a law enforcement officer, security, or others, he may pull on the shirt or jacket and carefully drape it over the area where the weapon is being concealed while billowing the shirt to ensure that it is not caught on the weapon or protruding or "printing" through the clothing.

Draping is often evident in the body language of off duty officers during non-law enforcement social settings to insure that weapons are not visible to others. I.E.: Getting out of a vehicle, seated at a restaurant. It is easy for an officer to articulate how an armed suspect was exhibiting the same behavior they do (sometimes subconsciously).

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Statements made indicating a suspect is armed

☐ I have a gun
☐ I am going to shoot/kill you
☐ I am going to shoot/kill someone
☐ I am going to shoot/kill myself

## Reactions / Interactions

☐ Reaction to observing you (or other LEO/Security)
☐ Reactions to you (or other LEO/Security) observing him
☐ Looking over his shoulder
☐ Avoids contact
☐ Turning left or right
☐ Changes direction
☐ Crosses street
☐ Purposeful ignorance

**Instructor Notes:**
Again, it must be noted if a civilian confronted during a Level 1 or 2 Encounter walks away without answering, the officer may not pursue without independent reasonable suspicion that a felony or Penal Law misdemeanor has been, is being, or is about to be committed. In other words, the refusal to answer and walking away cannot establish the reasonable suspicion necessary to conduct a forcible Level 3 stop. However, flight, *combined with other specific circumstances* indicating that the suspect may be engaged in criminal activity, could provide the predicate necessary to justify pursuit and a Level 3 stop.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## "Arm hugging" or pressing inside of bicep to chest:

This Arm Hugging to body is different than touching.
In this indicator, the suspect is steadily using his arm (from his elbow to upper bicep) to press against a weapon in order to hold it in place usually in an inside jacket pocket, a large, makeshift, or flimsy shoulder holster, or just under his arm.
This also occurs when an armed suspect tries to place a firearm in his armpit of his jacket which is uncomfortable and insecure.
Criminals have been known to slice a hole in the seam of their jacket armpit to create an improvised holster. This type of weapon concealment, may lead to body language that indicates a concealed weapon.
This type of "protective body movement" may also indicate an object on one side of the suspects' body they do not want discovered. This will cause an asymmetrical appearance, causing one shoulder to dip, one arm to be lower than the other, and sometimes the hand may curl unnaturally. The weapon or object will be on the side of the abnormality. Look for symmetry!

## "Jackknife" Arm

A "Jackknife" Arm is an important imminent threat or attack indicator of a suspect drawing a firearm from their waistband or pocket. The arm bends at the elbow, similar to closing a jackknife, or folding pocketknife. This quick movement is usually very prominent, and extremely dangerous, as the suspect may be in the process of drawing the weapon.
When taken together with other facts and identifiers / characteristics during the encounter, it may lead an officer to believe the subject is armed.

**Instructor Notes:** These actions alone might not amount to reasonable suspicion. It is important when you stop someone to be able to articulate all of the factors that led you to make your decision.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Blading

When a suspect blades their body to a Police Officer, they may be giving that officer important "threat indicators" to their behavior. They may be blading their body to fight, to run from the officer, or to shield one side of their body from view.

Armed suspects will rotate their upper body to the right or left, depending upon the side that a police officer is facing, in order to decrease the view of a concealed weapon.

This is known as 'blading' and is done in various degrees. Some suspects blade their bodies slightly while others will do it excessively.

If the officer is on right side of the suspect, he will blade his upper body toward the left to make the observation of a bulge or protrusion difficult. Some armed suspects will blade their bodies more extensively to totally remove the front of the body from view.

This will give the suspect an opportunity to adjust the weapon or draw the weapon. This more extensive blading is often followed by the suspect changing direction to keep from making eye contact or walk away from an officer.

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Grabbing bottom of shirt

A suspect may hold the bottom edge of his shirt or jacket with his weak hand in order to expose the firearm, in order to draw or display it.

## Hands in pocket:

During an investigative encounter, when a suspect has his hands in his pockets, it may indicate a few things such as insecurity, concealment, control of a valuable object, or fear. At the same time, in cold weather, a person's hands may be in his or her pockets simply because they are cold.  Hands in pockets **upon contact** by a law enforcement officer can be a dangerous situation and may tell you something.

## Purposefully concealing hand(s) from view

When a suspect apparently *purposely* conceals his or her hands from an officer's view upon that officer making an official contact, and evaluated along with other behavioral indicators (such as blading the body) the officer should consider it a potential attempt by the suspect to reach for, or conceal, a weapon, and the officers' safety may be at risk.

Based upon the totality of the circumstances, if an officer perceives that their safety is at risk, and requests an individual to remove his or her hands from their pocket(s), that officer should triangulate their position with their partner, using an "L" or "V" formation, with an appropriate reactionary gap, or seek cover and use clear, concise, non-conflicting commands appropriate for the situation and level of suspicion. (See Protective Measures below)

*Protective measures: Even if an officer does not have reasonable suspicion that a person is armed and dangerous, there are tactics for officer safety that an officer may use short of a frisk when the officer perceives her/his safety is at risk. These include ordering the individual to take her/his hands out of her/his pockets, put down or step away from an otherwise lawful object that could be used as a weapon, grabbing the person's hands if the circumstances suggest the person may be grabbing a weapon, or forcibly removing the person's hands from her/his pockets if the individual refuses to remove them from her/his pockets. Any lawfully possessed article that is removed/safeguarded by a member of the service during an investigative encounter should be returned to the individual at the conclusion of the encounter (unless probable cause is developed and the individual is arrested).*

**Instructor Notes:** Context matters. A person who has his hands in his pockets in the winter may be simply be cold. Consider all possible indicators that a suspect is armed and look at the circumstances in their totality.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Lifting the shirt for a free pat down:

This could be a "*get over on the cops*" tactic..

Some armed suspects approached by officers or believing they are going to be searched will cooperate by raising their shirts and spin around to show the officers that they are not carrying a weapon. Many times, in fact, the weapon is well hidden in another area of their person, such as a sock or groin.

