```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

DAVID FLOYD, *et al.*,

                  Plaintiffs,

-against-

CITY OF NEW YORK,

                  Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/6/2017
```

08 Civ. 1034 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    In an opinion and order issued on August 12, 2013 (the "Liability Opinion"), the Court held that the New York City Police Department's (the "NYPD") stop-and-frisk practices violated Plaintiffs' Fourth and Fourteenth Amendment rights. *See Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013). In a separate opinion issued the same day (the "Remedies Opinion"), the Court directed the NYPD to institute certain reforms to remedy its unconstitutional practices and appointed an independent monitor (the "Monitor") to oversee those reforms. *See Floyd v. City of New York*, 959 F. Supp. 2d 668 (S.D.N.Y. 2013).

    In the Liability Opinion, the Court found that NYPD "officers [were] routinely subjected to significant pressure to increase their stop numbers, without corresponding pressure to ensure that stops [were] constitutionally justified." *Floyd*, 959 F. Supp. 2d at 602. The Court identified two sources of this pressure: (1) weekly meetings known as "Compstat meetings" during which NYPD leadership urged local commanders to increase the number of stops, *id.* at 590, 592–94, and (2) a document known as Operations Order 52, a core element of the NYPD's "Quest for Excellence" performance-evaluation system, *id.* at 600. Operations Order 52 described officers' performance objectives and "made clear that supervisors must evaluate officers based on their activity numbers, with particular emphasis on summonses, stops, and arrests, and that officers whose numbers are too low should be subjected to increasingly serious discipline if their low numbers persist." *Id.*

    It appears that the NYPD has taken steps to eliminate these two sources of pressure. In particular, the Monitor has reported in a letter dated October 20, 2017, that, based on his observation of Compstat meetings from April 2016 to August 2017, commanders at those meetings are no longer urged to increase the number of stops. ECF No. 562 at 6. In addition, the NYPD has revoked Quest for Excellence and Operations Order 52 and, on January 4, 2017, began instituting a new performance-evaluation system. *Id.* In the new system, the lawfulness of stops and the accuracy of stop reports play a role, but the number of stops does not. *Id.*

    The Monitor's letter recognizes the improvements the NYPD has made to its performance-evaluation system, states his view that Court review is still necessary, and recommends a system for that review. *Id.* at 7.

The Court has reviewed—and now APPROVES—the Monitor's recommendation. Accordingly, it is ORDERED that:

1. The Monitor shall, in his bi-annual reports, review and assess the NYPD's performance-evaluation system to ensure that, on paper and in practice, it does not (a) reinstitute pressures that result in a focus on the quantity of stops without regard to their lawfulness or (b) undermine the goals of the remedial process, including compliance with the Fourth and Fourteenth Amendments of the Constitution as required by the Remedies Opinion.

2. During the period of Court supervision, Court approval is required before the NYPD implements any proposed change to the performance-evaluation system that may (a) introduce a mechanism to count the number of stops conducted by an officer or (b) affect the manner in which the quality and lawfulness of stops are assessed. The NYPD shall notify the Monitor and the parties of any such proposed change so that the Monitor—in consultation with the parties—may seek Court approval.

SO ORDERED.

Dated: November 6, 2017
        New York, New York

_____
ANALISA TORRES
United States District Judge