centerforconstitutionalrights
*on the front lines for social justice*

August 2, 2018

***VIA ECF***
Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street, Room
New York, NY 10007
Torres_NYSDChambers@nysd.uscourts.gov

**Re:** ***Floyd v. City of New York*, 08 Civ. 1034**
***Davis v. City of New York*, 10 Civ. 699**
***Ligon v. City of New York*, 12 Civ. 2274**

Dear Judge Torres:

We write on behalf of the Plaintiffs in the above-entitled actions to object to the Amended Proposed Confidentiality Order filed by the Independent Monitor with the Court on July 31, 2018. *See Floyd* Dkt # 625-1 ("Proposed Order"). The Proposed Order would impose new and substantial restrictions on public access to information about the remedial process, as a result of its sweeping definition of "Confidential Material." We agree it is appropriate to maintain the confidentiality of drafts of reforms, drafts of Monitor reports and recommendations to the Court, and correspondence among the parties and Monitor concerning the substance of those drafts, and we would not object to an order requiring confidentiality with respect to that material. Indeed, for the past three-and-a-half years of the remedial process, that has been the operative confidentiality agreement between the Monitor and the parties. The Proposed Order, however, would preclude public disclosure of far more information, including information for which there is no legal basis to justify sealing.

As set forth below, the Proposed Order as drafted does not satisfy the requirements in this Circuit for entry of a confidentiality order and should not be entered in its current form. The concerns we raise herein would be resolved if the Proposed Order defined "Confidential Material" as including only (1) draft documents; and (2) the Monitor's and parties' comments on or analysis of: (a) draft documents, (b) data compiled by the NYPD or Monitor, (c) NYPD training classes observed by the Monitor and/or the parties, or (d) the parties' proposals for NYPD compliance with the requirements of the Remedial Order. We also respectfully request that the Proposed Order be modified to provide class members and community stakeholders with the same access to Confidential Materials afforded the police unions.

## A. The Proposed Confidentiality Order Would Drastically Reduce the Information Publicly Available about the Remedial Process

Under the current status quo, which has existed since early stages of the Immediate Reform Process ("IRP") in February 2015, all draft reforms circulated by the NYPD and Monitor are confidential, as well as the parties' and Monitor's respective comments, correspondence, and discussions concerning those drafts. Named plaintiffs and organizational members of Communities United for Police Reform ("CPR") are permitted to review drafts of reforms, but only in the presence of Plaintiffs' counsel and after signing a one-page stipulation in which they agree not to discuss the materials with anyone other than Plaintiffs' counsel.[1]

In contrast, under its definition of "Confidential Material," the Proposed Order would shield from public view "documents, Sealed or Protected Material, data, communications and

[1] Confidentiality in the Joint Remedial Process ("JRP") was treated differently, because of the need for increased transparency in that process and the need to discuss reform proposals and suggestions with community members. We do not address confidentiality within the JRP here, as that piece of the process—as a distinct process from the IRP—has ended

other materials shared by any party or the Monitor concerning the remedial aspects of the above-captioned actions," *Floyd* Dkt # 625-1 ¶ 1. This would include information and material that is subject to public disclosure under the New York State Freedom of Information Law ("FOIL"). It would include data, such as the results of the NYPD's internal quarterly stop and frisk audits, that are compiled by the NYPD in the ordinary course, are highly relevant to the public's assessment of the progress of the NYPD's reform efforts,, and were previously produced without confidentiality restrictions during pretrial discovery in the Floyd litigation. It would include information that is not protected from disclosure under any statute or legal privilege. It also expands confidentiality well beyond what has been covered for the past three and half years of the remedial process.

