UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/9/2018
```

DAVID FLOYD, et al.,

                    Plaintiffs,

-against-

CITY OF NEW YORK,

                    Defendant.

08 Civ. 1034 (AT)

KELTON DAVIS, et al.,

                    Plaintiffs,

-against-

CITY OF NEW YORK,

                    Defendant.

10 Civ. 699 (AT)

JAENEAN LIGON, et al.,

                    Plaintiffs,

-against-

CITY OF NEW YORK,

                  Defendant.

12 Civ. 2274 (AT)

**ORDER REGARDING
BODY-WORN CAMERAS**

ANALISA TORRES, District Judge:

      In an opinion and order issued on August 12, 2013, the Court held that the New York City Police Department's (the "NYPD") stop-and-frisk practices violated Plaintiffs' Fourth and Fourteenth Amendment rights. *See Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013). In a separate opinion issued the same day (the "Remedies Opinion"), the Court directed the NYPD to institute certain reforms to remedy its unconstitutional practices and appointed an independent monitor (the "Monitor") to oversee those reforms. *See Floyd v. City of New York*, 959 F. Supp. 2d 668 (S.D.N.Y. 2013). The Remedies Opinion also directed the parties to participate in a community-input process (the "Joint Remedial Process") under the guidance of a facilitator (the "Facilitator") to develop additional reforms. *Id.* at 686–88.

In the Remedies Opinion, the Court ordered the NYPD to institute a pilot project, supervised by the Monitor, to outfit patrol officers in certain precincts with body-worn cameras ("BWCs") and determine their effectiveness in reducing unconstitutional stops and frisks (the "BWC Pilot"). *Id.* at 685–86. The Court noted that BWCs are "uniquely suited to addressing the constitutional harms at issue in this case" because

> they will provide a contemporaneous, objective record of stops and frisks . . . , the knowledge that an exchange is being recorded will encourage police officers and civilians to engage in lawful and respectful interactions . . . , [and] the recordings will diminish the sense on the part of those who file complaints that it is their word against the police . . . .

*Id.* at 685.

The BWC Pilot is still ongoing, and the Monitor has yet to provide his findings to the Court. Shortly after the BWC Pilot was launched, the NYPD announced a plan to expand on the BWC Pilot by outfitting all patrol officers with BWCs by the end of this year. *See* Press Release, De Blasio Administration, NYPD Announce All Officers on Patrol to Wear Body Cameras by End of 2018, One Year Earlier than Expected (Jan. 30, 2018), https://www1.nyc.gov/office-of-the-mayor/news/071-18/de-blasio-administration-nypd-all-officers-patrol-wear-body-cameras-end-2018-#/0.

In connection with the BWC Pilot, the NYPD developed a policy (the "BWC Policy") that governs when patrol officers are required to turn on their BWCs. *See* Memorandum: Approval of Body-Worn Camera Policies (Apr. 11, 2017), ECF No. 545. The BWC Policy requires officers to turn on their BWCs during interactions in which they have a "founded suspicion" of criminality, which is a Level 2 encounter under the four-level framework established in *People v. De Bour*, 40 N.Y.2d 210 (1976). *Id.* at 6. The BWC Policy does not, however, require officers to turn on their BWCs during a request for information that is based on an "objective credible reason" to approach, which is a Level 1 encounter under the *De Bour* framework. *Id.* at 6–7.

On May 15, 2018, the Facilitator issued his Final Report and Recommendations (the "Final Report"). ECF No. 597. The Final Report is a 304-page document detailing the recent history of police-community relations in New York City, explaining the different stages of the Joint Remedial Process, and propounding fourteen recommendations for reform. *Id.* Among the reforms, the Facilitator recommends that patrol officers be required to activate BWCs at the inception of Level 1 encounters under *De Bour*. *Id.* at 225–30.

The Facilitator explains that the activation of BWCs during Level 1 encounters is necessary because "civilians overwhelmingly feel that they are not free to leave even during a Level 1 encounter," and "many investigative encounters quickly escalate into full blown *Terry* stops," which are Level 3 encounters under *De Bour*. *Id.* at 226. The Facilitator also notes that activation of BWCs during Level 1 encounters is consistent with the model policies and practices of the International Association of Chiefs of Police, the Police Executive Research Forum, and the American Civil Liberties Union, as well as a growing number of major cities across the

country that require activation of BWCs during all law enforcement or investigative encounters between civilians and the police. *Id.* at 227–29.

Plaintiffs support requiring officers to activate BWCs during Level 1 encounters, echoing the Facilitator's view that "Level 1 encounters can and often do escalate very quickly into more intrusive encounters." *See* Plaintiffs' Comments at 19–22, ECF No. 602. The NYPD, however, opposes the Facilitator's recommendation, arguing that "[r]ecording Level 1 encounters has serious privacy implications and may have a chilling effect on community-police interactions." NYPD's Response at 11, ECF No. 603. The Court concludes that further study on this recommendation is necessary. Accordingly, it is hereby ORDERED that:

1. By **October 19, 2018**, the parties shall submit a joint proposal for a pilot program, to be overseen by the Monitor, to study requiring patrol officers to activate BWCs during Level 1 encounters under *De Bour*. The proposal shall consider social science best practices. In developing the proposal, the parties shall consult with experts and the Monitor. After consulting with the parties or their experts, the Monitor shall also consider whether it is feasible to integrate this pilot program into the BWC Pilot, or whether it must be conducted separately.

2. The proposal shall include:

    a. A timeline for the planning, implementation, and analysis of the data gathered during the implementation of the program;
    b. A plan for monitoring the program during the implementation stage;
    c. A plan for assessing whether requiring activation of BWCs during Level 1 encounters enhances the NYPD's ability to capture on BWCs encounters that escalate to Level 2 or Level 3; and
    d. A plan for considering the privacy implications and effect on police-community relations of activating BWCs during Level 1 encounters.

3. After consulting the parties, the Monitor shall report the study's findings to the Court. The City shall bear the cost of the pilot program.

SO ORDERED.

Dated: August 9, 2018
       New York, New York

_____
ANALISA TORRES
United States District Judge