centerforconstitutionalrights
*on the front lines for social justice*

August 21, 2018

**VIA ECF AND EMAIL**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007
Torres_NYSDChambers@nysd.uscourts.gov

Re: Response in Further Opposition to Proposed Confidentiality Order
*Floyd, et al. v. City of New York*, 08-CV-1034
*Davis, et al. v. City of New York, et al.*, 10-CV-0699
*Ligon, et al. v. City of New York, et al.*, 12-CV-2274

Dear Judge Torres:

We write in response to the letter from the City dated August 16, 2018, filed in *Floyd* as Dkt # 638[1] ("Cooper Ltr."), in which the City requests entry of the Monitor's proposed confidentiality order ("Proposed Order"), with some slight modifications. As set forth in Plaintiffs' objection, *Floyd* Dkt # 627 ("Charney Ltr."), while Plaintiffs support entry of a confidentiality order, the definition of confidential material in the Proposed Order is unduly broad and must be narrowed.

The law in this Circuit requires the party seeking a protective order to articulate with specificity that there is good cause to withhold the material from the public, after balancing the competing interests at stake. Charney Ltr. at 3-9. In support of the Proposed Order, the City does not set forth with specificity the good cause requiring confidentiality. Instead, the City makes vague assertions of good cause and makes allegations that—even if they were true, which they

---

[1] All court filings referenced herein were also filed in *Ligon* and *Davis*, but for the ease of reference we refer only to the *Floyd* docket.

are not—fail to support an order that covers the breadth of material at issue here. Therefore, for the reasons set forth more fully below, we write in further support of Plaintiffs' request that the Court narrow the definition of "confidential material" in the Proposed Order.

## I.      The City Has Not Established Good Cause for Entry of the Proposed Order

As the City recognizes, it has the burden of making a "strong showing of 'good cause'" for entry of the Protective Order. *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 61 (S.D.N.Y. 20017) (citations omitted); *see also* Cooper Ltr. at 9, citing *Standard*. Plaintiffs agree that there is good cause to preclude public access to draft reforms and comments on draft reforms, *see* Charney Ltr. at 2. The question is whether the City has made a strong showing of good cause to preclude access to the vast category of *other* material covered by the Proposed Order, including, *inter alia*: data that had been regularly disclosed throughout the course of litigation with no confidentiality restrictions; material the City has no legal privilege to withhold; and documents that are subject to disclosure under freedom of information laws. The City has not made this showing.

The City wrongly argues that the Proposed Order continues the "status quo" and thus would "preserve[ ] the way the parties have proceeded to date." Cooper Ltr. at 10. First, this is inaccurate, as the Proposed Order expands confidentiality and none of the material Plaintiffs seek to exclude from the order was previously confidential.[2] *See* Charney Ltr. at 2-3. Second, the existence of prior confidentiality agreements among parties does not relinquish a party's burden to establish that a protective order is appropriate. *E.g.* Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 125-26 (2d Cir. 2006) ("[D]efendants cannot be heard to complain that their reliance on the [prior discovery] protective order was the primary cause of their cooperation during years

---

[2] In 2013, when the monitorship was first created, *Floyd* Plaintiffs' counsel sought a written agreement setting out clear expectations about confidentiality. That request was rejected.

of discovery . . . . To reverse the burden in this situation would be to impose significant and perhaps overpowering impairment on the public access right.") (internal citation and quotation omitted).

The City suggests that the public's significant interest in the transparency of the remedial process is satiated by the fact that the public can attend hearings, access the docket, and read the Monitor's intermittent reports. *See* Cooper Ltr. at 11-12. Yet the public is always allowed to attend hearings and access court filings, and deeming those factors sufficient to overcome the presumption of public access would render the presumption null and void. Second, as Plaintiffs explained in their objection, *see* Charney Ltr. at 8-9, the Monitor's status reports do not disclose all of the material that Plaintiffs maintain should be publicly available and thus excluded from the Proposed Order.

