

**Peter L. Zimroth**
+1 212.836.7316 Direct
Peter.Zimroth@arnoldporter.com

October 19, 2018

<u>**VIA ECF**</u>

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007-1312

> Re:   *Floyd, et al. v. City of New York*, 08-CV-1034 (AT),
> *Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT),
> *Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT),
> <u>Recommendation Regarding Stop and Frisk Procedures and Stop Report</u>

Dear Judge Torres,

With this letter, I am attaching the following three documents:

1. Patrol Guide (P.G.) Section 212-11, Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops;

2. Stop Report Form; and

3. NYPD Business Card.

As explained below, there is only one change in P.G. 212-11 being submitted for your review and approval; the other changes are being submitted for your information only.  In order for the changes to be seen in context, I am enclosing the new NYPD business card for your information. There are also some changes to the Stop Report form that I am submitting for your review and approval.

**Patrol Guide Section 212-11**

This court first approved the NYPD's procedures on stop and frisk in August 2015.  The revised policies are included in P.G. 212-11, *Investigative Encounters: Requests for Information,*

*Common Law Right of Inquiry and Level 3 Stops*.   The Department is now proposing three different types of changes to the Patrol Guide,  The first set of changes is being made to comply with the recently enacted Right to Know Law (Local Law 54 of 2018 and Local Law 56 of 2018).   These laws require officers in certain non-emergency encounters to identify themselves by name, rank, and command, explain the reason for the stop, and hand out business cards if no one is arrested or issued a summons.   The Right to Know Law also requires officers to inform people of their right not to consent to a search if consent would be necessary to perform the search.   Officers must also document any consent to a search, either through a body camera or by writing, or both.

Because these changes to the Patrol Guide are being made to comply with the Right to Know Law and not because of a requirement of the remedial order, I do not believe that they require court approval.   The court has already ruled in its November 22, 2016 opinion that the remedial order did not require changes in the way the Department deals with consent searches, and therefore that the changes in P.G. 212-11 relating to consent searches based on an agreement between the City Council and the NYPD did not require court approval.   ECF Dkt. 537. Changes to P.G. 212-11 on consent searches due to the newly enacted Right to Know Law similarly would not require court approval.   As discussed below, however, the revisions being proposed also change a requirement of the remedial order, and for that reason should be reviewed and approved by the court.

**The New Business Card**

To meet the requirements of the Right to Know Law, the Department has designed a business card that officers will offer to individuals at the end of most Level 2 and 3 encounters, as well as following other specified interactions.   These pre-printed business cards will contain

the officer's name, rank, and shield number and a place for the officer to write his or her command.  The back of the card lists a new website (www1.nyc.gov/police-encounter) that provides information on how to obtain body-worn camera footage, how to request a copy of a stop report, and how to make a complaint or comment regarding the encounter.  This website has a link to an electronic form that allows an individual to request a copy of a stop report by providing the date, time, and location of the stop.  The NYPD has changed its procedures under the Freedom of Information Law (FOIL) so that it can respond to requests for stop reports within ten business days.

Two cards are currently in use.  The first is the "What Is a Stop?" tear-off information card, which is required by the court order to be offered to persons who are stopped but not arrested or summonsed, and which was provided to the court as part of the submission of P.G. 212-11 in August 2015.  Because this card will no longer be used, this change is being submitted for the court's approval.  The parties agree that the new business card is sufficient to meet the court's requirements, as do I.  The second card now in use is the Contact Card, which has been required to be provided to persons who consented to a search after a Level 2 encounter.  The new business card that will be used instead of the Contact Card includes all the information on the Contact Card (and more).  Elimination of the Contact Card does not change any requirement of the court orders and thus is not submitted for court approval.

**Changes to Patrol Guide Section 212-11**

Changes are being proposed to conform the Patrol Guide to the stop and frisk in-service training that this court has approved.  For example, the Department has added the definition of "protective measures" that an officer can take, short of a frisk, when he or she does not have reasonable suspicion that the person is armed and dangerous.  Other changes provide additional

explanations of the legal standards of *DeBour*, but do not change the policies of what an officer may or may not do in an investigative encounter.  For this reason, we do not believe these are material changes that require court approval.

There are also changes relating to additional instructions on how to use the Department's records management system (FORMS).  FORMS is used by officers to complete electronic stop report and by supervisors to review and approve the stop reports.  These revisions also are not material changes that would require court approval.

**Stop Report Form**

In March 2016, the court approved the NYPD's stop report form, and in January 2017, the Department began using an electronic form that officers can fill out on their phones, on tablets, or on a computer at the command.  The Department has proposed several changes to the stop report.   To comply with the Right to Know Law, the stop report will now ask if the officer asked for consent to search and whether consent was given.  This change would not require court approval.  The stop report also has two other changes: (1) the officer will identify if the stop was based on a crime victim or witness report; and (2) if the stop was based on a radio run, the officer will identify whether or not the radio run was anonymous.  That information can determine the level of authority an officer is legally allowed to exercise.  The latter two changes are being submitted for court review and approval.

The attachments highlight all the proposed changes to the Patrol Guide and stop report form.  On the Patrol Guide document, there are different highlights for the different types of revisions being proposed.  Highlighted in red are changes related to the business card that officers are required to offer to persons who have been stopped but not arrested or summonsed.  These requirements are being submitted for court review and approval.  Highlighted in yellow

are changes that have been made to conform the Patrol Guide to the stop and frisk in-service training that the court has previously approved.  These changes are submitted for your information.  Highlighted in grey are changes relating to how officers and supervisors are to use the records management system to document stops and review stop reports, respectively.  These changes are submitted for your information.

Highlighted in light blue are changes related to the implementation of the Right to Know Law.  These changes are submitted for your information.  The parties disagree whether P.G. 212-11 adequately implements the Right to Know Law, and the monitor takes no position on this issue.  However, all the parties agree that implementation of the Right to Know Law is not within the scope of the monitorship.  The plaintiffs have informed the monitor that they are not objecting to the recommendations that are being submitted for your approval.

Respectfully submitted,

*/s/ Peter L. Zimroth*
Peter L. Zimroth
Monitor

Attachments:
Patrol Guide 212-11, Clean Version
Patrol Guide 212-11, Changes Highlighted
Stop Report Form, Unshaded
Stop Report Form, Changes Shaded
New Business Card

# Patrol Guide 212-11
# Clean Version



# DRAFT INTERIM ORDER

| SUBJECT: | **REVISION TO PATROL GUIDE 212-11, "INVESTIGATIVE ENCOUNTERS: REQUESTS FOR INFORMATION, COMMON LAW RIGHT OF INQUIRY AND LEVEL 3 STOPS"** | |
|---|---|---|
| DATE ISSUED: | REFERENCE: | NUMBER: |
| **10-11-18** | **\*P.G. 212-11** | **DRAFT 12** |

     1.      In order to ensure Departmental compliance with Local Law 54 of 2018, entitled, "Right to Know Act – Requiring Officers to Identify Themselves to the Public," enhance transparency and improve the performance of police duty, the Department has both created, and revised, various cards, forms, and **ACTIVITY LOG (PD112-145)** inserts. Members of the service will now prepare a new pre-printed card entitled, "**RIGHT TO KNOW BUSINESS CARD (PD142-012)**" that contains the individual member's rank, last name, and shield number, with additional blank space for command name and phone number, and a generic card entitled, "**RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**" that must be completed by the member with all pertinent identification information when their supply of **RIGHT TO KNOW BUSINESS CARDS** becomes exhausted. These cards are to be prepared, as appropriate, in place of both the current card entitled, "**CONTACT CARD (PD142-011)**" and **ACTIVITY LOG** insert entitled, "**WHAT IS A STOP? (PD383-153)**." In addition, a new Department form entitled, "**COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**" will be completed by members when requesting a voluntary consent search during a Level 2 encounter. Furthermore, Department form **STOP REPORT (PD383-151)** and **ACTIVITY LOG** log insert **INVESTIGATIVE ENCOUNTERS (PD383-090)** have been amended to more accurately reflect Department practices. As a result, Patrol Guide 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops" has been revised.

     2.      Therefore, effective immediately, Patrol Guide 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops" is **SUSPENDED** and the following procedure will be complied with:

| | |
|---|---|
| **PURPOSE** | To describe the types of encounters a uniformed member of the service may initiate with a member of the public during the course of his or her official duties, the level of knowledge required for each type of encounter, the scope of a police officer's authority for each type of encounter, the measures that are permissible to protect uniformed members of the service from injury while engaged in such encounters, and the procedures to be followed by a member of the service during these encounters. |
| **SCOPE** | In accordance with their oath to uphold the law, uniformed members of the service must conduct investigative encounters in a lawful and respectful manner; however, nothing in this section is intended to deter an officer from initiating appropriate inquiries and investigative encounters, including stops, or using any lawful and appropriate tactics to ensure the officer's safety during such investigative encounters. Moreover, this procedure should not be interpreted to discourage an officer from engaging in voluntary consensual conversations with members of the public. Members of the service are encouraged to develop positive relationships in the communities they serve. Such positive interactions with the community foster trust and understanding that will in turn enhance public safety and officer safety. |

**DEFINITIONS**      <u>INVESTIGATIVE ENCOUNTERS</u> - In the context of this procedure, an investigative encounter is a police interaction with a member of the public/civilian for a law enforcement or investigative purpose.  The U.S. Supreme Court in the case of *Terry v. Ohio*, established the authority of the police to stop and possibly frisk a person, under certain circumstances, based upon reasonable suspicion.  The New York State Court of Appeals in the case of *People v. DeBour* established the types or levels of investigative encounters and the authority of the police at each level, consistent with federal constitutional standards.  These encounter levels and the authority of the police at each level are outlined in the definitions that follow.

<u>REQUEST FOR INFORMATION (LEVEL 1 ENCOUNTER)</u> - A request for information is an encounter between a civilian and a uniformed member of the service conducted for the purpose of requesting information from the civilian.  The uniformed member of the service must have an objective credible reason to approach the civilian.  This type of encounter does not require any suspicion of criminal activity.  The objective is to gather information and not to focus on the person as a potential suspect.  A police officer may seek information related to the reason(s) the person was approached, such as the person's name, address and destination, if those questions are related to the objective credible reason for the approach.  The officer may not ask accusatory questions.  The person may refuse to answer questions and/or walk or even run away. Refusal to answer questions and/or walking or running away does not escalate the encounter.  However, providing false or inconsistent information at any level may escalate the encounter.  At this level, the officer may not seek consent to search, may not use force, and may not create a situation (either by words or actions) where a reasonable person would not feel free to leave.  The officer may engage protective measures in the rare Level 1 encounter when he or she has a reasonable concern for his or her safety, either because of the nature of the approach or the individual's behavior.

<u>OBJECTIVE CREDIBLE REASON</u> - A reason is objectively credible if it is based on more than a hunch or a whim.  The reason to gather more information may relate to a public safety/service function or a law enforcement function, but need not be based on any indication of criminality.

<u>PROTECTIVE MEASURES</u> - Even if an officer does not have reasonable suspicion that a person is armed and dangerous, there are tactics for officer safety that an officer may use short of a frisk when the officer reasonably perceives her/his safety is at risk.  These include ordering the individual to take her/his hands out of her/his pockets, put down or step away from an otherwise lawful object that could be used as a weapon, grabbing the person's hands, if the circumstances suggest the person may be grabbing a weapon, or forcibly removing the person's hands from her/his pockets, if the individual refuses to remove them from her/his pockets.  Any lawfully possessed article that is removed/safeguarded by a member of the service during an investigative encounter should be returned to the individual at the conclusion of the encounter (unless probable cause is developed and the individual is arrested).  The officer

<b>INTERIM ORDER NO.</b>  <b>DRAFT 12</b>

**DEFINITIONS (continued)**

can engage protective measures at Level 2 and Level 3.  In rare occasions, the officer can engage protective measures at Level 1.

