

666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

November 21, 2018

***Via ECF and Electronic Mail***
Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007
Torres_NYSDChambers@nysd.uscourts.gov

Re: ***Floyd v. City of New York***, 08 Civ. 1034(AT)
***Davis v. City of New York***, 10 Civ. 699 (AT)
***Ligon v. City of New York***, 12 Civ. 2274 (AT)

Dear Judge Torres:

On behalf of the Plaintiffs in the above-entitled actions currently pending before Your Honor, we write to register our partial objection to and seek modification of the Independent Monitor's final recommended proposal for combining the Court-ordered pilots on electronic documentation of Level 1 and 2 investigative encounters and body-worn camera (BWC) recording of Level 1 encounters. *See Floyd* Dkt ## 660, 660-1; *Davis* Dkt ## 431, 431-1; *Ligon* Dkt ## 352, 352-1. While we are comfortable with the overall pilot structure and systematic social observation (SSO) research methodology proposed by the Monitor, we believe that, for the reasons set forth below and in the attached memorandum from our social science experts Jeffrey Fagan and Jack Glaser,[1] the following four aspects of the Monitor's pilot proposal are inconsistent with social science best practices and/or the intent of the Court's prior orders and must therefore be changed before the pilot can begin.

### A. Size of the Pilot's Sample of Observed Police-Citizen Encounters

As set forth in Professor Fagan's and Glaser's attached memorandum, the power analysis upon which the Monitor team relied to conclude that its estimated sample size of 1512 observed police-citizen contacts is large enough to reliably "detect small effect size differences between the four [pilot] conditions," *Floyd* Dkt # 660-1, *Davis* Dkt # 431-1, at 4-5, failed to account for the fact that these 1512 observed contacts are not independent of each other, which is inconsistent with social science best practices. Thus, Plaintiffs and our experts do not believe that the Monitor's power analysis reliably establishes that the proposed sample of 1512 observed contacts has sufficient statistical power to generate scientifically reliable results for this pilot. We therefore ask the Court to direct the Monitor to conduct a new power analysis, in

---

[1] Professor Fagan, a professor at Columbia University Schools of Law and Public health, is one of the nation's leading scholars on analyzing racial disparities in stop-and-frisk and other policing practices. He also served as Plaintiffs' testifying expert in both *Floyd* and *Ligon*. Professor Glaser, who is the Associate Dean of the Goldman School of Public Policy at UC Berkeley, is one of the nation's leading scholars on racial bias in policing. Professor Fagan's and Glaser's memorandum is attached hereto as Appendix 1 and their CV's are attached as Appendix 2.

consultation with Professors Fagan and Glaser and the NYPD, that accounts for the non-independent characteristics of the observed police-citizen contacts described in the attached memorandum, to report the results of the new power analysis in odds ratios rather than standard deviations, and, if those results show that the proposed 1512-contact sample is not sufficiently powered, to increase the size of the sample to have sufficient statistical power.

## B.  Timing and Method of Electronic Documentation of Level 1 and 2 Encounters

In his Final Report and Recommendations on the Joint Remedial Process ("Final JRP Report"), the Court-Appointed Facilitator recommended that NYPD officers be required to document each Level 1 and 2 encounter they conduct on a separate electronic form application available on their Department-issued smartphones either "at or closely following" each such encounter and that their phones' location services automatically input into each form the time and location of the encounter. *See Floyd* Dkt # 597, *Davis* Dkt # 399, at 231-32.

In contrast, the Monitor's proposal specifies that officers documenting Level 1 and 2 encounters during the pilot will do so "electronically by preparing an Investigative Encounters Worksheet and submitting it at the end of each tour." *Floyd* Dkt # 660-1; *Davis* Dkt # 431-1 at 2. The proposal's description of the Worksheet and the sample worksheet template contained in the proposal's Appendix 2 indicate that, rather than recording each individual Level 1 and 2 encounter on a separate electronic form contemporaneously with the encounter itself, officers in the pilot will aggregate the data from all of the Level 1 and 2 encounters that they conduct on a given tour on a single electronic form that they will complete at the end of that tour (or, in some cases, the next tour that they work). *Id.* at 5, 7, 17. The proposal makes no mention of requiring officers in the pilot to document each Level 1 and 2 encounter during or immediately after the encounter itself.

Thus, the electronic documentation procedures set out in the Monitor's proposal differ in important ways from those recommended by the Facilitator and therefore contravene the clear intent of the Court's July 19, 2018 Order, which required a Level 1/2 Documentation pilot program *to study the Facilitator's recommendation*. *See Floyd* Dkt # 619, *Davis* Dkt # 407 at 2 (emphasis added). Moreover, allowing officers to document their Level 1 and 2 encounters hours, or even days, after they conduct them and outside the presence of the SSO observers will increase the likelihood that the officers forget important details of the Level 1 and Level 2 encounters, will prevent the use of their smartphones' location services to accurately record encounter times and locations (the proposal instead contemplates officers entering this information manually from memory), and will force the researchers to rely on officers' self-reporting (rather than the observers' more objective observations) about the time and burden[2] of documenting each individual Level 1 and 2 encounter, *see Floyd* Dkt # 660-1, *Davis* Dkt # 431-1, at 7, all of which will undermine the accuracy and reliability of critical pilot data and thus threaten the social scientific validity of the pilot results.

