USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/25/2019_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID FLOYD, *et al.*,

      Plaintiffs,

  -against-

CITY OF NEW YORK,

      Defendant.

08 Civ. 1034 (AT)

KELTON DAVIS, *et al.*,

      Plaintiffs,

  -against-

CITY OF NEW YORK,

      Defendant.

10 Civ. 699 (AT)

JAENEAN LIGON, *et al.*,

      Plaintiffs,

  -against-

CITY OF NEW YORK,

      Defendant.

12 Civ. 2274 (AT)

**ORDER**

ANALISA TORRES, District Judge:

 On August 12, 2019, after considering submissions from the Monitor, the parties, and *amici curiae* (Communities United for Police Reform ("CPR") and District Attorney's Offices of the counties of New York, Bronx, Richmond, Kings, and Queens, as well as the Office of the Special Narcotics Prosecutor (together, "City Prosecutors")), the Court approved the Monitor's amended proposed confidentiality order, ECF No. 734-1,[1] with respect to a pilot program to

---

[1] All ECF cites refer to documents as numbered in *Floyd v. City of New York*, No. 08 Civ. 1034.

study the electronic recording of police-citizen Level 1 and 2 encounters and the use of body-worn cameras for Level 1 encounters, under the four-level framework established in *People v. De Bour*, 40 N.Y.2d 210 (1976). ECF No. 736. The *Floyd* Plaintiffs now move for reconsideration of that order pursuant to Local Civil Rule 6.3. ECF No. 740. For the reasons stated below, the motion is DENIED.

## BACKGROUND

In an opinion and order issued on August 12, 2013, the Court held that the New York City Police Department's (the "NYPD") stop-and-frisk practices violated Plaintiffs' Fourth and Fourteenth Amendment rights. *See Floyd v. City of New York*, 959 F. Supp. 2d 540, 661 (S.D.N.Y. 2013). In a separate opinion issued the same day, the Court directed the NYPD to institute certain reforms to remedy its unconstitutional practices and appointed an independent monitor (the "Monitor") to oversee those reforms. *See Floyd v. City of New York*, 959 F. Supp. 2d 668, 676–78 (S.D.N.Y. 2013). The Court also directed the parties to participate in a community-input process (the "Joint Remedial Process") under the guidance of a facilitator (the "Facilitator") to develop additional reforms. *Id*. at 686–88.

On May 15, 2018, the Facilitator issued his Final Report and Recommendations. Final Report, ECF No. 597. The Final Report is a 304-page document detailing the recent history of police-community relations in New York City, explaining the different stages of the Joint Remedial Process, and propounding fourteen recommendations for reform. *Id.* at 10–11. Among the reforms, the Facilitator recommends that the NYPD document all police-initiated encounters. *Id.* at 230–36. In other words, the Facilitator recommends requiring the NYPD to document encounters at the first and second levels of the four-level *De Bour* framework, not only at the third and fourth levels as is currently required. *Id.* The Facilitator explains that

2

documenting at all levels is essential to understanding "the extent to which police are initiating encounters on the basis of race." *Id.* at 233.

On July 19, 2018, the Court directed the parties to submit a proposal for a pilot program to study the electronic recording of Level 1 and 2 police-citizen encounters. ECF No. 619. On August 9, 2018, the Court further ordered the parties to submit a proposal for a pilot program to study the use of body-worn cameras ("BWCs") in Level 1 encounters. ECF No. 634. Despite these directives, the parties requested that the Monitor develop a plan for a combined pilot program. ECF No. 660 at 1. The Monitor submitted a proposal on November 9, 2018. ECF No. 660-1. On January 29, 2019, after the parties and CPR had filed comments and objections, the Monitor, through his counsel, requested that the Court adopt a revised version of the proposal. Combined Pilot Study, ECF No. 687-1; *see also* Monitor's January 29 Letter, ECF No. 687. On February 7, 2019, recognizing that the parties "have had an extensive opportunity to participate in the formulation of the proposed pilot program," the Court approved the Monitor's revised plan. ECF No. 691 at 2.

The pilot program is designed to study how electronic documentation and the use of BWCs affect the legality of police-citizen encounters. Combined Pilot Study at 1. Trained observers will ride along with a sample of randomly selected officers and record the actions of the officers and the circumstances of each encounter. *Id.* at 2–3. The pilot program will study the effects of observer presence by comparing the behavior of officers while under observation with their behavior while unobserved. *Id.* at 13–14; *see also* Monitor's January 29 Letter at 3.

The observers' reports will go to the Monitor team, which will assess the legality of the encounters. Combined Pilot Study at 15; *see also* Monitor's January 29 Letter at 4. Once the Monitor team assesses the observers' reports, "the team's experts will use those assessments to

3

determine whether electronic documentation and BWCs had statistically significant positive impacts on the legality of encounters." Monitor's January 29 Letter at 5.

