**Response to *Floyd* Plaintiffs' Reply Regarding Facilitator's Recommendation No. 1**

## I.  Introduction

In an opinion and order issued on August 12, 2013, the Court directed that the parties participate in a community-input process (the "Joint Remedial Process") to develop reforms "no broader than necessary to bring the NYPD's use of stop and frisk into compliance with the Fourth and Fourteenth Amendments."[1]  As a result of this process, the Court, on November 20, 2018, ordered that the Department, in consultation with the Monitor, submit a plan to implement a program to systematically receive, assess, and act on five specific categories of "information regarding adverse findings of conduct of police officers involving illegal stops or illegal trespass enforcement" (the "Order").[2]  On January 14, 2019, the Department submitted its plan[3] to comply with this order.  Counsel for the *Floyd* and *Davis* plaintiffs submitted a joint response[4] and *Ligon* counsel submitted a separate response[5] raising concerns regarding certain aspects of the plan.  On August 2, the Department submitted a response to these comments.[6]  Counsel for the *Floyd* plaintiffs replied to that response on September 27.[7]  The Department has reviewed this reply and we respond below.

---

[1] *Floyd v. City of New York*, 959 F. Supp. 2d 668, 687 (S.D.N.Y. 2013).
[2] *Floyd* ECF No. 662. The categories are: (a) declinations of prosecutions by the District Attorneys in New York City; (b) suppression decisions by courts precluding evidence as a result of unlawful stops and searches; (c) court findings of incredible testimony by police officers; (d) denials of indemnification and/or representation of police officers by the New York City Law Department; and (e) judgments and settlements against police officers in civil cases where, in the opinion of the New York City Law Department, there exists evidence of police malfeasance. *Id*. at 2.
[3] *Floyd* ECF No. 681.
[4] *Floyd* ECF No. 686.
[5] *Ligon* ECF No. 364.
[6] *Floyd* ECF No. 729.
[7] *Floyd* ECF No. 744.

## II.  Executive Level Review

Since the Department's last submission, and drawing on certain aspects of the plaintiffs' filings, the NYPD has made significant changes to its plan to comply with the Order.[8] The plan builds on the Department's original concept of having two different levels of substantive accountability and meaningful supervision: the command and executive level. These two levels of supervision will focus on defining and supporting supervision, leadership, mentoring, and accountability. This level of scrutiny is part of an early intervention process identifying potentially at-risk officers through a number of "indicators" including the five "indicators" delineated by the Court as well as additional indicators including a certain number of biased policing complaints in a given period. The goal of the process after identification of potentially at-risk officer is to provide for appropriate non-disciplinary remediation in each situation.[9] As an integral part of the early intervention process, the Department will be creating an Early Intervention Committee that will review officers that meet specific thresholds relating to each such indicator specified by the Order. This committee will replace, but fully incorporate, the work of the existing Adverse Credibility and Civil Lawsuit Monitoring Committees[10] and take the place of the Adverse Credibility and Suppression Committee that had been proposed in the Department's August submission.

The Early Intervention Committee will be comprised of seven senior executives representing the Risk Management Bureau ("RMB"), Deputy Commissioner of Legal Matters, Deputy Commissioner of Equity and Inclusion, Chief of Department, Chief of Detectives, Chief of Patrol, and Chief of Personnel, attesting to the degree of importance which early intervention

---

[8] This submission supersedes all prior submissions by the Department detailing its plan to comply with the Order, to the extent that there is a conflict.
[9] Where there is evidence of misconduct, referral for further investigation, if not already initiated, will occur.
[10] Once the Early Intervention Committee is operational, these committees will be disbanded and all of their functions will be taken over by the that committee

holds for the Department. The work of this committee is a priority for the Department, which is demonstrated by the membership of this committee. The committee is comprised of the highest level of leadership of the Department. Each action of the committee will be taken with the goal of preventing misconduct in the future by appropriately dealing with potentially at-risk officers through tailored interventions. The purpose of the committee is not merely to examine the quality of an officer's paperwork, as plaintiffs assert, but rather to assess the officer's compliance with applicable internal policies and procedures and the constitutionality of their conduct, and to respond appropriately following that assessment to address identified risk.

