UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID FLOYD, *et al.*,

        Plaintiffs,                                                08 Civ. 1034 (AT)

- against -

CITY OF NEW YORK,

Defendant.
------------------------------------------------------------X
KELTON DAVIS, *et al.*,

        Plaintiffs,                                                10 Civ. 0699 (AT)

- against -

CITY OF NEW YORK,

Defendant.
------------------------------------------------------------X
JAENEAN LIGON, *et al.*,

        Plaintiffs,                                                12 Civ. 2274 (AT)

- against -

CITY OF NEW YORK,

Defendant.
------------------------------------------------------------X

                **[PROPOSED] ORDER IMPLEMENTING**
                **FACILITATOR'S RECOMMENDATION NO.**
                **1**

**WHEREAS,** the Court ordered the NYPD to consult with the Monitor and submit for

approval a plan to implement a program for systematically receiving, assessing, and

1

acting on information regarding adverse findings on the conduct of police officers involving illegal stops or illegal trespass enforcements; and

**WHEREAS**, the Court determined that the required information shall include: (a) declinations of prosecutions by the District Attorneys in New York City; (b) suppression decisions by courts precluding evidence as a result of unlawful stops and searches; (c) court findings of incredible testimony by police officers; (d) denials of indemnification and/or representation of police officers by the New York City Law Department; and (e) judgments and settlements against police officers in civil cases where, in the opinion of the New York City Law Department, there exists evidence of police malfeasance; and

**WHEREAS**, the NYPD has consulted with the Monitor and finalized a plan to implement the above program;

**NOW, THEREFORE**, it is hereby **ORDERED** on this _____ day of _____ 2020 that:

1. The NYPD shall systematically receive the following categories of information in the manner described herein:

    a. The NYPD shall systematically obtain decline to prosecute digitized, automated data from the District Attorney's Offices of Bronx County, Kings County, New York County, Queens County, and Richmond County (collectively, "District Attorney's Offices") regarding all declinations of prosecutions falling into any of the following categories:

    (i)   complainant or witness failed to positively identify defendant; or

    (ii)  incorrect or missing paperwork; or

       (iii)     insufficient evidence; or

       (iv)     lack of element of crime; or

       (v)     lack of jurisdiction; or

       (vi)     lack of nexus between defendant and crime; or

       (vii)     mere presence of defendant at location; or

       (viii)     no personal observation of violation by arresting officer; or

       (ix)     potential search and seizure issues; or

       (x)     unavailability of arresting officer.

       (xi)     Prosecutorial discretion

       (xii)     Requires additional information

       (xiii)     Summonsable offense

   b.     All relevant judicial decisions suppressing evidence shall be obtained by NYPD, including from state and federal criminal proceedings, juvenile delinquency proceedings, child abuse and neglect proceedings, and any other relevant forum. The NYPD shall systematically obtain from the Office of Court Administration, the United States Attorney's Office for the Eastern District of New York, and the United States Attorney's Office for the Southern District of New York, the following types of documents and information, preferably as digitized, automated data, in cases in which evidence was precluded as a result of unlawful stops and searches, to the extent that they are available:

       (i)     Aggregate data and individual records of all suppression hearings and/or decisions in which a decision was made to suppress

  evidence, including the names of associated and/or testifying NYPD personnel

 (ii) transcripts of suppression hearings; and

 (iii) written opinions or decisions, if available, which suppressed evidence.

When required by New York State law, the NYPD shall file an unsealing application to obtain the above information.

 c. All relevant judicial decisions finding an NYPD officer not credible shall be obtained by NYPD, including from state and federal criminal proceedings, juvenile delinquency proceedings, child abuse and neglect proceedings, and any other relevant forum. The NYPD shall systematically obtain from the District Attorney's Offices, the Office of the Corporation Counsel, the United States Attorney's Office for the Eastern District of New York, and the United States Attorney's Office for the Southern District of New York, the following types of documents in cases regarding court findings of incredible testimony, to the extent that they are available:

 (i) Aggregate data and individual records of all court findings of incredible testimony, including the names of associated and/or testifying NYPD personnel

 (ii) transcripts of hearings regarding court findings of incredible testimony; and

 (iii) written opinions or decisions regarding court findings of incredible testimony.

