UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   6/2/2020

DAVID FLOYD, *et al.*,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

08 Civ. 1034 (AT)

KELTON DAVIS, *et al.*,

Plaintiffs,

-against-

CITY OF NEW YORK, *et al.*,

Defendants.

10 Civ. 0699 (AT)

JAENEAN LIGON, *et al.*,

Plaintiffs,

-against-

CITY OF NEW YORK, *et al.*,

Defendants.

12 Civ. 2274 (AT)

**ORDER**

**WHEREAS**, the Court ordered the New York City Police Department (the "NYPD") to consult with the Monitor and submit for approval a plan to implement a program for systematically receiving, assessing, and acting on information regarding adverse findings on the conduct of police officers involving illegal stops or illegal trespass enforcements; and

**WHEREAS**, the Court determined that the required information shall include: (a) declinations of prosecutions by the District Attorneys in New York City; (b) suppression decisions by courts precluding evidence as a result of unlawful stops and searches; (c) court

findings of incredible testimony by police officers; (d) denials of indemnification and/or representation of police officers by the New York City Law Department; and (e) judgments and settlements against police officers in civil cases where, in the opinion of the New York City Law Department, there exists evidence of police malfeasance; and

**WHEREAS**, the NYPD has consulted with the Monitor and Plaintiffs' counsel and finalized a plan to implement the above program;

**NOW, THEREFORE**, it is hereby **ORDERED** on this 2nd day of June 2020 that:

1. The NYPD shall make reasonable efforts to systematically obtain the following categories of information in the manner described herein:

    a.      From the District Attorney's Offices of Bronx, Kings, New York, Queens, and Richmond Counties (collectively, "District Attorney's Offices"), data, preferably in digitized, automated form, regarding all declinations of prosecutions falling into any of the following categories:

        (i)      complainant or witness failed to positively identify defendant; or

        (ii)      incorrect or missing paperwork; or

        (iii)      insufficient evidence; or

        (iv)      lack of element of crime; or

        (v)      lack of jurisdiction; or

        (vi)      lack of nexus between defendant and crime; or

        (vii)      mere presence of defendant at location; or

        (viii)   no personal observation of violation by arresting officer; or

        (ix)      potential search and seizure issues; or

        (x)      unavailability of arresting officer; or

(xi)    prosecutorial discretion; or

(xii)    summonsable offense.

b.    From the Office of Court Administration and the United States Attorney's Offices for the Eastern and Southern Districts of New York, suppression decisions in which evidence was precluded as a result of court findings of unlawful stops and searches from state and federal criminal proceedings, juvenile delinquency proceedings, and child abuse and neglect proceedings. The following types of documents and information shall be obtained, preferably as digitized automated data, to the extent that they are available:

(i)    Aggregate data and individual records of all suppression hearings and/or decisions in which a decision was made to suppress evidence, including the names of police officers and supervisors on the scene at the time of the encounter and/or police officers testifying about the encounter; and

(ii)    transcripts of suppression hearings; and

(iii)    written opinions or decisions, if available, concerning suppressed evidence.

When required by New York State law, the NYPD shall file an unsealing application to obtain the above information in this section. The NYPD shall request that the Office of Court Administration and relevant personnel in the U.S. Attorney's offices work with the NYPD to develop standard, efficient, and mutually acceptable procedures to ensure these data are routinely provided and shall approach the Court if external obstacles impede this obligation.

c.       From the District Attorney's Offices, New York City Law Department, and

the United States Attorney's Offices for the Eastern and Southern Districts of New York,

judicial decisions finding a police officer not credible, including from state and federal

criminal proceedings, juvenile delinquency proceedings, and child abuse and neglect

proceedings.   The following types of documents in cases regarding court findings of

incredible testimony shall be obtained, to the extent that they are available:

> (i)       Aggregate data and individual records of all court findings of
>
> incredible testimony, including the names of police officers and
>
> supervisors on the scene at the time of the encounter and/or police
>
> officers testifying about the encounter; and
>
> (ii)      transcripts of hearings regarding court findings of incredible
>
> testimony; and
>
> (iii)     written opinions or decisions regarding court findings of incredible
>
> testimony.

When required by New York State law, the NYPD shall file an unsealing application to

obtain the above information in this section.

d.       From the New York City Law Department, in any civil lawsuit alleging an

unconstitutional stop, unconstitutional trespass enforcement, or racial profiling, including

racial slurs, and if the Law Department declined to indemnify or represent a police officer,

the civil complaint, notices of claim, and the declination letter.  The NYPD shall also solicit

from the Law Department the general basis for the declination of indemnification or

representation, and identification of material(s) that directly underlie the general basis, to

the extent that information is not protected from disclosure by operation of law or applicable privilege.

