# Arnold & Porter

**Peter L. Zimroth**
+1 212.836.7316 Direct
Peter.Zimroth@arnoldporter.com

June 15, 2020

**VIA ECF**

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    *Floyd, et al. v. City of New York*, 08-CV-1034 (AT),
            *Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT),
            *Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT),
            <u>Recommendation Regarding NYPD Auditing Plan</u>

Dear Judge Torres,

    I am pleased to submit for your approval my recommendation for the NYPD Auditing Plan and the NYPD's Instructions for Command Stop Report Self-Inspections. In addition, for your information, I am attaching the following documents:

    a. Stop Report Audit Addendum

    b. PIE Audit Addendum

    c. TAP/NYCHA Trespass Arrest Audit Addendum

    d. 802 Stop Report Command Self-Inspection Appendix

    e. 803 Police-Initiated Enforcement (PIE) Command Self-Inspection documents
        i. 803 PIE Self-Inspection QAD Review
       ii. 803 PIE Self-Inspection BWC Appendix A
      iii. 803 PIE Self-Inspection BWC Appendix A Instructions

The Police Department circulated a draft of these documents in November 2019. Since then, there have been many meetings and discussions among the parties. The Audit Plan being submitted reflects many changes suggested by the plaintiffs, the City and the Monitor.

This recommendation and the proposed Audit Plan covers only audits of stop reports, trespass arrests, and PIE arrests conducted by the Department's Quality Assurance Division (QAD), and stop report and PIE self-inspections conducted by executives at the command level. These audits and self-inspections examine each command's compliance with the 4th Amendment and Patrol Guide 212-11, *Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops*, Patrol Guide 212-59, *Interior Patrol of Multiple Dwellings Enrolled in The Trespass Affidavit Program,* Patrol Guide 212-60, *Interior Patrol of Housing Authority Buildings*, and Patrol Guide 212-123, *Use of Body-Worn Cameras.*

In fashioning the proposed Audit Plan, it was important to recognize that QAD's function in the NYPD, though important, is limited. The basic function of QAD is to sample documents (and now videos) to identify instances in which there might be a violation of law or policy. Its job is not to oversee the officers or precincts being audited or to ensure that appropriate remedial action is taken. Those functions reside elsewhere—in the supervisors at the precinct or elsewhere, such as in the Risk Management Bureau. Nor is it QAD's function to institute systemic reform, though their data can and should be used by others to do so.

In addition to the audits and self-inspections described in the Audit Plan, the NYPD is making other efforts to monitor the constitutionality of stops and frisks, including compliance with the 14th Amendment, and to ensure the appropriate documentation of all Level 3 stops. Those other efforts are not covered by this proposed Audit Plan.

QAD currently conducts four types of audits relevant to the remedial measures: (1) audits of stop reports, activity logs and associated BWC videos; (2) RAND audits to identify undocumented stops; (3) audits of police-initiated enforcement (called PIE audits), also to identify undocumented stops; and (4) audits of trespass arrests and Trespass Crime Fact Sheets (TCFS).

QAD also oversees stop report and PIE self-inspections by commands and compares its results with the results from the command self-inspections. All of these activities are included in the Audit Plan being submitted with this letter.

The NYPD has revised its auditing protocols and methodologies many times during this monitorship, often in response to suggestions from the monitor and the parties. The proposed Audit Plan being submitted includes important improvements over the current protocols. Most significantly, the plan being submitted calls for QAD to review BWC video corresponding to every stop report being audited. In this BWC review, QAD will examine: whether the encounter was recorded in full or in part; whether the BWC video was consistent or inconsistent with the stop report, and in particular, whether the video indicates that the stop report does not accurately articulate reasonable suspicion for the stop or frisk, or a legally sufficient basis for the search; and whether the officer complied with the Right to Know Laws, including compliance with the consent to search policy. This is a substantial increase in BWC review over the current protocols. Also, under current protocols, QAD reviews only a sample of BWC videos associated with trespass arrests and police-initiated enforcement (PIE) arrests as part of QAD Trespass Arrests audits and PIE audits. Under the proposed Audit Plan, QAD will review the BWC video associated with every audited trespass arrest and PIE arrest.

With respect to QAD's Stop Report audits, there is also a change in the sampling methodology for determining which stop reports QAD will audit and a change in the schedule of audits. Currently, for precinct commands, QAD auditors are auditing every other stop report (50%). In the proposed Audit Plan, the number of stop reports audited in each command will be based on a command's annual number of stop reports prepared for the prior year. For 50 commands with the lowest number of reported stops in 2019, going forward in the proposed Audit

Plan, QAD will audit 75% of stop reports. For 29 commands that had between 60 and 119 reported stops in 2019, QAD will audit 50% of stop reports. For 48 commands that had between 120 and 249 stops in 2019, QAD will audit 40% of stop reports. And for six commands that had over 250 stops in 2019, QAD will audit 33% of stop reports. This sampling methodology is anticipated to result in more stop reports audited.

With respect to the frequency of audits, QAD implemented a pilot program in which it now audits Patrol commands (precincts) on a weekly basis. This frequency provides those commands with timely feedback, allowing them to take appropriate corrective actions more quickly than audits conducted quarterly. Under the proposed Audit Plan, this weekly audit protocol will also be applied to Transit Districts, PSAs and selected Specialized Units.

Other changes from the current audit protocol include a requirement that QAD evaluate the sufficiency of supervisors' review of stop reports by examining whether supervisors required corrections to stop reports before approving them; and, when auditing trespass arrests and Trespass Crimes Fact Sheets (TCFS), auditors will determine whether a stop report should have been prepared, but was not. In addition, under the new command self-inspection protocol being submitted, the ICOs at commands will review the BWC video associated with each stop report being evaluated as part of the command stop report self-inspection.

The NYPD will begin using the new audit protocols once the proposed Audit Plan is approved by the court. The protocols, worksheet and templates used by the auditors are submitted to the court for its information. It is contemplated that protocols, templates and worksheets for audits will continue to be revised in an iterative process to improve the Department's process for identifying and correcting errors. Only material changes to the Audit Plan and the Command Self-Inspections Instructions, however, will be submitted for court approval. In addition, some aspects

of the NYPD's Audit Plan cover compliance with the Right to Know Act (steps I.B.5, I.B.6.f.iv andI.B.6.f.v).  These revisions to the auditing protocol were included for the sake of completeness.  Other than the business card requirement, which was approved by this court, Right to Know Act compliance is outside the scope of this monitorship, as previously noted by the court.  Order Approving Recommendation Regarding Stop and Frisk Procedures and Stop Report, ECF No. 657, at 5.  Therefore, steps I.B.6.f.iv and 1.B.6.f.v, other than the business card requirement, are not being submitted for approval.

    I believe that the proposed Audit Plan meets the requirements of the court's order.  The City has informed me that they support the approval of this recommendation.  The Plaintiffs' counsel have informed me that they have certain concerns that they plan to raise with the Court.

    Respectfully submitted,

    */s/ Peter L. Zimroth*
    Peter L. Zimroth
    Monitor

Enclosures