

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**JAMES E. JOHNSON**
*Corporation Counsel*

(212) 356-0800
jajohnso@law.nyc.gov

December 23, 2020

**VIA ECF**
Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *David Floyd, et. al. v. City of New York,* 08 Civ. 1034
      *Kelton Davis, et. al. v. City of New York,* 10 Civ. 699
      *Jaenean Ligon, et. al. v. City of New York,* 12 Civ. 2274

Your Honor:

This letter is respectfully submitted on behalf of the City of New York in response to the Monitor's application by letter dated December 14, 2020.

The Monitor's application seeks a *vacatur* of the Court's Order dated February 7, 2019, which approved the combined pilot study, and an issuance of a new order approving an alternative program. The City does not oppose the alternative plan and understands that the Monitor's proposed studies is meant to test, among other things, the New York City Police Department's ("NYPD") implementation of 14th Amendment reforms. The City, however, has narrow reservations insofar as the proposed order attached to the Monitor's application at Appendix 3 seeks to have the Court order the City "to provide ***all necessary funding*** for [] [the Monitor's] [s]tudies and ***full[y] support*** [] their implementation as directed by the Monitor." (emphasis added).[1] This unrestricted language is a departure from existing language in the *Floyd*

_____
[1] *See Floyd v. City of New York*, 08-cv-1034 (AT), Dkt. No. 805, Appendix 3, Monitor's Proposed Order (filed December 14, 2020).

December 23, 2020

litigation, which refers to the City covering the "*reasonable*" costs and fees for the Monitor and his experts.[2]

The City does not dispute that the Monitor may seek to conduct certain studies, that the Court may approve and order such studies, and that the City may be responsible for the costs of the studies. The City's concern is with the breadth of the Monitor's application, which includes no reference to a workplan or appropriate cost controls. The City has a duty to ensure that costs associated with the studies are reasonable. Accordingly, as explained below, the City requests a simple modification to the Monitor's proposed order.

The City would also like to use this opportunity to raise concerns with the scope of the Monitor's studies with respect to consent searches as discussed more fully below.

**<u>Fiscal Concerns</u>**

Over the past seven years, the City has been working diligently and collaboratively with the Monitor and plaintiffs' counsel in the *Floyd*, *Ligon*, and *Davis* matters to implement the various remedies ordered by the Court. While the Monitor's proposed studies may help provide a path to substantial compliance of certain reforms as required by the Court's orders, the City is acutely aware that the Monitor's proposed studies will be lengthy and expensive. Given the unprecedented financial challenges and our basic fiscal responsibility to the City, it is both necessary and reasonable for the City to seek a commitment from the Monitor regarding reasonable limitations to the scope and cost of the studies. Such reasonable limitations include providing the parties with an appropriate forward-looking workplan and reliably forecasted expenditures. Such an approach to forecasting would be in line with the City's approach on other monitorships.

The City has been forthcoming with the Monitor regarding the significant financial hardship it faces and the substantial financial burden associated with the cost of implementing the ISLG and Stanford studies. Given the significant initial proposed cost of the studies described in Appendix 2[3], which does not include many anticipated costs including analysis of body-worn camera samples, or the manual entry of data by graduate students, retired judges and the professional transcribers, a workplan would aid the City in anticipating its future costs and obligations for budget purposes. A workplan would also ensure an expeditious process and timely payment of invoices, which would benefit all parties as this Monitorship enters its eighth year of what was expected to be a three-year process. A workplan will also help the City in its decision making process to address the Monitor's objectives in order to optimize the allocation of City resources.

---

[2] *See Floyd v. City of New York*, 959 F. Supp. 2d 668, 678 (S.D.N.Y. 2013)("The City will be responsible for the **reasonable costs and fees** of the Monitor, his staff, and any experts he retains.") (emphasis added); *see id.* at 688 ("The City will be responsible for the **reasonable costs and fees** of the Facilitator and the Joint Remedial Process.") (emphasis added).

[3] *See* Appendix 2 to Monitor's Letter Application in Support of Motion to Vacate Combined Pilot and Approval of Alternative Plan dated December 14, 2020.

December 23, 2020

Moreover, while the City will always meet its obligations under the Remedial Order or any court order in this Monitorship, it is completely fair for the City to ask that the costs it will carry be reasonable and subject to a workplan.   As stewards of the public fisc, the City owes a duty to its taxpayers to curb costs and seek reasonable limits on all City expenditures, including ones under this Monitorship.  The COVID-19 emergency is projected to deprive the City of over $7.4 billion in sales and income tax revenue, and may eviscerate the City's budget in the form of nearly $6 billion in proposed cuts to vital services, including (but certainly not limited to) education, pedestrian safety, and sanitation.  Indeed, unlike when this Monitorship first began seven years ago in 2013, the City is currently faced with, among other things, unprecedented financial challenges stemming from the current pandemic.  City agencies and employees are not spared. In addition to cuts to their budgets, in September 2020, Mayor de Blasio announced expanding the five-day furloughs for all city employees, which was previously announced only for City Hall workers, between October 2020 and March 2021 as attempt to save the City another $21 million.[4]  The City has also reached an agreement with the District Council 37 union under which the City will not make any payments to union funds for City employees and retirees, which saves the City's approximately $164 million and prevented layoffs through end of June 2021.[5] At a time when the City's financial resources are strained, the City has a duty to be vigilant about costs in all matters, including the Monitorship.

