# Arnold & Porter

**Peter L. Zimroth**
+1 212.836.7316 Direct
Peter.Zimroth@arnoldporter.com

October 12, 2021

**VIA ECF**

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    *Floyd, et al. v. City of New York*, 08-CV-1034 (AT),
              *Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT),
              *Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT),
              Fourteenth Report of the Independent Monitor

Dear Judge Torres,

    I am pleased to submit the Fourteenth Report of the Independent Monitor. This report examines the New York City Police Department's (NYPD) activities in enforcing social distancing rules between March 2020 and July 2020, whether those activities involved stops, frisks, searches, and trespass enforcement, and whether those activities complied with the requirements of the remedial orders in *Floyd v. New York City*, *Ligon v. New York City* and *Davis v. New York City*.

    In March 2020, with the arrival of the COVID-19 pandemic, federal, state and government officials began taking measures to address the spread of the coronavirus. Governor Andrew M. Cuomo announced a stay-at-home order and Mayor Bill de Blasio

Arnold & Porter

declared a state of emergency in New York City. All individuals over the age of two were required to wear a mask when in public, and individuals were required to stay a distance of six feet away from persons other than their immediate family. Mayor de Blasio directed the New York City Police Department (NYPD) and other City agencies to enforce the public health COVID rules (COVID rules). The Police Department enforced the COVID Rules from March 2020 to July 2020, when the Mayor transferred the enforcement authority from the NYPD to the New York City Sheriff.

In May 2020, Plaintiffs' counsel in the *Floyd* litigation filed a motion and brief arguing that the NYPD's social distancing enforcement violated prior *Floyd* orders. Plaintiffs requested the Court to direct the Monitor to investigate the NYPD's social distancing enforcement and report to the Court, and sought an injunction against any further enforcement of the COVID Rules by NYPD until after the Court ruled on the Monitor's report.

This Court denied the Plaintiffs' motion. The Court determined that much of the police conduct that Plaintiffs alleged and complained of extended beyond the suspicionless and racially motivated stops and frisks addressed by the Court in *Floyd*. The Court did note, however, that some of the alleged police conduct could fall within the ambit of *Floyd*. The Court stated: "The Monitor's work is ongoing and encompasses all suspicionless and race-based stops, including those which may have taken place during the COVID-19 pandemic." Thus, the Court determined that the existing system of review, with the Monitor assessing and reporting on the NYPD's progress in complying with the Court's mandates, was sufficient. In making its ruling, the Court relied on my assurances that the

**Arnold & Porter**

Monitor Team would review information about enforcement of the COVID Rules, tailored to the *Floyd* remedial process. This report is the result of those efforts and reflects the Monitor Team's review and analysis of the data collected and the NYPD's enforcement of the COVID Rules.

Although the NYPD's social distancing enforcement garnered a significant amount of media attention and controversy, the NYPD did not extensively use its authority to arrest or issue summonses. There were only 141 arrests for social distancing violations and 520 summonses during those four months, an average of 1.8 arrests per precinct and 6.8 summonses per precinct per month. This compares to 1,629 911 calls for service (CFS) relating to the COVID Rules and 60,307 311 CFS relating to the COVID Rules. In general, the overall number of social distancing arrests and summons reported over the four-month period for a population as large as New York City with a department as large as the NYPD appears quite low, especially compared to the level of violations reported through 311 and 911.

The Monitor Team examined the racial distribution of NYPD social distancing enforcement. There was a significant correlation between the non-White population in a given precinct and the number of enforcement actions in those precincts. On closer examination, however, the correlation is likely due to the outsized influence of specific events in three precincts that generated multiple enforcement actions. In addition, precincts with high non-White population also had a higher volume of 911 and 311 calls. Based on the higher number of social distancing-related 911 and 311 calls, precincts with a higher non-White population had a higher probability of enforcement. NYPD's social distancing

**Arnold & Porter**

enforcement in the City's precincts closely mirrored the calls for service for social distancing in those precincts.

The Monitor Team's review of the BWC videos of social distancing enforcement revealed that the conduct by officers was overwhelmingly lawful. There was only one incident in which the Monitor Team determined that the video did not illustrate probable cause for the arrest or summons, and one video of summons enforcement incidents in which it appeared that officers made a stop without reasonable suspicion. In addition, officers enforcing social distancing orders from the City and State engaged in Level 3 *Terry* stops very rarely. In those situations in which a *Terry* stop did appear to occur, the video recording indicated the officers had reasonable suspicion for most of the stops, as well as reasonable suspicion for the frisks and a legal basis for the searches, if conducted. The NYPD's enforcement actions of the COVID Rules involved arrests and summonses, which require written documentation. Because there were so few Level 3 *Terry* stops, the issue of underreporting of Level 3 *Terry* stops does not arise in this analysis.

In conclusion, the Monitor's analysis supports the Court's determination that the majority (indeed, the vast majority) of NYPD's social distancing enforcement did not involve suspicionless and racially motivated stops and frisks, and thus fell beyond the ambit of the *Floyd* and *Davis* cases.

                                    Respectfully submitted,

                                    */s/ Peter L. Zimroth*
                                    Peter L. Zimroth
                                    Monitor

Arnold & Porter

Attachment: Fourteenth Report of the Independent Monitor