UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
DAVID FLOYD, *et al.*,

      Plaintiffs,

  -against-                                                No. 08 Civ. 1034 (AT)

CITY OF NEW YORK, *et al.*,

      Defendants.
------------------------------------------------------------------------ X

**DECLARATION OF RAMA ISSA-IBRAHIM IN SUPPORT OF PLAINTIFFS' REQUEST TO HOLD IN ABEYANCE THE MOTION TO MODIFY THE *FLOYD* REMEDIAL ORDER**

I, Rama Issa-Ibrahim, pursuant to 28 U.S.C. § 1746 and subject to penalties of perjury, state the following is true and correct:

1. I am the Director of Programs for Communities United for Police Reform (CPR), a citywide campaign to end discriminatory and abusive policing in New York, a position I have held since May 2021.

2. I submit this declaration in support of Plaintiffs' request to hold in abeyance the motion to modify the *Floyd* remedial order to ensure more robust community engagement in the Monitorship and accurate assessments of the NYPD's compliance with the court order. I base my declaration on my own familiarity with the Floyd Monitorship process, regular consultations with CPR coalition members, and evidence regarding the NYPD's failure to comply with the *Floyd* Remedial Order as well as its increasingly aggressive policing efforts impacting communities of color in the City.

3. Among other responsibilities at CPR, I coordinate CPR's policy and legislative efforts, community empowerment work to strengthen community-based infrastructure by supporting know your rights and cop watching efforts and help to organize various police accountability campaigns.

4. CPR is an unprecedented campaign to end discriminatory policing practices in New York, and to build a lasting movement that promotes public safety and reduces reliance on policing. CPR runs coalitions of over 200 local, statewide, and national organizations, bringing together a movement of community members, lawyers, researchers and activists to work for change. The partners in this campaign come from all 5 boroughs, from all walks of life and represent many of those most unfairly targeted by the NYPD. The majority of our member organizations are grassroots organizations whose leadership, constituencies and memberships are based primarily in low-income communities of color

    that are most impacted by abusive policing – including young people, LGBTQ and gender nonconforming communities, immigrants, people with disabilities, homeless New Yorkers, public housing residents, and others.

5. CPR members have participated in police accountability efforts outside and within the *Floyd* Monitorship since the organization's founding in 2012–including the Court supervised Joint Remedial Process (JRP) in 2017. CPR was specifically identified in this Court's 2013 Remedial Order as a critical stakeholder in the remedial process.

6. I and representatives of CPR member organizations have communicated directly with the Monitor and her team about the Community Liaison proposal and though it is encouraging to see the Monitor's team recognize the need for more community input in the Monitorship process, the reality is that the proposal still falls short of giving directly impacted communities the power to influence the process in a meaningful way. We believe that there are still key recommendations made by Facilitator Ariel Belen, which stem from previous broad community input of the JRP, that need to be implemented to truly incorporate community perspectives into the Monitorship process and ensure an accurate assessment of the NYPD's compliance with 14th Amendment.

7. We cannot evaluate the effectiveness of the Community Liaison proposal without knowing who is hired for the position and their detailed plan for community engagement. Therefore, beyond the request for public status conferences, we believe more time is needed to determine whether the Court should rule on Plaintiffs' pending motion.

8. We have seen in the past the importance of implementation when gathering community input. For example, during the Joint Remedies Process (JRP), CPR and other impacted groups provided meaningful input and recommendations that were largely ignored by the Monitorship. Key community priorities included a transparent discipline reform and an independent community board – that would not be bound by a restrictive confidentiality order and would be a stakeholder in the development of further reforms. These two recommendations were again included in Plaintiffs' motion to modify the *Floyd* remedial order to ensure more consistent community engagement and meaningful oversight in the remedial process from people who are directly impacted by over policing and have not yet been addressed.

9. These reforms are now even more essential to CPR member organizations and directly impacted communities given the increase in discriminatory policing in New York City over the past few years. Recently, we have seen an increase in stops despite issues with underreporting, a continuation of racial disparities in stops, and killings of New Yorkers stopped by NYPD. More stop-question-and-frisk encounters were recorded in the first three months of 2022 than in nearly three years. We know first-hand that unconstitutional stops can escalate to fatal outcomes, as in the case of Antonio Williams and Eric Garner. We have also seen the NYPD escalate "broken windows" enforcement which disproportionately impacts Black, Latinx, and poor people of color.

10. Full information about these types of encounters, including how officers behave during them, may not be captured without direct input from affected communities. Now more than ever, it is important that the perspectives of New Yorkers most impacted by the NYPD's stop-and-frisk and trespass enforcement practices are taken into account as the Monitorship works towards ensuring NYPD's compliance.

11. CPR believes these measures requested in Plaintiffs' motion are essential to promote NYPD's compliance with the Constitution and for accountability to people most impacted by policing:

    a) Establishment of a Community Collaborative Board to collect community feedback and work with the Community Liaison to issue recommendations to the Monitor and the Court on the NYPD's compliance with the Court-ordered reforms.

    b) Developing discipline reforms, in collaboration with the Community Liaison and Community Collaborative Board, through a meaningful community input process.

    c) Community surveys and field audits to counter the NYPD's issues with officer underreporting and help determine whether there have been improvements in constitutional policing.

12. CPR will seek to engage with the Monitor and the Community Liaison in an effort to ensure these measures are included in the Community Liaison Plan. CPR would benefit from the time it will take to know the Community Liaison's identity and to understand the full scope of their plan before advising the Court about the continuing need for the measures identified in the Motion.

13. We also continue to request public status conferences with the Court, held every six months, to allow for more transparency in the monitorship and provide an opportunity for the parties, the Monitor, members of the Community Collaborative Board and members of the public to address the Court regarding compliance issues.

14. For these reasons, CPR supports Plaintiffs' request to hold in abeyance the motion to modify the *Floyd* remedial order to ensure more consistent community engagement with the Monitorship and accurate assessments of the NYPD's compliance with the court order.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the forgoing is true and correct.

Dated:     New York, New York
           September 30, 2022                               _____
                                                                  Rama Issa-Ibrahim