**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Mylan L. Denerstein
Direct: +1 212.351.3850
Fax: +1 212.351.6350
MDenerstein@gibsondunn.com

November 15, 2022

**VIA ECF**

Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Floyd, et al. v. City of New York*, 08-CV-1034 (AT)
      *Ligon, et al. v. City of New York*, et al., 12-CV-2274 (AT)
      *Davis, et al. v. City of New York*, et al., 10-CV-0699 (AT)
      Parties' Submissions Related to the Monitor's Community Liaison Proposal

Dear Judge Torres:

We write in response to the Court's October 14, 2022 order directing the Monitor to respond to Plaintiffs' motion to modify the *Floyd* Remedial Order to provide more avenues for community engagement in light of the Monitor's recent Community Liaison proposal.[1]  This Court recognized that community input is a "vital part of a sustainable remedy in this case." *Floyd*, ECF No. 372 at 29.  In collaboration with the parties, the Monitor developed the independent Community Liaison position whose primary purpose will be to obtain community input.  *See* August 25, 2022 Monitor's Letter to Court re: Community Liaison, *Floyd*, ECF No. 888.  As detailed in the publicly filed framework and position description, the independent Community Liaison will provide significantly more meaningful opportunities for community engagement and input in the monitorship.  The parties and the Monitor have also made substantial progress in jointly recommending candidates for the position for the Court's consideration. The description and framework were developed in collaboration with the parties.  It is also our expectation that the position of Community Liaison is likely to be appointed by the Court before the end of the year.  Accordingly, because the Community Liaison's primary role is community engagement, Plaintiffs' motion should be denied.

---

[1] On July 29, 2021, Plaintiffs filed a motion to modify the Floyd Remedial Order to provide more avenues for community engagement in the remedial process.  *Floyd*, No. 08 Civ. 1034, ECF No. 840.  The motion was fully submitted on October 12, 2021.  *Floyd*, ECF No. 864.  On September 9, 2022, the Court ordered Plaintiffs to file supplemental briefs "discussing whether the Monitor's Community Liaison proposal addresses their concerns regarding community involvement in the remedial process and whether it leads them to alter the relief requested in their motion."  *Floyd*, ECF No. 889.  On October 14, 2022, the Court ordered the Monitor to respond to the parties' submissions.  *Floyd*, ECF No. 893.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

Hon. Analisa Torres
Southern District of New York
October 28, 2022
Page 2

I. **The Community Liaison Is Appointed by the Court and Is Independent of the Monitor**

Crucially, the Community Liaison is to be "appointed by the Court and will be independent of the Monitor and the Monitor team." *Floyd*, ECF No. 888-1 at 1. The Community Liaison will be the conduit for communicating the perspectives of the communities most impacted by NYPD's stop-question-and-frisk and trespass enforcement practices. *Id.*

II. **The Role of the Community Liaison Was Developed with the Parties' Input, and the Parties Have Been Engaged in the Selection Process**

Recognizing the need for and importance of robust community engagement, the Monitor team developed the Community Liaison position, in collaboration with the parties, to facilitate meaningful engagement with the communities most impacted by NYPD's stop-question-and-frisk and trespass enforcement practices and effectively communicate their experiences, perspectives, and recommendations to the Monitor and the Court. *See Floyd*, ECF. Nos. 888-1, 888-2. As set forth in the Framework and Position Description, the Community Liaison will develop a community engagement plan in consultation with the parties and the Monitor. *See Floyd*, ECF No. 881-1 at 3. The Liaison will then implement the engagement plan to "identify the needs articulated by the community, seek avenues and opportunities for providing updates and other communications with the community, and provide the Monitor and Monitor Team with direct feedback from the community." *Id.* The Community Liaison will have broad independence and latitude to "conduct surveys," "implement online and offline strategies to collect feedback, recommendations, and input from community," and host "public forums and meetings" to foster meaningful connections with "community organizers, associations, organizations, and those most affected by the police practices that are the subject of the monitorship." *Id.*

The selection process for the position has also involved extensive participation by the parties as well as input from community members. The Monitor established a selection committee consisting of representatives of each of the parties and the Monitor Team. The selection committee jointly reviewed applicants for the position and identified the candidates to interview. The selection committee developed the interview questions and interviewed the candidates. The selection committee then, by consensus, recommended candidates to the Monitor and the Court. In addition, a community advisory group was assembled from the recommendations of the parties to interview the finalists and provide their input directly to the Monitor. The selection process is currently ongoing.

