USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/19/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID FLOYD, *et al.*,

                Plaintiffs,

-against-                                                       08 Civ. 1034 (AT)

CITY OF NEW YORK, *et al.*,

                Defendants.

KELTON DAVIS, *et al.*,

                Plaintiffs,

-against-                                                       10 Civ. 699 (AT)

CITY OF NEW YORK, *et al.*,

                Defendants.

JAENEAN LIGON, *et al.*,

                Plaintiffs,

-against-                                                       12 Civ. 2274 (AT)

CITY OF NEW YORK, *et al.*,

                Defendants.

**2024 COMMUNITY LIAISON COMPENSATION AND BUDGET AGREEMENT
AND NON-DISCLOSURE AGREEMENT / CONFIDENTIALITY ORDER**

This Agreement, by and between **Germain Thompson** ("Community Liaison") and the **City of New York** ("City") concerns payments directly to him and his staff, and for expenses (including consultant fees) incurred related to the role of Community Liaison. This agreement is effective as of January 1, 2024 and shall remain in effect until December 31, 2024, unless otherwise superseded or extended by written agreement.

1. **PURPOSE**

    1.1 By Court Order dated December 16, 2022, the Honorable Analisa Torres, appointed a Community Liaison to assist and advise the federal monitor appointed to supervise the remedial stage of the above referenced matters (the "Monitor"). *See* Order dated December 16, 2022 (Floyd ECF No. 888) (hereinafter "Community Liaison Order"). Under the same Order, the Court approved the "Community Engagement Liaison Framework" submitted by the Monitor. *See* Floyd ECF No. 888-1 (the "Framework"). The Framework contemplates that the Community Liaison will have support staff and that the City shall bear the cost of reasonable salaries and expenses, including consulting fees.

    1.2 By Orders dated January 27, 2023, March 23, 2023, May 11, 2023, and July 5, 2023, the Court approved projected salaries and expenses related to the Community Liaison for the 2023 Calendar Year.

    1.3 This Agreement concerns the payment of salaries and expenses by the City to the Community Liaison, the Community Liaison's Staff, and consultants retained by the Community Liaison for the term January 1, 2024 to December 31, 2024.

    1.4 This Agreement also sets forth the terms by which the various protective orders issued in these cases shall apply to the Community Liaison, the Community Liaison's Staff, and any consultants working for the Community Liaison.

2. **SALARIES**

    2.1 <u>Community Liaison Salary</u>. The salary of the Community Liaison, as determined by the federal monitor, will be $125,000 per year, paid monthly (*i.e.*, $10,416.67 per month). This fee is for the Community Liaison's work performed within the scope of the Community Liaison's duties as defined by the Community Liaison Order and Framework.

    2.2 <u>Community Liaison Staff</u>. The Community Liaison is authorized to employ five full-time staff member, and one part-time staff member in the roles set forth in this Section. These six staff members shall be collectively referred to as the "Community Liaison Staff".

      2.2.1 <u>Full-Time Community Liaison Staff Rates</u>. Pursuant to the Court's previous Orders, the Community Liaison is authorized to retain up to five full-time staff members for the duties, and at the rates, set forth below.

| Position | Incumbent as of January 1, 2024 | Annual (Monthly) Rate |
|---|---|---|
| Senior Community / NYCHA Organizer | Tatiana Hill | $84,000 ($7,000/mo.) |
| Administrative Assistant | Ruth Etienne | $60,000 ($5,000/mo.) |
| Community Organizer for Manhattan & Queens | currently unfilled | $68,000 ($5,666.67/mo.) |
| Community Organizer for Brooklyn & Staten Island | Josmar Trujillo | $68,000 ($5,666.67/mo.) |
| Community Organizer for the Bronx | Wilfredo Laracuente | $68,000 ($5,666.67/mo.) |

2.2.2 <u>Part-Time Community Liaison Staff Rates</u>. Pursuant to the Court's previous Orders, the Community Liaison is authorized to retain one part-time Social Media Specialist at the rate of $30 per hour for up to 1040 hours per year (totaling $31,200). As of January 1, 2024, the part-time position of Social Media Specialist is held by Erica Jones.

2.2.3 <u>Proration of Staff Salaries</u>. For the month in which a Staff Member commences or terminates services, the fee for the Staff Member's services will be prorated by the City.

2.3 <u>Consultant Fees</u>. As set forth in Section 3 below, the Community Liaison is authorized to retain the services of certain consultants for reasonable work related to the role of Community Liaison.

