

**MURIEL GOODE-TRUFANT**
Acting Corporation Counsel

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, N.Y. 10007

**TOBIAS E. ZIMMERMAN**
phone: (212) 356-2423
fax: (212) 356-3509
tzimmerm@law.nyc.gov

December 9, 2024

**VIA ECF**
Honorable Analisa Torres
United States District Judge
United States District Court
 for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

    Re:    *Floyd, et al. v. City of New York*, No. 08 Civ. 1034 (AT);
              *Davis, et al. v. City of New York, et al.*, No. 10 Civ. 0699 (AT);
              *Ligon, et al. v. City of New York, et al.*, No. 12 Civ. 2274 (AT).

Your Honor:

       I am a Senior Counsel in the Office of Muriel Goode-Trufant, Acting Corporation Counsel for the City of New York, and one of the attorneys assigned to the above-captioned matters. City Defendants write to respectfully request clarification from the Court regarding its intended fact-finding process in connection with the Draft Report to the Court on Police Misconduct and Discipline authored by retired Judge James Yates, dated September 19, 2024 (ECF No. 936) (hereinafter "the Draft Report") and the Court's intended use of the Draft Report. In particular, given the scope of the Draft Report, the extensive and unresolved factual disputes regarding its content, and the procedural concerns that have been raised by the City Defendants in prior communications, we believe that all of the Parties would benefit from additional information regarding how the Court intends to proceed after receiving comments from the parties and the public, consistent with its order dated September 23, 2024. We emphasize at the outset that we understand that the Draft Report is not a report of the Monitor, and that this request for clarification does not relate to the work of the Monitor.

As the Court is aware, the Draft Report was commissioned by the Court in an email addressed to the late Monitor, Peter Zimroth, dated May 30, 2018.[1] The Court selected Judge Yates to write the requested report without notice to the Parties. The Monitor was similarly directed to add Judge Yates to the Monitor's team, and he began submitting information requests and invoices to the City in 2018. As the Parties later learned, the Court's directive to Judge Yates was to examine "the efficacy, fairness, and integrity of the City's policies, practices and procedures with respect to police misconduct *during stops*."[2]

Approximately five years later, in March 2023, a preliminary draft of Judge Yates's Draft Report was distributed to the parties.[3] City Defendants were surprised by both the length and scope of the draft as the Draft Report goes far beyond the Court's directive to Judge Yates, the ambit of the monitorship, or the scope of the underlying litigation. Indeed, much of the Draft Report addresses a raft of issues regarding the disciplinary process that are wholly unrelated to discipline regarding stops.

On September 1, 2023, the City Defendants responded to the preliminary draft with (1) a detailed letter laying out the City's overarching concerns about what was then labeled a "preliminary draft";[4] (2) a redlined copy of the preliminary draft with extensive corrections and comments; and (3) a spreadsheet containing over 900 factual disputes, comments, corrections, and concerns with the contents of the preliminary draft.

As the City Defendants noted in response to this preliminary draft, its "ability to effectively review and comment on the Draft Report has been, and will continue to be, significantly constrained by the lack of clarity on the final form and function of the document."[5] The City Defendants also noted that

> Any formal conclusion or recommendation that appear to carry the endorsement of the Court, the Monitor, or any agency, will undoubtedly serve as potential fodder for those seeking to advance legal claims against the City in other cases. . . .
>
> If it is the intent of the Monitor or the Court to formally publish the [Draft] Report on the docket of this case, then the process for reviewing and challenging its contents must be weighed against

---

[1] *See* Draft Report at n.29 and accompanying text.

[2] Draft Report at 13 (quoting 05/18/2018 Email from Court to Monitor) (emphasis added).

[3] A revised draft with additional content was subsequently distributed in June 2023.

[4] A copy of that letter is attached hereto as Exhibit A.

[5] 09/01/2023 Letter from City Defendants, attached hereto as Exhibit A, at 2.

