USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/13/2026__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID FLOYD, *et al.*, | |
| Plaintiffs, | |
| -against- | 08 Civ. 1034 (AT) |
| CITY OF NEW YORK, *et al.*, | |
| Defendants. | |
| KELTON DAVIS, *et al.*, | |
| Plaintiffs, | |
| -against- | 10 Civ. 699 (AT) |
| CITY OF NEW YORK, *et al.*, | |
| Defendants. | |
| JAENEAN LIGON, *et al.*, | |
| Plaintiffs, | |
| -against- | 12 Civ. 2274 (AT) |
| CITY OF NEW YORK, *et al.*, | |
| Defendants. | |

**2026 COMMUNITY LIAISON COMPENSATION AND BUDGET AGREEMENT
AND NON-DISCLOSURE AGREEMENT / CONFIDENTIALITY ORDER**

This Agreement, by and between **Germain Thompson** ("Community Liaison") and the **City of New York** ("City") concerns payments directly to him and his staff, and for expenses (including consulting fees) incurred related to the role of Community Liaison. This agreement is effective as of January 1, 2026 and shall remain in effect until December 31, 2026, unless otherwise superseded or extended by written agreement.

1. **PURPOSE**

    1.1   By Court Order dated December 16, 2022, the Honorable Analisa Torres, appointed a Community Liaison to assist and advise the federal monitor appointed to supervise the remedial stage of the above referenced matters (the "Monitor"). *See* Order dated December 16, 2022 (Floyd ECF No. 888) (hereinafter "Community Liaison Order"). Under the same Order, the Court approved the "Community Engagement Liaison Framework" submitted by the Monitor. *See* Floyd ECF No. 888-1 (the "Framework"). The Framework contemplates that the Community Liaison will have support staff and that the City shall bear the cost of reasonable service fees and expenses, including consulting fees.

    1.2   By Orders dated December 28, 2024 and June 24, 2025, the Court approved projected service fees and expenses related to the Community Liaison for the 2025 Calendar Year.

    1.3   This Agreement concerns the payment of professional fees and expenses by the City to the Community Liaison, the Community Liaison's Staff, and consultants retained by the Community Liaison for the term January 1, 2026 through December 31, 2026.

    1.4   This Agreement also sets forth the terms by which the various protective orders issued in these cases continue to apply to the Community Liaison, the Community Liaison's Staff, and any consultants working for the Community Liaison.

2. **COMPENSATION FOR SERVICES OF THE COMMUNITY LIAISON AND COMMUNITY LIAISON STAFF**

    2.1   <u>Community Liaison Staff</u>. The Community Liaison is authorized to retain five full-time staff members, and three part-time staff members in the roles set forth in this Section. These eight staff members shall be collectively referred to as the "Community Liaison Staff". The Community Liaison and Community Liaison Staff shall be collectively referred to as the "Community Liaison Payees".

    2.2   <u>City Responsible For Fees</u>. The City shall be responsible for paying for the services of the Community Liaison Payees for work performed within the scope of the Community Liaison's duties as defined by the Community Liaison Order and Framework.

    2.3   <u>Community Liaison Fee</u>. The annual fee for services performed by the Community Liaison, as determined by the federal monitor, will be $137,000 per year, paid at least monthly (i.e., $11,416.67 per month).

2.4     Full-Time Community Liaison Staff Rates. The Community Liaison is authorized to retain the services of up to five (5) full-time staff members for the duties, and at the rates, set forth below.

| Full-Time Position | Annual (Monthly) Rate | Incumbent as of January 1, 2026 |
|---|---|---|
| Lead Community Organizer | $95,000 ($7,916.67/mo.) | Tatiana Hill |
| Lead Community Organizer | $80,000 ($6,666.67/mo.) | Josmar Trujillo |
| Community Organizer | $68,000 ($5,666.67/mo.) | Mauricia Harry |
| Community Organizer | $68,000 ($5,666.67/mo.) | Damon Hart |
| Administrative Assistant | $60,000 ($5,000/mo.) | Ruth Etienne |

    2.4.1   Proration of Full-Time Staff Fees. For any month in which a full-time Staff Member commences or terminates services, the fee for that Staff Member's services will be prorated by the City.