An armed suspect may roll the weapon up in his shirt while lifting the shirt high onto the chest, pulling down on the waistband in an effort to misdirect the officers' attention. (sleight-of-hand) May also use heel of hand to shove the weapon in waistband down pants at the moment they are grabbing the shirt to lift.

A suspect may only rotate his or her body clockwise 180° or less, keeping the area containing the firearm bladed away from the officer's view, then rotating back counterclockwise, never showing 360°, keeping the area with the firearm concealed from view.

## Holding a pocket, or waist area, or keeping a hand in the pocket, or waist area:

Armed suspects consider a firearm, or other weapon, a valuable item that they do not want to lose.

They also don't want the weapon to become visible or drop on the floor, especially when a police officer is nearby.

Even though holsters are readily available on the internet, most armed suspects do not want to wear a holster for fear that it will cause the firearm to bulge out of their clothing.

## Distancing

An alert police officer will always pay careful attention to the actions of suspects during vehicle stops and investigative encounters.

When a suspect moves away from his vehicle, or another location (tree, fence, doorway, curb, etc.), usually quickly, upon the observation of a police officer, he may be telegraphing to that officer that he just dropped a weapon, handed off drugs, or is distancing himself, or creating distance, from a weapon or other contraband.

This is common practice among drug dealers who are carrying drugs or guns on a street corner.

**Instructor Notes:**

Instructor should demonstrate "lifting shirt" techniques.

## Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Discards a Bag or Purse:

Suspects will discard firearms, drugs or evidence of a crime when they think they are going to be stopped by the police. Whenever you see this type of behavior, always find out what the person is getting rid of.

## Walks toward a car, trees, fence, or garbage pail when he observes police:

Armed suspects often walk towards a car, trees, a fence, a garbage pail or some other item when they observe the police. This is done to facilitate the 'ditching' of a gun because the suspect doesn't want to get caught with the gun on his person

## Looking away toward another person or location

This type of characteristic is common when there are two or more individuals suspected of criminal activity, but the officers confronting them may not be aware of the fact that there are more people involved.

Often during an investigative encounter of a suspicious person, the person stopped unconsciously looks toward another person not being interviewed. This characteristic may also be observed by the suspect looking at another location, sometimes a vehicle, when he or she should be concentrating on your questions and looking at you.

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Covering body with part of a vehicle or other structure:
The same way armed suspects try to conceal a weapon under their clothing, they will tend to hide their waist area behind a vehicle or other structure to increase the concealment.

## Blocking:
Purposely, but often discreetly, blocking a location or object with their body.

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## PHYSICS

The physical presence of a firearm on a suspect, how the weight and size of the gun affects a suspect's clothing.

## How can physics help identify an armed person?

☐ Causes a bulge, protrusion, or outline, or weighs down
☐ Slows or hinders movement, etc.
☐ When one side pushes out the other side pulls in
☐ Seams and pockets misalign
☐ Shirts hang off shoulders unnaturally.
☐ Vertical/Horizontal Stripes appear crooked

**Instructor Notes:**
As with other elements in the IB PACE strategy, **no single physical characteristic on its own necessarily indicates reasonable suspicion**. Some of the physical characteristics listed could be indicative of a physical disability or injury and must be observed in context.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## The Bulge

One of the most common areas armed suspects will carry their weapons is in the waist area. In FBI interviews, offenders said they most often hid guns on their person in the front waistband, with the groin area and the small of the back noted as other prominent areas to hide a firearm. The location of the bulge is noteworthy because unlike a pocket bulge which could be caused by any number of innocuous objects, a waistband bulge is often a sign of a weapon.

This is the most common way that armed suspects are identified by law enforcement. The bulge, ***coupled with behavior indicating self-consciousness of the bulge***, often identifies an armed suspect to observant police officers.

This bulge is often under the shirt, jacket, or other garment. It may also, depending upon whether the suspect's shirt is tucked into his pants or not, cause the waist to bulge.

As we have discussed, the presence of a weapon is often revealed by the person's physical behavior in attempting to conceal the bulge it creates, or by unconsciously touching it.

## Protrusion of Weapon:

The protrusion could be showing through a pocket, the groin area of a suspect's pants, or even a shirt clinging to the weapon causing the shape of the weapon to be identified.

A protrusion is different than a bulge since a protrusion shows an outline or shape of the weapon, sometimes as a distinct "L" shape, while the bulge just causes a non-discernable lump in the clothing.

Protrusion identification can also indicate a weapon in a soft bag, rag, towel, or similar item that can conceal a weapon.

**Instructor Notes:** The outline of a commonly carried object such as a wallet or cell phone does not justify a stop or frisk, nor does feeling such an object during a frisk justify a search.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Stiff Pointed Pocket

Similar to the weighing down of an item used to contain a firearm, a weapon can also cause a pants pocket or jacket pocket to point downward, make a stiff shape, and point slightly outward. Since a firearm has a strong solid shape with a considerable weight, it will pull a pocket toward the ground while changing the shape of the pocket to appear stiff not soft.

This indicator is different than a 'protrusion' because it may not protrude through the pocket or clothing.

When an armed suspect is carrying a firearm in his jacket pocket while walking, the weighted pocket will swing slower than the other pocket.

When a suspect moves his body from side to side you will notice that the side with the firearm in the pocket will also swing farther to the outside of the body and return back toward the body more powerfully to strike the body

**Instructor Notes:** It is worth pointing out that there are many items one could carry in a pocket that pull a pocket downwards; this has less probative value than a protrusion.


# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Weighing Down of Clothing, Jacket/Pocket/Waist/Sleeve

Weapons, especially firearms, are solid heavy objects. Often weighing 2 pounds or more, a firearm can weigh down any object of clothing (pants pocket, waistband, jacket pocket, sleeve, sock) or item (bag, sack, knapsack, fanny pack) that can be used to contain the firearm.
A common indicator of the 'weighing down' of clothing is the way one side hangs lower than the other.
A usual part of a suspect's clothing used to conceal a firearm is the inside jacket pocket and it is evident by the way the breast area of the jacket pulls or sags on that side, often with an observable bulge

## "Heavy Hoodie"

Suspect is wearing a hoodie and the hoodie is unnaturally 'pulling' downward and flat toward the body from the weight of a gun
The hoodie will be hindered from movement
Hoodies should have a relaxed look rather than a stiff look

## Lopsided, Sagging Pants (waist):

When an officer observes a waistband that sags on one side, this could be an indicator that a heavy object, which could be a firearm or other weapon, is causing the sagging.
Other ways of detecting a lopsided, sagging waistband, due to a concealed firearm, is noticing a pocket on one side is lower than the other or one pant leg bottom is lower than the other (closer to the floor). Back hanging lower than front.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## APPEARANCE

Overall or specific look of a person that may indicate he or she is armed with a gun

**How can appearance help identify an armed person?**

A. Asymmetrical appearance (lack of symmetry)

B. Individual(s) fall off Baseline

C. Body movements made pursuant to stress

D. Body asymmetrical, rigid, overcompensates (limp, one arm less movement)

**Instructor Notes:** Be mindful that some of the characteristics in this section may simply indicate that a person has a physical disability. As always, look at the totality of the circumstances.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## "Strange" Bending / Hunchback Stride

"Strange" Body bending is the bending of a suspect's body toward the weapon in an attempt to decrease the exposure of a gun bulge, avoid pain, or to keep the weapon secured.
When a gun is in the front waist area, an armed suspect will bend forward slightly to minimize the gun's visibility, causing a "Hunchback" appearance or stride.
The suspect will stand upright and bend slightly back to cover a gun in the small of the back.
When a gun is on either side (left or right) of the waist, an armed suspect will bend toward the side of the gun. Often, when an armed suspect bends over at the waist, he will catch himself due to the pain caused by the gun, or fear of dislodging the gun from the waist. The leg, usually on the side of the gun will move back.

**Instructor Notes:**
Be mindful that some of the characteristics in this section may simply indicate that a person has a physical disability. As always, look at the totality of the circumstances. Instructor should demonstrate "Strange" Bending / Hunchback Stride

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Limping

This characteristic is described as a different type of limping than when someone has an injured foot, leg, or knee.

In this strange limping, caused by a weapon in the shoe, down the leg, or a large weapon shoved into the groin, the armed suspect will walk in such a way as to attempt to walk normal but the weapon (pain or uncomfortable feeling from the weapon) is changing his or her gait (stride). This may also be seen as "stiff legging" if the suspect is attempting to conceal a long gun.

This is an uncontrollable limp but will not cause the suspect to lean to one side because he is trying to remain undiscovered.

## Lightfoot Characteristic

Walking lightly on one foot because a gun may be in the shoe or sock of the suspect and the suspect does not want to jar it loose.

The Lightfoot characteristic is done intentionally, in contrast to the Limp characteristic

## Asymmetrical or unnatural posture, stance or walk

When someone feels comfortable and is acting natural, their body posture and movements are symmetrical.

When that person is concealing a firearm in his waist, pocket, ankle, or other area, he will be asymmetrical.

It may be evident in one or many movements that seem unnatural or asymmetrical for a normal and relaxed person.

## Unnatural Arm Swing or Movements

When an armed suspect is concealing a gun in the waist area, pants pocket, jacket pocket, or under the arm, his arm will swing less or lack normal movement than the other side of the body. This is done subconsciously to conceal the presence of a gun and to limit the chance of the gun becoming loose or falling.

**Instructor Notes:**
Instructor should demonstrate above characteristics.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Unnatural Running Movement or Arms not Swinging

A suspect running without his arms swinging can indicate he is holding a weapon from jarring loose

Running with the hands held close in front of body, or bending over, grabbing waistband area, may indicate firearm in waistband.

## Abnormal Stride or Gait:

Armed suspects hiding a gun in places like an ankle, or pocket, or groin will limit their stride on the side of the concealed weapon.

This will be identifiable by a shorter stride by the leg on the side where the weapon is concealed.

This is done in an attempt to avoid the dislodging of the weapon or minimize the bulging or protrusion of the weapon.

**Instructor Notes:**

Instructor should demonstrate above characteristics.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Stiff body Posture/Lack of Movement

Stiff body posture and lack of movement could be an indicative of different things. One reason is that the suspect is trying not to move in order to avoid the recognition of a firearm or other weapon.

Like the proverbial deer caught in the headlights, people also freeze in response to fear. Research has shown that the heart rate slows, muscles stiffen, and movement ceases when a person perceives a threat. Researchers say freezing or standing still when a threat is detected is a natural defensive reaction. This unconscious automatic behavior is done in an attempt to remain unnoticed by a potential threat.

This pattern resembles the 'freezing' seen in many animal species when confronted with threatening stimuli, which is controlled by nerve responses designed to promote defensive survival.

## Establishing Baselines of Appearance and Behavior

Baselines are time and location specific. Within the same environment the baselines can change dramatically based on specific location of the encounter.

Using a parade as an example, picture a sunny summer day, people are smiling, cheering, waving flags, and lining the streets to get a good view.  People are dressed appropriately for the weather.  The overall demeanor of the crowd is happy and celebratory.  Standing against a building is a man, he is dressed in a heavy, long overcoat, his facial expression is seems odd, his head and eyes are darting around the crowd.  His body language is stiff.  He is protectively straddling a large duffle bag between his legs.  His overall demeanor appears extremely nervous.  How does his appearance and behavior differ from the baseline of the parade goers?  If an individual "falls off the baseline" of the norm for a location, it does not necessarily indicate criminality, but may warrant further observation.

**Instructor Notes:**

Because NYC is so diverse, what might be considered unusual in a different city may not be uncommon in New York.  If an individual's actions or behavior vary significantly from the norm, it must be weighed carefully against the environment in which it is encountered.

Use "Men in Black" shooting range training, as example of baseline.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

**Palming:**

Concealing the palm of the hand for the purpose of concealing a weapon, such as a small caliber handgun, like a derringer, a knife, or razorblade.