**B. The Monitor Has Not Shown Good Cause for Entry of Such a Broad Confidentiality Order**

A party seeking a confidentiality order shielding documents exchanged during litigation from public disclosure "has the burden of showing that good cause exists for the issuance of that order." *Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 142 (2d Cir. 2004)(quoting *In re Agent Orange Product Liability Litig.*, 821 F.2d 139, 145 (2d Cir. 1987); *see also Schiller v. City of New York*, 2007 WL 136149, *2 (S.D.N.Y. Jan. 19, 2007)(same). "It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." *Gambale*, 377 F.3d at 142 (quoting *Agent Orange,* 821 F.2d at 145).While this "good cause" requirement derives from the language of Fed.R.Civ.P. 26(c), which deals specifically with protective orders over documents produced during pretrial discovery, "orders of confidentiality over matters relating to other stages of litigation have comparable features and raise similar

public policy concerns. . . and require similar balancing between public and private concerns. . . [Thus,] whether an order of confidentiality is granted at the discovery stage or any other stage of litigation, including settlement, good cause must be demonstrated to justify the order." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786, (3d Cir. 1994); *see also Citizens First Nat'l Bank of Princeton v. Cincinnati Insur. Co.*, 178 F.3d 943, 944 (7th Cir. 1999)(Posner, J.)(holding that "the law requires" a district court to make a "good cause" determination "to seal any part of the record of a case," not just pretrial discovery).

"To determine whether good cause exists, courts balance 'the need for information against the injury that might result if uncontrolled disclosure is compelled.'" *In re Zyprexa Injunction*, 474 F.Supp.3d 385, 415 (E.D.N.Y. 2007) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787, (3d Cir. 1994)); *see also United States v. Smith*, 985 F.Supp.2d 506, 523-24 (S.D.N.Y. 2013)("The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause.")(citations omitted). "Balancing requires taking into account litigants' privacy rights as well as the general public's interest in the information." *Zyprexa*, 474 F.Supp.2d at 415 (citing *SEC v. TheStreet.Com*, 273 F.2d 222, 234 (2d Cir. 2001). With respect to the public's interest, "the district court should consider whether the case involves issues important to the public." *Pansy*, 23 F.3d at 788. If a case involves "issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality." *Id.*; *see also FTC v. Standard Fin. Management Corp.,* 830 F.2d 404, 412 (1st Cir.1987) (threshold for sealing is elevated because the case involves a government agency and matters of public concern).

Meanwhile, the party seeking the confidentiality order generally must show "that disclosure will result in a clearly defined, specific and serious injury." *Schiller*, 2007 WL 136149 at *5 (internal citations and quotations omitted); *see also Allen v. City of New York*, 420 F.Supp.2d 295, 302 (S.D.N.Y. 2006)(same). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Smith, 985 F.Supp.2d at 528 (quoting Pansy, 23 F.3d at 786); Allen, supra (same). "Moreover, the harm must be significant, not a mere trifle." *Schiller*, 2007 WL 136149 at * 5 (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)). Finally, "the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order." *Pansy*, 23 F.3d at 786-87 (citations omitted).

Under these standards, the Monitor has not and cannot make the requisite showing of good cause for entry of a confidentiality order that would shield such a large swath of critically important materials and information about this remedial process from public view. The only justification the Monitor provides for seeking entry of the Proposed Order is that he "believe[s] all stakeholders' interests are best served by ensuring confidentiality in the remedial phase of these actions," and that "without a confidentiality order that clearly sets forth the terms by which confidential material will be handled, the effectiveness of the remedial phase of these actions may be seriously compromised." Monitor's 7/25 Ltr to the Ct. re Proposed Confidentiality Order (*Floyd* Dkt # 622) at 1; *Floyd* Dkt # 625-1 at 2. Such generalized allegations of potential harm unsupported by specific examples are insufficient to establish good cause. *See Allen*, 420 F.Supp.2d at 302 (holding that statement in defendant's declaration that public release of an NYPD report "would materially impede the department's law enforcement responsibilities and

capabilities" amounted to "generalized and unsupported claims of harm" which were insufficient to establish good cause for keeping the report confidential.). We agree, as a general matter, that an order clearly defining the parameters of confidentiality would be beneficial to the remedial process, but such a general proposition does not support the need for the extremely broad definition of Confidential Material in *this* Proposed Order, which is the focus of Plaintiffs' objection.[2]