The City does not identify any privacy or safety interests that warrant the breadth of confidentiality that the Proposed Order would impose. The only interest in confidentiality that the City has identified is the NYPD's desire not to face public criticism. If that need were sufficient to establish good cause, it would support an order effectively gagging Plaintiffs' counsel from commenting on public information. This would implicate significant First Amendment protections that we do not herein address. In any event, the NYPD frequently faces public criticism outside the context of these cases, and any additional exposure to criticism in these cases cannot be much of a burden. More importantly, the media covers these proceedings because these proceedings are a matter of great public concern, and the public has a right to transparency in these proceedings absent demonstrated good cause supporting closure.

The City also does not identify the specific documents that it believes need to be withheld from public access. While Plaintiffs have identified examples of materials that would fall within

the broad category of covered information, it is impossible to apply the Second Circuit's fact-dependent test without identifying the documents at issue. Should a situation arise in which the NYPD believes material is particularly sensitive, the parties can execute agreements requiring confidentiality tailored to that material. Indeed, Plaintiffs' counsel recently signed confidentiality agreements covering the policing impartially training and body worn-camera footage that do just that.

The City submits that documents only constitute judicial documents if they are filed with the court. *See* Cooper Ltr. at 6. Yet a document need not even be *considered* by the court in order to constitute a judicial document. *See Lugosch*, 435 F.3d at 123 ("documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision.") (emphasis in original) (internal citation and quotation omitted). The protection afforded particular documents depends not on whether the documents are filed, but on the relevance of the documents to the proceedings and the relative interests at stake. *See Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016) ("In determining whether a document is a judicial record, we evaluate the "relevance of the document's specific contents to the nature of the proceeding" and the degree to which "access to the [document] would materially assist the public in understanding the issues before the ... court, and in evaluating the fairness and integrity of the court's proceedings.") (alterations in original) (citation and quotation omitted). The court in *Standard* did not hold otherwise, it simply applied this test to the unfiled documents at issue and determined the documents had no bearing on the litigation. See *Standard*, 621 F. Supp. 2d at 63.

The City suggests that Plaintiffs object to the Monitor's *in camera* conversations with the Court as a general matter, *see* Cooper Ltr. at 7, but that is not Plaintiffs' objection. The

Protective Order, as drafted, is overly broad while exempting the Monitor's communications with the Court from its restrictions. This potentially permits the Monitor to share confidential material with Court that is unavailable to the public, without Plaintiffs knowing that the disclosure to the Court has occurred. For example, the Monitor could receive data from the NYPD indicating rampant racial profiling. Under the Protective Order, that data would be confidential but the Monitor could discuss it with the Court. The public would have a right to know about that data and that disclosure, *see Lugosch*, 435 F.3d at 123, but by operation of the Protective Order both would be shielded from public view. *Cf. Edgar v. K.L.*, 93 F.3d 256 (7th Cir. 1996) (holding that court's *ex parte* communications with panel of court-appointed experts were improper where communications concerned the substance of a forthcoming report). Moreover, the parties' counsel should be afforded the opportunity to argue the appropriate context of that data so the Court can fully understand its meaning and relevance to the monitorship.

Plaintiffs would not have a concern about the provision exempting the Monitor's communications with the Court were the Court to enter an order with the narrower definition of confidentiality that they propose, because documents such as the parties' draft reforms or opinions on draft reforms are of minimal relevance to these proceedings

## II.    The New York Times Op-Ed Did Not Breach Confidentiality, and Regardless it Does Not Establish Good Cause for the Broad Confidentiality Restrictions in the Proposed Order

The City asserts that a New York Times Op-Ed written by three of Plaintiffs' counsel several years into the remedial process supports entry of a confidentiality order. There was nothing in the April 2018 Op-Ed that was confidential. During JRP reform negotiations in 2017, Plaintiffs' counsel agreed not to provide the media with attributable quotes of what other

participants said. It is that agreement Plaintiffs were referencing in the pre-motion letter seeking a status conference. *See* Cooper Ltr. at 4. In any event, the City does not explain why the remedy for an alleged breach of confidentiality would be to preclude public access to material that is not protected by any legal privilege and that is centrally relevant to the remedial process in three high-profile civil rights class actions against a government agency.