<u>COMMON LAW RIGHT OF INQUIRY (LEVEL 2 ENCOUNTER)</u> - A common law right of inquiry is an encounter between a civilian and a uniformed member of the service conducted for the purpose of asking the civilian pointed or accusatory questions because the police officer has a "founded suspicion" that criminal activity is afoot.  "Founded suspicion" is a lower level of suspicion than the "reasonable suspicion" required to conduct a "stop" or Level 3 encounter.  Upon a founded suspicion of criminality, the officer may approach a person to ask accusatory questions and may seek consent to search; however, consent must be voluntarily given.  During an encounter, providing innocuous answers does not escalate the encounter.  However, providing false or inconsistent information at any level may escalate the encounter. During a Level 2 encounter, force may not be used, the person is free to refuse to answer questions, and is free to leave.  Refusal to answer questions or walking away does not raise the level of suspicion.  However, flight (running away) during a Level 2 encounter does escalate the encounter to Level 3 and the officer is permitted to pursue the person. The officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away.  The officer may engage protective measures, when he or she has a reasonable concern for his or her safety.

<u>FOUNDED SUSPICION</u> - Founded suspicion of criminal activity arises when there is some present indication of criminality based on observable conduct or reliable hearsay information.   In other words, the officer has sufficient information to begin to suspect the person of criminal conduct.

<u>TERRY STOP (LEVEL 3 ENCOUNTER)</u> - A Terry Stop/Level 3 encounter is any encounter between a civilian and a uniformed member of the service in which a reasonable person would not feel free to disregard the officer and walk away.  A Level 3 encounter may take place even without the threat or use of physical force by the officer.   Encounters involving nothing more than commands or accusatory questions can rise to the level of a stop, provided that the commands and questions would lead a reasonable person to conclude that she/he was not free to terminate the encounter.  Whether an encounter amounts to a stop will be judged by the facts and circumstances of the encounter.  A stop may be conducted only when a police officer has an individualized reasonable suspicion that the person stopped has committed, is committing, or is about to commit a felony or Penal Law misdemeanor.  The police officer may ask accusatory or pointed questions and detain the person while an expeditious investigation is conducted to determine if there is probable cause to arrest the person.  During an encounter, providing innocuous answers or refusal to answer questions does not escalate the encounter.  However, providing false or inconsistent information at any level may escalate the encounter.  The police officer may seek consent to search.  The consent must be voluntarily given.  Reasonable force may be used to stop a person.  The type and amount of force used must be objectively reasonable under the circumstances.  The officer may engage protective measures, when he or she has a reasonable concern for his or her safety.  The officer

**INTERIM ORDER NO.  DRAFT 12**

**DEFINITIONS (continued)** — may frisk the person, if the officer has reasonable suspicion that the person is armed and dangerous.

REASONABLE SUSPICION - Reasonable suspicion exists when the information known to the member of the service would make an ordinarily prudent and cautious police officer under the circumstances believe that a felony or Penal Law misdemeanor has been, is being or is about to be committed. The officer must have a particularized and objective basis for suspecting the person stopped of the criminal conduct. The officer must be able to articulate specific facts establishing justification for the stop; hunches or gut feelings are not sufficient.

FRISK - A carefully limited running of the hands over the outside of a person's clothing feeling for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons. A frisk is authorized when the member of the service reasonably suspects the person is armed and dangerous. This includes situations in which the officer reasonably suspects that the person has committed, is committing, or is about to commit a violent crime or when the officer observes something on the person that she/he reasonably suspects is a weapon. A frisk may not be conducted to discover evidence or the proceeds or instrumentalities of a crime. A police officer cannot "frisk" a bag or item of personal property unless the officer has a reasonable suspicion that the person is armed and dangerous and the bag or item could contain a weapon and is within the person's reach.

SEARCH AFTER FRISK - In the context of the investigative encounters described in this section, a search occurs when the officer places her/his hands inside a pocket or other interior portions of a person's clothing or personal property to remove an object that the member felt during a frisk and reasonably suspects is a weapon or dangerous instrument.

**PROCEDURE** — When a uniformed member of the service engages in an investigative encounter with a civilian:

CONDUCTING A LEVEL 1 ENCOUNTER - A REQUEST FOR INFORMATION:

**UNIFORMED MEMBER OF THE SERVICE**

1. Approach the person if there is an objective credible reason to do so.
2. Identify yourself as a police officer verbally and by displaying your shield in a conspicuous manner, if practicable.
3. DO NOT detain the person, use or threaten the use of force, or request consent to search.
4. You may seek information and ask general, non-threatening questions related to the reason for the approach. However, pointed and accusatory questions are not permitted.
5. The person may refuse to answer questions and is free to leave. However, providing false or inconsistent information at any level may escalate the encounter.

**INTERIM ORDER NO.  DRAFT 12**

| | |
|---|---|
| **UNIFORMED MEMBER OF THE SERVICE (continued)** | 6. You may inform the person that she/he is free to leave, but you are not required to do so unless she/he specifically asks. |
| | 7. You should provide the individual with an explanation for the encounter, unless providing such information would impair a criminal investigation. |
| | 8. You may engage protective measures in the rare Level 1 encounter when you have a reasonable concern for your safety, either because of the nature of the approach or the individual's behavior |

CONDUCTING A LEVEL 2 ENCOUNTER - THE COMMON LAW RIGHT OF INQUIRY:

| | |
|---|---|
| **UNIFORMED MEMBER OF THE SERVICE** | 9. Approach the person if you have a founded suspicion of criminality. |
| | 10. Identify yourself as a police officer by providing your rank, name, shield, and command, and display your shield in a conspicuous manner, absent exigent circumstances. |
| | 11. DO NOT detain the person or use or threaten the use of force. |
| | 12. You may seek information and ask questions, including pointed and accusatory questions. |

        a.    Offer **RIGHT TO KNOW BUSINESS CARD (PD142-012)** or **RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**, as appropriate, in accordance with *P.G. 203-09, "Public Contact – General."*

13. The person may refuse to answer questions and is free to walk away. If the person runs away, you may pursue.

14. You may request consent to search; the consent must be voluntarily given.

        a.    Ask for consent to search in a manner that elicits a clear 'yes' or 'no' response. When seeking consent, make clear that the search will not occur if the person does not consent. For example, in a non-threatening manner and without making promises, you may ask the following: "*I can only search you, if you consent. Do you understand? May I search you?*"

        b.    If a person does not consent to a search, you cannot conduct a search.

        c.    If you are seeking consent to search, you must video record the request and the person's response, if you have a Body - Worn Camera.

        d.    Document the time, location, and date of such request, consent, refusal, and search (if performed), and the apparent race, ethnicity, gender, and age of the person who was the subject of such request and search, and your name, precinct, tax number and/or shield number on the **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**.

        e.    Offer the person who is the subject of the request a **RIGHT TO KNOW BUSINESS CARD**, as appropriate, in all cases, and, if applicable, provide information on how to obtain a copy of the video record of the request and search (if performed).

**INTERIM ORDER NO.**  **DRAFT 12**

**UNIFORMED MEMBER OF THE SERVICE (continued)**

    f.    This section does not apply in the following situations:

        (1)    You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities

        (2)    Exigent circumstances require your immediate action

        (3)    You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence.

15.    You may inform the person that she/he is free to leave, but you are not required to do so unless she/he specifically asks.

16.    You may engage protective measures, when you have a reasonable concern for your safety.

17.    Provide the individual with an explanation for the encounter, unless providing such information would impair a criminal investigation.

18.    Do not offer the person a **RIGHT TO KNOW BUSINESS CARD** or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, if the encounter ends in an arrest or a summons, unless requested.

19.    You are not required to proactively identify yourself, explain the reason for the encounter, or offer a **RIGHT TO KNOW BUSINESS CARD**, or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, in the following situations:

    a.    If engaged in undercover activity or operations

    b.    Exigent circumstances require your immediate action

    c.    You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence

    d.    You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities, unless requested by the subject of the search

    e.    You are verifying the identity of a person seeking entrance to an area that is restricted due to a public health, public safety, or security concern, such as a terrorist attack or a natural disaster.

*NOTE*    *During a Level 1 or Level 2 encounter, an officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away.  A person may be detained only if a properly conducted Level 1 or Level 2 encounter yields information to support a reasonable suspicion that the person committed, was committing, or was about to commit a felony or Penal Law misdemeanor.*

**INTERIM ORDER NO.  DRAFT 12**

<u>CONDUCTING A LEVEL 3 ENCOUNTER - A TERRY STOP:</u>

**UNIFORMED MEMBER OF THE SERVICE**

20. Upon reasonable suspicion that the person has committed, is committing, or is about to commit a felony or Penal Law misdemeanor, stop and detain the person for the purpose of conducting a criminal investigation.

21. Notify the radio dispatcher and include the location, number of persons being stopped and whether additional units are needed.

22. Identify yourself as a police officer by providing your rank, name, shield, and command, and display your shield in a conspicuous manner, absent exigent circumstances.

23. Question the suspect to the extent necessary to determine whether there is probable cause to make an arrest.

24. You may ask pointed and accusatory questions related to the reason for the stop. Refusal to answer questions or produce identification does not establish probable cause.

    a. Offer **RIGHT TO KNOW BUSINESS CARD** or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, as appropriate, in accordance with *P.G. 203-09, "Public Contact – General."*

25. You may request consent to search; the consent must be voluntarily given.

    a. Ask for consent to search in a manner that elicits a clear 'yes' or 'no' response. When seeking consent, make clear that the search will not occur if the person does not consent. For example, in a non-threatening manner and without making promises, you may ask the following: "*I can only search you, if you consent. Do you understand? May I search you?*"

    b. If a person does not consent to a search, you cannot conduct a search.

    c. If you are seeking consent to search, you must video record the request and the person's response, if you have a Body - Worn Camera.

    d. Document request, as appropriate, on **STOP REPORT (PD383-151)**.

    e. Offer the person who is the subject of the request a **RIGHT TO KNOW BUSINESS CARD** or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, as appropriate, in all cases, and, if applicable, provide information on how to obtain a copy of the video record of the request and search (if performed).

    f. This section does not apply in the following situations:

        (1) You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities

        (2) Exigent circumstances require your immediate action

        (3) You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence.

**INTERIM ORDER NO. DRAFT 12**

**UNIFORMED**
**MEMBER OF**
**THE SERVICE**
**(continued)**

26. Reasonable force may be used to stop a person.

27. You may engage protective measures, when you have a reasonable concern for your safety.

28. You may frisk the person if at any point during the encounter, you have reasonable suspicion that the person is armed and dangerous (see "Conducting a Frisk, and When Appropriate, a Search:" below).

29. The suspect may be detained only as long as necessary to confirm or dispel your suspicion that she/he was committing, committed, or was about to commit a felony or Penal Law misdemeanor. Authority to detain the suspect ends when the tasks tied to the reason for the stop are completed or reasonably should have been completed.

30. Provide the individual with an explanation for the encounter, unless providing such information would impair a criminal investigation.

31. Obtain the suspect's name, address, and any additional information that will be required to complete your **ACTIVITY LOG (PD112-145)** entry regarding the stop.

32. Do not transport or otherwise move the suspect from the location where she/he is stopped unless she/he voluntarily consents or there is an exigency necessitating relocation (e.g., hostile crowd, threat to safety, hospital show-up, etc.).

33. Release the person immediately after completing the investigation if probable cause to arrest does not exist.

34. Do not offer the person stopped a **RIGHT TO KNOW BUSINESS CARD** or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, if the encounter ends in an arrest or a summons, unless requested.

35. You are not required to proactively identify yourself, explain the reason for the encounter, or offer a **RIGHT TO KNOW BUSINESS CARD**, or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, in the following situations:

    a. If engaged in undercover activity or operations

    b. Exigent circumstances require your immediate action

    c. You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence

    d. You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities, unless requested by the subject of the search

    e. You are verifying the identity of a person seeking entrance to an area that is restricted due to a public health, public safety, or security concern, such as a terrorist attack or a natural disaster.