---

[2] Plaintiffs also believe it will likely be *more* time-consuming and burdensome for officers to record all of their Level 1 and 2 encounters at the end of a tour or the next day because trying to accurately recall the details of encounters that occurred several hours or a day earlier will likely require them to go back through all of their activity log entries for an entire tour and will prevent them from using their smartphones' capability to automatically record the location and time of each encounter.

Accordingly, the Investigative Encounters Worksheet should be removed from the Monitor's pilot proposal and replaced with a clear requirement that officers document each Level 1 and 2 encounter that they conduct on a separate electronic form. The proposal should also specify that the smartphone application for the electronic form which the NYPD has agreed to create, *see Floyd* Dkt # 660-1, *Davis* Dkt # 431-1 at 5, uses the phone's time and location functionality to automatically record the time and location information for each Level 1 and 2 encounter being documented, and that officers be required during the pilot to record each Level 1 and 2 encounter during or immediately after the encounter itself, absent exigent circumstances.

### C.  Make-Up of the Expert Panel Assessing the Legality of Observed Encounters

As set forth in Professor Fagan's and Glaser's attached memorandum, the Monitor's proposed use of an expert panel comprised only of members of his own team - all but one of whom are current or former police officers and/or prosecutors lacking a criminal defense and/or civil rights background - to assess the legality of officers' conduct during the observed police-citizen encounters included in the pilot, *see Floyd* Dkt # 660-1, *Davis* Dkt # 431-1 at 6, 15, would be inconsistent with social science best practices in similar research studies. These studies have consistently shown that diversity within a group increases the accuracy of group deliberations.  In addition, using such a non-diverse group of raters risks severely undermining the legitimacy of the pilot results in the eyes of community stakeholders, such as Communities United for Police Reform (CPR), who prioritized documentation of Level 1 and 2 encounters throughout the Joint Remedial Process, *see Floyd* Dkt # 611 at 20-22, and will therefore be watching this pilot very closely.  Given that, as the Court has correctly pointed out, stop-and-frisk reforms "are unlikely to be successful" if they "are not perceived as legitimate by those most affected," *Floyd* Rem. Ord (Dkt # 372) at 29, the Monitor, whom the Court has charged with ensuring the successful implementation of the Court-ordered remedies in *Floyd*, *Davis*, and *Ligon*, is obligated to make his best efforts to implement this pilot in a manner that is viewed as legitimate by community stakeholders. Thus, we ask that the Court order that all members of the expert panel be independent of the Monitor team, the NYPD and the Plaintiffs, and that the panel include as many members with civil rights and/or criminal defense backgrounds, including individuals who come from or work directly with communities that have been directly impacted by the NYPD's unconstitutional stop-and-frisk and trespass enforcement practices, as there are members with law enforcement and/or prosecutorial backgrounds.

### D.  Input from Directly Impacted Communities into Pilot Design and Data Collection

Plaintiffs also think that it is critical, for purposes of increasing both the legitimacy of the pilot results in the eyes of community stakeholders and the reliability of the pilot data collection and analyses, to directly involve representatives of those communities who have historically been most heavily impacted by the NYPD's SQF practices - or organizations that work with those communities - in the design of the observation protocols and instruments and the protocols for the panel of experts assessing the legality of police actions during police-citizen encounters. As the vast body of federal and state case law and legal scholarship in this area illustrate, the determinations to be made by the SSO observers and  panel of experts as to the *De Bour* level of each observed investigative encounter and/or whether the officer lawfully  conducted that level of encounter will involve extremely difficult and thorny legal questions without clear right answers that may depend on the race, gender, age, personal background and life experiences of

3

the persons involved in and reviewing each encounter. *See, e.g.*, *United States v. Mendenhall*, 446 U.S. 544, 558 (1980); *State v. Ashbaugh*, 244 P.3d 360, 368 n.15 (Or. 2010); Tracey Maclin, "*Black and Blue Encounters" — Some Preliminary Thoughts about Fourth Amendment Seizures: Should Race Matter?,* 26 Val. U. L. Rev. 243 (1991); Devon W. Carbado, *(E)racing the Fourth Amendment*, 100 Mich. L. Rev. 946, 977, 984-985 (2002). Thus, the pilot proposal should include a formal structured role for multiple representatives of impacted communities and/or members of organizations that work directly with those communities, such as CPR, in the design of the instruments and protocols to be used by the SSO observers and the panel of experts.

********

For the reasons set forth above and in the memorandum attached hereto as Appendix 1, Plaintiffs respectfully request that the Court so-order the four above-mentioned changes to the Monitor's proposal for the combined Level 1/2 Documentation and Level 1 Body Worn Camera Recording Pilot.

Respectfully submitted,

\s\ Darius Charney
Darius Charney
CENTER FOR CONSTITUTIONAL RIGHTS

Jonathan C. Moore
Luna Droubi
BELDOCK, LEVINE & HOFFMAN, LLP

*Attorneys for Floyd Plaintiffs*

\s\Angel Harris
Angel Harris
Jin Hee Lee
Alexis J. Hoag
John Cusick
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.

Cynthia Conti-Cook
Steve Wasserman
THE LEGAL AID SOCIETY

*Attorneys for Davis Plaintiffs*

\s\ Jenn Rolnick Borchetta

Jenn Rolnick Borchetta
Johanna Steinberg
Shakeer Rahman
THE BRONX DEFENDERS

Christopher Dunn
Kevin Jason
NEW YORK CIVIL LIBERTIES UNION

*Attorneys for Ligon Plaintiffs*

Encl.

Cc:      Peter Zimroth (*via ECF and electronic mail*)
         Counsel for All Parties (*via ECF and electronic mail*)