On June 14, 2019, the Monitor, through his counsel, requested that the Court enter a confidentiality order, ECF No. 712-1, that would "protect the information that is obtained and created by trained observers studying officer behavior in the NYPD pilot study from disclosure to anyone other than the Monitor and his team." Monitor's June 14 Letter at 1, ECF No. 712. The Monitor explained that the confidentiality order is justified "because it will foster officer consent to observation, officer candor under observation, and observer candor in notetaking—all while protecting from discovery only information that the study itself creates." *Id.* at 1–2. Because the study involves sending trained observers into the field to note the behaviors, and solicit the thought processes, of officers when they engage citizens, the Monitor contends that the "success of that work depends on protecting observer information, including the identity of observed officers." *Id.* at 2. Officers expressed significant concern that the information collected by observers could be used against them by their NYPD supervisors or by Plaintiffs. *Id.* at 2–3. As the Monitor explained, officer apprehension could lead to low participation, prohibiting the study from proceeding, or limiting the study's utility if it includes only the participation of "officers who are most confident about the propriety of their conduct." *Id.* at 3.

The parties, CPR, and City Prosecutors filed letters expressing their views on the confidentiality order. *See* ECF Nos. 717 (*Floyd* and *Davis* Plaintiffs), 723 (City of New York), 730 (same), 724 (City Prosecutors), 725 (CPR); *see also Ligon v. City of New York*, No. 12 Civ. 2274, ECF Nos. 385, 388 (*Ligon* Plaintiffs). On August 6, 2019, the Monitor responded to these concerns and requested that the Court approve the confidentiality order, ECF No. 733-1. Monitor's August 6 Letter at 2, ECF No. 733. On August 12, 2019, the Monitor submitted an

4

amended version of the confidentiality order (the "Pilot Confidentiality Order"), ECF No. 734-1, that clarifies that the order shall survive the termination of the monitorship. ECF No. 734. After reviewing the submissions of the Monitor, the parties, and *amici*, the Court approved the Pilot Confidentiality Order. ECF No. 736. Before the Court is the *Floyd* Plaintiffs' motion for reconsideration of the Pilot Confidentiality Order. ECF No. 740.

## DISCUSSION

I. <u>Legal Standard</u>

Local Civil Rule 6.3 provides that a "notice of motion for reconsideration or reargument of a court order determining a motion . . . shall be served with . . . a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." The standard governing Local Rule 6.3 is the same as that governing Federal Rule of Civil Procedure 59(e). *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 394 n.2 (S.D.N.Y. 2016); *see also Jowers v. Family Dollar Stores, Inc.*, 455 F. App'x 100, 101 (2d Cir. 2012) (concluding that the circuit court applies the same abuse of discretion standard to the review of a motion brought under Local Rule 6.3, that it applies to the review of a motion brought under Federal Rule of Civil Procedure 59(e)).

"Local Rule 6.3 permits a party to move for reconsideration based on matters or controlling decisions which counsel believes the court has overlooked." *Space Hunters, Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012) (internal quotation marks and citation omitted); *see also Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y. 2001). Local Rule 6.3 is to be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dietrich*, 198 F.R.D. at 399.

"Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment." *Space Hunters*, 500 F. App'x at 81 (internal quotation marks and citation omitted). Under this rule, the standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] court may grant reconsideration where the party . . . demonstrates an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

"It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks, alteration, and citation omitted). It is "not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion." *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 95 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). Instead, motions for reconsideration are narrowly construed in order "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).

II.     Analysis

The *Floyd* Plaintiffs contend that reconsideration of the Pilot Confidentiality Order is proper on three grounds: (1) the Court overlooked controlling law, (2) the Court overlooked relevant facts, and (3) reconsideration is necessary to prevent manifest injustice. Pl. Mem. at 5, 10, 13, ECF No. 741. The *Floyd* Plaintiffs' motion fails in all respects.

   A.  Consideration of Controlling Law

      1.  Federal Constitutional and New York Law

The *Floyd* Plaintiffs argue, in general and conclusory fashion, that the Court overlooked "key controlling law, namely, Fourth, Fifth, and Sixth Amendment rights under the U.S. Constitution, statutory rights set forth under the New York Criminal Procedure Law, and key federal constitutional law, including the right to exculpatory information under *Brady* [*v. Maryland*, 373 U.S. 83 (1963)]." Pl. Mem. at 5.