When an officer crosses one of the thresholds for review,[11] the Early Intervention Committee will look at all available relevant details related both to the underlying facts of the incident or incidents that caused the specific threshold to be reached and the specific officer in question including a profile of their tenure, entire disciplinary history, performance evalations, and past and current assignments. RMB and the Legal Bureau will collect all of the necessary documents. The committee will then decide what intervention, if any, is appropriate. Available interventions now include refresher trainings, mentoring, monitoring, enhanced supervision, change of assignment, and referral for further investigation.[12] All interventions are non-disciplinary and designed to prevent the Officer from having to deal with the disciplinary system in the future.

---

[11] The threshold will be crossed when one of the following events occur: one adverse credibility finding, one suppression finding, three or more declinations to prosecute relating to stops and searches in a 12-month period, two or more biased policing complaints in a 12-month period, two or more force complaints in a 12-month period, four or more force complaints in the last two years, five or more force complaints in the last four years, named defendant in three or more commenced lawsuits in a 12-month period, six or more commenced lawsuits in the last five years; one disposed lawsuit for $200,000 or greater, one lawsuit where Law Department refuses to represent and/or indemnify. Upon evaluation and assessment by the committee, the officer may be placed in the appropriate level of Performance Monitoring.

[12] Referrals for further investigation can be either to an internal bureau (Ex. IAB) or to an external agency (Ex. District Attorney's office). Referrals are not inherently disciplinary in nature.

In each matter that comes before the committee, appropriate remedial steps will be documented in a written action plan, which will then be sent to relevant stakeholders, such as the Training Unit when applicable, including the officer's Commanding Officer ("CO") who will be responsible for ensuring compliance and required to acknowledge and report back, when applicable, on those efforts to the committee. The work of the committee will be closely tracked by RMB. The committee will communicate via written action plan with the involved officer's CO and other relevant parties who will report on the actions that they have taken in response to committee directives via written action plans. RMB will track the threshold that the subject officer crossed, the recommendation of the committee, and the implementation of said recommendation, if any, by the CO and any other relevant stakeholder. Even if the recommendation of the committee was to take no action, this information will be tracked as well. RMB will track all of this information in a database which will not only hold supervisors accountable but will allow for pattern analysis to be conducted by RMB to determine if there exists any discernable commonality in the "indicators" relative to command, borough, and bureau structures and the effectiveness of prior interventions and to identify any relevant trends. These analyses will be factored into the committee's decisions on interventions going forward.

### III.   Command Level Review

The Department's Risk Assessment Information Liability System ("RAILS") is an important tool that helps enable command level review. RAILS is a management tool that informs commanding officers of significant administrative actions within their command. RAILS aggregates significant amounts of personnel data and performance indicators of members of the service, both positive (e.g., training history, special skills, awards, years of service) and negative (e.g.., civilian complaints, discipline, Stop Reports rejected by supervisors, transfers for

cause). A CO may view this information at any time. In addition, RAILS sends an alert to an officer's CO every time a designated event occurs[13] and Administrative Guide 320-49 requires the CO to acknowledge the alert.[14] These alerts can help COs have up-to-date information about their commands to identify areas of improvement. While some of these alerts are relevant to the five data points of the Order, most of the alerts are not related to the Order. Nonetheless, RAILS is a critical management tool and will be used in conjunction with the work of the Early Intervention Committee to enable command level review. RAILS can assist COs in working with the Early Intervention Committee when one of the thresholds triggering review by that committee has been reached. Additionally, even if such a threshold has not yet been reached, RAILS can help a CO determine whether early intervention is nevertheless warranted.