When required by New York State law, the NYPD shall file an unsealing application to obtain the above information.

        d.      The NYPD shall systematically obtain summonses, complaints, notices of claim, and other relevant litigation data from the New York City Law Department ("Law Department"), including the names of associated and/or testifying NYPD personnel, in civil cases where the Law Department refused to indemnify or represent an officer.

        e.      The NYPD shall systematically obtain summonses, complaints, notices of claim, and other relevant litigation data from the Law Department and the New York City Comptroller's Office, in civil cases with judgments or settlements against an officer where there exists evidence of police malfeasance.

    2.    All such information in Paragraph 1 shall be entered into the RAILS system and generate command-level notifications in the event of (a) declinations of prosecutions by the District Attorneys in New York City; (b) suppression decisions by courts precluding evidence as a result of unlawful stops and searches; (c) court findings of incredible testimony by police officers; (d) denials of indemnification and/or representation of police officers by the New York City Law Department; and (e) judgments and settlements against police officers in civil cases where, in the opinion of the New York City Law Department, there exists evidence of police malfeasance.

    3.    The NYPD shall systematically assess the following categories of information in the manner described herein:

a.    The NYPD shall utilize an Early Intervention Committee ("Committee") to systematically assess information regarding adverse findings on the conduct of Subject Officers involving illegal stops, illegal trespass enforcements, or racial discrimination.

5

    The Committee shall be comprised of executive-level personnel representing the Deputy Commissioner of Legal Matters, the Deputy Commissioner of Equity and Inclusion, the Risk Management Bureau ("RMB"), the Chief of Department, the Chief of Detectives, the Chief of Patrol, and the Chief of Personnel. The Committee must include at least two representatives of external community stakeholders, approved by the Monitor and on advice and consent of the Plaintiffs. The Committee must convene no less than once every three months.

b.  NYPD shall designate personnel to compile the above categories of information on a regular basis and identify officers who may require early intervention ("Subject Officers"). The designated NYPD personnel shall enter the compiled information into a database, and ensure that the compiled information is transmitted to the Committee. Wherever possible, the database compiled will be fed directly by data linkages from the other entities and agencies referenced in this document, i.e., NYPD will obtain these data in digitized and automated data transfers from the other agencies and entities listed herein, mitigating the potential for human error and maximizing the potential for data analytics.

c.  The Committee will determine, and seek Court approval, for clear and consistent transparent protocols to govern its decision-making and to ensure its intervention decisions are transparent and consistent across the Department. This decision matrix will be made publicly available and NYPD will publicly report its early intervention activities quarterly, including what interventions were made, whether all decisions adhered to the Decision Matrix and explaining departures, disclosing how many officers are recidivists,

and the demographics (race, age, gender, years on the force) of the Subject Officers involved.

d. The Committee will develop, with the approval of the Monitor and on advice and consent of the Plaintiffs, clear and transparent protocols for how the five categories of adverse information contained in this Court's November 20, 2018 Order will be considered in evaluations of officers, transfer requests, disciplinary processes, and in discretionary promotional decisions. These protocols must be made publicly available.

e. The Committee must assess an officer's need for remedial intervention when a Subject Officer crosses designated thresholds. A Subject Officer crosses a designated threshold when he or she:

    (i) receives three or more declinations of prosecution relating to the categories specified in Paragraph 1(a)(i)-(x) in a twelve-month period; or

    (ii) receives a suppression decision in a case in which evidence was precluded as a result of an unlawful stop and search; or

    (iii) receives a court finding of incredible testimony; or

    (iv) is a named defendant in a lawsuit and the New York City Law Department has denied representation of the Subject Officer; or

    (v) is a named defendant in a lawsuit and the New York City Law Department has refused to indemnify the Subject Officer; or

    (vi) is a named defendant in any lawsuit in which, in the opinion of the New York City Law Department, there exists evidence of police malfeasance.