> (i)   In this order, the term "racial profiling" means police action initiated with race, color, ethnicity, or national origin as a motivating factor.
>
> (ii)  In this order, the term "racial slur" includes offensive language, and derogatory remarks or gestures, based on race, color, ethnicity, or national origin.

e.   From the New York City Law Department, in any civil lawsuit or settlement alleging an unconstitutional stop, an unconstitutional trespass enforcement, or racial profiling, including racial slurs, where there has been a judgment or settlement against a police officer, and where there exists evidence that that police officer violated a rule or regulation of the NYPD, identification of such evidence, including, but not limited to, notices of claims and civil complaints, to the extent that the evidence is not protected from disclosure by operation of law or applicable privilege.

2.   All such information in paragraph 1 shall be entered into computerized relational databases and commands shall be notified in the event of:  (a) declinations of prosecution by the District Attorney's Offices; (b) suppression decisions by courts precluding evidence as a result of unlawful stops and searches; (c) court findings of incredible testimony by police officers; (d) declinations of indemnification and/or representation of police officers by the New York City Law Department as described in paragraph 1(d) above; and (e) judgments and settlements against police officers in civil cases as described in paragraph 1(e) above.

3.    The NYPD shall systematically assess the following categories of information in the manner described herein:

a.        The NYPD shall utilize an Early Intervention Committee ("Committee") to systematically assess information regarding adverse findings on the conduct of police officers involving illegal stops, illegal trespass enforcements, or racial profiling, including racial slurs.  The Committee shall be comprised of executive-level personnel representing the Deputy Commissioner of Legal Matters, the Deputy Commissioner of Equity and Inclusion, the Deputy Commissioner of Risk Management, the Chief of Department, the Chief of Detectives, the Chief of Patrol, and the Chief of Personnel.  The Committee must convene no less than once every three months.

b.        The NYPD shall designate personnel to compile the above categories of information on a regular basis and identify police officers who may require early intervention ("Subject Officers").  The designated NYPD personnel shall enter the compiled information into a database, and ensure that the compiled information is transmitted to the Committee.

c.        The Committee shall set forth a written policy for the evaluation of the information collected with sufficient detail to guide its assessments of individual officers and the extent and manner of intervention to be applied.  The policy should allow for a range of appropriate remedial measures including, but not limited to:

(i)      refresher trainings;

(ii)     mentoring;

(iii)    monitoring;

(iv)     enhanced supervision;

<blockquote>

(v)      change of assignment;

(vi)      health and wellness referral; and

(vii)      referral for potential disciplinary action to an internal NYPD bureau, or for criminal investigation to an external agency, such as a District Attorney's Office.

</blockquote>

The policy shall provide flexibility to tailor interventions to each Subject Officer's circumstances. The policy shall contain guidelines to ensure consistent, fair, and proportionate outcomes. The policy shall be posted on the NYPD public website.

     d.      The Committee shall track metrics to measure performance of the program, including: (a) number of police officers assessed, categorized by type of threshold triggered; (b) number of police officers who triggered the early intervention system mechanism more than once; (c) number of interventions or remedies directed, categorized by type and duration; (d) number of police officers successfully completing written action plans referred to in paragraph 4.d; (e) number of police officers subject to early intervention who continued to be flagged for monitoring once the recommended intervention was complete; (f) number of police officers who become the subject of Civilian Complaint Review Board or NYPD investigations, or lawsuits, after entry into the program; and (g) number of police officers terminated or placed on dismissal probation after entry into the program. The NYPD shall report on these metrics quarterly. The quarterly reports shall be statistical and summary in nature without identifying characteristics, and shall be publicly available.

     e.      The Committee, in consultation with the Monitor and available to Plaintiffs prior to adoption, shall develop a program for systematically receiving and assessing

information regarding adverse findings on the conduct of police officers involving illegal stops or illegal trespass enforcements for consideration in officer performance evaluations, transfer requests and discretionary promotional decisions.  Such assessments and relevant information shall be provided to the Police Commissioner, or the Police Commissioner's designee(s), for consideration by personnel making performance evaluations, transfer or discretionary promotional decisions, on a case by case basis, as the Police Commissioner deems appropriate.