The idea of establishing reasonable controls that consider the financial impact is not novel.  In its monitorships, the Department of Justice routinely factors in "the projected monetary costs to the business organization" alongside "whether the proposed scope of a monitor's role is appropriately tailored to avoid unnecessary burdens to the business's operations."[6]  Concerns over monitorship expenses are amplified even more when they are underwritten by the public. The cost of the Monitor's two proposed studies is estimated to double, if not triple, the yearly budget.  The City is seeking a simple modification of the proposed order because it is ultimately the City that bears the responsibility for "the reasonable costs and fees of the Monitor, his staff, and any experts he retains."[7]

In seeking this modification, the City is not attempting to overly restrict the Studies. Rather, given the current fiscal crisis faced by the City of New York following the widespread and ongoing health and financial consequences of COVID-19, it would be irresponsible for the City not to request a budget and a workplan for the Monitor's studies, particularly given the numerous progressive steps the City has taken to address the current fiscal crisis. In fact, consistent with the Monitor's plan to provide the parties with quarterly progress reports, the City would benefit greatly from the ability to budget for the upcoming quarter if the progress report,

[4] Shahrigian, Shant, *9,000 more NYC workers to be furloughed: Mayor de Blasio*, NY Daily News (Sept. 23, 2020) http://www.nydailynews.com/news/politics/ny-municipal-worker-furlough-bill-de-blasio-20200923-xbj5mfonzffubi2uo3bcpub2by-story.html.
[5] Honan, Katie, *New York City's Largest Municipal Union, Mayor de Blasio Reach Deal to Avert Layoffs*, The Wall Street Journal (Oct. 28, 2020) https://www.wsj.com/articles/new-york-citys-largest-municipal-union-mayor-de-blasio-reach-deal-to-avert-layoffs-11603919779.
[6] Memorandum from Brian A. Benczkowski, Assistant Attorney General, to All Criminal Division Personnel, Selection of Monitors in Criminal Division Matters 2 (Oct. 11, 2018).
[7] *Floyd v. City of New York*, 959 F. Supp. 2d 668, 678 (S.D.N.Y. 2013), *modified* 302 F.R.D. 69 (S.D.N.Y. 2014).

December 23, 2020

or a separate document, would include a breakdown of anticipated next-quarter costs beyond that which was initially proposed as part of Appendix 2 of the Monitor's application.

There is precedent for the City's proposal in modifying the language of the Monitor's proposed order and valid justification. Indeed, as noted, the City's suggested language below mirrors the language under the Remedial Order concerning the "reasonable" costs and fees of the Monitor and the Facilitator in the development and implementation of both the Immediate Reforms and Joint Process Reforms.  Accordingly, the City respectfully requests that the language in the Monitor's proposed order regarding funding be modified as follows: "The City shall be responsible for all reasonable costs and fees for the Monitor's proposed studies and the Monitor shall provide the City with a workplan every six months with a detailed breakdown regarding anticipated costs above what is stated in the proposed studies annexed to the Monitor's application as Appendix 2."

## Scope Concerns

The City's second concern relates to the scope of the Monitor's studies regarding the research question involving "consent searches." In the Monitor's application, he states that his proposed studies plan to evaluate, among other things, "Consent Searches: How is consent sought for searches during stops, and are there racial differences in officers' requests for consent and when citizens grant consent?"[8]  The City is not seeking to block reforms in the practices of NYPD.  However, the City objects to this aspect of the studies because the research question, as written, is beyond the scope of this Monitorship.

As Your Honor may recall, this topic was previously raised with the Court when plaintiffs sought to make this topic part of this Monitorship.  In recapping the history of this litigation in a prior order, Your Honor explicitly recognized that the scope of the Remedies Order "are as narrow and targeted as possible" and that both the Remedies Order and Liabilities Order makes clear that the language related to searches refers to "limited ***non-consensual searches following a frisk***."[9] (emphasis added).  Indeed, Your Honor specifically stated in that prior order that "Consensual searches are not the subject matter of this litigation".[10]

As such, the City objects to the portion of the Monitor's application, as written, that seeks to research the question of consent searches.  That said, if the Monitor were to propose an alternative research question that is within the scope of the Monitorship, the City may be in a position to withdraw this objection. The City is open to reviewing any such proposal.

---

[8] *See Floyd v. City of New York*, 08-cv-1034 (AT), Dkt. No. 805, Monitor's Letter Application in Support of Motion to Vacate Combined Pilot and Approval of Alternative Plan dated December 14, 2020 at p. 8.
[9] *See Floyd v. City of New York*, 08-cv-1034 (AT), Dkt. No. 537, Order at pp. 1-3 (S.D.N.Y. Nov. 22, 2016) (Court ruling regarding plaintiffs' application to include, within this Monitorship, reforms to consent searches promulgated by an agreement between NYPD and New York City Council Speaker Melissa Mark-Viverito).
[10] *See id.*

December 23, 2020

**Conclusion**

In light of current fiscal crisis, the City believes the language of the Monitor's proposed order concerning costs is overly broad. The City proposes the inclusion of language where "reasonable" precedes costs and fees and the Monitor providing a workplan with a budget so the City can make efforts in financially planning for the proposed studies.  For the Court's convenience, the language is repeated here: **"The City shall be responsible for all reasonable costs and fees for the Monitor's proposed studies and the Monitor shall provide the City with a workplan every six months with a detailed breakdown regarding anticipated costs above what is stated in the proposed studies annexed to the Monitor's application as Appendix 2."**

The City likewise objects to that the portion of the Monitor's proposed studies that seek to research or study issues of consent searches.

Thank you for your consideration.

Respectfully Submitted,

James E. Johnson