**GIBSON DUNN**

Hon. Analisa Torres
Southern District of New York
October 28, 2022
Page 3

### III. The Compliance Matrix Has Been Revised to Incorporate the Input of the Community Liaison

By engaging community members in the reform process and developing greater opportunities for dialogue and input and sharing the resulting information with the Monitor team and the Court, the Community Liaison will ensure that the Monitor's assessment of the City's compliance with the Court's remedial orders in the *Floyd*, *Davis*, and *Ligon* cases is informed by the perspectives and experiences of community members.

The Compliance Matrix identifies and tracks changes that need to be made to ensure that NYPD is compliant with the Constitution and the *Floyd*, *Ligon*, and *Davis* rulings. The Compliance Matrix has recently been revised to incorporate the input of the Community Liaison and ensure that community members' experiences and input are adequately considered in measuring NYPD's compliance with the law. *See* Attachment, Compliance Matrix. Plaintiffs agreed with the revisions without recommending any further amendments.

It is the view of the Monitor team that the Community Liaison's role in the monitorship, incorporated in the revised Compliance Matrix, addresses Plaintiffs' concerns that the Monitor's compliance assessments must meaningfully consider input from and the perspectives and experiences of community members. *See Floyd*, ECF No. 881 at 3.

### IV. Plaintiffs' Proposed Revisions to the Remedial Order Are Not Necessary at This Time

Plaintiffs propose several different Court-ordered directives that do not appear to be necessary now, for the reasons below.

Given the role of the Community Liaison, it is unclear whether Plaintiffs' proposed Community Collaborative Board (CCB) is necessary. As a preliminary matter, the Liaison's function and responsibilities are similar to those of the proposed CCB's: "advising and providing community input to the Court and the Monitor on the NYPD's implementation of Court-ordered reforms." *Floyd*, ECF No. 891 at 2. Additionally, given the Community Liaison's broad mandate for community engagement and the significant expense and administrative burden required to establish and maintain a CCB, it stands to reason that the Court should allow the Community Liaison—an entity that already has the approval of all parties—to implement its community engagement plan before inquiring further. Plaintiffs also request that community surveys be implemented to better gauge community sentiment. *Id.* at 3. The Community Liaison is best positioned to determine whether community surveys are necessary, and to develop and implement community surveys to gather data regarding the experiences of New York City residents regarding NYPD stop-question-and-frisk practices

Hon. Analisa Torres
Southern District of New York
October 28, 2022
Page 4

and trespass enforcement. Plaintiffs too acknowledge that the Community Liaison should be given a chance to determine whether and how to incorporate community surveys into their important work. *Id*.

Plaintiffs also propose field audits, noting that these field audits have been used in other contexts to study discrimination. *Id.* Plaintiffs' proposed field audits would require the use of "integrity testing methods," where actors/testers exhibit "'suspicious' behaviors designed to attract police attention." *Floyd*, ECF No. 841 at 29. This is problematic for multiple reasons. First, these tests could jeopardize the safety of the civilian tester, officers, and bystanders—risks not worth taking for rewards that are speculative at best. Second, such field audits are cumbersome and difficult to implement, especially considering that almost 400 field audits would be required every six months to get a representative sample. *Floyd*, ECF No. 854 at 19. This would increase expenses and burden the Monitor and Community Liaison. Third, field audits are not "narrowly tailored to fit specific legal violations." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011). As previously noted, field audits do not offer feasible or reliable methods for assessing NYPD's compliance and are unlikely to assist the Monitor in overseeing NYPD's implementation of reforms. *See Floyd*, ECF Nos. 854 at 16, 855 at 20-22.

Finally, Plaintiffs request "regularly scheduled public status conferences before the Court with the Monitor and the Parties." *Floyd*, ECF No. 891 at 4. The Monitor will welcome the Community Liaison's input on how best to solicit direct community feedback and to communicate with the community, including making members of the Monitor team available to participate in town halls or listening sessions in the City. Ultimately, given the Community Liaison's independence and their close proximity to affected communities, the decision of whether, when, and how to hold such hearings should be revisited at a later time.

V.  **Conclusion**

Plaintiffs acknowledge that the Community Liaison should be given a chance to fulfill its mandate, and we agree.[2] We look forward to working with the Community Liaison, the parties, and the Court to ensure the community's input is incorporated appropriately. Accordingly, we respectfully request that the Court deny Plaintiffs' motion to modify the Remedial Order.

---

[2] *See Floyd*, ECF No. 891 at 4 ("Plaintiffs will engage with the Community Liaison as they draft their plan and will endeavor to ensure that the above-discussed concerns about the CCB, field audits, and surveys will be adequately addressed in the plan.").

GIBSON DUNN

Hon. Analisa Torres
Southern District of New York
October 28, 2022
Page 5

        Respectfully submitted,

*/s/ Mylan L. Denerstein*

Mylan L. Denerstein
Monitor

Attachment: Compliance Matrix