3. **REASONABLE OUT-OF-POCKET EXPENSES**

   3.1 <u>Annual Expense Budget</u>. The annual budget for reasonable expenses incurred by the Community Liaison and Community Liaison's Staff shall be as follows:

| | **Category/Description** | **2024 Budget** |
|---|---|---|
| 3.1.1 | **Consultant Services** | |
| 3.1.1.1 | Special Consultant Elizabeth Gaynes | $90,000 |
| 3.1.1.2 | IT Consultant | $4,000 |
| 3.1.1.3 | Translation Services | $2,520 |
| 3.1.2 | **Travel** | |
| 3.1.2.1 | Staff Travel (mileage, parking, tolls, MTA) | $15,000 |
| 3.1.3 | **Direct Community Activity** | |
| 3.1.3.1 | Community Outreach | $20,000 |
| 3.1.3.2 | Meetings/Workshops | $20,000 |
| 3.1.3.3 | Surveys | $75,000 |
| 3.1.4 | **Other/Miscellaneous** | |
| 3.1.4.1 | Equipment (including video) | $2,400 |
| 3.1.4.2 | Cell Phone / Wireless Plan | $3,500 |
| 3.1.4.3 | Misc. Office / Staff Expense | $24,000 |

| | **Category/Description** | **2024 Budget** |
|---|---|---|
| 3.1.4.3 | Office/Meeting Space | $12,000 |
| 3.1.5 | **TOTAL EXPENSES:** | **$268,420** |

3.1.6 The budget set forth herein is for all expenses that will incur between January 1, 2024 and December 31, 2024. Any expenses incurred prior to January 1, 2024 shall be deducted from the budget approved in the Order dated March 23, 2023.

3.1.7 The budget approved in the Order dated March 23, 2023, shall apply only to expenses incurred prior to January 1, 2024. No portion of that budget shall roll-over or be credited or available for expenditures in 2024.

3.2 Special Consultant. The Community Liaison is directed to retain the services of Elizabeth Gaynes (the "Special Consultant") to assist with the role and activities of the Community Liaison. The fee for the Special Consultant for services rendered for and on the behalf of the Community Liaison will be $200 per hour, and services rendered by the Special Consultant between January 1, 2024 and December 31, 2024, shall not exceed 450 hours (see Section 3.1.1.1 above).

3.3 Surveys. Pursuant to the Framework, the Community Liaison may use "surveys to obtain information regarding the views and perspectives of community members." The budget for these surveys shall be $75,000 in 2024 (see Section 3.1.3.3 above).

3.4 Advance Payments. Upon endorsement of this Agreement by the Court, the City shall pay the Community Liaison $10,000 as an advance towards necessary reasonable expenses to be incurred in 2024.

3.4.2 Invoices for expenses incurred by the Community Liaison, including expenses already incurred by the Community Liaison prior to the effective date of this Agreement, shall be submitted in accordance with Section 4.2.1 below, and will be deducted from the advanced funds until such funds have been fully depleted.

3.4.3 Once the advanced funds are depleted the City shall reimburse all reasonable expenses incurred by the Community Liaison on a monthly basis following submission of an invoice.

3.4.1 Once the initial advance payment of $10,000 has been depleted, the City shall pay two additional advances in 2024, in increments of $10,000 each, using the process described in this section.

4. **PAYMENT SCHEDULE**

4.1 Staff Payments. The Community Liaison and each member of the Community Liaison Staff shall be paid monthly, in the amounts sets forth in Section 2 of this Agreement, by the City directly, subject to the reasonable procedures established by the City for the submission and processing of such payments. The Community Liaison and each member of the Community Liaison Staff shall be solely responsible for submitting to the City regular and accurate records of time worked in connection with the role of Community Liaison.

4.2 <u>Accounting and Reimbursement of Expenses</u>. The City shall reimburse all reasonable and legitimate expenses paid by the Community Liaison under the budget set forth above in Section 3.1. The submission and payment of such expenses shall be as follows:

4.2.1 <u>Monthly Invoices.</u> The Community Liaison will submit directly to the City monthly invoices for payment of expenses incurred by the Community Liaison or the Community Liaison's Staff in the preceding month, pursuant to the reasonable procedures established by the City for the submission and processing of such payments. The City shall not pay salaries, costs or expenses before the date that they accrue.

4.3. <u>Special Consultant Payments</u>. The Special Consultant shall be authorized to bill the City directly for services rendered under this Agreement, pursuant to the reasonable procedures established by the City for the submission and processing of such payments.

4.3.1 <u>Expenses Incurred by the Special Consultant</u>. With the approval of the Community Liaison, the Special Consultant may submit directly to the City invoices for payment of expenses incurred by the Special Consultant, pursuant to the reasonable procedures established by the City for the submission and processing of such payments.

4.4 <u>Payment</u>. Payment of invoices submitted under this Section will be made within 30 days of receipt.

4.5 <u>Supporting Documentation</u>. The Community Liaison, Community Liaison Staff, and the Special Consultant (hereinafter the "Community Liaison Team") shall retain and submit, along with invoices, descriptions of the work performed or the expense incurred for which repayment is sought. Failure to submit such descriptions and/or supporting document, may result in non-payment of that expense.