> the City's Due Process rights to challenge evidence and be heard on substantive matters. If the [Draft] Report is to appear as even arguably endorsed by the Court, rather than an advocacy document like a legal brief filed by an interested party, there must be some process of third-party review over the veracity and accuracy of the facts and opinions set forth. On the other hand, if the [Draft] Report is to be only one input that the Court will consider before drawing its own conclusions and advancing formal orders, then the City is confident that its feedback and concerns can be addressed through a more informal process like the one we are currently engaged in.[6]

The City Defendants also raised significant procedural concerns regarding the preliminary draft, including:

- The inclusion of privileged information that was provided to Judge Yates on the explicit understanding that the disclosure did not constitute a waiver of privilege by the City;

- Inclusion of matters that had already arisen during the Joint Remedial Process (JRP) but that had been explicitly rejected by the facilitator during that process;

- Inclusion of discussion and other information far beyond the scope of the underlying litigation, the Monitorship, and the Court's original request.[7]

- The lack of input from the police unions, whose members are directly affected by the contents of the Draft Report.

In January 2024 a revised draft of the Report was distributed to the parties, this time including Judge Yates's proposed "Recommendations," and additional sections that had not been present in the initial draft. Upon review of this second draft, the City Defendants found that almost all of the factual disputes and corrections noted by the City had been left unaddressed. Furthermore, the City Defendants' procedural concerns were likewise not addressed or even acknowledged.[8]

---

[6] *Id.* at 3.

[7] *See generally id.*

[8] Among the procedural concerns raised by City Defendants was the lack of opportunity for the police unions—whose members would be most directly impacted by some of the recommendations put forward by Judge Yates—to comment on the draft report.

City Defendants provided their comments on the newly disclosed draft Recommendations on February 23, 2024,[9] and subsequently provided a second round of edits to the draft Report, reiterating both its factual and process-based concerns, including the lack of clarity on the "final form and function" of the Draft Report. [10]

The Draft Report was published on the Court's docket on September 23, 2024.[11] The parties did not have advance notice of the Court's decision to publish the Draft Report on the docket, and accordingly did not have an opportunity to be heard by the Court before this occurred. The version of the Draft Report published on the docket did not address the hundreds of outstanding factual disputes and procedural concerns raised by the City Defendants in their prior communications.

The Court has directed that all comments on the Draft Report be submitted by December 25, 2024, and the City Defendants will of course provide comments consistent with that directive. But the nature of those comments depends, in part, on the Court's process for evaluating those comments and what the Court ultimately intends to do with the Draft Report. Neither the comments of the Parties, nor those of the public, will resolve disputed factual issues or the procedural objections raised by the City Defendants. To the extent the Court intends to adopt the Draft Report, in whole or in part, based on the comments by the Parties and the public, the City Defendants submit that this would raise significant due process concerns. The Federal Rules of Civil Procedure and the Federal Rules of Evidence both provide mechanisms for a Court to formally solicit input from neutral experts.[12] Each of those rules set forth certain procedural protections, including, *e.g.,* notice and opportunity to influence the appointment;[13] formal procedures for review and objections to the final report;[14] and opportunity to depose, cross-examine, and refute the appointed expert.[15] These procedural protections have not been utilized in connection with the Draft Report.

The City Defendants respectfully submit that if the Court intends to resolve the numerous factual and process-based disputes in connection with the Draft Report

---

[9] *See generally* 02/23/2024 Letter from City Defendants, attached hereto as Exhibit B.

[10] *See generally* 03/27/2024 Letter from City Defendants, attached hereto as Exhibit C, at 2.

[11] *See* 09/23/2024 Order (*Floyd* ECF No. 936).

[12] *See* Fed. R. Civ. P. 53 (Masters); Fed. R. Evid. 706 (Court-Appointed Expert Witnesses).

[13] Fed. R. Civ. P. 53(b).

[14] Fed. R. Civ. P. 53(f).

[15] Fed. R. Evid. 706(b).

an evidentiary process consistent with the Federal Rules of Civil Procedure is necessary. More broadly, it is unclear to the City Defendants whether the Court is considering adopting the Draft Report and if so, what evidentiary process it intends to follow. Accordingly, the City Defendants ask that the Court clarify the Court's anticipated use of the Draft Report and the fact-finding process that the Court intends to use in connection with the numerous disputes concerning the contents of the Draft Report.

The City Defendants thank the Court for its attention to this matter.

Respectfully submitted,

Tobias E. Zimmerman
*Senior Counsel*
Special Federal Litigation Division

Encls.
cc:   All Counsel (**via ECF**)
      Mylan Denerstein, Monitor (**via Email**)
      Richard Jerome, Deputy Monitor (**via Email**)