2.5     Part-Time Community Liaison Staff Rates. The Community Liaison is authorized to retain up to three (3) part-time staff members for the duties set forth below.

| Part-Time Position | Incumbent as of January 1, 2026 |
|---|---|
| Social Media Specialist | Erica Jones |
| Part-Time Community Organizer for Staten Island | Mathilda Adeniji |
| Part-Time Community Organizer at large | Anastasia Tompkin |

    2.5.1   Part-Time Staff Rates. The fee for services rendered by each of the part-time staff members for and on the behalf of the Community Liaison will be $30 per hour, and services rendered by each of the part-time staff members between January 1, 2026 and December 31, 2026, shall not exceed 1040 hours.

2.6     Payment Vendor. The City is hereby ordered to retain a third-party vendor ("the Vendor") for the purpose of processing requests for compensation by, and payments to, the Community Liaison Payees under this Agreement. The City shall be solely responsible for compensating the Vendor and such cost shall not be reflected in, nor charged to, the budget of the Community Liaison.

    2.6.1   Reasonable Administrative Needs of the Vendor. The Community Liaison Payees shall cooperate with the reasonable administrative needs of the Vendor to ensure timely payments to the Community Liaison Payees. The Vendor may require that each of the Community Liaison Payees sign documents acknowledging the scope of any relationship (or lack thereof) between the Vendor and the Community Liaison Payees. Failure of the Community Liaison Payees to cooperate with the administrative needs of the Vendor may result in non-payment or delayed payment for services performed by the Community Liaison Payees.

      2.6.2    <u>Financial Security of the Vendor</u>.  The City shall be solely responsible for ensuring that the Vendor is fiscally solvent, and capable of making timely payments to the Community Liaison payees pursuant to this Agreement.

      2.6.3    <u>Advance Payments to the Vendor Ordered</u>. The City is hereby ordered to place and maintain on deposit with the Vendor sufficient funds to cover at least one month of payments to the Community Liaison Payees and no less than $40,000.

2.7    <u>Procedures for Requesting Payments to the Community Liaison Payees</u>. The City and the Vendor, in consultation with the Community Liaison, shall establish reasonable procedures for the Community Liaison Payees to submit requests for payment for services performed in connection with the role of Community Liaison.

      2.7.1    The Community Liaison shall be responsible for ensuring that the Community Liaison Payees are compensated only for work actually performed in connection with the role of Community Liaison.

      2.7.2    By the tenth (10th) day of each month the Community Liaison shall certify in writing to the City that he has complied with Section 2.7.1 above with respect to each of the Community Liaison Payees that received payments from the City or the Vendor during the previous month.

      2.7.3    Failure of the Community Liaison to submit the certification described in Section 2.7.2 above may result in non-payment or delayed payment for services performed by the Community Liaison Payees.

2.8    <u>No Employment Relationship</u>. Nothing in this Agreement shall create or establish any employment, contractor, or agency relationship between any of the Community Liaison Payees and the City of New York; nor shall it establish any employment, contractor, or agency relationship between any of the Community Liaison Payees and the Vendor.

      2.8.1    The City shall be responsible solely for compensating the Community Liaison Payees for their services rendered pursuant to the terms of this Agreement and in accordance with the Community Liaison Order and the Framework. Neither the City nor the Vendor shall be responsible for any employee benefits or other obligations related to the employment of the Community Liaison Payees.

      2.8.2    Neither the City nor the Vendor shall be responsible or liable for withholding any state, federal, or local taxes owed by the Community Liaison Payees.

      2.8.3    Neither the City nor the Vendor shall have any responsibility for overseeing any member of the Community Liaison Staff, including, but not limited to, decisions related to hiring, firing, or defining roles and duties.  Such responsibilities shall rest solely with the Community Liaison.

      2.8.4    Neither the City nor the Vendor shall be responsible or liable for any injury sustained by the Community Liaison Payees during or in connection with the performance of services compensable under this Agreement.

3. **SPECIAL CONSULTANT**

   3.1 <u>Special Consultant</u>. The Community Liaison is ordered to retain the services of Elizabeth Gaynes (the "Special Consultant") to assist with the role and activities of the Community Liaison.

   3.2 <u>Special Consultant Rate</u>. The rate for services rendered by the Special Consultant for and on the behalf of the Community Liaison will be $200 per hour, and services rendered by the Special Consultant between January 1, 2026 and December 31, 2026, shall not exceed 450 hours.

       3.2.1 <u>Special Consultant Payments</u>. The Special Consultant shall be authorized to bill the City directly for services rendered under this Agreement, pursuant to the reasonable procedures established by the City for the submission and processing of such payments.

4. **REASONABLE OUT-OF-POCKET EXPENSES**

   4.1 <u>Authorized Expenditures</u>. The Community Liaison is authorized to expend funds for goods and services necessary to carry out the role of Community Liaison in the amounts and categories set forth in Section 4.2 below.

   4.2 <u>Total 2026 Expense Budget</u>. The Total 2026 Expense Budget for reasonable expenses incurred by the Community Liaison between January 1, 2026 and December 31, 2026 shall be two hundred and sixty thousand dollars and no cents ($260,000.00), allocated as follows:

| | Category/Description | 2026 Budget |
|---|---|---|
| 4.2.1 | **Consultant Services** | |
| 4.2.1.1 | IT Consultant | $29,000 |
| 4.2.1.2 | Translation Services | $1,000 |
| 4.2.1.3 | Professional Development & Training | $35,000 |
| 4.2.2 | **Travel** | |
| 4.2.2.1 | Staff Travel (mileage, parking, tolls, MTA) | $15,000 |
| 4.2.3 | **Direct Community Activity** | |
| 4.2.3.1 | Community Outreach | $32,500 |
| 4.2.3.2 | Meetings/Workshops | $32,500 |
| 4.2.3.3 | Surveys | $65,000 |
| 4.2.4 | **Other/Miscellaneous** | |
| 4.2.4.1 | Equipment (including video) | $12,000 |
| 4.2.4.2 | Cell Phone / Wireless Plan | $4,000 |
| 4.2.4.3 | Misc. Office / Staff Expense | $34,000 |
| 4.2.4.3 | Office/Meeting Space | *see § 4.3 below* |
| 4.2.5 | **TOTAL 2026 EXPENSE BUDGET:** | **$260,000** |

4.3 Office Space. The Community Liaison has identified a need for dedicated office space, but has not yet identified a suitable location or entered into a lease or other agreement for the use of space. The City acknowledges the Community Liaison's need for office space, and agrees to work constructively with the Community Liaison to: (a) identify suitable office and meeting space within the five boroughs; and (b) amend this budget agreement to cover reasonable expenses relating to the acquisition and use of such space by the Community Liaison once it has been identified.

4.4 Non-Transferability of Annual Expense Budgets. The Total 2026 Expense Budget set forth herein is for all expenses incurred between January 1, 2026 and December 31, 2026. Any expenses incurred prior to January 1, 2026 shall be deducted from the budget approved in the Order dated December 28, 2024, as amended. The budget approved in the Order dated December 28, 2024, shall apply only to expenses incurred prior to January 1, 2026; no portion of that budget shall roll-over or be credited or available for expenditures in 2026.

4.5 Advance Payments. As set forth below, the City is ordered to advance certain funds to the Community Liaison to ensure that the Community Liaison has sufficient funds on hand to cover foreseeable, reasonable and necessary expenses under the Total 2026 Expense Budget. The funds advanced to the Community Liaison are referred to herein as the "Advanced Funds."

  4.5.1 Advance Funds Shall Not Exceed Total 2026 Expense Budget. The City shall not be obligated to advance to the Community Liaison any funds in excess of the Total 2026 Expense Budget set forth above. All expenses paid by the Community Liaison out of the Advanced Funds shall be specifically allocated to one of the budget categories set forth in Section 4.2 above, and the Community Liaison shall be personally and solely responsible for any expenses that exceed the relevant budget category set forth in Section 4.2 above unless the City explicitly agrees in advance and in writing to a reallocation of funds between the categories.

  4.5.2 Community Liaison Shall Safeguard Advance Funds. The Community Liaison shall hold all funds advanced to him under this Agreement in an insured account, and shall be personally and solely responsible and liable for safeguarding such funds against misuse, misappropriation, or waste.

  4.5.3 First Advance Payment. Within twenty-one (21) days of the date this Agreement is endorsed by the Court, the City is ordered to remit to the Community Liaison one-hundred and thirty thousand dollars and no cents ($130,000.00) (equivalent to fifty-percent (50%) of the Total 2026 Expense Budget) as an advance towards necessary and reasonable expenses to be incurred in 2026.

  4.5.4 Mid-Year Reconciliation. On a date to be determined by the City and the Community Liaison, but no later than May 31, 2026, the City and the Community Liaison shall meet and confer over the budget expenditures already made under this Agreement, the balance of the Advanced Funds held by the

        Community Liaison as of that date, and the amounts remaining in each budget category listed in Section 4.2 above.

        4.5.5   <u>Additional Scheduled Advances</u>. Subject to the limitations in Section 4.5.1 above, following the Mid-Year Reconciliation, the City is ordered to make such additional Advanced Payments to the Community Liaison sufficient to ensure that the balance of Advanced Funds held by the Community Liaison is at least sixty-thousand dollars and no cents ($60,000.00) on July 1, 2026, and thirty thousand dollars and no cents ($30,000.00) on October 1, 2026.

        4.5.6   <u>Unscheduled Advances</u>. If, at any time, the Community Liaison determines that the balance of Advanced Funds held by him is not sufficient to cover the anticipated necessary and reasonable expenses that will be incurred before the next scheduled Advance Payment provided in Section 4.5.5 above, the Community Liaison shall give the City sufficient advance notice of the projected shortfall in writing, and request an unscheduled Advance Payment in an amount sufficient to cover anticipated necessary and reasonable expenses expected to be incurred prior to the next scheduled Advance Payment.

        4.5.7   <u>Year-End Reconciliation</u>. On a date to be determined by the City and the Community Liaison, but no later than November 30, 2026, the City and the Community Liaison shall meet and confer over the budget expenditures already made under this Agreement, the balance of the Advanced Funds held by the Community Liaison as of that date, and the amounts remaining in each budget category listed in Section 4.2 above.

        4.5.8   <u>Return of Unexpended Advanced Funds</u>. Any unexpended funds advanced to the Community Liaison under this Agreement shall be refunded to the City on or before January 1, 2027, unless specific written authorization is provided by the City for the Community Liaison to retain those funds towards expenses authorized in subsequent years.

4.6   <u>Supporting Documentation</u>. The Community Liaison shall retain records, invoices, and receipts documenting the amount, description, and date of any expenditure of funds from the Total 2026 Expense Budget, and shall provide those records to the City. No expenditure may be credited against the Total 2026 Expense Budget without proper supporting documentation. Failure to maintain and submit such supporting documentation, may result in non-payment of that expense.

4.7   <u>Monthly Expense Reports</u>. The Community Liaison shall submit Monthly Expense Reports to the City detailing each expenditure made from the Total 2026 Expense Budget. Each Monthly Expense Report shall be made no later than the 10th day of each month, covering the expenditures in the previous month, with the first Monthly Expense Report to be made on or before February 10, 2026.

        4.7.1   The City and the Community Liaison will work constructively to agree on an appropriate format for the Monthly Expense Reports, but such reports shall

  include at least the following information for each separate expenditure: (a) the amount; (b) the date; (c) the vendor or payee; (d) the budget category listed in section 4.2 above to which the expenditure is to be charged; and (e) a brief description of the services or goods provided sufficient to justify the expenditure under the specified budget line.  Each Monthly Expense Report shall also include a running total of how much has been expended from each of the budget categories, and the current total Advanced Funds that the Community Liaison has on hand as of the first of each calendar month.

  4.7.2 Expenditures or disbursements made to the Community Liaison or members of the Community Liaison Staff as reimbursements for expenses shall provide the information listed in Section 4.7.1 above about the original expenditure or expense that is being reimbursed.

  4.7.4 Reimbursements for mileage shall list the total miles charged, and the dates in which those miles were incurred.  Mileage shall be charged and reimbursed at the applicable rate as set by the federal Internal Revenue Service.

  4.7.5 No reimbursement shall be made to the Community Liaison or any member of the Community Liaison Staff for partial payment of a monthly service charge on any personal account, including for mobile phone and data services.

  4.7.6 The Monthly Expense Report may be combined or included with the monthly certification specified in Section 2.7.2 above.

## 5. NON-DISCLOSURE AGREEMENT AND CONFIDENTIALITY ORDER

 5.1 <u>Purpose</u>.  The Community Liaison has and will continue to meet with Plaintiffs' counsel, the City, and the Monitor (collectively "the Parties"), jointly or separately, as part of the role of the Community Liaison and carrying out the functions as set forth in the Community Liaison Order and Framework.

  5.1.1 In the course of performing the role of Community Liaison may have cause to obtain, review, or discuss documents, information, and/or other material shared by any party or the Monitor which are not publicly available ("Confidential Materials").

  5.1.2 All stakeholders' interests are best served by ensuring the confidentiality of certain information and materials relevant to the remedial phase of the above-captioned actions and clearly setting forth the terms by which such Confidential Materials will be handled.

 5.2 <u>Non-Disclosure Agreement</u>. The Community Liaison agrees not to disclose Confidential Materials without the written consent of the party that produced or created the Confidential Materials (the "Disclosing Party").  Prohibited disclosure includes, but is not limited to, communication to any third party in any form, whether written, oral, or electronic; public statements; interviews; and communications via news articles, social media, chat rooms, or websites.

      5.2.1    The Community Liaison may provide Confidential Material to members of the Community Liaison Team, provided that those individuals keep such Confidential Materials confidential, review this Non-Disclosure Agreement, and sign a copy of the confidentiality agreement annexed hereto as Exhibit A reflecting their understanding to keep the information confidential.

      5.2.2    The Community Liaison may provide Confidential Material to experts, researchers or consultants retained by him, provided that these individuals keep such Confidential Materials confidential, review this Stipulation, and sign a copy of the confidentiality agreement annexed hereto as Exhibit A.

      5.2.3    Consistent with Paragraph E(6) of the Framework, with respect to the Community Liaison's release of Confidential Materials to the Parties, the Community Liaison shall identify to the Disclosing Party any information that the Community Liaison intends to release. Such identification must be made no less than five days in advance of the proposed disclosure. The Disclosing Party may make good cause objections to the proposed disclosure. If the Community Liaison believes that there is no good cause for an objection, the Monitor shall resolve the dispute. If the City or Plaintiffs' counsel requests information possessed by the Community Liaison, and the Community Liaison objects, the Monitor shall resolve the dispute.

      5.2.4    Confidential Materials shall be appropriately and reasonably safeguarded (in a manner at least as stringent as that used to protect the Community Liaison's own sensitive information or information of similar nature) to prevent the use of the Confidential Materials for any other purpose.

      5.2.5    The parties may enter into ancillary confidentiality agreements with the Community Liaison for additional measures related to specifically-identified Confidential Materials. Any ancillary confidentiality agreement may not contradict or diminish any of the provisions in this Agreement, the Community Liaison Order or the Framework, but may provide for additional procedures or requirements. If the parties agree to such an ancillary confidentiality agreement, it may be approved by the Monitor without further action by the Court.

5.3    <u>Confidentiality Order</u>. This Section shall have the effect of a Confidentiality Order binding on the Community Liaison, the Community Liaison Staff, and the Special Consultant.

      5.3.1    This Confidentiality Order will survive the termination of the Court's jurisdiction in the above-captioned actions, and will continue to be binding upon all persons to whom Confidential Materials are produced or disclosed, including but not limited to the Community Liaison, his staff and any consultants/experts. Any Confidential Materials that are not publicly released by the City, obtained through FOIL, or otherwise made public, will remain confidential.

    5.3.2    The Court shall retain jurisdiction over all persons subject to this Confidentiality Order to the extent necessary to enforce any obligations arising hereunder. Additionally, the Court reserves the right to modify this Confidentiality Order at any time.

    5.3.3    Nothing in this Confidentiality Order shall be construed to limit a party's use of its own Confidential Material for any other purpose.

## 6. MISCELLANEOUS

    6.1    The City reserves the right to seek relief from all or part of this Order.

    6.2    This Agreement augments but does not revoke, supersede, or modify the Community Liaison Order, Framework, or any prior confidentiality orders from the Court.

For the Community Liaison:  
By: _____  
Name: Germain Thompson  
Title: Community Liaison  
Date: 12/30/2025

For the City:  
By: _____  
Name: Genevieve Nelson  
Title: Deputy Division Chief  
Date: 12/30/2025

**SO ORDERED.**

Dated: January 13, 2026  
New York, New York

_____  
ANALISA TORRES  
United States District Judge

## **EXHIBIT A**

The undersigned hereby acknowledges that s/he has read the relevant sections of the 2026 Community Liaison Compensation And Budget Agreement And Non-Disclosure Agreement / Confidentiality Order dated _____, entered into the actions under Docket Nos. 08 Civ. 1034, 10 Civ. 0699, and 12 Civ. 2274 (the Federal NYPD Monitorship), and so ordered by the Court on _____. The undersigned hereby acknowledges that s/he understands the terms thereof.  The undersigned agrees not to use the Confidential Materials defined therein, or the contents thereof (includes, but is not limited to, communication to any third party in any form, whether written, oral, or electronic; public statements; interviews; and communications via news articles, social media, chat rooms, or websites), for any purpose other than in connection with the preparation, evaluation or presentation of these cases, and will not further disclose the Confidential Materials or the contents thereof.

Date: _____

Signature: _____

Print Name: _____

Occupation:_____