Palming can be done in several different manners. Armed suspects who 'palm' a weapon will have a few distinct characteristics displayed. In order to hold the weapon, the suspect must have a finger, or fingers, usually the thumb bent toward the palm of the hand to hold the weapon from dropping. Sometimes, the fingers are bent inward to hold the firearm while the thumb is outward to avoid showing the forming of a fist which is an obvious indicator of holding an object. Another variation of palming or another way that suspects will palm a weapon to conceal it is to hide the hand palming the gun into a shirt or jacket sleeve.

An officer will notice that one of the suspect's sleeves is considerably lower than the other or completely covering the hand.

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## CLOTHING

Specific articles, or combination of articles, of clothing that can facilitate the concealing of a gun, or the drawing of a gun.

## How can clothing help identify an armed person?

☐ Clothing or items that can facilitate or indicate gun possession, gun concealment, or to ease in the drawing or presenting of a gun.
☐ Layers (multiple shirts, two pairs of pants)
☐ Bullet-proof vest, holster, fanny pack,
☐ Clothing that doesn't fit the weather
☐ Hoodie up in warm weather (conceal the face, eyes)
☐ Heavy street clothes worn on a basketball court

**Instructor Notes:**
Fashion trends are constantly changing, and do not by themselves constitute Reasonable Suspicion, or Probable Cause, nor would they normally lead to an Investigative Encounter. However, certain articulable facts regarding an individual's clothing could lead an officer to conduct further observation to gather more information. As an officer's knowledge increases, so does the level of the encounter, therefore, so does the officer's authority.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Clothing too warm/heavy for weather

☐ Why would someone wear a heavy coat or clothing too warm for the setting or climate?

☐ Of course there may be a logical explanation, but under certain circumstances, this attire may be used in an attempt to conceal a firearm.

☐ It is common for armed suspects to wear a jacket in warm or hot weather to assist in the concealment of a firearm

## Layers of Clothing:

☐ Two or three shirts when it is warm outside
☐ Two pairs of pants
☐ Layered clothing inappropriate for the weather is a common characteristic of armed suspects
☐ Layered clothing offers a 'smooth' cover for a concealed firearm

**Instructor Notes:** It is also the case that homeless individuals sometimes wear multiple layers of clothing regardless of the weather.  Again, context matters.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Holding a hat or Jacket:

Armed suspects may conceal a firearm in a hat or jacket

Often, this concealment technique is visible by the manner in which the suspect carries or holds the hat or jacket.

Consider that a hat, jacket, or other item of clothing when squeezed in the hand, is not very thick.

The hand will tend to wrap around a larger portion of the item than normal because it is holding a firearm rather than just a thin hat or jacket. In other words, if his fingers are a few inches away from each other rather than only the thickness of the item, he is probably holding something concealed inside the item.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Wearing Body Armor:

People wear body armor when they expect to be shot at or engage in behavior that can expose them to getting shot.

## Improvised Holsters

Improvised holsters can include anything capable of holding or concealing a weapon, such as socks, bra, underwear, strings, and a safety pin.

Other devices used as holsters may include:

- ☐ Fanny pack
- ☐ Cell phone case
- ☐ Back brace
- ☐ Compression socks
- ☐ Arm slings
- ☐ Arm or leg cast
- ☐ Ace bandage
- ☐ Duct tape

## Instructor Notes:

The mere possession or wearing of the items listed above, without more, would not support reasonable suspicion justifying a stop or frisk.  However if an officer has an independent legal cause to conduct a frisk, special attention should be paid to these areas so as not to overlook a concealed weapon.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Firearms paraphernalia discovered at scene or in vehicle:

If a suspect is in possession of one or more of these items, he may be in possession of a gun or one is nearby

☐ Holster (commercial or home-made)
☐ Coat hanger holster
☐ Loose rounds or shells
☐ Ammunition boxes
☐ Firearm magazine / "Clip"
☐ Pistol or long gun case

The suspect may discard the paraphernalia, but 'stash' the gun nearby to retrieve it later, look for gun nearby;

☐ Under vehicles
☐ Inside wheel wells
☐ Inside fences
☐ In trashcans or dumpsters
☐ Near curbs

## Improvised carrying

Of course the most common place to conceal a firearm is to carry it in a waistband, followed by pants pockets, in the groin area, and in the socks, but keep in mind that most people like to carry a weapon for protection and the purpose of using it at a moment's notice.

For this reason, another place that is used to carry a firearm or other weapon is in the **sleeve above the wrist**. It is often missed during a search, it is easily accessible, and like the pants pocket and jacket pocket it can be fired through its holder (the sleeve).

The characteristics displayed are: one sleeve hangs lower, sleeve pulls to one side off the neck; the suspect may hold the bottom of his sleeve at the wrist to keep the gun from falling out.

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

**ENVIRONMENT**
Location-specific make-up in relation to the suspect that can indicate the suspect may be armed with a gun.
Environment is closely linked to the **INTELLIGENCE** element of **IB PACE**. In many instances, *intelligence* is what brings us to an *environment*.

**How can environment help identify an armed person?**
☐ Recent shootings in area
☐ ShotSpotter
☐ Suspect is on his Gang Turf
☐ Suspect is in Rival Gang territory
☐ Location where there has been a high volume of calls for service for violent crime and/or drug activity

**Instructor Notes:**
It is important to note that presence in an area with high rates of crime, standing alone, is an insufficient basis for a stop and frisk, but it may contribute to reasonable suspicion. Also, a "high crime area" cannot be defined too broadly, such as an entire precinct or borough.

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Gun Powder (burnt) Scent

☐ Usually detected at the scene of a shooting where the gunman is still on scene

☐ Also detected in a vehicle after a drive by shooting

☐ Gunpowder scent is experienced by most MOS at the range during firearms qualification

Most people can articulate the smell of fireworks

**Instructor Notes:**

# Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

## Summary

1. Identify the elements necessary to conduct a valid stop, question and possible frisk of a person who may be armed
2. Describe the differences between a stop, frisk and search
3. Explain why it is important to develop skills for identifying characteristics of armed suspects
4. Define the acronym IB PACE
5. List some factors that lead to the acronym IB PACE
6. Define the term articulable facts
7. Describe factors that may lead a police officer to reasonably believe a person may be armed

**Instructor Notes:**

## Firearms & Tactics Section FTS – (117) Recognizing the Characteristics of Armed Suspects

# Attachment 2

# Recognizing
# the Characteristics of Armed
# Suspects



## Detective Patrick J. DeCanio

## Firearms and Tactics Section

1

# *Why should every MOS become proficient in recognizing armed suspects?*

Armed suspects often display specific characteristics that are identifiable and articulable. Experience and training can make an officer adept at recognizing these characteristics.  Every officer should become proficient in discerning these cues due to obvious officer as well as public safety concerns.

2

# Recognizing the Characteristics of Armed Suspects

3

# The Characteristics of Armed Suspects

To become more proficient in recognizing the characteristics of an armed suspect, be observant of the following things:

- Be alert to a suspect's behavior *before* he sees you
- …*when* he sees you
- Pay attention to a suspect's reaction to you looking at him

- Scan body areas common to concealing weapons (Visual Frisk)

- Look for, or use the following 'Characteristics' and related information

- Make a mental note of *"articulable facts"*

4

# The Characteristics of Armed Suspects

*Its all about honing observation and communication skills*

# Articulable Facts

Articulable facts are those facts or circumstances you observe that lead you to reasonably believe a suspect is armed, and which you can later describe with specificity to explain your belief.

- Observed before stop/arrest
- Described with specificity later

6

# Elements necessary to conduct a valid stop, question and possible frisk

- Reasonable suspicion that a person is committing, has committed, or is about to commit a felony or a Penal Law misdemeanor
- A stop and detention of a person
- Reasonable force may be used
- The officer may frisk when there is reasonable suspicion that the person is armed and dangerous
- The officer conducts questioning regarding the suspected crime
- The investigation lasts a reasonable amount of time
  - There is no set time limit for the purpose of conducting an investigation
  - The officer must act reasonably and diligently and not use the stop to wait out a suspect

7

# I.B. PACE

- **INTELLIGENCE**
- **BEHAVIOR**
- **PHYSICS**
- **APPEARANCE**
- **CLOTHING**
- **ENVIRONMENT**

# INTELLIGENCE

Information that a person(s) is carrying, may be carrying, will be carrying, or is known to carry a gun.  Furthermore, information compiled through recent crime reports, Crime Information Center maps, confidential informants, as well as Department Smart Phones and Tablets, identifying facts and circumstances where illegal guns or gun violence may be prevalent.

9

# INTELLIGENCE

- Recent "Gun Runs," or crimes committed with firearms

- Strong Resemblance to the Suspect of a Crime

- Information gained by ShotSpotter

- Credible information received regarding a shooting going to occur (PDU, FIO)

- Intelligence from Gang division indicating conflict between rival gangs

10

# INTELLIGENCE

- Information from any of the following sources indicating a person possesses a weapon
  - An Identified Individual
  - Confidential Informant
  - Victim or witness
  - Social Media
  - A fellow MOS

11

# INTELLIGENCE

- Statements made by victim or witness
- Statements made by the suspect:
  - I have a gun
  - I am going to shoot/kill you
  - I am going to shoot/kill someone
  - I am going to shoot/kill myself

12

# GRAFFITI

- Graffiti depicting:
  - Murder statements
  - Disrespect
  - Retaliation
  - Caricature of someone holding gun
- Crosshairs in graffiti
- Cross-outs or upside down gang symbols

13

# INTELLIGENCE

Reasonable Suspicion of a Violent Crime:

If an officer has reasonable suspicion that the subject has committed, is committing, or is about to commit a violent crime, such as a murder, assault, kidnapping, rape, robbery, or burglary, the officer may conduct a frisk to determine if the person is armed with a weapon.  An officer need not articulate independent facts of a weapon; only the facts regarding a violent crime.

14

# BEHAVIOR

Actions taken by a person
consistent with an armed suspect

15

# OBSERVATION

Theory of behavioral analysis:

●A person engaged in deception or in an act in which the person fears being discovered may **suffer mental stress, fear, or anxiety** that is manifested through involuntary physical and physiological reactions that serve to dissipate the stress, fear, or anxiety.  These reactions on their own do not necessarily indicate that a person is armed with a firearm. In the case of persons with disabilities, the reactions may not be at all indicative of fears of being discovered.  Giving innocuous answers on their own does not raise the level of the encounter, whereas providing false information may give rise to Founded Suspicion.

16

# THE 50-50 CHARACTERISTIC

An armed suspect may be so self-conscious about being armed in the presence of a police officer that he will go to great lengths to act or speak relaxed while his body language exhibits the opposite. For instance, a person may be verbally conveying compliance, while physically readying for a fight. This 50/50 indicator is often referred to as incongruence (inconsistency) and is a used to identify deceptive people.  When there is a conflict between the words and the body, **believe the body**!

17

# BEHAVIOR

**What is important to know about a person's behavior when trying to evaluate if he or she is armed?**

**Actions**
- **Deliberate acts**
- Actions taken to help conceal the gun
- Actions taken to avoid apprehension
- Actions taken to avoid identification
- Actions taken to determine if you are looking at him
- Actions taken to 'ditch' the gun

18

# Touching/Adjustment

- Touching is usually done by an armed suspect to ensure that the weapon is in the right place or not protruding from the clothing.
- It is also done to adjust the weapon into a more comfortable or secure position.
- Armed suspects often touch the weapon, through their clothing, for several reasons.
- Suspects touch the weapon because it is an unnatural feeling to have a weapon, such as a firearm, in the waistband, pants pocket, jacket pocket, sock, ankle, groin, etc…
- Criminals who carry illegal concealed firearms often are self-conscious and give several indicators that they are armed.
- Even if they are careful to discreetly conceal a firearm, they are usually nervous and unable to control the touching of the weapon.  This nervous touching often manifests itself by touching the weapon with the hand, wrist, heel of hand, forearm, and if the firearm is higher on the waist, by the elbow.  If the firearm is under the shoulder (like in a shoulder holster) it will be touched with the bicep.

19

# Draping

- When an armed suspect is attempting to conceal a weapon from view, especially the view from a law enforcement officer, security, or others, he may pull on the shirt or jacket and carefully drape it over the area where the weapon is being concealed while billowing the shirt to ensure that it is not caught on the weapon or protruding through the clothing.

- Draping is often evident in the body language of off duty officers during non-law enforcement social settings to insure that weapons are not visible to others.

20

# Statements

- I have a gun
- I am going to shoot/kill you
- I am going to shoot/kill someone
- I am going to shoot/kill myself

21

# Reactions / Interactions

- Reaction to observing you (or other LEO/Security)
- Reactions to you (or other LEO/Security) observing him
- Looking over his shoulder
- Avoids contact
  - Turning left or right
  - Changes direction
  - Crosses street
- Purposeful ignorance

22

# Arm hugging body/Stiff to Body (Pressing inside of bicep to chest)

This Arm Hugging to body is different than touching.

In this indicator, the suspect is steadily using his arm (from his elbow to upper bicep) to press against a weapon in order to hold it in place usually in an inside jacket pocket, a large, makeshift, or flimsy shoulder holster, or just under his arm.

This also occurs when an armed suspect tries to place a firearm in his armpit of his jacket which is uncomfortable and insecure.

Criminals have been known to slice a hole in the seam of their jacket armpit to create an improvised holster.  This type of weapon concealment, may lead to body language that indicates a concealed weapon.

This type of "protective body movement" may also indicate an object on one side of the suspects' body they do not want discovered.  This will cause an asymmetrical appearance, causing one shoulder to dip, one arm to be lower than the other, and sometimes the hand may curl unnaturally.  The weapon or object will be on the side of the abnormality.  Look for symmetry!

23

# "Jackknife" Arm

A "Jackknife" Arm is an important imminent threat or attack indicator of a suspect drawing a firearm from their waistband or pocket.  The arm bends at the elbow, similar to closing a jackknife, or folding pocketknife.  This quick movement is usually very prominent, and extremely dangerous, as the suspect may be in the process of drawing the weapon.

24

# Blading

- Armed suspect's will rotate their upper bodies to the right or left, depending upon the side that a police officer is facing, in order to decrease the view of a concealed weapon.

- This is known as 'blading' and is done in various degrees. Some suspects blade their bodies slightly while others will do it excessively.

- If the officer is on right side of the suspect, he will blade his upper body toward the left to make the observation of a bulge or protrusion difficult.  Some armed suspects will blade their bodies more extensively to totally remove the front of the body from view.

- This will give the suspect an opportunity to adjust the weapon or draw the weapon. This more extensive blading is often followed by the suspect changing direction to keep from making eye contact or walk away from an officer.

25



# Hands grabbing the shirt

- One hand reaches to the bottom of a shirt or jacket to pull it out of the way in order to draw or expose a firearm

27



# Hands in pocket

When a suspect has his hands in his pockets, it may indicate a few things
- Insecurity, concealment, control of a valuable object, or fear

- Hands in pockets upon contact by a law enforcement officer can be dangerous situation and may tell you something

- Hands in pockets during cold weather could mean the person is cold

29

# Purposefully concealing the hand(s) from view

- When a suspect apparently *purposefully* conceals his or her hands from an officers view upon that officer making an official contact, and evaluated along with other behavioral indicators (i.e., blading the body) the officer should consider it a potential attempt by the suspect to reach for, or conceal a weapon, and the officer's safety may be at risk.

30

# Purposefully concealing the hand(s) from view

If an officer perceives that their safety is at risk,

- Triangulate their position with their partner, using an "L" or "V" formation, with an appropriate reactionary gap, OR

- Seek cover and use clear, concise, non-conflicting commands appropriate for the situation and level of suspicion.

31

# Protective Measures

*Even if an officer does not have reasonable suspicion that a person is armed and dangerous, there are tactics for officer safety that an officer may use short of a frisk when the officer perceives her/his safety is at risk.*

***These include ordering the individual to take her/his hands out of her/his pockets, put down or step away from an otherwise lawful object that could be used as a weapon, grabbing the person's hands if the circumstances suggest the person may be grabbing a weapon, or forcibly removing the person's hands from her/his pockets if the individual refuses to remove them from her/his pockets***.

*Any lawfully possessed article that is removed/safeguarded by a member of the service during an investigative encounter should be returned to the individual at the conclusion of the encounter (unless probable cause is developed and the individual is arrested).*

# Lifting the shirt for a free pat down

- This could be a 'get over on the cops' tactic.
- Some armed suspects approached by officers or believing they are going to be searched will cooperate by raising their shirts and spin around to show the officers that they are not carrying a weapon. Many times, in fact, the weapon is well hidden in another area of their person, such as a sock or groin.

33

# Holding a pocket, or waist area, or keeping a hand in the pocket, or waist area

- Armed suspects consider a firearm, or other weapon, a valuable item that they do not want to lose.

- They also don't want the weapon to become visible or drop on the floor, especially when a police officer is nearby.

- Even though holsters are readily available on the internet, most armed suspects do not want to wear a holster for fear that it will cause the firearm to bulge out of their clothing.

34

# Distancing

- An alert officer will always pay careful attention to the actions of suspects during vehicle stops and investigative encounters.

- When a suspect moves away from his vehicle, or another location (tree fence doorway, curb etc.) usually quickly, upon the observation of a police officer, he may be telegraphing to that officer that he just dropped a weapon, handed off drugs, or is distancing himself, or creating distance from a weapon or other contraband.

- This is common practice among drug dealers who are carrying drugs or guns on a street corner.

35

# Discards a Bag or Purse

Suspects will discard firearms, drugs or evidence of a crime when they think they are going to be stopped by the police.

Whenever you see this type of behavior, always find out what the person is getting rid of.

36

# Walks toward a car, trees, fence, or garbage pail when he observes police

- Armed suspects often walk towards a car, trees, a fence, a garbage pail or some other item when they observe the police

- This is done to facilitate the 'ditching' of a gun because the suspect doesn't want to get caught with the gun on his person

37

# Looking away at another person or location

- This type of characteristic is common when there are two or more individuals  suspected of criminal activity but the officers confronting them may not be aware of the criminal activity or the fact that there are more people involved

- Often during an investigative encounter of a suspicious person, the person stopped unconsciously looks toward another person not being interviewed.  This characteristic may also be observed by the suspect looking at another location, sometimes a vehicle, when he should be concentrating on your questions and looking at you.

38

# Covering body with part of a vehicle or other structure

The same way armed suspects try to conceal a weapon under their clothing, they will tend to hide their waist area behind a vehicle or other structure to increase the concealment

# Blocking

Purposely, but often discreetly, blocking a
location or object with his body

40

# PHYSICS

Physical presence of a firearm on a suspect. How the weight and size of the gun affects a suspect's clothing

41

# PHYSICS

- Causes a bulge, protrusion, or outline, or weighs down
- Slows or hinders movement, etc.
- When one side pushes out the other side pulls in
- Seams and pockets misalign
- Shirts hang off shoulders unnaturally
- Vertical/Horizontal Stripes appear crooked

42

# The Bulge

- FBI interviews with armed offenders show that they most often hide guns in the front waistband, the groin area, or the small of back.

- This is the most common way that armed suspects are identified by law enforcement.  The bulge, coupled with other behavior indicating self-consciousness of the bulge, often identifies an armed suspect to observant police officers

- This is often identified by a bulge in the clothing, often under the shirt or jacket.  It may also, depending upon whether the suspect's shirt is tucked into his pants or not, cause the waist to bulge.

- The presence of a weapon is often revealed by the persons physical behavior in attempting to conceal the bulge it creates, or by unconsciously touching it



44

# Protrusion of Weapon

- The protrusion could be showing through a pocket, the groin area of a suspect's pants, or even a shirt clinging to the weapon causing the shape of the weapon to be identified.

- A protrusion is different than a bulge since a protrusion shows an distinct outline or shape of the weapon while the bulge just causes a non-discernable lump in the clothing.

- Protrusion identification can also indicate a weapon in a soft bag, rag, towel, or similar item that can conceal a weapon.

45

# Stiff pointed pocket

- Similar to the weighing down of an item used to contain a firearm, a weapon can also cause a pants pocket or jacket pocket to point downward, make a stiff shape, and point slightly outward.
- Since a firearm has a strong solid shape with a considerable weight, it will pull a pocket toward the ground while changing the shape of the pocket to appear stiff not soft.
- This indicator is different than a 'protrusion' because it may not protrude through the pocket or clothing.
- When an armed suspect is carrying a firearm in his jacket pocket while walking, the weighted pocket will swing slower than the other pocket.
- When a suspect moves his body from side to side you will notice that the side with the firearm in the pocket will also swing farther to the outside of the body and return back toward the body more powerfully to strike the body.

46



47

# Weighing Down of Clothing, Jacket/Pocket/Waist/Sleeve

- Weapons, especially firearms, are solid heavy objects. Often weighing 2 pounds or more, a firearm can weigh down any object of clothing (pants pocket, waistband, jacket pocket, sleeve, sock) or item (bag, sack, knapsack, fanny pack) that can be used to contain the firearm.

- A common indicator of the 'weighing down' of clothing is the way one side hangs lower than the other.

- A usual part of a suspect's clothing used to conceal a firearm is the inside jacket pocket and it is evident by the way the breast area of the jacket pulls or sags on that side, often with an observable bulge.

48



# Heavy Hoodie

- Suspect is wearing a hoodie and the hoodie is unnaturally 'pulling' downward and flat toward the body from the weight of a gun
- The hoodie will be hindered from movement
- Hoodies should have a relaxed look rather than a stiff look

50

# Lopsided / Sagging pants (waist)

- When an officer observes a waistband that sags on one side, this could be an indicator that a heavy object, which could be a firearm or other weapon, is causing the sagging.

- Other ways of detecting a lopsided waistband, due to a concealed firearm, is noticing a pocket on one side is lower than the other or one pant leg bottom is lower than the other (closer to the floor). Back hanging lower than front.

51



# APPEARANCE

Overall or specific look of a person that may indicate he or she is armed with a gun

53

# APPEARANCE

- Asymmetrical appearance
- Uncomfortable
- Body movements made pursuant to stress
- Body asymmetrical, rigid, overcompensates (limp, one arm less movement)

54

# "Strange" Bending / Hunchback Stride

- Bending of the body toward the weapon in an attempt to decrease exposure
- Often, when an armed suspect bends at the waist, he will catch himself due to the pain caused by the gun
- The leg, usually on the side of the gun will move back
- This can be observed as strange bending or hunchback appearance

55



# Limping

- This characteristic is described as a different type of limping than when someone has an injured foot, leg, or knee.

- In this strange limping, caused by a weapon in the shoe, down the leg, or a large weapon shoved into the groin, the armed suspect will walk in such a way as to attempt to walk normal but the weapon (pain or uncomfortable feeling from the weapon) is changing his gait (stride).

- This is an uncontrollable limp but will not cause the suspect to lean to one side during walking because he is trying to remain undiscovered.

57

# Lightfoot Characteristic

- Walking lightly on one foot because a gun may be in the shoe or sock of the suspect and the suspect does not want to jar it loose.

- The Lightfoot characteristic is done intentionally, in contrast to the Limp characteristic

58

# Asymmetrical or unnatural posture, stance or walk

- When someone feels comfortable and is acting natural, their body posture and movements are symmetrical.

- When that person is concealing a firearm in his waist, pocket, ankle, or other area, he will be asymmetrical.

- It may be evident in one or many movements that seem unnatural or asymmetrical for a normal and relaxed person.

59



60

# Unnatural Arm Swing or Movements

- When an armed suspect is concealing a gun in the waist area, pants pocket, jacket pocket, or under the arm, his arm will swing less or lack normal movement than the other side of the body.

- This is done subconsciously to conceal the presence of a gun and to limit the chance of the gun becoming loose or falling.

61

# Unnatural Running Movement or Arms not Swinging

- A suspect running without his arms swinging can indicate he is holding a weapon from jarring loose

- Running with the hands held close in front of body, or bending over, grabbing the waistband area, may indicate firearm in waistband

62

# Abnormal Stride or Gait

- Armed suspects hiding a gun in places like an ankle, or pocket, or groin will limit their stride on the side of the concealed weapon.

- This will be identifiable by a shorter stride by the leg on the side where the weapon is concealed.

- This is done in an attempt to avoid the dislodging of the weapon or minimize the bulging or protrusion of the weapon.

# Stiff body Posture/
# Lack of Movement

- Stiff body posture and lack of movement could be an indicative of different things
- Research shows that people freeze in response to fear as a natural defensive action
- Heart rate slows, muscles stiffen, and movement ceases
- "Deer in the headlights"

64

# Establishing Baselines

- Baselines are time and location specific
  - Within the same environment  the baselines can change dramatically based on specific location of the encounter.

65

# Palming

- Concealing the palm of the hand for the purpose of concealing a weapon, such as a small caliber handgun, like a derringer, or a knife or razorblade.
- Palming can be done in several different manners.  Armed suspects who 'palm' a weapon will have a few  distinct characteristics displayed.  In order to hold the weapon, the suspect must have a finger, or fingers, usually the thumb bent toward the palm of the hand to hold the weapon from dropping.  Sometimes, the fingers are bent inward to hold the firearm while the thumb is outward to avoid showing the forming of a fist which is an obvious indicator of holding an object.
- Another variation of palming or another way that suspects will palm a weapon to conceal it is to hide the hand palming the gun into a shirt or jacket sleeve.
- An officer will notice that one of the suspect's sleeves is considerably lower than the other or completely covering the hand.

66

# CLOTHING

Specific articles, or combination of articles, of clothing that can facilitate the concealing of a gun, or the drawing of a gun.

67

# CLOTHING

**How can clothing help identify an armed suspect?**

- Clothing or items that can facilitate or indicate gun possession, gun concealment or to ease in the drawing or presenting of a gun
  - Layers (multiple shirts, two pairs of pants)
  - Bullet-proof vest, holster, fanny pack
  - Hoodie up in warm weather
  - Heavy street clothes worn on basketball court

68

# Clothing too warm/heavy for weather

- Why would someone wear a heavy coat or clothing too warm for the setting or climate?

- Of course there may be a logical explanation, but under certain circumstances, this attire may be used in an attempt to conceal a firearm

- It is common for armed suspects to wear a jacket in warm or hot weather to assist in the concealment of a firearm

69

# Layers of Clothing

- Two or three shirts when it is warm outside
- Two pairs of pants
- Layered clothing inappropriate for the weather is a common characteristic of armed suspects
- Layered clothing offers a 'smooth' cover for a concealed firearm
- It helps keep the firearm from bulging or protruding

70

# Holding a hat or jacket

- Armed suspects may conceal a firearm in a hat or jacket
- Often, this concealment technique is visible by the manner in which the suspect carries or holds the hat or jacket
- Consider that a hat, jacket, or other item of clothing when squeezed in the hand, is not very thick
- The hand will tend to  wrap around a larger portion of the item than normal because it is holding a firearm rather than just a thin hat or jacket.  In other words, if his fingers are a few inches away from each other rather than only the thickness of the item, he is probably holding something concealed inside the item

71

# Wearing Body Armor

People wear body armor when they expect to be shot at or engage in behavior that can expose them to getting shot

72



73

# Improvised Holsters

Improvised holsters can include anything capable of holding or concealing a weapon, such as socks, bra, underwear, strings, and a safety pin.

Other devices used as holsters may include:
- Fanny pack
- Cell phone case
- Back brace
- Compression socks
- Arm slings
- Arm or leg cast
- Ace bandage
- Duct tape

74



75

# Firearms paraphernalia Discovered at scene

- Holster (commercial or home-made)
- Loose rounds or shells
- Ammunition boxes
- Firearm magazine / "Clip"
- Pistol or long gun case

# Firearms paraphernalia
# Discovered at scene

- The suspect may discard the paraphernalia, but "stash" the gun nearby to retrieve it later look for gun nearby;
  - Under vehicles
  - Inside wheel wells
  - Inside fences in trashcans or dumpsters
  - Near curbs

77

# Improvised carrying

- Of course the most common place to conceal a firearm is to carry it in a waistband, followed by pants pockets, in a the groin area, and in the socks, but keep in mind that most people like to carry a weapon for protection and the purpose of using it at a moment's notice.

- For this reason, another place that is used to carry a firearm or other weapon is in the **sleeve above the wrist**.  It is often missed during a search, it is easily accessible, and like the pants pocket and jacket pocket it can be fired through its holder (the sleeve).

- The characteristics displayed are: one sleeve hangs lower, sleeve pulls to one side off the neck, the suspect may hold the bottom of his sleeve at the wrist to keep the gun from falling out.

78

# ENVIRONMENT

Location-specific make-up in relation to the suspect that can indicate the suspect may be armed with a gun.

79

# ENVIRONMENT

**How can environment help identify an armed person?**

- Recent shootings in area
- ShotSpotter
- Suspect is on his Gang Turf
- Suspect is in Rival Gang territory
- Location where there has recently been a high volume of calls for service for violent crime and/or drug activity

80

# Gun Powder (burn) Scent

- Usually detected at the scene of a shooting where the gunman is still on scene
- Also detected in a vehicle after a drive by shooting
- Gunpowder scent is experienced by most law enforcement officers at their agency's firearms range during firearms qualification

81



82