Indeed, Plaintiffs fail to see how expanding the definition of confidential material to include--for the first time in three-and-a-half years--aggregate NYPD data like the NYPD's quarterly stop report audit results compiled in the ordinary course of business is necessary to prevent harm to the NYPD's interests or the remedial process generally. Publicly disclosing such data—which contain no personal information about individual NYPD employees or members of the public —would not implicate any privacy concerns, as confirmed by the fact that the NYPD previously produced these data to Plaintiffs during pretrial discovery without any redactions or confidentiality restrictions. In addition, publicly disclosing this data, as opposed to the parties' or Monitor's analyses of or views on the meaning of the data, would not discourage frank

[2] With this Proposed Confidentiality Order, the Monitor has turned the common and accepted use of so-called "blanket confidentiality orders" on its head. Normally, such an order does not classify any remedial materials as confidential and instead merely permits a party to designate specific remedial information as confidential at a later time, if necessary, and also gives a party opposing such designation an opportunity to contest it. *See, e.g. In re Parmalat Securities Litig.*, 258 F.R.D. 236, 243 (S.D.N.Y. 2009); *Mortgage Resolution Servicing, LLC v. J.P. Morgan Chase Bank, NA*, 2017 WL 2172322 (S.D.N.Y. May 16, 2017). The Proposed Order, however, seeks to categorically classify all remedial materials and information as confidential now without any particularized showings of good cause.

discussions between the parties and Monitor about developing and implementing Court-ordered Immediate and Joint Process reforms.[3]

As for the public's interest, notwithstanding the Monitor's remarkable suggestion to the contrary, *see* Floyd Dkt # 622 at 1, # 625-1 at 2, community stakeholders' interests would not be "best served" if they are denied access to highly relevant information about the remedial process. First, because the remedial process covers three city-wide plaintiff classes and concerns a public agency's widespread constitutional violations, information about the remedial process should be available to members of the class absent specific cause justifying closure. Second, public access to information about the remedial process is necessary to ensuring the legitimacy of the reforms that result from that process. There is a long record in this case demonstrating the strong interest of community stakeholder groups like CPR in being directly involved in developing and monitoring the NYPD's compliance with stop-and-frisk and trespass enforcement reforms. *See, e.g.*, *Floyd* Dkt # 377 (CPR Amicus Brief re Injunctive Relief, dated March 4, 2013), Dkt # 551 (CPR April 20, 2017 Amicus Ltr In Support of Plaintiffs' Objections to Monitor's Recommendation re the Court-Ordered Body-Worn Camera Pilot); Dkt # 597 (Facilitator's Final Rept on the Joint Remedial Proces) at 125-217; Dkt # 611 (CPR Comments on Facilitator's Final Report on the Joint Remedial Process, dated July 9, 2018).The Court has also recognized that the Court-ordered reforms will only be successful if they are perceived as legitimate by the community stakeholders, which can only happen if those stakeholders are afforded a meaningful opportunity to be involved in the reform process. *Floyd Rem. Ord*, Dkt # 372, at 29-30. Thus, to

[3] Further, the legitimate interest in encouraging candid negotiations cannot alone justify the sweep of this Proposed Order. Even settlement discussions among parties—where candor is equally important—are given limited protections that only prevent the use of those discussions as evidence at trial. *See* Fed. R. Civ. Pro. 408.

now deny these community stakeholders access to information about the NYPD's implementation of critical Court-ordered reforms, many of which they expended a lot of their own time and resources helping to develop, the Proposed Order could undermine those stakeholders' trust in the Monitorship and remedial process and ultimately the success of the Court-ordered reforms.

The Monitor's public filing of biannual status reports on the remedial process is insufficient to address Plaintiffs' concerns. The public has an interest in having access to ongoing information about the remedial process, and even the Monitor's inaction on a particular issue can itself provide important information to the public about reform implementation. *Cf. United States v. Erie County*, 763 F.3d 235, 240-41 (2d Cir. 2014)(opining that there is a strong interest in public access to documents that allow "scrutin[y]" into whether the court failed to take action when it should have). Further, one-half of the Monitor's eight reports thus far have provided updates on only a small subset of remedial issues, *see e.g. Floyd* Dkt #528, 557, 624-1 (reporting only on Body-Worn Camera pilot), # 554 (reporting only on stop-and-frisk data analysis), and his reports often omit critical information about the reforms that he does discuss. For example, in his Fourth Status Report, the Monitor included a discussion on profiling allegations investigated by the NYPD's Internal Affairs Bureau. *Floyd* Dkt # 536, at 36-38. The Monitor reported the aggregate number of all profiling allegations investigated, which would include profiling based on race as well as age, gender, religion, disability, gender identity, sexual orientation or housing status. *Id*. at 37. The Monitor reported that "most" of that aggregate number alleged profiling based on race. *Id*. He did not report the specific number of profiling allegations that were based on race, and he did not provide information about how IAB resolved

that specific category of allegations even that information was available. *Id*. Yet, even though this information is relevant to reform implementation and would be subject to production under FOIL, this Protective Order would deem it confidential. Similarly, when summarizing the results of the NYPD's internal audits of stop reports in his Seventh Status Report, the Monitor did not include the portion of the audit data concerning the accuracy of supervisors' assessments of the constitutionality of their subordinate officers' stops. *See Floyd* Dkt # 576, at Page ID 42-44 of 70.

In sum, the balancing of the relevant interests clearly shows there is no good cause for the Court to adopt the broad definition of "confidential material" set forth in the Proposed Order.

**C. The Proposed Confidentiality Order Could Cover Judicial Documents for Which There is Presumptive Right of Public Access**

Even assuming there is good cause for the broad definition of "confidential materials" included in the Proposed Order, we are concerned about the interplay between the sweeping definition of Confidential Material and paragraph 3, which provides that the terms of the order "do not limit the ability of the Monitor or Facilitator to communicate and share information with the Court."

The Monitor has said that he regularly speaks to the Court and shares information, and he does not provide notice to Plaintiffs or the public about what information he shares. The Proposed Order does not set out the procedures, if any, that the Monitor will follow in the event he intends to share Confidential Material with the Court. While we have raised concerns with the Monitor about his communications practices, we do not seek to object to those practices herein, and we do not object to the terms of paragraph 3. Yet we are concerned that—if this order is entered—there is a potential for the Monitor to provide the Court with material withheld from

public view by virtue of being categorized as "Confidential Material," and that would be inappropriate under longstanding Second Circuit precedent concerning the presumption of public access.

There is a strong presumption in the Second Circuit in favor of public access to judicial documents. *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government."). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

The Second Circuit has developed a fact specific balancing test for determining whether courts may properly shield documents from public view. *See e.g. Erie County,* 763 F.3d at 239. First, courts must determine whether the document at issue is a "judicial document." *Newsday LLC v. Cnty of Nassau*, 730 F.3d 156, 167 & n.15 (2d Cir. 2013). A "judicial document" is any document "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 116 (2d Cir. 2006). This can include documents that the court does not act upon. *Erie County*, 763 F.3d at 240-41 (explaining that even documents not used in rendering a decision are relevant to the exercise of Article III powers because "[i]f the [documents] show progress in compliance, the public can be confident that the judge's failure to intervene is appropriate; [but] if the [documents] show worsening conditions, legitimate questions could be raised about the court's inaction.").

Second, the court must determine whether the First Amendment right of access or the common law right of access applies. *Id.*, at 239. The former creates a high bar against closure

and its application depends on the experience and logic test: Courts "consider (a) whether the documents 'have historically been open to the press and general public' (experience) and (b) whether 'public access plays a significant role in the functioning of the particular process in question' (logic)." *Id*. (quoting *Lugosch*, 435 F.3d at 120.) "Once a First Amendment right of access to judicial documents is found, the documents may be sealed [only] if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (citations and quotations omitted; alterations in original). "Broad and general findings by the trial court [ ] are not sufficient to justify closure." *Lugosch*, 435 F.3d at 120 (quoting *In re New York Times Co*., 828 F.2d 110, 116 (2d Cir. 1987)).

To determine whether the documents must be disclosed under the common law right of access, the Court must consider the weight to be afforded the presumption of access in the particular case, which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 119 (citation and quotation omitted). Then, the court must determine whether the privacy interests of those opposing disclosure are sufficient to outweigh the presumption of access. *Id*. at 120; *Erie County*, 763 F.3d at 239.

The broad definition of documents and information covered by the Protective Order would include material that—if submitted to the Court—would be judicial documents. If this order is entered and the Monitor provides the Court—off the record—with data, information, or materials designated thereunder as confidential, it could result in shielding judicial documents from public access. We raise this issue now because Plaintiffs are not notified when the Monitor

speaks to the Court, and the Monitor does not inform Plaintiffs of what was said or shared, such that we might not be able to interpose an objection should this situation arise in the future.

It should also be noted that the Second Circuit's several-tiered balancing test reflects a well-established principle that strongly favors transparent court proceedings. Even if Confidential Material is not submitted to the Court, the Monitor is a court appointee and an extension of the court. The remedial process that he oversees is part and parcel to court proceedings in three city-wide class actions. The Protective Order preemptively cloaks most information related to the remedial process in secrecy—without specifically identifying the documents being withheld and without making any demonstration that the NYPD's purported privacy concerns outweigh the right of access under either the First Amendment or the common law. This undermines the spirit if not the letter of the presumption in favor of public access.

**D. Named Plaintiffs, Class Members and Community Stakeholders Should at Least be Given the Same Access as Police Unions to Confidential Materials**

The Proposed Order treats class members and remedial process community stakeholders differently than the police unions and gives the unions greater access to Confidential Materials. Specifically, under paragraph 5, Plaintiffs' counsel may only show materials to the named plaintiffs—which excludes members of the class who are not named plaintiffs—while under paragraph 7, the City may show materials to representatives of the non-party police unions. Paragraph 7 further gives the police unions the ability to disseminate the materials, when even the named plaintiffs are not given the same. There is no basis for this asymmetrical limitation on access.

Further, there is no provision that permits Plaintiffs' counsel to share Confidential Materials with CPR, despite the parties' and Monitor's previous agreement that Plaintiffs'

Counsel can show draft Immediate Reform materials to CPR members for review and comment. As currently drafted, the Proposed Order would not permit Plaintiffs to share other categories of confidential materials, including and especially those related to the development and implementation of JRP Reforms, with CPR. Because CPR is a named stakeholder and has participated extensively in the remedial process thus far, there is no basis for excluding them from continued access to Confidential Materials, particularly as we turn toward developing and implementing the discipline and JRP reforms and assessing the NYPD's compliance with all Court-ordered reforms.

The Proposed Order should therefore be modified to give class members and organizational members of CPR the same access as the police unions to Confidential Materials.

**

Accordingly, for the reasons set forth above, Plaintiffs request that the Court deny the Monitor's request to enter the Proposed Order as currently drafted and instead enter a modified order that narrowly covers only (1) draft documents; and (2) the Monitor's and parties' comments on or analysis of: (a) draft documents, (b) data compiled by the NYPD or Monitor, (c) NYPD training classes observed by the Monitor and/or the parties, or (d) the parties' proposals for NYPD compliance with the requirements of the Remedial Order, and that provides class members and organizational members of CPR with the same access to Confidential Materials as the police unions.

Thank you for your time and consideration.

                                                   Respectfully submitted,

\s\ Darius Charney
Darius Charney
Britney Wilson
CENTER FOR CONSTITUTIONAL RIGHTS

Jonathan C. Moore
Luna Droubi
BELDOCK, LEVINE & HOFFMAN, LLP

*Attorneys for Floyd Plaintiffs*

\s\ Jenn Rolnick Borchetta
Jenn Rolnick Borchetta
Johanna Steinberg
Shakeer Rahman
THE BRONX DEFENDERS

Christopher Dunn
Jordan Wells
NEW YORK CIVIL LIBERTIES UNION

*Attorneys for Ligon Plaintiffs*

\s\ Jin Hee Lee
Jin Hee Lee
Marnie Lenox
John Cusick
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND

Cynthia Conti-Cook
Steve Wasserman
THE LEGAL AID SOCIETY

*Attorney for Davis Plaintiffs*