We are compelled, however, to address the City's accusations. The three reforms detailed in the Op-Ed were proposed *by the Plaintiffs*, and Plaintiffs' counsel had been advocating for them throughout 2017 and even before. *See e.g.*, *Floyd* Dkt # 598-2 (two-pager listing some of Plaintiffs' JRP reform proposals which was circulated in early 2017, attached to the Facilitator's report). No confidentiality agreement prevented Plaintiffs' public disclosure of their own JRP proposals. As part of our duties to class members in the JRP process, Plaintiffs' counsel needed to be able to speak openly about the reforms they were advancing in the JRP. Indeed, these proposals were publicly discussed during the process, including at JRP community forums.

Similarly, the City's potential opposition to JRP reforms was public. In January 2018, Plaintiffs publicly filed a pre-motion letter requesting that the Court enter an order establishing a process to resolve the JRP reforms,[3] to protect Plaintiffs' interests in light of the City's position that created a complete impasse on JRP reforms.[4] *Floyd* Dkt # 577. The City submitted a response misrepresenting that there was no impasse—despite its opposition to any court-ordered JRP reforms—and it did not object to Plaintiffs' reference to the impasse. *See Floyd* Dkt # 578.

---

[3] Before submitting that pre-motion letter, Plaintiffs' counsel notified the Facilitator, Monitor, NYPD, and Corporation Counsel that their publicly-filed submission to the Court would include a statement that the parties had reached a complete impasse on the JRP reforms.

[4] In December 2017, following more than seven months of unproductive JRP negotiations, the City circulated a memorandum stating the NYPD's opposition to any court-ordered JRP reforms. *See Floyd* Dkt # 598-3 (City's December 2017 document, attached to the Facilitator's report).

Plaintiffs publicly filed a reply correcting this misrepresentation, explaining that the NYPD might oppose all JRP reforms. *Floyd* Dkt # 579. The City filed no objection and made no motion to seal.

The Op-Ed was thereafter submitted to the New York Times in February 2018 and it was substantially finalized on March 27. Thus, it was written weeks before the Facilitator circulated his draft report to the parties and it was, in substance, final before the City circulated its feedback and edits on the Facilitator's draft report. The only reason it was published after the parties' comments were circulated is because the New York Times held publication until after the Easter and Passover holidays. The City's assertion that the Op-Ed impaired negotiations, *see* Cooper Ltr. at 10, is misleading. After November 2017, there were no negotiations or discussions among the parties concerning the JRP reforms. The Op-Ed could not have undermined the parties' JRP negotiations because such negotiations had ended months before publication.

### III.   Conclusion

Based on the foregoing, and for the reasons stated in Plaintiffs' objection and in the amicus submission from Communities United for Police Reform, *Floyd* Dkt # 629-1, Plaintiffs respectfully ask that the Court modify the Proposed Order as set forth in those submissions.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Darius Charney
Darius Charney
Britney Wilson
The Center for Constitutional Rights

Jonathan C. Moore
Luna Droubi
Beldock Levine & Hoffman LLP

*Attorneys for the Floyd Plaintiffs*

</div>

/s/ Angel Harris
Angel Harris
Jin Hee Lee
Marne Lenox
Raymond Audain
John Cusick
NAACP Legal Defense Fund

Steve Wasserman
Cynthia Conti-Cook
The Legal Aid Society

*Attorneys for the Davis Plaintiffs*

/s/ *Jenn R. Borchetta**
Jenn Rolnick Borchetta
Johanna B. Steinberg
Shakeer Rahman
The Bronx Defenders

Jordan Wells
Chris Dunn
New York Civil Liberties Union

*Attorneys for the Ligon Plaintiffs*

*Note that, beginning in September 2016, Ms. Borchetta has represented the *Floyd* Plaintiffs for the limited purpose of the Joint Remedial Process, and the Op-Ed was written from that perspective. Ms. Borchetta represents the *Ligon* Plaintiffs in the Immediate Reform Process.

CC via ECF: All parties