**INTERIM ORDER NO.  DRAFT 12**

<u>CONDUCTING A FRISK, AND WHEN APPROPRIATE, A SEARCH:</u>

**UNIFORMED MEMBER OF THE SERVICE**

36. If a police officer develops a reasonable suspicion that a person is armed and dangerous, the officer may frisk the person for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons. Reasonable suspicion that a person is armed and dangerous may arise from the officer's observations or the facts and circumstances of the encounter including:
    a. Reasonable suspicion that the suspect has committed, is committing, or is about to commit a violent crime (e.g., assault with a deadly weapon, burglary, rape, robbery, etc.)
    b. Observation of something on the person that the officer reasonably suspects is a weapon
    c. A statement by the suspect stopped that she/he is armed
    d. Information known by the officer that the suspect may be carrying a weapon, such as statements from a victim or witness.
37. The purpose of the frisk is to ensure the safety of the officer and not to locate evidence of a crime, such as drugs.
38. There is no requirement to question a suspect prior to conducting a lawful frisk.
39. Conduct the frisk by carefully running your hands down the outside of the person's clothing.
40. Where the frisk reveals an object that the member of the service reasonably suspects may be a weapon, the member of the service may search only those interior portions of the stopped person's clothing to remove the weapon.
41. An officer may not frisk a person's bag or other item of personal property unless the officer has reasonable suspicion to believe that the person is armed and dangerous and that the bag or item of personal property could contain a weapon and is within the person's reach. If the bag/item is soft, the officer should run her/his hands down the outside of the bag/item and open it only if she/he feels the contours of what she/he believes is a weapon. If the bag/item is rigid and unlocked, the officer may open it to ensure it does not contain a weapon. If the bag/item is locked, the officer must obtain a search warrant or get consent to search from the person in order to search the bag/item.

*NOTE*

*The guidelines in step "41" do not apply to mass transit system checkpoint type inspections of backpacks, containers and other carry-on items that are capable of containing explosive devices.*

*Requesting identification documents: At any level, an officer may ask an individual to verbally identify herself/himself or present an identification document to verify that person's identity and/or address. During Level 1 or 2 encounters, when performing this task, the officer must not create a situation where the person does not feel free to leave. Other than the operator of a motor vehicle/motorcycle, members of the public are not required to possess identification documents or present identification documents to police officers when*

**INTERIM ORDER NO.  DRAFT 12**

**NOTE**
**(continued)**

*requested. Refusal or inability to produce identification alone will not elevate the level of the encounter. Absent probable cause that the person committed an offense, she/he may not be arrested or removed to a Department facility for further investigation merely because she/he refused to produce identification.*

<u>REQUIRED DOCUMENTATION:</u>

**UNIFORMED**
**MEMBER OF**
**THE SERVICE**

42. For all consent searches requested during a Level 2 encounter, prepare a **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT**, utilizing the Finest Online Records Management System (FORMS), for EACH person from whom you request consent to search. The **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT** in FORMS is available through Department mobile devices (cellular telephones and tablets).

   a. Prior to the end of tour, complete all applicable captions and follow the directions for each section of the **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT** in FORMS and select the "Check" icon to submit the **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT**.

   b. The **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT** is only prepared for Level 2 requests to search. If you seek consent to search during a Level 3 Terry Stop, document that request on your **STOP REPORT** in the appropriate places.

   c. The **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT** is not prepared in the following situations:

      (1) You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities

      (2) Exigent circumstances require your immediate action

      (3) You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence.

43. For all Terry Stops/Level 3 encounters, prepare a **STOP REPORT**, utilizing FORMS, for EACH person stopped. The **STOP REPORT** in FORMS is available through Department mobile devices (cell phones and tablets).

   a. Prior to the end of tour, complete all applicable captions and follow the directions for each section of the **STOP REPORT** in FORMS and select the "Check" icon to submit the **STOP REPORT** to the patrol/unit supervisor.

   b. Check "REFUSED" in the appropriate space, if the person stopped refused to identify herself/himself.

      (1) Request the patrol supervisor to respond to verify refusal.

      (2) Do not detain the person, however, if the investigation is complete and there is no probable cause to make an arrest.

**INTERIM ORDER NO. DRAFT 12**

**UNIFORMED
MEMBER OF
THE SERVICE
(continued)**

   c.     Select all relevant factors that led to the stop if more than one descriptive term applies.

   d.     Describe in plain language (rather than numeric Penal Law section) the specific felony or Penal Law misdemeanor you suspected the person had committed, was committing, or was about to commit.

   e.     Describe in your own words, under the "Narrative (Describe the Circumstances That Led to the Stop)" caption, all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped had committed, was committing, or was about to commit a felony or Penal Law misdemeanor.

   f.     Describe in your own words, under the "Narrative (Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)" caption, all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped was armed and dangerous.  In addition, if a search was conducted, describe the basis for the search, the specific area searched, and whether a weapon or other contraband was recovered.

44.    When prompted to identify the "Reviewing Supervisor" in FORMS, enter the name or tax identification number of a supervisor currently performing duty with the platoon/unit and select that supervisor from the dropdown menu that appears.

   a.     Select immediate squad/unit supervisor, if he/she is assigned to perform duty with the squad/unit and is available to review the **STOP REPORT**.

   b.     If not assigned to an immediate squad/unit supervisor or he/she is not available, enter the name or tax identification number of another supervisor performing duty with the squad/unit (e.g, patrol supervisor, detail supervisor, etc.).

45.    Notify the reviewing supervisor that the **STOP REPORT** was prepared and submitted to the supervisor's electronic "INBOX" folder in FORMS for review.

*NOTE*

*The **STOP REPORT** is <u>not</u> prepared for Level 1 and Level 2 encounters, unless the encounter escalates to a Level 3 Terry Stop.  Similarly, the **STOP REPORT** is <u>not</u> prepared when an officer makes a summary arrest for an offense/crime or issues a Criminal Court summons or a civil summons returnable to the Office of Administrative Trials and Hearings for an observed violation, <u>unless</u> the suspect was initially detained for investigation in a Level 3 Terry Stop. The **STOP REPORT** is <u>not</u> prepared for traffic stops based on violations of the Vehicle and Traffic Law, unless the suspect is frisked.*

*Uniformed members of the service (UMOS) should be mindful that users of FORMS will be timed out after 55 minutes, therefore UMOS should periodically click on the "Save" icon to ensure that entered data is not lost.*

**INTERIM ORDER NO.  DRAFT 12**

| | | |
|---|---|---|
| **UNIFORMED MEMBER OF THE SERVICE (continued)** | 46. | Record details in **ACTIVITY LOG** and include the following information in the entry: |

    a. Date, time and location of stop

    b. Pedigree information (name, date of birth, address, telephone number), unless refused, and detailed description of the person stopped

    c. Document refusal to provide pedigree information, if applicable

    d. ICAD number, if applicable.

47. Prior to the end of your tour, submit the **STOP REPORT** and **ACTIVITY LOG** to the patrol supervisor/unit supervisor for review.

    a. The reviewing supervisor must be at least one rank higher than the member submitting the **STOP REPORT**.

48. Inform the patrol supervisor/unit supervisor of facts of the stop and, if conducted, frisk, and/or search.

**NOTE**      *The pedigree information of an individual who is stopped is not captured electronically and will only be recorded in the member's **ACTIVITY LOG**. Accurately recording pedigree information in the **ACTIVITY LOG** will enable members to later identify persons stopped and may aid investigators during the course of a criminal investigation. Do not put pedigree information into the **STOP REPORT** narratives.*

<u>SUPERVISORY AND ADMINISTRATIVE FUNCTIONS</u>:

**PATROL SUPERVISOR /UNIT SUPERVISOR**

49. Respond to the scene of stops when feasible.

50. Discuss the circumstances of the stop with the member of the service and review the **STOP REPORT** in FORMS using a Department mobile device (e.g., cellphone, tablet, etc.), or desktop, if available, by selecting "Signoff."

    a. Determine whether all captions are completed and all relevant check boxes are checked.

    b. Confirm that the **STOP REPORT** states in plain language a specific suspected felony or Penal Law misdemeanor.

    c. Determine whether the officer's description in the "Narrative (Describe the Circumstances That Led to the Stop)" caption includes the facts and circumstances relied upon by the officer to conclude that there was reasonable suspicion that the person stopped had committed, was committing, or was about to commit a felony or Penal Law misdemeanor.

    d. If the person was frisked, determine whether the officer's description in the "Narrative (Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)" caption includes the facts and circumstances relied upon by the officer to conclude that there was reasonable suspicion that the person was armed and dangerous and, if a search was conducted, the facts and circumstances that provided the basis for the search, the area searched and whether a weapon or other contraband was recovered.

**INTERIM ORDER NO.  DRAFT 12**

| | | |
|---|---|---|
| **PATROL SUPERVISOR /UNIT SUPERVISOR (continued)** | e. | Complete the "Supervisory Action (Must Complete)" caption.  Consider the facts and information as conveyed by the member and recorded on the **STOP REPORT** and determine whether: |

          (1)    The stop was based upon reasonable suspicion of a felony or Penal Law misdemeanor

          (2)    If the person was frisked, whether the frisk was supported by a reasonable suspicion that the person was armed and dangerous; and

          (3)    If the person was searched, whether there was a sufficient basis for the search.

      f.    If appropriate, instruct member of the service and/or refer for additional training and/or other remedial action, including, disciplinary action and indicate such in the "Follow-Up Action (If appropriate)" caption.

51.    Complete all captions in the "Reviewing Supervisor" section.

52.    If, based upon review of the **STOP REPORT**, **ACTIVITY LOG** entry and discussion with the uniformed member of the service, the **STOP REPORT** requires additional information:

    a.    Check "No" following question "Report Accurate and Complete?"

    b.    Enter instruction to the reporting member of the service in the "Note" section in FORMS

    c.    Select the "Check" icon to return the **STOP REPORT** to the reporting member of the service for correction.

53.    If the report is "Accurate and Complete" (i.e., all captions filled out and narrative contains adequate details) but after review it is determined there was not a sufficient basis for the stop and/or frisk and/or search, indicate such by checking the appropriate field(s) on the electronic form.

    a.    Select the action taken from the "Follow-Up Action (If appropriate)" section, and

    b.    Approve the **STOP REPORT**.

54.    "Approve" and "Finalize" the **STOP REPORT** following the prompts in FORMS.

55.    Review the member's **ACTIVITY LOG** entry and ensure that the detailed description and the pedigree information of the person stopped is included and legible, unless the person stopped refused to provide the information.

56.    If force was used, determine whether the use of force was reasonable under the circumstances of the encounter.

57.    Prior to the end of tour, electronically "sign-off" on **STOP REPORT** and return **ACTIVITY LOG** back to member upon completion of the review.

*NOTE*    *If the **STOP REPORT** was submitted for an investigative encounter that did not rise to a Terry Stop, (e.g., Level 1/Request for Information or Level 2/Common Law Right of Inquiry) or for an arrest or summons that was not the result of a Terry Stop, then select the appropriate fields on the **STOP REPORT** and approve the **STOP REPORT**, but note in the comments section that the **STOP REPORT** was prepared in error and the reason a report should not have been prepared.*

**INTERIM ORDER NO.  DRAFT 12**

| | | |
|---|---|---|
| **UNIFORMED MEMBER OF THE SERVICE** | 58. | Upon rejection of **STOP REPORT** from the reviewing supervisor, access the report from the FORMS "Inbox," go to the "Actions" tab, select "Edit" and make the directed corrections. |

        a.    Select the "Check" icon to resubmit to supervisor for review and approval.

59.    Prior to the end of tour, make a photocopy of the **ACTIVITY LOG** entry detailing the Terry Stop and submit to the desk officer/designee.

**DESK OFFICER/ DESIGNEE**

60.    Log into FORMS and select "SEARCH." A search must be conducted of all **STOP REPORTS** prepared during tour.

61.    If a **STOP REPORT** was prepared, print out the "approved" **STOP REPORT** from the queue and attach it to the photocopied **ACTIVITY LOG** entry submitted by the uniformed member of the service.

        a.    Place **STOP REPORT** and photocopy of **ACTIVITY LOG** entry into the command's **STOP REPORT** binder maintained at the desk in sequential order.

**INTEGRITY CONTROL OFFICER**

62.    Personally conduct, in conformance with the Quality Assurance Division's self-inspection program, the command self-inspection of **STOP REPORTS**.

63.    Ensure that the patrol supervisor/unit supervisor reviews the **STOP REPORTS** and **ACTIVITY LOGS** and that appropriate actions are taken where necessary.

        a.    In assessing the patrol/unit supervisor's review of officers' Level 3 encounters, determine whether the supervisor appropriately reviewed the stop and, if conducted, the frisk and search, and any force used. In making these determinations, consider whether the supervisor examined the information recorded on the **STOP REPORT** and appropriately evaluated whether the information reasonably supports the conclusion that the member's actions were based upon reasonable suspicion.

        b.    Take appropriate remedial action if warranted, including discipline, if appropriate.

        c.    Inform commanding officer and training sergeant of any matters of importance, including deficiencies or patterns of deficiencies in regard to the bases of stops and/or frisks conducted, or in the preparation of **STOP REPORTS** and **ACTIVITY LOGS**.

**EXECUTIVE OFFICER**

64.    Personally conduct, in conformance with the Quality Assurance Division's self-inspection program, the command self-inspection of "POLICE INITIATED ENFORCEMENT."

**COMMANDING OFFICER**

65.    Assume responsibility for the integrity of the administration of this procedure.

66.    Consult with the executive officer, integrity control officer, platoon commanders, special operations lieutenant, training sergeant, patrol supervisors/unit supervisors to ensure the constitutionality and effectiveness of stops.

**INTERIM ORDER NO.  DRAFT 12**

| **COMMANDING OFFICER** (continued) | a. | Identify training needs and necessary remedial or disciplinary actions required. |
|---|---|---|
| | b. | Prepare a report on **Typed Letterhead** addressed to the Commanding Officer, Legal Bureau requesting remedial training for any members of the service identified as having a deficient understanding of the law pertaining to street encounters. |

*NOTE*

*Minor or inadvertent mistakes in documentation or isolated cases of erroneous but good-faith stops or frisks by members of the service should ordinarily be addressed through instruction and training. In most instances, instruction and training should be accomplished at the command level. The application of the law in this area can be complicated, and investigative encounters are fluid situations in which one event or observation can alter the level of suspicion or danger. A single erroneous judgment will not generally warrant referral to the Legal Bureau for retraining. However, members of the service who evince a lack of comprehension of the core concepts of the law governing this procedure should be referred to the Legal Bureau.*

**TRAINING SERGEANT**

67. Conduct command level training to help ensure compliance with the Department's policy regarding investigative encounters.
  a. Periodically review and identify command-wide and individual training needs and necessary remedial actions.
  b. Record training sessions in the Training Attendance Certification Transcript Integrated Collection System (TACTICS) to assist with future review and analysis of command's compliance and training in investigative encounters.
  c. Identify members who have been referred for training in **STOP REPORTS** and ensure that the training is conducted.
    (1) Track, record and report such training to the commanding officer on a quarterly basis.

*ADDITIONAL DATA*

*There are many facts and circumstances that may lead a police officer to conclude that there is reasonable suspicion that a person has committed, is committing or is about to commit a felony or Penal Law misdemeanor. Such factors may include information received from third parties as well as the actions of the suspect, the suspect's physical and temporal proximity to the scene of a crime, the suspect's resemblance to the specific description of a perpetrator of a crime (based on more than just race, age and gender) and information known to the officer about the suspect or particular location, among other factors. Each situation is unique and the information available to members of the service will vary.*

*"Furtive movements" or mere presence in a "high crime area," standing alone, are insufficient bases for a stop or frisk. Moreover, even when used in combination with other stop factors, the stopping officer must be able to specifically describe the suspicious nature of the "furtive movements" which she/he observed, and she/he must not define the "high crime area" too broadly, such as encompassing an entire precinct or borough. In addition, a person may not be stopped merely because he or she matches a generalized description of a crime suspect, such as an 18-25 year old male of a particular race. If a physical description is the only factor relied on by the stopping officer, it must be more specific to form the basis for a stop. Individuals may not be*

**INTERIM ORDER NO.  DRAFT 12**

**ADDITIONAL DATA (continued)**

*targeted for stops and frisks because they are members of a racial or ethnic group that appears more frequently in local crime suspect data. Race may only be considered where the stop is based upon a specific and reliable suspect description that includes not just race, age and gender, but other identifying characteristics and information. When a police officer carries out a stop based on reasonable suspicion that a person fits such a description, the officer may consider the race of the suspect, just as the officer may consider the suspect's height or hair color.*

*Commanding officers of commands other than patrol precincts, PSAs and transit districts (e.g., Detective Bureau, Strategic Response Group, etc.) will designate a supervisor to perform the desk officer duties listed above. Photocopies of the* **STOP REPORTS** *will be sent via Department mail to the precinct of occurrence daily. The precinct of occurrence will then place the photocopies in sequential order in their* **STOP REPORT** *command binder.*

*Desk officers/designees in commands other than patrol precincts, PSAs or transit districts will maintain a standardized* **STOP REPORT** *command binder with photocopies of* **STOP REPORTS** *prepared by their respective command. Additionally, a corresponding* **Stop Report Index** *for the command will be printed out daily and will likewise be maintained in the command binder. Commanding officers will ensure that photocopied* **STOP REPORTS** *maintained in the command binder are removed and filed in the command by year of occurrence every January 1st and quarterly thereafter (April 1st, July 1st and October 1st).*

*All uniformed members of the service below the rank of Captain are required to carry* **ACTIVITY LOG** *inserts* **INVESTIGATIVE ENCOUNTERS (PD383-090)** *and* **SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)** *when performing patrol duties in uniform.*

**RELATED PROCEDURES**

*Activity Logs (P.G. 212-08)*
*Department Policy Prohibiting Racial Profiling and Bias-Based Policing (P.G. 203-25)*
*Executive Officer (P.G. 202-10)*
*Interior Patrol of Multiple Dwelling Buildings Enrolled in the Trespass Affidavit Program (P.G. 212-59)*
*Interior Patrol of Housing Authority Buildings (P.G. 212-60)*
*Public Contact – General (P.G. 203-09)*

**FORMS AND REPORTS**

**ACTIVITY LOG (PD112-145)**
**RIGHT TO KNOW BUSINESS CARD (PD142-012)**
**RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**
**COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**
**STOP REPORT (PD383-151)**
**INVESTIGATIVE ENCOUNTERS (PD383-090)**
**SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)**
**Stop Report Index**

3.    Members of the service are advised to refer to Operations Order **XX**, series 2018, "Creation of **RIGHT TO KNOW BUSINESS CARD (PD142-012)** and **RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**" for further information regarding appropriate usage and requisition of the **RIGHT TO KNOW BUSINESS CARD (PD142-012)** and **RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**.

**INTERIM ORDER NO.   DRAFT 12**

4.     In addition, members of the service are advised to refer to Operations Order **XX**, series 2018, "Creation of **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**" for further information regarding appropriate usage and requisition of the **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**.

5.     Revised Department form entitled, "**STOP REPORT (PD383-151)**" can be requisitioned from the Quartermaster Section as follows:

| INDEX NUMBER | PD NUMBER | TITLE |
|---|---|---|
| **2259** | **383-151** | **STOP REPORT** |

6.     Department form entitled, "**STOP REPORT (PD383-151)**" is also available on the Department Intranet in the "Department Forms" section.

7.     All existing copies of Department form entitled, "**STOP REPORT (PD383-151)**" bearing revision date prior to **[Rev. 10-18]** are OBSOLETE and are to be destroyed.

8.     Revised **ACTIVITY LOG (PD112-145)** insert entitled, "**INVESTIGATIVE ENCOUNTERS (PD383-090)**" is available as a PDF on both the Department Intranet under caption "Activity Log Inserts," accessible via the "DIRECTIVES & MANUALS" application, and on Department smartphones under caption "Activity Log Inserts," accessible via the "Portal" application, under "Publications."

9.     All existing copies of **ACTIVITY LOG (PD112-145)** insert entitled, "**INVESTIGATIVE ENCOUNTERS (PD383-090)**" bearing revision date prior to **[Rev. 10-18]** are OBSOLETE and are to be destroyed.

10.    Upon publication, this Interim Order has been incorporated into the On-Line Patrol Guide.

11.    Any provisions of the Department Manual or other Department directives in conflict with the contents of this Order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**ALL Commands**

**INTERIM ORDER NO. DRAFT 12**

# Patrol Guide 212-11 Changes Highlighted



# DRAFT INTERIM ORDER

| SUBJECT: | **REVISION TO PATROL GUIDE 212-11, "INVESTIGATIVE ENCOUNTERS: REQUESTS FOR INFORMATION, COMMON LAW RIGHT OF INQUIRY AND LEVEL 3 STOPS"** | |
|---|---|---|
| DATE ISSUED: | REFERENCE: | NUMBER: |
| **10-11-18** | ***P.G. 212-11** | **DRAFT 12** |

1. In order to ensure Departmental compliance with Local Law 54 of 2018, entitled, "Right to Know Act – Requiring Officers to Identify Themselves to the Public," enhance transparency and improve the performance of police duty, the Department has both created, and revised, various cards, forms, and **ACTIVITY LOG (PD112-145)** inserts. Members of the service will now prepare a new pre-printed card entitled, "**RIGHT TO KNOW BUSINESS CARD (PD142-012)**" that contains the individual member's rank, last name, and shield number, with additional blank space for command name and phone number, and a generic card entitled, "**RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**" that must be completed by the member with all pertinent identification information when their supply of **RIGHT TO KNOW BUSINESS CARDS** becomes exhausted. These cards are to be prepared, as appropriate, in place of both the current card entitled, "**CONTACT CARD (PD142-011)**" and **ACTIVITY LOG** insert entitled, "**WHAT IS A STOP? (PD383-153)**." In addition, a new Department form entitled, "**COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**" will be completed by members when requesting a voluntary consent search during a Level 2 encounter. Furthermore, Department form **STOP REPORT (PD383-151)** and **ACTIVITY LOG** log insert **INVESTIGATIVE ENCOUNTERS (PD383-090)** have been amended to more accurately reflect Department practices. As a result, Patrol Guide 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops" has been revised.

2. Therefore, effective immediately, Patrol Guide 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops" is **SUSPENDED** and the following procedure will be complied with:

**PURPOSE**    To describe the types of encounters a uniformed member of the service may initiate with a member of the public during the course of his or her official duties, the level of knowledge required for each type of encounter, the scope of a police officer's authority for each type of encounter, the measures that are permissible to protect uniformed members of the service from injury while engaged in such encounters, and the procedures to be followed by a member of the service during these encounters.

**SCOPE**    In accordance with their oath to uphold the law, uniformed members of the service must conduct investigative encounters in a lawful and respectful manner; however, nothing in this section is intended to deter an officer from initiating appropriate inquiries and investigative encounters, including stops, or using any lawful and appropriate tactics to ensure the officer's safety during such investigative encounters. Moreover, this procedure should not be interpreted to discourage an officer from engaging in voluntary consensual conversations with members of the public. Members of the service are encouraged to develop positive relationships in the communities they serve. Such positive interactions with the community foster trust and understanding that will in turn enhance public safety and officer safety.

**DEFINITIONS**   INVESTIGATIVE ENCOUNTERS - In the context of this procedure, an investigative encounter is a police interaction with a member of the public/civilian for a law enforcement or investigative purpose. The U.S. Supreme Court in the case of *Terry v. Ohio*, established the authority of the police to stop and possibly frisk a person, under certain circumstances, based upon reasonable suspicion. The New York State Court of Appeals in the case of *People v. DeBour* established the types or levels of investigative encounters and the authority of the police at each level, consistent with federal constitutional standards. These encounter levels and the authority of the police at each level are outlined in the definitions that follow.

REQUEST FOR INFORMATION (LEVEL 1 ENCOUNTER) - A request for information is an encounter between a civilian and a uniformed member of the service conducted for the purpose of requesting information from the civilian. The uniformed member of the service must have an objective credible reason to approach the civilian. This type of encounter does not require any suspicion of criminal activity. The objective is to gather information and not to focus on the person as a potential suspect. A police officer may seek information related to the reason(s) the person was approached, such as the person's name, address and destination, if those questions are related to the objective credible reason for the approach. The officer may not ask accusatory questions. The person may refuse to answer questions and/or walk or even run away. Refusal to answer questions and/or walking or running away does not escalate the encounter. However, providing false or inconsistent information at any level may escalate the encounter. At this level, the officer may not seek consent to search, may not use force, and may not create a situation (either by words or actions) where a reasonable person would not feel free to leave. The officer may engage protective measures in the rare Level 1 encounter when he or she has a reasonable concern for his or her safety, either because of the nature of the approach or the individual's behavior.

OBJECTIVE CREDIBLE REASON - A reason is objectively credible if it is based on more than a hunch or a whim. The reason to gather more information may relate to a public safety/service function or a law enforcement function, but need not be based on any indication of criminality.

PROTECTIVE MEASURES - Even if an officer does not have reasonable suspicion that a person is armed and dangerous, there are tactics for officer safety that an officer may use short of a frisk when the officer reasonably perceives her/his safety is at risk. These include ordering the individual to take her/his hands out of her/his pockets, put down or step away from an otherwise lawful object that could be used as a weapon, grabbing the person's hands, if the circumstances suggest the person may be grabbing a weapon, or forcibly removing the person's hands from her/his pockets, if the individual refuses to remove them from her/his pockets. Any lawfully possessed article that is removed/safeguarded by a member of the service during an investigative encounter should be returned to the individual at the conclusion of the encounter (unless probable cause is developed and the individual is arrested). The officer

INTERIM ORDER NO. **DRAFT 12**

**DEFINITIONS**
**(continued)**

can engage protective measures at Level 2 and Level 3.  In rare occasions, the officer can engage protective measures at Level 1.

COMMON LAW RIGHT OF INQUIRY (LEVEL 2 ENCOUNTER) - A common law right of inquiry is an encounter between a civilian and a uniformed member of the service conducted for the purpose of asking the civilian pointed or accusatory questions because the police officer has a "founded suspicion" that criminal activity is afoot. "Founded suspicion" is a lower level of suspicion than the "reasonable suspicion" required to conduct a "stop" or Level 3 encounter. Upon a founded suspicion of criminality, the officer may approach a person to ask accusatory questions and may seek consent to search; however, consent must be voluntarily given. During an encounter, providing innocuous answers does not escalate the encounter. However, providing false or inconsistent information at any level may escalate the encounter. During a Level 2 encounter, force may not be used, the person is free to refuse to answer questions, and is free to leave. Refusal to answer questions or walking away does not raise the level of suspicion. However, flight (running away) during a Level 2 encounter does escalate the encounter to Level 3 and the officer is permitted to pursue the person. The officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away. The officer may engage protective measures, when he or she has a reasonable concern for his or her safety.

FOUNDED SUSPICION - Founded suspicion of criminal activity arises when there is some present indication of criminality based on observable conduct or reliable hearsay information. In other words, the officer has sufficient information to begin to suspect the person of criminal conduct.

TERRY STOP (LEVEL 3 ENCOUNTER) - A Terry Stop/Level 3 encounter is any encounter between a civilian and a uniformed member of the service in which a reasonable person would not feel free to disregard the officer and walk away.  A Level 3 encounter may take place even without the threat or use of physical force by the officer. Encounters involving nothing more than commands or accusatory questions can rise to the level of a stop, provided that the commands and questions would lead a reasonable person to conclude that she/he was not free to terminate the encounter.  Whether an encounter amounts to a stop will be judged by the facts and circumstances of the encounter. A stop may be conducted only when a police officer has an individualized reasonable suspicion that the person stopped has committed, is committing, or is about to commit a felony or Penal Law misdemeanor. The police officer may ask accusatory or pointed questions and detain the person while an expeditious investigation is conducted to determine if there is probable cause to arrest the person. During an encounter, providing innocuous answers or refusal to answer questions does not escalate the encounter. However, providing false or inconsistent information at any level may escalate the encounter.  The police officer may seek consent to search.  The consent must be voluntarily given.  Reasonable force may be used to stop a person.  The type and amount of force used must be objectively reasonable under the circumstances. The officer may engage protective measures, when he or she has a reasonable concern for his or her safety.  The officer

**DEFINITIONS**
**(continued)**

may frisk the person, if the officer has reasonable suspicion that the person is armed and dangerous.

REASONABLE SUSPICION - Reasonable suspicion exists when the information known to the member of the service would make an ordinarily prudent and cautious police officer under the circumstances believe that a felony or Penal Law misdemeanor has been, is being or is about to be committed. The officer must have a particularized and objective basis for suspecting the person stopped of the criminal conduct. The officer must be able to articulate specific facts establishing justification for the stop; hunches or gut feelings are not sufficient.

FRISK - A carefully limited running of the hands over the outside of a person's clothing feeling for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons. A frisk is authorized when the member of the service reasonably suspects the person is armed and dangerous. This includes situations in which the officer reasonably suspects that the person has committed, is committing, or is about to commit a violent crime or when the officer observes something on the person that she/he reasonably suspects is a weapon. A frisk may not be conducted to discover evidence or the proceeds or instrumentalities of a crime. A police officer cannot "frisk" a bag or item of personal property unless the officer has a reasonable suspicion that the person is armed and dangerous and the bag or item could contain a weapon and is within the person's reach.

SEARCH AFTER FRISK - In the context of the investigative encounters described in this section, a search occurs when the officer places her/his hands inside a pocket or other interior portions of a person's clothing or personal property to remove an object that the member felt during a frisk and reasonably suspects is a weapon or dangerous instrument.

**PROCEDURE**

When a uniformed member of the service engages in an investigative encounter with a civilian:

CONDUCTING A LEVEL 1 ENCOUNTER - A REQUEST FOR INFORMATION:

**UNIFORMED**
**MEMBER OF**
**THE SERVICE**

1.  Approach the person if there is an objective credible reason to do so.
2.  Identify yourself as a police officer verbally and by displaying your shield in a conspicuous manner, if practicable.
3.  DO NOT detain the person, use or threaten the use of force, or request consent to search.
4.  You may seek information and ask general, non-threatening questions related to the reason for the approach. However, pointed and accusatory questions are not permitted.
5.  The person may refuse to answer questions and is free to leave. However, providing false or inconsistent information at any level may escalate the encounter.

INTERIM ORDER NO.  **DRAFT 12**

| | |
|---|---|
| **UNIFORMED MEMBER OF THE SERVICE (continued)** | 6. You may inform the person that she/he is free to leave, but you are not required to do so unless she/he specifically asks.<br>7. You should provide the individual with an explanation for the encounter, unless providing such information would impair a criminal investigation.<br>8. You may engage protective measures in the rare Level 1 encounter when you have a reasonable concern for your safety, either because of the nature of the approach or the individual's behavior |

CONDUCTING A LEVEL 2 ENCOUNTER - THE COMMON LAW RIGHT OF INQUIRY:

| | |
|---|---|
| **UNIFORMED MEMBER OF THE SERVICE** | 9. Approach the person if you have a founded suspicion of criminality.<br>10. Identify yourself as a police officer by providing your rank, name, shield, and command, and display your shield in a conspicuous manner, absent exigent circumstances.<br>11. DO NOT detain the person or use or threaten the use of force.<br>12. You may seek information and ask questions, including pointed and accusatory questions.<br>    a. Offer **RIGHT TO KNOW BUSINESS CARD (PD142-012)** or **RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**, as appropriate, in accordance with *P.G. 203-09, "Public Contact – General."*<br>13. The person may refuse to answer questions and is free to walk away. If the person runs away, you may pursue.<br>14. You may request consent to search; the consent must be voluntarily given.<br>    a. Ask for consent to search in a manner that elicits a clear 'yes' or 'no' response. When seeking consent, make clear that the search will not occur if the person does not consent. For example, in a non-threatening manner and without making promises, you may ask the following: "*I can only search you, if you consent. Do you understand? May I search you?*"<br>    b. If a person does not consent to a search, you cannot conduct a search.<br>    c. If you are seeking consent to search, you must video record the request and the person's response, if you have a Body - Worn Camera.<br>    d. Document the time, location, and date of such request, consent, refusal, and search (if performed), and the apparent race, ethnicity, gender, and age of the person who was the subject of such request and search, and your name, precinct, tax number and/or shield number on the **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**.<br>    e. Offer the person who is the subject of the request a **RIGHT TO KNOW BUSINESS CARD**, as appropriate, in all cases, and, if applicable, provide information on how to obtain a copy of the video record of the request and search (if performed). |

**INTERIM ORDER NO.  DRAFT 12**

**UNIFORMED MEMBER OF THE SERVICE (continued)**

     f.    This section does not apply in the following situations:

        (1)    You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities

        (2)    Exigent circumstances require your immediate action

        (3)    You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence.

15.    You may inform the person that she/he is free to leave, but you are not required to do so unless she/he specifically asks.

16.    You may engage protective measures, when you have a reasonable concern for your safety.

17.    Provide the individual with an explanation for the encounter, unless providing such information would impair a criminal investigation.

18.    Do not offer the person a **RIGHT TO KNOW BUSINESS CARD** or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, if the encounter ends in an arrest or a summons, unless requested.

19.    You are not required to proactively identify yourself, explain the reason for the encounter, or offer a **RIGHT TO KNOW BUSINESS CARD**, or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, in the following situations:

     a.    If engaged in undercover activity or operations

     b.    Exigent circumstances require your immediate action

     c.    You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence

     d.    You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities, unless requested by the subject of the search

     e.    You are verifying the identity of a person seeking entrance to an area that is restricted due to a public health, public safety, or security concern, such as a terrorist attack or a natural disaster.

**NOTE**    *During a Level 1 or Level 2 encounter, an officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away. A person may be detained only if a properly conducted Level 1 or Level 2 encounter yields information to support a reasonable suspicion that the person committed, was committing, or was about to commit a felony or Penal Law misdemeanor.*

INTERIM ORDER NO. **DRAFT 12**

<u>CONDUCTING A LEVEL 3 ENCOUNTER - A TERRY STOP:</u>

**UNIFORMED MEMBER OF THE SERVICE**

20. Upon reasonable suspicion that the person has committed, is committing, or is about to commit a felony or Penal Law misdemeanor, stop and detain the person for the purpose of conducting a criminal investigation.

21. Notify the radio dispatcher and include the location, number of persons being stopped and whether additional units are needed.

22. Identify yourself as a police officer by providing your rank, name, shield, and command, and display your shield in a conspicuous manner, absent exigent circumstances.

23. Question the suspect to the extent necessary to determine whether there is probable cause to make an arrest.

24. You may ask pointed and accusatory questions related to the reason for the stop. Refusal to answer questions or produce identification does not establish probable cause.

    *a.* Offer **RIGHT TO KNOW BUSINESS CARD** or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, as appropriate, in accordance with *P.G. 203-09, "Public Contact – General."*

25. You may request consent to search; the consent must be voluntarily given.

    a. Ask for consent to search in a manner that elicits a clear 'yes' or 'no' response. When seeking consent, make clear that the search will not occur if the person does not consent. For example, in a non-threatening manner and without making promises, you may ask the following: "*I can only search you, if you consent. Do you understand? May I search you?*"

    b. If a person does not consent to a search, you cannot conduct a search.

    c. If you are seeking consent to search, you must video record the request and the person's response, if you have a Body - Worn Camera.

    d. Document request, as appropriate, on **STOP REPORT (PD383-151)**.

    e. Offer the person who is the subject of the request a **RIGHT TO KNOW BUSINESS CARD** or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, as appropriate, in all cases, and, if applicable, provide information on how to obtain a copy of the video record of the request and search (if performed).

    f. This section does not apply in the following situations:

        (1) You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities

        (2) Exigent circumstances require your immediate action

        (3) You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence.

**INTERIM ORDER NO.  DRAFT 12**

**UNIFORMED MEMBER OF THE SERVICE (continued)**

26.    Reasonable force may be used to stop a person.

27.    You may engage protective measures, when you have a reasonable concern for your safety.

28.    You may frisk the person if at any point during the encounter, you have reasonable suspicion that the person is armed and dangerous (see "Conducting a Frisk, and When Appropriate, a Search:" below).

29.    The suspect may be detained only as long as necessary to confirm or dispel your suspicion that she/he was committing, committed, or was about to commit a felony or Penal Law misdemeanor. Authority to detain the suspect ends when the tasks tied to the reason for the stop are completed or reasonably should have been completed.

30.    Provide the individual with an explanation for the encounter, unless providing such information would impair a criminal investigation.

31.    Obtain the suspect's name, address, and any additional information that will be required to complete your **ACTIVITY LOG (PD112-145)** entry regarding the stop.

32.    Do not transport or otherwise move the suspect from the location where she/he is stopped unless she/he voluntarily consents or there is an exigency necessitating relocation (e.g., hostile crowd, threat to safety, hospital show-up, etc.).

33.    Release the person immediately after completing the investigation if probable cause to arrest does not exist.

34.    Do not offer the person stopped a **RIGHT TO KNOW BUSINESS CARD** or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, if the encounter ends in an arrest or a summons, unless requested.

35.    You are not required to proactively identify yourself, explain the reason for the encounter, or offer a **RIGHT TO KNOW BUSINESS CARD**, or **RIGHT TO KNOW BUSINESS CARD – GENERAL**, in the following situations:

    a.    If engaged in undercover activity or operations

    b.    Exigent circumstances require your immediate action

    c.    You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence

    d.    You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities, unless requested by the subject of the search

    e.    You are verifying the identity of a person seeking entrance to an area that is restricted due to a public health, public safety, or security concern, such as a terrorist attack or a natural disaster.

**INTERIM ORDER NO. DRAFT 12**

<u>CONDUCTING A FRISK, AND WHEN APPROPRIATE, A SEARCH:</u>

**UNIFORMED MEMBER OF THE SERVICE**

36. If a police officer develops a reasonable suspicion that a person is armed and dangerous, the officer may frisk the person for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons. Reasonable suspicion that a person is armed and dangerous may arise from the officer's observations or the facts and circumstances of the encounter including:

    a. Reasonable suspicion that the suspect has committed, is committing, or is about to commit a violent crime (e.g., assault with a deadly weapon, burglary, rape, robbery, etc.)
    b. Observation of something on the person that the officer reasonably suspects is a weapon
    c. A statement by the suspect stopped that she/he is armed
    d. Information known by the officer that the suspect may be carrying a weapon, such as statements from a victim or witness.

37. The purpose of the frisk is to ensure the safety of the officer and not to locate evidence of a crime, such as drugs.

38. There is no requirement to question a suspect prior to conducting a lawful frisk.

39. Conduct the frisk by carefully running your hands down the outside of the person's clothing.

40. Where the frisk reveals an object that the member of the service reasonably suspects may be a weapon, the member of the service may search only those interior portions of the stopped person's clothing to remove the weapon.

41. An officer may not frisk a person's bag or other item of personal property unless the officer has reasonable suspicion to believe that the person is armed and dangerous and that the bag or item of personal property could contain a weapon and is within the person's reach. If the bag/item is soft, the officer should run her/his hands down the outside of the bag/item and open it only if she/he feels the contours of what she/he believes is a weapon. If the bag/item is rigid and unlocked, the officer may open it to ensure it does not contain a weapon. If the bag/item is locked, the officer must obtain a search warrant or get consent to search from the person in order to search the bag/item.

*NOTE*

*The guidelines in step "41" do not apply to mass transit system checkpoint type inspections of backpacks, containers and other carry-on items that are capable of containing explosive devices.*

*Requesting identification documents: At any level, an officer may ask an individual to verbally identify herself/himself or present an identification document to verify that person's identity and/or address. During Level 1 or 2 encounters, when performing this task, the officer must not create a situation where the person does not feel free to leave. Other than the operator of a motor vehicle/motorcycle, members of the public are not required to possess identification documents or present identification documents to police officers when*

**INTERIM ORDER NO.  DRAFT 12**

**NOTE**
**(continued)**

*requested. Refusal or inability to produce identification alone will not elevate the level of the encounter. Absent probable cause that the person committed an offense, she/he may not be arrested or removed to a Department facility for further investigation merely because she/he refused to produce identification.*

<u>REQUIRED DOCUMENTATION:</u>

**UNIFORMED**
**MEMBER OF**
**THE SERVICE**

42. For all consent searches requested during a Level 2 encounter, prepare a **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT**, utilizing the Finest Online Records Management System (FORMS), for EACH person from whom you request consent to search. The **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT** in FORMS is available through Department mobile devices (cellular telephones and tablets).

  a. Prior to the end of tour, complete all applicable captions and follow the directions for each section of the **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT** in FORMS and select the "Check" icon to submit the **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT**.

  b. The **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT** is only prepared for Level 2 requests to search. If you seek consent to search during a Level 3 Terry Stop, document that request on your **STOP REPORT** in the appropriate places.

  c. The **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT** is not prepared in the following situations:

    (1) You are conducting a security search of a person entering a public building or facility, location, event, or gathering, including random security checks in MTA facilities

    (2) Exigent circumstances require your immediate action

    (3) You reasonably expect that you or someone else is in danger of physical injury, there is an imminent risk of property damage, to forestall the imminent escape of a suspect, or the imminent potential destruction of evidence.

43. For all Terry Stops/Level 3 encounters, prepare a **STOP REPORT**, utilizing FORMS, for EACH person stopped. The **STOP REPORT** in FORMS is available through Department mobile devices (cell phones and tablets).

  a. Prior to the end of tour, complete all applicable captions and follow the directions for each section of the **STOP REPORT** in FORMS and select the "Check" icon to submit the **STOP REPORT** to the patrol/unit supervisor.

  b. Check "REFUSED" in the appropriate space, if the person stopped refused to identify herself/himself.

    (1) Request the patrol supervisor to respond to verify refusal.

    (2) Do not detain the person, however, if the investigation is complete and there is no probable cause to make an arrest.

**INTERIM ORDER NO.  DRAFT 12**

| | |
|---|---|
| **UNIFORMED MEMBER OF THE SERVICE (continued)** | c.   Select all relevant factors that led to the stop if more than one descriptive term applies. |
| | d.   Describe in plain language (rather than numeric Penal Law section) the specific felony or Penal Law misdemeanor you suspected the person had committed, was committing, or was about to commit. |
| | e.   Describe in your own words, under the "Narrative (Describe the Circumstances That Led to the Stop)" caption, all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped had committed, was committing, or was about to commit a felony or Penal Law misdemeanor. |
| | f.   Describe in your own words, under the "Narrative (Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)" caption, all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped was armed and dangerous. In addition, if a search was conducted, describe the basis for the search, the specific area searched, and whether a weapon or other contraband was recovered. |

44.  When prompted to identify the "Reviewing Supervisor" in FORMS, enter the name or tax identification number of a supervisor   currently performing duty with the platoon/unit and select that supervisor from the dropdown menu that appears.

    a.   Select immediate squad/unit supervisor, if he/she is assigned to perform duty with the squad/unit and is available to review the **STOP REPORT**.

    b.   If not assigned to an immediate squad/unit supervisor or he/she is not available, enter the name or tax identification number of another supervisor performing duty with the squad/unit (e.g, patrol supervisor, detail supervisor, etc.).

45.  Notify the reviewing supervisor that the **STOP REPORT** was prepared and submitted to the supervisor's electronic "INBOX" folder in FORMS for review.

***NOTE***   *The **STOP REPORT** is <u>not</u> prepared for Level 1 and Level 2 encounters, unless the encounter escalates to a Level 3 Terry Stop. Similarly, the **STOP REPORT** is <u>not</u> prepared when an officer makes a summary arrest for an offense/crime or issues a Criminal Court summons or a civil summons returnable to the Office of Administrative Trials and Hearings for an observed violation, <u>unless</u> the suspect was initially detained for investigation in a Level 3 Terry Stop. The **STOP REPORT** is <u>not</u> prepared for traffic stops based on violations of the Vehicle and Traffic Law, unless the suspect is frisked.*

*Uniformed members of the service (UMOS) should be mindful that users of FORMS will be timed out after 55 minutes, therefore UMOS should periodically click on the "Save" icon to ensure that entered data is not lost.*

**INTERIM ORDER NO.  DRAFT 12**

| | | |
|---|---|---|
| **UNIFORMED MEMBER OF THE SERVICE (continued)** | 46. | Record details in **ACTIVITY LOG** and include the following information in the entry: |

      a.    Date, time and location of stop

      b.    Pedigree information (name, date of birth, address, telephone number), unless refused, and detailed description of the person stopped

      c.    Document refusal to provide pedigree information, if applicable

      d.    ICAD number, if applicable.

47.    Prior to the end of your tour, submit the **STOP REPORT** and **ACTIVITY LOG** to the patrol supervisor/unit supervisor for review.

      a.    The reviewing supervisor must be at least one rank higher than the member submitting the **STOP REPORT**.

48.    Inform the patrol supervisor/unit supervisor of facts of the stop and, if conducted, frisk, and/or search.

*NOTE*

*The pedigree information of an individual who is stopped is not captured electronically and will only be recorded in the member's **ACTIVITY LOG**. Accurately recording pedigree information in the **ACTIVITY LOG** will enable members to later identify persons stopped and may aid investigators during the course of a criminal investigation. Do not put pedigree information into the **STOP REPORT** narratives.*

<u>SUPERVISORY AND ADMINISTRATIVE FUNCTIONS</u>:

**PATROL SUPERVISOR /UNIT SUPERVISOR**

49.    Respond to the scene of stops when feasible.

50.    Discuss the circumstances of the stop with the member of the service and review the **STOP REPORT** in FORMS using a Department mobile device (e.g., cellphone, tablet, etc.), or desktop, if available, by selecting "Signoff."

      a.    Determine whether all captions are completed and all relevant check boxes are checked.

      b.    Confirm that the **STOP REPORT** states in plain language a specific suspected felony or Penal Law misdemeanor.

      c.    Determine whether the officer's description in the "Narrative (Describe the Circumstances That Led to the Stop)" caption includes the facts and circumstances relied upon by the officer to conclude that there was reasonable suspicion that the person stopped had committed, was committing, or was about to commit a felony or Penal Law misdemeanor.

      d.    If the person was frisked, determine whether the officer's description in the "Narrative (Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)" caption includes the facts and circumstances relied upon by the officer to conclude that there was reasonable suspicion that the person was armed and dangerous and, if a search was conducted, the facts and circumstances that provided the basis for the search, the area searched and whether a weapon or other contraband was recovered.

**INTERIM ORDER NO. DRAFT 12**

**PATROL SUPERVISOR /UNIT SUPERVISOR (continued)**

    e.    Complete the "Supervisory Action (Must Complete)" caption.   Consider the facts and information as conveyed by the member and recorded on the **STOP REPORT** and determine whether:

    (1)    The stop was based upon reasonable suspicion of a felony or Penal Law misdemeanor

    (2)    If the person was frisked, whether the frisk was supported by a reasonable suspicion that the person was armed and dangerous; and

    (3)    If the person was searched, whether there was a sufficient basis for the search.

    f.    If appropriate, instruct member of the service and/or refer for additional training and/or other remedial action, including, disciplinary action and indicate such in the "Follow-Up Action (If appropriate)" caption.

51.    Complete all captions in the "Reviewing Supervisor" section.

52.    If, based upon review of the **STOP REPORT**, **ACTIVITY LOG** entry and discussion with the uniformed member of the service, the **STOP REPORT** requires additional information:

    a.    Check "No" following question "Report Accurate and Complete?"

    b.    Enter instruction to the reporting member of the service in the "Note" section in FORMS

    c.    Select the "Check" icon to return the **STOP REPORT** to the reporting member of the service for correction.

53.    If the report is "Accurate and Complete" (i.e., all captions filled out and narrative contains adequate details) but after review it is determined there was not a sufficient basis for the stop and/or frisk and/or search, indicate such by checking the appropriate field(s) on the electronic form.

    a.    Select the action taken from the "Follow-Up Action (If appropriate)" section, and

    b.    Approve the **STOP REPORT**.

54.    "Approve" and "Finalize" the **STOP REPORT** following the prompts in FORMS.

55.    Review the member's **ACTIVITY LOG** entry and ensure that the detailed description and the pedigree information of the person stopped is included and legible, unless the person stopped refused to provide the information.

56.    If force was used, determine whether the use of force was reasonable under the circumstances of the encounter.

57.    Prior to the end of tour, electronically "sign-off" on **STOP REPORT** and return **ACTIVITY LOG** back to member upon completion of the review.

*NOTE*    *If the **STOP REPORT** was submitted for an investigative encounter that did not rise to a Terry Stop, (e.g., Level 1/Request for Information or Level 2/Common Law Right of Inquiry) or for an arrest or summons that was not the result of a Terry Stop, then select the appropriate fields on the **STOP REPORT** and approve the **STOP REPORT**, but note in the comments section that the **STOP REPORT** was prepared in error and the reason a report should not have been prepared.*

**INTERIM ORDER NO.  DRAFT 12**

| | | |
|---|---|---|
| **UNIFORMED MEMBER OF THE SERVICE** | 58. | Upon rejection of **STOP REPORT** from the reviewing supervisor, access the report from the FORMS "Inbox," go to the "Actions" tab, select "Edit" and make the directed corrections. |
| | a | Select the "Check" icon to resubmit to supervisor for review and approval. |
| | 59. | Prior to the end of tour, make a photocopy of the **ACTIVITY LOG** entry detailing the Terry Stop and submit to the desk officer/designee. |

| | | |
|---|---|---|
| **DESK OFFICER/ DESIGNEE** | 60. | Log into FORMS and select "SEARCH." A search must be conducted of all **STOP REPORTS** prepared during tour. |
| | 61. | If a **STOP REPORT** was prepared, print out the "approved" **STOP REPORT** from the queue and attach it to the photocopied **ACTIVITY LOG** entry submitted by the uniformed member of the service. |
| | a. | Place **STOP REPORT** and photocopy of **ACTIVITY LOG** entry into the command's **STOP REPORT** binder maintained at the desk in sequential order. |

| | | |
|---|---|---|
| **INTEGRITY CONTROL OFFICER** | 62. | Personally conduct, in conformance with the Quality Assurance Division's self-inspection program, the command self-inspection of **STOP REPORTS**. |
| | 63. | Ensure that the patrol supervisor/unit supervisor reviews the **STOP REPORTS** and **ACTIVITY LOGS** and that appropriate actions are taken where necessary. |
| | a. | In assessing the patrol/unit supervisor's review of officers' Level 3 encounters, determine whether the supervisor appropriately reviewed the stop and, if conducted, the frisk and search, and any force used. In making these determinations, consider whether the supervisor examined the information recorded on the **STOP REPORT** and appropriately evaluated whether the information reasonably supports the conclusion that the member's actions were based upon reasonable suspicion. |
| | b. | Take appropriate remedial action if warranted, including discipline, if appropriate. |
| | c. | Inform commanding officer and training sergeant of any matters of importance, including deficiencies or patterns of deficiencies in regard to the bases of stops and/or frisks conducted, or in the preparation of **STOP REPORTS** and **ACTIVITY LOGS**. |

| | | |
|---|---|---|
| **EXECUTIVE OFFICER** | 64. | Personally conduct, in conformance with the Quality Assurance Division's self-inspection program, the command self-inspection of "POLICE INITIATED ENFORCEMENT." |

| | | |
|---|---|---|
| **COMMANDING OFFICER** | 65. | Assume responsibility for the integrity of the administration of this procedure. |
| | 66. | Consult with the executive officer, integrity control officer, platoon commanders, special operations lieutenant, training sergeant, patrol supervisors/unit supervisors to ensure the constitutionality and effectiveness of stops. |

**INTERIM ORDER NO.  DRAFT 12**

| | | |
|---|---|---|
| **COMMANDING OFFICER (continued)** | a. | Identify training needs and necessary remedial or disciplinary actions required. |
| | b. | Prepare a report on **Typed Letterhead** addressed to the Commanding Officer, Legal Bureau requesting remedial training for any members of the service identified as having a deficient understanding of the law pertaining to street encounters. |

*NOTE*    *Minor or inadvertent mistakes in documentation or isolated cases of erroneous but good-faith stops or frisks by members of the service should ordinarily be addressed through instruction and training. In most instances, instruction and training should be accomplished at the command level. The application of the law in this area can be complicated, and investigative encounters are fluid situations in which one event or observation can alter the level of suspicion or danger. A single erroneous judgment will not generally warrant referral to the Legal Bureau for retraining. However, members of the service who evince a lack of comprehension of the core concepts of the law governing this procedure should be referred to the Legal Bureau.*

**TRAINING SERGEANT**    67.   Conduct command level training to help ensure compliance with the Department's policy regarding investigative encounters.

    a.   Periodically review and identify command-wide and individual training needs and necessary remedial actions.

    b.   Record training sessions in the Training Attendance Certification Transcript Integrated Collection System (TACTICS) to assist with future review and analysis of command's compliance and training in investigative encounters.

    c.   Identify members who have been referred for training in **STOP REPORTS** and ensure that the training is conducted.

        (1)   Track, record and report such training to the commanding officer on a quarterly basis.

*ADDITIONAL DATA*    *There are many facts and circumstances that may lead a police officer to conclude that there is reasonable suspicion that a person has committed, is committing or is about to commit a felony or Penal Law misdemeanor. Such factors may include information received from third parties as well as the actions of the suspect, the suspect's physical and temporal proximity to the scene of a crime, the suspect's resemblance to the specific description of a perpetrator of a crime (based on more than just race, age and gender) and information known to the officer about the suspect or particular location, among other factors. Each situation is unique and the information available to members of the service will vary.*

*"Furtive movements" or mere presence in a "high crime area," standing alone, are insufficient bases for a stop or frisk. Moreover, even when used in combination with other stop factors, the stopping officer must be able to specifically describe the suspicious nature of the "furtive movements" which she/he observed, and she/he must not define the "high crime area" too broadly, such as encompassing an entire precinct or borough. In addition, a person may not be stopped merely because he or she matches a generalized description of a crime suspect, such as an 18-25 year old male of a particular race.  If a physical description is the only factor relied on by the stopping officer, it must be more specific to form the basis for a stop.  Individuals may not be*

| | |
|---|---|
| **ADDITIONAL DATA** *(continued)* | *targeted for stops and frisks because they are members of a racial or ethnic group that appears more frequently in local crime suspect data. Race may only be considered where the stop is based upon a specific and reliable suspect description that includes not just race, age and gender, but other identifying characteristics and information. When a police officer carries out a stop based on reasonable suspicion that a person fits such a description, the officer may consider the race of the suspect, just as the officer may consider the suspect's height or hair color.* |
| | *Commanding officers of commands other than patrol precincts, PSAs and transit districts (e.g., Detective Bureau, Strategic Response Group, etc.) will designate a supervisor to perform the desk officer duties listed above. Photocopies of the **STOP REPORTS** will be sent via Department mail to the precinct of occurrence daily. The precinct of occurrence  will then place the photocopies in sequential order in their **STOP REPORT** command binder.* |
| | *Desk officers/designees in commands other than patrol precincts, PSAs or transit districts will maintain a standardized **STOP REPORT** command binder with photocopies of **STOP REPORTS** prepared by their respective command. Additionally, a corresponding **Stop Report Index** for the command will be printed out daily and will likewise be maintained in the command binder. Commanding officers will ensure that photocopied **STOP REPORTS** maintained in the command binder are removed and filed in the command by year of occurrence every January 1st and quarterly thereafter (April 1st, July 1st and October 1st).* |
| | *All uniformed members of the service below the rank of Captain are required to carry **ACTIVITY LOG** inserts **INVESTIGATIVE ENCOUNTERS (PD383-090)** and **SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)** when performing patrol duties in uniform.* |
| **RELATED PROCEDURES** | *Activity Logs (P.G. 212-08)*<br>*Department Policy Prohibiting Racial Profiling and Bias-Based Policing (P.G. 203-25)*<br>*Executive Officer (P.G. 202-10)*<br>*Interior Patrol of Multiple Dwelling Buildings Enrolled in the Trespass Affidavit Program (P.G. 212-59)*<br>*Interior Patrol of Housing Authority Buildings (P.G. 212-60)*<br>*Public Contact – General (P.G. 203-09)* |
| **FORMS AND REPORTS** | **ACTIVITY LOG (PD112-145)**<br>**RIGHT TO KNOW BUSINESS CARD (PD142-012)**<br>**RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**<br>**COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**<br>**STOP REPORT (PD383-151)**<br>**INVESTIGATIVE ENCOUNTERS (PD383-090)**<br>**SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)**<br>**Stop Report Index** |

3.    Members of the service are advised to refer to Operations Order **XX**, series 2018, "Creation of **RIGHT TO KNOW BUSINESS CARD (PD142-012)** and **RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**" for further information regarding appropriate usage and requisition of the **RIGHT TO KNOW BUSINESS CARD (PD142-012)** and **RIGHT TO KNOW BUSINESS CARD – GENERAL (PD142-013)**.

**INTERIM ORDER NO.  DRAFT 12**

4.      In addition, members of the service are advised to refer to Operations Order **XX**, series 2018, "Creation of **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**" for further information regarding appropriate usage and requisition of the **COMMON LAW RIGHT OF INQUIRY – CONSENT SEARCH REPORT (PD541-161)**.

5.      Revised Department form entitled, "**STOP REPORT (PD383-151)**" can be requisitioned from the Quartermaster Section as follows:

| INDEX NUMBER | PD NUMBER | TITLE |
|:---:|:---:|:---:|
| **2259** | **383-151** | **STOP REPORT** |

6.      Department form entitled, "**STOP REPORT (PD383-151)**" is also available on the Department Intranet in the "Department Forms" section.

7.      All existing copies of Department form entitled, "**STOP REPORT (PD383-151)**" bearing revision date prior to **[Rev. 10-18]** are OBSOLETE and are to be destroyed.

8.      Revised **ACTIVITY LOG (PD112-145)** insert entitled, "**INVESTIGATIVE ENCOUNTERS (PD383-090)**" is available as a PDF on both the Department Intranet under caption "Activity Log Inserts," accessible via the "DIRECTIVES & MANUALS" application, and on Department smartphones under caption "Activity Log Inserts," accessible via the "Portal" application, under "Publications."

9.      All existing copies of **ACTIVITY LOG (PD112-145)** insert entitled, "**INVESTIGATIVE ENCOUNTERS (PD383-090)**" bearing revision date prior to **[Rev. 10-18]** are OBSOLETE and are to be destroyed.

10.      Upon publication, this Interim Order has been incorporated into the On-Line Patrol Guide.

11.      Any provisions of the Department Manual or other Department directives in conflict with the contents of this Order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**ALL Commands**

INTERIM ORDER NO.   **DRAFT 12**

# Stop Report Form
# Clean Version

**(COMPLETE ALL CAPTIONS)**

**STOP REPORT**
PD 383-151 (Rev. 10-18)

| Pct. Serial No. | ICAD No. |
|---|---|
| Date of Occ. | Pct. Of Occ. |

| Time Of Stop | Period Of Observation Prior To Stop | Duration Of Stop |
|---|---|---|

Address/Intersection Or Cross Streets Of Stop

| ☐ Inside  ☐ Transit  ☐ Housing | Type Of Location *(Describe:)* |
|---|---|
| ☐ Outside  ☐ Trespass Affidavit Program | |

Officer in Uniform?        If no, how Identified?   ☐ Shield   ☐ Verbal   ☐ I.D. Card

☐ Yes   ☐ No

Crime Suspected *(e.g., Robbery, Burglary, Criminal Trespass, etc.)*

**Check All Factors That Led to Stop and Explain in the Narrative Section**

☐ Concealing or Possessing a Weapon       ☐ Casing Victim or Location

☐ Engaging in a Drug Transaction          ☐ Matches a Specific Suspect Description

☐ Acting as a Lookout                      ☐ Proximity to the Scene of a Crime

☐ Identified Crime Pattern *(Pattern No.____)*   ☐ Other *(Describe in "Narrative" Section)*

| Name Of Person Stopped | Nickname/Alias/Preferred Name | Date Of Birth |
|---|---|---|

| Address | Apt. No. | Tel. No. |
|---|---|---|

Identification:        ☐ Verbal        ☐ Photo I.D.        ☐ Refused

☐ Other *(Describe)*

Did You Ask for Consent to Search? ☐ Yes ☐ No | Was Consent Given? ☐ Yes ☐ No

Sex: ☐ Male   Race: ☐ White  ☐ Black   ☐ Hispanic White   ☐ Hispanic Black
     ☐ Female        ☐ Asian/Pacific Islander   ☐ American Indian/Alaskan Native
                     ☐ Middle Eastern/Southwest Asian

| Age | Height | Weight | Hair | Eyes | Build |
|---|---|---|---|---|---|

Other *(Scars, Tattoos, Outer Garments, Etc.)*

| Did Officer Explain Reason For Stop? | Business Card Offered to Person Stopped? |
|---|---|
| ☐ Yes   ☐ No | ☐ Yes   ☐ No |

If You Answered No to Either of the Previous Two Questions, Explain the Reasons in the Narrative Section on the Rear Side.

| Were Other Persons Stopped/Questioned/Frisked? | ☐ Yes ☐ No | Total No. Stopped | Pct. Serial Nos. |
|---|---|---|---|

| Did a Body-Worn Camera (BWC) Capture the Event in Whole or in Part | ☐ Yes ☐ No | Body-Worn Camera was Worn by: ☐ Reporting Officer  ☐ Another MOS |
|---|---|---|

Body-Worn Camera Serial Number

Actions Taken to Stop and/or Detain Prior to Arrest   ☐ Verbal Command/Instruction

☐   Impact Weapon   ☐ Drawing/Pointing Firearm   ☐ Physical Force   ☐ Restraint

☐   Handcuff Suspect   ☐ O.C. Spray   ☐ CEW   ☐ Other *(Describe)*

| Was Suspect Arrested? | Offense | Arrest No. |
|---|---|---|
| ☐ Yes   ☐ No | | |

| Was Summons Issued? | Offense | Summons No. |
|---|---|---|
| ☐ Yes   ☐ No | | |

| Demeanor of Person After Being Stopped | Remarks Made by Person Stopped |
|---|---|

Stop Was: ☐ Based on CV/Witness Report  ☐ Self-Initiated  ☐ Based on Radio Run  | Was Radio Run Anonymous? ☐ Yes  ☐ No

Narrative *(Describe the Circumstances That Led to the Stop):*

---

Was Person Frisked? ☐ Yes  ☐ No  **IF YES, INDICATE BASIS FOR FRISK:**  ☐ Object Observed Suspected of Being a Weapon
☐ Statement by Suspect  ☐ Suspect Known to Carry Weapons  ☐ Violent Crime  ☐ Other *(Describe Below)*
Was Person Searched? ☐ Yes  ☐ No  **IF YES, INDICATE BASIS FOR SEARCH:**  ☐ Hard Object Resembling Weapon  ☐ Consent to Search
☐ Admission Of Weapons Possession  ☐ Outline of Weapon  ☐ Search Incident to an Arrest  ☐ Other *(Describe Below)*
Was Weapon Found? If Yes, Specify: ☐ Firearm  ☐ Knife/Cutting Instrument  | Was Other Contraband Found? If Yes, Describe Contraband and Location
☐ Yes  ☐ No  | ☐ Other *(Describe)*  | ☐ Yes  ☐ No

Narrative *(Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched):*

---

| Reporting MOS *(Rank, Name Printed)* | Signature | Tax No. | Command | Date |
|---|---|---|---|---|

**Supervisory Action (Must Complete):** Supervisor on Scene During Stop? ...... ☐ Yes  ☐ No  **Follow-Up Action (If Appropriate):**
Encounter Reviewed With Officer? .....☐ Yes  ☐ No  Sufficient Basis for Stop?......☐ Yes  ☐ No  Report Corrected.. ☐  Training........ ☐
Report Accurate and Complete? ......☐ Yes  ☐ No  Sufficient Basis for Frisk? ......☐ Yes  ☐ No  ☐ N/A  Instruction. ........ ☐  Disciplinary Action. . ☐
Corresponding Activity Log Entry Reviewed? ☐ Yes  ☐ No  Sufficient Basis for Search?......☐ Yes  ☐ No  ☐ N/A

| Immediate Supervisor *(Rank, Name Printed)* | | Tax No. | Command |
|---|---|---|---|

| Signature | Pct. Serial No. | Date | Time |
|---|---|---|---|

# Stop Report Form Changes Shaded

**D R A F T   08 – 29 – 18**

**(COMPLETE ALL CAPTIONS)**

## STOP REPORT
PD 383-151 (Rev. 08-18)

| Pct. Serial No. | ICAD No. |
|---|---|
| Date of Occ. | Pct. Of Occ. |

| Time Of Stop | Period Of Observation Prior To Stop | Duration Of Stop |
|---|---|---|

Address/Intersection Or Cross Streets Of Stop

| ☐ Inside  ☐ Transit  ☐ Housing | Type Of Location *(Describe:)* |
|---|---|
| ☐ Outside  ☐ Trespass Affidavit Program | |

Officer in Uniform?      If no, how Identified?  ☐ Shield  ☐ Verbal  ☐ I.D. Card
☐ Yes  ☐ No

Crime Suspected *(e.g., Robbery, Burglary, Criminal Trespass, etc.)*

**Check All Factors That Led to Stop and Explain in the Narrative Section**

☐ Concealing or Possessing a Weapon    ☐ Casing Victim or Location
☐ Engaging in a Drug Transaction    ☐ Matches a Specific Suspect Description
☐ Acting as a Lookout    ☐ Proximity to the Scene of a Crime
☐ Identified Crime Pattern *(Pattern No.____)*  ☐ Other *(Describe in "Narrative" Section)*

| Name Of Person Stopped | Nickname/Alias/Preferred Name | Date Of Birth |
|---|---|---|

| Address | | Apt. No. | Tel. No. |
|---|---|---|---|

Identification:    ☐ Verbal    ☐ Photo I.D.    ☐ Refused
☐ Other *(Describe)*

Did You Ask for Consent to Search? ☐ Yes ☐ No | Was Consent Given? ☐ Yes ☐ No

Sex: ☐ Male    Race: ☐ White  ☐ Black    ☐ Hispanic White    ☐ Hispanic Black
☐ Female    ☐ Asian/Pacific Islander  ☐ American Indian/Alaskan Native
☐ Middle Eastern/Southwest Asian

| Age | Height | Weight | Hair | Eyes | Build |
|---|---|---|---|---|---|

Other *(Scars, Tattoos, Outer Garments, Etc.)*

| Did Officer Explain Reason For Stop? | Business Card Offered to Person Stopped? |
|---|---|
| ☐ Yes  ☐ No | ☐ Yes  ☐ No |

If You Answered No to Either of the Previous Two Questions, Explain the Reasons in the Narrative Section on the Rear Side.

| Were Other Persons Stopped/ ☐ Yes | Total No. Stopped | Pct. Serial Nos. |
|---|---|---|
| Questioned/Frisked?        ☐ No | | |

Did a Body-Worn Camera (BWC) Capture ☐ Yes | Body-Worn Camera was Worn by:
the Event in Whole or in Part        ☐ No | ☐ Reporting Officer  ☐ Another MOS

Body-Worn Camera Serial Number

Actions Taken to Stop and/or Detain Prior to Arrest  ☐ Verbal Command/Instruction
☐ Impact Weapon  ☐ Drawing/Pointing Firearm  ☐ Physical Force  ☐ Restraint
☐ Handcuff Suspect  ☐ O.C. Spray  ☐ CEW  ☐ Other *(Describe)*

| Was Suspect Arrested? | Offense | Arrest No. |
|---|---|---|
| ☐ Yes  ☐ No | | |

| Was Summons Issued? | Offense | Summons No. |
|---|---|---|
| ☐ Yes  ☐ No | | |

| Demeanor of Person After Being Stopped | Remarks Made by Person Stopped |
|---|---|



Stop Was: ☐ Based on CV/Witness Report   ☐ Self-Initiated   ☐ Based on Radio Run   Was Radio Run Anonymous? ☐ Yes ☐ No

Narrative *(Describe the Circumstances That Led to the Stop)*:

Was Person Frisked? ☐ Yes ☐ No   **IF YES, INDICATE BASIS FOR FRISK:**   ☐ Object Observed Suspected of Being a Weapon

☐ Statement by Suspect   ☐ Suspect Known to Carry Weapons   ☐ Violent Crime   ☐ Other *(Describe Below*

Was Person Searched? ☐ Yes ☐ No   **IF YES, INDICATE BASIS FOR SEARCH:**   ☐ Hard Object Resembling Weapon   ☐ Consent to Search

☐ Admission Of Weapons Possession   ☐ Outline of Weapon   ☐ Search Incident to an Arrest   ☐ Other *(Describe Below*

Was Weapon Found? If Yes, Specify: ☐ Firearm ☐ Knife/Cutting Instrument | Was Other Contraband Found? If Yes, Describe Contraband and Location

☐ Yes   ☐ No   ☐ Other *(Describe)* | ☐ Yes   ☐ No

Narrative *(Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)*:

| Reporting MOS *(Rank, Name Printed)* | Signature | Tax No. | Command | Date |
|---|---|---|---|---|

**Supervisory Action *(Must Complete)*:** Supervisor on Scene During Stop? . . . . . ☐ Yes ☐ No

Encounter Reviewed With Officer? . . . ☐ Yes ☐ No   Sufficient Basis for Stop?. . . . . . .☐ Yes ☐ No

Report Accurate and Complete? . . . . .☐ Yes ☐ No   Sufficient Basis for Frisk? . . . . . ☐ Yes ☐ No ☐ N/A

Corresponding Activity Log Entry Reviewed? ☐ Yes ☐ No   Sufficient Basis for Search?. . . . .☐ Yes ☐ No ☐ N/A

**Follow-Up Action *(If Appropriate)*:**

Report Corrected . . ☐   Training. . . . . .

Instruction . . . . . . . ☐   Disciplinary Act

| Immediate Supervisor *(Rank, Name Printed)* | | Tax No. | Comman |
|---|---|---|---|
| Signature | Pct. Serial No. | Date | Time |



# New Business Card

# APPENDIX "A"



NYPD
**New York City Police Department**

Police Officer Doe
Shield Number 3100

_____        _____
        Command

Front of the Card

**IF YOU SEE SOMETHING, SAY SOMETHING.**
COUNTERTERRORISM   OTLINE:
1-888-NYC-SAFE
NYCSAFE@NYPD.ORG

**CRIME STOPPERS**
00-577-TIPS
NYPDCRIMESTOPPERS.COM

To request Body-Worn Camera footage, if available, to get more information about a stop, or to submit a comment or complaint, visit:

**www.nyc.gov/police-encounters**
**or**
**For Comments, Call 311**

**BUSINESS CARD** PD 142-012 (07-18)

Back of the Card

## APPENDIX "B"



Front of the Card

**IF YOU SEE SOMETHING, SAY SOMETHING.**
COUNTERTERRORISM OTLINE:
**1-888-NYC-SAFE**
**NYCSAFE@NYPD.ORG**

**CRIME STOPPERS**
**1-800-577-TIPS**
NYPDCRIMESTOPPERS.COM

To request Body-Worn Camera footage, if available,
to get more information about a stop, or to
submit a comment or complaint, visit:

**www.nyc.gov/police-encounters**
**or**
**For Comments, Call 311**

BUSINESS CARD – GENERAL PD 142-013 (07-18)

Back of the Card