Specifically, the *Floyd* Plaintiffs contend, as Plaintiffs and *amici* had argued in their prior submissions, that the Pilot Confidentiality Order will violate the constitutional rights of criminal defendants because it will prevent them from discovering "potentially exculpatory information" under *Brady*. Pl. Mem. at 6; *see also Floyd* and *Davis* Letter at 3 n.4, 4, ECF No. 717; City Prosecutors' Letter at 4, ECF No. 724; *Ligon* Letter at 1–2, No. 12 Civ. 2274, ECF No. 385. The *Floyd* Plaintiffs also claim that the Court overlooked controlling state law, including "recent reforms to Article 245 of [New York Criminal Procedure Law], to ensure greater justice in the discovery process," Pl. Mem. at 6, an argument previously raised by Plaintiffs and City Prosecutors. *See, e.g.*, *Ligon* Letter at 1–2 & n.1; City Prosecutors' Letter at 3–4.

7

The Court did not overlook the law. After reviewing the submissions filed by the parties and *amici*, the Court considered and rejected the *Brady* and state law arguments, and adopted the legal analysis articulated by the Monitor. *See* Monitor's August 6 Letter at 11–15.

### 2. Law of the Case

The law of the case doctrine holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal quotation marks and citation omitted). The *Floyd* Plaintiffs contend that "[i]t is the law of this case that community expertise must be central to – not excluded from – key analyses related to remediation." Pl. Mem. at 8.

A motion for reconsideration is "not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion." *WestLB AG*, 912 F. Supp. 2d at 95 (internal quotation marks and citation omitted). The *Floyd* Plaintiffs did not raise the law of the case doctrine in their prior submission, *see generally Floyd* and *Davis* Letter, and their motion for reconsideration should be denied on that ground alone.

However, even if the *Floyd* Plaintiffs had raised this argument earlier, the Court would have rejected it. Throughout the course of the remedial phase of this litigation, the Court has welcomed and considered the input of non-parties. *See, e.g.*, ECF Nos. 498 (granting police unions' request to participate in the reform process in advance of the Monitor submitting his final recommendations), 598-1 (white papers from community groups, including the Interfaith Center of New York, the Legal Aid Society, the Citizens Union of the City of New York, and CPR, discussed in and appended to the Facilitator's Final Report), 670 (granting CPR leave to

submit comments on the Monitor's proposed pilot study), 715 (granting City Prosecutors leave to submit comments on the Monitor's proposed confidentiality order). Moreover, it was only after a thorough consideration of concerns raised by the Monitor, the parties, and *amici*, that the Court determined that the Pilot Confidentiality Order is critical to the success of the pilot study, a decision that falls squarely within the Court's equitable powers. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) ("[W]e have no question as to the court's jurisdiction to [enter protective orders] under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." (internal quotation marks and citation omitted)); *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 343 (S.D.N.Y. 2012) ("[P]rotective order[s] serve essential functions in civil adjudications." (internal quotation marks and citation omitted)); *Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 514 (E.D.N.Y. 2011) ("It is well established that courts have an inherent equitable power to grant confidentiality orders."), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd in relevant part sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013).

3. Public Access Law

The Court also rejects the *Floyd* Plaintiffs' rehashed argument that the Court disregarded controlling public access law, Pl. Mem. at 9; *see also Floyd* and *Davis* Letter at 7 n.14; ECF No. 728, because, as the Monitor explained, the Pilot Confidentiality Order does not contravene public access law, Monitor's August 6 Letter at 22.

Accordingly, the *Floyd* Plaintiffs have failed to "demonstrate that the Court overlooked controlling decisions . . . that were put before it." *Dietrich*, 198 F.R.D. at 399.

9

### B. Consideration of Relevant Facts

The *Floyd* Plaintiffs next argue that the Court overlooked certain factual matters, including the "overwhelmingly public nature of the encounters and the scientific standards of reliability that mandate open access and data disclosure as a reliability requirement." Pl. Mem. at 10–11. They concede, however, that these "factual matters [were] put before the Court." *Id.* at 10.

The *Floyd* Plaintiffs also contend that the Pilot Confidentiality Order will "obscure an already public activity" and "abrogat[e] the rights of Plaintiff Classes." Pl. Mem. at 11–12; *see also Floyd* and *Davis* Letter at 2 ("There is no aspect of a Level 1 encounter that should be off-limits to Plaintiffs, including anonymous officers' debriefing sessions. In fact, this information is largely publicly available."). The Pilot Confidentiality Order will do neither because it does not "render confidential any information that is already available to officers, investigators and those subject to the observed encounters." Monitor's June 14 Letter at 6.

In addition, the *Floyd* Plaintiffs argue that the Court has ignored scientific norms. Pl. Mem. at 11. They contend that "providing de-identified data and open access are not restrictions, they are scientific norms, and research subjects routinely consent to these conditions." *Id.* Again, these same arguments were already raised in previous submissions to the Court. *See, e.g.*, *Floyd* and *Davis* Letter at 6–7; CPR Letter at 2, ECF No. 725. In any event, the Court agrees with the Monitor that providing de-identified data is not workable because "many officers are unlikely to consent if they believe that observations about their conduct could be used against them in disciplinary or legal proceedings, or end up in the possession of anyone associated with the NYPD or Plaintiffs." Monitor's June 14 Letter at 2–3; *see also* Monitor's August 6 Letter at 9–11. "[N]othing narrower than an order preventing anyone associated with

the parties from getting that information would be likely to assuage [officers'] concerns."
Monitor's June 14 Letter at 3.

Moreover, there is a fail-safe mechanism built into the Pilot Confidentiality Order; the order provides a process by which a person or entity may petition the Court for the release of confidential information. Pilot Confidentiality Order ¶ 4. The Court may disclose such information upon a showing of "extraordinary circumstance or compelling need." *Id.* Once disclosed, the information ceases to be confidential. *Id.*

Accordingly, the *Floyd* Plaintiffs have failed to meet their burden to "demonstrate that the Court overlooked . . . factual matters that were put before it." *Davis v. Gap, Inc.*, 186 F.R.D. 322, 324 (S.D.N.Y. 1999) (alteration omitted).

    C.  Manifest Injustice

Finally, the *Floyd* Plaintiffs "ask this Court to reconsider [the Pilot Confidentiality Order] to prevent manifest injustice." Pl. Mem. at 13. "A party can generally establish . . . manifest injustice by pointing to controlling decisions or data that the court overlooked." *U.S. Commodity Futures Trading Comm'n v. Wilson*, No. 13 Civ. 7884, 2016 WL 9632961, at *1 (S.D.N.Y. Nov. 2, 2016) (citing *Shrader*, 70 F.3d at 257) (internal quotation marks and alterations omitted). Having failed to do so, however, the *Floyd* Plaintiffs cannot make a showing of manifest injustice.

Notwithstanding the above, the *Floyd* Plaintiffs' arguments also fail on the merits. They contend that "confidentiality must not be wielded to mask or facilitate racial profiling or other constitutional violations." *Id.* (capitalization omitted). They also argue that "no legal precedent authorizes the Court to limit a prevailing party's access to data in its own case." *Id.* at 18 (capitalization omitted). The Court is not persuaded.

11

First, the *Floyd* Plaintiffs attempt to draw a parallel between the Pilot Confidentiality Order and the NYPD's "unwritten rules," which the Court found "hid illegality and injustice." *Id.* at 13 (citing *Floyd*, 959 F. Supp. 2d at 603). As the *Floyd* Plaintiffs concede, however, it is the Monitor, not the NYPD, who will oversee the pilot program. *See id.* at 13–14. The concerns over "secrecy" and "unwritten policies" are, therefore, misplaced. This is especially true in light of Plaintiffs' ability "to review and comment on the protocols and instruments used by the observers and the legal experts to code police-citizen encounters." Monitor's August 6 Letter at 10.

The *Floyd* Plaintiffs' claim that no legal precedent authorizes the Court to limit a prevailing party's access to data fares no better. The Court has held that the pilot program is essential to the remedial process and that the Pilot Confidentiality Order is essential to the pilot program. Given the "complexity of the reforms that will be required to bring the NYPD's stop and frisk practices into compliance with the Constitution," *Floyd*, 959 F. Supp. 2d at 676, the Court has determined that the issuance of the Pilot Confidentiality Order is a necessary exercise of its inherent equitable powers in furtherance of the remedial process. *See Hunt*, 904 F. Supp. 2d at 343.

III. The NYPD's Advice to Officers

The City of New York (the "City") repeats its request that the Court exempt from confidentiality observer information that relates to an arrest or the issuance of a desk appearance ticket. City's September 24 Letter at 1–2, ECF No. 743; *see also* ECF No. 730 at 1–2. The Court previously considered the City's proposed carve-out provision, however, and declined to adopt it for the reasons set forth in the Monitor's letter. Monitor's August 6 Letter at 1–11.

The City also states that if the Pilot Confidentiality Order does not contain such a "carve-out provision," the NYPD might advise officers of the risk that the Pilot Confidentiality Order may be "overturned as improvidently granted." City's September 24 Letter at 2. The Court is confident that the law supports the Pilot Confidentiality Order and believes that the risk of reversal is remote. The Court is, however, concerned that the proposed warning will chill officer participation in the pilot program "such that the results of the study would not be scientifically valid and thus of limited value." Monitor's August 6 Letter at 1–2. Although the Court shall not instruct the NYPD on how to advise its officers, it reaffirms that the NYPD's full support and encouragement of officer participation is critical to the study's success.

## CONCLUSION

For the reasons stated above, the *Floyd* Plaintiffs' motion for reconsideration of the Pilot Confidentiality Order is DENIED.

SO ORDERED.

Dated: October 25, 2019
       New York, New York

_____
ANALISA TORRES
United States District Judge