## IV. Declinations to Prosecute

Every declination to prosecute ("DP") causes a RAILS alert to be sent to an officer's CO and the CO is obligated to acknowledge that alert. This will ensure there is command level review for every DP. On the executive level the proposed Early Intervention Committee will specifically review any officers that have three or more DPs relating to stops and searches in a 12-month period. RMB will monitor the DPs to identify officers who cross the threshold and prepare all necessary documents for the committee's review, including documents from the District Attorney's Office with explanations for the declined prosecution. For the officers who

---

[13] Designated events include a certain number of CCRB complaints generally or within a specific period of time, certain disciplinary penalties, negative performance evaluations, or a declination to prosecute.

[14] There are fourteen types of acknowledgement, specifying the action a CO takes in response to the alert, that a commanding officer can choose from: (1) RAILS profile reviewed. Referred to Administrative Lieutenant for command orientation; (2) Personnel file forwarded to new command; (3) Will confer with DAO for next steps; (4) Subject officer will be reviewed for assessment of current assignment; (5) Reviewed with subject officer. No further action deemed appropriate at this time; (6) Referred to Integrity Control Officer for follow-up; (7) Referred to executive officer for follow-up; (8) Referred to supervisor indicated (specify in "Notes"); (9) Conferred with command Training Sergeant. No further action. (10) Conferred with platoon commander. No further action. (11) Subject officer reviewed for intervention. No changes at the present time. (12) Subject officer referred to RMB for appropriate training and intervention; (13) No further action necessary at this time; (14) Inaccurate alert.

cross the threshold the information will be prepared for the committee's review. In each matter that comes before the committee, appropriate remedial steps will be documented in a written action plan, which will then be sent to the CO and relevant internal stakeholders.

The Department's determination of which categories of DPs potentially implicate individual officer conduct[15] and which do not[16] was made in consultation with representatives from all of the local District Attorneys' offices. They agreed with the Department that DPs due to the actions of a complainant or witness or as a result of the current policy of an individual District Attorney's office not to prosecute certain low-level offenses say nothing about the particular officers that were involved in the case nor involve any risk factors to identify potential misconduct.

## V. Suppression Decisions

The Early Intervention Committee will also review any officer that has been involved in a suppression decision relating to a stop or search. The Office of Court Administration is publishing all relevant suppression decisions per the Order on their website and the Department will monitor the list. These decisions will, in the borough-based State Supreme Court, be collected through appropriate applications to the Court with the Office of Court Administration. The United States Attorney's Offices in the Southern and Eastern Districts of New York have agreed to make all applicable documents available to the Department. Once the Department begins to receive relevant documents, including the minutes of the proceedings and written opinion by the issuing judge if available, the information will be prepared for the committee's

---

[15] (1) Complainant or witness failed to positive identify defendant; (2) Incorrect or missing paperwork; (3) Insufficient evidence; (4) Lack of element of crime; (5) Lack of jurisdiction; (6) Lack of nexus between defendant and crime; (7) Mere presence of defendant at location; (8) No personal observation of violation by arresting officer; (9) Potential search or seizure issues; (10) Unavailability of arresting officer.

[16] (1) Complainant or witness refuses to cooperate; (2) Prosecutorial discretion; (3) Requires additional information; (4) Summonsable offense; (5) Unable to locate complainant or witness.

review. In each matter that comes before the committee, appropriate remedial steps will be documented in a written action plan, which will then be sent to the CO and relevant internal stakeholders.

Contrary to the *Floyd* plaintiffs' submission, the Department's plan treats all suppression decisions with the requisite level of seriousness to which they are entitled.  This is the reason why every such decision will be carefully reviewed by the Early Intervention Committee.  There are often a variety of factors that contribute to the suppression of evidence by a court and it is important for the officer's individual responsibility, if any, to be determined, before a decision can be made regarding what kind, if any, intervention is most appropriate.

### VI.     Adverse Credibility Findings

The Early Intervention Committee will review any officer where there has been a finding of adverse credibility.  These decisions are shared with the Department directly by the District Attorney's Offices, the Office of the Special Narcotics Prosecutor, Corporation Counsel's Family Court Division, and the United States Attorney's Offices in the Eastern and Southern Districts of New York.  Once the Department receives the information, including the minutes of the proceedings and written opinion by the issuing judge if available, the Department will prepare the information for the Committee's review.  Though the question of officer responsibility will less often be at issue with regard to adverse credibility findings, review by the Early Intervention Committee is still essential in order to ensure that the Department respond appropriately to the individual facts of each case.  Once the Department begins to receive relevant documents, including the minutes of the proceedings and written opinion by the issuing judge if available, the information will be prepared for the committee's review. In each matter

that comes before the committee, appropriate remedial steps will be documented in a written action plan, which will then be sent to the CO and relevant internal stakeholders.

### VII. Law Department Refusals to Indemnify Or Represent

The Early Intervention Committee will review any officer who is the named defendant in a lawsuit where the Law Department refuses to represent and/or indemnify the officer. The Department currently receives relevant information from the Law Department, including summonses, complaints, and notices of claim. The information will be evaluated to see which cases cross the threshold for the committee's review and then be prepared for the committee. Similar to the other categories of information specified in the Order, the committee will review the underlying facts of the incident or incidents that led to the refusal to represent and/or indemnify and the officer's entire history to determine the appropriate remedy. Once the Department begins to receive relevant documents, For the officers who cross the threshold the information will be prepared for the committee's review.  In each matter that comes before the committee, appropriate remedial steps will be documented in a written action plan, which will then be sent to the CO and relevant internal stakeholders.

### VIII. Civil Judgments

The Early Intervention Committee will retain the threshold criteria of the current Civil Lawsuit Monitoring Committee. The Department currently receives relevant information, including summonses, complaints, notices of claim from the Law Department and the Comptroller.  The information will be evaluated to see which cases cross the threshold for the committee's review and then be prepared for the committee.   It will perform a review of any officer with three or more commenced lawsuits within the prior 12-month period, six or more commenced lawsuits within the last 5 years, or a single disposed lawsuit for $200,000 or greater

within the past 12 months. Once the Department begins to receive relevant documents, the information will be prepared for the committee's review. In each matter that comes before the committee, appropriate remedial steps will be documented in a written action plan, which will then be sent to the CO and relevant internal stakeholders.

Regarding plaintiffs' suggestion that the Department utilize information from the City Comptroller's office's data on early settlements, the information available at that point in the litigation is usually of limited value for the purposes of early intervention. That being said, when a settlement over the sum of $200,000 is made by the early settlement unit of the Comptroller's Office and is attributable to a named or identified officer, it will be included in the monetary threshold for civil litigation. In addition, cases settled by the Comptroller's Office will be reviewed in conjunction with other civil litigation to determine whether any discernable patterns exist.

### IX. Biased Policing Complaints

In addition to the five categories of information specifically required by the Order, the Department is adding biased policing complaints[17] to its early intervention system. Now, two or more biased policing complaints (either profiling or slurs) in a one-year period, regardless of whether such complaints have been substantiated or not, will trigger a review by the Early Intervention Committee for potential intervention. The monitoring to identify when an officer crosses the threshold will be conducted by the Performance Analysis Section of RMB and once an officer crosses the threshold, the information will be prepared for the committee's review.

### X. Conclusion

---

[17] Biased policing refers to both "protected-class profiling" and "protected-class slurs." "Protected-class profiling" refers to allegations that police action was motivated by an individual's membership in a protected class. Allegations of protected-class profiling are investigated by IAB. "Protected-class slurs" refer to allegations that an officer used offensive language based on an individual's membership in a protected class. Allegations of protected-class slurs are investigated by CCRB.

The Department has further enhanced its early intervention process and has outlined the relevant portions of that process herein.  The Department believes that these changes are meaningful and significant and will work as designed and will bring to the attention of senior executives in the Department, those members of the service who might benefit from non-disciplinary intervention.  For the foregoing reasons, the Department asks that the Court approve this plan to systematically receive, assess, and when appropriate, act upon the types of information specified in the Order.