    (vii) is a named defendant in two or more commenced lawsuits in a twelve-month period; or

(viii)  is a named defendant in three or more commenced lawsuits in the previous 5 years; or

(ix)  is a named defendant in any lawsuit settled for at least $50,000.

(x)  is a named defendant in any lawsuit settled for at least $1,000 where there is an allegation of an unconstitutional stop, frisk, and/or search, or an arrest for trespass

4. The NYPD shall systematically act on the preceding categories of information in the manner described herein:

a. The Committee shall determine if intervention with respect to a Subject Officer is appropriate after reviewing: (1) all relevant details pertaining to the underlying facts of the incident or incidents that caused the Subject Officer to cross a threshold; (2) the Subject Officer disciplinary history; (3) the Subject Officer's tenure with the NYPD; (4) the Subject Officer's performance evaluations; (5) the Subject Officer's past and current assignments, and (6) whether the Subject Officer has been identified as at-risk for the first time or is a recidivist. When appropriate, the Committee shall select from a range of interventions, including:

(i)  refresher trainings; or

(ii)  mentoring; or

(iii)  monitoring; or

(iv)  enhanced supervision; or

(v)  change of assignment; or

(vi)  referral for further investigation.

The Committee shall annually analyze its and report to the parties, the Monitor, and the Court: (a) how many subject officers crossed the threshold for early

intervention monitoring and how many officers triggered the EIS mechanism more than once, (b) what intervention, if any was recommended by the Committee, (c) whether officers subject to early intervention continued to be flagged for monitoring once the recommended intervention was complete,

b. The Committee shall review, and NYPD shall embed into RAILS, all relevant data pertaining to officers identified as lacking in credibility or otherwise problematic by the District Attorneys of the City of New York, also known as the "bad cops" list. Where relevant information exists, it must factor into the decision-making of the Committee, associated with the Subject Officer in the RAILS data, and be recorded as relevant to the early intervention determination.

c. The Committee shall also review and evaluate the command responses and management interventions with the Subject Officer in advance of the Committee's review, including what responses to command notifications have occurred on the matters under scrutiny by the Committee, and the effectiveness of the intervention by the Subject Officer's commanding officer, team leader, or others. The Committee shall ask the commanding officer for their recommendation on what early intervention would effectively course-correct or deter misconduct in advance of making a decision and the Committee shall evaluate and offer feedback as to the appropriateness of the commanding officer's recommendation as a means of assessing and improving leadership.

d. The Committee shall communicate the appropriate intervention to the Subject Officer's Commanding Officer, along with any other relevant internal stakeholders, in a written action plan, and return a copy of the written action plan

      to RMB. RMB must file the written action plan in a database and maintain all early intervention data in a means that it may be analyzed and reviewed in the aggregate (i.e., in tabulated data forms). In the event that the Committee determines that no intervention is required, RMB shall log the non-intervention in a database.

    e. The Commanding Officer, along with any other relevant internal stakeholders, shall ensure the Subject Officer's compliance with the Committee's recommended intervention contained in the written action plan. The Commanding Officer, and any other relevant internal stakeholders, shall also report back to both the Committee and designated RMB personnel on efforts to ensure compliance with the recommended intervention. RMB must track the efforts to ensure compliance in a database until the Commanding Officer and all other relevant internal stakeholders have ensured the Subject Officer's compliance with the recommended intervention.

5. The NYPD shall commit to building leadership capacity within the Department as a mechanism of early intervention, including but not limited to in the manner described herein.  This shall include efforts to promote peer intervention (active bystander programs), to offer leadership capacity-building and management coaching and training to team leaders, line supervisors, and commanding officers and other relevant personnel.

6. The NYPD shall systematically embed investigation and analysis of racial profiling and bias in its early intervention mechanisms in order to deter and correct racial discrimination as early as possible in officer development.  The NYPD shall implement

the RAND recommendations for early intervention, or such other protocol as is agreed by the Monitor, the Plaintiffs, and the NYPD.

SO ORDERED.

Dated: _____, 2020           _____
                                              ANALISA TORRES, U.S.D.J.