       f.      The Committee must assess a Subject Officer's need for early intervention when a Subject Officer crosses designated thresholds.  A Subject Officer crosses a designated threshold when he or she:

(i)     receives three or more declinations of prosecution relating to the categories specified in paragraph 1(a)(i)-(xii) in a twelve-month period; or

(ii)    receives a suppression decision in a case in which evidence was precluded as a result of an allegation of an unlawful stop, frisk, search, trespass enforcement or racial profiling, including racial slurs; or

(iii)   receives a court finding of incredible testimony; or

(iv)   is a named defendant in a lawsuit and the New York City Law Department has declined to represent the Subject Officer; or

(v)    is a named defendant in a lawsuit and the New York City Law Department has declined to indemnify the Subject Officer; or

(vi)   is a named defendant in any lawsuit alleging an unconstitutional stop, an unconstitutional trespass enforcement, or racial profiling or racial

slurs where there has been a judgment or settlement against a police officer, and where there exists evidence that the police officer violated a rule or regulation of the NYPD; or

(vii)    receives any complaint containing an allegation of racial profiling or racial slurs.

4.      The NYPD shall systematically act on the following categories of information in the manner described herein:

a.      The Committee shall determine if intervention with respect to a Subject Officer is appropriate after reviewing:  (1) all relevant details pertaining to the underlying facts of the incident or incidents that caused the Subject Officer to cross a threshold; (2) the Subject Officer's disciplinary history and performance monitoring; (3) the Subject Officer's tenure with the NYPD; (4) the Subject Officer's performance evaluations; (5) the Subject Officer's past and current assignments; and (6) whether the Subject Officer has appeared before the Committee more than once.  The Committee may also utilize or consult with other NYPD resources, such as a NYPD health and wellness representative or the commander of the Training Academy.  When appropriate, the Committee shall select from a range of interventions, including, but not limited to:

(i)      refresher trainings;

(ii)     mentoring;

(iii)    monitoring;

(iv)    enhanced supervision;

(v)     change of assignment;

(vi)    health and wellness referral; and

(vii)   referral for potential disciplinary action to an internal NYPD bureau, or for criminal investigation to an external agency, such as a District Attorney's Office.

b.      The Committee shall review, and the NYPD shall enter into the computerized database described in paragraph 2 above, all relevant data pertaining to officers identified as lacking in credibility or flagged as ineffective by the District Attorney's Offices.  This shall include any relevant or associated case materials obtained or received by the Early Intervention Committee, the Adverse Credibility Committee, any of their constituent members, or any other bureau or office within the NYPD.  Where relevant information exists, it shall factor into the decision-making of the Committee, be associated with the Subject Officer in the computerized database, and be considered in connection with any early intervention determination.

c.      The Committee, before making its decision, shall ask the commanding officer or their designee for their recommendation on what early intervention would be effective and, if there had been any prior efforts at interventions, their effectiveness.

d.      The Committee, within seven business days of making a decision, shall communicate the appropriate intervention to the Subject Officer's commanding officer, along with any other relevant internal stakeholders, in a written action plan, and return a copy of the written action plan to the Risk Management Bureau ("RMB").  RMB must file the written action plan in a database in a manner that permits analysis in the aggregate.  In the event that the Committee determines that no intervention is required, RMB shall log the non-intervention in a database.

e.      The commanding officer, along with any other relevant internal stakeholders, shall ensure the Subject Officer's compliance with the Committee's recommended intervention contained in the written action plan. The commanding officer, and any other relevant internal stakeholders, shall also report back to both the Committee and designated RMB personnel, within thirty days of receiving the Committee's decision, on efforts to ensure compliance with the recommended intervention. The commanding officer shall personally interview the Subject Officer before the officer has completed the written action plan. RMB must track the efforts to ensure compliance in a database until the commanding officer and all other relevant internal stakeholders have ensured the Subject Officer's compliance with the recommended intervention.

5.      The NYPD shall include investigation and analysis of racial profiling and bias, including racial slurs, in its early intervention mechanism in order to deter and correct racial discrimination as early as possible in police officer development. Measured disparities are not, in and of themselves, to be considered as evidence of biased-based policing, but extreme deviations or disparities in enforcement activity, to the extent that such deviations or disparities can be measured and are statistically significant, may be considered a basis for further investigation.

SO ORDERED.

Dated:  June 2, 2020
          New York, New York

_____
                ANALISA TORRES
          United States District Judge