5. **NON-DISCLOSURE AGREEMENT AND CONFIDENTIALITY ORDER**

5.1 <u>Purpose</u>. The Community Liaison has and will continue to meet with plaintiffs' counsel, the City, and the Monitor (collectively "the Parties"), jointly or separately, as part of the role of the Community Liaison and carrying out the functions as set forth in the Community Liaison Order and Framework.

5.1.1 In the course of his role, the Community Liaison may have cause to obtain, review, or discuss documents, information, and/or other material shared by any party or the Monitor which are not publicly available ("Confidential Materials").

5.1.2 All stakeholders' interests are best served by ensuring the confidentiality of certain information and materials relevant to the remedial phase of the above-captioned actions and clearly setting forth the terms by which such Confidential Materials will be handled.

5.2 <u>Non-Disclosure Agreement</u>. The Community Liaison agrees not to disclose Confidential Materials without the written consent of the party that produced or

created the Confidential Materials (the "Disclosing Party"). Prohibited disclosure includes, but is not limited to, communication to any third party in any form, whether written, oral, or electronic; public statements; interviews; and communications via news articles, social media, chat rooms, or websites.

    5.2.1  The Community Liaison may provide Confidential Material to members of the Community Liaison Team, provided that those individuals keep such Confidential Materials confidential, review this Non-Disclosure Agreement, and sign a copy of the confidentiality agreement annexed hereto as Exhibit A reflecting their understanding to keep the information confidential.

    5.2.2  The Community Liaison may provide Confidential Material to experts, researchers or consultants retained by him, provided that these individuals keep such Confidential Materials confidential, review this Stipulation, and sign a copy of the confidentiality agreement annexed hereto as Exhibit A.

    5.2.3  Consistent with Paragraph E(6) of the Framework, with respect to the Community Liaison's release of Confidential Materials to the Parties, the Community Liaison shall identify to the Disclosing Party any information that the Community Liaison intends to release. Such identification must be made no less than five days in advance of the proposed disclosure. The Disclosing Party may make good cause objections to the proposed disclosure. If the Community Liaison believes that there is no good cause for an objection, the Monitor shall resolve the dispute. If the City or Plaintiffs' counsel requests information possessed by the Community Liaison, and the Community Liaison objects, the Monitor shall resolve the dispute.

    5.2.4  Confidential Materials shall be appropriately and reasonably safeguarded (in a manner at least as stringent as that used to protect the Community Liaison's own sensitive information or information of similar nature) to prevent the use of the Confidential Materials for any other purpose.

    5.2.5  The parties may enter into ancillary confidentiality agreements with the Community Liaison for additional measures related to specifically-identified Confidential Materials. Any ancillary confidentiality agreement may not contradict or diminish any of the provisions in this Agreement, the Community Liaison Order or the Framework, but may provide for additional procedures or requirements. If the parties agree to such an ancillary confidentiality agreement, it may be approved by the Monitor without further action by the Court.

5.3  <u>Confidentiality Order</u>. This Section shall have the effect of a Confidentiality Order binding on the Community Liaison, the Community Liaison Staff, and the Special Consultant.

    5.3.1  This Confidentiality Order will survive the termination of the Court's jurisdiction in the above-captioned actions, and will continue to be binding upon all persons to whom Confidential Materials are produced or disclosed, including but not limited to the Community Liaison, his staff and any consultants/experts. Any Confidential Materials that are not released by the

City, obtained through FOIL, or otherwise made public, will remain confidential.

5.3.2 The Court shall retain jurisdiction over all persons subject to this Confidentiality Order to the extent necessary to enforce any obligations arising hereunder. Additionally, the Court reserves the right to modify this Confidentiality Order at any time.

5.3.3 Nothing in this Confidentiality Order shall be construed to limit a party's use of its own Confidential Material for any other purpose.

6. **MISCELLANEOUS**

   6.1 The Community Liaison Staff are employees of the Community Liaison. This agreement does not create an employment, contractor, or agency relationship between the Community Liaison and the City or between the Community Liaison Staff and the City. The City will not have any responsibility for overseeing the Community Liaison Staff, including, but not limited to, decisions related to hiring, firing, or defining roles and duties. Such responsibilities shall rest solely with the Community Liaison.

   6.2 The City shall be responsible solely for providing compensation to the Community Liaison Team pursuant to the terms of this agreement and in accordance with the Community Liaison Order and the accompanying Framework. The City shall not be responsible for any employee benefits or other obligations related to the employment of the Community Liaison Team.

   6.3 This Agreement augments but does not revoke, supersede, or modify the Community Liaison Order, Framework, or any prior confidentiality orders from the Court.

**For the Community Liaison:**

By: _____
Name: Germain Thompson
Title: Community Liaison
Date: 01/17/24

**For the City:**

By: _____
Name: Genevieve Nelson
Title: Deputy Division Chief
Date: 1/18/24

SO ORDERED.

Dated: January 19, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge